UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMPAGNIE SAHÉLIENNE D'ENTREPRISE,<br><br>*Petitioner*,<br><br>v.<br><br>REPUBLIC OF GUINEA,<br><br>*Respondent*. | Civil Action No. 20-1536 |

## DECLARATION OF B. TED HOWES

I, B. Ted Howes, declare pursuant to 28 U.S.C. § 1746 as follows:

1.  I am a member of the law firm Mayer Brown LLP. I am counsel for Petitioner Compagnie Sahelienne d'Entreprise ("CSE").

2.  I submit this declaration in support of Petitioner's Petition to Recognize and Enforce Foreign Arbitral Award.

3.  I make this declaration by reference to certain exhibits appended hereto and with respect to facts personally known to me.

4.  Petitioner CSE seeks to enforce the arbitral award issued by a duly-constituted arbitration tribunal (the "Arbitration Tribunal") on August 7, 2018 (the "Final Award") in ICC Case No. 22056/DDA, captioned *The Company: Compagnie Sahelienne d'Entreprise (Senegal) v. The Republic of Guinea* (the "Arbitration") against Respondent Republic of Guinea ("Guinea"). A true and correct copy of the Final Award along with a translation is attached hereto as Exhibit A.

5. On June 25, 2003, Petitioner CSE—as contractor—and Guinea—as the project owner—entered into two public works procurement contracts for the completion of two projects to upgrade various sections of roads in Guinea between the town of Tombo and Gbessia Airport. Specifically, the parties entered into (i) "Upgrading of the 2x2 Roads between Tombo and Gbessia Airport (Conakry), Lot 4: Kenien Section - T1, Procurement Contract for Construction Work No. 2003/0325/1/2/1/2/N," dated June 25, 2003 (the "Procurement Contract for Lot 4") and (ii) "Upgrading of the 2x2 Roads between Tombo and Gbessia Airport (Conakry), Lot 5: Section T1-T2 including the two interchanges at the intersections of the T1 and the T2, Procurement Contract for Construction Work No. 2003/0324/1/2/1/2/N," dated June 25, 2003 (the "Procurement Contract for Lot 5," and together with the Procurement Contract for Lot 4, the "Procurement Contracts").  True and correct copies of the Procurement Contract for Lot 4 and the Procurement Contract for Lot 5, along with translations of the relevant portions, are attached hereto as Exhibit B and Exhibit C.

6. The Procurement Contracts are governed by both certain "General Administrative Terms and Conditions" and certain "Special Administrative Terms and Conditions," each of which contains a clause regarding the settlement of disputes.  True and correct copies of the General Administrative Terms and Conditions and the Special Administrative Terms and Conditions for the respective Procurement Contracts, along with translations of the relevant portions, are attached hereto as Exhibit D and Exhibit E.

7. Article 50 of the [General] Administrative Terms and Conditions for both Procurement Contracts states:

> **50. Settlement of Disputes**
>
> **50.1 Intervention of the Project Owner**

> If a dispute arises between the Project Owner and the Contractor, in the form of reservations noted with respect to a service order or in any other form, the Contractor shall submit to the Project Owner, for transmission to the Project Owner through the Project Head, a memorandum setting forth the grounds and indicating the amounts of its claims.
>
> In the absence of a satisfactory response received within a time limit of fifteen (15) days from the date of recipient, by the Project Owner, of the letter or of the memorandum from the Contractor, the Contractor shall have fifteen (15) days to submit to the Mediator the dispute related to its claim or the response that is made to it by the Project Owner.
>
> Exs. D and E at ¶ 50.1.

8. The Special Administrative Terms and Conditions state in Article 29:

> **Article 29. Settlement of Disputes (General Administrative Terms and Conditions, Article 50)**
>
> 50.31 All disputes arising out of this Procurement Contract shall be settled definitively in accordance with the Arbitration and Mediation Rules of the International Chamber of Commerce in Paris, France, by one or more arbitrators designated in compliance with said Rules.
>
> Exs. D and E at ¶ 29.

9. Therefore, disputes under the Procurement Contracts were subject to binding arbitration in accordance with the Arbitration Rules of the International Chamber of Commerce.

10. The Arbitration Tribunal found that CSE performed its contractual obligations in full and delivered to Guinea all of the construction works stipulated in the Procurement Contracts. Guinea attested to this performance through two certificates of final acceptance prepared without reservations, dated June 24, 2009. Ex. A at ¶¶ 198, 209-10.

