# LIONBRIDGE

STATE OF NEW YORK     )
                                 )
                                 )    ss
COUNTY OF NEW YORK   )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from French into English of the attached excerpts.

Laura Musich, Managing Editor
Lionbridge

Sworn to and subscribed before me

this __4th__ day of __May__, 20 __20__.

ETHAN WIN LY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LY6323702
Qualified in New York County
My Commission Expires 04-27-2023

259 W 30th Street, 11th Floor  New York, NY 10001  +1.212.631.7432

[…]

**50.**     **Settlement of Disputes**

**50.1**    **Intervention of the Project Owner**

If a dispute arises between the Project Owner and the Contractor, in the form of reservations noted with respect to a service order or in any other form, the Contractor shall submit to the Project Owner, for transmission to the Project Owner through the Project Head, a memorandum setting forth the grounds and indicating the amounts of its claims.

In the absence of a satisfactory response received within a time limit of fifteen (15) days from the date of receipt, by the Project Owner, of the letter or of the memorandum from the Contractor, the Contractor shall have fifteen (15) days to submit to the Mediator the dispute related to its claim or the response that is made to it by the Project Owner.

[…]

**Article 29. Settlement of Disputes** (General Administrative Terms and Conditions, Article 50)

50.31   All disputes arising out of this Procurement Contract shall be settled definitively in accordance with the Arbitration and Mediation Rules of the International Chamber of Commerce in Paris, France, by one or more arbitrators designated in compliance with said Rules.

**[...]**

# REPUBLIQUE DE GUINEE

## MINISTERE DES TRAVAUX PUBLICS ET DES TRANSPORTS

### Direction Nationale des Investissements Routiers

## REAMENAGEMENT DE LA 2 X 2 VOIES
## ENTRE TOMBO ET l'AEROPORT DE GBESSIA (CONAKRY)

## LOT 4

## KENIEN – T1

### *DOSSIER DE CONSULTATION DES ENTREPRISES*

---

### SECTION 3
### CAHIER DES CLAUSES ADMINISTRATIVES
### GENERALES

# SOMMAIRE

**A    GENERALITES**

1.  Champ d'application ...........................................................................................1
2.  Définitions, interprétation ..................................................................................1
3.  Intervenants au Marché ......................................................................................2
4.  Documents contractuels ......................................................................................4
5.  Obligations générales ..........................................................................................5
6.  Garanties de bonne exécution et de bonne fin - Retenue de garantie - Responsabilité - Assurances .........................................................................................8
7.  Décompte de délais - Formes des notifications ..................................................9
8.  Propriété industrielle ou commerciale...............................................................10
9.  Protection de la main d'œuvre et conditions de travail....................................10

**B.    PRIX ET REGLEMENT DES COMPTES**

10.  Contenu et caractère des prix .........................................................................12
11.  Rémunération de l'Entrepreneur ......................................................................16
12.  Constatations et constats contradictoires........................................................18
13.  Modalités de règlement des comptes................................................................19
14.  Règlement du prix des ouvrages ou travaux non prévus..................................23
15.  Augmentation ...................................................................................................24
16.  Diminution de la masse des travaux.................................................................25
17.  Changement dans l'importance des diverses natures d'ouvrage ......................25
18.  Pertes et avaries - Force majeure.....................................................................26

**C.    DÉLAIS**

19.  Fixation et prolongation des délais...................................................................27
20.  Pénalités, primes et retenues ...........................................................................28

**D.    RÉALISATION DES OUVRAGES**

21.  Provenance des fournitures, équipements, matériels, matériaux et produits....29
22.  Lieux d'extraction ou emprunt des matériaux .................................................29
23.  Qualité des matériaux et produits - Application des normes............................29
24.  Vérification qualitative des matériaux et produits - Essais et épreuves...........30
25.  Vérification quantitative des matériaux et produits .........................................31
26.  Prise en charge, manutention et conservation par l'Entrepreneur des matériaux par le Maître de l'ouvrage dans le cadre du Marché .........................................32
27.  Implantation des ouvrages................................................................................33
28.  Préparation des travaux ....................................................................................34
29.  Plans d'exécution - Notes de calculs - Etudes de détail..................................35
30.  Modifications apportées aux dispositions techniques.......................................35
31.  Installation, organisation, sécurité et hygiène des chantiers............................36
32.  Engins explosifs de guerre ...............................................................................39

Section 3 – Cahier des Clauses administratives générale

33.  Matériaux, objets et vestiges trouvés sur les chantiers....................................39
34.  Dégradations causées aux voies publiques.........................................................40
35.  Dommages divers causés par la conduite des travaux ou les modalités de leur exécution ....................................................................................................40
36.  Réservé ................................................................................................................41
37.  Enlèvement du matériel et des matériaux sans emploi.....................................41
38.  Essais et contrôle des ouvrages .......................................................................41
39.  Vices de construction ........................................................................................41
40.  Documents fournis après exécution .................................................................42

**E.  RÉCEPTION ET GARANTIES**

41.  Réception provisoire .........................................................................................43
42.  Réception définitive ..........................................................................................45
43.  Mise à disposition de certains ouvrages ou parties d'ouvrages .......................45
44.  Garanties contractuelles ...................................................................................46
45.  Garantie légale..................................................................................................47

**F.   RESILIATION DU MARCHE - INTERRUPTION DES TRAVAUX**

46.  Résiliation du Marché ........................................................................................48
47.  Décès, incapacité, règlement judiciaire ou liquidation des biens de l'entrepreneur.....................................................................................................49
48.  Ajournement des travaux ..................................................................................49

**G   MESURES COERCITIVES-REGLEMENT DES DIFFERENDS ET DES LITIGES - ENTRÉE EN VIGUEUR**

49.  Mesures coercitives...........................................................................................51
50.  Règlement des différends ..................................................................................52
51.  Droit applicable et changement dans la réglementation...................................53
52.  Entrée en vigueur du Marché ............................................................................53

<div style="border:1px solid black; text-align:center">

**A. Généralités**

</div>

### 1. Champ d'application

1.1 Les présentes Clauses administratives générales remplacent et annulent les Cahiers des Clauses administratives générales applicables, le cas échéant, en vertu de la réglementation en vigueur.

Il ne peut y être dérogé qu'à la condition que les articles, paragraphes et alinéas auxquels il est dérogé soient expressément indiqués ou récapitulés dans le Cahier des Clauses administratives particulières.

### 2. Définitions, interprétations

### 2.1 Définitions

Au sens du présent document :

"**Marché**" désigne l'ensemble des droits et obligations souscrits par les parties au titre de la réalisation des travaux. Les documents et pièces contractuelles sont énumérés à l'Article 4.2. du CCAG.

"**Montant du Marché**" désigne la somme des prix de base définis au paragraphe 13.11 du CCAG.

"**Maître de l'Ouvrage**" désigne la division administrative, l'entité ou la personne morale pour le compte de laquelle les travaux sont exécutés et dont l'identification complète figure au Cahier des Clauses administratives particulières.

"**Chef de Projet**" désigne le représentant légal du Maître de l'Ouvrage au cours de l'exécution du Marché;

"**Maître d'Oeuvre**" désigne la personne physique ou morale qui, pour sa compétence technique, est chargée par le Maître de l'Ouvrage de diriger et de contrôler l'exécution des travaux et de proposer leur réception et leur règlement ; si le Maître d'Oeuvre est une personne morale, il désigne également la personne physique qui a seule qualité pour le représenter, notamment pour signer les ordres de service.

"**L'Entrepreneur**" désigne la personne morale dont l'offre a été acceptée par le Maître de l'Ouvrage.

"**Site**" désigne l'ensemble des terrains sur lesquels seront réalisés les travaux et les ouvrages ainsi que l'ensemble des terrains nécessaires aux installations de chantier et comprenant les voies d'accès spéciales ainsi que tous autres lieux spécifiquement désignés dans le Marché.

"**Cahier des Clauses administratives particulières**" (CCAP) signifie le document établi par le Maître de l'Ouvrage faisant partie du Dossier de Consultation des Entreprises, modifié en tant que de besoin et inclus dans les pièces constitutives du Marché ; il est référé ci-après

sous le nom de CCAP et comprend :

(a)      les modifications au présent Cahier des Clauses administratives générales (CCAG);

(b)      les dispositions contractuelles spécifiques à chaque Marché.

**"Ordre de service"** signifie toute instruction écrite donnée par le Maître d'Oeuvre à l'Entrepreneur concernant l'exécution du Marché.

**"Sous-traitant"** désigne la ou les personnes morales chargées par l'Entrepreneur de réaliser une partie des travaux.

**"Conciliateur"** désigne la personne nommée conjointement par le Maître de l'Ouvrage et l'Entrepreneur pour exercer les fonctions décrites à l'Article 50 du CCAG. Son nom est mentionné dans l'Acte d'engagement.

**2.2      Interprétation**

2.21    Les titres et sous-titres du présent Cahier sont exclusivement destinés à en faciliter l'usage mais ne possèdent aucune valeur contractuelle.

2.22    Les mots désignant des personnes ou les parties peuvent englober également des sociétés, entreprises et toute organisation ou groupement ayant une personnalité juridique.

2.23    Les mots comportant le singulier seulement doivent également s'entendre au pluriel et réciproquement selon le contexte.

**3.      Intervenants au Marché**

**3.1     Désignation des Intervenants**

3.11    Le CCAP désigne le Maître de l'Ouvrage, le Chef de Projet et le Maître d'Oeuvre.

3.12    La soumission de l'Entrepreneur comprend toutes indications nécessaires ou utiles à l'identification de l'Entrepreneur et de son ou ses représentants légaux.

**3.2     Entrepreneurs groupés**

3.21    Au sens du présent document, des Entrepreneurs sont considérés comme groupés s'ils ont souscrit un Acte d'engagement unique.

3.22    Les Entrepreneurs groupés sont toujours solidaires : dès lors, chacun d'entre eux est engagé pour la totalité du Marché et doit pallier une éventuelle défaillance de ses partenaires. L'un d'entre eux, désigné dans l'Acte d'engagement comme mandataire commun, représente l'ensemble des Entrepreneurs, vis-à-vis du Maître de l'Ouvrage, du Chef de Projet et du Maître d'Oeuvre, pour l'exécution du Marché.

**3.3     Cession, délégation, sous-traitance**

3.31    Sauf accord préalable du Maître de l'Ouvrage, l'Entrepreneur ne peut en aucun cas céder ou déléguer tout ou partie du Marché, à l'exception d'une cession ou délégation aux assureurs de l'Entrepreneur (dans le cas où les assureurs ont dégagé l'Entrepreneur de toute perte en responsabilité) de son droit à obtenir réparation de la part d'une partie responsable.

3.32    L'Entrepreneur ne peut sous-traiter l'intégralité de son Marché. Il peut toutefois, sous-traiter



l'exécution de certaines parties de son Marché à condition d'avoir obtenu l'accord préalable du Maître de l'Ouvrage et, lorsque la sous-traitance projetée est supérieure à dix (10) pour cent du Montant du Marché, des autorités dont l'approbation est nécessaire à l'entrée en vigueur du Marché. Dans tous les cas, l'Entrepreneur reste pleinement responsable des actes, défaillances et négligences des sous-traitants, de leurs représentants, employés ou ouvriers aussi pleinement que s'il s'agissait de ses propres actes, défaillances ou négligences ou de ceux de ses propres représentants, employés ou ouvriers.

3.33    Les sous-traitants ne peuvent être acceptés que s'ils ont justifié avoir contracté les assurances garantissant pleinement leur responsabilité conformément à l'Article 6 du CCAG.

3.34    Dès que l'acceptation et l'agrément ont été obtenus, l'Entrepreneur fait connaître au Chef de Projet le nom de la personne physique qualifiée pour représenter le sous-traitant et le domicile élu par ce dernier à proximité des travaux.

3.35    Le recours à la sous-traitance sans acceptation préalable du sous-traitant par le Maître de l'Ouvrage expose l'Entrepreneur à l'application des mesures prévues à l'Article 49 du CCAG.

**3.4    Représentant de l'Entrepreneur**
Dès l'entrée en vigueur du Marché, l'Entrepreneur désigne une personne physique qui le représente vis-à-vis du Chef de Projet et du Maître de l'Ouvrage pour tout ce qui concerne l'exécution du Marché, cette personne, chargée de la conduite des travaux, doit disposer de pouvoirs suffisants pour prendre sans délai les décisions nécessaires. A défaut d'une telle désignation, l'Entrepreneur ou son représentant légal, est réputé personnellement chargé de la conduite des travaux.

**3.5    Domicile de l'Entrepreneur**
3.51    L'Entrepreneur est tenu d'élire domicile à proximité des travaux et de faire connaître l'adresse de ce domicile au Chef de Projet et au Maître de l'Ouvrage. Faute par lui d'avoir satisfait à cette obligation dans un délai de quinze (15) jours à dater de la notification du Marché, toutes les notifications qui se rapportent au Marché seront valables lorsqu'elles ont été faites à l'adresse du site principal des travaux.

3.52    Après la réception provisoire des travaux, l'Entrepreneur est relevé de l'obligation indiquée à l'alinéa qui précède ; toute notification lui est alors valablement faite au domicile ou au siège social mentionné dans l'Acte d'engagement.

**3.6    Modification de l'entreprise**
L'Entrepreneur est tenu de notifier immédiatement au Chef de Projet les modifications à son entreprise survenant au cours de l'exécution du Marché, qui se rapportent :
(a)    aux personnes ayant le pouvoir d'engager l'entreprise ;
(b)    à la forme de l'entreprise ;
(c)    à la raison sociale de l'entreprise ou à sa dénomination ;
(d)    à l'adresse du siège de l'entreprise ;
(e)    au capital social de l'entreprise ;
et, généralement toutes les modifications importantes relatives au fonctionnement de l'entreprise.

**4.    Documents contractuels**
**4.1    Langue**

Les documents contractuels sont rédigés en langue française. La correspondance, les instructions et les ordres de services devront être rédigés ou donnés en langue française.

**4.2    Pièces constitutives du Marché – Ordre de priorité**
Les pièces contractuelles constituant le Marché comprennent :

(a)    la Lettre de marche et l'Acte d'engagement dûment signés ;

(b)    la soumission et ses annexes ;

(c)    le Cahier des Clauses administratives particulières ;

(d)    les spécifications ou conditions techniques particulières contenant la description et les caractéristiques des ouvrages telles que stipulées dans les Spécifications techniques ;

(e)    les documents tels que plans, notes de calculs, cahier des sondages, dossier géotechnique lorsque ces pièces sont mentionnés dans le CCAP ;

(f)    le Bordereau des prix unitaires ou la série de prix qui en tient lieu ainsi que, le cas échéant, l'état des prix forfaitaires si le Marché en prévoit ;

(g)    le Détail quantitatif et estimatif, sous réserve de la même exception que ci-dessus;

(h)    la décomposition des prix forfaitaires et les sous-détails de prix unitaires, lorsque ces pièces sont mentionnées comme pièces contractuelles dans le CCAP ;

(i)    le Cahier des Clauses administratives générales ; et

(j)    les spécifications techniques générales applicables aux prestations faisant l'objet du Marché telles que stipulées dans les Spécifications techniques ainsi que tout autre document du même type visé au CCAP.

En cas de différence entre les pièces constitutives du Marché, ces pièces prévalent dans l'ordre où elles sont énumérées ci-dessus.

**4.3    Pièces contractuelles postérieures à la conclusion du Marché**
Après sa conclusion, le Marché n'est susceptible d'être modifié que par la conclusion d'avenants écrits soumis à la même procédure que celle du Marché. Par modification au sens du présent paragraphe, on entend un changement qui ne découle pas de la mise en œuvre des termes du Marché ou de la réglementation en vigueur dont le changement est, le cas échéant, pris en compte dans les conditions prévues à l'Article 51.2 du CCAG.

**4.4    Plans et documents fournis par le Maître de l'Ouvrage**

4.41    Deux (2) exemplaires des plans préparés par le Maître de l'Ouvrage ou le Maître d'Oeuvre sont fournis à l'Entrepreneur gratuitement. L'Entrepreneur est chargé de reproduire à ses propres frais tous autres exemplaires dont il peut avoir besoin. Sauf dans les cas où cela s'avère strictement nécessaire pour l'exécution du Marché, les plans, les spécifications et tous autres documents fournis par le Maître de l'Ouvrage ou le Maître d'Oeuvre ne devront pas, sans l'accord du Chef de Projet, être utilisés ou communiqués à des tiers par l'Entrepreneur. Lors de la réception provisoire, l'Entrepreneur rendra au Chef de Projet tous les plans qui lui ont été fournis dans le cadre du Marché.

4.42    L'Entrepreneur fournira au Maître d'Oeuvre trois (3) exemplaires dont un (1) sur calque de tous les plans et autres documents dont la réalisation est à sa charge au titre du Marché ainsi qu'un (1) exemplaire reproductible de tout document dont la reproduction par photocopie ne peut pas être d'aussi bonne qualité que l'original.

4.43    Un (1) exemplaire des plans, fourni à l'Entrepreneur ou réalisé par lui dans les conditions



prévues aux alinéas 41 et 42 du présent Article sera conservé par l'Entrepreneur sur le chantier afin d'être contrôlé et utilisé par le Maître d'Oeuvre.

4.44    L'Entrepreneur est tenu d'avertir le Maître d'Oeuvre par écrit, avec copie au Chef de Projet, chaque fois que le planning ou l'exécution des travaux est susceptible d'être retardé ou interrompu si le Maître d'Oeuvre ou le Chef de Projet ne délivre pas dans un délai raisonnable un plan qu'il est tenu de transmettre à l'Entrepreneur. La notification de l'Entrepreneur doit préciser les caractéristiques des plans requis et les dates de remise de ces plans.

4.45    Dans le cas où des retards du Maître de l'Ouvrage ou du Maître d'Oeuvre dans la remise des plans ou la délivrance des instructions portent préjudice à l'Entrepreneur, ce dernier aura droit à réparation de ce préjudice sauf dans le cas où ces retards sont eux-mêmes causés par une défaillance de l'Entrepreneur dans la remise au Maître d'Oeuvre d'informations, plans ou documents qu'il est tenu de lui fournir.

## 5.    Obligations générales
### 5.1    Adéquation de l'offre

5.11    L'Entrepreneur est réputé avoir remis une offre complète basée sur des prix unitaires ainsi que des prix forfaitaires si le Marché en prévoit, qui sont, sauf dispositions contraires du Marché, réputés couvrir l'ensemble de ses obligations au titre du Marché et des sujétions nécessaires à la bonne et complète exécution des travaux et à la réparation des vices de construction ou reprise des malfaçons, plus amplement décrite à l'Article 10.1 du CCAG.

5.12    L'Entrepreneur est réputé avoir inspecté et examiné le site et ses environs et avoir pris connaissance et analysé les données disponibles s'y rapportant avant de remettre son offre, notamment en ce qui concerne :

(a)    la topographie du site et la nature du chantier, y compris les conditions du sous-sol;
(b)    les conditions hydrologiques et climatiques ;
(c)    l'étendue et la nature des travaux et des matériaux nécessaires à la réalisation des travaux et à la réparation des vices de construction ou reprise des malfaçons ;
(d)    les moyens d'accès au site et les installations matérielles dont il peut avoir besoin.

En règle générale, il est considéré avoir obtenu toutes les informations nécessaires relatives aux risques, aléas et à tout élément susceptible d'affecter ou d'influer sur son offre.

### 5.2    Exécution conforme au Marché

L'Entrepreneur doit entreprendre les études d'exécution, dans les limites des dispositions du Marché, l'exécution complète des travaux et doit remédier aux désordres ou malfaçons, conformément aux dispositions du Marché. L'Entrepreneur doit diriger les travaux, fournir la main-d'œuvre, les matériaux, le matériel, les équipements, ainsi que les ouvrages provisoires requis pour l'exécution et l'achèvement des travaux et la reprise des désordres et malfaçons.

### 5.3    Respect des lois et règlements

L'Entrepreneur doit se conformer en tous points aux dispositions de la réglementation en vigueur ayant trait à l'exécution des travaux et à la reprise des malfaçons.

### 5.4 Confidentialité

L'Entrepreneur est tenu à une obligation de confidentialité en ce qui concerne le Marché et les documents contractuels qui s'y rapportent. Cette même obligation s'applique à toute information, de quelque nature que ce soit, qui ne soit pas déjà rendue publique, dont lui-même, son personnel et ses sous-traitants auraient pu prendre connaissance à l'occasion de la réalisation du Marché. Il ne pourra en aucun cas publier ou révéler de telles informations sans avoir obtenu l'accord écrit et préalable du Chef de Projet, et seulement dans les limites strictement nécessaires avec la bonne exécution du Marché.

### 5.5 Procédés et méthodes de construction

L'Entrepreneur est entièrement responsable de l'adéquation, de la stabilité et de la sécurité de tous les procédés et méthodes de construction employées pour la réalisation des ouvrages.

### 5.6 Convocation de l'Entrepreneur - Rendez-vous de chantier

L'Entrepreneur ou son représentant se rend dans les bureaux du Maître d'Oeuvre ou sur les chantiers toutes les fois qu'il en est requis : il est accompagné, s'il y a lieu, de ses sous-traitants. En cas d'Entrepreneurs groupés, l'obligation qui précède s'applique au mandataire commun ; il peut être accompagné, s'il y a lieu, des autres entrepreneurs et sous-traitants.

### 5.7 Ordres de service

5.71   Les ordres de service sont écrits ; ils sont signés par le Maître d'Oeuvre, datés et numérotés. Ils sont adressés en deux (2) exemplaires à l'Entrepreneur ; celui-ci renvoie immédiatement au Maître d'Oeuvre l'un des deux exemplaires après l'avoir signé et y avoir porté la date à laquelle il l'a reçu. Le premier ordre de service est transmis à l'Entrepreneur le jour de l'entrée en vigueur du Marché.

5.72   Lorsque l'Entrepreneur estime que les prescriptions d'un ordre de service appellent des réserves de sa part, il doit, sous peine de forclusion, les présenter par écrit au Maître d'Oeuvre dans un délai de quinze (15) jours calculé dans les conditions prévues à l'Article 7 du CCAG. A l'exception des cas prévus aux Articles 13.22 et 14.1 du CCAG, l'Entrepreneur se conforme strictement aux ordres de service qui lui sont notifiés, qu'ils aient ou non fait l'objet de réserves de sa part.

5.73   Les ordres de service relatifs à des travaux sous-traités sont adressés à l'Entrepreneur, qui a seul qualité pour présenter des réserves.

5.74   En cas d'Entrepreneurs groupés, les ordres de services sont adressés au mandataire commun, qui a seul qualité pour présenter des réserves.

### 5.8 Estimation des engagements financiers du Maître de l'Ouvrage

L'Entrepreneur doit, dans le délai stipulé au CCAP, fournir au Maître d'Oeuvre une estimation trimestrielle détaillée des engagements financiers du Maître de l'Ouvrage comportant tous les paiements auxquels l'Entrepreneur aura droit au titre du Marché. Il s'engage, en outre, à fournir au Maître d'Oeuvre, sur simple demande de celui-ci des estimations révisées de ces engagements.

