UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMPAGNIE SAHÉLIENNE D'ENTREPRISE,<br><br>   *Petitioner*,<br><br>v.<br><br>REPUBLIC OF GUINEA,<br><br>   *Respondent*. | Civil Action No. 20-CV-1536 (TJK) |

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR ENTRY OF DEFAULT JUDGMENT**

        MAYER BROWN LLP

        1999 K Street NW
        Washington, DC 20006

        1221 Avenue of the Americas
        New York, NY 10020

        *Attorneys for Petitioner Compagnie
        Sahélienne d'Entreprise*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

    A.    Guinea Breached Its Contractual Obligations and Refused to Participate in the Ensuing Arbitration ............................................................................... 2

    B.    Guinea Fails to Participate in this Action to Enforce the Final Award ................. 4

ARGUMENT ............................................................................................................................. 6

I.    JURISDICTION AND VENUE ARE PROPER IN THIS COURT ................................ 7

    A.    This Court Has Subject Matter Jurisdiction............................................................. 7

    B.    This Court Has Personal Jurisdiction....................................................................... 9

    C.    Venue is Proper ...................................................................................................... 10

II.    GUINEA WAS PROPERLY SERVED AND FAILED TO RESPOND TO THE PETITION WITHIN 60 DAYS ....................................................................................... 10

III.    CSE HAS ESTABLISHED ITS CLAIM FOR RELIEF UNDER 9 U.S.C. § 207 AND THE NEW YORK CONVENTION ......................................................................... 11

CONCLUSION ........................................................................................................................ 15

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Africard Co. v. Republic of Niger*,
   210 F. Supp. 3d 119 (D.D.C. 2016) ................................................................................. 8, 9

*Angellino v. Royal Family Al-Saud*,
   688 F.3d 771 (D.C. Cir. 2012) ............................................................................................ 9

*Argentine Republic v. Nat'l Grid PLC*,
   637 F.3d 365 (D.C. Cir. 2011) .......................................................................................... 13

*Balkan Energy Ltd. v. Republic of Ghana*,
   302 F. Supp. 3d 144 (D.D.C. 2018) .............................................................................. 8, 12

*BCB Holdings Ltd. v. Gov't of Belize*,
   110 F. Supp. 3d 233 (D.D.C. 2015) .................................................................................. 13

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
   668 F.3d 724 (D.C. Cir. 2012) ............................................................................... 12, 13, 15

*Creighton Ltd. v. Gov't of the State of Qatar*,
   181 F.3d 118 (D.C. Cir. 1999) ............................................................................................ 8

*Customs & Tax Consultancy LLC v. Democratic Republic of the Congo*,
   2019 WL 4602143 (D.D.C. Sept. 23, 2019) ....................................................................... 8

*Gates v. Syrian Arab Republic*,
   580 F. Supp. 2d 53 (D.D.C. 2008) .................................................................................... 12

*Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*,
   763 F. Supp. 2d 12 (D.D.C. 2011) ............................................................................... 13, 14

*Levy v. Republic of Guinea*,
   2020 WL 3893019 (D.D.C. July 10, 2020) ................................................................. 11, 12

*Mediso Med. Equip. Developing Servs. v. Bioscan, Inc.*,
   75 F. Supp. 3d 359 (D.D.C. 2014) .................................................................................... 13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ..................................................................................................... 13, 15

*Owens v. Republic of Sudan*,
   864 F.3d 751 (D.C. Cir. 2017) .......................................................................................... 12

*Practical Concepts, Inc. v. Republic of Bolivia*,
  811 F.2d 1543 (D.C. Cir. 1987) ...................................................................................9

*Reed v. Islamic Republic of Iran*,
  845 F. Supp. 2d 204 (D.D.C. 2012) ............................................................................12

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506 (1974) ....................................................................................................13

*Sealift Bulkers, Inc. v. Republic of Armenia*,
  965 F. Supp. 81 (D.D.C. 1997) ...................................................................................11

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
  487 F.3d 928 (D.C. Cir. 2007) ....................................................................................12

*Tidewater Invs. SRL v. Bolivarian Republic of Venezuela*,
  2018 WL 6605633 (D.D.C. Dec. 17, 2018) ..........................................................11, 12