11. As stated in the Final Award, from 2011 to 2015, CSE thereafter made multiple requests for payment to the various Guinean Ministries involved, namely, the Minister of Public

Works and the Minister of Finance; however, Guinea failed to make payment to CSE pursuant to the Procurement Contracts.  Ex. A at ¶ 201.

12. On June 20, 2016, CSE submitted a Request for Arbitration to the ICC, duly commencing the Arbitration.  Ex. A at ¶ 123.  On November 3, 2016, the ICC noted that the Request for Arbitration was received by the Respondent on August 16, 2016.  Ex. A. at ¶ 30.

13. The Arbitration Tribunal was appointed by the ICC on April 21, 2017.  Ex. A at ¶ 37.  On May 25, 2017, the Arbitration Tribunal served the entire Arbitration case file on Guinea.  Ex. A at ¶ 41.

14. As stated in the Final Award, Respondent Guinea did not participate in the Arbitration proceedings despite the fact that notice of the arbitration, all communications, and notice of all preliminary and final hearings was sent to, and received by Respondent, at three addresses:  (i) the Judicial Agent of the Government located in Conakry, Guinea, (ii) the Guinean Embassy in Paris, France, and (iii) for communications after November 6, 2017, the Republic of Guinea's Minister of Public Works.  Ex. A at ¶¶ 6-9, Appendices 1-36.  The appendix to the Final Award contains the DHL proofs of delivery for correspondence throughout the arbitration.

15. The final evidentiary hearing in the Arbitration took place on February 19-20, 2018.  During this hearing, the Arbitration Tribunal duly assessed CSE's oral pleadings and heard from CSE's witness.  Ex. A at ¶¶ 113-22.

16. On August 7, 2018, the Arbitration Tribunal issued the Final Award in the Arbitration.  Ex. A.

17. The Arbitration Tribunal explicitly found that (i) "[t]here is no doubt that the Respondent was informed of this arbitration from the outset," (ii) "Respondent was duly and validly served with the Claimant's Request for Arbitration in compliance with the terms of

Article 4 of the ICC Rules," (iii) "[a]ll the notifications were validly served upon Respondent in compliance with Article 3(2) of the ICC Rules," and (iv) "all the measures reasonably necessary to notify the Respondent of this arbitration have been taken; that there have been no obstacles to the Respondent's participation in this arbitration; and that the Respondent's absence at this arbitration has been a deliberate choice on its part and not the result of a lack of notification." Ex. A at ¶¶ 8-9.

18. As the Final Award makes clear, the Arbitration Tribunal put Claimant to the burden of proving its claims against Respondent notwithstanding Respondent's absence from the proceedings:

> The Arbitral Tribunal also notes that in the absence of representation on behalf of the Respondent, it has ensured that the rights of the defense and the principle of equal treatment of the Parties are protected, by ensuring that the Respondent had been served with confirmation of delivery receipts all the statements, requests, correspondence, and exhibits submitted for the case file. The Arbitral Tribunal also asked the Claimant questions and asked it to produce all the documents that it deemed necessary in order to ensure equal treatment of the Parties and respect for the rights of the defense in the absence of participation of one of said Parties.
>
> The Arbitral Tribunal has also meticulously analyzed, examined, and assessed the Claimant's statements as well as the documents submitted within the framework of these proceedings in light of the applicable legal rules, in order to determine whether the Claimant was entitled to the reparation that it is requesting or not.

Exhibit A at ¶¶ 159-160.

19. The Final Award dismissed some of Claimant's claims and granted others. With respect to the claims granted by the Arbitration Tribunal, the Final Awards ordered that Guinea must pay CSE as follows: (i) EUR 3,470,475.73 with respect to Procurement Contract for Lot 4; (ii) EUR 3,897,891.12 with respect to Procurement Contract for Lot 5; (iii) interest at a rate of

2.75% per year accruing on December 10, 2012 until the date of final payment; and (iv) USD 541,450 as expenses for the arbitration.  Exhibit A at ¶ 342.

20. Respondent Guinea has not paid Petitioner CSE any portion of the Final Award and has not expressed any intention to do so.

21. I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  June 10, 2020
              South Salem, New York

                                        _____
                                        B. Ted Howes