### 5.9 Personnel de l'Entrepreneur

L'Entrepreneur emploiera sur le site, en vue de l'exécution des travaux et de la reprise des malfaçons :



5.91  uniquement des techniciens compétents et expérimentés dans leurs spécialités respectives ainsi que les contremaîtres et chefs d'équipe capables d'assurer la bonne surveillance des travaux,

5.92  une main-d'œuvre qualifiée, semi-qualifiée et non qualifiée permettant la bonne réalisation de toutes ses obligations dans le cadre du Marché et dans le strict respect des délais d'exécution.

5.10  **Sécurité des personnes et des biens et protection de l'environnement**
L'Entrepreneur doit pendant le délai d'exécution des ouvrages et la période de garantie :

5.101  assurer la sécurité des personnes autorisées à être présentes sur le site et maintenir ce dernier et les ouvrages (tant que ceux-ci ne sont pas réceptionnés ou occupés par le Maître de l'Ouvrage) en bon état, de manière à éviter tous risques pour les personnes,

5.102  fournir et entretenir à ses propres frais tous dispositifs d'éclairage, protection, clôture, signaux d'alarme et gardiennage aux moments et aux endroits nécessaires ou requis par le Maître d'Oeuvre, par toute autre autorité dûment constituée et par la réglementation en vigueur, pour la protection des travaux ou pour la sécurité et la commodité du public ou autres,

5.103  prendre toutes les mesures nécessaires pour protéger l'environnement tant sur le site qu'en dehors et pour éviter tous dégâts ou dommages aux personnes ou propriétés publiques ou autres qui résulteraient de la pollution, du bruit ou autres inconvénients résultant des méthodes mises en œuvre pour la réalisation des travaux.

5.11  **Facilités et accès accordés aux autres entrepreneurs**
5.111  L'Entrepreneur doit permettre l'accès au Site, pour l'exécution des obligations qui leur incombent :

   (a)  aux autres entrepreneurs employés par le Maître de l'Ouvrage et à leur personnel,
   (b)  au personnel du Maître de l'Ouvrage ou relevant d'une autre autorité et désigné par le Maître de l'Ouvrage.

5.112  Dans le cas où, en application de l'alinéa 5.111 ci-dessus, l'Entrepreneur est invité par ordre de service :
   (a)  à mettre à la disposition des autres entrepreneurs, du Maître d'Oeuvre ou des tiers, des routes ou voies dont l'entretien est à la charge de l'Entrepreneur,
   (b)  à permettre à ces personnes d'utiliser les ouvrages provisoires ou l'équipement de l'Entrepreneur sur le Site,
   (c)  à leur fournir d'autres services.

De telles prestations seront assimilées à des ouvrages non prévus qui seront régis par les dispositions figurant à l'Article 14 ci-après.

5.12  **Inspections et audit conduits par l'AFD**
L'Entrepreneur autorisera l'AFD à examiner les documents et pièces comptables relatives à l'exécution du Marché et à les faire vérifier par des auditeurs nommés par l'AFD.

**6.     Garanties de bonne exécution et de bonne fin – Retenue de garantie – Responsabilité – Assurances**

**6.1     Garantie de bonne exécution, de bonne fin, et de restitution d'avance**

6.11     L'Entrepreneur est tenu de fournir au Maître de l'Ouvrage une garantie bancaire de bonne exécution, conforme au modèle inclus dans le Dossier de Consultation des Entreprises. Cette garantie sera transformée en garantie de bonne fin pour la durée du délai de garantie.

Sauf disposition contraire du CCAP, la garantie est libellée dans la ou les monnaies dans lesquelles le Marché doit être payé et selon leurs proportions respectives.

En cas de prélèvement sur la garantie, pour quelque motif que ce soit, l'Entrepreneur doit aussitôt la reconstituer.

Le montant de la garantie de bonne exécution sera égal à un pourcentage du montant du Marché indiqué dans le CCAP mais qui ne pourra être inférieur à cinq (5) pour cent du Montant du Marché.  Elle entrera en vigueur lors de l'entrée en vigueur du Marché.

Le montant de la garantie de bonne exécution sera réduit de moitié lors de la réception provisoire et deviendra la garantie de parfait achèvement. La garantie de parfait achèvement sera caduque de plein droit à la date de la réception définitive sauf dans le cas prévu à l'Article 42.2 du CCAG.

6.12     L'Entrepreneur fournira, en outre, au Maître de l'Ouvrage une garantie de restitution d'avance, conforme au modèle inclus dans le Dossier de Consultation des Entreprises. Le montant de cette garantie sera égal au montant de l'avance forfaitaire et se réduira automatiquement et à due concurrence, au fur et à mesure de l'imputation de l'avance sur les acomptes. La garantie de restitution d'avance sera caduque de plein droit le jour de l'imputation de la dernière partie de l'avance sur un acompte contractuel.

**6.2     Retenue de garantie**

6.21     Une retenue de garantie sera prélevée, par ailleurs, sur tous les montants à régler à l'Entrepreneur ; elle sera égale à un pourcentage indiqué dans le CCAP mais qui ne pourra être inférieur à cinq (5) pour cent du Montant du Marché.

6.22     Les montants retenus seront libérés pour moitié lors de la réception provisoire. Le solde sera libéré dans les mêmes conditions que celles prévues pour la garantie de parfait achèvement.

6.23     Le remplacement du solde par une garantie bancaire s'effectuera de plein droit à la demande de l'Entrepreneur à la date où la réception provisoire sera prononcée.

**6.3     Responsabilité - Assurances**

6.31     Nonobstant les obligations d'assurances imposées ci-après, l'Entrepreneur est et demeure seul responsable et garantit le Maître de l'Ouvrage et le Maître d'Oeuvre contre toute réclamation émanant de tiers, pour la réparation de préjudices de toute nature, ou de lésions corporelles survenus à raison de la réalisation du présent Marché par l'Entrepreneur, ses sous-traitants et leurs employés.

L'Entrepreneur est tenu de souscrire au minimum les assurances figurant aux paragraphes 32 à 35 du présent Article et pour les montants minima spécifiés au CCAP.

6.32  *Assurance des risques causés à des tiers*

L'Entrepreneur souscrira une assurance de responsabilité civile couvrant les dommages corporels et matériels pouvant être causés à des tiers à raison de l'exécution des travaux ainsi que pendant le délai de garantie. La police d'assurance doit spécifier que le personnel du Maître de l'Ouvrage, du Maître d'Oeuvre ainsi que celui d'autres entreprises se trouvant sur le chantier sont considérés comme des tiers au titre de cette assurance, qui doit être illimitée pour les dommages corporels.

6.33  *Assurance des accidents du travail*

L'Entrepreneur souscrira, en conformité avec la réglementation applicable, les assurances nécessaires à cet effet. Il veillera à ce que ses sous-traitants agissent de même.  Il garantit le Maître de l'Ouvrage, le Maître d'Oeuvre contre tous recours que son personnel ou celui de ses sous-traitants pourrait exercer à cet égard. Pour son personnel permanent expatrié, le cas échéant, l'Entrepreneur se conformera en outre à la législation et la réglementation applicable du pays d'origine.

6.34  *Assurance couvrant les risques de chantier*

L'Entrepreneur souscrira une assurance "Tous risques chantier" au bénéfice conjoint de lui-même, de ses sous-traitants, du Maître de l'Ouvrage et du Maître d'Oeuvre. Cette assurance couvrira l'ensemble des dommages matériels auxquels peuvent être soumis les ouvrages objet du Marché, y compris les dommages dus à un vice ou à un défaut de conception, de plans, de matériaux de construction ou de mise en œuvre dont l'Entrepreneur est responsable au titre du Marché et les dommages dus à des événements naturels. Cette assurance couvrira également les dommages causés aux biens et propriétés existantes du Maître de l'Ouvrage.

6.35  *Assurance de la responsabilité décennale*

L'Entrepreneur souscrira une assurance couvrant intégralement sa responsabilité décennale, susceptible d'être mise en jeu à l'occasion de la réalisation du Marché.

6.36  *Souscription et production des polices*

Les assurances figurant aux paragraphes 32 à 34 du présent Article devront être présentées par l'Entrepreneur au Chef de Projet pour approbation puis souscrites par l'Entrepreneur avant tout commencement des travaux.

L'Entrepreneur souscrira l'assurance responsabilité décennale prévue au paragraphe 35 du présent Article, préalablement au commencement des travaux.

Toutes ces polices comporteront une disposition subordonnant leur résiliation à un avis notifié au préalable par la compagnie d'assurances au Maître de l'Ouvrage.

## 7.  Décompte de délais - Formes des notifications

7.1  Tout délai imparti dans le Marché au Maître de l'Ouvrage, au Chef de Projet, au Maître d'Oeuvre ou à l'Entrepreneur commence à courir le lendemain du jour où s'est produit le fait qui sert de point de départ à ce délai.

7.2  Lorsque le délai est fixé en jours, il s'entend en jours de calendrier et il expire à la fin du dernier jour de la durée prévue.

Lorsque le délai est fixé en mois, il est compté de quantième à quantième. S'il n'existe pas de quantième correspondant dans le mois où se termine le délai, celui-ci expire à la fin du dernier jour de ce mois.

Lorsque le dernier jour d'un délai est un jour de repos hebdomadaire, férié ou chômé dans le pays du Maître de l'Ouvrage, le délai est prolongé jusqu'à la fin du premier jour ouvrable qui suit.

7.3    Lorsqu'un document doit être remis, dans un délai déterminé, par l'Entrepreneur au Maître de l'Ouvrage, au Chef de Projet ou au Maître d'Oeuvre, ou réciproquement, ou encore lorsque la remise d'un document doit faire courir un délai, le document doit être remis au destinataire contre récépissé ou lui être adressé par lettre recommandée avec demande d'avis de réception. La date du récépissé ou de l'avis de réception constituera la date de remise de document.

**8.      Propriété industrielle ou commerciale**
8.1    Le Maître de l'Ouvrage garantit l'Entrepreneur contre toute revendication des tiers concernant les brevets, licences, dessins et modèles, marque de fabrique ou de commerce dont l'emploi lui est imposé par le Marché. Il appartient au Maître de l'Ouvrage d'obtenir dans ce cas, à ses frais, les cessions, licences ou autorisations nécessaires.

8.2    Sous réserve des dispositions figurant au précédent alinéa, l'Entrepreneur garantit le Maître de l'Ouvrage et le Maître d'Oeuvre contre toute revendication des tiers concernant les brevets, licences, dessins et modèles, marques de fabrique ou de commerce et tous autres droits protégés relatifs aux équipements de l'Entrepreneur ou de ses sous-traitants, matériaux ou matériels utilisés pour ou en relation avec les travaux ou incorporés à ceux-ci ainsi que de tous dommages-intérêts, coûts, charges et frais de toute nature y afférents. Il appartient à l'Entrepreneur d'obtenir dans ce cas, à ses frais, toutes cessions, licences ou autorisations nécessaires permettant notamment au Maître de l'Ouvrage de procéder ou de faire procéder ultérieurement et par qui bon lui semble à toutes les réparations nécessaires.

**9.      Protection de la main d'œuvre et conditions de travail**
9.1    L'Entrepreneur doit, sauf disposition contraire du Marché, faire son affaire du recrutement du personnel et de la main-d'œuvre, d'origine nationale ou non, ainsi que de leur rémunération, hébergement, ravitaillement et transport dans le strict respect de la réglementation en vigueur en se conformant, en particulier, à la réglementation du travail (notamment en ce qui concerne les horaires de travail et les jours de repos), à la réglementation sociale et à l'ensemble de la réglementation applicable en matière d'hygiène et de sécurité.

9.2    En ce qui concerne le personnel expatrié, l'Entrepreneur doit veiller au strict respect de la législation et de la réglementation qui le concerne.

9.3    Sous réserve des dispositions législatives et réglementaires applicables en matière d'emploi de main-d'œuvre étrangère du pays où les travaux doivent être exécutés, le Maître de l'Ouvrage prendra les dispositions nécessaires pour faciliter l'obtention par l'Entrepreneur de tous les visas et permis requis et, notamment les permis de travail et de séjour destinés au personnel dont les services sont jugés nécessaires par l'Entrepreneur ainsi que les permis de séjour destinés aux membres des familles de ce personnel.



Toutefois, l'Entrepreneur ne pourra être soumis à aucune restriction relative à l'origine et à l'emploi du personnel autre que non qualifié.

9.4   Indépendamment des obligations prescrites par les lois et règlements concernant la main-d'œuvre, l'Entrepreneur est tenu de communiquer au Chef de Projet, sur sa demande, la liste nominative à jour du personnel qu'il emploie avec leur qualification.

9.5   Le Chef de Projet peut exiger à tout moment de l'Entrepreneur la justification qu'il est en règle, en ce qui concerne l'application à son personnel employé à l'exécution des travaux objet du Marché, à l'égard de la législation sociale, notamment en matière de salaires, d'hygiène et de sécurité.

9.6   L'Entrepreneur peut, s'il le juge utile et après accord du Chef de Projet, demander et utiliser après les avoir obtenues les dérogations à la réglementation en vigueur et aux conventions collectives existantes. Aucune majoration du ou des prix, ni aucun paiement supplémentaire n'est accordé à l'Entrepreneur du fait de ces dérogations.

9.7   Le Chef de Projet peut exiger le départ du chantier de toute personne employée par l'Entrepreneur faisant preuve d'incapacité ou coupable de négligences, imprudences répétées ou défaut de probité et, plus généralement, de toute personne employée par lui et dont l'action est contraire à la bonne exécution des travaux.

9.8   L'Entrepreneur supporte seul les conséquences dommageables des fraudes ou malfaçons commises par les personnes qu'il emploie dans l'exécution des travaux.

9.9   Lorsque l'Entrepreneur est autorisé à sous-traiter une partie des travaux, ses sous-traitants sont liés par des obligations identiques.



---

| **B.   Prix et règlement des comptes** |
|---|

**10.      Contenu et caractère des prix**

**10.1    Contenu des prix**

10.11   Les prix sont réputés comprendre toutes les dépenses résultant de l'exécution des travaux, y compris les frais généraux et, comme spécifié au paragraphe 5 du présent Article sauf dispositions contraires du CCAP, tous les impôts, droits et taxes de toute nature dus par l'Entrepreneur et/ou ses employés et sous-traitants en raison de l'exécution des travaux, à l'exception des impôts et taxes normalement exigibles en vertu des paiements du Maître de l'Ouvrage à l'Entrepreneur et dont le présent Marché est spécifiquement exempté par une disposition du CCAP.

10.12   Conformément aux dispositions du CCAP, les prix sont exprimés soit intégralement en monnaie nationale, soit en plusieurs monnaies.

10.13   Lorsque les prix sont intégralement exprimés en monnaie nationale et que l'Entrepreneur a justifié dans son offre encourir des dépenses dans sa propre monnaie ou en d'autres monnaies, le CCAP indiquera le pourcentage transférable du Montant du Marché qui ouvre droit à paiement en monnaies étrangères, incluant, le cas échéant, la répartition de ce pourcentage en plusieurs monnaies étrangères. Sauf dispositions contraires du CCAP, ce pourcentage (et, le cas échéant, cette répartition) sera appliqué à tout paiement fait par le Maître de l'Ouvrage à l'Entrepreneur au titre du Marché.

10.14   Lorsque les prix sont exprimés en plusieurs monnaies, chaque prix comprend alors une part réglée en monnaie nationale et une part réglée dans la ou les monnaie(s) indiquée(s) dans le CCAP.

10.15   A l'exception des seules sujétions qui sont spécifiquement mentionnées dans le Marché comme n'étant pas couvertes par les prix, ceux-ci sont réputés assurer à l'Entrepreneur une marge pour risques et bénéfices et tenir compte de toutes les sujétions d'exécution des travaux qui sont normalement prévisibles par un entrepreneur compétent dans les circonstances où s'exécutent ces travaux et notamment des sujétions résultant :

(a)      de phénomènes naturels ;

(b)      de l'utilisation du domaine public et du fonctionnement des services publics ;

(c)      de la présence de canalisations, conduites et câbles de toute nature, ainsi que des travaux nécessaires au déplacement ou à la transformation de ces installations ;

(d)      de la réalisation simultanée d'autres ouvrages, due à la présence d'autres entrepreneurs;

(e)      de l'application de la réglementation fiscale et douanière ;


(f)      de l'évolution des parités entre les différentes monnaies.
Sauf stipulation différente du CCAP, les prix sont réputés avoir été établis en considérant qu'aucune prestation n'est à fournir par le Maître de l'Ouvrage.

10.16   En cas de sous-traitance, les prix du Marché sont notamment réputés couvrir les frais de coordination et de contrôle, par l'Entrepreneur, de ses sous-traitants ainsi que les conséquences de leurs défaillances éventuelles.

**10.2    Distinction des prix unitaires et des prix forfaitaires**
10.21   Les prix sont soit des prix unitaires, soit des prix forfaitaires qui se définissent respectivement comme suit :

(a)      est prix unitaire, tout prix qui n'est pas forfaitaire au sens défini ci-dessous, notamment tout prix qui s'applique à une nature d'ouvrage ou à un élément d'ouvrage dont les quantités ne sont indiquées dans le Marché qu'à titre prévisionnel.

(b)      est prix forfaitaire, tout prix qui rémunère l'Entrepreneur pour un ouvrage, une partie d'ouvrage ou un ensemble déterminé de prestations défini par le Marché et qui, ou bien est mentionné explicitement dans le Marché comme étant forfaitaire, ou bien ne s'applique dans le Marché qu'à un ensemble de prestations qui n'est pas de nature à être répété.

**10.3    Décomposition et sous-détails des prix**
10.31   Les prix sont détaillés au moyen de décomposition de prix forfaitaires et de sous-détails de prix unitaires.

10.32   La décomposition d'un prix forfaitaire est présentée sous la forme d'un détail estimatif comprenant, pour chaque nature d'ouvrage ou chaque élément d'ouvrage, la quantité à exécuter et le prix correspondant et indiquant quels sont, pour ces prix en question, les pourcentages mentionnés aux alinéas (a) et (b) du paragraphe 33 du présent Article.

Cette décomposition indique séparément, le cas échéant, la ou les monnaies dans lesquelles tout ou partie des dépenses sont amenées à être engagées.

10.33   Le sous-détail d'un prix unitaire donne le contenu du prix par référence aux catégories suivantes :

(a)      les déboursés ou frais directs, décomposés en dépenses de salaires et indemnités du personnel, charges salariales, dépenses de matériaux et de matières consommables, dépenses de matériel ;

(b)      les frais généraux, d'une part, les impôts et taxes autres que la taxe sur le chiffre d'affaires exigible sur les paiements du Maître de l'Ouvrage à l'Entrepreneur, d'autre part, exprimés par des pourcentages des déboursés définis à l'alinéa (a) ;

(c)      la marge pour risques et bénéfices, exprimés par un pourcentage de l'ensemble des deux postes précédents ;

(d)      la taxe sur le chiffre d'affaires exigible sur les paiements du Maître de l'Ouvrage à

l'Entrepreneur.

Ce sous-détail indique séparément, le cas échéant la ou les monnaies dans lesquelles tout ou partie des dépenses sont amenées à être engagées.

10.34   Si la décomposition d'un prix forfaitaire ou le sous-détail d'un prix unitaire ne figure pas parmi les pièces contractuelles ; si sa production n'est pas prévue par le CCAP dans un certain délai, un ordre de service peut ordonner cette production et dans ce cas, le délai accordé à l'Entrepreneur ne peut être inférieur à vingt et un (21) jours.

L'absence de production de la décomposition d'un prix forfaitaire ou du sous-détail d'un prix unitaire, quand cette pièce est à produire dans un délai déterminé, fait obstacle au paiement du premier acompte qui suit la date d'exigibilité de ladite pièce.

## 10.4    Révision des prix

10.41   Les prix sont réputés fermes sauf si le Marché prévoit qu'ils sont révisables.

10.42   La révision de prix ne peut intervenir que si elle est expressément prévue au CCAP. Dans ce cas, le montant du Marché est révisable en application des coefficients "REV" calculés selon les formules et modalités suivantes :

(a)      la formule est du type suivant :

$$REV = X + (a) \ T/To + (b) \ S/So + (c) \ F/Fo + ...$$

dans laquelle :

REV est le coefficient de révision qui s'appliquera à chaque paiement conformément aux modalités d'application et de révision détaillées respectivement aux alinéas (b) et (c) du présent paragraphe. Lors de chaque paiement, le montant à payer dans une monnaie donnée fera l'objet d'une révision par la multiplication du coefficient REV correspondant.

X constitue la partie fixe non révisable des paiements et (a), (b), (c), etc. représentent les paramètres de pondération des facteurs sujets à révision sur la base des valeurs des indices, T, S, F, etc.

Les valeurs respectives des paramètres X, a, b, c, etc. sont fixées dans l'annexe à la soumission, étant précisé que X + a + b + c + etc. = 1

T, S, F, etc., et To, So, Fo, etc. représentent la valeur des indices correspondants aux facteurs inclus dans la formule ; la définition et l'origine de ces indices sont spécifiées dans l'annexe à la soumission étant précisé que les valeurs de T, S, F, etc. seront celles en vigueur au cours du mois où interviendra le fait générateur de paiement, et les valeurs To, So, Fo, etc. sont celles en vigueur au cours du mois où se situe la date limite fixée pour le dépôt des offres.

(b)      il y aura une formule pour chaque monnaie de paiement tel que défini aux paragraphes 13 et 14 du présent Article, étant précisé que les indices T, S, F, etc., et To, So, Fo, etc., doivent correspondre aux indices du pays d'origine des dépenses

correspondantes à chacune des monnaies.

Dans le cas où les indices et les monnaies spécifiées pour le paiement de la part en monnaie étrangère ont des pays d'origine différents, un coefficient correcteur sera spécifié au CCAP pour corriger les distorsions introduites de ce fait.

(c)     Modalités de révision

Il est fait mensuellement application des dispositions de révision de prix et le montant de cette révision est réglé dans les mêmes conditions que le montant de l'acompte correspondant prévu à l'Article 11 du CCAG.

Dans le cas où les indices officiels devant servir à la révision de prix ne seraient connus qu'avec retard, des révisions provisoires seront calculées sur la base des dernières valeurs connues desdits indices ou à défaut sur des valeurs arrêtées d'un commun accord. Les révisions seront réajustées dès la parution des valeurs relatives aux mois considérés.

En cas d'un retard dans l'exécution des travaux imputable à l'Entrepreneur, les prestations réalisées après le délai contractuel d'exécution seront payées sur la base des prix révisés au jour de l'expiration du délai contractuel d'exécution (lui-même, éventuellement prorogé de la durée des retards non imputables à l'Entrepreneur).

**10.5     Impôts, droits, taxes, redevances, cotisations**

10.51   Le Montant du Marché comprend les impôts, droits, taxes, redevances et cotisations de toute nature exigibles en dehors du pays du Maître de l'Ouvrage, en relation avec l'exécution du Marché, notamment à raison de la fabrication, vente et transport des fournitures, matériels et équipements de l'Entrepreneur et de ses sous-traitants, que ces fournitures, matériels ou équipements soient destinés à être incorporés dans les travaux ou non, ainsi qu'à raison des services rendus, quelle que soit la nature de ces derniers.

10.52   Sauf dispositions contraires du CCAP, le Montant du Marché comprend également tous les impôts, droits, taxes, redevances et cotisations de toute nature exigibles dans le pays du Maître de l'Ouvrage. Ces derniers ont été calculés en tenant compte des modalités d'assiette et de taux en vigueur trente (30) jours avant la date limite fixée pour dépôt de l'offre.