*TMR Energy Ltd. v. State Prop. Fund of Ukraine*,
  411 F.3d 296 (D.C. Cir. 2005) ...........................................................................8, 9, 13

*Warmbier v. Democratic People's Republic of Korea*,
  356 F. Supp. 3d 30 (D.D.C. 2018) ..............................................................................12

**Statutes**

9 U.S.C. § 202 ......................................................................................................................8

9 U.S.C. § 203 ......................................................................................................................7

9 U.S.C. § 207 ....................................................................................................................12

28 U.S.C. § 1330 ..................................................................................................................7

28 U.S.C. § 1391 .............................................................................................................7, 10

28 U.S.C. § 1603 ..................................................................................................................7

28 U.S.C. § 1605 ..................................................................................................................7

28 U.S.C. § 1608 .....................................................................................................9, 10, 11

**Other Authorities**

Fed. R. Civ. P. 55 ...............................................................................................................10

Petitioner Compagnie Sahélienne d'Entreprise ("CSE") submits this memorandum of law in support of its Motion for Entry of Default Judgment, pursuant to 28 U.S.C. § 1608 and Federal Rule of Civil Procedure 55, to recognize and enforce a final arbitral award pursuant to the Federal Arbitration Act and Article III of the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958 (the "New York Convention").

## PRELIMINARY STATEMENT

On June 25, 2003, CSE contracted with Respondent Republic of Guinea ("Guinea") to upgrade two sections of the road between the town of Tombo and Gbessia Airport. CSE provided the contracted-for services, which Guinea certified for final acceptance in 2009, but Guinea refused to pay. Pursuant to the dispute resolution clauses in the governing agreements, CSE initiated an arbitration against Guinea under the Arbitration Rules of the International Chamber of Commerce Court of Arbitration ("ICC"), captioned *Compagnie Sahelienne d'Entreprise (Senegal) v. The Republic of Guinea*, ICC Case No. 22056/DDA (the "Arbitration").

On August 7, 2018, an arbitral tribunal (the "Tribunal") duly constituted by the ICC issued a final award (the "Final Award") in the Arbitration. Declaration of B. Ted Howes in Support of Motion for Default Judgment ("Howes Decl.") at ¶ 4; Ex. A.

Despite the fact that Guinea was served with notice of the Arbitration, notice of the final hearing, and all correspondence and filings in the Arbitration, Guinea refused to participate. Indeed, as described below, the Tribunal found that Guinea's decision not to participate in the Arbitration was a "deliberate choice." Nevertheless, the Tribunal examined and scrutinized CSE's evidence, dismissed several of CSE's claims, and, on the CSE claims that were granted, ordered Guinea to pay CSE over 7.3 million Euros plus interest.

Just as Guinea refused to participate in the Arbitration, Guinea has also failed to participate in this action and respond to CSE's Petition to Recognize and Enforce Foreign Arbitral Award (the "Petition"). Despite being properly served and, as discussed below, acknowledging both that it owes money to CSE and that it is aware of this lawsuit, Guinea did not respond to the Petition by the September 11, 2020 deadline.

To date, Guinea has not filed a response in this action nor paid the amounts due to CSE under the Final Award. CSE therefore now seeks a default judgment against Guinea to recognize and enforce the Final Award as provided for by the New York Convention and the Federal Arbitration Act.

## FACTUAL BACKGROUND

### A.   Guinea Breached Its Contractual Obligations and Refused to Participate in the Ensuing Arbitration

Petitioner CSE is a corporation organized under the laws of Senegal. CSE specializes in civil engineering, road construction, and sanitation in Senegal and other parts of Africa.

On June 25, 2003, CSE—as contractor—and Guinea—as the project owner—entered into two public works procurement contracts for the completion of two projects to upgrade various sections of roads in Guinea between the town of Tombo and Gbessia Airport (the "Procurement Contracts"). Disputes under the Procurement Contracts were subject to binding arbitration in accordance with the Arbitration Rules of the ICC. *See* ECF Nos. 1-2, 1-4–1-7.