10.53   Les prix comprennent notamment les impôts, droits et taxes exigibles à l'importation, tant ce qui concerne l'importation définitive que l'importation temporaire des fournitures, matériels et équipements nécessaires à la réalisation des travaux. Ils comprennent également tous les impôts, droits et taxes exigibles sur le bénéfice ou le chiffre d'affaires de l'Entrepreneur et de ses sous-traitants et, ce, quel que soit le mode de détermination du bénéfice réalisé (imposition partiellement ou entièrement forfaitaire ou autre). Ils comprennent également l'ensemble des impôts, droits, taxes et cotisations exigibles sur le personnel de l'Entrepreneur et celui de ses fournisseurs, prestataires ou sous-traitants.

10.54   L'Entrepreneur, lorsque la réglementation le prévoit réglera directement l'ensemble des cotisations, impôts, droits et taxes dont il est redevable aux organismes compétents et procurera au Chef de Projet, sur simple demande, justification des paiements correspondants.

10.55   Lorsque la réglementation prévoit le paiement des impôts, droits, taxes et cotisations par voie de retenue à la source opérée par l'Entrepreneur, puis de reversement par ce dernier aux organismes compétents, l'Entrepreneur opérera ces retenues et les reversera aux organismes en question dans les délais prévus par la réglementation en vigueur.

10.56   Lorsque la réglementation prévoit des retenues à la source à opérer sur tout ou partie des règlements faits par le Maître de l'Ouvrage à l'Entrepreneur, le montant de ces retenues sera déduit des sommes dues à l'Entrepreneur et reversées par le Maître de l'Ouvrage pour le compte de l'Entrepreneur à tout autre organisme compétent. Dans ce cas le Maître de l'Ouvrage transmettra à l'Entrepreneur une quittance justifiant du versement de ces sommes dans les quinze (15) jours de leur règlement.

10.57   Dans le cas où le Maître de l'Ouvrage obtiendrait de l'administration des douanes un régime d'exonération ou un régime suspensif qui n'était pas prévu à l'origine en matière d'impôts, droits et taxes dus à l'importation des fournitures, matériels et équipements en admission définitive ou temporaire après l'entrée en vigueur du Marché, une diminution correspondante du prix de la part payable en monnaie nationale interviendra et cette diminution sera constatée dans un avenant.  Dans le cas où, pour obtenir un tel avantage, une caution ou garantie d'une quelconque nature serait à fournir à l'administration fiscale et douanière, cette caution ou garantie sera à la charge exclusive du Maître de l'Ouvrage.

10.58   En cas de modifications de la réglementation fiscale, douanière ou sociale, ou de son interprétation, par rapport à celle applicable trente (30) jours avant la date limite fixée pour le dépôt des offres ayant pour effet d'augmenter les coûts de l'Entrepreneur, ce dernier aura droit à une augmentation correspondante du Montant du Marché.  A cet effet, dans les deux (2) mois qui suivent la modification, l'Entrepreneur notifiera au Maître d'Oeuvre les conséquences de cette modification.  Dans le mois qui suit, le Maître d'Oeuvre proposera au Chef de Projet la rédaction d'un avenant au Marché qui prévoira, dans tous les cas, un paiement en monnaie nationale.  En cas de désaccord entre l'Entrepreneur et le Chef de Projet sur les termes de l'avenant persistant un (1) mois après la notification de l'avenant par le Maître d'Oeuvre au Chef de Projet, la procédure de règlement des litiges figurant à l'Article 50 du CCAG sera applicable.

### 10.6   Monnaies et taux de change
10.61   *Taux de change et proportion des monnaies*
        Lorsque le Marché est exprimé dans une seule monnaie, alors que les paiements doivent être effectués en plusieurs monnaies et lorsque le Marché précise les proportions des monnaies étrangères, ces proportions figureront au CCAP. Dans ce cas, le ou les taux de change applicables pour calculer le paiement desdits montants et proportions sont ceux figurant dans l'offre.


## 11.   Rémunération de l'Entrepreneur

### 11.1   Règlement des comptes
        Le règlement des comptes du Marché se fait par le paiement des avances, des acomptes mensuels et du solde, établis et payés dans les conditions prévues à l'Article 13 du CCAG.



**11.2   Travaux à l'entreprise**

11.21   Les travaux à l'entreprise correspondent à l'ensemble des travaux exécutés par l'Entrepreneur au titre du Marché, sous sa responsabilité, à l'exception des travaux en régie définis au paragraphe 11.3 ci-dessous. Ils sont rémunérés dans les conditions prévues au Marché, soit sur la base de prix forfaitaires ou de prix unitaires, soit selon une formule mixte incluant prix forfaitaires et prix unitaires.

11.22   Dans le cas d'application d'un prix unitaire, la détermination de la somme due s'obtient en multipliant ce prix par la quantité de natures d'ouvrage exécutée ou par le nombre d'éléments d'ouvrage mis en œuvre.

11.23   Dans le cas d'application d'un prix forfaitaire, le prix est dû dès lors que l'ouvrage, la partie d'ouvrage ou l'ensemble de prestations auquel il se rapporte a été exécuté ; les différences éventuellement constatées, pour chaque nature d'ouvrage ou chaque élément d'ouvrage, entre les quantités réellement exécutées et les quantités indiquées dans la décomposition de ce prix, établie conformément au paragraphe 10.32 du CCAG, même si celle-ci a valeur contractuelle, ne peuvent conduire à une modification dudit prix ; il en est de même pour les erreurs que pourrait comporter cette décomposition.

**11.3   Travaux en régie**

11.31   L'Entrepreneur doit, lorsqu'il en est requis par le Maître de l'Ouvrage, mettre à la disposition de celui-ci le personnel, les fournitures et le matériel qui lui sont demandés pour l'exécution de travaux accessoires à ceux que prévoit le Marché. Pour ces travaux, dits "travaux en régie", l'Entrepreneur a droit au remboursement dans la ou les monnaies dans lesquelles ces dépenses ont été encourues :

(a)     des salaires et des indemnités passibles des charges salariales qu'il a payés au personnel, majorés dans les conditions fixées par le CCAP pour couvrir les charges salariales, les frais généraux, impôts, taxes et bénéfices ;

(b)     des sommes qu'il a dépensées pour les autres prestations fournies, à savoir les indemnités non passibles des charges salariales payées au personnel, les fournitures et le matériel, ces sommes étant majorées dans les conditions fixées par le CCAP pour couvrir les frais généraux, impôts, taxes et bénéfices.

11.32   L'obligation pour l'Entrepreneur d'exécuter des travaux en régie cesse lorsque le montant total des droits à remboursement atteint un pourcentage du Montant du Marché fixé par les CCAP.

**11.4   Acomptes sur approvisionnements**

Chaque acompte reçu dans les conditions du paragraphe 1 du présent Article comprend, s'il y a lieu, une part correspondant aux approvisionnements constitués en vue des travaux, à condition que le CCAP prévoie la possibilité de telles avances et les modalités de leur règlement.

Le montant correspondant s'obtient en appliquant aux quantités à prendre en compte les prix du Bordereau de prix inséré dans le Marché relatifs aux matériaux produits ou composants de construction à mettre en œuvre.

Les matériaux, produits ou composants de construction ayant fait l'objet d'un acompte pour

approvisionnement restent la propriété de l'Entrepreneurs. Ils ne peuvent toutefois être enlevés du chantier sans l'autorisation écrite du Maître de l'Ouvrage.

**11.5  Avance forfaitaire**

L'Entrepreneur bénéficiera d'une avance forfaitaire aussitôt qu'il aura constitué la garantie visée au paragraphe 6.12 du CCAG. Le montant de cette avance et ses conditions d'imputation sur les acomptes sont fixés au CCAP.

**11.6  Révision des prix**

Lorsque, dans les conditions précisées à l'Article 10.4 du CCAG, il y a lieu, prévu à la révision des prix, le coefficient de révision s'applique :

(a)    aux travaux à l'entreprise exécutés pendant le mois ;

(b)    aux indemnités, pénalités, retenues, primes afférentes au mois considéré ;

(c)    à la variation, en plus ou en moins, à la fin du mois, par rapport au mois précédent, des sommes décomptées pour approvisionnements et avances à la fin de ce mois.

Ce coefficient est arrondi au millième supérieur.

**11.7  Intérêts moratoires**

En cas de retard dans les paiements exigibles conformément aux dispositions de l'Article 13.2 du CCAG, l'Entrepreneur a droit à des intérêts moratoires au taux prévu au CCAP. Si ces retards résultent d'une cause pour laquelle le Maître de l'Ouvrage est habilité, au titre du Marché, à suspendre les paiements, les intérêts moratoires ne sont pas dus.

**11.8  Rémunération des Entrepreneurs groupés**

Dans le cas d'un Marché passé avec des Entrepreneurs groupés, les travaux exécutés font l'objet d'un paiement à un compte unique dont les caractéristiques sont transmises au Maître de l'Ouvrage par le mandataire commun.

**12.   Constatations et constats contradictoires**

12.1  Au sens du présent Article, la constatation est une opération matérielle, le constat est le document qui en résulte.

12.2  Des constatations contradictoires concernant les prestations exécutées ou les circonstances de leur exécution sont faites sur la demande, soit de l'Entrepreneur, soit du Maître d'Oeuvre.

Les constatations concernant les prestations exécutées, quand il s'agit de travaux réglés sur prix unitaire, portent sur les éléments nécessaires au calcul des quantités à prendre en compte, tels que résultats de mesurages, jaugeages, pesages, comptages, et sur les éléments caractéristiques nécessaires à la détermination du prix unitaire à appliquer.

12.3  Les constatations contradictoires faites pour la sauvegarde des droits éventuels de l'une ou l'autre des parties ne préjugent pas l'existence de ces droits.

12.4  Le Maître d'Oeuvre fixe la date des constatations ; lorsque la demande est présentée par l'Entrepreneur, cette date ne peut être postérieure de plus de huit (8) jours à celle de la




demande. Les constatations donnent lieu à la rédaction d'un constat dressé sur-le-champ par le Maître d'Oeuvre contradictoirement avec l'Entrepreneur.

Si l'Entrepreneur refuse de signer ce constat ou ne le signe qu'avec réserves, il doit, dans les quinze (15) jours qui suivent, préciser par écrit ses observations ou réserves au Maître d'Oeuvre.

Si l'Entrepreneur, dûment convoqué en temps utile, n'est pas présent ou représenté aux constatations, il est réputé accepter sans réserve le constat qui en résulte.

12.5   L'Entrepreneur est tenu de demander en temps utile qu'il soit procédé à des constatations contradictoires pour les prestations qui ne pourraient faire l'objet de constatations ultérieures, notamment lorsque les ouvrages doivent se trouver par la suite cachés ou inaccessibles. À défaut et sauf preuve contraire fournie par lui et à ses frais, il n'est pas fondé à contester la décision du Maître d'Oeuvre relative à ces prestations.

## 13.   Modalités règlement des comptes
### 13.1   Décomptes mensuels
13.11   Avant la fin de chaque mois ou dans les conditions prévues au CCAP en ce qui concerne le ou les avances, l'Entrepreneur remet au Maître d'Oeuvre un projet de décompte établissant le montant total arrêté à la fin du mois précédent des sommes auxquelles il peut prétendre, tant en monnaie nationale qu'en monnaie(s) étrangère(s), du fait de l'exécution du Marché depuis le début de celle-ci.

Ce montant est établi à partir des prix de base, c'est-à-dire des prix figurant dans le Marché, y compris les rabais ou majorations qui peuvent y être indiqués, mais sans révision des prix et hors taxe sur le chiffre d'affaires dû sur les règlements effectués par le Maître de l'Ouvrage à l'Entrepreneur.

Si des ouvrages ou travaux non prévus ont été exécutés, les prix provisoires mentionnés à l'Article 14.3 sont appliqués tant que les prix définitifs ne sont pas arrêtés.

Si des réfactions ont été fixées en conformité des dispositions du paragraphe 2 de chacun des Articles 22, 23 et 25 du CCAG, elles sont appliquées.

Le projet de décompte mensuel établi par l'Entrepreneur est accepté ou rectifié par le Maître de l'Ouvrage; il devient alors le décompte mensuel.

13.12   Le décompte mensuel, identifiant séparément les montants payables en monnaie nationale et en monnaie(s) étrangère(s), comprend, en tant que de besoin, les différentes parties suivantes :

(a)       travaux à l'entreprise ;
(b)       travaux en régie ;
(c)       approvisionnements ;
(d)       avances ;
(e)       indemnités, pénalités, primes et retenues autres que la retenue de garantie ;
(f)       remboursements des dépenses incombant au Maître de l'Ouvrage dont l'Entrepreneur

a fait l'avance ;

(g)     montant à déduire égal à l'excédent des dépenses faites pour les prestations exécutées d'office à la place de l'Entrepreneur défaillant sur les sommes qui auraient été réglées à cet Entrepreneur s'il avait exécuté ces prestations ;

(h)     intérêts moratoires.

13.13   Le montant des travaux à l'entreprise est établi de la façon suivante :

Le décompte comporte le relevé des travaux exécutés, tels qu'ils résultent des constats contradictoires ou, à défaut, des évaluations du Maître d'Oeuvre. Les prix unitaires ne sont jamais fractionnés pour tenir compte des travaux en cours d'exécution. Les prix forfaitaires peuvent l'être si l'ouvrage ou la partie d'ouvrage auquel le prix se rapporte n'est pas terminé : il est alors compté une fraction du prix égale au pourcentage d'exécution de l'ouvrage ou de la partie d'ouvrage ; pour déterminer ce pourcentage, il est fait usage, si le Maître d'Oeuvre l'exige, de la décomposition de prix définie à l'Article 10.3 du CCAG.

L'avancement des travaux déterminé selon l'un des deux modes de règlement définis ci-dessus fait l'objet d'un constat contradictoire.

13.14   Le montant des approvisionnements est établi en prenant en compte ceux qui sont constitués et non encore utilisés.

13.15   Dans chacune des parties énumérées au paragraphe 12 du présent Article, le décompte distingue, s'il y a lieu, les éléments dont le prix est ferme et ceux dont le prix est révisable, comme il est dit à l'Article 11.6 du CCAG, en répartissant éventuellement ces derniers éléments entre les différents modes de révision prévus par le Marché.

Le décompte précise, le cas échéant, les éléments passibles de la taxe sur le chiffre d'affaires due sur les paiements du Maître de l'Ouvrage à l'Entrepreneur, distinguant éventuellement les taux de taxe applicables.

13.16   Le Maître de l'Ouvrage peut demander à l'Entrepreneur d'établir le projet de décompte suivant un modèle ou des modalités recommandés par les autorités compétentes ou par les organismes de financement.

13.17   L'Entrepreneur joint au projet de décompte les pièces suivantes, s'il ne les a pas déjà fournies:

(a)     les calculs des quantités prises en compte, effectués à partir des éléments contenus dans les constats contradictoires ;

(b)     le calcul, avec justifications à l'appui, des coefficients de révision des prix ; et

(c)     le cas échéant, les pièces justifiant les débours, effectués au titre de l'Article 26.4 du CCAG, dont il demande le remboursement.

13.18   Les éléments figurant dans les décomptes mensuels n'ont pas un caractère définitif et ne lient pas les parties contractantes.

**13.2    Acomptes mensuels**



13.21   Le montant de l'acompte mensuel à régler à l'Entrepreneur est déterminé, à partir du décompte mensuel, par le Maître de l'Ouvrage qui dresse à cet effet un état faisant ressortir

   (a)     le montant de l'acompte établi à partir des prix de base distinguant les montants à payer en monnaie nationale et en monnaie(s) étrangère(s) : ce montant est la différence entre le montant du décompte mensuel dont il s'agit et celui du décompte mensuel précédent ; il distingue, comme les décomptes mensuels, les différents éléments passibles des diverses modalités de révision des prix et, le cas échéant, des divers taux de la taxe sur le chiffre d'affaires applicable aux règlements effectués par le Maître de l'Ouvrage à l'Entrepreneur ;

   (b)     l'effet de la révision des prix, conformément aux dispositions des Articles 10.4 et 11.6 du CCAG,

   (c)     le montant de la taxe sur le chiffre d'affaires applicable aux règlements effectués par le Maître de l'Ouvrage à l'Entrepreneur ; et

   (d)     le montant total de l'acompte à régler, ce montant étant la somme des montants spécifiés aux alinéas (a), (b) et (c) ci-dessus, diminuée de la retenue de garantie prévue au Marché.

13.22   Le Maître d'Oeuvre notifie à l'Entrepreneur, par ordre de service, l'état d'acompte accompagné du décompte ayant servi de base à ce dernier si le projet établi par l'Entrepreneur a été modifié.

13.23   Le paiement de l'acompte doit être fait aux comptes bancaires désignés au CCAP, et intervenir quarante-cinq (45) jours au plus tard après la date à laquelle le projet de décompte est remis par l'Entrepreneur au Maître d'Oeuvre. Lorsque, pour une raison non imputable à l'Entrepreneur, le paiement n'est pas effectué dans ce délai, le Maître d'Oeuvre en informe l'Entrepreneur.

13.24   Les montants figurant dans les états d'acomptes mensuels n'ont pas un caractère définitif et ne lient pas les parties contractantes, sauf en ce qui concerne l'effet de la révision des prix mentionné à l'alinéa 21 (b) du présent Article lorsque l'Entrepreneur n'a pas fait de réserves à ce sujet à la réception de l'ordre de service mentionné à l'alinéa 22 du présent Article.

**13.3   Décompte final**
13.31   Après l'achèvement des travaux, l'Entrepreneur, concurremment avec le projet de décompte afférent au dernier mois de leur exécution ou à la place de ce projet, dresse le projet de décompte final établissant le montant total des sommes auxquelles il peut prétendre du fait de l'exécution du Marché dans son ensemble, les évaluations étant faites en tenant compte des prestations réellement exécutées. Ce projet de décompte est établi à partir des prix de base comme les projets de décompte mensuels et comporte les mêmes parties que ceux-ci, à l'exception des approvisionnements et des avances ; il est accompagné des éléments et pièces mentionnés au paragraphe 17 du présent Article s'ils n'ont pas été précédemment fournis.

13.32   Le projet de décompte final est remis au Maître d'Oeuvre dans le délai de quarante-cinq (45) jours à compter de la date de notification de la décision de réception provisoire des travaux



telle qu'elle est prévue à l'Article 41.3 du CCAG. Toutefois, s'il est fait application des dispositions de l'Article 41.5 du CCAG, la date du procès-verbal constatant l'exécution des prestations complémentaires est substituée à la date de notification de la décision de réception des travaux comme point de départ des délais ci-dessus.

En cas de retard dans la présentation du projet de décompte final, après mise en demeure restée sans effet, le décompte peut être établi d'office par le Maître d'Oeuvre aux frais de l'Entrepreneur. Ce décompte est notifié à l'Entrepreneur avec le décompte général prévu à l'Article 13.4 ci-dessous.

13.33   L'Entrepreneur est lié par les indications figurant au projet de décompte final, sauf sur les points sur lesquels il aurait émis antérieurement des réserves, ainsi que sur le montant définitif des intérêts moratoires.

13.34   Le projet de décompte final par l'Entrepreneur est accepté ou rectifié par le Maître d'Oeuvre; il devient alors le décompte final.

**13.4   Décompte général et définitif, solde**

13.41   Le Maître d'Oeuvre établit le décompte général qui comprend :

   (a)   Le décompte final défini au paragraphe 34 du présent Article ;

   (b)   L'état du solde établi, à partir du décompte final et du dernier décompte mensuel, dans les mêmes conditions que celles qui sont définies au paragraphe 21 du présent Article pour les acomptes mensuels ;

   (c)   La récapitulation des acomptes mensuels et du solde ; et

   (d)   Le montant du décompte général est égal au résultat de cette dernière récapitulation.

13.42   Le décompte général, signé par le Chef de Projet, doit être notifié à l'Entrepreneur par ordre de service avant la plus tardive des deux dates ci-après :

   (a)   quarante-cinq (45) jours après la date de remise du projet de décompte final ;

   (b)   trente (30) jours après la publication des derniers index de référence permettant la révision du solde.

13.43   Le paiement du solde doit intervenir dans un délai de soixante (60) jours à compter de la notification du décompte général.

13.44   L'Entrepreneur doit, dans un délai de quarante-cinq (45) jours compté à partir de la notification du décompte général, le renvoyer au Maître d'Oeuvre, revêtu de sa signature, avec ou sans réserves, ou faire connaître les raisons pour lesquelles il refuse de le signer. Aucune réserve ultérieure ne sera acceptée après que l'Entrepreneur aura renvoyé le décompte.

Si la signature du décompte général est donnée sans réserves, cette acceptation lie définitivement les parties, sauf en ce qui concerne le montant des intérêts moratoires ; ce



décompte devient ainsi le décompte général et définitif du Marché.

Si la signature du décompte général est refusée ou donnée avec réserves, les motifs de ce refus ou de ces réserves doivent être exposés par l'Entrepreneur dans un mémoire de réclamation qui précise le montant des sommes dont il revendique le paiement et qui fournit les justifications nécessaires en reprenant, sous peine de forclusion, les réclamations déjà formulées antérieurement qui n'ont pas fait l'objet d'un règlement définitif, ce mémoire doit être remis au Maître d'Oeuvre dans le délai indiqué au premier alinéa du présent paragraphe. Le règlement du différend intervient alors suivant les modalités indiquées à l'Article 50 du CCAG.

Si les réserves sont partielles, l'Entrepreneur est lié par son acceptation implicite des éléments du décompte sur lesquels ces réserves ne portent pas.

13.45    Dans le cas où l'Entrepreneur n'a pas renvoyé au Maître d'Oeuvre le décompte général signé dans le délai de quarante-cinq (45) jours fixé au paragraphe 44 du présent Article, ou encore, dans le cas où, l'ayant renvoyé dans ce délai, il n'a pas motivé son refus ou n'a pas exposé en détail les motifs de ses réserves en précisant le montant de ses réclamations, ce décompte général est réputé être accepté par lui ; il devient le décompte général et définitif du Marché.

## 14.    Règlement du prix des ouvrages ou travaux non prévus

14.1    Le présent Article concerne les ouvrages ou travaux dont la réalisation est décidée par le Maître de l'Ouvrage et pour lesquels le Marché ne prévoit pas de prix. Ces travaux pourront être demandés à l'Entrepreneur, par un ordre de service, qui sera tenu de les réaliser dans la mesure où le Montant du Marché, à la date de sa conclusion, est modifié de moins de quinze (15) pour cent.

14.2    Les prix nouveaux concernant les ouvrages ou travaux définis au paragraphe 1 ci-dessus peuvent être soit des prix unitaires, soit des prix forfaitaires.

Sauf indication contraire, ils sont établis sur les mêmes bases que les prix du Marché, notamment en ce qui concerne le calcul de la part à régler en monnaie nationale et en monnaie(s) étrangère(s), et sur la base des conditions économiques en vigueur le mois d'établissement de ces prix.

S'il existe des décompositions de prix forfaitaires ou des sous-détails de prix unitaires, leurs éléments, notamment les prix contenus dans les décompositions, sont utilisés pour l'établissement des prix nouveaux.