Guinea failed to make payment under the Procurement Contracts and on June 20, 2016, CSE initiated an arbitration with the ICC. Howes Decl at ¶ 6, Ex. A at ¶ 123  The Tribunal was constituted thereafter and issued its Final Award on August 7, 2018. Howes Decl at ¶ 6, Ex. A at ¶ 37, p. 104.

In its Final Award, the Arbitration Tribunal found that CSE performed its contractual obligations in full and delivered to Guinea all of the construction works stipulated in the Procurement Contracts. Guinea attested to this performance through two certificates of final acceptance prepared without reservations, dated June 24, 2009. Howes Decl. at ¶ 7, Ex. A at ¶¶ 198, 209-10.

As stated in the Final Award, from 2011 to 2015, CSE thereafter made multiple requests for payment to the various Guinean Ministries involved, namely, the Minister of Public Works and the Minister of Finance; however, Guinea failed to make payment to CSE. Howes Decl. at ¶ 8, Ex. A at ¶ 201.

As further stated in the Final Award, Guinea did not participate in the Arbitration proceedings despite the fact that notice of the Arbitration, all communications, and notice of all preliminary and final hearings was sent to, and received by Respondent, at three addresses: (i) the Judicial Agent of the Government located in Conakry, Guinea; (ii) the Guinean Embassy in Paris, France; and (iii) for communications after November 6, 2017, the Republic of Guinea's Minister of Public Works. Howes Decl. ¶ 9, Ex. A at ¶¶ 6-9, Appendices 1-36.

Nor did Guinea participate in the final evidentiary hearing in the Arbitration, which took place on February 19-20, 2018, during which the Tribunal duly assessed CSE's oral pleadings and heard from CSE's witness. Howes Decl. at ¶ 10, Ex. A at ¶¶ 113-22.

With respect to Guinea's total lack of participation in the Arbitration, the Tribunal explicitly found that (i) "[t]here is no doubt that the Respondent was informed of this arbitration from the outset," (ii) "Respondent was duly and validly served with the Claimant's Request for Arbitration in compliance with the terms of Article 4 of the ICC Rules," (iii) "[a]ll the notifications were validly served upon Respondent in compliance with Article 3(2) of the ICC

3

Rules," and (iv) "all the measures reasonably necessary to notify the Respondent of this arbitration have been taken; that there have been no obstacles to the Respondent's participation in this arbitration; and that the Respondent's absence at this arbitration has been a deliberate choice on its part and not the result of a lack of notification." Howes Decl. at ¶ 11, Ex. A at ¶¶ 8-9.

As the Final Award makes clear, the Arbitration Tribunal put CSE to the burden of proving its claims against Guinea notwithstanding Guinea's absence from the proceedings:

> The Arbitral Tribunal also notes that in the absence of representation on behalf of the Respondent, it has ensured that the rights of the defense and the principle of equal treatment of the Parties are protected, by ensuring that the Respondent had been served with confirmation of delivery receipts all the statements, requests, correspondence, and exhibits submitted for the case file. The Arbitral Tribunal also asked the Claimant questions and asked it to produce all the documents that it deemed necessary in order to ensure equal treatment of the Parties and respect for the rights of the defense in the absence of participation of one of said Parties.
>
> The Arbitral Tribunal has also meticulously analyzed, examined, and assessed the Claimant's statements as well as the documents submitted within the framework of these proceedings in light of the applicable legal rules, in order to determine whether the Claimant was entitled to the reparation that it is requesting or not.

Howes Decl. at ¶ 12; Ex. A at ¶¶ 159-160.

The Final Award dismissed some of Claimant's claims and granted others. With respect to the claims granted by the Tribunal, the Final Award ordered that Guinea must pay CSE as follows: (i) EUR 3,470,475.73 with respect to Procurement Contract for Lot 4; (ii) EUR 3,897,891.12 with respect to Procurement Contract for Lot 5; (iii) interest at a rate of 2.75% per year accruing on December 10, 2012 until the date of final payment; and (iv) USD 541,450 as expenses for the arbitration. Howes Decl. at ¶ 13; Ex. A at ¶ 342.

**B.     Guinea Fails to Participate in this Action to Enforce the Final Award**

On June 11, 2020 CSE commenced this action to recognize and enforce the Final Award. *See* ECF No. 1.