14.3    L'ordre de service mentionné au paragraphe 1 du présent Article, ou un autre ordre de service intervenant au plus tard quinze (15) jours après, notifie à l'Entrepreneur des prix provisoires pour le règlement des ouvrages ou travaux non prévus.

Ces prix provisoires sont arrêtés par le Maître d'Oeuvre après consultation de l'Entrepreneur. Ils sont obligatoirement assortis d'un sous-détail, s'il s'agit de prix unitaires ou d'une décomposition, s'il s'agit de prix forfaitaires, cette décomposition ne comprenant aucun prix d'unité nouveau dans le cas d'un prix forfaitaire pour lequel les changements prescrits ne portent que sur les quantités de natures d'ouvrage ou d'éléments d'ouvrage.

Les prix provisoires sont des prix d'attente qui n'impliquent ni l'acceptation du Maître d'Oeuvre ni celle de l'Entrepreneur ; ils sont appliqués pour l'établissement des décomptes jusqu'à la fixation des prix définitifs.

14.4 L'Entrepreneur est réputé avoir accepté les prix provisoires si, dans le délai de trente (30) jours suivant l'ordre de service qui lui a notifié ces prix, il n'a pas présenté d'observation au Maître d'Oeuvre en indiquant, avec toutes justifications utiles, les prix qu'il propose.

14.5 Lorsque le Chef de Projet et l'Entrepreneur sont d'accord pour arrêter les prix définitifs, ceux-ci font l'objet d'un avenant.

14.6 En cas de désaccord persistant plus de soixante (60) jours après l'ordre de service entre le Maître de l'Ouvrage et l'Entrepreneur pour la fixation des prix définitifs, le différend sera tranché en application des dispositions de l'Article 50 du CCAG.

**15.   Augmentation dans la masse des travaux**

15.1 Pour l'application du présent Article et de l'Article 16 du CCAG, la "masse" des travaux s'entend du montant des travaux à l'entreprise, évalués à partir des prix de base définis au paragraphe 13.11 du CCAG, en tenant compte éventuellement des prix nouveaux, définitifs ou provisoires, fixés en application de l'Article 14 du CCAG.

La "masse initiale" des travaux est la masse des travaux résultant des prévisions du Marché, c'est-à-dire du Marché initial éventuellement modifié ou complété par les avenants intervenus.

15.2 Sous réserve de l'application des dispositions du paragraphe 4 du présent Article, l'Entrepreneur est tenu de mener à son terme la réalisation des ouvrages faisant l'objet du Marché, quelle que soit l'importance de l'augmentation de la masse des travaux qui peut résulter de sujétions techniques ou d'insuffisance des quantités prévues dans le Marché.

15.3 Si l'augmentation de la masse des travaux est supérieure à vingt-cinq (25) pour cent de la masse initiale, l'Entrepreneur a droit à être indemnisé en fin de compte du préjudice qu'il a éventuellement subi du fait de cette augmentation au-delà de l'augmentation limite de vingt-cinq (25) pour cent.

15.4 Lorsque la masse des travaux exécutés atteint la masse initiale, l'Entrepreneur doit arrêter les travaux s'il n'a pas reçu un ordre de service lui notifiant la décision de les poursuivre prise par le Chef de Projet. Cette décision de poursuivre n'est valable que si elle indique le montant limite jusqu'où les travaux pourront être poursuivis, le dépassement éventuel de ce montant limite devant donner lieu à la même procédure et entraîner les mêmes conséquences que celles qui sont définies ci-après pour le dépassement de la masse initiale.

L'Entrepreneur est tenu d'aviser le Maître d'Oeuvre, trente (30) jours au moins à l'avance de la date probable à laquelle la masse des travaux atteindra la masse initiale. L'ordre de poursuivre les travaux au-delà de la masse initiale, s'il est donné, doit être notifié dix (10) jours au moins avant cette date.

A défaut d'ordre de poursuivre, les travaux qui sont exécutés au-delà de la masse initiale ne sont pas payés et les mesures conservatoires à prendre, décidées par le Maître d'Oeuvre, sont à la charge du Maître de l'Ouvrage sauf si l'Entrepreneur n'a pas adressé l'avis prévu ci-dessus.

15.5   Dans les quinze (15) jours qui suivent tout ordre de service ayant pour effet d'entraîner une modification de la masse des travaux, le Maître d'Oeuvre fait part à l'Entrepreneur de l'estimation prévisionnelle qu'il fait de cette modification. Si l'ordre de service prescrit des travaux de l'espèce définie au premier alinéa du paragraphe 22 du présent Article, l'estimation précédente indique la part correspondant à ces travaux.

## 16.   Diminution de la masse des travaux

16.1   Si la diminution de la masse des travaux est supérieure à vingt-cinq (25) pour cent de la masse initiale, l'Entrepreneur a droit à être indemnisé en fin de compte du préjudice qu'il a éventuellement subi du fait de cette diminution au-delà de la diminution limite de vingt-cinq (25) pour cent.

## 17.   Changement dans l'importance des diverses natures d'ouvrage

17.1   Dans le cas d'éléments de travaux réglés sur prix unitaires, lorsque par suite d'ordres de service ou de circonstances qui ne sont ni de la faute ni du fait de l'Entrepreneur, l'importance de certaines natures d'ouvrages est modifiée de telle sorte que les quantités exécutées diffèrent de plus de trente (30) pour cent en plus, ou de plus de vingt-cinq (25) pour cent en moins des quantités portées au Détail estimatif et quantitatif du Marché, l'Entrepreneur a droit à être indemnisé en fin de compte du préjudice que lui ont éventuellement causé ces changements.

L'indemnité à accorder s'il y a lieu sera calculée d'après la différence entre les quantités réellement exécutées et les quantités prévues augmentées de trente (30) pour cent ou diminuée de vingt-cinq (25) pour cent.

Les stipulations qui précèdent ne sont pas applicables aux natures d'ouvrages pour lesquelles les montants des travaux figurant, d'une part au détail quantitatif et estimatif du Marché et, d'autre part, au décompte final des travaux sont l'un et l'autre inférieurs à cinq (5) pour cent du montant du Marché.

Sauf stipulation différente du CCAP, l'Entrepreneur ne peut prétendre à aucune indemnité à l'occasion de l'exécution de natures d'ouvrages dont les prix unitaires figurent au Bordereau des prix mais pour lesquels le détail quantitatif et estimatif ne comporte pas explicitement des quantités, sauf toutefois si le montant total des travaux exécutés auxquels s'appliquent de tels prix excède cinq (5) pour cent du montant du Marché.

17.2   Dans le cas d'éléments de travaux réglés sur prix forfaitaires, lorsque des changements sont ordonnés par le Maître d'Oeuvre dans la consistance des travaux, le prix nouveau fixé suivant les modalités prévues à l'Article 14 du CCAG tient compte des charges supplémentaires éventuellement supportées par l'Entrepreneur du fait de ces changements, à l'exclusion du préjudice indemnisé, s'il y a lieu, par application de l'Article 15.3 ou de l'Article 16.



**18.      Pertes et avaries – Force majeure**

18.1     Il n'est alloué à l'Entrepreneur aucune indemnité au titre des pertes, avaries ou dommages causés par sa négligence, son imprévoyance, son défaut de moyens ou ses fausses manœuvres.

18.2     L'Entrepreneur doit prendre à ses frais, risques et périls les dispositions nécessaires pour que les approvisionnements et le matériel et les installations de chantier ainsi que les ouvrages en construction ne puissent être enlevés ou endommagés par les tempêtes, les crues, la houle et les autres phénomènes naturels qui sont normalement prévisibles dans les circonstances où sont exécutés les travaux.

18.3     On entend par force majeure, pour l'exécution du présent Marché, tout acte ou événement imprévisible, irrésistible, hors du contrôle des parties et qui rend l'exécution du Marché pratiquement impossible, tel que catastrophes naturelles, incendies, explosions, guerre, insurrection, mobilisation, grèves générales, tremblements de terre, mais non les actes ou événements qui rendraient seulement l'exécution d'une obligation plus difficile ou plus onéreuse pour son débiteur.

Le CCAP définit, en tant que besoin, le seuil des intempéries et autres phénomènes naturels qui sont réputés constituer un événement de force majeure au titre du présent Marché.

En cas de survenance d'un événement de force majeure, l'Entrepreneur a droit à une indemnisation du préjudice subi et à une augmentation raisonnable des délais d'exécution, étant précisé toutefois qu'aucune indemnité ne peut néanmoins être accordée à l'Entrepreneur pour perte totale ou partielle de son matériel flottant, les frais d'assurance de ce matériel étant réputés compris dans les prix du Marché.

L'Entrepreneur qui invoque le cas de force majeure devra aussitôt après l'apparition d'un cas de force majeure, et dans un délai maximum de sept (7) jours, adresser au Maître de l'Ouvrage une notification par lettre recommandée établissant les éléments constitutifs de la force majeure et ses conséquences probables sur la réalisation du Marché.

Dans tous les cas, l'Entrepreneur devra prendre toutes dispositions utiles pour assurer, dans les plus brefs délais, la reprise normale de l'exécution des obligations affectées par le cas de force majeure.

Si, par la suite de cas de force majeure, l'Entrepreneur ne pouvait exécuter les prestations telles que prévues au Marché pendant une période de trente (30) jours, il devra examiner dans les plus brefs délais avec le Maître de l'Ouvrage les incidences contractuelles desdits événements sur l'exécution du Marché et en particulier sur le prix, les délais et les obligations respectives de chacune des parties.

Quand une situation de force majeure aura existé pendant une période de soixante (60) jours au moins, chaque partie aura le droit de résilier le Marché par une notification écrite à l'autre partie.

<div style="text-align:center">

**C.  Délais**

</div>

**19.      Fixation et prolongation des délais**

**19.1      Délais d'exécution**

19.11   Le délai d'exécution des travaux fixé par le Marché s'applique à l'achèvement de tous les travaux prévus incombant à l'Entrepreneur, y compris, sauf dispositions contraires du Marché, le repliement des installations de chantier et la remise en état des terrains et des lieux. Ce délai tient compte notamment de toutes les sujétions résultant, le cas échéant, des travaux réalisés par des sous-traitants et/ou par toutes autres entreprises sur le Site.

Sous réserve de disposition contraire figurant au CCAP, ce délai commence à courir à compter de la date d'entrée en vigueur du Marché qui vaut également ordre de service de commencer les travaux, et il comprend la période de mobilisation définie à l'Article 28.1 du CCAG.

19.12   Les dispositions du paragraphe 11 du présent Article s'appliquent aux délais, distincts du délai d'exécution de l'ensemble des travaux, qui peuvent être fixés par le Marché pour l'exécution de certaines tranches de travaux ou de certains ouvrages, parties d'ouvrages ou ensembles des prestations.

**19.2      Prolongation des délais d'exécution**

19.21   Lorsqu'un changement de la masse de travaux ou une modification de l'importance de certaines natures d'ouvrages, une substitution à des ouvrages initialement prévus d'ouvrages différents, une rencontre de difficultés imprévues au cours du chantier, un ajournement de travaux décidé par le Chef de Projet ou encore un retard dans l'exécution d'opérations préliminaires qui sont à la charge du Maître de l'Ouvrage ou de travaux préalables qui font l'objet d'un autre Marché, justifie soit une prolongation du délai d'exécution, soit le report du début des travaux, l'importance de la prolongation ou du report est débattue par le Maître d'Oeuvre avec l'Entrepreneur, puis elle est soumise à l'approbation du Chef de Projet, et la décision prise par celui-ci est notifiée à l'Entrepreneur par ordre de service.

19.22   Dans le cas d'intempéries dépassant le seuil fixé au CCAP, entraînant un arrêt de travail sur les chantiers, les délais d'exécution des travaux sont prolongés. Cette prolongation est notifiée à l'Entrepreneur par un ordre de service qui en précise la durée, laquelle est égale au nombre de journées réellement constaté au cours desquelles le travail a été arrêté du fait des intempéries, conformément auxdites dispositions, en défalquant, s'il y a lieu, le nombre de journées d'intempéries prévisibles indiqué au CCAP.

19.23   En dehors des cas prévus aux paragraphes 21 et 22 du présent Article, l'Entrepreneur ne pourra avoir droit à une prolongation des délais d'exécution que dans les cas suivants :

(a)      mise en œuvre des dispositions de l'Article 18 du CCAG,

(b)      non respect par le Maître de l'Ouvrage de ses propres obligations ; ou

(c)      conclusion d'un avenant.

19.24    Lorsque la prolongation des délais d'exécution notifiée à l'Entrepreneur par ordre de service aura dépassé une durée fixée dans le CCAP, ce dernier aura la faculté, dans les quinze (15) jours qui suivent la notification de l'ordre de service entraînant un dépassement de cette durée, de demander la résiliation du Marché.

## 20.    Pénalités, primes et retenues

20.1    En cas de retard dans l'exécution des travaux, il est appliqué une pénalité journalière, fixée par le CCAP, égale à un certain nombre de millièmes du montant de l'ensemble du Marché. Ce montant est celui qui résulte des prévisions du Marché, c'est-à-dire du Marché initial éventuellement modifié ou complété par les avenants intervenus ; il est évalué à partir des prix de base définis au paragraphe 13.11 du CCAG.

Les pénalités sont encourues du simple fait de la constatation du retard par le Maître d'Oeuvre. Le Maître de l'Ouvrage peut, sans préjudice de toute autre méthode de recouvrement, déduire le montant de ces pénalités de toutes les sommes dont il est redevable à l'Entrepreneur. Le paiement de ces pénalités par l'Entrepreneur, qui représentent une évaluation forfaitaire des dommages-intérêts dus au Maître de l'Ouvrage au titre du retard dans l'exécution des travaux, ne libère en rien l'Entrepreneur de l'ensemble des autres obligations et responsabilités qu'il a souscrites au titre du Marché.

Dans le cas de résiliation, les pénalités sont appliquées jusqu'au jour inclus de la notification de la décision de résiliation ou jusqu'au jour d'arrêt de l'exploitation de l'entreprise de l'Entrepreneur si la résiliation résulte d'un des cas prévus à l'Article 47 du CCAG.

Les dispositions des deux alinéas qui précèdent sont applicables aux pénalités éventuellement prévues par le CCAP pour le cas de retard dans la réalisation de certains ouvrages, parties d'ouvrages ou ensembles de prestations faisant l'objet de délais particuliers ou de dates limites fixés dans le Marché.

20.2    Si le CCAP prévoit des primes d'avance, leur attribution est faite sans que l'Entrepreneur soit tenu de les demander, au taux fixé au CCAP.

20.3    Les journées de repos hebdomadaire ainsi que les jours fériés ou chômés, ne sont pas déduits pour le calcul des pénalités et des primes.

20.4    Le montant des pénalités et le cas échéant, des primes, est plafonné au niveau fixé par le CCAP. Lorsque le plafond des pénalités est atteint, le Maître de l'Ouvrage est en droit de résilier le Marché sans mise en demeure préalable.

---

<div style="text-align:center">

### D.  Réalisation des ouvrages

</div>

**21.  Provenance des fournitures équipement, matériels, matériaux et produits**

21.1  L'Entrepreneur a le libre choix de la provenance des matériaux ou composants de construction ainsi que du mode de transport de ces divers éléments, leur assurance et les services bancaires qui s'y rapportent, sous réserve de pouvoir justifier que ceux-ci satisfont aux conditions fixées par le Marché.

**22.  Lieux d'extraction ou emprunt des matériaux**

22.1  Lorsque le Marché fixe les lieux d'extraction ou d'emprunt des matériaux et qu'au cours des travaux les gisements se révèlent insuffisants en qualité ou en quantité, l'Entrepreneur doit en aviser à temps le Maître d'Oeuvre ; ce dernier désigne alors, sur proposition éventuelle de l'Entrepreneur, de nouveaux lieux d'extraction ou d'emprunt. La substitution peut donner lieu à l'application d'un nouveau prix établi suivant les modalités prévues à l'Article 14 du CCAG.

22.2  Si le Marché prévoit que des lieux d'extraction où d'emprunt sont mis à la disposition de l'Entrepreneur par le Maître de l'Ouvrage, les indemnités d'occupation et, le cas échéant, les redevances de toute nature sont à la charge du Maître de l'Ouvrage ; l'Entrepreneur ne peut alors, sans autorisation écrite du Maître d'Oeuvre, utiliser pour des travaux qui ne font pas partie du Marché les matériaux qu'il a extraits dans ces lieux d'extraction ou d'emprunt.

22.3  Sauf dans le cas prévu au paragraphe 2 du présent Article, l'Entrepreneur est tenu d'obtenir, en tant que de besoin, les autorisations administratives nécessaires pour les extractions et emprunts de matériaux. Les indemnités d'occupation ou les redevances de toute nature éventuellement dues pour ces extractions ou emprunts sont à la charge de l'Entrepreneur. Toutefois, le Maître de l'Ouvrage et le Maître d'Oeuvre apporteront leur concours à l'Entrepreneur si celui-ci le leur demande pour lui faciliter l'obtention de toutes autorisations administratives dont il aurait besoin pour les extractions et emprunts de matériaux.

22.4  L'Entrepreneur supporte dans tous les cas les charges d'exploitation des lieux d'extraction ou d'emprunt et, le cas échéant, les frais d'ouverture.

Il supporte également, sans recours contre le Maître de l'Ouvrage, la charge des dommages entraînés par l'extraction des matériaux, par l'établissement des chemins de desserte et, d'une façon générale, par les travaux d'aménagement nécessaires à l'exploitation des lieux d'extraction ou d'emprunt, et la remise en état. Il garantit le Maître de l'Ouvrage au cas où la réparation de tels dommages serait mise à la charge de celui-ci.

**23.  Qualité des matériaux et produits - Application des normes**

23.1  Les matériaux et composants de construction doivent être conformes aux stipulations du Marché, aux prescriptions de normes homologuées au plan international et conformes à la réglementation en vigueur. Les normes applicables sont celles qui sont en vigueur le premier jour du mois du dépôt des offres. Les dérogations éventuelles aux normes, si elles ne résultent pas expressément de documents techniques du Marché, sont indiquées ou

récapitulées comme telles dans le dernier article du CCAP, au même titre que les dérogations aux présentes dispositions du CCAG.

23.2   L'Entrepreneur ne peut utiliser des matériaux, produits ou composants de construction d'une qualité différente de celle qui est fixée par le Marché que si le Maître d'Oeuvre l'y autorise par écrit. Les prix correspondants ne sont modifiés que si l'autorisation accordée précise que la substitution donne lieu à l'application de nouveaux prix et si l'augmentation ou réduction résultant de ces nouveaux prix a été acceptée par les autorités compétentes. Ces prix sont établis suivant les modalités prévues à l'Article 14 du CCAG, le Maître d'Oeuvre devant notifier par ordre de service les prix provisoires dans les quinze (15) jours qui suivent l'autorisation donnée.

24.    **Vérification qualitative des matériaux et produits - Essais et épreuves**

24.1   Les matériaux produits et composants de construction sont soumis, pour leur vérification qualitative, à des essais et épreuves, conformément aux stipulations du Marché, aux prescriptions des normes internationales homologuées et conformes à la réglementation en vigueur. Les dispositions de l'Article 23 du CCAG relatives à la définition des normes applicables et les dérogations éventuelles à ces normes sont à retenir pour le présent Article.

A défaut d'indication, dans le Marché ou dans les normes, des modes opératoires à utiliser, ceux-ci font l'objet de propositions de l'Entrepreneur soumises à l'acceptation du Maître d'Oeuvre.

24.2   L'Entrepreneur entrepose les matériaux, produits et composants de construction de manière à faciliter les vérifications prévues. Il prend toutes mesures utiles pour que les matériaux, produits et composants puissent être facilement distingués, selon qu'ils sont en attente de vérification ou acceptés ou refusés ; les matériaux, produits et composants refusés doivent être enlevés rapidement du chantier, les dispositions de l'Article 37 du CCAG  étant appliquées s'il y a lieu.

24.3   Les vérifications sont faites, suivant les indications du Marché ou, à défaut, suivant les décisions du Maître d'Oeuvre, soit sur le chantier, soit dans les usines, magasins ou carrières de l'Entrepreneur et des sous-traitants ou fournisseurs. Elles sont exécutées par le Maître d'Oeuvre ou, si le Marché le prévoit, par un laboratoire ou un organisme de contrôle.

Dans le cas où le Maître d'Oeuvre ou son préposé effectue personnellement les essais, l'Entrepreneur met à sa disposition le matériel nécessaire et il doit également fournir l'assistance, la main-d'œuvre, l'électricité, les carburants, les entrepôts et les appareils et instruments qui sont normalement nécessaires pour examiner, mesurer et tester tous matériaux et matériels. Toutefois, l'Entrepreneur n'a la charge d'aucune rémunération du Maître d'Oeuvre ou de son préposé.

Les vérifications effectuées par un laboratoire ou organisme de contrôle sont faites à la diligence et à la charge de l'Entrepreneur. Ce dernier adresse au Maître d'Oeuvre, les certificats constatant les résultats des vérifications faites. Au vu de ces certificats, le Maître d'Oeuvre décide si les matériaux, produits ou composants de construction peuvent ou non être utilisés.

Dans tous les cas, l'Entrepreneur, le fournisseur ou le sous-traitant autorisera l'accès à ses

locaux au Maître d'Oeuvre ou à l'organisme de contrôle afin qu'ils puissent opérer toutes vérifications en conformité avec les dispositions du Marché.

24.4   L'Entrepreneur doit convenir avec le Maître d'Oeuvre des dates et lieux d'exécution des contrôles et des essais des matériaux et matériel conformément aux dispositions du Marché. Le Maître d'Oeuvre doit notifier à l'Entrepreneur au moins vingt-quatre (24) heures à l'avance son intention de procéder au contrôle ou d'assister aux essais ; si le Maître d'Oeuvre n'est pas présent à la date convenue, l'Entrepreneur peut, sauf instruction contraire du Maître d'Oeuvre, procéder aux essais, qui seront considérés comme ayant été faits en présence du Maître d'Oeuvre.

L'Entrepreneur doit immédiatement faire parvenir au Maître d'Oeuvre des copies dûment certifiées des résultats des essais. Si le Maître d'Oeuvre n'a pas assisté aux essais, les résultats de ces derniers sont présumés avoir été approuvé par lui.

24.5   L'Entrepreneur est tenu de fournir à ses frais tous les échantillons nécessaires pour les vérifications.

L'Entrepreneur équipe, s'il y a lieu, les matériels de fabrication des dispositifs permettant d'opérer le prélèvement des matériaux aux différents stades de l'élaboration des produits fabriqués.

24.6   Si les résultats de vérifications prévues dans le Marché ou par les normes pour une fourniture de matériaux, produits ou composants de construction ne permettent pas l'acceptation de cette fourniture, le Maître d'Oeuvre peut prescrire, en accord avec l'Entrepreneur, des vérifications supplémentaires pour permettre d'accepter éventuellement tout ou partie de la fourniture, avec ou sans réfaction sur les prix ; les dépenses correspondant à ces dernières vérifications sont à la charge de l'Entrepreneur.

24.7   Ne sont pas à la charge de l'Entrepreneur :

(a)     les essais et épreuves que le Maître d'Oeuvre exécute ou fait exécuter et qui ne sont pas prévus dans le Marché ou par les normes ; ni

(b)     les vérifications éventuellement prescrites par le Maître d'Oeuvre sur des matériaux, produits ou composants de construction devant porter un estampillage mentionné au Marché ou ayant fait l'objet d'un agrément administratif, qui n'auraient pour but que de s'assurer du respect des qualités inhérentes à la marque ou exigées pour l'agrément.