On June 17, 2020, only six days later *and* before Guinea was formally served, an article appeared on Africaguinee.com that referenced this action. Mr. Mory Doumbouy, attorney for Guinea, was quoted as saying "[t]here was no need to refer the matter to the arbitral tribunal and to take this procedure to the United States . . . It's not a refusal [to pay the bills] at all, there may have been a problem of approach in this matter." Mory Doumbouy further stated that CSE "simply has to contact the competent Guinean authorities to define the terms of payment of this debt." Declaration of Dany Khayat in Support of Motion for Default Judgment ("Khayat Decl.") at ¶ 5; Ex. A.

On June 18, 2020, Mr. Dany Khayat, counsel for CSE, contacted Mr. Doumbouya by phone. Mr. Doumbouya confirmed the terms of his statement as quoted in the article and told Mr. Khayat that Guinea was ready to pay its debt to CSE and that in order to facilitate that payment, Mr. Khayat should send him the precise amounts owed. Mr. Khayat followed up by an SMS on the same day providing Mr. Doumbouya with Mr. Khayat's full contact details. Khayat Decl. at ¶ 6.

On June 23, 2020, Mr. Khayat sent Mr. Doumbouya a letter containing the details of what is owed to CSE as well as the decision page of the Final Award. Khayat Decl. at ¶ 7; Ex. B. The letter was received in Guinea at the Presidential Palace at or around July 17, 2020. Khayat Decl. at ¶ 7; Ex. C. Mr. Khayat did not receive an answer to this letter. Khayat Decl. at ¶ 8.

On July 13, 2020, counsel for CSE, pursuant to 28 U.S.C. Section 1608(a)(3), effected service on Guinea. *See* ECF Nos. 9, 12. On July 16, 2020, counsel for CSE filed the return of service with the Clerk of Court. *See* ECF No. 12.

On July 28, 2020, Mr. Khayat again spoke to Mr. Doumbouya. Mr. Doumbouya informed Mr. Khayat that he would set up a meeting by video-conference with a commission composed of certain Guinean officials and would invite Mr. Khayat and a representative of CSE to discuss the payment. Mr. Khayat stated that he would be more than happy to attend and would be awaiting his invitation. Since then, Mr. Khayat has tried to call on several occasions in July, August and September 2020 but was not able to get through to Mr. Doumbouya. Mr. Doumbouya has not returned Mr. Khayat's calls. Khayat Decl. at ¶ 9.

On October 26, 2020, counsel for CSE filed an Affidavit in Support of Default certifying that Guinea was served via DHL pursuant to the provisions of 28 U.S.C. Section 1608(a)(3) on July 13, 2020, and requesting that the Clerk of Court enter a default against Guinea. *See* ECF No. 13. On October 27, 2020, the Clerk of the Court declared Guinea in default. *See* ECF No. 14.

As of the date of this declaration, Guinea has not paid CSE any amounts due under the Final Award. Khayat Decl. at ¶ 10.

No appearance has been entered by Guinea in this case; no pleading or other response to CSE's Petition has been filed or served on counsel for CSE; and the time for filing a response to CSE's Petition has expired. Howes Decl. at ¶ 19.

## **ARGUMENT**

The Court should enter a default judgment in favor of CSE recognizing and enforcing the Final Award because (i) this Court is vested with proper jurisdiction and venue over the dispute, (ii) Guinea was served in accordance with 28 U.S.C. § 1608 and failed to respond within the prescribed 60 days, and (iii) CSE has established that it is entitled to relief because 9 U.S.C. § 207 and Article III of the New York Convention require confirmation of the Final Award.

**I.      JURISDICTION AND VENUE ARE PROPER IN THIS COURT**

As set forth below, this Court has: (i) subject matter jurisdiction as to this action pursuant to 9 U.S.C. § 203 and 28 U.S.C. § 1330(a); (ii) personal jurisdiction over Guinea pursuant to 28 U.S.C. § 1330(b); and (iii) venue over the dispute pursuant to 9 U.S.C. § 203 and 28 U.S.C. § 1391(f)(4).

**A.      This Court Has Subject Matter Jurisdiction**

This Court is vested with subject matter jurisdiction to confirm a foreign arbitration award against Guinea under two independent statutes.