24.8   L'Entrepreneur ne supporte pas la charge des frais de déplacement et de séjour que les vérifications entraînent pour le Chef de Projet, le Maître d'Oeuvre ou leurs préposés.

## 25.   Vérification quantitative des matériaux et produits

25.1   La détermination des quantités de matériaux et produits est effectuée contradictoirement.

Pour les matériaux et produits faisant l'objet de lettres de voiture, les indications de masse portées sur celles-ci sont présumées exactes ; toutefois, le Maître d'Oeuvre a toujours le droit de faire procéder, pour chaque livraison, à une vérification contradictoire sur bascule. Les

frais de cette vérification sont :

(a)     à la charge de l'Entrepreneur si la pesée révèle qu'il existe, au préjudice du Maître de l'Ouvrage, un écart de masse supérieur à la freinte normale de transport ;

(b)     à la charge du Maître de l'Ouvrage dans le cas contraire.

25.2    S'il est établi que des transports de matériaux, produits ou composants de construction sont effectués dans des véhicules routiers en surcharge, les dépenses afférentes à ces transports ne sont pas prises en compte dans le règlement du Marché.

Lorsque ces dépenses ne font pas l'objet d'un règlement distinct, les prix des ouvrages qui comprennent la rémunération de ces transports subissent une réfaction fixée par ordre de service en se référant, s'il y a lieu, aux sous-détails des prix unitaires et aux décompositions des prix forfaitaires.

**26.     Prise en charge, manutention et conservation par l'Entrepreneur des matériaux fournis par le Maître de l'Ouvrage dans le cadre du Marché**

26.1    Lorsque le Marché prévoit la fourniture par le Maître de l'Ouvrage de certains matériaux, produits ou composants de construction, l'Entrepreneur, avisé en temps utile, les prend en charge à leur arrivée sur le Site.

26.2    Si la prise en charge a lieu en présence d'un représentant du Maître de l'Ouvrage, elle fait l'objet d'un procès-verbal contradictoire portant sur les quantités prises en charge.

26.3    Si la prise en charge a lieu en l'absence du Maître de l'Ouvrage, les quantités prises en charge par l'Entrepreneur sont réputées être celles pour lesquelles il a donné décharge écrite au transporteur ou au fournisseur qui a effectué la livraison.

Dans ce cas, l'Entrepreneur doit s'assurer, compte tenu des indications de la lettre de voiture ou de l'avis de livraison porté à sa connaissance, qu'il n'y a ni omission, ni erreur, ni avarie ou défectuosité normalement décelables. S'il constate une omission, une erreur, une avarie ou une défectuosité, il doit faire à l'objet du transporteur ou du fournisseur les réserves d'usage et en informer aussitôt le Maître d'Oeuvre.

26.4    Quel que soit le mode de transport et de livraison des matériaux, produits ou composants, et même en cas de prise sur stock, l'Entrepreneur est tenu de procéder aux opérations nécessaires de déchargement, de débarquement, de manutention, de rechargement et de transport, jusque et y compris la mise en dépôt ou à pied d'œuvre des matériaux, produits ou composants éventuellement dans les conditions et délais stipulés au CCAP.

L'Entrepreneur acquitte tous les frais de location, de surestaries ou de dépassement de délais, toutes redevances pour dépassement de délais tarifaires de déchargement et, d'une façon générale, toutes pénalités et tous frais tels qu'ils résultent des règlements, des tarifs homologués ou des contrats, mais il ne conserve définitivement la charge de ces frais et pénalités que dans la mesure où le retard résulte de son fait.

26.5    Si le Marché stipule que la conservation qualitative ou quantitative de certains matériaux,

produits ou composants, nécessite leur mise en magasin, l'Entrepreneur est tenu de construire ou de se procurer les magasins nécessaires, même en dehors du chantier, dans les conditions et dans les limites territoriales éventuellement stipulées au CCAP.

Il supporte les frais de magasinage, de manutention, d'arrimage, de conservation et de transport entre les magasins et le chantier.

26.6    Dans tous les cas, l'Entrepreneur a la garde des matériaux, produits et composants à partir de leur prise en charge. Il assume la responsabilité légale du dépositaire, compte tenu des conditions particulières de conservation imposées éventuellement par le Marché.

26.7    L'Entrepreneur ne peut être chargé de procéder en tout ou partie à la réception des matériaux, produits ou composants fournis par le Maître de l'Ouvrage que si le Marché précise :

(a)    le contenu du mandat correspondant ;

(b)    la nature, la provenance et les caractéristiques de ces matériaux, produits ou composants ;

(c)    les vérifications à effectuer ; et

(d)    les moyens de contrôle à employer, ceux-ci devant être mis à la disposition de l'Entrepreneur par le Maître d'Oeuvre.

26.8    En l'absence de stipulations particulières du Marché, la charge des frais résultant des prestations prévues au présent Article est réputée incluse dans les prix.

## 27.    Implantation des ouvrages
### 27.1    Plan général d'implantation des ouvrages
Le plan général d'implantation des ouvrages est un plan orienté qui précise la position des ouvrages, en planimétrie et en altimétrie, par rapport à des repères fixes. Ce plan est notifié à l'Entrepreneur, par ordre de service, dans les quinze (15) jours de l'entrée en vigueur du Marché ou si l'ordre de service prescrivant de commencer les travaux est postérieur à celle-ci, au plus tard en même temps que cet ordre.

### 27.2    Responsabilité de l'Entrepreneur
L'Entrepreneur est responsable :

(a)    de l'implantation exacte des ouvrages par rapport aux repères, lignes et niveaux de référence originaux fournis par le Maître d'œuvre ;

(b)    de l'exactitude du positionnement, du nivellement, du dimensionnement et de l'alignement de toutes les parties des ouvrages ; et

(c)    de la fourniture de tous les instruments et accessoires et de la main-d'œuvre nécessaires en rapport avec les tâches énumérées ci-dessus.

27.3    Si, à un moment quelconque lors de l'exécution des travaux, une erreur apparaît dans le

positionnement, dans le nivellement, dans le dimensionnement ou dans l'alignement d'une partie quelconque des ouvrages, l'Entrepreneur doit, si le Maître d'Oeuvre le demande, rectifier cette erreur à ses propres frais et à la satisfaction du Maître d'Oeuvre, à moins que cette erreur ne repose sur des données incorrectes fournies par celui-ci, auquel cas le coût de la rectification incombe au Maître de l'Ouvrage.

27.4    La vérification de tout tracement ou de tout alignement ou nivellement par le Maître d'Oeuvre ne dégage en aucune façon l'Entrepreneur de sa responsabilité quant à l'exactitude de ces opérations ; l'Entrepreneur doit protéger et conserver soigneusement tous les repères, jalon à voyant fixe, piquets et autres marques utilisés lors de l'implantation des ouvrages.

## 28.    Préparation des travaux
### 28.1    Période de mobilisation
La période de mobilisation est la période qui court à compter de l'entrée en vigueur du Marché et pendant laquelle, avant l'exécution proprement dite des travaux, le Maître de l'Ouvrage et l'Entrepreneur ont à prendre certaines dispositions préparatoires et à établir certains documents nécessaires à la réalisation des ouvrages, cette période dont la durée est fixée au CCAP, est incluse dans le délai d'exécution.

### 28.2    Programme d'exécution
Dans le délai stipulé au CCAP, l'Entrepreneur soumettra au Chef de Projet, pour approbation, un programme d'exécution des travaux qui soit compatible avec la bonne exécution du Marché tenant compte notamment, le cas échéant, de la présence de sous-traitants ou d'autres entreprises sur le Site. L'Entrepreneur est tenu, en outre, sur demande du Maître d'Oeuvre, de lui donner par écrit, à titre d'information, une description générale des dispositions et méthodes qu'il propose d'adopter pour la réalisation des travaux.

Si à un moment quelconque, il apparaît au Maître d'Oeuvre que l'avancement des travaux ne correspond pas au programme d'exécution approuvé, l'Entrepreneur fournira, sur demande du Maître d'Oeuvre, un programme révisé présentant les modifications nécessaires pour assurer l'achèvement des travaux dans le délai d'exécution.

Le programme d'exécution des travaux précise notamment les matériels et les méthodes qui seront utilisés et le calendrier d'exécution des travaux. Le projet des installations de chantier et des ouvrages provisoires est annexé à ce programme. Le programme correspondant distinguera les matériels et équipements devant être importés de façon temporaire et exclusivement destinés à la réalisation des travaux.

Le programme d'exécution des travaux est soumis au visa du Maître d'Oeuvre quinze (15) jours au moins avant l'expiration de la période de mobilisation. Ce visa ne décharge en rien l'Entrepreneur de sa responsabilité de réaliser les travaux dans des délais et selon un programme compatible avec la bonne exécution du Marché. En outre, sauf dispositions contraires du Marché, l'absence de visa ne saurait faire obstacle à l'exécution des travaux.

### 28.3    Plan de sécurité et d'hygiène
Si le CCAP le prévoit, les mesures et dispositions énumérées au paragraphe 31.4 du CCAG font l'objet d'un plan de sécurité et d'hygiène. Les dispositions des deuxième et troisième alinéas du paragraphe 2 du présent Article sont alors applicables à ce plan.

**29.     Plans d'exécution – Notes de calculs - Etudes de détail**
**29.1    Documents fournis par l'Entrepreneur**
29.11   Sauf dispositions contraires du Marché, l'Entrepreneur établit d'après les pièces contractuelles les documents nécessaires à la réalisation des ouvrages, tels que les plans d'exécution, notes de calculs, études de détail. A cet effet, l'Entrepreneur fait sur place tous les relevés nécessaires et demeure responsable des conséquences de toute erreur de mesure. Il doit, suivant le cas, établir, vérifier ou compléter les calculs notamment en ce qui concerne la stabilité et la résistance des travaux et ouvrages. S'il reconnaît une erreur dans les documents de base fournis par le Maître d'œuvre ; il doit le signaler immédiatement par écrit au Maître d'Oeuvre.

29.12   Les plans d'exécution sont cotés avec le plus grand soin et doivent nettement distinguer les diverses natures d'ouvrages et les qualités des matériaux à mettre en œuvre. Ils doivent définir complètement, en conformité avec les spécifications techniques figurant au Marché, les formes des ouvrages, la nature des parements, les formes des pièces dans tous les éléments et assemblages, les armatures et leur disposition.

29.13   Les plans, notes de calculs, études de détail et autres documents établis par les soins ou à la diligence de l'Entrepreneur sont soumis à l'approbation du Maître d'Oeuvre, celui-ci pouvant demander également la présentation des avant-métrés. Toutefois, si le Marché le prévoit, tout ou partie des documents énumérés ci-dessus ne sont soumis qu'au visa du Maître d'Oeuvre.

29.14   L'Entrepreneur ne peut commencer l'exécution d'un ouvrage qu'après avoir reçu l'approbation ou le visa du Maître d'Oeuvre sur les documents nécessaires à cette exécution. Ces documents sont fournis dans les conditions figurant au paragraphe 4.42 du CCAG, sauf dispositions contraires des Spécifications techniques.

29.15   Si le Marché prévoit que le Maître de l'Ouvrage ou le Maître d'Oeuvre fournissent à l'Entrepreneur des documents nécessaires à la réalisation des ouvrages, la responsabilité de l'Entrepreneur n'est pas engagée sur la teneur de ces documents. Toutefois, l'Entrepreneur a l'obligation de vérifier, avant toute exécution, que ces documents ne contiennent pas d'erreurs, omissions ou contradictions qui sont normalement décelables par un homme de l'art ; s'il relève des erreurs, omissions ou contradictions, il doit les signaler immédiatement au Maître d'Oeuvre par écrit.

**30.     Modifications apportées aux dispositions techniques**
L'Entrepreneur ne peut, de lui-même, apporter aucun changement aux dispositions techniques prévues par le Marché.  Sur injonction du Maître d'Oeuvre par ordre de service et dans le délai fixé par cet ordre, il est tenu de reconstruire à ses frais les ouvrages qui ne sont pas conformes aux dispositions contractuelles. Toutefois, le Maître d'Oeuvre peut accepter les changements faits par l'Entrepreneur et les dispositions suivantes sont alors appliquées pour le règlement des comptes :

   (a)      si les dimensions ou les caractéristiques des ouvrages sont supérieures à celles que prévoit le Marché, les métrés restent fondés sur les dimensions et caractéristiques prescrites par le Marché et l'Entrepreneur n'a droit à aucune augmentation de prix; et

    (b)    si elles sont inférieures, les métrés sont fondés sur les dimensions constatées des ouvrages, et les prix font l'objet d'une nouvelle détermination suivant les modalités prévues à l'Article 14 du CCAG.

**31.    Installation, organisation, sécurité et hygiène des chantiers**
**31.1    Installation des chantiers de l'entreprise**
31.11  L'Entrepreneur se procure, à ses frais et risques, les terrains dont il peut avoir besoin pour l'installation de ses chantiers dans la mesure où ceux que le Maître de l'Ouvrage a mis à sa disposition et compris dans le Site, ne sont pas suffisants.

31.12  Sauf dispositions contraires du Marché, l'Entrepreneur supporte toutes les charges relatives à l'établissement et à l'entretien des installations de chantier, y compris les chemins de service et les voies de desserte du chantier qui ne sont pas ouverts à la circulation publique.

31.13  Si les chantiers ne sont d'un accès facile que par voie d'eau, notamment lorsqu'il s'agit de travaux de dragage, d'endiguement ou de pose de blocs, l'Entrepreneur doit sauf dispositions contraires du Marché, mettre gratuitement une embarcation armée à la disposition du Maître d'Oeuvre et de ses agents, chaque fois que celui-ci le lui demande.

31.14  L'Entrepreneur doit faire apposer dans les chantiers et ateliers une affiche indiquant le Maître de l'Ouvrage pour le compte duquel les travaux sont exécutés, les nom, qualité et adresse du Maître d'Oeuvre, ainsi que les autres renseignements requis par la législation du travail du pays du Maître de l'Ouvrage.

31.15  Tout équipement de l'Entrepreneur et ses sous-traitants, tous ouvrages provisoires et matériaux fournis par l'Entrepreneur et ses sous-traitants sont réputés, une fois qu'ils sont sur le site, être exclusivement destinés à l'exécution des travaux et l'Entrepreneur ne doit pas les enlever en tout ou en partie, sauf dans le but de les déplacer d'une partie du Site vers une autre, sans l'accord du Chef de Projet. Il est entendu que cet accord n'est pas nécessaire pour les véhicules destinés à transporter le personnel, la main-d'œuvre et l'équipement les fournitures, le matériel ou les matériaux de l'Entrepreneur vers ou en provenance du Site.

**31.2    Lieux de dépôt des déblais en excédent**
    L'Entrepreneur se procure, à ses frais et risques, les terrains dont il peut avoir besoin comme lieu de dépôt des déblais en excédent en sus des emplacements que le Maître d'Oeuvre met éventuellement à sa disposition comme lieux de dépôt définitifs ou provisoires. Il doit soumettre le choix de ces terrains à l'accord préalable du Maître d'Oeuvre, qui peut refuser l'autorisation ou la subordonner à des dispositions spéciales à prendre, notamment pour l'aménagement des dépôts à y constituer, si des motifs d'intérêt général, comme la sauvegarde de l'environnement le justifient.

**31.3    Autorisations administratives**
    Le Maître de l'Ouvrage fait son affaire de la délivrance à l'Entrepreneur de toutes autorisations administratives, telles que les autorisations d'occupation temporaire du domaine public ou privé, les permissions de voirie, les permis de construire nécessaires à la réalisation des ouvrages faisant l'objet du Marché.

    Le Maître de l'Ouvrage et le Maître d'Oeuvre apporteront leur concours à l'Entrepreneur, si

celui-ci le leur demande, pour lui faciliter l'obtention des autres autorisations administratives dont il aurait besoin, notamment pour pouvoir importer puis réexporter en temps utile, le cas échéant selon un régime douanier et fiscal suspensif, tout le matériel et l'équipement exclusivement destinés à la réalisation des travaux et pour disposer des emplacements nécessaires au dépôt des déblais.

### 31.4   Sécurité et hygiène des chantiers

31.41   L'Entrepreneur doit prendre sur ses chantiers toutes les mesures d'ordre et de sécurité propres à éviter des accidents, tant à l'égard du personnel qu'à l'égard des tiers. Il est tenu d'observer tous les règlements et consignes de l'autorité compétente. Il assure notamment l'éclairage et le gardiennage de ses chantiers, ainsi que leur signalisation tant intérieure qu'extérieure.  Il assure également, en tant que de besoin, la clôture de ses chantiers.

Il doit prendre toutes les précautions nécessaires pour éviter que les travaux ne causent un danger aux tiers, notamment pour la circulation publique si celle-ci n'a pas été déviée. Les points de passage dangereux, le long et à la traversée des voies de communication, doivent être protégés par des garde-corps provisoires ou par tout autre dispositif approprié ; ils doivent être éclairés et, au besoin, gardés.

31.42   L'Entrepreneur doit prendre les dispositions utiles pour assurer l'hygiène des installations de chantier destinées au personnel, notamment par l'établissement des réseaux de voirie, d'alimentation en eau potable et d'assainissement, si l'importance des chantiers le justifie.

31.43   Sauf dispositions contraires du Marché, toutes les mesures d'ordre, de sécurité et d'hygiène prescrites ci-dessus sont à la charge de l'Entrepreneur.

31.44   En cas d'inobservation par l'Entrepreneur des prescriptions ci-dessus et sans préjudice des pouvoirs des autorités compétentes, le Maître d'Oeuvre peut prendre aux frais de l'Entrepreneur les mesures nécessaires après mise en demeure restée sans effet. En cas d'urgence ou de danger, ces mesures peuvent être prises sans mise en demeure préalable. L'intervention des autorités compétentes ou du Maître d'Oeuvre ne dégage pas la responsabilité de l'Entrepreneur.

### 31.5   Signalisation des chantiers à l'égard de la circulation publique

Lorsque les travaux intéressent la circulation publique, la signalisation à l'usage du public doit être conforme aux instructions réglementaires en la matière : elle est réalisée sous le contrôle des services compétents par l'Entrepreneur, ce dernier ayant à sa charge la fourniture et la mise en place des panneaux et des dispositifs de signalisation, sauf dispositions contraires du Marché et sans préjudice de l'application du paragraphe 44 du présent Article.

Si le Marché prévoit une déviation de la circulation, l'Entrepreneur a la charge, dans les mêmes conditions, de la signalisation aux extrémités des sections où la circulation est interrompue et de la signalisation des itinéraires déviés. La police de la circulation aux abords des chantiers ou aux extrémités des sections où la circulation est interrompue et le long des itinéraires déviés incombe aux services compétents.

L'Entrepreneur doit informer par écrit les services compétents, au moins huit (8) jours ouvrables à l'avance, de la date de commencement des travaux en mentionnant, s'il y a lieu, le caractère mobile du chantier. L'Entrepreneur doit, dans les mêmes formes et délai,

informer les services compétents du repliement ou du déplacement du chantier.

**31.6    Maintien des communications et de l'écoulement des eaux**

31.61   L'Entrepreneur doit conduire les travaux de manière à maintenir dans des conditions convenables les communications de toute nature traversant le site des travaux, notamment celles qui intéressent la circulation des personnes, ainsi que l'écoulement des eaux, sous réserve des précisions données, le cas échéant, par le CCAP sur les conditions dans lesquelles des restrictions peuvent être apportées à ces communications et à l'écoulement des eaux.

31.62   En cas d'inobservation par l'Entrepreneur des prescriptions ci-dessus et sans préjudice des pouvoirs des autorités compétentes, le Maître d'Oeuvre peut prendre aux frais de l'Entrepreneur les mesures nécessaires après mise en demeure restée sans effet. En cas d'urgence ou de danger, ces mesures peuvent être prises sans mise en demeure préalable.

**31.7    Sujétions spéciales pour les travaux exécutés à proximité de lieux habités, fréquentés ou protégés**

Sans préjudice de l'application des dispositions législatives et réglementaires en vigueur, lorsque les travaux sont exécutés à proximité de lieux habités ou fréquentés, ou méritant une protection au titre de la sauvegarde de l'environnement, l'Entrepreneur doit prendre à ses frais et risques les dispositions nécessaires pour réduire, dans toute la mesure du possible, les gênes imposées aux usagers et aux voisins, notamment celles qui peuvent être causées par les difficultés d'accès, le bruit des engins, les vibrations, les fumées, les poussières.

**31.8    Sujétions spéciales pour les travaux exécutés à proximité des câbles ou ouvrages souterrains de télécommunications**

Lorsque, au cours de l'exécution des travaux, l'Entrepreneur rencontre des repères indiquant le parcours de câbles, de canalisations ou d'ouvrages souterrains, il maintient ces repères à leur place ou les remet en place si l'exécution des travaux a nécessité leur enlèvement momentané. Ces opérations requièrent l'autorisation préalable du Maître d'Oeuvre.

L'Entrepreneur est responsable de la conservation, du déplacement et de la remise en place, selon le cas, des câbles, des canalisations et ouvrages spécifiés par le Maître de l'Ouvrage dans le Marché et prend à sa charge les frais y afférents. Lorsque la présence de câbles, de canalisations ou installations n'a pas été mentionnée dans le Marché, mais est signalée par des repères ou des indices, l'Entrepreneur a un devoir général de diligence et des obligations analogues à celles énoncées ci-avant en ce qui concerne la conservation, le déplacement et la remise en place. Dans ce cas, le Maître de l'Ouvrage l'indemnise des frais afférents à ces travaux, dans la mesure où ces travaux sont nécessaires à l'exécution du Marché.



**31.9   Démolition de constructions**

31.91   L'Entrepreneur ne peut démolir les constructions situées dans les emprises des chantiers qu'après en avoir fait la demande au Maître d'Oeuvre quinze (15) jours à l'avance, le défaut de réponse dans ce délai valant autorisation.

31.92   Sauf dispositions contraires du Marché, l'Entrepreneur n'est tenu, en ce qui concerne les matériaux et les produits provenant de démolition ou de démontage, à aucune précaution particulière pour leur dépôt ni à aucune obligation de tri en vue de leur réemploi.

**31.10   Emploi des explosifs**

31.101  Sous réserve des restrictions ou des interdictions éventuellement stipulées dans le Marché, l'Entrepreneur doit prendre sous sa responsabilité, toutes les précautions nécessaires pour que l'emploi des explosifs ne présente aucun danger pour le personnel et pour les tiers, et ne cause aucun dommage aux propriétés et ouvrages voisins ainsi qu'aux ouvrages faisant l'objet du Marché.

31.102  Pendant toute la durée des travaux, et notamment après le tir des mines, l'Entrepreneur, sans être pour autant dégagé de la responsabilité prévue au paragraphe 101 du présent Article, doit visiter fréquemment les talus des déblais et les terrains supérieurs afin de faire tomber les parties de rochers ou autres qui pourraient avoir été ébranlées directement ou indirectement par le tir des mines.