*First*, 9 U.S.C. § 203 provides that "[t]he district courts of the United States . . . shall have original jurisdiction over [an action falling under the New York Convention], regardless of the amount in controversy." 9 U.S.C. § 203.

*Second*, and additionally, 28 U.S.C. § 1330(a) provides:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief *in personam* with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a). Guinea is a foreign state within the meaning of 28 U.S.C. § 1603(a) of the Foreign Sovereign Immunities Act of 1976 (the "FSIA") and, for the reasons discussed below, is not entitled to immunity under either 28 U.S.C. §§ 1605-1607 or any applicable international agreement.

Pursuant to 28 U.S.C. § 1605(a)(6), a foreign state is not entitled to immunity where an action is brought "to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). It is well settled that the New York Convention is a treaty within the meaning of

7

§ 1605(a)(6). *See, e.g.*, *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 299 (D.C. Cir. 2005) (finding that respondent was not immune because the action was to confirm an arbitration award under the New York Convention); *Creighton Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 123-24 (D.C. Cir. 1999) ("The New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception."); *Balkan Energy Ltd. v. Republic of Ghana*, 302 F. Supp. 3d 144, 151 (D.D.C. 2018), *appeal dismissed*, 2018 WL 5115572 (D.C. Cir. Oct. 12, 2018) ("This arbitration exception 'by its terms' applies to actions to confirm arbitration awards under the New York Convention.").

An arbitration award falls under the New York Convention when: "(1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope." *Customs & Tax Consultancy LLC v. Democratic Republic of the Congo*, 2019 WL 4602143, at *3 (D.D.C. Sept. 23, 2019) (quoting *Africard Co. v. Republic of Niger*, 210 F. Supp. 3d 119, 123 (D.D.C. 2016)). *See also* 9 U.S.C. § 202.

Here, the Final Award meets all of the criteria of a New York Convention award: (i) the Procurement Contracts are agreements in writing; (ii) the Procurement Contracts provide for the arbitration of all disputes thereunder in Paris, France, a signatory to the New York Convention; (iii) the Procurement Contracts reflect a "commercial" legal relationship, namely, the upgrading of various sections of roads in Guinea by a commercial contractor; and (iv) the subject matter of the Final Award is not entirely domestic in scope as it concerns a dispute between two parties who are not American citizens over a contract performed outside the United States. Because the Final Award is governed by the New York Convention, Guinea is therefore not entitled to immunity under Section 1605(a)(6) of the FSIA.

8

B.     **This Court Has Personal Jurisdiction**

28 U.S.C. § 1330(b) provides personal jurisdiction over a foreign state where (i) the district court has jurisdiction under 28 U.S.C. § 1330(a) and (ii) service has been made pursuant to 28 U.S.C. § 1608.  *See TMR Energy*, 411 F.3d at 299 (citing *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1549 n.11 (D.C. Cir. 1987) ("subject matter jurisdiction plus service of process equals personal jurisdiction")); *see also Africard Co.* 210 F. Supp. 3d at 123 (D.D.C. 2016).  Both requirements are met here.

*First*, for the reasons set forth in Section I(A) above, this Court has subject matter jurisdiction under 28 U.S.C. § 1330(a) and Guinea does not have immunity from such jurisdiction under 28 U.S.C. § 1605(a).

*Second*, service on Guinea was effected in accordance with 28 U.S.C. § 1608.  Section 1608 "prescribes four methods of service—in descending order of preference—and a plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on."  *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012) (internal quotation marks omitted).  The four authorized methods are as follows:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) <u>if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned</u>, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of

mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a) (emphasis added).

Section 1608(a)(1) is inapplicable here because there is no special arrangement for service between CSE and Guinea.  Section 1608(a)(2) is also inapplicable because Guinea is not a party to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention") or other relevant international convention for the service of documents.  CSE therefore served process pursuant to 28 U.S.C. § 1608(a)(3) by "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."  *See* ECF Nos. 9, 12.  Service on Guinea was therefore proper and this court has personal jurisdiction.