**32.   Engins explosifs de guerre**

32.1   Si le Marché indique que le site des travaux peut contenir des engins de guerre non explosés, l'Entrepreneur applique les mesures spéciales de prospection et de sécurité édictées par l'autorité compétente. En tout état de cause, si un engin de guerre est découvert ou repéré, l'Entrepreneur doit :

(a)      suspendre le travail dans le voisinage et y interdire toute circulation au moyen de clôtures, panneaux de signalisation, balises, etc. ;

(b)      informer immédiatement le Maître d'Oeuvre et l'autorité chargée de faire procéder à l'enlèvement des engins non explosés, et

(c)      ne reprendre les travaux qu'après en avoir reçu l'autorisation par ordre de service.

32.2   En cas d'explosion fortuite d'un engin de guerre, l'Entrepreneur doit en informer immédiatement le Maître d'Oeuvre ainsi que les autorités administratives compétentes et prendre les mesures définies aux alinéas (a) et (c) du paragraphe 1 du présent Article.

32.3   Les dépenses justifiées entraînées par les stipulations du présent Article ne sont pas à la charge de l'Entrepreneur.

**33.   Matériaux, objets et vestiges trouvés sur les chantiers**

33.1   L'Entrepreneur n'a aucun droit sur les matériaux et objets de toute nature trouvés sur les chantiers en cours de travaux, notamment dans les fouilles ou dans les démolitions, mais il a droit à être indemnisé si le Maître d'Oeuvre lui demande de les extraire ou de les conserver



avec des soins particuliers.

33.2    Lorsque les travaux mettent au jour des objets ou des vestiges pouvant avoir un caractère artistique, archéologique ou historique, l'Entrepreneur doit le signaler au Maître d'Oeuvre et faire toute déclaration prévue par la réglementation en vigueur. Sans préjudice des dispositions législatives ou réglementaires en vigueur, l'Entrepreneur ne doit pas déplacer ces objets ou vestiges sans autorisation du Chef de Projet. Il doit mettre en lieu sûr ceux qui auraient été détachés fortuitement du sol.

33.3    Sans préjudice de la réglementation en vigueur, lorsque les travaux mettent au jour des restes humains, l'Entrepreneur en informe immédiatement l'autorité compétente sur le territoire de laquelle cette découverte a été faite et en rend compte au Maître d'Oeuvre.

33.4    Dans les cas prévus aux paragraphes 2 et 3 du présent Article, l'Entrepreneur a droit à être indemnisé des dépenses justifiées entraînées par ces découvertes.

**34.     Dégradations causées aux voies publiques**

34.1    L'Entrepreneur doit utiliser tous les moyens raisonnables pour éviter que les routes ou les ponts communiquant avec ou se trouvant sur les itinéraires menant au Site ne soient endommagés ou détériorés par la circulation des véhicules et engins de l'Entrepreneur ou de l'un quelconque de ses sous-traitants, en particulier, il doit choisir des itinéraires et des véhicules adaptés et limiter et répartir les chargements de manière à ce que toute circulation exceptionnelle qui résultera du déplacement des équipements, fournitures, matériels et matériaux de l'Entrepreneur et de ses sous-traitants vers ou en provenance du Site soit aussi limitée que possible et que ces routes et ponts ne subissent aucun dommage ou détérioration inutile.

34.2    Sauf dispositions contraires du Marché, l'Entrepreneur est responsable et doit faire exécuter à ses frais tout renforcement des ponts ou modification ou amélioration des routes communiquant avec ou se trouvant sur les itinéraires menant au Site qui faciliterait le transport des équipements, fournitures, matériels et matériaux de l'Entrepreneur et de ses sous-traitants et l'Entrepreneur doit indemniser le Maître de l'Ouvrage de toutes réclamations relatives à des dégâts occasionnés à ces routes ou ponts par ledit transport, y compris les réclamations directement adressées au Maître de l'Ouvrage.

34.3    Dans tous les cas, si ces transports ou ces circulations sont faits en infraction aux prescriptions du Code de la route ou des arrêtés ou décisions pris par les autorités compétentes, intéressant la conservation des voies publiques, l'Entrepreneur supporte seul la charge des contributions ou réparations.

**35.     Dommages divers causés par la conduite des travaux ou les modalités de leur exécution**

35.1    L'Entrepreneur a, à l'égard du Maître de l'Ouvrage, la responsabilité pécuniaire des dommages aux personnes et aux biens causés par la conduite des travaux ou les modalités de leur exécution, sauf s'il établit que cette conduite ou ces modalités résultent nécessairement des dispositions du Marché ou de prescriptions d'ordre de service ou sauf si le Maître de l'Ouvrage, poursuivi par le tiers victime de tels dommages, a été condamné sans avoir appelé l'Entrepreneur en garantie devant la juridiction saisie.  Les dispositions de cet



article ne font pas obstacle à l'application des dispositions de l'Article 34 du CCAG.

**36.    Réservé**
36.1    Réservé

**37.    Enlèvement du matériel et des matériaux sans emploi**
37.1    Au fur et à mesure de l'avancement des travaux, l'Entrepreneur procède au dégagement, au nettoiement et à la remise en état des emplacements mis à sa disposition par le Maître de l'Ouvrage pour l'exécution des travaux. Il doit prendre toutes dispositions pour éviter d'encombrer inutilement le Site et, en particulier, enlever tous équipements, fournitures, matériel et matériaux qui ne sont plus nécessaires.

37.2    A défaut d'exécution de tout ou partie de ces prescriptions, après ordre de service resté sans effet et mise en demeure par le Chef de Projet, les matériels, installations, matériaux, décombres et déchets non enlevés peuvent, à l'expiration d'un délai de trente (30) jours après la mise en demeure, être transportés d'office, suivant leur nature, soit en dépôt, soit à la décharge publique, aux frais et risques de l'Entrepreneur, ou être vendus aux enchères publiques.

37.3    Les mesures définies au paragraphe 2 du présent Article sont appliquées sans préjudice des pénalités particulières qui peuvent avoir été stipulées dans le Marché à l'encontre de l'Entrepreneur.

**38.    Essais et contrôle des ouvrages**
38.1    Les essais et contrôles des ouvrages, lorsqu'ils sont définis dans le Marché, sont à la charge de l'Entrepreneur. Si le Maître d'Oeuvre prescrit, pour les ouvrages, d'autres essais ou contrôles, ils sont à la charge du Maître de l'Ouvrage.

**39.    Vices de construction**
39.1    Lorsque le Maître d'Oeuvre présume qu'il existe un vice de construction dans un ouvrage, il peut, jusqu'à l'expiration du délai de garantie, prescrire par ordre de service les mesures de nature à permettre de déceler ce vice. Ces mesures peuvent comprendre, le cas échéant, la démolition partielle ou totale de l'ouvrage. Le Maître d'Oeuvre, l'Entrepreneur ayant été dûment convoqué, peut également exécuter ces mesures lui-même ou les faire exécuter par un tiers. En cas d'absence de l'Entrepreneur à ces opérations, il en est fait mention audit procès-verbal et ce procès-verbal lui est alors notifié.

39.2    Si un vice de construction est constaté, les dépenses correspondant au rétablissement de l'intégralité de l'ouvrage ou à sa mise en conformité avec les règles de l'art et les stipulations du Marché, ainsi que les dépenses résultant des opérations éventuelles ayant permis de mettre le vice en évidence, sont à la charge de l'Entrepreneur sans préjudice de l'indemnité à laquelle le Maître de l'Ouvrage peut alors prétendre.
Si aucun vice de construction n'est constaté, l'Entrepreneur est remboursé des dépenses définies à l'alinéa précédent, s'il les a supportées.



**40.     Documents fournis après exécution**

40.1   Sauf dispositions différentes du Marché et indépendamment des documents qu'il est tenu de fournir avant ou pendant l'exécution des travaux en application de l'Article 29.1 du CCAG, l'Entrepreneur remet au Maître d'Oeuvre, en trois (3) exemplaires, dont un sur calque :

(a)     au plus tard lorsqu'il demande la réception : les notices de fonctionnement et d'entretien des ouvrages établies conformément aux prescriptions et recommandations des normes internationale en vigueur et conforme à la réglementation applicable ; et

(b)     dans les soixante (60) jours suivant la réception : les plans et autres documents conformes à l'exécution, pliés au format normalisé A4.

<div style="border:1px solid black; text-align:center; font-weight:bold">
E.   Réception et Garanties
</div>

## 41.   Réception provisoire

41.1   La réception provisoire a pour but le contrôle et la conformité des travaux avec l'ensemble des obligations du Marché et, en particulier, avec les spécifications techniques. Si le CCAP le prévoit, la réception peut être prononcée par tranche de travaux étant précisé que, dans ce cas, c'est la réception de la dernière tranche qui tiendra lieu de réception provisoire de travaux au sens du présent Marché.

L'Entrepreneur avise à la fois le Chef de Projet et le Maître d'Oeuvre, par écrit, de la date à laquelle il estime que les travaux ont été achevés ou le seront.

Le Maître d'Oeuvre procède, l'Entrepreneur ayant été convoqué, aux opérations préalables à la réception des ouvrages dans un délai qui, sauf dispositions contraires du CCAP, est de vingt (20) jours à compter de la date de réception de l'avis mentionné ci-dessus ou de la date indiquée dans cet avis pour l'achèvement des travaux si cette dernière date est postérieure.

Le Chef de Projet, avisé par le Maître d'Oeuvre de la date de ces opérations, peut y assister ou s'y faire représenter. Le procès-verbal prévu au paragraphe 2 du présent Article mentionne soit la présence du Chef de Projet ou de son représentant, soit, en son absence le fait que le Maître d'Oeuvre l'avait dûment avisé.

En cas d'absence de l'Entrepreneur à ces opérations, il en est fait mention audit procès-verbal et ce procès-verbal lui est alors notifié.

41.2   Les opérations préalables à la réception comportent :

   (a)      la reconnaissance des ouvrages exécutés ;

   (b)      les épreuves éventuellement prévues par le CCAP ;

   (c)      la constatation éventuelle de l'inexécution des prestations prévues au Marché ;

   (d)      la constatation éventuelle d'imperfections ou malfaçons ;

   (e)      la constatation du repliement des installations de chantier et de la remise en état des terrains et des lieux, sauf stipulation différente du CCAP, prévue au paragraphe 11 de l'Article 19 du CCAG, et

   (f)      les constatations relatives à l'achèvement des travaux.

Ces opérations font l'objet d'un procès-verbal dressé sur-le-champ par le Maître d'Oeuvre et signé par lui et par l'Entrepreneur ; si ce dernier refuse de le signer ; il en est fait mention.

Dans le délai de quinze (15) jours suivant la date du procès-verbal, le Maître d'Oeuvre fait connaître à l'Entrepreneur s'il a ou non proposé au Chef de Projet de prononcer la réception

provisoire des ouvrages et, dans l'affirmative, la date d'achèvement des travaux qu'il a proposé de retenir ainsi que les réserves dont il a éventuellement proposé d'assortir la réception.

41.3   Au vu du procès-verbal des opérations préalables à la réception provisoire et des propositions du Maître d'Oeuvre, le Chef de Projet décide si la réception provisoire est ou non prononcée ou si elle est prononcée avec réserves.  S'il prononce la réception, il fixe la date qu'il retient pour l'achèvement des travaux. La décision ainsi prise est notifiée à l'Entrepreneur dans les quarante-cinq (45) jours suivant la date du procès-verbal.

A défaut de décision du Chef de Projet notifiée dans le délai précisé ci-dessus, les propositions du Maître d'Oeuvre sont considérées comme acceptées.

La réception, si elle est prononcée ou réputée prononcée, prend effet à la date fixée pour l'achèvement des travaux.

41.4   S'il apparaît que certaines prestations prévues au Marché et devant encore donner lieu à règlement n'ont pas été exécutées, le Chef de Projet peut décider de prononcer la réception provisoire, sous réserve que l'Entrepreneur s'engage à exécuter ces prestations dans un délai qui n'excède pas trois (3) mois. La constatation de l'exécution de ces prestations doit donner lieu à un procès-verbal dressé dans les mêmes conditions que le procès-verbal des opérations préalables à la réception.

41.5   Lorsque la réception provisoire est assortie de réserves, l'Entrepreneur doit remédier aux imperfections et malfaçons correspondantes dans le délai fixé par le Chef de Projet ou, en l'absence d'un tel délai, trois (3) mois avant la réception définitive.

Au cas où ces travaux ne seraient pas réalisés dans le délai prescrit, le Chef de Projet peut les faire exécuter aux frais et risques de l'Entrepreneur.

41.6   Si certains ouvrages ou certaines parties d'ouvrages ne sont pas entièrement conformes aux spécifications du Marché, sans que les imperfections constatées soient de nature à porter atteinte à la sécurité, au comportement ou à l'utilisation des ouvrages, le Chef de Projet peut, eu égard à la faible importance des imperfections et aux difficultés que présenterait la mise en conformité, renoncer à ordonner la réfection des ouvrages estimés défectueux et proposer à l'Entrepreneur une réfaction sur les prix.

Si l'Entrepreneur accepte la réfaction, les imperfections qui l'ont motivée se trouvent couvertes de ce fait et la réception est prononcée sans réserve.

Dans le cas contraire, l'Entrepreneur demeure tenu de réparer ces imperfections, la réception étant prononcée sous réserve de leur réparation.

41.7   Toute prise de possession des ouvrages par le Maître de l'Ouvrage doit être précédée de leur réception. Toutefois, s'il y a urgence, la prise de possession peut intervenir antérieurement à la réception, sous réserve de l'établissement préalable d'un état des lieux contradictoire.

41.8   La réception provisoire entraîne le transfert de la propriété et des risques au profit du Maître de l'Ouvrage et constitue le point de départ de l'obligation de garantie contractuelle selon les



dispositions de l'Article 44 du CCAG.

41.9    A l'issue de la réception provisoire, l'Entrepreneur doit débarrasser et retirer tous ses équipements, fournitures, matériels et matériaux excédentaires ainsi que tous détritus et ouvrages provisoires de toute nature et laisser le site et les ouvrages propres et en bon état de fonctionnement. Il est toutefois entendu que l'Entrepreneur est autorisé à conserver sur le Site, jusqu'à la fin du délai de garantie, tous les équipements, fournitures, matériels, matériaux et ouvrages provisoires dont il a besoin pour remplir ses obligations au cours de la période de garantie.

## 42.    Réception définitive

42.1    Sous réserve de disposition contraire figurant au CCAP, la réception définitive sera prononcée un (1) an après la date du procès-verbal de réception provisoire. Au sein de cette période, l'Entrepreneur est tenu à l'obligation de garantie contractuelle plus amplement décrite à l'Article 44 du CCAG.

En outre, au plus tard dix (10) mois après la réception provisoire, le Maître d'Oeuvre adressera à l'Entrepreneur les listes détaillées de malfaçons relevées, à l'exception de celles résultant de l'usure normale, d'un abus d'usage ou de dommages causés par des tiers.

L'Entrepreneur disposera d'un délai de deux (2) mois pour y apporter remède dans les conditions du Marché. Il retournera au Maître d'Oeuvre les listes de malfaçons complétées par le détail des travaux effectués.

Le Chef de Projet délivrera alors, après avoir vérifié que les travaux ont été correctement vérifiés et à l'issue de cette période de deux (2) mois, le procès-verbal de réception définitive des travaux.

42.2    Si l'Entrepreneur ne remédie par aux malfaçons dans les délais, la réception définitive ne sera prononcée qu'après la réalisation parfaite des travaux qui s'y rapportent. Dans le cas où ces travaux ne seraient toujours pas réalisés deux (2) mois après la fin de la période de garantie contractuelle, le Maître de l'Ouvrage prononcera néanmoins la réception définitive à l'issue de cette période tout en faisant réaliser les travaux par toute entreprise de son choix aux frais et risques de l'Entrepreneur. Dans ce cas, la garantie de bonne exécution visée à l'Article 6.11 demeurera en vigueur jusqu'au désintéressement complet du Maître de l'Ouvrage par l'Entrepreneur.

42.3    La réception définitive marquera la fin d'exécution du présent Marché et libérera les parties contractantes de leurs obligations.

## 43.    Mise à disposition de certains ouvrages ou parties d'ouvrages

43.1    Le présent Article s'applique lorsque le Marché, ou un ordre de service, prescrit à l'Entrepreneur de mettre, pendant une certaine période, certains ouvrages, ou certaines parties d'ouvrages, non encore achevées à la disposition du Maître de l'Ouvrage et sans que celui-ci en prenne possession, afin notamment de lui permettre d'exécuter, ou de faire exécuter par d'autres entrepreneurs, des travaux autres que ceux qui font l'objet du Marché.



43.2    Avant la mise à disposition de ces ouvrages ou parties d'ouvrages, un état des lieux est dressé contradictoirement entre le Maître d'Oeuvre et l'Entrepreneur.

L'Entrepreneur a le droit de suivre les travaux non compris dans son Marché qui intéressent les ouvrages ou parties d'ouvrages ainsi mis à la disposition du Maître de l'Ouvrage. Il peut faire des réserves s'il estime que les caractéristiques des ouvrages ne permettent pas ces travaux ou que lesdits travaux risquent de les détériorer. Ces réserves doivent être motivées par écrit et adressées au Maître d'Oeuvre.

Lorsque la période de mise à disposition est terminée, un nouvel état des lieux contradictoire est dressé.

43.3    Sous réserve des conséquences des malfaçons qui lui sont imputables, l'Entrepreneur n'est pas responsable de la garde des ouvrages ou parties d'ouvrages pendant toute la durée où ils sont mis à la disposition du Maître de l'Ouvrage.

## 44.    Garanties contractuelles
### 44.1    Délai de garantie

Le délai de garantie est, sauf stipulation contraire du Marché égal à la durée comprise entre la réception provisoire et la réception définitive. Pendant le délai de garantie, indépendamment des obligations qui peuvent résulter pour lui de l'application de l'Article 42 du CCAG, l'Entrepreneur est tenu à une obligation dite "obligation de parfait achèvement" au titre de laquelle il doit, à ses frais :

(a)     exécuter les travaux ou prestations éventuels de finition ou de reprise prévus aux paragraphes 4 et 5 de l'Article 41 du CCAG,

(b)     remédier à tous les désordres signalés par le Maître de l'Ouvrage ou le Maître d'Oeuvre, de telle sorte que l'ouvrage soit conforme à l'état où il était lors de la réception ou après correction des imperfections constatées lors de celle-ci ;

(c)     procéder, le cas échéant, aux travaux confortatifs ou modificatifs jugés nécessaires par le Maître d'Oeuvre et présentés par lui au cours de la période de garantie ; et

(d)     remettre au Maître d'Oeuvre les plans des ouvrages conformes à l'exécution dans les conditions précisées à l'Article 40 du CCAG.

Les dépenses correspondant aux travaux complémentaires prescrits par le Maître de l'Ouvrage ou le Maître d'Oeuvre ayant pour objet de remédier aux déficiences énoncées aux alinéas (b) et (c) ci-dessus ne sont à la charge de l'Entrepreneur que si la cause de ces déficiences lui est imputable.

L'obligation pour l'Entrepreneur de réaliser ces travaux de parfait achèvement à ses frais ne s'étend pas aux travaux nécessaires pour remédier aux effets de l'usage ou de l'usure normale, étant précisé que la propreté et l'entretien courant incombent au Maître de l'Ouvrage.

A l'expiration du délai de garantie, l'Entrepreneur est dégagé de ses obligations contractuelles, à l'exception de celles qui sont mentionnées au paragraphe 2 du présent

Article et la garantie prévue à l'Article 6.22 du CCAG sera échue de plein droit sauf dans le cas prévu à l'Article 42.2 du CCAG.

**44.2   Garanties particulières**

Les stipulations qui précèdent ne font pas obstacle à ce que le CCAP définisse, pour certains ouvrages ou certaines catégories de travaux, des garanties particulières s'étendant au-delà du délai de garantie fixé au paragraphe 1 du présent Article. L'existence de ces garanties particulières n'a pas pour effet de retarder la libération des sûretés au-delà de la réception définitive.

**45.      Garantie légale**

45.1    En application de la réglementation en vigueur, l'Entrepreneur est responsable de plein droit pendant dix (10) ans envers le Maître de l'Ouvrage, à compter de la réception provisoire, des dommages même résultant d'un vice du sol qui compromettent la solidité de l'ouvrage ou qui l'affectent dans l'un de ses éléments constitutifs ou l'un de ses éléments d'équipement le rendant impropre à sa destination. Pour s'exonérer de sa responsabilité au titre du présent Article, l'Entrepreneur doit prouver que les dommages proviennent d'une cause qui lui est étrangère.

## F.   Résiliation du Marché - Interruption des Travaux

**46.     Résiliation du Marché**

46.1    Il peut être mis fin à l'exécution des travaux faisant l'objet du Marché avant l'achèvement de ceux-ci, par une décision de résiliation du Marché qui en fixe la date d'effet.

Le règlement du Marché est fait alors selon les modalités prévues aux paragraphes 3 et 4 de l'Article 13 du CCAG, sous réserve des autres stipulations du présent Article.

Sauf dans les cas de résiliation prévus aux Articles 47 et 49 du CCAG, l'Entrepreneur a droit à être indemnisé, s'il y a lieu, du préjudice qu'il subit du fait de cette décision. Il doit, à cet effet, présenter une demande écrite, dûment justifiée, dans le délai de quarante-cinq (45) jours compté à partir de la notification du décompte général.

46.2    En cas de résiliation, il est procédé, l'Entrepreneur ou ses ayant droit, curateur ou syndic, dûment convoqués, aux constatations relatives aux ouvrages et parties d'ouvrages exécutés, à l'inventaire des matériaux approvisionnés, ainsi qu'à l'inventaire descriptif du matériel et des installations de chantier. Il est dressé procès-verbal de ces opérations.

L'établissement de ce procès-verbal comporte réception provisoire des ouvrages et parties d'ouvrages exécutés, avec effet de la date d'effet de la résiliation, tant pour le point de départ du délai de garantie défini à l'Article 44 du CCAG que pour le point de départ du délai prévu pour le règlement final du Marché au paragraphe 32 de l'Article 13 du CCAG. En outre, les dispositions du paragraphe 8 de l'Article 41 du CCAG sont alors applicables.

46.3    Dans les dix (10) jours suivant la date de ce procès-verbal, le Chef de Projet fixe les mesures qui doivent être prises avant la fermeture du chantier pour assurer la conservation et la sécurité des ouvrages ou parties d'ouvrages exécutés. Ces mesures peuvent comporter la démolition de certaines parties d'ouvrages.

A défaut d'exécution de ces mesures par l'Entrepreneur dans le délai imparti par le Chef de Projet, le Maître d'Oeuvre les fait exécuter d'office.

Sauf dans les cas de résiliation prévus aux Articles 47 et 49 du CCAG, ces mesures ne sont pas à la charge de l'Entrepreneur.

46.4    Le Maître de l'Ouvrage dispose du droit de racheter, en totalité ou en partie les ouvrages provisoires utiles à l'exécution du Marché, ainsi que les matériaux approvisionnés, dans la limite où il en a besoin pour le chantier.

Il dispose, en outre, pour la poursuite des travaux, du droit, soit de racheter, soit de conserver à sa disposition le matériel spécialement construit pour l'exécution du Marché.

En cas d'application des deux alinéas précédents, le prix de rachat des ouvrages provisoires et du matériel est égal à la partie non amortie de leur valeur. Si le matériel est maintenu à disposition, son prix de location est déterminé en fonction de la partie non amortie de sa

valeur.