      C.      **<u>Venue is Proper</u>**

Venue is proper in this district pursuant to 28 U.S.C. § 1391(f)(4), which provides that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

II.      **<u>GUINEA WAS PROPERLY SERVED AND FAILED TO RESPOND TO THE PETITION WITHIN 60 DAYS</u>**

Federal Rule of Civil Procedure 55 states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).

As discussed in Section I(B), Guinea was properly served in this action pursuant to Section 1608(a)(3).

28 U.S.C. Section 1608(d) states that "a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section." 28 U.S.C. §1608(d). Guinea did not respond to the Petition within 60 days (by September 11, 2020) and as of the date of this motion, has still not responded. Accordingly, this Court should enter a default judgment against Guinea. *See, e.g. Levy v. Republic of Guinea*, 2020 WL 3893019, at *1 (D.D.C. July 10, 2020) (granting a motion for default judgment against Guinea where "Guinea was served with a summons, complaint, and notice of suit, together with a translation of each into French . . . and has failed to serve any responsive pleading within 60 days of service"); *Tidewater Invs. SRL v. Bolivarian Republic of Venezuela*, 2018 WL 6605633, at *1, 7 (D.D.C. Dec. 17, 2018) (granting a motion for default judgment under the FSIA where respondent failed to respond or otherwise appear within 60 days); *Sealift Bulkers, Inc. v. Republic of Armenia*, 965 F. Supp. 81, 84 (D.D.C. 1997) ("Under the Foreign Sovereign Immunities Act, if a claimant has properly served a foreign sovereign defendant and the foreign sovereign has failed to respond within sixty days of service, the Court may enter default judgment.").

**III.   CSE HAS ESTABLISHED ITS CLAIM FOR RELIEF UNDER 9 U.S.C. § 207 AND THE NEW YORK CONVENTION**

Under the FSIA "[n]o judgment by default shall be entered by a court of the United States . . . against a foreign state . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). "This standard 'mirrors' Federal Rule of Civil Procedure 55(d), which governs default judgments against the U.S. government." *Levy*,

11

2020 WL 3893019, at *2 (citing *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017)).

Further, "[a]lthough default judgment might be more difficult to obtain under the FSIA than in the ordinary case, 28 U.S.C. § 1608(e) does not require the court to demand more or different evidence than it would ordinarily receive." *Tidewater Invs.*, 2018 WL 6605633, at *3 (D.D.C. Dec. 17, 2018) (internal quotation marks omitted) (citing *Owens*, 864 F.3d at 785). *See also Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008).

The plaintiff or petitioner "may establish proof by affidavit." *Tidewater Invs.*, 2018 WL 6605633, at *3 (citing *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 212 (D.D.C. 2012)). Additionally, "[u]ncontroverted factual allegations that are supported by admissible evidence are taken as true." *Levy*, 2020 WL 3893019, at *3 (citing *Warmbier v. Democratic People's Republic of Korea*, 356 F. Supp. 3d 30, 42 (D.D.C. 2018)).

CSE has demonstrated that it is entitled to relief on its Petition because 9 U.S.C. § 207 requires confirmation of the Final Award pursuant to the New York Convention absent proof by Guinea that one of the narrow exceptions under Article V of the New York Convention applies. Guinea has not offered such proof, and could not even if it appeared in this action, because none of these narrow exceptions applies.

9 U.S.C. § 207 provides that "[t]he court **shall** confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207 (emphasis added); *see also TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007); *Balkan Energy*, 302 F. Supp. 3d at 157 ("the New York Convention . . . sets forth the only grounds available for setting aside an arbitral award"); *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 733 (D.C. Cir. 2012). As the

United States is a signatory to the New York Convention, this Court is therefore required by treaty to recognize and enforce arbitral awards rendered in other signatory countries, subject to a few limited exceptions.  *See* New York Convention, Art. V.  "Consistent with the emphatic federal policy in favor of arbitral dispute resolution recognized by the Supreme Court as applying with special force in the field of international commerce, the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards[.]"  *Belize Soc. Dev. Ltd.*, 668 F.3d at 727 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)) (citations and internal quotation marks omitted).