Les matériaux approvisionnés sont rachetés aux prix du Marché ou, à défaut à ceux qui résultent de l'application de l'Article 14 du CCAG.

46.5    L'Entrepreneur est tenu d'évacuer les lieux dans le délai qui est fixé par le Maître d'Oeuvre.

**47.    Décès, incapacité, règlement judiciaire ou liquidation des biens de l'Entrepreneur**

47.1    En cas de règlement judiciaire ou de liquidation des biens de l'Entrepreneur, la résiliation du Marché est prononcée, sauf si, dans le mois qui suit la décision de justice intervenue, l'autorité compétente décide de poursuivre l'exécution du Marché.

La résiliation, si elle est prononcée, prend effet à la date de la décision du syndic de renoncer à poursuivre l'exécution du Marché ou de l'expiration du délai d'un (1) mois ci-dessus. Elle n'ouvre droit, pour l'Entrepreneur, à aucune indemnité.

47.2    Dans les cas de résiliation prévus au présent Article, pour l'application des dispositions des paragraphes 3 et 4 de l'Article 46 du CCAG, l'autorité compétente est substituée à l'Entrepreneur.

**48.    Ajournement des travaux**

48.1    L'ajournement des travaux peut être décidé par le Maître de l'Ouvrage. Il est alors procédé, suivant les modalités indiquées à l'Article 12 du CCAG, à la constatation des ouvrages et parties d'ouvrages exécutés et des matériaux approvisionnés.

L'Entrepreneur qui conserve la garde du chantier a droit à être indemnisé des frais que lui impose cette garde et du préjudice qu'il aura éventuellement subi du fait de l'ajournement.

Une indemnité d'attente de reprise des travaux peut être fixée dans les mêmes conditions que les prix nouveaux, suivant les modalités prévues à l'Article 14 du CCAG.

48.2    Si, par suite d'un ajournement ou de plusieurs ajournements successifs, les travaux ont été interrompus pendant plus de trois (3) mois, l'Entrepreneur a le droit d'obtenir la résiliation du Marché, sauf si, informé par écrit d'une durée d'ajournement conduisant au dépassement de la durée de trois (3) mois indiquée ci-dessus, il n'a pas, dans un délai de quinze (15) jours, demandé la résiliation.

48.3    Au cas où un acompte mensuel n'aurait pas été payé, l'Entrepreneur, trente (30) jours après la date limite fixée au paragraphe 23 de l'Article 13 du CCAG pour le paiement de cet acompte, peut, par lettre recommandée avec demande d'avis de réception adressée au Chef de Projet, prévenir le Maître de l'Ouvrage de son intention de suspendre les travaux au terme d'un délai de quinze (15) jours. Si dans ce délai, l'acompte n'a pas été mandaté, l'Entrepreneur peut suspendre la poursuite des travaux et obtenir la résiliation de son marche aux torts du Maître de l'Ouvrage par notice effective dans un délai de quinze (15) jours suivant son envoi.

48.4    Si les retraits de fonds du compte du prêt ou du crédit de l'AFD sont suspendus, le Maître de l'Ouvrage doit en informer immédiatement l'Entrepreneur et lui faire connaître s'il a

l'intention de faire poursuivre les travaux en recourant à d'autres sources de financement. Si le non-paiement survient dans le cas où les retraits de fonds sont suspendus et que le Maître de l'Ouvrage n'a pas fait connaître à l'Entrepreneur son intention de faire poursuivre les travaux en recourant à d'autres sources de financement, le délai de trente (30) jours et les deux délais de quinze (15) jours auxquels il est fait référence au paragraphe 48.3 ci-dessus sont réduits à dix (10) jours et cinq (5) jours respectivement.

> **G.   Mesures coercitives - Règlement des différends et des litiges -**
> **Entrée en vigueur**

**49.       Mesures coercitives**

49.1    A l'exception des cas prévus au paragraphe 22 de l'Article 13 et à l'Article 14, lorsque l'Entrepreneur ne se conforme pas aux dispositions du Marché ou aux ordres de service, le Chef de Projet le met en demeure d'y satisfaire, dans un délai déterminé, par une décision qui lui est notifiée par écrit. Ce délai, sauf en cas d'urgence, n'est pas inférieur à quinze (15) jours à compter de la date de notification de la mise en demeure.

49.2    Si l'Entrepreneur n'a pas déféré à la mise en demeure, la résiliation du Marché peut être décidée.

49.3    La résiliation du Marché décidée en application du présent Article peut être soit simple, soit aux frais et risques de l'Entrepreneur.

49.4    En cas de résiliation aux frais et risques de l'Entrepreneur, il peut être passé un Marché avec un autre Entrepreneur pour l'achèvement des travaux. Par exception aux dispositions du paragraphe 42 de l'Article 13, le décompte général du Marché résilié ne sera notifié à l'Entrepreneur qu'après règlement définitif du nouveau Marché passé pour l'achèvement des travaux.

Dans le cas d'un nouveau marche aux frais et risques de l'Entrepreneurs ce dernier est autorisé à en suivre l'exécution sans pouvoir entraver les ordres du Maître d'Oeuvre et de ses représentants. Les excédents de dépenses qui résultent du nouveau marche sont à la charge de l'Entrepreneur. Ils sont prélevés sur les sommes qui peuvent lui être dues ou, à défaut, sur ses garanties, sans préjudice des droits à exercer contre lui en cas d'insuffisance.

49.5    Dans le cas d'un Marché passé avec des Entrepreneurs groupés, si le mandataire commun ne se conforme pas aux obligations qui lui incombent en tant que représentant et coordonnateur des autres entrepreneurs, il est mis en demeure d'y satisfaire suivant les modalités définies au paragraphe 1 du présent Article.

Si cette mise en demeure reste sans effet, le Chef de Projet invite les entrepreneurs groupés à désigner un autre mandataire dans le délai d'un (1) mois. Le nouveau mandataire, une fois agréé par le Maître de l'Ouvrage, est alors substitué à l'ancien dans tous ses droits et obligations.

Faute de cette désignation, le Chef de Projet choisit une personne physique ou morale pour coordonner l'action des divers entrepreneurs groupés. Le mandataire défaillant reste solidaire des autres entrepreneurs et supporte les dépenses d'intervention du nouveau coordonnateur.

**49.6       Corruption ou manœuvres frauduleuses**

S'il juge que l'Entrepreneur s'est livré à la corruption ou à des manœuvres frauduleuses au cours de l'attribution ou de l'exécution du Marché, le Maître de l'Ouvrage peut, quatorze (14) jours après le lui avoir notifié, résilier le Marché et les dispositions des paragraphes 49.2,

49.3 et 49.4 sont applicables de plein droit.

Aux fins de ce paragraphe, les termes ci-après sont définis comme suit :

(i)     est coupable de "corruption" quiconque offre, donne, sollicite ou accepte un quelconque avantage en vue d'influencer l'action d'un agent public au cours de l'attribution ou de l'exécution d'un marché ; et

(ii)    se livre à des "manœuvres frauduleuses" quiconque déforme ou dénature des faits afin d'influencer l'attribution ou l'exécution d'un marché de manière préjudiciable au Maître de l'Ouvrage, ou s'entend ou tente de s'entendre avec d'autres soumissionnaires (avant ou après la remise des offres) pour fixer des prix à un niveau artificiel et non compétitif, et d'ainsi priver le Maître de l'Ouvrage des bénéfices d'un appel ouvert à la concurrence.

**50.2    Intervention du Conciliateur**
50.21    Le Conciliateur doit prendre sa décision dans les trente (30) jours suivant la présentation du différend qui lui est faite.

50.22    Le Conciliateur est payé à l'heure au tarif précisé dans l'Acte d'engagement à cet effet, et le coût est également réparti entre le Maître de l'Ouvrage et l'Entrepreneur, quelque soit la décision du Conciliateur. L'une des parties en présence peut notifier à l'autre partie son intention de soumettre la décision du Conciliateur à l'arbitrage conformément au paragraphe 3 ci-après dans les trente (30) jours suivant la décision du Conciliateur. Si aucune des parties ne notifie l'autre partie dans ce délai, la décision prise par le Conciliateur devient définitive et exécutoire.

50.23    En cas de démission ou de décès du Conciliateur ou si le Maître de l'Ouvrage et l'Entrepreneur conviennent que le Conciliateur ne s'acquitte pas de ses fonctions conformément aux dispositions du Marché, un nouveau Conciliateur sera nommé conjointement par le Maître de l'Ouvrage et par l'Entrepreneur ou, si les deux parties n'arrivent pas à un accord dans les trente (30) jours, par l'Autorité chargée de la désignation figurant au CCAP, à la demande de l'une des parties en présence, puis nommé conjointement par le Maître de l'Ouvrage et par l'Entrepreneur.

**50.3    Procédure contentieuse**
50.31    Si, dans le délai de trente (30) jours à partir de la date de présentation du différend qui lui est

faite, aucune décision du Conciliateur n'a été notifiée à l'Entrepreneur et au Maître de l'Ouvrage ou si une des deux parties n'accepte pas la décision notifiée par le Conciliateur, le différend sera tranché par voie d'arbitrage conformément à la procédure d'arbitrage spécifiée dans le CCAP.

50.32   Si, dans le délai de six (6) mois à partir de la notification à l'Entrepreneur de la décision prise conformément au paragraphe 1 du présent Article sur les réclamations auxquelles a donné lieu le décompte général du Marché, l'Entrepreneur n'a pas initié la procédure d'arbitrage prévue au paragraphe 31 du présent Article, il est considéré comme ayant définitivement accepté ladite décision et toute procédure arbitrale ou devant une quelconque instance sera alors irrecevable.

**51.     Droit applicable et changement dans la réglementation**

**51.1    Droit applicable**

En l'absence de disposition figurant au CCAP, le droit applicable pour l'interprétation et l'exécution du présent Marché est le droit du pays du Maître de l'Ouvrage.

**51.2    Changement dans la réglementation**

51.21   A l'exception des changements de lois ou règlements ayant pour effet de bouleverser l'économie des relations contractuelles et engendrant une perte manifeste pour l'Entrepreneur et imprévisible à la date de remise de l'offre, seuls les changements intervenus dans le pays du Maître de l'Ouvrage pourront être pris en compte pour modifier les conditions financières du Marché.

51.22   En cas de modification de la réglementation en vigueur dans le pays du Maître de l'Ouvrage ayant un caractère impératif, à l'exception des modifications aux lois fiscales ou assimilées qui sont régies par l'Article 10.5 du CCAG, qui entraîne pour l'Entrepreneur une augmentation ou une réduction du coût d'exécution des travaux non pris en compte par les autres dispositions du Marché et qui est au moins égale à un (1) pour cent du Montant du Marché, un avenant sera conclu entre les parties pour augmenter ou diminuer, selon le cas, le Montant du Marché. Dans le cas où les parties ne pourraient se mettre d'accord sur les termes de l'avenant dans un délai de trois (3) mois à compter de la proposition d'avenant transmise par une partie à l'autre, les dispositions de l'Article 50.1 du CCAG s'appliqueront.

**52.     Entrée en vigueur du Marché**

52.1    L'entrée en vigueur du Marché est subordonnée à la réalisation de celles des conditions suivantes qui sont spécifiées au CCAP :

(a)     approbation des autorités compétentes du pays du Maître de l'ouvrage ;

(b)     approbation de la convention de financement du Projet  ;

(c)     mise en place des garanties à produire par l'Entrepreneur ;

(d)     versement de l'avance prévue à l'Article 11.5 du CCAG ; et

(e)     mise à la disposition du site par le Maître d'Oeuvre à l'Entrepreneur.

52.2   Un procès-verbal sera établi contradictoirement et signé par les parties dès que les conditions mentionnées ci-dessus seront remplies. La date d'entrée en vigueur du Marché est celle de la signature de ce procès-verbal.

52.3   Si l'entrée en vigueur du Marché n'est pas survenue dans les trois (3) mois suivant la date de la Lettre de marche, chaque partie est libre de dénoncer le Marché pour défaut d'entrée en vigueur.

# PIECE 4 :

# LE CAHIER DES CLAUSES ADMINISTRATIVES PARTICULIÈRES

# REPUBLIQUE DE GUINEE

## MINISTERE DES TRAVAUX PUBLICS ET DES TRANSPORTS

### Direction Nationale des Investissements Routiers

# REAMENAGEMENT DE LA 2 X 2 VOIES
# ENTRE TOMBO ET l'AEROPORT DE GBESSIA (CONAKRY)

# LOT 4 : KENIEN - T1

## *DOSSIER DE CONSULTATION DES ENTREPRISES*

## SECTION 4
## CAHIER DES CLAUSES ADMINISTRATIVES
## PARTICULIERES

Section 4 – Cahier des Clauses administratives particulières

# SOMMAIRE

Article 1.    Désignation des intervenants........................................................1
Article 2.    Adresse où les notifications à l'Entrepreneur sont valablement effectuées........1
Article 3.    Documents contractuels ...........................................................1
Article 4.    Adéquation de l'offre .............................................................2
Article 5.    Estimation des engagements financiers du Maître de l'Ouvrage.......................3
Article 6.    Sécurité des personnes et des biens et protection de l'environnement..............3
Article 7.    Garanties...........................................................................4
Article 8.    Retenue de garantie ...............................................................4
Article 9.    Assurances.........................................................................4
Article 10.   Montant du Marché .................................................................5
Article 11.   Révision des prix .................................................................5
Article 12.   Impôts, droits, taxes, redevances, cotisations....................................7
Article 13.   Travaux en régie...................................................................8
Article 14.   Pourcentage maximum des travaux en régie par rapport au montant
              du Marché .........................................................................8
Article 15.   Acomptes sur approvisionnement ....................................................8
Article 16.   Avance forfaitaire.................................................................9
Article 17.   Intérêts moratoires................................................................9
Article 18.   Modalités de règlement des acomptes...............................................10
Article 19.   Acomptes...........................................................................11
Article 20.   Force majeure......................................................................12
Article 21.   Délai d'exécution .................................................................12
Article 22.   Prolongation des délais d'exécution ...............................................12
Article 23.   Pénalités, primes et retenues .....................................................13
Article 24.   Plan d'implantation des ouvrages...................................................13
Article 25.   Préparation des travaux ...........................................................13
Article 26.   Installation, organisation, sécurité et hygiène des chantiers.....................14
Article 27.   Documents à fournir après exécution...............................................15
Article 28.   Réception provisoire ..............................................................15
Article 29.   Règlement des différends ..........................................................15
Article 30.   Entrée en vigueur du Marché .......................................................15

## Cahier des Clauses administratives particulières

Les Clauses administratives particulières qui suivent complètent les Clauses administratives générales. Dans tous les cas où les dispositions se contredisent, les dispositions ci-après prévaudront sur celles des Clauses administratives générales. Le numéro de la Clause générale à laquelle se réfère une Clause particulière est indiqué entre parenthèses.

*Certaines des Clauses devront être complétées ou modifiées en accord avec les informations fournies par le Soumissionnaire dont l'offre a été retenue ou les modifications acceptées entre ce Soumissionnaire et le Maître de l'Ouvrage.*

**Article 1.     Désignation des intervenants (CCAG Article 3.1)**

| | | |
|---|---|---|
| 1.1 | Maître de l'Ouvrage : | **Monsieur le Ministre des Travaux Publics et des Transports** |
| | représenté par : | **Monsieur le Directeur National des Investissements Routiers** |

1.2          Unité de Suivi et de Coordination du Projet (USCP) :
             **Service placé sous la tutelle de la Direction Nationale des Investissements Routiers, chargé de la gestion, et de la coordination de l'ensemble du projet de la 2x2 voies entre Tombo et l'Aéroport de Gbessia**

1.3          Maître d'Oeuvre :          **L'Ingénieur, Chef de la Mission de Contrôle (appartient au bureau d'Etudes Chargé du Contrôle des travaux)**

1.4          Entrepreneur :          *à compléter avec l'offre du soumissionnaire*

Le Maître d'Ouvrage  veille au respect du programme des travaux et de l'enveloppe ; adresse les demandes de décaissement aux organismes payeurs ; participe aux réceptions provisoire et définitive ; enregistre en comptabilité les ouvrages réalisés ;  préside les réceptions provisoire et définitive; gère les contentieux non réglés au niveau du Maître d'œuvre .

**Article 2.     Adresse où les notifications à l'Entrepreneur sont valablement effectuées (CCAG Article 3.5)**
             *à compléter avec l'offre du soumissionnaire*

**Article 3.     Documents contractuels (CCAG Article 4)**

3.1          Par dérogation à l'article 4.2 du CCAG, l'ordre de priorité des pièces contractuelles

constituant le marché est :
a) la Lettre de marche et l'Acte d'engagement dûment signés ;
b) la soumission et ses annexes ;
c) le Bordereau des prix unitaires ;
d) le Cahier des Clauses administratives particulières (CCAP);
e) les spécifications techniques particulières (SPT ou CCTP)
f) les plans de l'Avant Projet Détaillé ;
g) le Cahier des Clauses administratives générales ;
h) les spécifications techniques générales et les normes applicables aux prestations faisant l'objet du Marché telles que stipulées dans les Spécifications techniques ainsi que tout autre document du même type visé au CCAP.
i) le Détail quantitatif et estimatif;
j) la décomposition des prix forfaitaires et les sous-détails de prix unitaires, lorsque ces pièces sont mentionnées comme pièces contractuelles dans le CCAP ;

En cas de différence entre les pièces constitutives du Marché, ces pièces prévalent dans l'ordre où elles sont énumérées ci-dessus.

3.2        Plans
Les plans fournis dans le Dossier de consultation des Entreprises sont des plans d'Avant Projet Détaillé (APD). A l'exécution, les plans d'exécution sont établis par l'Entrepreneur sous la base des plans d'APD ; ils deviennent contractuels à leur approbation par le Maître d'œuvre et, lorsque cette disposition s'applique, par une institution, qui soit acceptable par le Maître d'Ouvrage, engagée au titre de la garantie décennale

3.3        Notes de calcul, cahiers de sondage, et dossiers géotechniques
Les autres informations de nature technique fournis dans le Dossier de Consultation des Entreprises : phasage des travaux, dossier géotechnique, étude d'impact sur l'environnement, dossier géotechnique etc .. , ont pour seuls objet de donner aux soumissionnaires les informations nécessaires pour leur permettre de mieux apprécier la nature des travaux. Ils sont fournis à titre indicatif et ne font pas partie des documents contractuels.

3.4        Décomposition des prix forfaitaires et sous-détail des prix unitaires.
La décomposition des prix unitaires et les sous détail des prix sont requis au stade de l'Appel d'Offres.

**Article 4.      Adéquation de l'offre** (CCAG Article 5.1)
Les travaux sont situés
✓ en zone urbaine dense avec des réseaux existants (eau, électricité, téléphone) aériens ou enterrés,
✓ dans une région à pluviométrie très élevée (de l'ordre de 4.000 mm par an)
✓ dans des terrains :
• souvent compacts à faible profondeur (carapace ou cuirasse latéritique)
• de qualité médiocre en profondeur au niveau des échangeurs.

L'Entrepreneur est réputé avoir pris connaissance de toutes les sujétions liées à la situation des travaux , notamment :

➤ des sujétions d'accès et des sujétions liées au maintien de la circulation des véhicules et des piétons et de l'accès des riverains,

➤ des sujétions liées au phasage des travaux et à la nécessité de perturber la circulation le moins possible,

➤ des sujétions liées au déplacement des réseaux (eau, électricité, téléphone) existants,

➤ des sujétions liées à la réalisation des exutoires jusqu'à la mer, à l'intérieur de voiries existantes,

➤ du ralentissement et/ou de l'interruption des travaux en saison des pluies,

➤ des sujétions pour travaux de terrassements et de fouilles diverses,

➤ des sujétions liées aux travaux dans le déblai de Dabondi,

➤ des sujétions liées aux mouvements officiels.

De même l'Entrepreneur est réputé avoir pris connaissance des sujétions liées au respect de l'environnement naturel et humain, pour la ville de Conakry et pour l'exploitation de la carrière de Kouriya notamment.

Par ailleurs, les procédures en cours pour le dédouanement des importations sont complexes :

➤ des contrôles sont effectués au départ et à l'arrivée par les services des douanes et les services de la Société de Contrôle qui intervient dans le cadre de la sécurisation des recettes douanières ;

➤ l'enlèvement direct n'est pas autorisé.

L'Entrepreneur est réputé avoir pris connaissance de toutes les sujétions en matière de dédouanement.

Le coût de toutes les sujétions liées à la situation des travaux est compris dans les prix unitaires de la soumission.

**Article 5.**     **Estimation des engagements financiers du Maître de l'ouvrage (CCAG Article 5.8)**

L'Entrepreneur remettra dans un délai de 21 jours après la date d' entrée en vigueur du marché les informations requises au titre de la Clause 5.8 du CCAG.

**Article 6.**     **Sécurité des personnes et des biens et protection de l'environnement (CCAG Article 5.10)**

Toutes les dispositions de l'article 5.10 du C.C.A.G sont d'application. Il est rappelé que les travaux sont situés en zone urbaine dense et sous circulation, et que

l'exploitation de la carrière de Kouriya est soumise à des contraintes particulières vis à vis du respect de l'environnement naturel et humain.

L'entrepreneur est réputé avoir pris connaissance de toutes les sujétions liées à cette situation.

**Article 7.**      **Garanties** (CCAG Article 6.1)

6.11          Mode de calcul de la garantie de bonne exécution :
     (a)     pourcentage par rapport au Montant du Marché : **5%**
     (b)     le pourcentage applicable en monnaies nationale et étrangères sera le même que celui applicable au montant du marché.

**Article 8.**      **Retenue de garantie** (CCAG Article 6.2)

6.21          Pourcentage de la retenue de garantie : **5%**

**Article 9.**      **Assurances** (CCAG Article 6.3)

Les polices d'assurances définies à l'article 6.3 du C.C.AG sont requises au titre du présent Marché. Il est précisé ci après :

La Police contractée pendant toute la durée des travaux auprès d'une assurance de bon renom est une police « Tous risques Chantier ». Elle s'étend à la période de garantie jusqu'à la réception définitive.

Elle comprend deux divisions :
➢ Division 1 : travaux ;
➢ Division 2 : responsabilité civile à l'égard des tiers (RC), avec extension « responsabilité civile croisée ».

Le montant couvert pour  la division 1 (travaux) est le montant du marché.

Le montant couvert pour la RC à l'égard des tiers est au moins égal à trente pour cent (30%) du montant du marché.

La franchise prévue par la police est du montant minimum accepté par le marché des assurances ;  elle est à la charge de l'Entrepreneur.

En outre, l'Entrepreneur s'engage à souscrire une assurance responsabilité décennale destinée à couvrir les dommages aux ouvrages d'art neufs et notamment

l'effondrement ou menace d'effondrement à la suite de vice de construction qui lui est imputable.

Le montant des risques est soit libellé en devises soit réparti entre les monnaies de paiement selon la quote-part indiquée au marché (articles 10 du C.C.A.G et  10 du C.C.A.P)

Les polices couvrent la période entre la date de notification du marché *(sera indiquée clairement dans la police)* et la réception définitive. Cette formule sera reprise in-extenso dans les polices ; en aucun cas la date de la fin du délai contractuel ou toute autre date calendaire ne figureront dans les polices d'assurances au titre de date d'extinction de la police.