The U.S. Supreme Court has recognized that the United States, in becoming a party to the New York Convention, adopted a pro-enforcement policy toward New York Convention arbitral awards, and that those awards have a presumption of validity and enforcement.  *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).  Indeed, the party *challenging confirmation* has the burden of proving that there is a legitimate reason for non-recognition.  *TMR Energy*, 411 F.3d at 304 (the New York Convention "enumerates the few reasons for which a court may refuse to enforce an arbitration award and assigns the burden of persuasion to the party opposing enforcement"); *see also Mediso Med. Equip. Developing Servs. v. Bioscan, Inc.*, 75 F. Supp. 3d 359, 363-64 (D.D.C. 2014); *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 19-20 (D.D.C. 2011).

Moreover, the review of an arbitration award under the New York Convention is a "summary proceeding" that strongly favors enforcement.  *See, e.g., Argentine Republic v. Nat'l Grid PLC*, 637 F.3d 365, 369 (D.C. Cir. 2011) ("Confirmation proceedings under the Convention are summary in nature, and the court must grant the confirmation unless it finds that the arbitration suffers from one of the defects listed in the Convention"); *BCB Holdings Ltd. v.*

13

*Gov't of Belize*, 110 F. Supp. 3d 233, 247 (D.D.C. 2015), *aff'd*, 650 F. App'x 17 (D.C. Cir. 2016), *and enforcement granted*, 232 F. Supp. 3d 28 (D.D.C. 2017) ("confirmation proceedings are generally summary in nature" (citing *Int'l Trading &Indus. Inv.*, 763 F. Supp. 2d at 20).

Under Article V(1) of the New York Convention, "[r]ecognition and enforcement of the award may be refused . . . only if" one of the following exceptions to enforcement can be proved by the party resisting enforcement:

> a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
>
> d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

*See* New York Convention, Art. V(1)(a)-(e).

As is clear from a reading of the Final Award, and as is otherwise irrefutable, none of the enumerated exceptions in Article V(1) apply in this case.

Recognition and enforcement of an arbitral award may also be refused under Article V(2) of the New York Convention if the competent authority in the country where recognition and enforcement is sought finds that: "(a) [t]he subject matter of the difference is not capable of

14

settlement by arbitration under the law of that country; or (b) [t]he recognition or enforcement of the award would be contrary to the public policy of that country." New York Convention, Art. V(2).  Here, there is no basis under U.S. law to contend that a simple commercial dispute – such as the one before this Court – is not capable of settlement by arbitration.  Nor is there any basis under U.S. law to contend that the enforcement of an arbitration award resolving a simple commercial dispute is contrary to U.S. public policy.  To the contrary, the Supreme Court has recognized that there is a strong federal policy in favor of arbitral dispute resolution that applies with special force in the field of international commerce.  *Belize Soc. Dev. Ltd.*, 668 F.3d at 727 (citing *Mitsubishi Motors Corp.*, 473 U.S. at 631).

CSE has provided this Court with copies of the Final Award, the Procurement Contracts, and sworn testimony that Guinea has not made any payments to CSE pursuant to the Final Award.  CSE has therefore met its burden of establishing that it is entitled to relief under 9 U.S.C. § 207 and the New York Convention.

## **CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that the Court enter Default Judgment for CSE and against Guinea: (a) recognizing and enforcing the Final Award against Guinea; (b) entering judgment in favor of CSE and against Guinea in the amount of the Final Award of (i) EUR 3,470,475.73 with respect to Procurement Contract for Lot 4, (ii) EUR 3,897,891.12 with respect to Procurement Contract for Lot 5, (iii) interest at a rate of 2.75% per year accruing on December 10, 2012 until the date of final payment, and (iv) USD541,450 as expenses for the arbitration, plus the costs of this proceeding; and (c) awarding CSE such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: November 18, 2020 | Respectfully Submitted, |

By: /s/ Reginald R. Goeke

Reginald R. Goeke (DC Bar No. 435613)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
T: (202) 263-3000
F: (202) 263-3300
rgoeke@mayerbrown.com

B. Ted Howes (*pro hac vice pending*)
Hannah C. Banks (*pro hac vice pending*)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
T: (212) 506-2500
bhowes@mayerbrown.com
hbanks@mayerbrown.com

*Attorneys for Petitioner*
*Compagnie Sahélienne d'Entreprise*