L'Entrepreneur devra fournir au Maître d'Ouvrage dans un délai de quinze jours à compte du début de la période de mobilisation copie certifiée de toutes les polices d'assurance ainsi qu'une attestation de l'assureur indiquant clairement le descriptif du chantier, l'identité du Maître de l'Ouvrage, du Maître d'œuvre, de l'entreprise et des ses sous-traitants, les montants couverts par l'assurance, le montant de la franchise et la période de validité de l'assurance (étant entendu que toutes les dispositions de l'articles 6.3 du C.C.A.G sont maintenues ; notamment ces polices comporteront une disposition subordonnant leur résiliation à un avis notifié au préalable par la compagnie d'assurances au Maître de l'Ouvrage).

**Article 10      Montant du Marché (CCAG Article 10)**

Le Montant du Marché résultant  du Détail quantitatif et estimatif et calculé dans les conditions prévues à l'Article 13.1 du CCAG est un montant estimé et libellé en **GNF** égal à :
**GNF :**         *à compléter avec l'offre du soumissionnaire*

Une quote-part de ce prix est payable dans la ou les monnaies étrangères suivantes: La quote-part payable en monnaie(s) étrangère(s) est égale à ------ pour cent  au taux de change, publié par la Banque Centrale de la République de Guinée (BCRG), en vigueur trente (30) jours avant la date limite de remise des offres : *[Indiquer le ou les taux de change qui sont aussi fournis en annexe à la soumission].*

Les prix du marché sont des prix unitaires.

**Article 11.      Révision des prix (CCAG Article 10.4)**

10.42          Les prix sont révisables selon les dispositions ci après :

(a)      Les prix unitaires établis par l'Entrepreneur, lors de sa soumission, resteront fermes et non



révisables pendant les douze (12) premiers mois de l'exécution des travaux.

(b)   au delà de cette période, le montant dû à l'Entrepreneur, est ajusté selon l'augmentation ou la diminution des coûts indexés de la main d'oeuvre, des matériaux, du matériel de construction et de tout autre élément entrant dans les travaux, par application d'un coefficient de révision des prix (p) défini par une formule de révision des prix par établie par monnaie de paiement conformément aux dispositions du présent Article.

(c)   Dans la mesure où les dispositions du présent Article ou des autres Articles du Marché ne couvriraient pas entièrement toutes les augmentations ou diminutions de coût subies par l'Entrepreneur, les taux et prix unitaires figurant au Marché seront réputés couvrir les aléas résultant des augmentations ou diminutions des coûts.

(d)   Les prix du bordereau des prix unitaires sont établis sur la base des cours des salaires, des matières et des charges sociales quinze jours avant la date de remise des offres.

(e)   L'avance de démarrage ne donne pas lieu à révision. La clause de révision des prix ne s'applique que sur la différence entre le montant initial de l'acompte ou du solde et le montant de l'avance à déduire.

(f)   Il n'y aura pas de révision de prix pour les postes forfaitaires : série 1 installations et sujétions et pour le coefficient des débates pour déplacement des réseaux.

(f)   Les formules de révision des prix ne s'appliquent que si le coefficient correcteur est supérieur à 1,03 (seuil de révision, et non seuil de neutralisation). Elles ne s'appliquent qu'à partir du mois où ce seuil de révision est dépassé et n'est pas rétroactive.
Le calcul du coefficient de variation sera poussé jusqu'à la troisième décimale comprise et P sera arrondi à l'unité inférieure de la devise considérée.

(g)   En cas de retard dans l'exécution des travaux imputable à l'Entrepreneur, les indices de révision de prix à prendre en compte sont, soit ceux valables pendant le dernier mois du délai contractuel, soit ceux des mois suivants jusqu'à la réception provisoire des travaux, s'ils sont à l'avantage du Maître de l'Ouvrage. La même règle est applicable dans tous les cas de prolongation de délai accordée ou décidée par le Maître d'Ouvrage.

(h)   les formules de révision sont :

**pour la part en devises**

$$P_n = P_0 \times [0,15 + 0,85 \times (TP_n/TP_0)]$$

Dans cette formule, on désigne par :

$P_n$ : le montant révisé des travaux (travaux plus approvisionnements) payables devises exécutés au cours du mois n et auxquels s'applique la formule compte tenu de l'application des alinéas (a) à (g) ci dessus,

$P_0$ : le montant payable en devise étrangère de ces mêmes travaux avant révision

TP : « l' index général tous travaux » officiel du pays d'origine du soumissionnaire équivalent à l'index TP01, publié par le « Moniteur des Travaux Publics » en France.

$TP_n$ est l'index du mois durant lequel les travaux sont exécutés.

$TP_0$ est l'index en vigueur quinze jours avant la date de remise des offres.  Une photocopie du dernier indice connu aura été annexée à l'offre

Pour la part en Francs Guinéens :

**Pour la part en francs guinéens (NGF)**
$$P_n = P_0 \times [(0,20 + 0,35 \times ((S_n \times (1+Ch_n)/S_0 \times (1+Ch_0)) + 0,30\ Ca_n/Ca_0 + 0,15\ Cm_n/Cm_0]$$
Dans cette formule, on désigne par :

$P_n$ : montant révisé des travaux payables en Francs Guinéens, exécutés au cours du mois et auxquels s'applique la formule compte tenu de l'application des alinéas (a) à (g) ci dessus,

$P_0$ : montant payable en Francs Guinéens de ces mêmes travaux avant révision

S : taux journalier représentatif des salaires d'une même équipe de main d'œuvre Guinéenne constituée de la façon suivante :

| | |
|---|---|
| chefs de chantier (topographes, laborantins, comptables) | 10 % |
| chefs d'équipe et ouvriers hautement qualifiés | 18 % |
| ouvriers qualifiés, secrétaires | 37 % |
| ouvriers spécialisés, manœuvres, gardiens | 35 % |
| Total …………………………………………………………… | 100 % |

Ch : pourcentage des charges sociales, applicable à la main d'œuvre Guinéenne, tel que défini par le Ministère du Travail

Ca : prix du gazole à la pompe en Guinée, exprimé en Francs guinéens

Cm : prix officiel hors TVA de la tonne de ciment CPA 325 (ou CPA 45 de la norme NF P 15-301) en sacs, achetés en Guinée.

**Article 12.      Impôts, droits, taxes, redevances, cotisations (CCAG Article 10.5)**

Le régime fiscal et douanier applicable au présent marché est conforme à la législation et la réglementation en vigueur pour les marchés publics sur financement extérieur définies, entre autres, par le décret n° 96/095/PRG/SGG du 27 Juin 1996 portant mise en place du programme de sécurisation des recettes douanières et par l'instruction n° 196/414/PM/MBRSP du 11 décembre 1996 portant mesures d'application du régime fiscal des marchés publics et projets publics: Les prix

unitaires comprennent le coût des droits, taxes et redevances diverses qui sont à la charge du titulaire du marché. Ils ne comprennent pas le montant des droits et taxes pris en charge par l'Etat Guinéen (dont la TVA sur marché).

**Article 13.**     **Travaux en régie (CCAG Article 11.3)**

11.31          Les modalités de calcul de la rémunération des travaux en régie sont les suivantes :

| | | |
|---|---|---|
| Majoration sur salaires et indemnités | : | **25 %** |
| Majoration sur le matériel | : | **25 %** |
| Majoration sur les matériaux et fournitures | :: | **15 %** |

Ces majorations intègrent le coût des frais de chantier et des frais généraux ; le personnel d'encadrement ne peut être facturé en régie, de même que le matériel affecté à ce personnel (véhicules).

**Article 14.**     **Pourcentage maximum des travaux en régie par rapport au Montant du Marché (CCAG Article 11.3)**

11.31          Le pourcentage maximum des travaux en régie par rapport au montant du marché est de : 1 %

**Article 15.**     **Acomptes sur approvisionnement (CCAG Article 11.4)**

Les matériaux incorporés dans la composition des ouvrages (ciment, granulats, aciers pour béton, bitume par exemple) peuvent faire l'objet de d'acomptes sur approvisionnement, si les conditions ci dessous sont remplies :
–   les matériaux sont conformes aux spécifications techniques ;
–   les quantités approvisionnées restent inférieures aux besoins ;
–   les matériaux sont approvisionnées dans de bonnes condition de stockage et de conservation à proximité du chantier.
–   les matériaux ont fait l'objet d'un constat contradictoire d'approvisionnement ;

Les consommables (gazole, pièces de rechange, lubrifiants par exemple) ne peuvent en aucun cas donner lieu à des acomptes sur approvisionnement.

Les acomptes sur approvisionnement sont établis à partir des décomptes mensuels d'approvisionnement ; le montant du décompte mensuel d'approvisionnement, exprimé en francs guinéens (GNF) est égal à 80% de la valeur, exprimée en francs guinéens (hors droits et taxes à charge de l'Etat et hors TVA) des matériaux acceptés en approvisionnement. La valeur est calculée, pour les matériaux acceptés, par

multiplication des quantités mesurées contradictoirement par le prix unitaire d'approvisionnement (exprimé en GNF). Le prix unitaire d'approvisionnement est fixé par l'Ingénieur, en fonction des informations contenues dans le sous-détail des prix, ou à défaut au vu de factures certifiées conformes par le fournisseur.

L'acompte mensuel sur approvisionnement au mois « n « est égal à la différence entre les décomptes pour approvisionnements des mois respectifs « n » et « n-1 ».

Les approvisionnements sont considérés comme des travaux au sens du remboursement de l'avance forfaitaire de démarrage et de la révision des prix.

A la réception provisoire, le décompte des approvisionnements est égal à zéro.

**Article 16.      Avance forfaitaire (CCAG Article 11.5)**

Le mode de calcul de l'avance est le suivant :

(a)      pourcentage par rapport au Montant du Marché : **15 %**,
payable dans chacune des monnaies, selon leur quote-part, suivant les dispositions de l'article 18 du C.C.A.P ci après.

L'avance sur les paiements contractuels sera remboursée, pour chacune des parts, comme suit : le remboursement de l'avance débutera lorsque le montant cumulé des travaux (approvisionnements compris) atteindra 30% du montant du marché et devra être terminé lorsque le montant cumulé des travaux atteindra 80 % du montant du marché non révisé. Le calcul du remboursement à effectuer sur chaque décompte s'effectuera comme suit:

$$R = [(X_n - X_{n-1}) / (0,80 - 0,30)] \times A/M \quad \text{avec}$$

$X_n$      montant cumulé des travaux (approvisionnements compris) exprimé en GNF au décompte n

$X_{n-1}$      montant cumulé des travaux (approvisionnements compris) exprimé en GNF au décompte n-1

$A$      montant de l'avance payée dans la monnaie considérée

$M$      montant de la part du marché dans la devise considérée.

On a : $A/M = 0,15$

Il n'est pas prévu d'avances pour achat de matériel et ou de matériaux

**Article 17.      Intérêts moratoires (CCAG Article 11.7)**

Les factures moratoires sont établies, le cas échéant, par l'Entrepreneur, à part des

décomptes proprement dits.
Elles sont établies en tenant compte :
– des modalités de paiement : les factures sont
  respectives en francs guinéens et en devises.
– de la nature des décomptes : décomptes de tra
  échéant, décomptes de droits et taxes à charge d

Elles sont vérifiées et visées par le maître d'œuvre et

Pour les retards donnant droit à intérêts moratoires, le taux des intérêts moratoires
est :
– pour les retards donnant droit à intérêts moratoires pour les paiements en devises :
  le taux « légal » LEG en vigueur dans le pays d'origine de la devise, augmenté de
  un pour cent (1%) ou à défaut, le taux d'escompte de la banque centrale du pays
  d'origine de la devise augmenté de 2 %.
– pour les retards donnant droit à intérêts moratoires pour les paiements en francs
  guinéens (GNF) : le taux d'intervention de la Banque Centrale de République de
  Guinée majorée de deux pour cent (2%)

La date de paiement est la date d'envoi du chèque au titulaire (en cas de paiement par
chèque) ou la date de l'ordre de virement vers le compte du titulaire (paiement par
virement bancaire). Ce n'est pas la date de valeur indiquée par la banque sur le relevé
bancaire.

Les droits et taxes à charge de l'Etat ne donnent lieu à intérêts moratoires que si
l'entrepreneur a effectué des décaissements en numéraires à ce titre, non remboursés
par l'Etat dans les délais prévus à l'article 18 du C.C.A.P , après présentation de
facture.

**Article 18.    Modalités de règlement des acomptes (CCAG Article 13)**

Pour les travaux proprement dits (prix unitaires du bordereau), les
approvisionnements, l'avance forfaitaire et le cas échéant les pénalités de retard: les
décomptes sont établis en utilisant d'abord les prix unitaires ou montants du marché
exprimés en francs guinéens (GNF). Les montants considérés sont répartis ensuite
selon la part respective payable dans chaque monnaie, conformément aux
dispositions de l'article 10 du C.C.A.P:

Les montants respectifs en GNF et devise (D) pour les travaux, approvisionnements,
avances et pénalités sont :

Part en francs guinéens :
en GNF :                    $M1_{GNF} = (Mt+Map+Mav-Mpr) \times (1 - P)/100$



Part en devises (D) :          $M1_D = (Mt+Map+Mav-Mpr) \times P/100 \times (1/K)$

Avec : Mt:   montant des montant des travaux  exprimé en GNF
       Map :   montant des approvisionnements exprimé en GNF
       Mav :   montant des avances exprimé en GNF
       Mpr :   montant des pénalités exprimé en GNF

       P : quote-part de la part en devises (en D) exprimée en % du marché (article 10 du C.C.A.P)
       K : taux de change de la soumission de (1 D = K GNF).

Les montants des révisions des prix et des sommes provisionnelles sont calculés directement dans la monnaie de paiement, à partir des montants de chacune des parts calculés auparavant comme ci dessus.

On obtient ainsi les montants des décomptes en francs guinéens ($M_{GNF}$) et en devises (D ; $M_D$) :

Part en francs guinéens :
En GNF :          $M_{GNF} = M1_{GNF} + R\ P_{GNF} + SP_{GNF}$

Part en devises (D) :          $M_D = M1_D + RP_D + SP_D$

Avec :          RP : révision des prix
                RP = Sommes provisionnelles

Les intérêts moratoires donnent lieu à des factures séparées soumises au Maître d'Oeuvre .

**Article 19.**     **Acomptes** (CCAG Article 13.1 et 13.2)

L'Entrepreneur présente le projet de décompte et la demande d'acompte correspondante en six (6) exemplaires au Maître d'Oeuvre à la fin de chaque mois selon le modèle approuvé par le Maître d'Ouvrage.

Le Maître d'Oeuvre  instruit le décompte et le transmet, dans un délai de dix (10) jours après réception au Maître d'Ouvrage accompagné :
– le cas échéant des corrections du Maître d'Oeuvre,
– du montant des droits et taxes à la charge de l'Etat,
– du montant total des acomptes à régler sur chacune des parts, compte tenus des éléments ci dessus,
– des certificats de paiement (au moins un certificat par part)  à transmettre au(x) bailleur(s) de  fonds.

Après approbation par le maître de l'Ouvrage, le décompte devient le décompte mensuel.

13.23          Les paiements à l'Entrepreneur seront effectués aux comptes bancaires suivants :

        (a)          pour la part en monnaie nationale :
                *[Indiquer le compte bancaire dans le pays du Maître de l'Ouvrage]*

        (b)          pour la part en d'autres monnaies :
                *[Indiquer le(s) compte(s) bancaire(s) pour les règlements en d'autres monnaies]*

Le paiement de l'acompte est effectué dans un délai de **90 jours** au plus tard après la date de remise du document au Maître d'Oeuvre.

**Article 20.     Force majeure (CCAG Article 18.3)**

Le seuil des intempéries constituant un cas de force majeur est fixé à :
- pluviométrie en 24 h          supérieure à 200 mm
- nombre de jour de pluie dont la pluviométrie est supérieure à 150 mm : 7 jours en deux semaines.
- vitesse du vent :          supérieure à 180 km/h.

**Article 21.     Délai d'exécution (CCAG Article 19.1)**

19.11          Le délai global d'exécution du présent marché est de **quinze (15) mois** à compter de la date de notification de l'Ordre de Service d'entrée en vigueur du marché ; cet Ordre de service valant Ordre de service de démarrage des travaux.

Ce délai intègre les ralentissements ou arrêts du chantier pendant les pluies, les jours décrétés fériés et chômés, et dix (10) jours d'immobilisation au maximum  sur la durée de quatorze mois pour des contraintes particulières liées aux  mouvements officiels.

**Article 22.     Prolongation des délais d'exécution (CCAG Article 19.2)**

19.22          Les délais intègrent les arrêts les ralentissements ou arrêts du chantier pendant les pluies.

Néanmoins les délais d'exécution globaux sont prolongés, sans que l'entrepreneur ne puisse prétendre à une quelconque indemnisation financière à ce sujet, si le volume cumulé Vc des pluies exprimé en millimètre (mm) sur une période de douze mois depuis la notification du marché est supérieur de plus de vingt cinq pour cent (25%) à la moyenne Vc5 sur les cinq (5) dernières années des volumes relevés pendant la même période :

Le délai supplémentaire global, exprimé en jours (N)  est égal dans ces conditions à :
N =    Np * (Vc-Vc5)/Vc5 ; Np étant le nombre de jours sur les douze mois du délai initial où le volume des pluies sur 24 h est  supérieur à trente millimètres ( 30 mm).

19.23    Seuil de prolongation des délais d'exécution ouvrant droit à résiliation du Marché : **la durée correspondant à la pénalité maximale de 10%.**

### Article 23        Pénalités, primes et retenues (CCAG Article 20)

20.1    Le mode de calcul de la pénalité journalière pour retard dans l'exécution est fixée à : 1/1000 du montant du marché par jour calendaire de retard pour l'ensemble du marché.

20.2    Le marché ne prévoit pas de prime d'avance.

20.4    Le montant maximum des pénalités est de :  **10% du montant initial du marché**

### Article 24.        Plan d'implantation des ouvrages (CCAG Article 27)

27.1    En  altimétrie, les côtes sont indiquées par rapport au nivellement général de Guinée (NGG). Les plans d'exécution sont établis à partir des coordonnées X, Y, Z absolues.

27.5    Les plans d'implantation des ouvrages sont les plans du Dossier de Consultation des Entreprises. Les ouvrages sont implantés selon les coordonnées X, Y , Z des plans. Après implantation, l'Ingénieur peut procéder à une modification de l'implantation du projet s'il l'estime nécessaire, pour limiter les démolitions par exemple. L'Entrepreneur ne peut prétendre à indemnisation pour de telles modifications.

### Article 25.        Préparation des travaux (CCAG Article 28)

28.1    Durée de la période de mobilisation : **trente (30) jours**

28.2    Délai de transmission du programme d'exécution : **21 jours après la date de notification de l'ordre de service de mise en vigueur du marché.** Ce programme est fourni en 5 exemplaires. Il est actualisé au moins tous les mois et chaque fois que nécessaire.

Le programme d'exécution comporte un état prévisionnel des montants à décaisser par le Maître de l'Ouvrage.

28.3        L'entrepreneur remettra son plan d'hygiène et de sécurité au plus tard **vingt et un (21) jours après la date de notification de l'ordre de service de mise en vigueur du marché.**
Ce plan correspond au Plan Particulier de Sécurité et de Protection de la Santé (P.P.S.P.S.), prévu par la section n°5 du décret n°94-1159 du 26 décembre 1994 (en France) relatif à l'intégration de la sécurité et à l'organisation de la coordination en matière de sécurité et de protection de la santé lors des opérations de bâtiments ou de génie civil.

**Article 26        Installation, organisation, sécurité et hygiène des chantiers (CCAG Article 31)**

31.3        La signature du marché vaut mise en disposition du site par l'Administration. Cette mise à disposition est confirmée par une visite officielle des lieux, initiée par un écrit de l'Entrepreneur au Maître de l'Ouvrage. Cette visite intervient au plus tard quinze (15) jours après le début de la période de mobilisation. Elle est présidée par le Maître de l'Ouvrage. Cette visite donne lieu à un procès-verbal  où sont consignés entre autres:
–   les lieux dont l'Entreprise peut prendre possession immédiatement ;
–   les démarches à accomplir pour la prise de possession ultérieure d'autres lieux (déguerpissement, déplacement des réseaux) ;
–   les conditions d'occupation des lieux mis à disposition de l'Entrepreneur (sauvegarde des réseaux notamment).

31.5        L'Entrepreneur dégrève les services de police des frais supplémentaires engagés pour assurer la circulation aux abords du chantier ou aux extrémités de la section où la circulation est interrompue.

31.6        L'entrepreneur tient compte de la situation des travaux : en zone urbaine avec des réseaux et sous circulation .

31.8        Il est précisé que la zone des travaux comporte des réseaux enterrés qui ne peuvent en aucun cas être coupés. Les réseaux principaux alimentent en particulier :
–   la presqu'île de Kaloum en eau, y compris les centrales électriques de Tombo.
–   la ville de Conakry en téléphone.
–   la ville de Conakry en électricité (lignes basse, moyenne et haute tension).

L'implantation de principe de ces réseaux est représentée sur les plans de réseaux joints au Dossier de Consultation des Entreprises, mais le Maître de l'Ouvrage n'est pas en mesure d'indiquer avec précision l'emplacement des réseaux. Il appartient à l'entrepreneur de déterminer ces emplacements en s'assurant de la collaboration des sociétés concessionnaires :  EDG, SOTELGUI et SEEG/SONEG.

L'Entrepreneur procédera aux déplacements des réseaux à déplacer par l'intermédiaire des concessionnaires et en coordination avec le programme des travaux

Pour les réseaux conservés, l'Entrepreneur signalera au moins vingt (20) jours à

l'avance les interventions qu'il programme, par écrit au maître d'œuvre afin que celui ci informe les concessionnaires et les invite à participer à l'Etat des lieux.

Le cas échéant, le Maître d'œuvre, sur indication des concessionnaires, pourra faire effectuer, aux frais de l'entrepreneur, des sondages pour rechercher les réseaux.

**Article 27.    Documents à fournir après exécution** (CCAG Article 40)

40.1          Les plans et autres documents conformes à l'exécution sont à remettre au plus tard dix (10) jours avant la date fixée par le Maître de l'Ouvrage (après demande écrite de l'Entrepreneur) pour la réception provisoire.

**Article 28.    Réception provisoire** (CCAG Article 41)

41.1          Il n'est pas prévu de tranches de travaux.

41.2 (f)      ajouter (f) : la remise des plans et autres documents conformes à l'exécution

41.4          la réception ne peut pas être prononcée si les travaux de signalisation et d'éclairage ne sont pas complètement terminés.

**Article 30.    Entrée en vigueur du Marché** (CCAG Article 52.1)

L'alinéa (a) de la clause 52.1 du CCAG est annulé et remplacé par :
(a) signature du marché par les autorités compétentes : le Maître d'Ouvrage et le Ministre des Finances de la République de Guinée .

Les alinéas (b); (c); (d) demeurent inchangés.

L'alinéa (e) de la clause 52.1 du CCAG est annulé et remplacé par :
(e) la signature du marché vaut mise à disposition du site dans les conditions définies par la clause 26 du C.C.A.P.

Compagnie Sahélienne d'Entreprises
C.S.E
Rocade Fann — BP. 609 Dakar

