# LIONBRIDGE

STATE OF NEW YORK                )
                                 )
                                 )    ss
COUNTY OF NEW YORK               )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from French into English of the attached Final Award, dated August 7,

2018.

_____

Laura Musich, Managing Editor
Lionbridge

Sworn to and subscribed before me

this __6th__ day of __May__ , 20 __20__ .

ETHAN WIN LY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LY6323702
Qualified in New York County
My Commission Expires 04-27-2023

_____

# ICC 22056/DDA

**THE COMPANY: COMPAGNIE SAHÉLIENNE D'ENTREPRISE**

**(Senegal)**

**Claimant**

V.

**THE REPUBLIC OF GUINEA**

**Respondent**

---

**FINAL AWARD**

**August 7, 2018**

---

**(Pursuant to the 2012 ICC Rules)**

**RENDERED**

**BY AN ARBITRAL TRIBUNAL COMPOSED OF:**

**Prof. Dr. Nayla Comair-Obeid -** President

**Dr. Seydou Madani SY -** Co-Arbitrator

**Mr. Joachim Bilé-Aka -** Co-Arbitrator

# Table of Contents

LIST OF ABREVIATIONS ................................................................................................................ 4

I.     INTRODUCTION .................................................................................................................... 8

   A.   THE PARTIES ........................................................................................................................ 8

      1.   THE CLAIMANT ................................................................................................................ 8

      2.   THE RESPONDENT ........................................................................................................... 8

   B.   THE ARBITRAL TRIBUNAL ................................................................................................ 13

      1.   CO-ARBITRATORS .......................................................................................................... 13

      2.   PRESIDENT OF THE ARBITRAL TRIBUNAL ..................................................................... 14

II.    FACTUAL ELEMENTS THAT LED TO THE DISPUTE ................................................. 15

III.   ARBITRATION AGREEMENT ............................................................................................ 15

   A.   ARBITRATION CLAUSE ...................................................................................................... 15

   B.   SEAT OF THE ARBITRATION .............................................................................................. 16

   C.   LANGUAGE OF THE PROCEEDING ..................................................................................... 16

   D.   LAW APPLICABLE TO THE MERITS OF THE DISPUTE ....................................................... 16

   E.   LAW AND RULES APPLICABLE TO THE PROCEEDING ........................................................ 17

IV.    SUMMARY OF THE PROCEEDING ................................................................................... 17

   A.   SUMMARY OF THE VARIOUS STAGES OF THE PROCEEDING ............................................ 17

   B.   PROCEDURAL ORDERS ...................................................................................................... 33

   C.   PROCEDURAL HEARING HELD ON JUNE 23, 2017 ............................................................ 34

   D.   FINAL HEARING FOR PLEADINGS HELD ON FEBRUARY 19 AND 20, 2018 ........................ 35

V.     SUBMISSIONS OF THE PARTIES AND THE CLAIMS MADE IN THEIR RESPECTIVE
       SUBMISSIONS ........................................................................................................................ 37

      1.   THE REQUEST FOR ARBITRATION THAT INSTITUTED THE ARBITRAL PROCEEDING (JUNE 20,
           2016) .............................................................................................................................. 37

      2.   STATEMENT OF CLAIM (JULY 21, 2017) ......................................................................... 39

VI.    MISSION OF THE ARBITRAL TRIBUNAL ....................................................................... 42

   A.   THE QUESTIONS RAISED BY THE ARBITRAL TRIBUNAL AND THE REQUEST FOR PRODUCTION
        OF DOCUMENTS ................................................................................................................. 42

   B.   ISSUES TO BE SETTLED BY THE ARBITRAL TRIBUNAL ..................................................... 45

   C.   DEADLINE FOR RENDERING THE FINAL ARBITRAL AWARD ............................................ 46

VII.   THE ARBITRAL TRIBUNAL .............................................................................................. 47

**A. INTRODUCTION** ................................................................................................ 47

**B. THE ISSUES TO BE SETTLED BY THE ARBITRAL TRIBUNAL** ................................. 47

**B.1. THE JURISDICTION OF THE ARBITRAL TRIBUNAL TO RESOLVE THE DISPUTE BETWEEN THE PARTIES IN THIS ARBITRATION** ................................................... 47

**B.2. THE PERFORMANCE OF THE RESPECTIVE CONTRACTUAL OBLIGATIONS OF THE PARTIES** ...... 53

**B.3. THE CLAIMANT'S RIGHT TO COMPENSATION FOR THE DAMAGES CLAIMED** ........................... 63

**B.4. THE REQUEST RELATED TO PROVISIONAL ENFORCEMENT** ................................... 91

**B.5. THE PENALTIES FOR LATE PAYMENT** ......................................................... 92

**B.6 THE COSTS AND EXPENSES OF THE ARBITRATION** ....................................... 98

**VII- [SIC] ENACTING CLAUSE** ......................................................................... 102

## LIST OF ABBREVIATIONS

**Applicable Laws and Procedural Rules**

| | |
|---|---|
| Terms of Reference | Terms of Reference signed by the Claimant and the members of the Arbitral Tribunal during the Procedural Hearing held on June 23, 2017 |
| Special Administrative Terms and Conditions (C.C.A.P.) | The Special Administrative Terms and Conditions of the Procurement Contracts for Lot 4 and Lot 5 ("C.C.A.P.") |
| General Administrative Terms and Conditions for the Procurement Contracts | The General Administrative Terms and Conditions of the Procurement Contracts for Lot 4 and Lot 5, ("C.C.A.G.") |
| Procedural Timetable | The Procedural Timetable approved on June 23, 2017 during the Procedural Hearing |
| Applicable Law | Guinean Law |
| Rules of the International Chamber of Commerce in Paris | The 2012 Arbitration Rules of the International Chamber of Commerce in Paris |
| Procedural Rules established by the Arbitral Tribunal and adopted | Adopted during the Procedural Hearing held on June 23, 2017 |

**Parties, Attorneys, Experts, the ICC, and Arbitral Tribunal**

| | |
|---|---|
| Claimant | Compagnie Sahélienne d'Entreprise, a corporation incorporated in Senegal, which has its registered office at Rocade Fann Bel Air in Dakar (Senegal), or "CSE" |

| | |
|---|---|
| Respondent | The Republic of Guinea, Conakry, a sovereign State acting through the Judicial Agent of the Government or "Project Owner" |
| Attorney for the Claimant | Represented by Dr. Abdoul Hamid Ndiaye, Attorney at Law admitted to the Paris Bar |
| Attorney for the Respondent | Not represented |
| The International Court of Arbitration of the International Chamber of Commerce | The Court of the ICC is located in Paris, France |
| The Secretariat of the International Chamber of Commerce | The Secretariat of the ICC is located in Paris, France |
| Arbitral Tribunal | The Arbitral Tribunal is composed of the following persons: Prof. Dr. Nayla Comair- Obeid (President), Dr. Seydou Madani (Co-Arbitrator) and Me. Joachim Bilké-Aka (Co-Arbitrator) |

**General: Pertinent entities and individuals**

| | |
|---|---|
| The Guinean Embassy in France | 51, Rue de la Faisanderie, 75016, Paris, France |
| Funders | KFAED, SFD, BADEA, and OPEC |
| Ministry of Public Works of the Republic of Guinea | Boulevard du Commerce - Almamya, Kaloum, BP [P.O. Box] 581, Conakry, Guinea |
| Mr. Massamba Gueye | Chief Executive Officer and Chief Financial Officer of Compagnie Sahélienne d'Entreprise - Fact witness for the Claimant |

**Submissions of the Parties**

| | |
|---|---|
| Request for Arbitration | Submission of the Request for Arbitration on June 20, 2016 |

| | |
|---|---|
| Request for Arbitration | Request for Arbitration submitted by the Claimant on July 22, 2017 |
| The Questions of the Arbitral Tribunal and Request for Production of Documents | The questions of the Arbitral Tribunal sent to the Claimant dated October 3, 2017 |
| The Claimant's responses to the questions asked by the Arbitral Tribunal | The responses were submitted to the Arbitral Tribunal on October 25, 2017 and additional responses were submitted on November 6, 2017 and on March 29, 2018 |
| Telephone conference call | On December 19, 2017, a telephone conference call was held with the members of the Arbitral Tribunal and the Claimant represented by Mr. Abdoul Ndiaye present. The Respondent did not participate despite the fact that it was notified of the date of the telephone conference call. |

**Other Abbreviations**

| | |
|---|---|
| Preliminary Procedural Hearing | A preliminary procedural hearing was held in Paris, on June 23, 2017. |
| Final Hearing for Pleadings | The Final Hearing was held on February 19 and 20, 2018. |
| Amendments | Amendment No. 1 of the Procurement Contract for Construction Work No. 2003/0325/1/2/1/2/N dated June 25, 2003 and Amendment No. 1 of the Procurement Contract for Construction Work No. 2003/0324/1/2/1/2/N dated June 25, 2003 |
| Guinean NDB | Guinean National Development Budget |
| Certificate of Final Acceptance | Certificate of Final Acceptance of the Procurement Contract for Lot 4 and of the Procurement Contract for Lot 5 |
| C.C. | Guinean Civil Code |
| SA (Startup Advance) Count | Initial Advance Count |

| | |
|---|---|
| KFAED | Kuwait Fund for Arab Economic Development |
| SFD | Saudi Fund for Development |
| GNF | Guinean Francs |
| Procurement Contract for Lot 4 | The Procurement Contract for Construction Work entitled "Upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), Lot 4: Kenien Section -T1, Procurement Contract for Construction Work no. 2003/0325/1/2/1/2/N dated June 25, 2003 |
| Procurement Contract for Lot 5 | The Procurement Contract for Construction Work entitled "Upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), Lot 5: Section T1-T2, including the two interchanges at the intersections of the T1 and the T2, Procurement Contract for Construction Work No. 2003/0324/1/2/1/2/N dated June 25, 2003" |
| Procurement Contracts | Procurement Contract for Lot 4 and Procurement Contract for Lot 5 |
| OPEC | Organization of Petroleum Exporting Countries |

# I.   INTRODUCTION

## A.   THE PARTIES

### 1.   The Claimant

1.   **Compagnie Sahélienne d'Entreprise ("CSE")**, a corporation incorporated in Senegal, which has its registered office at the Rocade Fann Bel Air in Dakar (Senegal).

2.   The Claimant is represented by:

**Mr. Abdoul Hamid Ndiaye**

Attorney at Law admitted to the Paris Bar
22, Avenue de l'Observatoire
75014, Paris
France

Tel.: +33 6 20 64 84 10
Fax: +33 1 45 38 57 10
E-mail address: andiaye.avocat@yahoo.fr

3.   The counsel of the Claimant, Mr. Abdoul Hamid Ndiaye, has been duly authorized to represent the Claimant in the arbitral proceeding pursuant to a retainer agreement to provide representation and assistance dated June 8, 2016.

### 2.   The Respondent

4.   **The Republic of Guinea,** a sovereign State acting through the Judicial Agent of the Government, with the following addresses:

**The Republic of Guinea**
Agent judiciaire de l'Etat [Judicial Agent of the Government]
Immeuble ACGPMP [ACGPMP Building] - 2ème Étage [2nd Floor]
Boulevard du Commerce
Conakry, Guinea

**The Guinean Embassy in France**
51, Rue de la Faisanderie
75016, Paris
France
Tel.: +33 (1) 47 04 81 48
Fax: +33 (1) 47 04 57 65

5.     The Arbitral Tribunal, in its correspondence dated September 8, 2017, October 2, 2017, and October 6, 2017, asked the Claimant to identify, in addition to the two addresses of the Respondent already identified in the case file, the address of the Ministry of Public Works of the Republic of Guinea. the Claimant identified said address in its Correspondence No. 10 dated October 25, 2017. Thus, since October 25, 2017, the pieces of correspondence from the Arbitral Tribunal have also been sent to the following new address of the Respondent:

**The Republic of Guinea**
Ministre des Travaux Publics [Minister of Public Works]
Boulevard du Commerce - Almamya, Kaloum
BP [P.O. Box] 581, Conakry, Guinea

6.     The Respondent did not participate in the arbitral proceeding, although all the correspondence was sent to it and duly served upon it via DHL. Below is a table summarizing the pieces of correspondence and the dates on which they were received by the Respondent.

| Correspondence | Date Sent by the Tribunal | Date of Receipt by the Judicial Agent of the Government (Conakry, Guinea) | Date of Receipt by the Guinean Embassy (Paris, France) | The Republic of Guinea Minister of Public Works | Appendix |
|---|---|---|---|---|---|
| **AT-P-001** | May 10, 2017 | May 15, 2017 | May 29, 2017 (sent with AT-P-003) | | 1 |
| **AT-P-002** | May 23, 2017 | May 26, 2017 | May 29, 2017 (sent with ATP-003) | | 2 |
| **AT-P-003** | May 25, 2017 | May 29, 2017 | May 29, 2017 | | 3 |
| **AT-P-004** | June 6, 2017 | June 9, 2017 | June 7, 2017 | | 4 |
| **AT-P-005** | June 14, 2017 | June 19, 2017 | June 15, 2017 | | 5 |
| **AT-P-006** | June 15, 2017 | June 20, 2017 | June 16, 2017 | | 6 |
| **AT-P-007** | June 16, 2017 | June 20, 2017 | June 19, 2017 | | 7 |
| **AT-P-008** | June 20, 2017 | June 27, 2017 | June 21, 2017 | | 8 |
| **AT-P-009** | June 22, 2017 | June 27, 2017 | June 23, 2017 | | 9 |
| **AT-P-010** | June 27, 2017 | July 3, 2017 | June 29, 2017 | | 10 |
| **AT-P-011** | July 6, 2017 | July 11, 2017 | July 7, 2017 | | 11 |
| **AT-P-012** | August 4, 2017 | August 8, 2017 | August 7, 2017 | | 12 |
| **AT-P-013** | August 30, 2017 | September 4, 2017 | August 31, 2017 | | 13 |
| **AT-P-014** | October 3, 2017 | October 6, 2017 | October 9, 2017 | | 14 |
| **AT-P-015** | October 4, 2017 | October 9, 2017 | October 5, 2017 | | 15 |
| **AT-P-016** | November 6, 2017 | November 10, 2017 | November 9, 2017 | November 10, 2017 | 16–17 |
| **AT-P-017** | November 7, 2017 | November 10, 2017 | November 9, 2017 | November 10, 2017 | |

| AT-P-018 | December 12, 2017 | December 21, 2017 | December 20, 2017 | December 21, 2017 | |
| AT-P-019 | December 14, 2017 | December 21, 2017 | December 20, 2017 | December 21, 2017 | |
| AT-P-20 | December 16, 2017 | December 21, 2017 | December 20, 2017 | December 21, 2017 | 18–22 |
| AT-P-21 | December 17, 2017 | December 21, 2017 | December 20, 2017 | December 21, 2017 | |
| AT-P-22 | December 18, 2017 | December 21, 2017 | December 20, 2017 | December 21, 2017 | |
| AT-P-23 | December 21, 2017 | January 3, 2018 | January 2, 2018 | January 3, 2018 | 23–24 |
| AT-P-24 | December 18, 2017 | January 3, 2018 | January 2, 2018 | January 3, 2018 | |
| AT-P-25 | January 8, 2018 | January 12, 2018 | January 2, 2018 | January 12, 2018 | 25 |
| AT-P-26 | January 12, 2018 | January 18, 2018 | January 17, 2018 | January 18, 2018 | 26 |
| AT-P-27 | January 24, 2018 | January 30, 2018 | January 29, 2018 | January 30, 2018 | 27 |
| AT-P-28 | February 15, 2018 | February 20, 2018 | February 19, 2018 | February 20, 2018 | 28 |
| AT-P-29 | February 26, 2018 | March 1, 2018 | February 28, 2018 | March 1, 2018 | 29 |
| AT-P-30 | February 27, 2018 | March 27, 2018 | March 26, 2018 | March 27, 2018 | 30–31 |
| AT-P-31 | March 22, 2018 | March 27, 2018 | March 26, 2018 | March 27, 2018 | |
| AT-P-32 | March 29, 2018 | April 9, 2018 | April 6, 2018 | April 9, 2018 | 32 |
| AT-P-33 | April 14, 2018 | April 19, 2018 | April 17, 2018 | April 19, 2018 | 33 |
| AT-P-34 | April 17, 2018 | April 27, 2018 | April 25, 2018 | April 27, 2018 | 34–35 |
| AT-P-35 | April 24, 2018 | April 27, 2018 | April 25, 2018 | April 27, 2018 | |
| AT-P-36 | July 12, 2018 | July 16, 2018 | July 13, 2018 | July 16, 2018 | 36 |

7.   The Arbitral Tribunal is attaching as an appendix to this final award, all the DHL receipts for transmission to the Respondent of all the pieces of correspondence, which demonstrate that the Respondent was actually able to peruse all of said pieces of correspondence, and as a result was validly informed of the arbitral proceeding.

8.   The Arbitral Tribunal thus notes the following:

- There is no doubt that the Respondent was informed of this arbitration from the outset;

- The Respondent was duly and validly served with the Claimant's Request for Arbitration in compliance with the terms of Article 4 of the ICC Rules, and it was clearly notified of this proceeding and of the intention of the ICC to appoint an Arbitral Tribunal to resolve this dispute;

- The Arbitral Tribunal has taken all the measures necessary to identify a second address and a third address for the Respondent, i.e., those of the Guinean Embassy in Paris and of the Ministry of Public Works of the Republic of Guinea in order to serve all the correspondence and procedural acts upon it.

- Several additional measures were taken by the Claimant and the Arbitral Tribunal in order to ensure that the Respondent was advised of this arbitration;

- Considerable, efforts have been made, repeatedly, throughout this proceeding, to allow the Respondent to participate in all the stages of the arbitration; and

- All the notifications were validly served upon the Respondent in compliance with Article 3(2) of the ICC Rules.

9. Considering the preceding, the Arbitral Tribunal deems that all the measures reasonably necessary to notify the Respondent of this arbitration have been taken; that there have been no obstacles to the Respondent's participation in this arbitration; and that the Respondent's absence at this arbitration has been a deliberate choice on its part and not the result of a lack of notification.

**B.**   **THE ARBITRAL TRIBUNAL**

**1.**   **Co-Arbitrators**

10.   Dr. Seydou Madani Sy was appointed Co-Arbitrator by the Claimant and confirmed by the Court on April 28, 2017 pursuant to Article 13(1) of the ICC Rules. His contact information is as follows:

**Dr. Seydou Madani SY**
Ngor Almadies - Villa No. 6
Rues 96 x 99 [96th Street at 99th Street]
B.P. [P.O. Box] 6183 Dakar-Etoile
12900, Dakar
Senegal

Tel.: +221 33 865 07 07
+221 77 504 81 40
E-mail address: madani.sy@gmail.com

11.   Mr. Joachim Bilé-Aka was appointed Co-Arbitrator directly by the Court on April 28, 2017 as Co-Arbitrator instead and in place of the Respondent, which did not designate a Co-Arbitrator, pursuant to Articles 12(4) and 13(4)(a) of the ICC Rules. His contact information is as follows:

**Mr. Joachim BILÉ-AKA, Esq.**
Bilé-Aka, Brizoua-Bi & Associés
7 Boulevard Latrille
25 BP [P.O. Box] 945 Abidjan 25
Côte d'Ivoire

Tel.: +225 22 40 64 30
Mobile: +225 07 07 65 66
Fax: +225 22 48 89 28
E-mail: joachim.bileaka@bilebrizoua.ci

**2.      President of the Arbitral Tribunal**

12.     On April 28, 2017, the International Court of Arbitration of the International Chamber of Commerce (the **Court**) directly appointed Prof. Dr. Nayla Comair-Obeid President of the Arbitral Tribunal pursuant to Article 13(4)(a) of the Arbitration Rules of the International Chamber of Commerce effective beginning on January 1, 2012 (the **ICC Rules**). Prof. Dr. Comair-Obeid formally acknowledged her appointment in her letter to the Parties dated May 10, 2017. Her contact information is as follows:

**Prof. Dr. Nayla COMAIR-OBEID**
Obeid Law Firm
Immeuble Stratum [Stratum Building], 4ème Étage [4th Floor]
Rue Omar Daouk, Quartier Mina El Hosn
Centre ville de Beyrouth [Downtown Beirut]
Beirut, Lebanon

Tel.: +961 1 36 37 90
Fax: +961 1 36 37 91
E-mail addresses: nayla@obeidlawfirm.com; info@obeidlawfirm.com

**II.      THE SECRETARIAT OF THE ICC**

13.     Ms. Florence Richard is the Counsel in charge of this case for the Secretariat of the ICC. Her contact information is as follows:

Ms. Florence Richard
Secrétariat de la Cour internationale d'arbitrage de la CCI [Secretariat of the International Court of Arbitration of the ICC]
33–43, Avenue du Président Wilson
75116, Paris, France
Tel.: +33 1 49 53 29 51
Fax: +33 1 49 53 57 75
E-mail address: ica2@iccwbo.org

14.     Ms. Florence Richard is also assisted by the following Deputy Counsels: Ms. Constance Castres Saint-Martin (Tel.: +33 1 49 53 29 28), Mr. Sébastien Pépin (Tel.: +33 1 49 53 30 37) and Mr. Aurélien Zuber (Tel.: +33 1 49 53 29 79).

## II.     FACTUAL ELEMENTS THAT LED TO THE DISPUTE

15.     On June 25, 2003, two public works procurement contracts for the completion of two projects for upgrading of various sections (Lots 4 and 5) of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), were signed between the Respondent (as the project owner) and the Claimant (as the contractor). They were the following two procurement contracts for public work: Procurement Contract for Construction Work No. *2003/0325/1/2/1/2/N* dated June 25, 2003 entitled "*Lot 4: Kenien Section -T1"* and Procurement Contract for Construction Work No. 2003/0324/1/2/1/2/N dated June 25, 2003 entitled "*Lot 5: Section T1-T2 including the two interchanges at the intersections of the T1 and the T2."* ». Said procurement contracts, hereinafter, are called "***Procurement Contract for Lot 4***", "***Procurement Contract for Lot 5***", and together, the "***Procurement Contracts***".

16.     Two amendments were made to said Procurement Contracts. The first Amendment, dated January 19, 2010, is regarding the Procurement Contract for Lot 4 entitled *"Amendment No. 1 to Contract No. 2003/0325/1/2/1/2/N Upgrading of the 2x2-lane Tombo-Gbessia Road, Lot 4 :Kenien-T1 ".* The second Amendment, dated January 19, 2010, is regarding the Procurement Contract for Lot 5 entitled "*Amendment to Contract No. 2003/0324/1/2/1/2/N Upgrading of the 2x2-lane Tombo-Gbessia Road, Lot 5 :T1-T2".* Said Amendments, hereinafter, are called "***Amendment to the Procurement Contract for Lot 4***", "***Amendment to the Procurement Contract for Lot 5***", and together, the "***Amendments***".

17.     The dispute between the Parties that is the subject of this arbitration arose during the execution of the Amendments.

## III.     ARBITRATION AGREEMENT

### A.     ARBITRATION CLAUSE

18.     The Procurement Contracts involved in this arbitration are governed by the General and Special Administrative Terms and Conditions, each of which contains a clause regarding the settlement of disputes.

19.     Article 50 of the [General] Administrative Terms and Conditions for both Procurement Contracts stipulates that:

> *"50. Settlement of Disputes*
> *50.1 Intervention of the Project Owner*
> *If a dispute arises between the Project Owner and the Contractor, in the form of reservations noted with respect to a service order or in any other form, the Contractor shall submit to the Project Owner, for transmission to the Project Owner through the Project Head, a memorandum setting forth the grounds and indicating the amounts of its claims.*
>
> *In the absence of a satisfactory response received within a time limit of fifteen (15) days from the date of*

*receipt, by the Project Owner, of the letter or of the memorandum from the Contractor, the Contractor shall have fifteen (15) days to submit to the Mediator the dispute related to its claim or the response that is made to it by the Project Owner."*

20.    The Special Administrative Terms and Conditions also stipulate in Article 29 thereof a provision regarding the settlement of disputes:

   ***"Article 29. Settlement of Disputes*** *(General Administrative Terms and Conditions, Article 50) 50.31 All disputes arising out of this Procurement Contract shall be settled definitively in accordance with the Arbitration and Mediation Rules of the International Chamber of Commerce in Paris, France, by one or more arbitrators designated in compliance with said Rules."*

**B.    SEAT OF THE ARBITRATION**

21.    The place of said arbitration shall be Paris (France), as established by the Court pursuant to Article 12 (2) of the ICC Rules.

**C.    LANGUAGE OF THE PROCEEDING**

22.    Since the Arbitration Clause says nothing regarding the language of the arbitration, the Claimant asked in its Request for Arbitration that French be the language of the arbitration.

23.    In correspondence dated May 23, 2017, the Tribunal asked the Respondent to indicate its comments regarding the language of the arbitration no later than June 2, 2017.

24.    Since it did not receive a response from the Respondent regarding this matter, the Tribunal decided in its Procedural Order No. 1 dated June 5, 2017 that the language of this arbitration shall be French.

**D.    LAW APPLICABLE TO THE MERITS OF THE DISPUTE**

25.    Article 51.1 of the General Administrative Terms and Conditions of both Procurement Contracts, entitled "Settlement of Disputes", stipulates that:  *"In the absence of a provision stipulated in the Special Administrative Terms and Conditions, the applicable law for the interpretation and the execution of this Procurement Contract shall be the law of the country of the Project Owner."*

26.    The Special Administrative Terms and Conditions of both Procurement Contracts do not contain provisions regard the applicable law. Therefore, the law applicable to this dispute is the law of the country of the Project Owner, i.e., Guinean law.

**E.**     **LAW AND RULES APPLICABLE TO THE PROCEEDING**

27.     Subject to any public policy provisions in the law of the seat of the arbitration, that is, the French Code of Civil Procedure, this proceeding shall be governed by:

- ▪ The 2012 ICC Rules; and in the event that the Rules do not address a specific subject matter
- ▪ The Procedural Rules established by the Arbitral Tribunal adopted during the Procedural Hearing; and in the event that said Rules do not address a specific subject matter
- ▪ Any other Procedural Rules approved by mutual agreement between the Parties or, in the absence of such an agreement, determined at the discretion of the Tribunal.

## IV.     SUMMARY OF THE PROCEEDING

**A.**     **SUMMARY OF THE VARIOUS STAGES OF THE PROCEEDING**

28.     On June 24, 2016, the Request for Arbitration filed by the Claimant (**the *Request***) was received by the Secretariat of the ICC. In its Request, the Claimant proposed that the arbitration be conducted by a single arbitrator, that the place of arbitration be Paris (France), and that the language of the arbitration be French.

29.     In correspondence dated August 12, 2016, the Secretariat of the ICC notified the Respondent of the Request and asked it to submit its Answer to the Request within 30 days after the receipt of said correspondence. The Respondent was also asked to share its comments regarding the constitution of the Tribunal, the place of the arbitration, and the language of the arbitration.

30.     In correspondence dated November 3, 2016, the Secretariat of the ICC noted that the Request had been received by the Respondent on August 16, 2016 and that the 30-day time limit granted to the Respondent to submit an Answer had expired on September 15, 2016 (Article 5(1) of the ICC Rules) without said Answer having been submitted. The Secretariat of the ICC also informed the Parties that the number of arbitrators and the place of the arbitration would be determined by the Court (Articles 12 (2) and 18(1) of the ICC Rules) while the language of the arbitration would be determined by the Arbitral Tribunal (Article 20 of the ICC Rules).

31.     In correspondence dated December 2, 2016, the Secretariat of the ICC informed the Parties that the Court had established Paris (France) as the place of the arbitration (Article 12 (2) of the ICC Rules) and had decided to submit this arbitration to three arbitrators (Articles 12 (2) of the ICC Rules). The Secretariat also informed the Parties that the Court had established the amount of the provision for

expenses of the arbitration to be USD 510,000, subject to subsequent revaluations. All three decisions were made on November 24, 2016.

32.   In correspondence dated January 3, 2017, the Secretariat of the ICC asked the Claimant to designate a Co-Arbitrator within a time limit of 15 days.

33.   In correspondence dated January 17, 2017, the Claimant designated Dr. Seydou Madani Sy as Co-Arbitrator.

34.   In correspondence dated January 24, 2017, the Secretariat of the ICC asked the Respondent to designate a Co-Arbitrator within a time limit of 15 days, and if it failed to do so, the Court would appoint an arbitrator on its behalf (Article 12(4) of the ICC Rules).

35.   In correspondence dated January 31, 2017, the Secretariat of the ICC circulated to the Parties a copy of the Statement of acceptance, availability, impartiality, and independence, as well as the curriculum vitae of Dr. Seydou Madani Sy.

36.   In correspondence dated April 21, 2017, the Secretariat of the ICC noted that the Respondent had not made the appointment of an arbitrator within the time limit granted of 15 days following the receipt of the letter from the Secretariat of the ICC dated January 24, 2017 and informed the Parties that the Court would make the appointment of a Co-Arbitrator on behalf of the Respondent (Article 12(4) of the ICC Rules).

37.   In correspondence dated April 28, 2017, the Secretariat of the ICC transmitted the case file to the Arbitral Tribunal and informed the Parties that the International Court of Arbitration of the ICC:

   ▪   Had confirmed Dr. Seydou Madani Sy as Co-Arbitrator upon his designation by the Claimant (Article 13(1) of the ICC Rules);
   ▪   Had directly appointed Mr. Joachim Bilé-Aka as Co-Arbitrator instead and in place of the Respondent, since the latter did not appoint a Co-Arbitrator (Articles 12(4) and 13(4)(a) of the ICC Rules);
   ▪   Had directly appointed Prof. Dr. Nayla Comair-Obeid as President of the Arbitral Tribunal (Article 13(4) (a) of the ICC Rules).

38.   In correspondence dated May 10, 2017, the Tribunal circulated its first letter to the Parties discussing the following points:

   ▪   The Respondent's participation in the arbitration had still not occurred. The Tribunal referred the Parties in particular to Article 6(8) of the ICC Rules, which stipulates that the arbitration may take place notwithstanding the rejection of or the abstention from participation of one Party;
   ▪   The preparation of the Terms of Reference, the Procedural Rules, and the Procedural Timetable. The Parties were asked to submit a summary of their respective claims

and requests for inclusion in the Terms of Reference and to confirm their available for holding a conference regarding the management of the proceeding on June 23, 2017;

- Communications between the Parties and the Tribunal;
- The representation of the Parties.

39.    In correspondence dated May 19, 2017, the Claimant appended its Communication No. 1 dated May 15, 2017, in which the Claimant:

- Formally acknowledged the Tribunal's comments regarding the Respondent's participation in this arbitration, the communications among the Parties and the Tribunal, as well as the representation of the Parties;
- Informed the Tribunal that the Claimant "*wanted, at this stage of the proceeding, to rely upon its pleadings for the purposes of arbitration sent to the Court on June 20, 2016, while reserving the right to update them by including all the expenses and fees paid within the framework of this arbitral proceeding*";
- Confirmed its availability for holding the conference on the management of the proceeding on June 23, 2017.

40.    In correspondence dated May 23, 2017, the Tribunal:

- Informed the Parties that all correspondence (including letters and e-mail messages) sent by one Party (Claimant or Respondent) to the Tribunal would also be required to be sent to the other Party by registered or certified mail *(*e.g., via DHL) and that the Party that sent the correspondence would also be required to keep the recorded delivery receipts for each piece of correspondence sent to the other Party;
- Confirmed that, unless a response was received from the Respondent by June 2, 2017, the conference regarding the management of the proceeding would be held on June 23, 2017 in Paris, and asked the Claimant to make all reservations necessary for said purpose (rental of a hearing room and of meeting rooms, live transcription services) immediately;
- Informed the Parties of its preference that each Party submit a summary exposition of its claims and requests in order to meet the conditions stipulated in Article 23(1) of the ICC Rules, clarifying, however, that each Party could reserve the right to update its requests as well as all the costs, expenses, and disbursements resulting from this arbitration.
- Asked the Respondent to share its comments regarding the language of the arbitration.

41.    In correspondence dated May 25, 2017, the Tribunal served the entire case file for this arbitration upon the aforementioned Guinean Embassy in France and in the name of His Excellency Mr. Amara Camara, Ambassador of the Republic of Guinea to France and to Portugal.

42.     In correspondence dated June 2, 2017, the Claimant submitted Communication No. 2, in which it:

- Confirmed that all its subsequent correspondence would be sent to the Respondent by registered or certified mail;
- Confirmed its agreement to the conference regarding the management of the proceeding being held at the Hearing Center of the ICC in Paris on June 23, 2017;
- Submitted the summary exposition of its claims and requests in compliance with Article 23 (1) of the ICC Rules;
- Reiterated its request that French be adopted as the language of the arbitration.

43.     In Procedural Order No. 1 dated June 5, 2017, the Tribunal:

- Determined that the language of this arbitration would be French;
- Issued its final summons ordering the Respondent to participate in this arbitration and to contact the Tribunal and the Claimant immediately.

44.     In correspondence dated June 5, 2017, the Tribunal:[1]

- Confirmed that the conference regarding the management of the proceeding would be held on June 23, 2017 in Paris.
- Asked the Claimant to confirm no later than June 9, 2017 that a meeting room and a live transcription service would be reserved at the Hearing Center of the ICC in Paris.
- Circulated drafts of the Terms of Reference, Procedural Rules, and Procedural Timetable and asked the Parties to share their comments regarding them no later than June 14, 2017.

45.     In two pieces of correspondence dated June 12, 2017 entitled Claimant's Communication No. 3 and Claimant's Communication No. 4, respectively, the Claimant:[2]

- Confirmed that its Communications Nos. 1, 2, and 3 dated May 15, 2017, June 2, 2017, and June 12, 2017 respectively, were sent to the Respondent by registered or certified mail to the address of the Judicial Agent of the Government of the Republic of Guinea in Conakry and also to the

---

[1] The Arbitral Tribunal noted the dispatch of the pieces of correspondence by the Claimant to the Respondent by registered or certified mail to the Respondent's address in Guinea as well as to the Guinean Embassy in France.

[2] The Claimant also asked the Secretariat of the ICC to make the reservation for a hearing room at the Hearing Center of the ICC for June 23, 2017 in accordance with the instructions from the Arbitral Tribunal in its correspondence dated May 23, 2017; in correspondence dated June 14, 2017, the Tribunal informed the Claimant that the reservation of the hearing room had to be made directly with the Hearing Center of the ICC and that, normally, the Secretariat of the ICC is not involved in that type of request.

address of the diplomatic delegation of the Republic of Guinea in France, by submitting the supporting documents proving the dispatch;

46.    In correspondence dated June 15, 2017, the Tribunal:

- Since it had still not received a response from the Parties regarding the drafts of the Terms of Reference, Procedural Rules, and Procedural Timetable, asked the Parties to share their comments regarding them (or to confirm their absence) before 5:00 p.m. that same day;
- Reiterated its instructions to the Claimant to make the reservation for a hearing room and live transcription service for the Procedural Hearing scheduled for June 23, 2017;
- Asked the Parties to confirm, no later than June 20, 2017, the agreement or objection to the appointment of an administrative secretary, Dr. Zeina Obeid (an employee in the law firm of the President of the Tribunal) to assist the Tribunal within the framework of the management of the arbitral proceeding.

47.    In an e-mail message dated June 15, 2017, the Claimant confirmed that it did not have any comments to make regarding the drafts of the Terms of Reference, Procedural Rules and Procedural Timetable, emphasizing that said position would be formalized by means of a communication that would be sent subsequently to the Tribunal.

48.    In correspondence dated June 16, 2017, the Tribunal:

- Informed the Parties that any other points regarding the drafts of the [Terms of Reference], Procedural Rules, and Procedural Timetable would be discussed at the conference regarding the management of the proceeding to be held on June 23, 2017;
- Formally acknowledged that the Respondent had not submitted comments regarding the procedural documents within the time period allotted to it, emphasizing that it would be assumed that the Respondent did not have comments or objections to make regarding that subject, unless the Respondent appeared at the conference regarding the management of the proceeding.[3]

49.    In correspondence dated June 20, 2017, the Tribunal:

- Asked the Respondent to participate in this arbitral proceeding and to contact the Tribunal and the Claimant immediately. The Tribunal also reminded the Respondent that the arbitration would continue notwithstanding its abstention as stipulated in Articles 6(8), 23(3), and 26(4) of the ICC Rules;

---

[3] The Arbitral Tribunal also reiterated its instructions to the Claimant to confirm the reservation of a hearing room and of a live transcription service for June 23, 2017; in e-mail messages dated June 19, 2017, the Tribunal reiterated its request that the Claimant immediately confirm the reservations required for holding the conference regarding the management of the proceeding (the hearing room and the transcription service), and the Claimant confirmed that said reservations had been made.

- ▪ Proposed amending paragraph 8.3 of the Terms of Reference in order to include a list of points in dispute and suggested incorporating other minor amendments into the Terms of Reference.

50.     In correspondence dated June 20, 2017 entitled Communication No. 6, the Claimant submitted the supporting documents showing the reservation of the hearing room at the Hearing Center of the ICC in Paris and requested that the hearing expenses be covered by the provision for arbitration expenses paid in full by the Claimant.

51.     In correspondence dated June 22, 2017, the Tribunal confirmed that it had no objection to the hearing expenses being covered by the provision for arbitration expenses.

52.     On June 23, 2017, a Procedural Hearing was held in Paris with the only members of the Arbitral Tribunal and the Claimant present. The Respondent did not appear despite the numerous pieces of correspondence from the Tribunal notifying it that said hearing was going to be held.[4]

53.     In correspondence dated June 23, 2017, the Arbitral Tribunal informed the Secretariat of the ICC of the conclusion of the Procedural Hearing and transmitted seven copies of the Terms of Reference signed by the members of the Arbitral Tribunal and by the Claimant, for approval by the Court pursuant to Article 23(3) of the 2012 ICC Rules.[5]

54.     In correspondence dated July 6, 2017, the Arbitral Tribunal issued Procedural Order No. 2, to which it attached the Procedural Rules and the Procedural Timetable that were approved at the Procedural Hearing held on June 23, 2017 in Paris.

55.     In correspondence dated July 22, 2017, the Claimant transmitted the Statement of Claim to the Arbitral Tribunal.

---

[4] Moreover, at the Procedural Hearing, the Arbitral Tribunal reiterated Article 6.8 of the ICC Rules, which stipulates that the arbitration shall take place notwithstanding the rejection of or the abstention of one of the Parties from participating in the arbitration (Transcript of the Procedural Hearing held on June 23, 2017, p. 6, paras. 14 through 21). The Tribunal also indicated that said Procedural Hearing would be transcribed and that the entirety of the transcript would be sent to the Respondent. (Transcript of the Procedural Hearing held on June 23, 2017, p. 6, paras. 20 and 21). The Arbitral Tribunal, after waiting until 10:40 a.m. without the Respondent appearing and after reiterating the fact that the Arbitral Tribunal does everything in its power to ensure that both Parties would be treated equally and to protect their rights in said arbitration, decided that the proceeding in this ICC Case No. 22056 would have to be continued (Transcript of the Procedural Hearing held on June 23, 2017, p. 6, paras. 22 through 31).

[5] In correspondence dated that same day, the Arbitral Tribunal transmitted the following to the Parties: the Terms of Reference signed by the Arbitral Tribunal and the Claimant; the signed statement of confidentiality, impartiality, and independence of the administrative secretary; as well as a copy of the correspondence from the Tribunal to the ICC Secretariat dated June 23, 2017 with the seven copies of the Terms of Reference attached.

56.  In correspondence dated July 24, 2017, the Arbitral Tribunal informed the Claimant that the correspondence dated July 22, 2017 did not contain the Statement of Claim as well as Exhibits Nos. 1, 2, 3, 4, 5, 7 and 9. In addition, the Arbitral Tribunal instructed the Claimant to send by registered or certified mail a paper copy of its Statement of Claim with its attachments as well as a USB drive that included the attachments to its Statement of Claim to the Respondent at both its addresses and to transmit to the Arbitral Tribunal the confirmation of the dispatch by express courier as well as the confirmation of delivery receipt from the Respondent.

57.  In correspondence dated July 25, 2017, the Claimant transmitted the supporting documents proving that the Statement of Claim and the exhibits were indeed transmitted to the Respondent at both its addresses.[6]

58.  In correspondence dated August 8, 2017, the Claimant transmitted to the Arbitral Tribunal the request sent to the ICC Secretariat regarding the payment of the balance of the amount of the provision for the procedural expenses by bank guarantee.[7]

59.  In correspondence dated August 30, 2017, the Arbitral Tribunal reviewed the situation with regard to the progress of the arbitral proceeding. The Tribunal reiterated the fact that the Respondent was served with the Procedural Timetable as well as the Procedural Rules by express courier at both the Respondent's addresses, that of the Guinean Embassy in France and that of the Judicial Agent of the Government of the Republic of Guinea in Conakry with the delivery confirmation receipt attached. The Arbitral Tribunal also reiterated the fact that the Terms of Reference approved by the Court of the ICC was also served by the ICC upon the Respondent at both its aforementioned addresses and attached the delivery confirmation receipt as well as the correspondence from the Arbitral Tribunal dated July 24 and 26, 2017. The Tribunal furthermore noted that the Claimant had submitted its Statement of Claim as well as its attachments on July 23, 2017.

60.  In that same correspondence, the Arbitral Tribunal noted that the Respondent had not appeared in this arbitral proceeding and that it had not submitted its Answer by the deadline, on August 23, 2017. The Arbitral Tribunal reiterated the provisions of Article 6(8) of the 2012 ICC Rules to the effect that notwithstanding the lack of participation on the part of the Respondent in the arbitration, the arbitral proceeding will continue. The Arbitral Tribunal indicated that because of the

---

[6] In correspondence dated July 26, 2017, the Arbitral Tribunal confirmed the receipt of the supporting documents confirming the dispatch of the Statement of Claim as well as the exhibits to both the Respondent's addresses; and in correspondence dated August 4, 2017, the Arbitral Tribunal transmitted by registered or certified mail the pieces of correspondence from the Arbitral Tribunal dated July 24 and 26, 2017.

[7] In correspondence dated August 17, 2017, the ICC confirmed that since the Claimant had already paid its portion of the provision, it could substitute itself for the Respondent to pay the share of the amount of the provision incumbent upon the latter, i.e., USD 255,000, by providing a bank guarantee (Article 1(7) of Appendix III).

Respondent's abstention, the submission of the "Reply in Response to the Respondent's Answer" on September 7, 2017 followed by the "rejoinder" on September 22, 2017 no longer needed to occur in the absence of an Answer. The Arbitral Tribunal indicated that the next stage, subject to potential participation on the part of the Respondent in the Arbitration, would consist of preparation by the Arbitral Tribunal of a list of questions and of a request for production of exhibits to which the Claimant would be asked to respond, a stage that would be followed by the "consecutive exchange between the Parties of depositions of witnesses and of expert reports in response" scheduled in the Procedural Timetable to take place on October 7, 2017.

61.     In correspondence dated September 2, 2017, the Claimant attached its Communication No. 9 dated September 1, 2017, in which it formally acknowledged the correspondence from the Arbitral Tribunal dated August 30, 2017 and confirmed that the Statement of Claim as well as its exhibits had been sent to both the addresses of the Respondent on July 22, 2017.

62.     In correspondence dated September 8, 2017, the President of the Arbitral Tribunal confirmed the receipt, on September 4, 2017, of the hard copy of the Statement of Claim and asked the Claimant to transmit to it the DHL supporting documents confirming receipt of the Statement of Claim by the Respondent as well as the supporting documents confirming receipt of all the other pieces of correspondence that were served upon the Respondent. The Arbitral Tribunal, moreover, believed that it was necessary to use all communications methods to transmit to the Respondent the various pieces of correspondence that had been exchanged as of that date in this arbitral proceeding and therefore asked the Claimant to provide any other e-mail addresses and fax numbers for the Judicial Agent of the Guinean Government identified by the Claimant as the legal representative of the Republic of Guinea in Conakry as well as the e-mail address and the fax number of the Guinean Minister of Public Works and Transportation, who had concluded the public procurement contracts for construction work with the Claimant.[8]

63.     By means of a letter dated September 28, 2017, the Claimant sent to the ICC a bank guarantee for the sum of USD 225,000 as payment for the balance of the amount of the provision for the procedural expenses and obtained a copy of said guarantee from the Arbitral Tribunal.

64.     In correspondence dated October 2, 2017, the Arbitral Tribunal reiterated to the Claimant that it was necessary to use all communications methods to transmit to the Respondent the various pieces of

---

[8] In correspondence dated September 11, 2017, the Secretariat de the ICC asked the Parties to [indicate], within a time limit of 15 days from the day after the receipt of the correspondence, if they agreed to the publication of the names of the arbitrators, their nationalities, their roles on the Tribunal, and the procedures followed in making their appointments; and in a letter dated September 28, 2017, the Claimant gave its approval for publishing the information regarding the names of the arbitrators, their nationalities, their roles on the Arbitral Tribunal, and the procedures followed in making their appointments.

correspondence that had been exchanged as of that day in this arbitral proceeding.[9]

65.     In correspondence dated October 3, 2017, the Arbitral Tribunal asked the Claimant to answer the questions asked by the Arbitral Tribunal and to produce the documents requested by the Arbitral Tribunal in its request for production of documents, and to do so no later than October 20, 2017. Said correspondence was also sent to the Respondent by registered or certified mail.

66.     In correspondence dated October 6, 2017, the President of the Arbitral Tribunal confirmed receipt by DHL of the communication from the Claimant dated September 27, 2017 containing the e-mail addresses and the fax numbers of the Judicial Agent of the Guinean Government and of the Guinean Ministry of Public Works and Transportation.

67.     In correspondence dated October 20, 2017, the Claimant requested that it be granted additional time to transmit the documents requested by the Arbitral Tribunal.

68.     In correspondence dated October 20, 2017, the Arbitral Tribunal granted additional time to the Claimant until October 25, 2017 to provide the requested documents.

69.     In correspondence dated October 25, 2017, the Claimant submitted its answers to the questions from the Arbitral Tribunal and submitted the documents requested by the Tribunal's request for production of documents.[10]

70.     In correspondence dated October 26, 2017, the Arbitral Tribunal confirmed receipt of the communication that contained the answers to the [request for] the production of documents requested by the Arbitral Tribunal and asked the Claimant to provide answers to the questions from the Tribunal that appeared on pages 2, 3, and 4 of its correspondence dated October 3, 2017. The Arbitral Tribunal furthermore asked the Claimant to confirm that Communication No. 10 had been sent to both the Respondent's addresses by mail and to transmit the confirmation of delivery receipt for said letter to the Arbitral Tribunal.

71.     In correspondence dated November 3, 2017, the Arbitral Tribunal asked the Claimant to inform the Tribunal of the reasons for the lack of a response to its correspondence dated October 26, 2017 and asked it to submit the answers to the questions asked by the Arbitral Tribunal or, otherwise, to

---

[9] In correspondence dated October 3, 2017, the Arbitral Tribunal indicated that it had sent the Respondent, by registered or certified mail, the correspondence from the Arbitral Tribunal dated September 8, 2017 and October 2, 2017.
[10] In correspondence dated November 13, 2017, the President of the Arbitral Tribunal confirmed receipt of the hard copy of the Claimant's Communication No. 10 dated October 25, 2017 with its 19 attachments.

provide the supporting documents explaining said breach no later than Monday, November 6, 2017.

72.   In correspondence dated November 6, 2017, the Arbitral Tribunal added the mailing address of the Ministry of Public Works of the Republic of Guinea. The Tribunal indicated that all the correspondence (electronic and in paper form) and all the communications regarding this arbitration were served upon the Republic of Guinea in Conakry at the addresses transmitted in the case file and re-transmitted again the correspondence by express courier to the Ministry of Public Works of the Republic of Guinea. The Arbitral Tribunal asked the Claimant to transmit to the Tribunal an e-mail address for the Minister of Public Works of the Republic of Guinea and to confirm the mailing address indicated (Boulevard du Commerce—Almamya, Kaloum, BP [P.O. Box] 581, Conakry, Guinea). The Tribunal also informed the Parties that a Final Hearing for Pleadings would be held in Paris on December 18 and 19, 2017.

73.   In correspondence dated November 6, 2017, the Arbitral Tribunal informed the Parties that the following e-mail address of the Judicial Agent of the Guinean Government— maitredoumbouva@yahoo.fr—which had been transmitted by the Claimant was not valid. The Tribunal demanded that the Claimant transmit another e-mail address to the Arbitral Tribunal.

74.   In correspondence dated November 6, 2017, the Claimant transmitted the answers to the Tribunal's questions and the documents that the Arbitral Tribunal had requested and informed the Tribunal that it was not aware of any other addresses of the Respondent.

75.   In correspondence dated November 9, 2017, the Claimant transmitted the supporting documents proving the dispatch by express courier (DHL) to the Respondent of the Claimant's answers to the Arbitral Tribunal's questions, as well as documents produced at the request of the Tribunal.

76.   In correspondence dated December 12, 2017, the Arbitral Tribunal indicated that it had still not received depositions of witnesses or an expert's report from the Claimant, in accordance with the Procedural Timetable.[11] The Arbitral Tribunal noted that the Claimant's Communication No. 10, dated October 25, 2017, contained numerous accounting documents, an analysis of which by an expert appeared to be necessary at that juncture of the proceeding, and asked the Claimant to clarify its position regarding the appointment of an expert and to specify whether it wished to submit testimony from fact witnesses, no later than December 14, 2017.

---

[11] Also, cf., Correspondence No. 13 from the Tribunal dated August 30, 2017.

77.   In correspondence dated December 14, 2017, the Arbitral Tribunal reiterated the need to appoint a certified public accountant expert to analyze the numerous accounting documents submitted for the case file by the Claimant in order to allow a complete understanding and interpretation of them. The Arbitral Tribunal, as matters stood, in light of the circumstances of the case, and out of a concern to control the costs of this proceeding, in order to avoid holding two hearings, deemed, after deliberations, that it was preferable to cancel the hearing scheduled for December 18 and 19, 2017 and to postpone it to later dates in February 2018, when the Tribunal would be able to draw all the necessary conclusions from the exhibits submitted for the case file. The Arbitral Tribunal proposed the alternative of holding a telephone conference call with the Parties on December 18 or 19, 2017 in order to set a new hearing date in February 2018.

78.   In correspondence dated December 16, 2017, the Arbitral Tribunal reiterated the fact that the Final Hearing for Pleadings could not take place in December and that it had to be postponed until the month of February 2018 and asked the Claimant and the Respondent to transmit their availability for December 18 or 19, 2017 at 5:00 p.m., Paris time, for a telephone conference call in order to establish the date for the Final Hearing for Pleadings.[12]

79.   On December 19, 2017, a telephone conference call was held with the members of the Arbitral Tribunal and the Claimant represented by Mr. Abdoul NDIAYE present on the call. The Respondent did not participate in said telephone conference call. The dates of February 19 and 20 were selected as new hearing dates subject to receipt within a reasonable time limit of the report of the certified public accountant appointed either by the Arbitral Tribunal or by the Claimant.

80.   In a piece of correspondence dated December 21, 2017, the Claimant indicated its favorable view of the appointment of a certified public accountant expert.

81.   In correspondence dated December 21, 2017, the Arbitral Tribunal asked the Claimant to clarify its position regarding the following sentence—"[T]he Claimant is asking the Arbitral Tribunal to take a favorable position regarding the appointment of a certified public accountant expert in contact with the ICC"—no later than December 22, 2017.

82.   In correspondence dated December 22, 2017, the Claimant clarified its position indicating that within the framework of this Request for Arbitration, it involved the collection of a receivable that was liquid and due and was uncontested. Thus, the Claimant did not request an accounting expert

---

[12] In correspondence dated December 17, 2017, the Arbitral Tribunal asked the Parties to transmit to it their availability for holding a telephone conference call in order to discuss the remainder of the arbitral proceeding; and in correspondence dated December 18, 2017, the Claimant confirmed its availability for a telephone conference call on December 19, 2017 at 5:00 p.m.

Assessment, but did not object to the appointment of a certified public accountant expert if the Arbitral Tribunal deemed it to be necessary. The Claimant, furthermore, indicated to the Arbitral Tribunal that it was difficult for it to pay for the expenses related to said accounting expert assessment, considering the fact that up to that time it had been required to cover all the expenses related to this arbitral proceeding. The Claimant indicated, in addition, that it was prepared to have the head of the Finance Department of Compagnie Sahélienne d'Entreprises testify at the Final Hearing for Pleadings to answer all the Arbitral Tribunal's questions and to provide all the clarifications to the Arbitral Tribunal relevant for understanding the accounting and financial documents transmitted.

83.    In correspondence dated December 28, 2017, the Arbitral Tribunal transmitted the summary of the procedural conference call that had taken place on December 19, 2018, during which, among other things, new hearing dates were set for February 19 and 20, 2018. A copy of said correspondence was transmitted by express courier to the Respondent.

84.    In correspondence dated January 8, 2018, the Arbitral Tribunal delivered Procedural Order No. 3, in which the Arbitral Tribunal indicated that if the Claimant failed to cover the expenses of the accounting expert assessment, and, if the Respondent failed to participate in said proceeding, it would be impossible for the Arbitral Tribunal to appoint a certified public accountant expert. The Arbitral Tribunal also asked the Claimant to submit written testimony prepared by the head of the Finance Department of Compagnie Sahélienne d'Entreprises, in which the latter would be required to answer the questions asked by the Arbitral Tribunal and submit evidence in support of the amounts claimed by the Claimant by referring to the accounting documents submitted for the case file. Said testimony would be treated as factual testimony and would be required to be submitted no later than January 30, 2018 in compliance with the instructions stipulated by Article 3 of the Procedural Rules applicable to this arbitral proceeding.

85.    In correspondence dated January 12, 2018, the Arbitral Tribunal asked the Claimant to inform it no later than January 17, 2018, if it was counting on submitting written testimony prepared by the head of the Finance Department of Compagnie Sahélienne d'Entreprises. Moreover, the Arbitral Tribunal confirmed the dates of the Final Hearing scheduled to be held on February 19 and 20, 2018. In the absence of participation by the Respondent, the Arbitral Tribunal asked the Claimant to provide the confirmation of the reservation of a meeting room and transcription service at the Hearing Center of the ICC for the Final Hearing scheduled for February 19 and 20, 2018, no later than January 17, 2018.

86.    In correspondence dated January 17, 2018, the Claimant informed the Arbitral Tribunal that it would submit, no later than January 30, 2018, testimony prepared by the head of the Finance Department of Compagnie Sahélienne d'Entreprises. In another piece of correspondence dated the same day, the

Claimant confirmed the reservation of a hearing room and the reservation of a live transcription service for the purposes of the Final Hearing for Pleadings.[13]

87. In correspondence dated January 30, 2018, the Claimant submitted the written testimony of the Chief Executive Officer and Chief Financial Officer of Compagnie Sahélienne d'Entreprise and confirmed that the witness would be coming to testify at the Final Hearing for Pleadings on February 19 and 20, 2018. The Claimant confirmed that said testimony had been sent by e-mail to the Respondent at the e-mail address: maitredoumbouya@yahoo.fr and that it had also been sent by DHL to the Respondent at all its addresses.[14]

88. In correspondence dated February 15, 2018, the Arbitral Tribunal confirmed once again the content of the Final Hearing for Pleadings to be held on February 19 and 20, 2018 in Paris, at the ICC Hearing Center and transmitted to the Parties an agenda for the first day of the hearing. The Arbitral Tribunal reiterated the fact that the Respondent, as of that day, had still not participated in the arbitral proceeding, had been duly served by registered or certified mail, from the beginning of the arbitral proceeding, all the correspondence, submissions, and procedural documents in the aforementioned case, as well as the fact that the Final Hearing was being held on February 19 and 20, 2018.

The Arbitral Tribunal reiterated once again its summons to the Respondent to participate in the Final Hearing in the aforementioned case and reminded the Parties of the provisions stipulated in Article 26(4) of the ICC Rules and that, therefore, the Final Hearing for Pleadings scheduled for February 19 and 20, 2018 would be held in Paris notwithstanding the abstention from participation on the part of one of the duly notified Parties.[15]

89. A Final Hearing for Pleadings was held on February 19 and 20, 2018 with the Claimant and the Members of the Arbitral Tribunal present. The Respondent did not appear despite the series of

---

[13] In correspondence dated January 24, 2018, the Arbitral Tribunal noted the reservation by the Claimant of a live transcription service for the purposes of the Final Hearing for Pleadings planned to be held on February 19 and 20, 2018 and asked the Claimant to confirm said reservation with the hearing Center of the ICC as requested in the estimate. The Tribunal also noted that the Claimant would file, no later than January 30, 2018, testimony prepared by the head of the Finance Department of Compagnie Sahélienne d'Entreprises and that the witness would testify at the Final Hearing for Pleadings. The Arbitral Tribunal finally asked the Claimant to confirm that a copy of its e-mail messages was sent by mail to the Respondent.

[14] In correspondence dated February 12, 2018, the Claimant transmitted to the Arbitral Tribunal the supporting documents proving the dispatch by via DHL to the Respondent of the Claimant's Communication No. 13, the testimony of the Chief Executive Officer and Chief Financial Officer of CSE, the confirmation of the reservation of the ICC conference room, and the confirmation of the reservation of a live transcription service for the purposes of the Final Hearing for Pleadings to be held on February 19 and 20, 2018.

[15] In correspondence dated February 16, 2018, the Claimant confirmed receipt of the Arbitral Tribunal's Correspondence No. 28 and of its attachment.

notifications of the date and place of the Final Hearing for Pleadings made with confirmation with return receipt requested by the Arbitral Tribunal.[16]

90.    In correspondence dated February 26, 2018, the Arbitral Tribunal transmitted the attendance sheet for the two days of hearings held on February 19 and 20, 2018. In addition, the Arbitral Tribunal mentioned that the Respondent did not appear at the hearing despite its having been served multiple times by registered or certified mail with return receipt requested. The Arbitral Tribunal also attached Exhibit No. 16 entitled "Letter dated April 13, 2012", which had been submitted in its entirety on the second day of the hearing at the request of the Arbitral Tribunal as well as the document dated 10/04/2010 submitted by the Claimant and admitted by the Arbitral Tribunal during the hearing regarding the bank wire transfer received by Compagnie Sahélienne d'Entreprise from the Kuwaiti Fund proving that the latter had paid the sum of EUR 190,991.11 to be deducted from the amount indicated in the amendment to the Procurement Contract for Lot 4. Said correspondence with its three attachments had been sent to the Respondent at its three addresses by registered or certified mail with confirmation of delivery receipts.

91.    In correspondence dated March 2, 2018, Ms. Bardot transmitted the draft transcript of the hearing held on February 19, 2018, in Word and PDF formats, Version 1, to be reviewed by the participants.

92.    In pieces of correspondence dated March 9 and 12, 2018, the Claimant transmitted its corrections to the transcript of the hearing held on February 19 and 20, 2018.

93.    In correspondence dated March 20, 2018, the Claimant indicated to the Arbitral Tribunal that it had sent by mail and by DHL express delivery the following documents requested by the Arbitral Tribunal during the hearing held on February 19 and 20, 2018:

- The clarifications regarding the basis of the claims and the calculation of the penalties for late payment.
- The details and the supporting documents regarding the costs generated by this arbitral proceeding for which the Claimant remained liable.
- The confirmation of delivery receipts for the correspondence sent to the Respondent.
- The transmission to the Respondent of the entirety of the document dated April 13, 2012 sent by the Chief Executive Officer of CSE to the Minister of the Economy and Finance of the Republic of Guinea.
- The transmission to the Respondent of the bank statement from LCL bank, proving the payment of the sum of EUR 190,991.11 by the Kuwaiti Fund.

---

[6] Cf. section IV (D).

The Claimant also attached to its correspondence copies of the Civil Code and of the Code of Civil Procedure of Guinea.

94. In correspondence dated March 22, 2018, the Arbitral Tribunal confirmed receipt of the e-mail message from the Claimant dated March 20, 2018 with the attachments including copies of the Civil Code and of the Code of Civil Procedure of Guinea. In addition, the Arbitral Tribunal indicated that the Claimant should have submitted, no later than March 7, 2018, the documents requested by the Arbitral Tribunal. The Arbitral Tribunal also informed the Claimant that as of that day, the Arbitral Tribunal had only received the electronic version of the Guinean Civil Code and Code of Civil Procedure and instructed the Claimant to transmit to it the receipts for the dispatch by DHL of the documents mentioned by the Claimant in its letter dated March 20, 2018. Furthermore, the Arbitral Tribunal reiterated its instructions to the Claimant to respond no later than March 29, 2018 to the question regarding the calculation of the penalties for late payment ("*intérêts moratoires*").

95. In correspondence dated March 29, 2018, the Arbitral Tribunal responded to the Claimant regarding the correction of the transcript of the two days of hearings held on February 19 and 20, 2018 and indicated that the objective of the review of the hearing transcript was only to correct typographical errors, errors in calculations, and other physical errors without distorting the content of the text of the transcript, which needed to remain a faithful record of the statements made by the Parties and the members of the Arbitral Tribunal during the hearing. The Arbitral Tribunal noted that the Claimant had made corrections that went beyond ordinary corrections of physical errors and had reworded sentences in some passages and/or deleted certain passages. The Arbitral Tribunal indicated that said modifications could not be allowed since they distorted the text of the transcript itself. In addition, the Arbitral Tribunal informed the Claimant that it would be transmitted a final corrected version of the transcript of the two days of hearings held on February 19 and 20, 2018, and that the revision involved mainly the correction of figures transcribed by the court reporter. The Arbitral Tribunal indicated that a hard copy of said correspondence would be sent to the various addresses of the Respondent.[17]

96. In correspondence dated March 29, 2018, the Arbitral Tribunal transmitted the corrected final version of the transcript of the two days of hearings held on February 19 and 20, 2018. A copy of said correspondence with its attachment were sent by registered or certified mail to the Respondent, at its various addresses.[18]

---

[17] In correspondence dated March 29, 2018, the Claimant transmitted the exhibits announced in its correspondence dated September 29, 2017.

[18] In correspondence dated March 29, 2018, the Claimant confirmed receipt of the transcript of the two days of the Final Hearing for Pleadings held on February 19 and 20, 2018.

97. In correspondence dated April 14, 2018, the Arbitral Tribunal confirmed receipt on March 29, 2018, of the electronic version of the exhibits to which the Claimant referred in its correspondence dated March 20, 2018 and asked it to inform it of the status of the dispatch of the correspondence dated March 20, 2018 by express courier. In addition, the Arbitral Tribunal confirmed receipt of the documents showing delivery confirmation receipts for the various pieces of correspondence sent by the Claimant to the Respondent. The Arbitral Tribunal also asked the Claimant to submit a table containing the date of each piece of correspondence with the date of its confirmed receipt by the Respondent and to submit its response to the question asked by the Arbitral Tribunal regarding the calculation of the penalties for late payment no later than April 17, 2018.

98. In correspondence dated April 17, 2018, the Claimant indicated that it was not able to meet the requirements established by the Arbitral Tribunal in its correspondence dated April 14, 2018 because of a business trip to Geneva and requested additional time.

99. In correspondence dated April 17, 2018, the Arbitral Tribunal confirmed receipt of the Claimant's e-mail message dated April 17, 2018 and instructed the latter to submit its answers to the questions and requests of the Tribunal no later than Tuesday, April 24, 2018.

100. In correspondence dated April 24, 2018,[19] the Arbitral Tribunal confirmed receipt of the Claimant's correspondence dated March 29, 2018 in which it provided responses to the requirements established by the Arbitral Tribunal during the Final Hearing for Pleadings dated February 19 and 20, 2018 with its attachments, i.e.:

   ▪ The details and the supporting documents regarding the costs generated by said arbitral proceeding for which the Claimant remained liable.
   ▪ The confirmation of delivery receipts for the correspondence sent to the Respondent.
   ▪ The transmission to the Respondent of the entirety of the document dated April 13, 2012 sent by the Chief Executive Officer of CSE to the Minister of the Economy and Finance of the Republic of Guinea.
   ▪ The transmission to the Respondent of the bank statement from LCL bank, proving the payment of the sum of EUR 190,991.11 by the Kuwaiti Fund.

101. In correspondence dated April 24, 2018, the Claimant formally acknowledged the receipt by the Arbitral Tribunal of the correspondence from the Claimant dated March 29, 2018 as well as the hard copies of the attachments to said correspondence. The Claimant also believed that it had, in said

---

[19] In said correspondence, the Arbitral Tribunal also asked the Claimant to submit its responses to the questions and requests of the Arbitral Tribunal in the correspondence dated April 14 and 17, 2018.

correspondence and by means of the exhibits transmitted, provided answers to the questions and requests of the Arbitral Tribunal made in the pieces of correspondence dated April 14 and 17, 2018.

102.  In correspondence dated April 26, 2018, the Arbitral Tribunal confirmed receipt of the correspondence from the Claimant dated April 24, 2018 and reminded the Claimant to submit a table containing the date of each piece of correspondence sent to the Respondent along with the date of its confirmation of delivery receipt no later than April 27, 2018 since the Arbitral Tribunal was not able to get the confirmation of delivery receipts submitted by the Claimant to match the corresponding pieces of correspondence.

103.  In correspondence dated July 12, 2018, the Arbitral Tribunal issued Procedural Order No. 3 in which it declared the proceedings closed with regard to the issues to be settled in the award in compliance with Article 27 of the 2012 ICC Rules.

**B.    PROCEDURAL ORDERS**

104.  In Procedural Order No. 1 dated June 5, 2017, the Arbitral Tribunal determined that the language of this arbitration would be French and issued its final summons ordering the Respondent to participate in this arbitration and to contact the Tribunal and the Claimant immediately.

105.  In correspondence dated July 6, 2017, the Arbitral Tribunal delivered Procedural Order No. 2 containing the Procedural Rules and the Procedural Timetable that were approved during the procedural hearing held on June 23, 2017 in Paris.

106.  In correspondence dated January 8, 2018, the Arbitral Tribunal delivered Procedural Order No. 3 in which the Arbitral Tribunal indicated that if the Claimant failed to cover the expenses of the accounting expert assessment and if the Respondent failed to participate in this proceeding, it would be impossible for the Arbitral Tribunal to appoint a certified public accountant if the Claimant did not pay for the expenses of said expert assessment. The Arbitral Tribunal also asked the Claimant to submit written testimony prepared by the head of the Finance Department of Compagnie Sahélienne d'Entreprises, in which the latter would be required to answer the questions asked by the Arbitral Tribunal and submit evidence in support of the amounts claimed by the Claimant by referring to the accounting documents submitted for the case file. Said testimony would be treated as factual testimony and would be required to be submitted no later than January 30, 2018 in compliance with the instructions stipulated by Article 3 of the Procedural Rules applicable to this arbitral proceeding.

107.   In correspondence dated July 12, 2018, the Arbitral Tribunal delivered Procedural Order No. 4,[20] in which it declared the proceedings closed with regard to the issues to be settled in the award in compliance with Article 27 of the 2012 ICC Rules.

## C.   PROCEDURAL HEARING HELD ON JUNE 23, 2017

108.   A Procedural Hearing was held on June 23, 2017 in Paris, with only the members of the Arbitral Tribunal and the Claimant present. The Arbitral Tribunal reiterated during the hearing that all the pieces of correspondence had been sent to the Respondent by registered or certified mail to its address in Guinea as well as to the Guinean Embassy in France while recapitulating the number and the date of each piece of correspondence from the Arbitral Tribunal and the date on which it was served upon the Respondent.[21]

109.   During the hearing, the Arbitral Tribunal also reiterated Article 6.8 of the ICC Rules stipulating that all the arbitration would take place notwithstanding the rejection of or abstention of one of the parties from participation in the arbitration.[22] The Tribunal also indicated that said Procedural Hearing would be transcribed and that the transcript would be sent to the Respondent in its entirety.[23]

110.   The Arbitral Tribunal, after waiting until 10:40 a.m. without the Respondent appearing and after reiterating the fact that the Arbitral Tribunal had done everything in its power to ensure that both Parties would be treated equally and to protect their rights in said arbitration, had decided that the proceeding in this ICC Case No. 22056 would be continued.[24]

111.   During the Procedural Hearing, the Terms of Reference of the Arbitral Tribunal and the Procedural Rules were signed, and the Procedural Timetable was finalized.

112.   The Claimant's claims as articulated in the Terms of Reference are the following:

*"The Claims*

   *WHEREFORE*

---

[20] The Arbitral Tribunal noted a typographical error in its correspondence dated July 12, 2018 in the numbering of the Order: It is Procedural Order No. 4 and not No. 3.
[21] Transcript of the Procedural Hearing held on June 23, 2017, p. 5, paras. 38 through 49, and p. 6, paras. 1 through 12.
[22] Transcript of the Procedural Hearing held on June 23, 2017, p. 6 paras. 14 through 21.
[23] Transcript of the Procedural Hearing held on June 23, 2017, p. 6 paras. 20 and 21.
[24] Transcript of the Procedural Hearing held on June 23, 2017, p. 6, paras. 22 through 31.

*1.1.1  In consideration of Law No. L/2012/020/CNT establishing the rules governing the conclusion, the supervision, and the regulation of public procurement contracts and public service delegations of the Republic of Guinea dated October 11, 2012;*

*1.1.2   In consideration of Decree No. D/2012/128/PRG/SGG regarding the Public Procurement Contracts Code* [Code des Marchés Publics] *of the Republic of Guinea dated December 3, 2012;*

*1.1.3  In consideration of the arbitration clause in Article 29 of the Special Administrative Terms and Conditions of the procurement contracts;*

*1.1.4  In consideration of the exhibits attached in support of the request;*

*1.1.5 To award to Compagnie Sahélienne d'Entreprise the entire benefit of these submissions and those set forth in its Request for Arbitration dated June 20, 2016."*

## D.     FINAL HEARING FOR PLEADINGS HELD ON FEBRUARY 19 AND 20, 2018

113.   The Final Hearing for Pleadings was held over two days at the Hearing Center of the ICC in Paris on February 19, 2018 and February 20, 2018. Said Final Hearing for Pleadings was for the purpose of hearing the final pleadings and holding hearings of the Witnesses.

114.   The Respondent did not appear during the two-day hearing, despite the fact that it was served by express courier with confirmation of delivery receipts sent to its three addresses with all the acts and documents of the arbitral proceeding, including the dates of the Final Hearing for Pleadings. The Respondent was, in particular, aware of the dates of the Final Hearing for Pleadings and had been aware thereof at least since December 28, 2017. The Arbitral Tribunal reconfirmed the dates of said Final Hearing for Pleadings in correspondence dated February 12, 2018 received with confirmation of delivery receipts at the Respondent's three addresses on January 17 and 18, 2018. The Arbitral Tribunal subsequently sent the Parties a piece of correspondence dated January 24, 2018 to note the reservations of the hearing room made by the Claimant at the Hearing Center of the ICC, correspondence that was received by the Respondent on January 29, 2018.[25]

115.   The Arbitral Tribunal, after waiting until 10:30 a.m., during the two days of hearings without the Respondent appearing and after reiterating the provisions stipulated in Article 6.8 of the ICC Rules, which stipulates that the arbitration shall take place notwithstanding the rejection or the abstention of

---

[25] Transcript of the hearing held on February 19, 2018, p. 4, paras. 41 through 45, and p. 5 paras. 1 through 24; Transcript of the hearing held on February 20, 2018, p. 4, paras. 10 through 42.

one of the parties from participation in the arbitration, began the hearing in accordance with the agenda transmitted to the Parties.[26]

116.    The Hearing held on February 19, 2018 was held with the following persons present:

- Members of the Arbitral Tribunal: Prof. Dr. Nayla Comair-Obeid, Dr. Seydou Madani Sy, Mr. Joachim Bilé-Aka.
- On behalf of the Claimant: Mr. Abdoul Ndiaye.
- Administrative Secretary: Dr. Zeina Obeid

117.    During the first day of the Hearing, the Arbitral Tribunal listened to the Claimant's oral pleadings and then heard the testimony of Mr. Massamba Gueye, the head of the Finance Department of CSE.

118.    The Hearing held on February 20, 2018 was held with the following persons present:

- Members of the Arbitral Tribunal: Prof. Dr. Nayla Comair-Obeid, Dr. Seydou Madani Sy, and Mr. Joachim Bilé-Aka.
- On behalf of the Claimant: Mr. Abdoul Ndiaye.
- Administrative Secretary: Dr. Zeina Obeid

119.    During the second hearing day, the Arbitral Tribunal continued the hearing of Mr. Massamba Gueye.

120.    Finally, the Arbitral Tribunal heard the final pleadings of the Claimant.

121.    The hearings and the witness interviews over the two hearing days were transcribed, and the transcript was sent to the Respondent's three addresses.

122.    At the end of the hearing, the Claimant's counsel confirmed that he had no objections or reservations regarding the progress of the entire arbitral proceeding, from the beginning of the proceeding until the Final Hearing for Pleadings.[27]

---

[26] Transcript of the Hearing held on February 19, 2018, p. 5, paras. 27 through 34; Transcript of the Hearing held on February 20, 2018, p. 4, paras. 38 through 42.
[27] Transcript of the Hearing held on February 20, 2018, p. 45, paras. 6 through 10.

## V.     SUBMISSIONS OF THE PARTIES AND THE CLAIMS MADE IN THEIR RESPECTIVE SUBMISSIONS

### 1.     The Request for Arbitration that instituted the arbitral proceeding (June 20, 2016)

123.    The arbitral proceeding was begun at the initiative of the Claimant by a Request for Arbitration that instituted the arbitral proceeding on June 20, 2016.

124.    The Claimant maintains that Compagnie Sahélienne d'Entreprise concluded with the Guinean Government contracts dated June 25, 2003 regarding the execution, in the capital of Conakry, of construction work for the completion of two road projects, Lots 4 and 5, named "the 2x2-lane [Road] between Tombo and Gbessia Airport". They are the "Procurement Contract for Lot 4" and the "Procurement Contract for Lot 5".[28]

125.    On the basis of said Procurement Contracts, the Project Owner was to release 86.82% of the amount excluding taxes of the procurement contract with respect to the portion denominated in foreign currency, and 13.18% of the amount of the procurement contract with respect to the portion denominated in Guinean Francs.[29]

126.    The Claimant asserts that it has performed its contractual obligations in full and delivered to the Guinean Government all of the construction works stipulated in the contracts and that said performance has been attested by certificates of final acceptance, established without reservations, dated June 24, 2009 for each Lot, by the Project Owner.[30]

127.    The Claimant claims that because of a funding gap resulting from fluctuations in exchange rates, CSE agreed to revise the amounts of its receivable by means of an Amendment No. 1 for each Procurement Contract (Lots 4 and 5), both signed on February 19, 2010. Said amendments were approved by the Guinean Minister of the Economy and Finance. [31]

128.    The Claimant maintains that despite the multiple reminder letters to the various Guinean Ministries involved, that is, the Minister of Public Works and the Minister of Finance, and after meeting with said authorities several times, the payment of the receivable owed to CSE could not take place.[32]

129.    The Claimant then brought the case into arbitration in compliance with Article 29 of the Special Administrative Terms and Conditions of the Procurement Contracts executed.[33]

---

[28] Request for Arbitration, p. 2.
[29] Request for Arbitration, p. 2.
[30] Request for Arbitration, p. 2.
[31] Request for Arbitration, p. 3.
[32] Request for Arbitration, pp. 3 and 4.
[33] Request for Arbitration, p. 4.

130.    The Claimant has asked the Arbitral Tribunal to handle CSE's claims, which are based on two different procurement contracts, in one and the same arbitral proceeding since the Parties and the arbitration clauses are identical in the two Procurement Contracts, and the receivables are based on similar facts. In fact, the same arbitration clause is stipulated in Article 29 of the same Special Administrative Terms and Conditions included in the two Procurement Contracts.[34]

131.    With regard to the number of arbitrators, in the absence of a specification in the arbitration clause (Article 29), the Claimant requested the appointment of a single arbitrator.[35]

132.    With regard to the applicable law, the Claimant refers to Article 51.1 of the General Administrative Terms and Conditions of each of the Procurement Contracts, which stipulates that: "[T]he applicable law for the interpretation and execution of this Procurement Contract shall be the law of the country of the Project Owner" and that, therefore, it is Guinean Law that applies to this dispute.[36]

133.    With regard to the language of the arbitration, the Claimant has indicated that it is French that is the official language of both Parties.[37]

134.    The Claimant has, therefore, asked the Arbitral Tribunal for the following:[38]

-    *"To declare the request submitted by Compagnie Sahélienne d'Entreprise admissible with regard to form,*

*And declaring that it has jurisdiction:*

-    *To order the Republic of Guinea in Conakry to pay the principal amounts of EUR 7,365,747.91 and GNF 699,665,661 to Compagnie Sahélienne d'Entreprise.*

-    *To order the Republic of Guinea in Conakry to pay the penalties for late payment in the amount of EUR 5,805,126.13 and GNF 506,725,585 to Compagnie Sahélienne d'Entreprise, known as CSE, in addition to the interest that accrues until the arbitral award is rendered.*

-    *To order the Republic of Guinea in Conakry also to pay liquidated damages in the amount of EUR 2,000,000.*

---

[34] Request for Arbitration, pp. 4 and 5.
[35] Request for Arbitration, p. 5.
[36] Request for Arbitration, p. 5.
[37] Request for Arbitration, p. 6.
[38] Request for Arbitration, p. 8.

-   *To order the Republic of Guinea in Conakry to pay all the expenses and expenditures caused by this arbitral proceeding, which will be set forth in submissions."*

**2.      Statement of Claim (July 21, 2017)**

135.    The Claimant submitted its Statement of Claim on July 21, 2017, in which it summarized its allegations in its Request for Arbitration.

136.    The Claimant reaffirmed that it had performed its contractual obligations in their entirety and delivered to the Guinean Government all the construction works stipulated in the contracts[39] and that said performance is proven by the certificates of final acceptance established without any reservations, dated June 24, 2009 for each Lot, by the Project Owner.[40]

137.    The Claimant also reaffirmed that CSE agreed to revise the amount of its receivable by means of an Amendment No. 1 for each Procurement Contract (Lots 4 and 5), both concluded on February 19, 2010 to assume responsibility for payment of the costs related to the factors that generated the funding gap[41] and that said amendments were approved by the Guinean Minister of the Economy and Finance.[42]

138.    With regard to the search for a conciliatory solution by CSE, the Claimant maintained that it sent numerous reminder letters to the various Guinean ministries involved (the Minister of Public Works and the Minister of Finance) and met with said authorities many times to ask, in vain, for payment of the receivable due to CSE.[43] The Claimant added that at the time of the various meetings with the Guinean authorities, CSE asked the latter for a conciliatory solution to this situation. The Claimant indicated that it is customary practice with regard to public procurement contracts for amicable settlement by a mediator or arbitrator to assume that the parties, prior to any dispute, stipulate the mediation procedure and the procedures for appointment of the mediator, but such a clause is not stipulated in the procurement contracts involved in this dispute, and even less is there a compromise that requires the clear consent of the Parties to the contract, for the Government of Guinea has remained silent. The Claimant added that CSE has made every effort, both formally and informally, to arrange for a mediation to take place unsuccessfully and that prior mediation, even if it is stipulated contractually, could be raised as an objection only by the parties

---

[39] Statement of Claim, para. 3, p. 2.
[40] Statement of Claim, para. 4, p. 3; Exhibit no. D2 (the certificates of final acceptance of the work).
[41] Statement of Claim, para. 5, p. 3; Exhibit no. D3 (amendment no. 1 of the procurement contracts).
[42] Statement of Claim, para. 6, p. 3.
[43] Statement of Claim, para. 7, p. 4.

to the contract since that supplementary procedure could not be a matter of public policy.[44] The Claimant also submitted the correspondence from CSE sent to the Guinean Ministry of Public Works dated April 11, 2015,[45] which indicated delinquent receivables in the amounts of EUR 13,170,874.04 and GNF 1,206,391,246.

139.   The Claimant maintained, therefore, given the silence and lack of reaction on the part of the Project Owner with regard to the payment of the receivable owed to CSE, that it brought the case to arbitration in compliance with Article 29 of Special Administrative Terms and Conditions of the Procurement Contracts executed.[46]

140.   The Claimant subsequently responded to the questions in the Terms of Reference. The Claimant confirmed the jurisdiction of the Arbitral Tribunal in compliance with Article 29 of the Special Administrative Terms and Conditions of the Procurement Contracts and with Article 9 of the ICC Rules. The Claimant also asked for the simultaneous examination of its claims in the same proceeding, although they are based on two separate Procurement Contracts, since the Parties and the arbitration clauses are identical and the receivables are based on similar facts and involve the same arbitration clause in Article 29 of the same Special Administrative Terms and Conditions included in each Procurement Contract.[47]

141.   The Claimant alleged that it performed its obligations within the framework of the Procurement Contracts between it and the Respondent since it conducted the completion of the construction work involved in the 2 road projects involving "2x2-lane [Road] between Tombo and Gbessia Airport" completely and in their entirety. The Claimant also reiterated the fact that this case involves an issue of collecting receivables that are due, acknowledged, liquid, and payable and not an issue with regard to the terms and conditions of the physical execution and completion of the works.[48]

142.   The Claimant claimed that the Respondent has not performed any of its commitments stipulated in the contracts and that since the completion of the construction work and its delivery in full compliance, the Republic of Guinea has not made payments and that, therefore, the Respondent has breached its contractual obligations.[49]

143.   The Claimant claimed, in short, for both the Procurement Contract for Lot No. 4 and the Procurement Contract for Lot No. 5, the payment of the following sums: the total principal amounts

---

[44] Statement of Claim, para. 7, p. 4.
[45] Statement of Claim, p. 4 para. 8 and p. 5; Exhibit no D4 (various payment request letters); Exhibit no D5 (summary of the arrears and details by lot); Exhibit no D 6 (Special Administrative Terms and Conditions).
[46] Statement of Claim, p. 5.
[47] Statement of Claim, p. 6.
[48] Statement of Claim, Section II-4, para. 1, p. 8.
[49] Statement of Claim, Section II-4, para. 2, p. 8.

of the delinquent receivables of EUR 7,365,747.91 and GNF 699,665,661 as well as the penalties for late payment of the delinquencies for the two Procurement Contracts that the Claimant has valued at EUR 5,805,126.13 and GNF 506,725,585, besides the interest that continues to accrue until the arbitral award is made.[50] CSE also asked that the Guinean Government be ordered to pay liquidated damages in the amount of EUR 2,000,000[51] and asked the Arbitral Tribunal to order the Respondent to be fully liable for the final burden of the expenses of the arbitration.

144.   The Claimant concluded its Statement of Claim by requesting the following :[52]

*- To Declare the Request of Compagnie Sahélienne d'Entreprise admissible with regard to form, And, declaring that it has jurisdiction :*
*With regard to the Merits,*
*- To order the Republic of Guinea in Conakry to pay the principal amount of EUR 7,365,747.91 and GNF 699,665,661 GNF to Compagnie Sahélienne d'Entreprise, known as "CSE".*
*- To order the Republic of Guinea in Conakry to pay the penalties for late payment in the amounts of EUR 5,805,126.13 and GNF 506,725,585 to Compagnie Sahélienne d'Entreprise, known as CSE, in addition to the interest that accrues until the arbitral award is rendered.*
*- To order the Republic of Guinea in Conakry also to pay liquidated damages in the amount of EUR 2,000,000.*
*- To order the Republic of Guinea in Conakry to pay all the expenses and expenditures caused by this arbitral proceeding."*

145.   Following the Final Hearing for Pleadings, the Claimant amended its claims with respect to the Procurement Contract for Lot 4 in the following manner:

-   The amount claimed denominated in Euros is a total of **EUR 3,470,475.73**[53]
-   The amount claimed denominated in Guinean Francs is a total of GNF 96,939,178 instead of GNF 586,885,339.[54]
-   The other claims made by the Claimant on the basis of its Request for Arbitration and its Statement of Claim have remained unchanged.

---

[50] Statement of Claim, p. 7.
[51] Statement of Claim, Section II-5, p. 9.
[52] Statement of Claim, pp 10 and 11
[53] Transcript of the Hearing held on February 20, 2018, p. 31, paras. 22 through 31: "*Mr. Gueye – the sum is 3,470,475.73*".
[54] Transcript of the Hearing held on February 19, 2018, p. 51, paras. 9 through 18.

## VI.    MISSION OF THE ARBITRAL TRIBUNAL

### A.    THE QUESTIONS RAISED BY THE ARBITRAL TRIBUNAL AND THE REQUEST FOR PRODUCTION OF DOCUMENTS

146.    The Arbitral Tribunal, in light of the statement and briefs submitted by the Claimant, and considering the lack of participation on the part of the Respondent in the arbitral proceeding, sent a list of questions to the Claimant regarding the amounts paid pursuant to the procurement contracts, the amendments to the contracts, the amounts of the claims, the calculation of the penalties for late payment, and finally the calculation of the liquidated damages.[55]

147.    The list of questions sent by the Arbitral Tribunal to the Claimant is as follows:

*1)    The Amount paid by the Defendant on the basis of Procurement Contracts*

  *a.    In paragraph 2 of Question II-4 in the Statement of Claim dated July 22, 2017 with regard to the performance of the obligations of the parties, the Claimant asserted that "since the completion of its works and the delivery thereof in full compliance, the Republic has not paid a single Euro or a single Guinean Franc to CSE." The Arbitral Tribunal asks the Claimant to clarify: Does that mean that no amounts have ever been paid to CSE since the conclusion of the procurement contracts? Or, does it mean that no amounts have been paid since the final acceptance of the works?*

  *b.    What amounts have been paid by the Respondent on the basis of the execution of the Procurement Contract with regard to Lot No. 4? On the basis of the execution of the Procurement Contract with regard to Lot. No. 5?*

  *c.    With regard to the counts and the payments on account:*

   *1-  Did the Claimant provide to the Respondent, in compliance with Article 13.11 of the General Administrative Terms and Conditions and Article 19 of the Special Administrative Terms and Conditions, its "draft monthly counts"? What were their amounts?*

   *2-  Did the Claimant provide to the Respondent, after the completion of the works in compliance with Article 13.31 of the General Administrative Terms and Conditions its "draft final count" establishing the total amount of the sums that it could claim? What was the amount of the final count?*

   *3-  Did the Republic of Guinea make payments on account following the various counts? In what amounts, if any?*

  *d.    Were one-half of the holdbacks (5% of each amount payable) paid at the time of the provisional acceptance (2.5%) as well as at the time of the final acceptance (2.5%), in compliance with Article 6.22 of the General Administrative Terms and Conditions?*

---

[55] Correspondence from the Arbitral Tribunal dated October 3, 2017.

2)  *Amendments to the Contracts*

    *a.* The Arbitral Tribunal would like the Claimant to explain the circumstances that led to the signing of the amendments.

    *b.* What is the meaning of the "funding gap" mentioned by the Claimant in paragraph 5 of its Statement of Claim?

    *c.* The Claimant claims that it agreed, by means of said amendments, to "assume responsibility for paying for the costs related to the factors that generated said funding gap". The Claimant is asked to please explain that assertion.

    *d.* Can the Claimant explain what the factors indicated in Article 1 of each of the amendments mean?

    *e.* Were the amounts stipulated in the amendments with regard to Lots 4 and 5 intended to be substituted for the amounts stipulated in the procurement contracts with regard to Lots 4 and 5?

    *f.* Did the Guinean Minister of Public Works make payments with regard to those amendments? What is the amount of the delinquent receivables?

    *g.* In paragraph 6 of its Statement of Claim, can the Claimant explain why it mentions the sum of EUR 3,074,933.09 pursuant to the amendment with regard to Lot No. 4 while the amount stipulated in that amendment is EUR 3,656,923.71? In the same paragraph, can the Claimant explain why it mentions the sum of EUR 3,409,629.06 with regard to Lot No. 5 while the amount stipulated in that amendment is EUR 3,897,891.11?

3)  *Amount of the claims*

    *a.* Is the principal amount of the claims, as indicated on page 7 of the Statement of Claim, related to the principal contract or the amendments?

    *b.* With regard to the principal amounts of the sums claimed:

        *1-* To what does the sum of EUR 3,467,856.80, claimed by the Claimant, on page 7 of its Statement of Claim, as the principal amount of delinquent receivables/portion in foreign currency for Lot No. 4 correspond?

        *2-* To what does the sum of GNF 586,885,339, claimed by the Claimant on page 7 of its Statement of Claim, as the principal amount of delinquent receivables/portion denominated in GNF for Lot No. 4 correspond?

        *3-* To what does the sum of EUR 3,897,891.11, claimed by the Claimant on page 7 of its Statement of Claim, as the principal amount of delinquent receivables/portion denominated in foreign currency for Lot No. 5 correspond?

        *4-* To what does the sum of [GNF] 112,780,322, claimed by the Claimant on page 7 of its Statement of Claim, as the principal amount of delinquent receivables/portion denominated in GNF for Lot No. 5 correspond?

43

*4) Calculation of the penalties for late payment: On what basis did the Claimant calculate the penalties for late payment for cases of late payment?*

*5) Calculation of liquidated damages: On what basis does the Claimant claim the sum of EUR 2,000,000 Euros as liquidated damages?"*

148.  The Arbitral Tribunal, moreover, made a request to the Claimant for the production of documents, a request regarding which the Respondent was asked to submit its comments.[56] The list of exhibits prepared by the Tribunal was the following:

1.  *The Arbitral Tribunal orders the Claimant to submit all documents establishing the **amounts already paid by the Government of the Republic of Guinea** within the context of the execution of the procurement contracts for construction work with regard to Lot No. 4 and Lot No. 5.*

2.  *The Arbitral Tribunal orders the Claimant to submit the **copies of the draft counts** (monthly and final) sent to the Respondent and, as applicable, the **proof of the acceptance of said draft counts** by the Project Owner.*

3.  *The Arbitral Tribunal orders the Claimant to submit any and all proof regarding the **holdbacks** of 5% of each amount payable as well as the release of 2.5% of said amounts on the date of the provisional acceptance and the release of 2.5% of said amounts on the date of the final acceptance.*

4.  *The Arbitral Tribunal orders the Claimant to submit all documents, correspondence, and communications exchanged with the Respondent within the framework of the **conclusion of the two amendments to the contracts.***

5.  *The Arbitral Tribunal orders the Claimant to submit all documents, correspondence, and communications regarding the **payment stipulated in the Amendments,** made during the period between the date on which the Amendments were signed (02/19/2010) and the date on which the Request for Arbitration was filed (06/20/2016)."*

6.  *The Arbitral Tribunal orders the Claimant to submit all documents that might justify the sum of EUR 2,000,000 **claimed as liquidated damages**.*

7.  *The Arbitral Tribunal orders the Claimant to submit all documents, communications, and correspondence regarding the **letters demanding reimbursement for the arrears** as well as the responses regarding them, between 12/23/2011 (the date of the first demand letter produced) and 06/20/2016 (the day of the Request for Arbitration).*

8.  *The Arbitral Tribunal orders the Claimant to submit any and all proof attesting to the **offer of the Guinean Minister of the Economy to make a payment on account of EUR 1,500,000 and to complete the payment of the balance over a 2-year moratorium** as alleged in its letter dated April 13, 2012.*

9.  *The Arbitral Tribunal orders the Claimant to submit any and all proof regarding the allegation contained at the end of paragraph 1 of Section II-4 of its Statement of Claim to the effect that the receivable claimed is "acknowledged".*

---

[56] Correspondence from the Arbitral Tribunal dated October 3, 2017.

**10.** *The Arbitral Tribunal orders the Claimant to submit a legible version of Exhibit No. 6* (***"Summary of the Arrears"***) *as well as all documents* (***invoices, proofs of payment, and others***) *that might justify the amounts written in that document."*

149.    The Claimant, in its correspondence dated October 25, 2017, provided answers to the questions asked by the Arbitral Tribunal and submitted the following requested documents:

- *Exhibit No. 1:* Table summarizing for the Arbitral Tribunal the arrears and determination of the penalties for late payment in Euros as of February 11, 2016 for the Tombo-Gbessia Roadworks, LOT 4.
- *Exhibit No. 2:* Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by BADEA for the Tombo-Gbessia Roadworks, LOT 4.
- *Exhibit No. 3:* Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by the KFAED for the Tombo-Gbessia Roadworks, LOT 4.
- *Exhibit No. 4:* Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by OPEC for the Tombo-Gbessia Roadworks, LOT 4.
- *Exhibit No. 5:* Table regarding the situation of the Guinean Government local portion denominated in Guinean Francs of the Tombo Gbessia 2 times 2-lane [Road] procurement contract, LOT 4.
- *Exhibit No. 6:* Table summarizing the arrears and determination of the penalties for late payment denominated in Euros as of February 11, 2016 for the Tombo-Gbessia Roadworks, LOT 5.
- *Exhibit No. 7:* Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by the Arab Bank for Economic Development in Africa (BADEA) for the Tombo-Gbessia Roadworks, LOT 5.
- *Exhibit No. 8:* Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by the KFAED for the Tombo-Gbessia Roadworks, LOT 5.
- *Exhibit No. 9:* Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by the FSAOUD for the Tombo-Gbessia Roadworks, LOT 5.
- *Exhibit No. 10:* Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by OPEC for the Tombo-Gbessia Roadworks, LOT 5.
- *Exhibit No. 11:* Table regarding the situation of the Guinean Government local portion denominated in Guinean Francs of the Tombo Gbessia 2 times 2-lane [Road] procurement contract, LOT 5.

## B.    ISSUES TO BE SETTLED BY THE ARBITRAL TRIBUNAL

150.    In compliance with the terms of the Terms of Reference dated June 23, 2017, which was approved by the Court of the ICC on July 11, 2017, the Arbitral Tribunal would settle, as applicable, any pertinent issues resulting from the written submissions of the Parties, whether with regard to the merits or with regard to procedural matters.[57]

151.    The Arbitral Tribunal will address the following points in dispute as stipulated in the Terms of Reference:[58]

---

[57] Terms of Reference dated June 23, 2017, para. 8.1.
[58] Terms of Reference dated June 23, 2017, para. 8.3.

(i) *"Does the Tribunal have jurisdiction to resolve the dispute between the Parties in this arbitration?*

(ii) *To the extent that the Tribunal does have jurisdiction:*

    a. *What were the obligations of the Parties in connection with the Procurement Contracts?*

    b. *Did the Claimant and the Respondent perform their respective obligations in connection with the Procurement Contracts?*

    c. *Is the Claimant entitled to a sum of compensation for the damages claimed?*

    d. *On the basis of the responses to the aforementioned points in dispute, which Party is liable to whom, and for what amount?*

    e. *What are the costs of this arbitration, and what Party should incur them, and in what proportion?"*

152. During the Final Hearing for Pleadings dated February 20, 2018, the Claimant made an additional supplementary request to the Arbitral Tribunal, i.e., that the final award be accompanied by provisional enforcement.[59] The Arbitral Tribunal informed the Claimant during the Hearing that said request would be considered by the Tribunal, which would deliberate and render its decision on said request along with the Final Award.[60]

## C. DEADLINE FOR RENDERING THE FINAL ARBITRAL AWARD

153. In correspondence dated July 12, 2017, the Secretariat of the ICC indicated that the Court would examine the question of whether it was necessary to establish a deadline for rendering the final award that would be different from what was indicated in the Procedural Timetable (Article 30(1)). If not, the deadline would be six months from the date of the notification to the Arbitral Tribunal of the approval of the Terms of Reference by the Court, pursuant to Article 30(1)).

154. In correspondence dated July 24, 2017, the Secretariat of the ICC informed the Parties and the Tribunal that the International Court of the ICC had designated March 30, 2018 as the deadline for the final award on the basis of the Procedural Timetable (Article 30(1)).

155. In correspondence dated March 30, 2018, the International Court of the ICC extended the deadline for rendering the final award until June 29, 2018.

---

[59] Transcript of the Hearing held on February 20, 2018, p. 41 paras. 46–47: *"We solemnly ask you to accompany your decision with provisional enforcement."*

[60] Transcript of the Hearing held on February 20, 2018, p. 42 paras. 12 through 14: *"the Tribunal has considered what you have requested with regard to the application for provisional enforcement; and the Tribunal will deliberate and will render its decision in a timely manner, along with the Final Award."*

156.    In correspondence dated June 29, 2018, the International Court of the ICC extended the deadline for rendering the final award until July 31, 2018.

157.    In correspondence dated August 1, 2018, the International Court of the ICC, during its session held on July 19, 2018, extended the deadline for rendering the final award until August 31, 2018.

## VII.    THE ARBITRAL TRIBUNAL

### A.    <u>INTRODUCTION</u>

158.    The Arbitral Tribunal has reviewed and examined all the exhibits and documents submitted for the case file. It will perform its mission by responding to the issues in dispute as articulated in the Terms of Reference and in the claims of the Claimant.

159.    The Arbitral Tribunal also notes that in the absence of representation on behalf of the Respondent, it has ensured that the rights of the defense and the principle of equal treatment of the Parties are protected, by ensuring that the Respondent had been served with confirmation of delivery receipts all the statements, requests, correspondence, and exhibits submitted for the case file.[61] The Arbitral Tribunal also asked the Claimant questions and asked it to produce all the documents that it deemed necessary in order to ensure equal treatment of the Parties and respect for the rights of the defense in the absence of participation of one of said Parties.[62]

160.    The Arbitral Tribunal has also meticulously analyzed, examined, and assessed the Claimant's statements as well as the documents submitted within the framework of these proceedings in light of the applicable legal rules, in order to determine whether the Claimant was entitled to the reparation that it is requesting or not.

### B.    <u>THE ISSUES TO BE SETTLED BY THE ARBITRAL TRIBUNAL</u>

#### B.1. <u>THE JURISDICTION OF THE ARBITRAL TRIBUNAL TO RESOLVE THE DISPUTE BETWEEN THE PARTIES IN THIS ARBITRATION</u>

161.    The Arbitral Tribunal will answer the following question: *"Does the Tribunal have jurisdiction to resolve the dispute between the Parties in this arbitration?*

---

[61] The delivery confirmations for receipt by the Respondent are appended to this Award.
[62] Cf., section VI.B. of this Award.

47

### a. __Positions of the Parties__

1- <u>Position of the Claimant</u>

162.  In its Request for Arbitration, the Claimant maintained that the Arbitral Tribunal had jurisdiction to hear this dispute pursuant to Article 29 of the Special Administrative Terms and Conditions of the Procurement Contracts, which stipulates the following: "[A]*ll disputes resulting from this Procurement Contract shall be settled definitively in accordance with the Rules of Mediation and Arbitration of the International Chamber of Commerce in Paris, France, by one or more arbitrators appointed in accordance with said Rules.*"[63]

163.  In addition, the Claimant asked the Arbitral Tribunal to handle its claims, which were based on two different procurement contracts, in one and the same arbitral proceeding, since the Parties and the arbitration clauses were identical in both Procurement Contracts and the receivables were based on similar facts.[64]

164.  In its Statement of Claim, the Claimant reiterated its position while indicating that the Parties intended, unambiguously, to give jurisdiction to the tribunal to which the matter has been referred, to settle definitively, without appeal, any disputes that might arise in their relationship.[65]

165.  With regard to the search for a conciliatory solution by the Claimant prior to the matter being referred to the Arbitral Tribunal, the Claimant maintained that it asked, unsuccessfully, the Guinean authorities to reach a conciliatory solution to the dispute when it had its various meetings with said authorities. The Claimant also indicated that it was customary practice in public procurement contracts for amicable settlement by a mediator to be subject to the condition that there be a mediation clause prior to the occurrence of any dispute, with said clause stipulating the procedures for appointment of a mediator to be accepted explicitly by the parties. However, no such clause was stipulated in the Procurement Contracts that are the object of this dispute. The Claimant added that CSE had made every effort, both formally and informally, to arrange for a mediation to occur, unsuccessfully, and that the prior mediation, even if stipulated contractually, could be raised as an objection only by the parties to the contract since that supplementary procedure could not be a matter of public policy.[66] Given the silence and lack of reaction on the part of the Respondent, CSE then brought the dispute to arbitration in compliance with Article 29 of Special Administrative Terms and Conditions.[67]

---

[63] Request for Arbitration, Section II, p. 4.
[64] Request for Arbitration, Section II, p. 4.
[65] Statement of Claim, Section II-2, p. 6.
[66] Statement of Claim, para. 7, p. 4.
[67] Statement of Claim of the Plaintiff, p. 5.

1- <u>Position of the Respondent</u>

166.    The Respondent has not participated in the arbitral proceeding and has not submitted any response
to the question raised by the Arbitral Tribunal regarding its jurisdiction to hear this dispute, although
all the procedural documents and correspondence have been served upon it at its various addresses
via DHL express courier. The Arbitral Tribunal has prepared a table summarizing the pieces of
correspondence served upon the Respondent and the dates on which they were received by the
Respondent at its various addresses proving that the Respondent was indeed aware of the entirety
of the progress of the arbitral proceeding and the Claimant's position.[68]

### b. The Arbitral Tribunal

167.    The Arbitral Tribunal will address and settle the following two questions regarding its jurisdiction:

- First: the jurisdiction of the Arbitral Tribunal to hear the dispute pursuant to the provisions
  of the General Administrative Terms and Conditions or of the Special Administrative Terms
  and Conditions of the two Procurement Contracts.
- Second: the jurisdiction of the Arbitral Tribunal to hear the dispute regarding two Public
  Procurement Contracts (Lot 4 and Lot 5) in one and the same arbitral proceeding.

**With regard to the first issue regarding the jurisdiction of the Arbitral Tribunal to hear the
dispute pursuant to the provisions of the General Administrative Terms and Conditions and
of the Special Administrative Terms and Conditions of the two Procurement Contracts.**

168.    The Arbitral Tribunal notes that the Procurement Contracts involved in this arbitration are governed
by the General and Special Administrative Terms and Conditions, each of which contains a clause
regarding the settlement of disputes.

169.    Article 50 of the [General] Administrative Terms and Conditions for both Procurement Contracts
stipulates that:

> *"50. Settlement of Disputes*
> *50.1   Intervention of the Project Owner*

---

[68] Cf., Section I.B.2 of the Award.

*If a dispute arises between the Project Owner and the Contractor, in the form of reservations made with respect to a service order or in any other form, the Contractor shall submit to the Project Owner, for transmission to the Project Owner through the Project Head, a memorandum setting forth the grounds and indicating the amounts of its claims.*

*In the absence of a satisfactory response received within a time limit of fifteen (15) days from the date of receipt, by the Project Owner, of the letter or of the memorandum from the Contractor, the Contractor shall have fifteen (15) days to submit to the Mediator the dispute regarding its claim or the response that is made to it by the Project Owner."*

170.   The introduction to the Special Administrative Terms and Conditions stipulates: "*The Special Administrative Terms and Conditions [...] follow and supplement the General Administrative Terms and Conditions. In all cases in which the provisions contradict each other, the following provisions shall take precedence over those in the General Administrative Terms and Conditions. The number of the clause in the General Administrative Terms and Conditions to which a clause in the Special Administrative Terms and Conditions refers is indicated in parentheses."*[69]

171.   The Special Administrative Terms and Conditions also stipulate in Article 29 thereof a provision regarding the settlement of disputes:

   "***Article 29. Settlement of Disputes*** *(General Administrative Terms and Conditions, Article 50)*
   *50.31 All disputes arising out of this Procurement Contract shall be settled definitively in accordance with the Arbitration and Mediation Rules of the International Chamber of Commerce in Paris, France, by one or more arbitrators designated in compliance with said Rules."*

172.   The Arbitral Tribunal asked the Claimant during the Procedural Hearing held on June 23, 2017 to indicate the steps that were followed with respect to Article 50.2 of the [General] Administrative Terms and Conditions regarding the appointment of a mediator, and whether there were stages prior to the appointment of a mediator, and if there were steps prior to the resort to arbitration.[70] The Claimant indicated that it had contacted the Respondent in an effort to attempt to reach an amicable solution to the dispute. A Correspondence No. 076 dated April 29, 2016 was sent to the Respondent to said effect, but the latter has remained without a response. The Claimant has also indicated that there was no mediation authority,[71] and that the appointment of a mediator could not have taken

---

[69] Exhibit No. 8, "Special Administrative Terms and Conditions", p. 1 appended to the Request for Arbitration.
[70] Cf., Transcript of the Procedural Hearing held on June 23, 2017, p. 12, paras. 23–25.
[71] Cf., Transcript of the Procedural Hearing held on June 23, 2017, p. 15, paras. 47–48: "*the mediation authority does not exist.*"

place, and such an appointment would have to be made by mutual agreement and not unilaterally by one of the Parties.[72]

173.   The Claimant, subsequently, prepared in its Statement of Claim dated July 21, 2017, a section reiterating its position regarding the endeavor to reach an amicable solution to the dispute.[73] The Claimant indicated that it had sent reminder letters to the Guinean Ministry of Public Works and the Guinean Ministry of Finance, and that CSE had met with said authorities several times to ask for the payment of its receivable, in vain. The Claimant also maintained that at said meetings, CSE had proposed an effort to reach a conciliatory solution. The Claimant added that it is customary practice in Public Procurement Contracts that amicable settlement by a mediator presumes that the Parties, prior to any dispute, stipulate the mediation procedure and the procedures for appointment of the mediator, but such a clause is not stipulated in the Public Procurement Contracts that are involved in this dispute. The Claimant added that CSE had made every attempt, both formally and informally, to arrange for a mediation to occur, unsuccessfully. As proof, the Claimant submitted the correspondence from CSE sent to the Guinean Ministry of Public Works dated April 11, 2015.[74] The Claimant also alleged that the "*prior mediation, even if it is stipulated contractually, could be raised as an objection only by the parties to the contract since that supplementary procedure could not be a matter of public policy.*"[75] Finally, the Claimant alleged that given the silence and lack of reaction on the part of the Respondent, CSE then brought the case to arbitration in compliance with Article 29 of the Special Administrative Terms and Conditions.[76]

174.   In light of the express desire of the Parties as stipulated in the introduction to the Special Administrative Terms and Conditions, if there is a contradiction between the provisions of the General Administrative Terms and Conditions and those of the Special Administrative Terms and Conditions, the provisions of the latter shall take precedence.

175.   In this particular case, Article 29 of the Special Administrative Terms and Conditions does not stipulate a mediation process prior to the arbitral proceeding, but stipulates only that all disputes arising out of this Procurement Contract shall be settled definitively in accordance with the Mediation and Arbitration Rules of the International Chamber of Commerce in Paris, France.

176.   It is evident from the exhibits in the case file that an attempt to settle the dispute amicably took place but was unsuccessful[77] and that subsequently the Claimant initiated an arbitral proceeding in compliance with the 2012 ICC Rules and that an Arbitral Tribunal was formed to settle any disputes

---

[72] Cf., Transcript of the Procedural Hearing held on June 23, 2017, p. 12, paras. 26 through 37, p. 3, paras. 10 through 14, 22 through 28, and 38 through 47, p. 14, paras. 1 through 4, p. 15, paras. 8 through 16, 38 through 50, and p. 16, paras. 1 through 20.
[73] Claimant's Statement of Claim, p. 4, para. 7.
[74] Exhibit No. D5 attached to the Statement of Claim; Claimant's Statement of Claim, p. 4 para. 8 and p. 5.
[75] Claimant's Statement of Claim, p. 4, para. 7.
[76] Claimant's Statement of Claim, p. 5.
[77] Exhibit No. 5 appended to the Request for Arbitration.

between the Parties to the arbitration pursuant to the two Procurement Contracts.

177.   In light of the primacy of the provisions stipulated in the Special Administrative Terms and Conditions over the provisions in the General Administrative Terms and Conditions, the arbitral proceeding initiated in this ICC Case No. 22056 is in compliance with the will of the Parties, and the validly formed Arbitral Tribunal, therefore, has jurisdiction to settle any dispute related to the aforementioned Procurement Contracts.

178.   Therefore, the Arbitral Tribunal declares that it has jurisdiction to settle the disputes related to the two Procurement Contracts for Public Works for Lot 4 and Lot 5, in a single arbitral proceeding on the basis of the arbitration clause stipulated in Article 29 of the Special Administrative Terms and Conditions of the two Procurement Contracts.

**With regard to the second question regarding the jurisdiction of the Arbitral Tribunal to hear the dispute regarding two Public Procurement Contracts (Lot 4 and Lot 5) in one and the same arbitral proceeding:**

179.   The Arbitral Tribunal notes that it is clear from a reading of the two Procurement Contracts, Lot 4 and Lot 5, that they are (i) contracts regarding the execution of the same project, "the upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry)" divided into two Lots[78] and (ii) contracts concluded between the same Parties: the Government of the Republic of Guinea, represented by the Minister of Public Works and Transportation, in its capacity as the Project Owner and CSE, in its capacity as the Contractor awarded the contracts.[79]

180.   In addition, both Procurement Contracts are governed by the General Administrative Terms and Conditions and Special Administrative Terms and Conditions, which are similar and contain identical arbitration clauses.[80]

181.   Moreover, the receivables claimed by the Claimant are based on similar facts: the conclusion of two Amendments to the two Procurement Contracts with identical subject matter, which was the coverage of the costs related to the factors that generated the funding gap in Lots 4 and 5 of the Tombo-Gbessia project (revision of the prices, exceeding of the contractually stipulated time limit, and depreciation of the US dollar with respect to the Euro)[81] leading to a revision of the price of

---

[78] Exhibit no 2 submitted with the Request for Arbitration: The Procurement Contract for Construction Work entitled "Upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), Lot 4: Kenien Section - T1, Procurement Contract for Construction Work No. 2003/0325/1/2/1/2/N, dated June 25, 200[3]; The Procurement Contract for Construction Work entitled "Upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), Lot 5: Section T1-T2" including the two interchanges at the intersections of the T1 and the T2", Procurement Contract for Construction Work No. 2003/0324/1/2/1/2/N dated June 25, 2003".

[79] Exhibit No. 2 submitted with the Request for Arbitration: The Procurement Contract for Lot 4, p. l; Procurement Contract for Lot 5, p. l.

[80] Exhibit No. 7 submitted with the Request for Arbitration: Article 50 of the General Administrative Terms and Conditions and Exhibit No. 8 submitted with the Request for Arbitration: Article 29 of the Special Administrative Terms and Conditions.

[81] Exhibit No. 4 submitted with the Request for Arbitration: Articles 1 of the two Amendments.

both Procurement Contracts. In addition, it is evident from the various letters requesting payment and reminder letters submitted by the Claimant that the two Procurement Contracts were handled together and the demands for payment of the arrears related to the Amendments were made together for both the road projects that constitute Lots 4 and 5 of the 2 x 2-lane [Road] between Tombo and Gbessia Airport.[82]

182.    Furthermore, the ICC accepted the Claimant's request for arbitration based on the two Procurement Contracts and Article 9 of the ICC Rules regarding "Multiple Contracts", which stipulates the following: "*Subject to the provisions of Articles 6(3)–6(7) and 23(4), claims arising out of or in connection with more than one contract may be made in a single arbitration, irrespective of whether such claims are made under one or more than one arbitration agreement under the Rules.*"

183.    Therefore, in light of the close relationship between the two Procurement Contracts concluded and signed between the same Parties—the Claimant "Compagnie Sahélienne d'Entreprises" and the Respondent "The Republic of Guinea, represented by the Minister of Public Works and Transportation"—involving the same subject matter, and based on the same arbitration clause and pursuant to the aforementioned Article 9 of the ICC Rules, the Arbitral Tribunal deems that it has jurisdiction to hear the dispute resulting from the two Procurement Contracts within one and the same arbitral proceeding.

## B.2. THE PERFORMANCE OF THE RESPECTIVE CONTRACTUAL OBLIGATIONS OF THE PARTIES

184.    The Arbitral Tribunal will answer the following two questions:
   *1 - What were the obligations of the Parties in connection with the Procurement Contracts?*
   *2 - Did the Claimant and the Respondent perform their respective obligations in connection with the Procurement Contracts?*

### a. Positions of the Parties

1- Position of the Claimant

185.    The Claimant claims that Compagnie Sahélienne d'Entreprise concluded with the Guinean Government contracts dated June 25, 2003, regarding the execution, in the capital Conakry, of construction work for the completion of two road projects, Lots 4 and 5, called "the 2x2-lane [Road] between Tombo and Gbessia Airport". They are Procurement Contract for Lot 4" and the "Procurement Contract for Lot 5".[83]

---

[82] Exhibit No. 5 submitted with the Request for Arbitration.
[83] Request for Arbitration, p. 2; Statement of Claim, para. l, p. 2.

186. With regard to the proof of the signing of the two Procurement Contracts, the Claimant submitted Exhibit No. D1 and alleges that, in compliance with Article 4 of the contract, the financial consideration for the execution of the construction work would be released in the following manner:

- The Project Owner would release the sums due to the contractor for the portion denominated in foreign currency, i.e., 86.82% of the amount excluding taxes of the procurement contract by bank wire transfer in Euros to the contractor's bank account at Crédit Commercial de France (CCF).

- With regard to the portion denominated in Guinean Francs, i.e., 13.18% of the amount of the procurement contract, it would be released by bank wire transfer to the company's account at Union Internationale de Banque en Guinea Conakry (UIBG).[84]

187. The Claimant asserts that it has fully performed its contractual obligations and delivered to the Guinean Government all the construction works stipulated in the contracts and that said performance is attested by the certificates of final acceptance prepared without any reservations, dated June 24, 2009 for each Lot, by the Project Owner.[85]

188. The Claimant also claims that despite the delivery of said works to the Guinean Government more than eight years ago and the conclusion of the Amendments duly signed by the Parties, CSE has proven to be cooperative and patient and has attempted to collect the payment of the sums that are due to it pursuant to the Amendments to the two Procurement Contracts.[86]

189. With regard to the Amendments, the Claimant claims that the Guinean Government, in its mobilization of the resources dedicated to the payment for the services rendered by CSE, found that there was a funding gap resulting from the fluctuations in the currency exchange rates. Therefore, CSE agreed to revise the amount of its receivable by means of two Amendments No. 1 related to each Procurement Contract (for Lots 4 and 5), both concluded on February 19, 2010 to assume responsibility for the payment of the cost related to the factors that generated the funding gap.[87] With regard to the proof of the existence of said amendments, on the basis of their content, the Claimant alleges that said amendments were approved by the Guinean Minister of the Economy and Finance. Said amendments with regard to Lots 4 and 5 stipulated the following:

- With regard to Lot No. 4: an amount of EUR 3,074,933.09 payable in four monthly installments in the year 2010, that is, EUR 768,733.31 per quarter.

- With regard to Lot No. 5: an amount of EUR 3,409,629.06 payable in four monthly installments in the year 2010, that is, EUR 852,407.26 per quarter.[88]

---

[84] Statement of Claim, para. 2, p. 2.
[85] Request for Arbitration, p. 2; Statement of Claim, para. 3, pp. 2 and 3; Exhibit No. D2 (the certificates of final acceptance of the works).
[86] Statement of Claim, para. 6, p. 4.
[87] Statement of Claim, para. 5, p. 3; Exhibit No. D3 (Amendment No. 1 of the procurement contracts).
[88] Request for Arbitration, p. 3; Statement of Claim, para. 6, p. 3.

190.    The Claimant maintains that despite the many reminder letters sent to the various government ministries involved, i.e., the Minister of Public Works and the Minister of Finance, and after meeting with said authorities many times, the payment of the receivable due to CSE in connection with the Amendments did not occur. The Claimant refers, in particular, to its last correspondence dated April 11, 2015 sent to the Ministry of Public Works, in which CSE indicated delinquent receivables in the amount of EUR 13,170,874.04 and GNF 1,206,391,24, distributed between Lot No. 4 and Lot No. 5 in the following manner: [89]

-   For Lot No. 4:
    ▪   An amount of EUR 6,104,066.28 including EUR 2.6 million in penalties for late payment; and
    ▪   An amount of GNF 760,280,149, including GNF 173 million in penalties for late payment.
-   For Lot No. 5:
    ▪   An amount of EUR 7,066,807.76, including EUR 3.2 million in penalties for late payment; and
    ▪   An amount of GNF 446,111,098, including GNF 333 million in penalties for late payment.

191.    With regard to the Respondent's obligations, the Claimant claims that the Respondent did not perform any of its commitments stipulated in the contracts and that since the completion of the works and their delivery in full compliance, the Republic of Guinea has not paid a single Euro or a Single Guinean Franc to CSE and that, therefore, the Respondent breached its contractual obligations. [90] In fact, the Claimant alleges that the Respondent was required to pay, for each Procurement Contract, the following sums in four monthly installments:

A-  For Procurement Contract No. 2003/0325/l/2/l/2/N (Lot No. 4)
-   Principal amounts of delinquent receivables/portion denominated in foreign currency: EUR 3,467,856.80
-   Penalties for late payment related thereto: EUR 2,636,209.48
    **Total due in foreign currency: EUR 6,104,066.28**
-   Principal amounts of delinquent receivables/portion in GNF: GNF 586.885.339
-   Penalties for late payment related thereto : GNF 173.394.810
    **Total due in local currency : GNF 760,280,149**

B-  Pursuant to Procurement Contract No. 2003/0324/1/2/1/2/N (Lot No. 5)
-   Principal amounts of delinquent receivables/portion denominated in foreign currency: EUR 3,897,891.11
-   Penalties for late payment related thereto: EUR 3,168,916.65
    **Total due in foreign currency: EUR 7,066,807.76**
-   Principal amounts of delinquent receivables/portion in GNF: GNF 112.780.322
-   Penalties for late payment related thereto : GNF 333.330.776
    **Total due in local currency : GNF 446,111,098**

---

[89] Request for Arbitration, pp. 3 and 4.
[90] Statement of Claim, Section II-4, para. 2, p. 8.

2 - <u>Position of the Respondent</u>

192.    The Respondent has not participated in the arbitral proceeding and has not submitted any responses to the questions asked by the Arbitral Tribunal regarding the performance of the respective contractual obligations of the Parties pursuant to the Procurement Contracts, although all the procedural documents and correspondence were served upon it at its various addresses via DHL express courier. [91] The Arbitral Tribunal has prepared a table summarizing the pieces of correspondence served upon the Respondent and the dates of receipt thereof by the Respondent at its various addresses proving that the Respondent was indeed aware of the entirety of the progress of the arbitral proceeding and of the position of the Claimant.

### b. The Arbitral Tribunal

193.    The Tribunal notes that the Claimant as the "Contract Holder" or Contractor, and the Respondent as the "Project Owner", concluded two Procurement Contracts dated June 25, 2003.

194.    The subject matter of the first Procurement Contract was "*the execution of the project for Upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), Lot 4: Kenien Section - T1*" [92] (Procurement Contract for Lot 4), and the subject matter of the second Procurement Contract was "*the execution of the project for Upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), Lot 5: Section T1-T2, including the two interchanges at the intersections of the T1 and the T2".*[93]

195.    Article[s] 4 of the Procurement Contracts for Lot 4 and Lot 5[94] stipulate, in the same terms, the following: "*The Project Owner shall release the sums due to the Contractor with respect to the portion denominated in foreign currency, i.e., 86.82% of the amount excluding taxes of the Procurement Contract by bank wire transfer in Euros (EUR) to Account No. 17722-00001 at Crédit Commercial de France (CCF) bank in Paris, 115–117 Avenue ds Champs Elysées, 75419 Paris Cedex 08, France. And with regard to the portion denominated in Guinean Francs, i.e., 13.18% of the amount of the procurement contract by bank wire transfer to Account No. 05000560170/11 at Union Internationale de Banque en Guinée (UIBG) Conakry. The exchange rate applicable to this procurement contract shall be EUR 1 = GNF 1965.5267 (Central Bank of the Republic of Guinea fixing).*"

---

[91] Cf., section I.B.2. de this Award.
[92] Article 1 of the Procurement Contract for Lot 4; Exhibit No. 2, Request for Arbitration.
[93] Article 1 of the Procurement Contract for Lot 5; Exhibit No. 2, Request for Arbitration.
[94] Exhibit No. 2, Request for Arbitration.

196.    In compliance with Article 4 of the two aforementioned Procurement Contracts, the Respondent was to execute its obligation to make payment in foreign currency (Euros) in the proportion of 86.82% of the amount of each of the two Procurement Contracts and in Guinean Francs for the remaining 13.18%. With regard to the payment in foreign currency (Euros), the latter was to be covered by the following funders: the KFAED, BADEA (Arab Bank for Economic Development in Africa), the SFD, and OPEC. With regard to the payment in Guinean Francs, the latter was to be covered by the Republic of Guinea.

197.    Furthermore, it is evident from said two Procurement Contracts that the Claimant's obligation was "*the execution of the project for Upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), Lot 4: Kenien Section - T1*" for the Procurement Contract for Lot 4, and "*the execution of the project for Upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), Lot 5: Section T1-T2, including the two interchanges at the intersections of the T1 and the T2*" for the Procurement Contract for Lot 5. The Respondent's obligation was the payment of the price of the construction work executed as is evident from Article 4 of the two aforementioned Procurement Contracts.

198.    It is clear from the exhibits in the case file that Guinean Government Secretary for Public Works Arch Mamady Kallo, acting in his capacity as Project Owner for the two Procurement Contracts for the upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport: Lot 4 and Lot 5, issued two certificates of final acceptance for each of the two Procurement Contracts: A certificate of final acceptance dated July 24, 2009 No. 0286/SETP/CAB/09 for the Procurement Contract for Lot 4 and a certificate of final acceptance dated July 24, 2009 No. 0285/SETP/CAB/09 for the Procurement Contract for Lot 5.[95]

199.    Therefore, the Claimant has provided proof of the proper performance of its contractual obligations, that is, the completion of the construction work for the Procurement Contracts for Lot 4 and Lot 5 and the final acceptance thereof by the Respondent. Pursuant to Article 42.3 of the General Administrative Terms and Conditions, "*the final acceptance shall mark the end of execution of this Procurement Contract and shall release the co-contracting parties from their obligations.*" The Arbitral Tribunal notes that in the express terms of the two Procurement Contracts, there is no obstacle that is a condition for the implementation of the Respondent's payment obligation. It was, then, incumbent upon the Respondent to pay the price of the construction work performed in compliance with Articles 4 of the two Public Procurement Contracts related to Lot 4 and Lot 5. The Arbitral Tribunal notes, moreover, from the exhibits in the case file, that because of a funding gap, the two Parties to the contract revised the contractual price initially stipulated in the Procurement Contracts by means of the conclusion of two Amendments to the two Procurement Contracts. They were Amendment No. 1 to Contract No. 2003/0324/1/2/1/2/N for upgrading of

---

[95]  Exhibit no. 3, Request for Arbitration: Certificate of Final Acceptance dated July 24, 2009 No. 0286/SETP/CAB/09 for the Procurement Contract for Lot 4 and Certificate of Final Acceptance dated July 24, 2009 No. 0285/SETP/CAB/09 for the Procurement Contract for Lot 5.

the road involving the 2x2-lane Tombo - Gbessia, Lot 5: T1-T2 dated February 19, 2010, and Amendment No. 1 to Contract No. 2003/0325/1/2/1/2/N for upgrading of the road involving the 2x2-lane Tombo - Gbessia, Lot 4: Kenien Section—T1 dated February 19, 2010.

200.   Article 3 of the two Amendments stipulates the following: "*the basic procurement contract documents shall be considered and interpreted to form an integral part of this Amendment, in the order of priority stipulated in the same basic procurement contract.*"

201.   The Claimant confirmed in its pleadings, in its reminder letters submitted for the case file,[96] and during the Final Hearing that the amounts claimed are related to the amounts stipulated in the Amendments that have remained unpaid, despite the series of reminder letters sent to the Republic of Guinea set forth below:[97]

   ▪ **Letter dated December 23, 2011 sent by the Chief Executive Officer of CSE Mr. Oumar Sow to the Government Minister of the Economy and Finance of the Republic of Guinea in Conakry**,[98] which contains the following:

   "*Dear Mr. Minister:*
   *Regarding our various reminder letters that have remained ineffective with respect to the arrears due to us in a total of EUR 7,554,814.82 (seven million five hundred fifty-four thousand eight hundred fourteen Euros and eighty-two cents), we are hereby reiterating to you our request for payment, the tardiness of which has already caused enormous harm to us. We would like to remind you, Mr. Minister, that these amounts have been established pursuant to the provisions of Amendments 2010/094/2/2/1/2/n (Lot 4) and 2010/093/2/2/1/2/n (Lot 5), both approved on 01/20/2010 by the Minister of the Economy and Finance [...].*"

   ▪ **Letter dated February 8, 2012 sent by the Chief Executive Officer of CSE Mr. Oumar Sow to the Minister of Public Works and Transportation, Republic of Guinea, Conakry**[99] requesting once again the payment of the debt for the two road projects in the Procurement Contracts for Lot 4 and Lot 5, emphasizing to the Minister "*the difficult situation that our company is experiencing because of the delinquent receivables that are due by the Guinean Administration, following the completion on its behalf, since the end*

---

[96] Letter dated December 23, 2011 sent by the Chief Executive Officer of CSE Mr. Oumar Sow to the Minister of the Economy and Finance of the Republic of Guinea, in Conakry: "*We would like to remind you, Mr. Minister, that these amounts have been established pursuant to the provisions of Amendments No. 2010/094/2/2/1/2/n (for Lot 4) and No. 2010/093/2/2/1/2/n (for Lot 5) both approved on 01/20/2010 by the Minister of the Economy and Finance [...]*». (Exhibit No. 5, Request for Arbitration).
[97] Responses by the Claimant to the questions asked by the Arbitral Tribunal in its correspondence dated October 3, 2017; Transcript of the Hearing held on February 19, 2018, p. 22, paras. 45 through 51, and p. 23, paras. 1 through 21.
[98] Exhibit no 5, Request for Arbitration.
[99] Exhibit no 5, Request for Arbitration.

*of May 2008, of the 2 road projects that constitute Lots 4 and 5 of the 2x2-lane [Road] between Tomba and Gbessia Airport. In fact, with regard to those 2 projects, our company has posted, for more than 3 years now, arrears that amount to EUR 10,304,153.33 and GNF 1,122,657,733 [...].*

*In our previous reminder letters dated 05/29/2011 and 12/23/2011 sent to your Ministry and to the Ministry of the Economy and Finance, respectively, we requested the payment of said debt to us, which has caused enormous harm to us, especially insofar as it is for projects that have already been accepted by the administration for more than 3 years and for the completion of which we incurred a great deal of debt.*

*In addition, during our last stay in Conakry, our many attempts to meet with the Government Minister of the Economy and Finance to examine with him the measures taken by the Administration to pay us were unsuccessful. Thus, we find ourselves required to refer the matter to you officially, in your capacity as a supervisory Minister responsible for the payment of these unsettled debts in order to reach a resolution to this situation, which has lasted more than 3 years [...]."*

- **Letter dated December 10, 2012 sent by the Chief Executive Officer of CSE Mr. Oumar Sow to the Minister of Public Works and Transportation of the Republic of Guinea in Conakry,**[100] which once again requested the payment of the debt for the Procurement Contracts for Lots 4 and 5 to the same effect as the aforementioned letter dated February 8, 2012.

- **Letter dated April 13, 2012 sent by the Chief Executive Officer of CSE Mr. Oumar Sow to the Government Minister of the Economy and Finance of the Republic of Guinea in Conakry,**[101] which refers to a working meeting with the Guinean administration with regard to the situation of the delinquent receivables after which the ministerial department made the following proposals:
  *" Payment of a payment on account of EUR 1,500,000 (one million five hundred thousand Euros) at the end of June 2012*
  *- Payment of the balance over a moratorium of 2 (two) years.".*

- **Letter dated April 11, 2015 sent by the Chief Executive Officer of CSE Mr. Oumar Sow to the Guinean Minister of Public Works and Transportation in Conakry**
  **- The Republic of Guinea,**[102] which once again draws the attention of the Guinean Administration to the difficult situation of CSE because of the unpaid receivables "*that are due by the Guinean Administration, following the completion on its behalf since the end of May 2008,*

---

[100] Exhibit no 5, Request for Arbitration.
[101] Exhibit no 5, Request for Arbitration.
[102] Exhibit no 5, Request for Arbitration.

*of the 2 road projects that constitute Lots 4 and 5 of the 2 x 2-lane [Road] between Tombo and Gbessia Airport. In fact, with regard to the 2 projects, our company has posted, for more than 7 years now, arrears in the amounts of EUR 7,365,747.91 and GNF 99,665,661 in principal and EUR 5,805,126.13 and GNF [...] in interest. In sum, the total amounts of our delinquent receivables are EUR 13,170,874.04 and GNF 1,206,391,246 GNF[...].*

202.   The Arbitral Tribunal, finds, after examination of the correspondence mentioned above, that the Claimant demanded from the ministries involved, several times, the payment of the amounts of the delinquent receivables related to the two Amendments. Said correspondence demonstrates that until April 11, 2015, the Claimant demanded the payment of the arrears in Euros and in Guinean Francs.

203.   In addition, the Arbitral Tribunal notes the principal contractual provisions of the two Amendments, which stipulate the following:

➢ Amendment No. l of the Procurement Contract for Lot 4[103]

▪   Article 1: "[T]*he purpose of this Amendment is to assume responsibility for the costs related to the factors that have generated the [funding] gap with regard to Lot 4 of the Tombo-Gbessia project (revision of the prices, exceeding of the contractually stipulated time limit, and depreciation of the US dollar with respect to the Euro)."*

▪   Article 2: "[T]*he General Terms and Conditions of the Procurement Contract shall remain fully applicable except the modifications stipulated in the Special Terms and Conditions related to this amendment."*

▪   Article 4:  "[T]*he total amount of Amendment No. 1 resulting from the analysis of the gap shall be: Three Million Six Hundred Fifty-Six Thousand Nine Hundred Twenty-Three Euros and Seventy - One Cents (EUR 3,656,923.71)."*

▪   Article 5: "[T]*he terms and conditions of payment shall be as follows:*
   -   *KFAED: EUR 206,356.09*
   -   *SFD: EUR 194,356.04*
   -   *OPEC: EUR 181,278.34*
       *Guinean NDB: EUR 3,074,933.34, in accordance with the following payment schedule:*
       •   *First quarter of 2010: EUR 768,733.31*
       •   *Second quarter of 2010: EUR 768,733.31*
       •   *Third quarter of 2010: EUR 768,733.31*
       •   *Fourth quarter of 2010: EUR 768,733.31."*

---

[103] Exhibit No. 14 submitted in the correspondence from the Claimant dated October 25, 2017; it is also Exhibit No. 4 of the Request for Arbitration and Exhibit No. D4 of the Statement of Claim.

- Article 6: "[T]*he prices shall be firm and not subject to revision."*

  - ➢ Amendment No. 1 of the Procurement contract for Lot 5[104]

    - Article 1: "[T]*he purpose of this Amendment is to assume responsibility for the costs related to the factors that have generated the [funding] gap with regard to Lot 5 of the Tombo-Gbessia project (Revision of the prices, exceeding of the contractually stipulated time limit, and depreciation of the US dollar with respect to the Euro)."*

    - Article 2: "[T]*he General Terms and Conditions of the Procurement Contract shall remain fully applicable except the modifications stipulated in the Special Terms and Conditions of the Contract."*

    - Article 4: *"[T]he total amount stipulated in Amendment No. 1 resulting from the analysis of the gap shall be: Three Million Eight Hundred Ninety-Seven Thousand Eight Hundred Ninety-One Euros and Eleven Cents (EUR 3,897,891.11)."*

    - Article 5: "[T]*he terms and conditions of payment shall be as follows:*
      - *SFD: EUR 383,854.57*
      - *OPEC: EUR 104,407.49*
      - *Guinean NDB: EUR 3,409,629.06, in accordance with the following payment schedule:*
      - *First quarter of 2010: EUR 852,407.26*
      - *Second quarter of 2010: EUR 852,407.26*
      - *Third quarter of 2010: EUR 852,407.26*
      - *Fourth quarter of 2010: EUR 852,407.26."*

    - Article 6: "[T]*he prices shall be firm and not subject to revision."*

204. In addition, Article 10 of the two Amendments stipulates, in the same terms, that "[T]*his Amendment shall be valid and enforceable only after it has been signed by the parties involved and has been approved by the Minister of the Economy and Finance."*

205. The Arbitral Tribunal, upon reading the two Amendments, notes in this regard the word "approved" by the Guinean Minister of the Economy and Finance with the stamp of the Ministry and a signature on those two Amendments.[105] Therefore, the Arbitral Tribunal finds that said Amendments are

---

[104] Exhibit no. 14 submitted in the correspondence from the Claimant dated October 25, 2017; it is also Exhibit No. 4 of the Request for Arbitration and Exhibit No. D4 of the Statement of Claim.

[105] Exhibit no. 4, Request for Arbitration. Article 10 of Amendment No. 1 of the Procurement Contract for Lot 4: "*this amendment shall be valid and enforceable only after it has been signed by the parties involved and has been approved by the Guinean Minister of the Economy and Finance"*; Article 10 of Amendment No. 1 of the Procurement Contract for Lot 5: " *this amendment shall be valid and enforceable only after it has been signed by the parties involved and has been approved by the Guinean Minister of the*

valid and enforceable, and that they corroborate the existence of a receivable of the Claimant that is liquid, certain and due.

206.   The Tribunal refers here to Article 801 of the Guinean Civil Code, which stipulates the following:
*"As a general rule, it is the plaintiff, that is, the person who institutes a legal proceeding, who has the burden of proof.*
*However, if the defendant (or respondent), that is, the person against whom the action is directed, has to assert a defense argument against his adversary, it is then to him that the burden of proof shall pass."*[106]

207.   It is clear from these provisions that the burden of proof is incumbent upon the Plaintiff (or Claimant) in Guinean law. Thus, any person who deems that he is the creditor of an obligation must provide proof thereof, and any person who deems that he has discharged an obligation must provide the proof thereof.

208.   In this particular case, the Claimant is claiming the payment of the amount stipulated in the Amendments with respect to the amounts denominated in Euros and is also claiming payment of the amounts denominated in Guinean Francs with respect to the amounts of the counts that have remained unpaid by the Republic of Guinea.

209.   The Tribunal finds that the Claimant has provided proof that it has performed its contractual obligations pursuant to the two Procurement Contracts in light of the Certificates of Final Acceptance of the Works issued by the Respondent and is demanding payment by the Respondent of the amounts stipulated in the Amendments. The Arbitral Tribunal finds that the monetary debt claim pursuant to the Amendments is liquid, certain, and due and that the Respondent agreed to pay the amount stipulated in the Amendments in accordance with a pre-established payment schedule. It is thus the responsibility of the Respondent to prove that it has discharged its contractual obligations to pay the amount of the arrears related to the Amendments. However, the Respondent has not provided proof to the contrary attesting to the performance of its payment obligations on the basis of the two Amendments. The Respondent has, in fact, decided not to participate in the arbitral proceeding despite its receipt and service of all the correspondence, documents, procedural documents, and other items related to this arbitral proceeding.

210.   **Therefore, the Arbitral Tribunal determines that the Claimant's obligations with respect to the Procurement Contracts, in its capacity as the contractor, was the completion of two roadwork projects that constitute Lots 4 and 5 of the 2 x 2-lane [Road] between Tombo and Gbessia Airport and that the Claimant executed its obligations pursuant to the Procurement Contracts. As for the Respondent, it had the obligation, as the Project Owner, to make the payment of the price stipulated in the Amendments for the construction work executed by the**

---

*Economy and Finance."*
[106] Correspondence from the Claimant dated March 20, 2018 with copies of the Civil Code and of Code of Civil Procedure of Guinea appended thereto.

**Claimant. The Arbitral Tribunal will determine the legitimacy of the amount of the Claimant's claims on the basis of the delinquent receivables for the amounts stipulated in the Amendments in Section B.3 below.**

### B.3. THE CLAIMANT'S RIGHT TO COMPENSATION FOR THE DAMAGES CLAIMED

211.    The Arbitral Tribunal will answer the following questions:
   1-  *Which Party is liable and to whom?*
   2-  *Which Party is liable for what amount?*
   3-  *Is the Claimant entitled to compensation for the damages claimed?*

### a. Positions of the Parties

1- Position of the Claimant

212.    The Claimant claims that after the conclusion of the Procurement Contracts with the Respondent, the latter was required to release the following sums in compliance with Article 4 of the Procurement Contracts:
   -    With respect to the portion denominated in foreign currency: 86.82% of the amount excluding taxes of the procurement contract by bank wire transfer in Euros to the contractor's bank account at Crédit Commercial de France (CCF).
   -    With respect to the portion denominated in Guinean Francs: 13.18% of the amount of the procurement contract by bank wire transfer to the company's account at Union Internationale de Banque en Guinée Conakry (UIBG). [107]

213.    The Claimant claims, furthermore, that in light of the funding gap resulting from the fluctuations in exchange rates, CSE agreed to revise the amount of its receivable by means of an Amendment No. 1 to each Procurement Contract (for Lots 4 and 5), both concluded on February 19, 2010 to assume responsibility for the payment of the costs related to the factors that generated the funding gap. [108] The Claimant submits that said amendments were approved by the Guinean Minister of the Economy and Finance and stipulate the following:
   –    For Lot No. 4: an amount of EUR 3,074,933.09 payable in four quarterly installments in the year 2010, that is, EUR 768,733.31 per quarter.
   –    For Lot No. 5: an amount of EUR 3,409.629.06 payable in four quarterly installments in the year 2010, that is, EUR 852,407.26 per quarter.[109]

---

[107] Statement of Claim, para. 2, p. 2
[108] Statement of Claim, para. 5, p. 3; Exhibit no. D3 (amendment no 1 of the procurement contracts).
[109] Statement of Claim, para. 6, p. 3.

214.   The Claimant claims that despite the delivery of said works to the Guinean Government more than eight years ago and the intervention of amendments duly signed by the Parties, the Respondent has not paid the sums due for each of the Procurement Contracts, which the Claimant summarizes in the following manner:[110]

A - Pursuant to Procurement Contract No. 2003/0325/l/2/l/2/N (Lot no. 4)
   – Principal amounts of delinquent receivables/portion denominated in foreign currency: EUR 3,467,856.80
   – Penalties for late payment related thereto: EUR 2,636,209.48
   **Total due in foreign currency: EUR 6,104,066.28**
   – Principal amounts of delinquent receivables/portion denominated in Guinean Francs: GNF 586,885,339
   – Penalties for late payment related thereto: GNF 173,394,810
   **Total due in local currency: GNF 760,280,149**

B - Pursuant to Procurement Contract No. 2003/0324/1/2/1/2/N (Lot No. 5)
   – Principal amounts of delinquent receivables/portion denominated in foreign currency: EUR 3,897,891.11
   – Penalties for late payment related thereto: EUR 3,168,916.65
   **Total due in foreign currency: EUR 7,066,807.76**
   – Principal amounts of delinquent receivables/portion denominated in Guinean Francs: GNF 112,780,322
   – Penalties for late payment related thereto: GNF 333,330,776
   **Total due in local currency: GNF 446,111,098**

215.   The Claimant has thus confirmed that the amounts claimed from the Respondent are only those related to the amounts stipulated in the Amendments.[111]

216.   In addition, the Claimant, following the Request for Production of Documents requested by the Arbitral Tribunal[112], submitted the following exhibits:
   – **Exhibits No. 1, 6, and 19:** [113] table summarizing the arrears and determination of the penalties for late payment in Euros as of February 11, 2016 for the Procurement Contracts for Lot 4 and Lot 5.
   – **Exhibits Nos. 5, 11, and 12:**[114] the counts sent by the Claimant to the Respondent and the payment thereof for the two Procurement Contracts for Lot 4 and Lot 5.

---

[110] Statement of Claim, para. 6, p. 4.
[111] Correspondence from the Claimant dated October 25, 2017 in which it provided responses to the questions asked by the Arbitral Tribunal and submitted the documents requested by the Tribunal in the Request for Production of Documents.
[112] Correspondence of the Arbitral Tribunal dated October 3, 2017; correspondence from the Claimant dated October 25, 2017 in which it provided responses to the questions of the Arbitral Tribunal and submitted the documents requested by the Tribunal in the Request for the Production of Documents.
[113] Exhibit No. 19 is a combination of two Exhibits, Nos. 1 and 6, exhibits submitted in the correspondence from the Claimant dated October 25, 2017.
[114] Exhibit No. 12 is a combination of two Exhibits, Nos. 5 and 11, exhibits submitted in the correspondence from the Claimant dated October 25, 2017.

–   **Exhibits Nos. 2, 3, 4, 7, 8, 9 and 10:** the bank statements of CSE proving the bank wire transfers made by the Arab Bank for Economic Development in Africa (BADEA), OPEC, the KFAED, and the FSAOUD to CSE Account No. 17722–00001 at the Crédit Commercial de France bank (CCF) in Paris for the two Procurement Contracts for Lot 4 and Lot 5.

217.      The Claimant has also submitted testimony from the Chief Executive Officer and Chief Financial Officer of CSE, Mr. Massamba Gueye, who indicated that the amount of the arrears with respect to the two Procurement Contracts has been calculated to amount to "*a principal amount of EUR 7,365,747.91 and GNF 699,665,661 and interest of EUR 5,805,126.13 and GNF 56,725,585, detailed as follows:*

-   *With respect to Lot 4*
    •   *Principal amount of the unpaid amount of the portion payable in foreign currency: EUR 3,467,856.80*
    •   *Penalties for late payment related thereto: EUR 2,636,209.48*
        ***Subtotal due in foreign currency: EUR 6,104,066.28***

    •   *Principal amount of the unpaid amount of the portion payable in GNF: GNF 586,885,339*
    •   *Penalties for late payment due: GNF 173,394,810*
        ***Subtotal due for the portion denominated in local currency: GNF 760,280,149***

-   *With respect to Lot 5*
    •   *Principal amount of the unpaid amount of the portion payable in foreign currency: EUR 3,897,891.11*
    •   *Penalties for late payment related thereto: EUR 3,168,916.65*
        ***Subtotal due in foreign currency: EUR 7,066,807.76***

    •   *Principal amount of the unpaid amount of the portion payable in GNF: GNF 112,780,322*
    •   *Penalties for late payment related thereto: GNF 333,330,776*
        ***Subtotal due for the portion denominated in local currency: GNF 446,111,098"***

218.      The Chief Executive Officer and Chief Financial Officer furthermore indicated in his testimony that "*the difference between the sum of EUR 3,467,856.80 claimed by the Claimant in its Request for Arbitration and the sum of EUR 3,656,923.71 written in the amendment is justified by the sum of EUR 10,991.11 received from the KFAED*". [115]

219.      In addition, the Chief Executive Officer and Chief Financial Officer, during his hearing at the Final Hearing confirmed a calculation error in his report, an error noted by the Arbitral Tribunal during the Hearing related to the total amount of the delinquent receivables denominated in Guinean Francs, which is GNF 96,939,178 and not GNF 586,885,339.[116]

---

[115] Testimony of the Chief Executive Officer and Chief Financial Officer of CSE, Mr. Massamba Gueye, submitted by the Claimant in its correspondence dated January 30, 2018.
[116] Transcript of the Hearing held on February 19, 2018, p. 51 paras. 5 through 33.

220.　　　The Claimant is also requesting that the Guinean Government be ordered to pay liquidated damages in the amount of EUR 2,000,000.[117]

### 2 - Position of the Respondent

221.　　　The Respondent has not participated in the arbitral proceeding and has not submitted any responses to the questions asked by the Arbitral Tribunal, i.e., "*Which Party is liable and to whom?*", "*Which Party is liable for what amount?*", and "*Is the Claimant entitled to compensation for the damages claimed?*", although all the procedural documents and the correspondence was served upon it at its various addresses via DHL express courier. The Arbitral Tribunal has prepared a summary table of the pieces of correspondence served upon the Respondent and the dates on which they were received by the Respondent at its various addresses proving that the Respondent was indeed aware of the entire progress of the arbitral proceeding and of the Claimant's position.

### b. The Arbitral Tribunal

222.　　　The Arbitral Tribunal has reviewed and analyzed the exhibits transmitted by the Claimant, and, in particular, the following exhibits:

- **Exhibits Nos. 1, 6 and 19:**[118] a table summarizing the arrears and determination of the penalties for late payment in Euros as of February 11, 2016 for the Procurement Contracts for Lot 4 and Lot 5.
- **Exhibit Nos. 5, 11, and 12:**[119] the counts sent by the Claimant to the Respondent and the payment thereof for the two Procurement Contracts for Lot 4 and Lot 5.
- **Exhibits Nos. 2, 3, 4, 7, 8, 9, and 10:**[120] the bank statements of CSE proving the bank wire transfers made by BADEA, OPEC, the KFAED, and the FSAOUD to CSE Account No. 17722–00001 at Crédit Commercial de France (CCF) in Paris for the two Procurement Contracts for Lot 4 and Lot 5.
- **Exhibit No. l4:**[121] Amendments to the contracts for Lots 4 and 5

---

[117] Request for Arbitration, p. 8; Statement of Claim, p. 11; Transcript of the Hearing held on February 19, 2018, p. 21, para. 49.
[118] Exhibit No. 19 is a combination of two Exhibits, Nos. 1 and 6, exhibits submitted in the correspondence from the Claimant dated October 25, 2017.
[119] Exhibit No. 12 is a combination of two Exhibits, Nos. 5 and 11, exhibits submitted in the correspondence from the Claimant dated October 25, 2017.
[120] Exhibits submitted in the correspondence from the Claimant dated October 25, 2017.
[121] Exhibit submitted in the correspondence from the Claimant dated October 25, 2017; it is also Exhibit No. 4 in the Request for Arbitration and Exhibit D4 in the Statement of Claim.

- **Exhibit No. 2**: [122] Procurement Contract for Construction Work No. 2003/0325/1/2/1/2/N dated June 25, 2003 entitled « Lot 4 : Tronçon Kenien – T1" and Procurement Contract for Construction Work No. 2003/0324/1/2/1/2/N dated June 25, 2003 entitled "Lot 5 -. Section T1 - T2" including the two interchanges at the intersections of the T1 and the T2".
- **Exhibit No. 7:** General Administrative Terms and Conditions.
- **Exhibit No. 8:** Special Administrative Terms and Conditions
- The testimony of Mr. Massamba Gueye, the Chief Executive Officer and Chief Financial Officer of CSE and his examination during the Final Hearing.

223.    The Arbitral Tribunal, after the questions asked of the Claimant in its correspondence dated October 3, 2017, noted the following response from the Claimant[123] with regard to the principal amount of the claims on the basis of the two Procurement Contracts, amounts that are reflected in the Request for Arbitration and in the Statement of Claim:

With regard to the Procurement Contract for Lot No. 4:

- The sum of **EUR 3,467,856.80** claimed by the Claimant, on page 7 of its Statement of Claim, as the principal amount of delinquent receivables with respect to the portion denominated in foreign currency for Lot No. 4 corresponds to the amendments.
- The sum of **GNF 586,885,339** claimed by the Claimant, on page 7 of its Statement of Claim, as the principal amount of delinquent receivables with respect to the portion denominated in Guinean Francs for Lot No. 4 corresponds to the details of the delinquent receivables.

With regard to the Procurement Contract for Lot No. 5:

- The sum of **EUR 3,897,891.11** claimed by the Claimant, on page 7 of its Statement of Claim, as the principal amount of delinquent receivables with respect to the portion denominated in foreign currency for Lot No. 5 corresponds to the amendments.
- The sum of **GNF 112,780,322** claimed by the Claimant, on page 7 of its Statement of Claim, as the principal amount of delinquent receivables with respect to the portion denominated in Guinean Francs for Lot No. 5 corresponds to the details of the delinquent receivables.

224.    The Arbitral Tribunal will provide its analysis below and will make a ruling regarding the amount of the Claimant's claims with regard to the Procurement Contract for Lot 4 first (1), then with regard to the Procurement Contract for Lot 5 second (2), and finally will make a ruling on the request for liquidated damages in the amount of EUR 2,000,000 (3).

---

[122]  Exhibit No. 2 submitted with the Request for Arbitration.
[123]  Correspondence from the Claimant dated October 25, 2017 in which it provided responses to the questions asked by the Arbitral Tribunal and submitted the documents requested by the Tribunal in the Request for Production of Documents.

| Procurement Contract for LOT No. 4 | | | | | | |
|---|---|---|---|---|---|---|
| **Amount of the Procurement Contract** with respect to Lot No. 4 | | **Amount stipulated in Amendment No. 1** with respect to Lot No. 4 | **Sums Claimed** with respect to Lot No. 4 (interest not included) | | **Table Summarizing the Arrears** (Exhibits Nos. 1, 6, and 19[124]) (interest not included) | |
| *Amount of the procurement contract excluding taxes* | *GNF 16,822,442,035* | | | | | |
| *Amount in foreign currency (86.82%)* | 14,605,244,174.80 (i.e., approximately 7,430,702.56 according to the contractual exchange rate EUR 1 = GNF 1,965.5267) | | | | | |
| *Amount in GNF (13.18%)* | GNF 2,217,197,860.21 | | | | | |
| *Amount of the Taxes* | *GNF 4,082,607,164* | | | | | |
| Total Amount Incl. Taxes | GNF 20,905,049,199 | EUR 3,656,923.71 | | | | |
| Portion in **foreign currency** (86.82%) | GNF 18,149,763,714.60 (i.e., approximately EUR 9,234,045.80 according to the contractual exchange rate EUR 1 = GNF 1,965.5267) | | Principal amount of delinquent receivables/ portion in **foreign currency** | EUR 3,467,856.80 | Principal amounts of delinquent receivables/portion denominated in **foreign currency** | EUR 3,470,475.73 (Amounts of delinquencies beginning June 30, 2007) |
| Portion in **GNF** (13.18%) | GNF 2,755,285,484.43 (i.e., approximately EUR 1,401,805.10 according to the contractual exchange rate EUR 1 = GNF 1,965.5267) | | Principal amounts of delinquent receivables/ portion in **GNF** | GNF 586,885,339 | Principal amounts of delinquent receivables/portion in **GNF** | GNF 96,939,178 (Amounts of delinquencies beginning July 15, 2008) |
| Total in **foreign currency** (for information purposes and according to the contractual exchange rate EUR 1 = GNF 1,965.5267) | EUR 10,635,851.04 | | | | | |

## 1-   With regard to the claims related to the Procurement Contract for Lot 4:

225. The Arbitral Tribunal, after examining the exhibits in the case file prepared, with regard to the Procurement Contract for Lot 4, the following summary table:

---

[124]   Exhibit No. 19 is a combination of two Exhibits, Nos. 1 and 6, exhibits submitted in the correspondence from the Claimant dated October 25, 2017.

226.    The Arbitral Tribunal notes that Article 1 of the Amendment to the Procurement Contract for Lot 4[125] stipulates that "*the purpose of this amendment is to assume responsibility for the payment of the costs related to the factors that generated the gap for Lot 4 of the Tombo-Gbessia project (revision of the prices, exceeding of the contractually stipulated time limit, depreciation of the US dollar with respect to the Euro)*" and that Article 2 stipulates that "*the General [Administrative] Terms and Conditions of the Procurement Contract shall remain fully applicable except the modifications stipulated in the Special Terms and Conditions of the Contract related to this amendment.*"

227.    In addition, the amount specified in the Amendment to the Procurement Contract for Lot 4 is stipulated in Article 4 thereof, [126] which stipulates the following: "*the total amount of Amendment No. 1 resulting from the analysis of the funding gap is: Three Million Six Hundred Fifty-Six Thousand Nine Hundred Twenty-Three Euros and Seventy-One Cents (EUR 3,656,923.71)*".

228.    Article 5 of the aforementioned Amendment stipulates that: "[T]*he terms and conditions of payment shall be as follows:*
-    *KFAED: EUR 206,356.09*
-    *SFD: EUR 194,356.04*
-    *OPEC: EUR 181,278.34*
-    *Guinean NDB: EUR 3,074,933.34, in accordance with the following payment schedule:*
    •    *First quarter of 2010: EUR 768,733.31*
    •    *Second quarter of 2010: EUR 768,733.31*
    •    *Third quarter of 2010: EUR 768,733.31*
    •    *Fourth quarter of 2010: EUR 768,733.31*"

229.    Article 6 of said Amendment also stipulates that "[T]*he prices shall be firm and not subject to revision.*"

230.    This Amendment No. 1 to the Procurement Contract for Lot No. 4 is valid and enforceable since it was signed by the Parties involved and approved by the Minister of the Economy and Finance as is clear from the signatures on the Amendment and the appearance of the word "approved".[127]

231.    The Arbitral Tribunal has also noted that the amount claimed in Euros by the Claimant pursuant to the Procurement Contract for Lot No. 4 was reconsidered by the latter at the Final Hearing for

---

[125] Exhibit no. 14 submitted in the correspondence from the Claimant dated October 25, 2017; it is also Exhibit No. 4 of the Request for Arbitration and Exhibit No. D4 of the Statement of Claim.
[126] Exhibit no. 14 submitted in the correspondence from the Claimant dated October 25, 2017; it is also Exhibit No. 4 of the Request for Arbitration and Exhibit No. D4 of the Statement of Claim.
[127] Article 10 amendment no. 1 of the Procurement Contract for Lot 4 : "*This amendment shall be valid and enforceable only after it has been signed by the parties involved and has been approved by the Minister of the Economy and Finance.*"

Pleadings and is now the sum of EUR 3,470,475.73 instead of EUR 3,897,891.11.[128] In fact, the Claimant submitted during the Final Hearing for Pleadings the bank statement from LCL bank, proving the payment by the KFAED of the amount of EUR 190,991.11 on October 4, 2010 after the conclusion of Amendment No. l to the Procurement Contract for Lot No. 4, a sum that should be subtracted from the amount claimed on the basis of said Amendment. This document was accepted by the Tribunal and transmitted to the Respondent by priority mail.[129]

232. Thus, the amount of the Claimant's claims on the basis of the delinquent receivables for the Procurement Contract for Lot 4, as is clear from the Claimant's pleadings, is the amount stipulated in the Amendment No. 1 to the Public Procurement Contract for Lot 4, which reiterates the amount of the delinquent counts, i.e., Counts Nos. 14, 15, 16 and 17[130] after deduction of the amount paid by the KFAED after the conclusion of the Amendment on October 4, 2010.[131]

233. Furthermore, the amount claimed in Guinean Francs by the Claimant pursuant to the Procurement Contract for Lot 4 was also reconsidered by the Claimant during the examination of its Chief Executive Officer and Chief Financial Officer during the Final Hearing for Pleadings and is now the amount of GNF 96,939,178 instead of GNF 586,885,339.[132]

234. The Arbitral Tribunal, during the Final Hearing, deemed it necessary to conduct a verification of the amounts paid and not paid by the funders on the basis of Count Nos. 1 through 17. To said end, the Claimant and the Chief Executive Officer and Chief Financial Officer of CSE established, with respect to the Procurement Contract for Lot 4, the connection between each count **(Exhibits Nos. 5, 11, and 12)** and the proof of the bank wire transfer received **(Exhibits Nos. 2, 3, 4, 7, 8, 9, and 10).** It proved to be the case that the unpaid counts for Lot 4 are Counts Nos. 14, 15, 16, and 17 in the amount of EUR 3,470,475.73.[133]

235. The Arbitral Tribunal verified each figure related to each count and verified the transfers that were made by the funders and received by the Claimant in its Account No. 17722–00001 at Crédit Commercial de France (CCF), the account stipulated in Article 4 of the Procurement Contract for Lot 4.[134]

---

[128] Transcript of the Hearing held on February 20, 2018, p. 31 para. 22 through 31 : "*Mr. Gueye -- the sum is 3,470,475.73.*"

[129] Bank statement from LCL bank dated 4/10/2010, justifying the payment by the KFAED of the amount of EUR 190,991.11 cf., correspondence from the Claimant dated October 25, 2017; Testimony of the Chief Executive Officer and the Chief Financial Officer de la CSE, p. 2; transcript of the Hearing held on February 20, 2018, p. 30 para. 18 through 24.

[130] Transcript of the Hearing held on February 19, 2018, p. 25 para. 7 through 9 "Mr. Gueye : *the amount that you find in the amendment is precisely the amount of the count of the delinquent receivables. They are the unpaid counts denominated in Euros that are in the amendment, and we wanted to prove them.*"

[131] Bank statement from LCL bank dated 4/10/2010, proving the payment by the KFAED of the amount of EUR 190,991.11; cf., correspondence from the Claimant dated October 25, 2017; Testimony of the Chief Executive Officer and Chief Financial Officer of CSE, p. 2; Transcript of the Hearing held on February 20, 2018, p. 30 paras. 18 through 24.

[132] Transcript of the Hearing held on February 19, 2018, p. 51, paras. 9 through 18.

[133] Transcript of the Hearing held on February 20, 2018, p. 31, paras. 22 through 31 : "*Mr. Gueye -- the sum is 3,470,475.73.*"

[134] Transcript of the Hearing held on the February 20, 2018:
   – Bank wire transfers made by the SFD with respect to Lot No. 4, page 22, paras. 31 et seq.
   – Bank wire transfers made by the BADEA with respect to Lot No. 4, page 25, paras. 23 et seq.
   – Bank wire transfers made by OPEC with respect to Lot No. 4, page 26, paras. 44 et seq.

236.    The Arbitral Tribunal established the result of this exercise in the tables below, reflecting the amounts paid and not paid by each of the Funders with respect to each of the counts.[135]

➢    The amounts paid by the KFAED to the Claimant on the basis of the Procurement Contract for Lot 4:

| LOT 4 | | KFAED[136] | AMOUNT PAID | EVIDENCE[137] | WIRE TRANSFER DATE | VALUE DATE | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| Dep. No. | IA[138] | 436,496.00 | 436,372.08 | Statement dated May 01-31, 2005 | 05/25/2005 | 25/5/2005 | IA (Initial Advance) DEP. |
| Dep. No. | 1 | 261,642.11 | 261,542.11 | Statement dated February 01-28, 2006 | 2/1/2006 | 2/1/2006 | DEP. I |
| Dep. No. | 2 | 89,506.47 | 89,406.47 | Statement dated April 01-30, 2006 | 2/1/2006 | 2/1/2006 | DEP. 2 |
| Dep. No. | 3 | 82,472.05 | 612,877.30 | Statement dated January 01-31, 2007 | 01/24/2007 | 01/24/2007 | DEPS. 3, 4, 5, 6, and 7 for Lot 4 |
| Dep. No. | 4 | 77,705.35 | 612,877.30 | Statement dated January 01-31, 2007 | 01/24/2007 | 01/24/2007 | DEPS. 3, 4, 5, 6, and 7 for Lot 4 |
| Dep. No. | 5 | 172,611.92 | 612,877.30 | Statement dated January 01-31, 2007 | 01/24/2007 | 01/24/2007 | DEPS. 3, 4, 5, 6, and 7 for Lot 4 |
| Dep. No. | 6 | 179,527.27 | 612,877.30 | Statement dated January 01-31, 2007 | 01/24/2007 | 01/24/2007 | DEPS. 3, 4, 5, 6, and 7 for Lot 4 |
| Dep. No. | 7 | 100,560.71 | 612,877.30 | Statement dated January 01-31, 2007 | 01/24/2007 | 01/24/2007 | DEPS. 3, 4, 5, 6, and 7 for Lot 4 |
| Dep. No. | 8 | 90,710.66 | 331,132.18 | Statement dated January 01-31, 2007 | 01/17/2007 | 01/17/2007 | DEPS. 8 and 9 for Lot 4 and 18 and 19 for Lot 5 |
| Dep. No. | 9 | 54,942.10 | 331,132.18 | Statement dated January 01-31, 2007 | 01/17/2007 | 01/17/2007 | DEPS. 8 and 9 for Lot 4 and 18 and 19 for Lot 5 |
| Dep. No. | 10 | 136,828.11 | 136,728.11 | Statement dated October 01-31, 2007 | 10/04/2007 | 10/04/2007 | DEP. 10 for Lot 4 |
| Dep. No. | 11 | 148,130.76 | 1,062,681.74 | Statement dated September 04-29, 2007 | 09/20/2007 | 09/20/2007 | DEPS. 11, 12 and 13 for Lot 4 and DEPS. |

–    Bank wire transfers made by the KFAED with respect to Lot No. 4, page 20, paras. 41 et seq.

[135]    It must be noted that the minimal difference between the amounts claimed and the transfers is explained by the bank fees caused by the bank wire transfers; cf., Transcript of the Hearing held on February 19, 2018, p. 34 para. 10 "*it proves to be the case, on the other hand, that there are fees caused by the bank wire transfers, which have also been taken into account*"; Transcript of the Hearing held on February 19, 2018, p. 34, paras. 32 through 43.

[136]    Exhibit no. 12 attached to the correspondence from the Claimant dated October 25, 2017 entitled "Counts sent by the Claimant to the Respondent and the Payment Thereof".

[137]    Exhibit no. 3 attached to the correspondence from the Claimant dated October 25, 2017 entitled "Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by the KFAED for the Tombo-Gbessia Roadwork, LOT 4."

[138]    Initial Advance, cf., Abbreviations; Exhibit No. I and Exhibit No. 5 attached to the correspondence from the Claimant dated October 25, 2017: correspondence from CSE to the Minister of Public Works and Transportation of the Republic of Guinea dated February 22, 2005.

| | | | | | | | 21 22 and 23 For Lot 5 |
|---|---|---|---|---|---|---|---|
| Dep. No. | 12 | 191,903.31 | 1,062,681.74 | Statement dated September 04-29, 2007 | 09/20/2007 | 09/20/2007 | DEPS. 11, 12 and 13 for Lot 4 and DEPS. 21, 22 and 23 for Lot 5 |
| Dep. No. | 13 | 91,100.70 | 1,062,681.74 | Statement dated September 04-29, 2007 | 09/20/2007 | 09/20/2007 | DEPS. 11, 12, and 13 for Lot 4 and DEPS. 21, 22, and 23 for Lot 5 |
| Dep. No. | 14 | 166,629.17 | Not Paid | | | | |
| Dep. No. | 15 | 528,568.63 | Not Paid | | | | |
| Dep. No. | 16 | 697,237.21 | Not Paid | | | | |
| Dep. No. | 17 | 74,049.24 | Not Paid | | | | |

237.    It is evident from the table that the amounts not paid by the KFAED are the following counts:
-    Count No. 14 in the amount of EUR 166,629.17
-    Count No. 15 in the amount of EUR 528,568.63
-    Count No. 16 in the amount of EUR 697,237.21
-    Count No. 17 in the amount of EUR 74,049.24

238.    Thus, the total amounts unpaid by the KFAED on the basis of Count Nos. 14, 15, 16, and 17 for Lot 4 is **EUR 1,466,484.25.**

➢    The amounts paid by the SFD to the Claimant on the basis of the Procurement Contract for Lot 4:

| LOT 4 | | FSD[139] | AMOUNT PAID | EVIDENCE[140] | WIRE TRANSFER DATE | VALUE DATE | |
|---|---|---|---|---|---|---|---|
| Dep. No. | SP | 327,372.00 | 327,248.08 | Statement dated May 01-31. 2005 | 05/12/2005 | 05/12/2005 | IA DEP. |
| Dep. No. | 1 | 196,231.59 | 196,231.59 | Statement dated February 01-28, 2006 | 2/2/2006 | 2/2/2006 | DEP. 1 for Lot 4 |
| Dep. No. | 2 | 67,129.85 | 128,983.89 | Statement dated June 01-30, 2006 | 06/29/2006 | 06/29/2006 | DEPS. 2 and 3 for Lot 4 |
| Dep. No. | 3 | 61,854.04 | 128,983.89 | Statement dated June 01-30, 2006 | 06/29/2006 | 06/29/2006 | DEPS. 2 and 3 for Lot 4 |
| Dep. No. | 4 | 58,279.01 | 58,279.01 | Statement dated July 01-21, 2006 | 07/20/2006 | 07/20/2006 | DEP. 4 for Lot 4 |
| Dep. No. | 5 | 129,458.94 | 204,879.47 | Statement dated September 01-30, 2006 | 09/20/2006 | 09/20/2006 | DEPS. 5 and 7 for Lot 4 |

[139]    Exhibit no. 12 attached to the correspondence from the Claimant dated October 25, 2017, entitled "Counts sent by the Claimant to the Respondent and the Payment Thereof".
[140]    Exhibit No. 3 attached to the correspondence from the Claimant dated October 25, 2017, entitled "Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by the KFAED for the Tombo-Gbessia Roadwork, LOT 4".

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dep. No. | 6 | 134,645.45 | 134,645.45 | Statement dated August 01-31, 2006 | 08/31/2006 | 08/31/2006 | DEP. 6 for Lot 4 |
| Dep. No. | 7 | 75,420.53 | 204,879.47 | Statement dated September 01-30, 2006 | 09/20/2006 | 09/20/2006 | DEPS. 5 and 7 for Lot 4 |
| Dep. No. | 8 | 68,033.00 | 109,239.57 | Statement dated November 01-30, 2006 | 11/30/2006 | 11/30/2006 | DEPS. 8 and 9 for Lot 4 |
| Dep. No. | 9 | 41,206.57 | 109,239.57 | Statement dated November 01-30, 2006 | 11/30/2006 | 11/30/2006 | DEPS. 8 and 9 for Lot 4 |
| Dep. No. | 10 | 102,621.09 | 243,289.31 | Statement dated May 01-31, 2007 | 05/17/2007 | 05/17/2007 | DEP. 10 for Lot 4 and DEP. 20 for Lot 5 |
| Dep. No. | 11 | 111,098.07 | 240,304.78 | Statement dated May 01-31, 2007 | 05/30/2007 | 05/30/2007 | DEP. 11, for Lot 4 and DEP. 21 for Lot 5 |
| Dep. No. | 12 | 143,927.48 | 143,827.48 | Statement dated June 01-30, 2007 | 06/14/2007 | 06/14/2007 | DEP. 12 for Lot 4 |
| Dep. No. | 13 | 68,325.53 | 230,111.15 | Statement dated September 04-28, 2007 | 09/13/2007 | 09/13/2007 | DEPS. 13 for Lot 4 and 23 for Lot 5 |
| Dep. No. | 14 | 124,971.88 | 124,871.88 | Statement dated November 01-30, 2007 | 11/15/2007 | 11/15/2007 | DEP. 14 for Lot 4 |
| Dep. No. | 15 | 396,426.47 | Not Paid | | | | |
| Dep. No. | 16 | 522,927.91 | Not Paid | | | | |
| Dep. No. | 17 | 55,536.93 | Not Paid | | | | |

239.   It is evident from the table that the amounts not paid by the SFD are the following counts:
   − Count No. 15 in the amount of EUR 396,426.47
   − Count No. 16 in the amount of EUR 522,927.91
   − Count No. 17 in the amount of EUR 55,536.93

240.   Thus, the total amounts not paid by the SFD on the basis of Count Nos. 15, 16, and 17 for Lot 4 is **EUR 974,891.31.**

➢   The amounts paid by BADEA to the Claimant on the basis of the Procurement Contract for Lot 4:

| LOT 4 | | BADEA[141] | AMOUNT PAID | EVIDENCE[142] | WIRE TRANSFER DATE | PAYMENT DATE | |
|---|---|---|---|---|---|---|---|
| Dep. No. | SP | 257,019.12 | 256,813.70 | Statement dated June 01-30, 2005 | 01/06/2005 | 01/06/2005 | IA DEP. |
| Dep. No. | 1 | 154,061.03 | 154,061.03 | Statement dated February 01-28, 2006 | 02/23/2006 | 02/23/2006 | DEP. 1 for Lot 4 |
| Dep. No. | ? | 52,703.51 | 262,083.98 | Statement dated May 01-31, 2006 | 05/05/2006 | 05/05/2006 | DEP. 2 for Lot 4 and DEPS. 11 and 12 for Lot 5 |

---

[141]   Exhibit no. 12 attached to the correspondence from the Claimant dated October 25, 2017 entitled "Counts sent by the Claimant to the Respondent and the Payment Thereof".
[142]   Exhibit No. 2 attached to the correspondence from the Claimant dated October 25, 2017 entitled "Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by BADEA for the Tombo-Gbessia Roadwork, LOT 4."

| Dep. No. | 3 | 48,561.48 | 101,353.73 | Statement dated June 01-30, 2006 | 06/23/2006 | 06/23/2006 | DEP. 3 for Lot 4 and DEP. 13 for Lot 5 |
|---|---|---|---|---|---|---|---|
| Dep. No. | 4 | 45,754.74 | 45,754.74 | Statement dated June 01-30, 2006 | 06/23/2006 | 06/23/2006 | DEP. 4 for Lot 4 |
| Dep. No. | 5 | 101,637.96 | 101,637.96 | Statement dated August 01-31, 2006 | 8/8/2006 | 8/8/2006 | DEP. 5 for Lot 4 |
| Dep. No. | 6 | 105,709.88 | 186,205.00 | Statement dated September 01-30, 2006 | 09/11/2006 | 09/11/2006 | DEPS. 6 for Lot 4 and 16 for Lot 5 |
| Dep. No. | 7 | 59,212.51 | 122,399.44 | Statement dated September 01-30, 2006 | 09/21/2006 | 09/21/2006 | DEP. 7 for Lot 4 and DEP. 17 for Lot 5 |
| Dep. No. | 8 | 53,412.57 | 195,037.30 | Statement dated December 01-31, 2006 | 12/19/2006 | 12/19/2006 | DEPS. 8 and 9 Lot for 4 and 18 and 19 for Lot 5 |
| Dep. No. | 9 | 32,351.20 | 195,037.30 | Statement dated December 01-31, 2006 | 12/19/2006 | 12/19/2006 | DEPS. 8 and 9 For Lot 4 and 18 and 19 for Lot 5 |
| Dep. No. | 10 | 80,567.61 | 292,445.88 | Statement dated September 04-28, 2007 | 09/04/2007 | 09/04/2007 | DEP. 10 for Lot 4 and DEPS. 20 and 21 for Lot 5 |
| Dep. No. | 11 | 87,222.88 | 87,222.88 | Statement dated November 01-30, 2007 | 11/09/2007 | 11/09/2007 | DEP. 11 for Lot 4 |
| Dep. No. | 12 | 112,997.18 | 437,069.19 | Statement dated September 04-28, 2007 | 09/07/2007 | 09/07/2007 | DEPS. 12 and 13 for Lot 4 and 22, 23 for Lot 5 |
| Dep. No. | 13 | 53,642.24 | 437,069.19 | Statement dated September 04-28, 2007 | 09/07/2007 | 09/07/2007 | DEPS. 12 and 13 for Lot 4 and DEPS. 22 and 23 for Lot 5 |
| Dep. No. | 14 | 98,115.18 | Not Paid | | | | |
| Dep. No. | 15 | 311,233.65 | Not Paid | | | | |
| Dep. No. | 16 | 410,549.67 | Not Paid | | | | |
| Dep. No. | 17 | 43,601.93 | Not Paid | | | | |

241.    It is evident from the table that the amounts not paid by the BADEA are the following counts:
    –   Count No. 14 in the amount of EUR 98,115.18
    –   Count No. 15 in the amount of EUR 311,233.65
    –   Count No. 16 in the amount of EUR 410,549.67
    –   Count No. 17 in the amount of EUR 43,601.93

242. Thus, the total amounts not paid by BADEA on the basis of Counts Nos. 14, 15, 16, and 17 for Lot 4 is **EUR 863,500.43.**

➤ The amount paid by OPEC to the Claimant on the basis of the Procurement Contract for Lot 4:

| LOT 4 | | OPEC[143] | AMOUNT PAID | EVIDENCE[144] | WIRE TRANSFER | VALUE DATE | |
|---|---|---|---|---|---|---|---|
| Dep. No. | IA | 93,718.26 | 220,871.81 | Statement dated October 01-31, 2005 | 10/04/2005 | 10/05/2005 | IA DEP. and DEPS. 3 and 4 for Lot 5 |
| Dep. No. | 1 | 56,176.10 | 98,141.16 | Statement dated March 01-31, 2006 | 03/21/2006 | 03/24/2006 | DEP. 1 for Lot 4 and DEP. 11 for Lot 5 |
| Dep. No. | 2 | 19,217.56 | 53,531.37 | Statement dated April 01-30, 2006 | 04/24/2006 | 04/25/2006 | DEP. 2 for Lot 4 and DEP. 10 for Lot 5 |
| Dep. No. | 3 | 17,707.23 | 36,957.15 | Statement dated June 01-30, 2006 | 06/16/2006 | 06/16/2006 | DEP. 3 for Lot 4 and DEP. 13 for Lot 5 |
| Dep. No. | 4 | 16,683.80 | 16,683.80 | Statement dated July 03-22, 2006 | 07/04/2006 | 07/04/2006 | DEP. 4 for Lot 4 |
| Dep. No. | 5 | 37,060.79 | 65,627.08 | Statement dated August 01-31, 2006 | 08/04/2006 | 08/04/2006 | DEP. 5 for Lot 4 and DEP. 14 for Lot 5 |
| Dep. No. | 6 | 38,545.56 | 101,334.47 | Statement dated September 01-30, 2006 | 09/25/2006 | 09/25/2006 | DEP. 6 for Lot 4 and DEPS. 15 and 16 for Lot 5 |
| Dep. No. | 7 | 21,590.98 | 44,631.17 | Statement dated September 01- 30, 2006 | 09/29/2006 | 09/29/2006 | DEP. 7 for Lot 4 and DEP. 17 for Lot 5 |
| Dep. No. | 8 | 19,476.11 | 71,117.50 | Statement dated January 01-31, 2007 | 01/26/2007 | 01/26/2007 | DEPS. 8 and 9 for Lot 4 and 18 and 18 for Lot 5 |
| Dep. No. | 9 | 11,796.39 | 71,117.50 | Statement dated January 01-31, 2007 | 01/26/2007 | 01/26/2007 | DEPS. 8 and 9 for Lot 4 and DEPS. 18 and 18 [sic] for Lot 5 |
| Dep. No. | 10 | 29,377.80 | 138,440.66 | Statement dated September 04-28, 2007 | 09/13/2007 | 09/13/2007 | DEPS. 10 and 11 for Lot 4 and DEP. 20 and 21 for Lot 5 |
| Dep. No. | 11 | 31,804.55 | 138,440.66 | Statement dated September 04-28, 2007 | 09/13/2007 | 09/13/2007 | DEPS 10 and 11 for Lot 4 and DEPS. 20 and 21 for Lot 5 |
| Dep. No. | 12 | 41,202.77 | 93,467.30 | Statement dated September 04-28, 2007 | 09/24/2007 | 09/24/2007 | DEP. 12 for Lot 4 and DEP. 22 for Lot 5 |
| Dep. No. | 13 | 19,559.86 | 190,401.57 | Statement dated December 01-31, 2007 | 12/10/2007 | 12/10/2007 | DEPS. 13 and 14 for Lot 4 and DEPS. 23 and 24 for Lot 5 |
| Dep. No. | 14 | 35,776.26 | 190,401.57 | Statement dated December 01-31, 2007 | 12/10/2007 | 12/10/2007 | DEPS. 13 and 14 for Lot 4 and DEPS. 23 and 24 for Lot 5 |
| Dep. No. | 15 | 113,486.79 | 113,486.79 | Statement dated May 01-31, 2008 | 05/08/2008 | 05/08/2008 | DEP. 15 for Lot 4 |
| Dep. No. | 16 | 149,700.93 | Not Paid | | | | |

---

[143]   Exhibit No. 12 attached to the correspondence from the Claimant dated October 25, 2017 "Counts sent by the Claimant to the Respondent and the Payment of Them".

[144]   Exhibit No. 4 attached to the correspondence from the Claimant dated October 25, 2017 "Bank Statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by BADEA for the Tombo-Gbessia Roadwork, Lot 4".

| Dep. No. | 17 | 15,898.81 | Not Paid | | | | |
|---|---|---|---|---|---|---|---|

243.    It is evident from the table that the amounts not paid by OPEC are the following:
   - Count No. 16 in the amount of EUR 149,700.93
   - Count No. 17 in the amount of EUR 15,898.81

244.    Thus, the total amounts not paid by OPEC on the basis of Counts Nos. 16 and 17 for Lot 4 is **EUR 165,599.74.**

245.    Furthermore, it is clear from the tables above that Claimant has provided proof that Counts Nos. 1 through 13 have been paid and that the amounts of the delinquent receivables denominated in Euros are as follows:

**LOT 4**

| Funder | Delinquent Receivables Denominated in Euros |
|---|---|
| KFAED (Counts Nos. 14, 15, 16, and 17) | 1,466,484.25 |
| SFD (Counts Nos. 15, 16, and 17) | 974,891.31 |
| BADEA (Counts Nos. 14, 15, 16, and 17) | 863,500.43 |
| OPEC (Counts Nos. 16 and 17) | 165,599.74 |
| **Total Delinquent Receivables** | **EUR 3,470,475.73** |

246.    The Tribunal thus notes that the amount of the delinquent receivables claimed by the Claimant after verification of the counts and of the bank wire transfers is a sum of **EUR 3,470,475.73.** [145] That amount corresponds to the amount stipulated in the Amendment after deduction of the amount of EUR 190,991.11 received from the KFAED on October 14, 2010. In compliance with Article 5 of the Amendment, said amount stipulated in the Amendment was to be paid by the funders on specific due dates in four quarterly installments in 2010. The payments were not made by the Respondent.

247.    With regard to the amount of the delinquent receivables denominated in Guinean Francs claimed by the Claimant in the amount de **GNF 96,939,178:** [146] the Claimant maintained during the Final Hearing for Pleadings that the unpaid amount claimed on the basis of Count No. 16 in the amount

---

[145] Transcript of the Hearing held on February 20, 2018, p. 31, paras. 22 through 31: "*Mr. Gueye -- the sum is 3,470,475.73.*"
[146] Transcript of the Hearing held on February 19, 2018, p. 51, paras. 9 through 17.

of GNF 40,518,793 is related to construction work that was performed,[147] while the amount of the delinquent receivable on the basis of Count No. 17 of GNF 56,420,385 is related to the holdback.[148]

248. The Claimant, however, has not submitted to the Tribunal the evidence proving the claim for these amounts denominated in Guinean Francs. The only documents submitted for the case file are Counts Nos. 16 and 17. In examining said counts, the Tribunal was not able, with respect to Count No. 16, to identify the nature of the construction work undertaken by the Claimant corresponding to the amount claimed of GNF 40,518,793 GNF. With regard to Count No. 17 in the amount of GNF 56,420,385 related to the holdback, the Arbitral Tribunal has not been able to verify the legitimacy of these amounts by examination of the exhibits submitted by the Claimant.

249. In addition, the Tribunal refers to the confirmation by the Claimant during the Final Hearing for Pleadings reiterated in its written submissions of the fact that the amount of the claim for the delinquent receivables involves the amounts noted in the Amendments on the basis of Article 4 of Amendment No. 1 regarding Lot 4, which is denominated in Euros. No provisions in the Amendment refer to payments that were required to be made in Guinean Francs. Therefore, the Tribunal has determined that the Claimant has not proven the legitimacy of its claims denominated in Guinean Francs either contractually or by the submission of evidence.

250. Moreover, the Tribunal refers here to Article 801 of the Guinean Civil Code, which stipulates the following:

*"As a general rule, it is the plaintiff, that is, the person who institutes a legal proceeding, who has the burden of proof.*
*However, if the defendant (or respondent), that is, the person against whom the action is directed, has to assert a defense argument against his adversary, it is then to him that the burden of proof shall pass."[149]*

251. Thus, it is clear from these provisions that the burden of proof is incumbent upon the Plaintiff (or Claimant) in Guinean law. Thus, any person who deems that he is the creditor of an obligation must provide proof thereof, and any person who deems that he has discharged an obligation must provide the proof thereof.

---

[147]   Transcript of the Hearing held on February 19, 2018, p. 52, paras. 9 through 10: "*Mr. Gu[e]ye: This amount, in Count No. 16, is construction work. There is construction work. That is construction work that was executed.*"

[148]   Transcript of the Hearing held on February 19, 2018, p. 53, para. 31: "*Mr. Gueye: Count No. 17 is mainly composed of the holdback.*"

[149]   Correspondence from the Claimant dated March 20, 2018 with copies of the Civil Code and Code of Civil Procedure of Guinea attached.

252. The Claimant contributed proof of the payment of Counts Nos. 1 through 13 for the Procurement Contract for Lot 4. It has, moreover, provided proof that the counts mentioned in the table in paragraph 238 above in a total amount of **EUR 3,470,475.73** have remained unpaid.

253. The Claimant has not, however, provided proof of its right to the payment of the sums denominated in Guinean Francs claimed on the basis of Counts Nos. 16 and 17.

254. **Therefore, the Arbitral Tribunal has determined, after verification of the counts and of the bank wire transfers, that the Claimant is entitled to receive the amount of the delinquent receivables denominated in Euros of a total of EUR 3,470,475.73, and is dismissing the Claimant's claim for the payment of the sum of GNF 96,939,178 related to the amount of the delinquent receivables denominated in Guinean Francs on the basis of Counts Nos. 16 and 17 because of lack of proof.**

<u>**2-**</u>   <u>**With respect to the claims related to the Procurement Contract for Lot 5:**</u>

255. The Arbitral Tribunal has prepared, with regard to the Procurement Contract for Lot 5, the following summary table:

| Procurement Contract for LOT No. 5 | | | |
|---|---|---|---|
| <u>**Amount of the Procurement Contract** with respect to Lot No. 5</u> | <u>**Amount in Amendment No. 1** with respect to Lot No. 5</u> | <u>**Sums Claimed** with respect to Lot No. 5 (interest not included)</u> | <u>**Table Summarizing the Arrears (Exhibit No. 6)** (interest non included)</u> |
| *Amount of the procurement contract excluding taxes* | GNF 31,396,026,926 | | | |
| *Amount in foreign currency (86.82%)* | GNF 27,258,030,577.20 *(i.e., approximately EUR 13.868.054,083 according to the contractual exchange rate EUR 1 = GNF 1,965.5267)* | | | |
| *Amount in GNF (13.18%)* | GNF 4,137,996,348.85 | | | |
| ***Amount of the Taxes*** | **GNF 7,350,463,604** | | | |
| **Total Amount Incl. Taxes** | **GNF 38,746,490,530** | **EUR 3,897,91.11** | | |
| Portion in **foreign currency (86.82%)** | **GNF 33,639,703,078.10** *(i.e., approximately **EUR 17,114.854.30** according to the contractual exchange rate EUR 1 = GNF 1,965.5267)* | | Principal amounts of delinquent receivables/portion denominated in **foreign currency** | **EUR 3,897,891.11** | Principal amounts of delinquent receivables/portion denominated in **foreign currency** | **EUR 3,897,891** (amount of delinquencies beginning May 31, 2007) |

78

| Portion in **GNF** (13.18%) | GNF 5,106,787,451.85 *(i.e., approximately EUR 2,598,177.60 according to the contractual exchange rate EUR 1 = GNF 1,965.5267)* | | Principal amounts of delinquent receivables/portion in **GNF** | GNF 112,780,322 | Principal amounts of delinquent receivables/portion in **GNF** | GNF 112,780,617 (Amounts of delinquencies beginning July 31, 2005) |
|---|---|---|---|---|---|---|
| Total in foreign currency *(for information purposes and according to the contractual exchange rate EUR 1 = GNF 1,965.5267)* | **Approximately EUR 19,713,031.90** | | | | | |

256. The Arbitral Tribunal notes that the unpaid amount claimed in Euros by the Claimant on the basis of delinquent receivables for the Procurement Contract for Lot 5 is the amount stipulated in Amendment No. 1 to said Procurement Contract and is reflected in the unpaid Counts Nos. 24, 25, 26, and 27 distributed among the Funders in the following manner: [150]

  – EUR 150,765.46 for OPEC.
  – EUR 121,403.69 for BADEA.
  – [EUR] 1,734,651.60 for the KFAED
  – [EUR] 991,070.47 for the SFD.

257. Article 1 of the Amendment to the Procurement Contract for Lot 5 [151] stipulates that "*the purpose of this amendment is to assume responsibility for the payment of the costs related to the factors that generated the funding gap for Lot 5 for the Tombo-Gbessia project (revision of the prices, exceeding of the contractually stipulated time limit, depreciation of the US dollar with respect to the Euro)*" and that Article 2 stipulates that "*the General [Administrative] Terms and Conditions of the Procurement Contract shall remain fully applicable except the modification stipulated in the Special [Administrative] Terms and Conditions of the Contract*".

258. The amount indicated in the Amendment is stipulated in Article 4 of the Amendment to the Procurement Contract for Lot 5,[152] which stipulates the following: "*the total amount indicated in Amendment No. 1 resulting from the analysis of the funding gap is: Three Million Eight Hundred Ninety-Seven Thousand Eight Hundred Ninety-One Euros and Eleven Cents (EUR 3,897,891.11).*"

259. Article 5 of the aforementioned Amendment stipulates that: "[T]*he terms and conditions of payment shall be as follows:*

  – *SFD: EUR 383,854.57*
  – *OPEC: EUR 104,407.49*

---

[150] Transcript of the Hearing held on February 20, 2018, p. 32,  paras. 37 through 43 and p. 33, paras. 1 through 4 "*Mr. Ndiaye : With respect to Lot No. 5, the amount of the delinquent receivables is 3,897,891.22 and the [amount in] the amendment is 3,897,891.11 ... "150,765.46  for OPEC, 1,[0]21,403.69 for BADEA, 1,734,651.60 for the Kuwaiti Fund, for the KFAED, and 991,070.47 for the Saudi Fund*".

[151] Exhibit No. 14 submitted in the correspondence from the Claimant dated October 25, 2017; it is also Exhibit No. 4 of the Request for Arbitration and Exhibit No. D4 of the Statement of Claim.

[152] Exhibit no. 14 submitted in the correspondence from the Claimant dated October 25, 2017; it is also Exhibit No. 4 of the Request for Arbitration and Exhibit No. D4 of the Statement of Claim.

> – *Guinean NDB: EUR 3,409,629.06, in accordance with the following payment schedule:*
>   - *First quarter of 2010: EUR 852,407.26*
>   - *Second quarter of 2010: EUR 852,407.26*
>   - *Third quarter of 2010: EUR 852,407.26*
>   - *Fourth quarter of 2010: EUR 852,407.26"*

260.   Article 6 of said Amendment stipulates that "[T]*he prices shall be firm and not subject to revision."*

261.   Amendment No. 1 of the Procurement Contract for Lot No. 5 is valid and enforceable since it was signed by the Parties involved and approved by the Guinean Minister of the Economy and Finance as is evident from the signatures on the Amendment and the word "approved" as well as from the stamp.[153]

262.   The Arbitral Tribunal notes that the Claimant asserts that the delinquent amount claimed in Guinean Francs GNF 112,780,322 is related to the holdback in Count No. 27.[154]

263.   The Arbitral Tribunal, during the Final Hearing for Pleadings, deemed it necessary to conduct a verification of the amounts paid and not paid by the funders on the basis of Counts Nos. 1 through 27. To that end, the Claimant and the Chief Executive Officer and Chief Financial Officer de la CSE established, for the Procurement Contract for Lot 5, the connection between each count **(Exhibit no. 5, 11 and 12)** and the proof of the bank wire transfer received **(Exhibit no. 2, 3, 4, 7, 8, 9 and 10).** It proves to be the case that the unpaid counts for Lot 5 are Counts Nos. 24, 25, 26, and 27 in an amount of EUR 3,897,891.12.[155]

264.   The Arbitral Tribunal has verified each figure related to each count and verified the transfers that were made by the funders as well as the receipt by the Claimant in its Account No. 17722–00001 at Crédit Commercial de France bank (CCF) as stipulated in Article 4 of the Procurement Contract for Lot 5.[156]

---

[153]   Article 10 of Amendment No. 1 of the Procurement Contract for Lot 5: "*this amendment shall be valid and enforceable only after it has been signed by the parties involved and has been approved by the Minister of the Economy and Finance.*".

[154]   Transcript of the Hearing held on February 19, 2018, p. 47, paras. 5 through 7: "*Mr. Gueye: this amount, which corresponds to the share of the Guinean Government in Count 27, has not been paid, and it corresponds to the holdback*"; p. 50, paras. 4 through 10.

[155]   Transcript of the Hearing held on February 20, 2018, p. 32, paras. 38 through 43, and p. 33, para. 1 through 4: [W]*ith respect to Lot No. 5, the amount of the delinquent receivables is 3,897,891.22 and the [amount in] the amendment is 3,897,891.11;* Transcript of the hearing held on February 20, 2018, p. 31, paras. 22 through 31: *"Mr. Gueye -- the sum is 3,470,475.73."*

[156]   Bank wire transfers made by the SFD with respect to Lot No. 5: Transcript of the Hearing held on February 20, 2018, p. 8, paras. 24 et seq.; bank wire transfers made by BADEA with respect to Lot No. 5: Transcript of the Hearing held on February 20, 2018, p. 13 paras. 14 et seq. and transcript of the Hearing held on February 19, 2018, p. 17 para. 37; bank wire transfers made by KFAED with respect to Lot No. 5: Transcript of the Hearing held on February 20, 2018, p. 17, paras. 9 et seq.; bank wire transfers made by OPEC with respect to Lot No. 5; Transcript of the Hearing held on February 19, 2018, p. 37, paras. 33 et seq.

265.     The Arbitral Tribunal has prepared the result of this exercise in the tables below, reflecting the amounts paid and unpaid by each of the Funders with respect to each of the counts.[157]

➤     <u>The amounts paid by OPEC to the Claimant with respect to Procurement Contract for Lot 5:</u>

| LOTS | | OPEC[158] | AMOUNT | EVIDENCE[159] | WIRE TRANSFER DATE | DATE DE VALUE | |
|------|------|------|------|------|------|------|------|
| Dep. No. | IA[160] | 174,908.08 | 174,908.08 | Statement dated March 01-31, 2005 | 03/30/2005 | 03/31/2005 | |
| Dep. No. | 1 | 31,232.91 | 31,208.99 | Statement dated December 01-31, 2004 | 12/27/2004 | 12/23/2004 | |
| Dep. No. | 2 | 57,392.88 | 57,392.88 | Statement dated December 01-31, 2005 | 01/04/2005 | 01/05/2005 | |
| Dep. No. | 3 | 65,436.61 | 220,871.81 | Statement dated October 01-31, 2005 | 10/04/2005 | 10/05/2005 | At the same time DEP. 4 for Lot 5 |
| Dep. No. | 4 | 61,716.94 | 220,871.81 | Statement dated October 01-31, 2005 | 10/04/2005 | 10/05/2005 | At the same time DEP. 3 for Lot 5 |
| Dep. No. | 5 | 107,279.19 | 312,995.35 | Statement dated December 01-31, 2005 | 12/07/2005 | 12/09/2005 | At the same time DEP. No. 5 for Lot 5 and No. 7 |
| Dep. No. | 6 | 96,684.21 | 312,995.35 | Statement dated December 01-31, 2005 | 12/07/2005 | 12/09/2005 | At the same time DEP. No. 5 for Lot 5 and No. 7 |
| Dep. No. | 7 | 55,087.98 | 312,995.35 | Statement dated December 01-31, 2005 | 12/07/2005 | 12/09/2005 | At the same time DEP. No. 5 for Lot 5 and No. 7 |
| Dep. No. | 8 | 53,943.97 | 312,995.35 | Statement dated December 01-31, 2005 | 12/07/2005 | 12/09/2005 | At the same time DEP. No. 5 for Lot 5 and No. 7 |
| Dep. No. | 9 | 42,721.86 | 42,721.86 | Statement dated December 01-31, 2005 | 12/27/2005 | 12/28/2005 | |
| Dep. No. | 10 | 34,313.81 | 53,531.37 | Statement dated April 01-30, 2006 | 04/24/2006 | 04/25/2006 | At the same time DEP. 2 for Lot 4 |
| Dep. No. | 11 | 41,965.06 | 98,141.16 | Statement dated March 01-31, 2006 | 03/23/2006 | 03/24/2006 | At the same time DEP. 1 for Lot 4 |
| Dep. No. | 12 | 34,382.47 | 34,382.47 | Statement dated April 01-30, 2006 | 04/27/2006 | 04/28/2006 | |
| Dep. No. | 13 | 19,249.02 | 36,957.15 | Statement dated June 01-30, 2006 | 06/16/2006 | 06/16/2006 | At the same time DEP. 3 for Lot 4 |
| Dep. No. | 14 | 28,566.29 | 65,627.08 | Statement dated August 01-30, 2006 | 08/04/2006 | 08/04/2006 | At the same time DEP. 5 for Lot 4 |
| Dep. No. | 15 | 33,437.36 | 101,334.47 | Statement dated September 01-31, 2006 | 09/25/2006 | 09/25/2006 | At the same time DEP. 16 for Lot 4 and DEP. 6 for Lot 4 |

---

[157]   It must be noted that the minimal difference that exists between the amounts claimed and the transfers is explained by the bank fees caused by the bank wire transfers. Cf., Transcript of the Hearing held on February 19, 2018, p. 34, para. 10: "*It happens, on the other hand, that there are fees caused by the bank wire transfers, which have also been taken into account*"; Transcript of the Hearing held on February 19, 2018, p. 34, paras. 32 through 43.

[153] Exhibit No. 12 attached to the correspondence from the Claimant dated October 25, 2017 entitled "Counts Sent by the Claimant to the Respondent and the Payment Thereof".

[159]   Exhibit No. 10 attached to the correspondence from the Claimant dated October 25, 2017 entitled "Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by OPEC for the Tombo-Gbessia Roadwork, LOT 5".

[160]   Exhibit No. 12 attached to the correspondence from the Claimant dated October 25, 2017: correspondence dated 09/19/2003 from CSE to the Guinean Ministry of Public Works.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dep. No. | 16 | 29,351.55 | 101,334.47 | Statement dated September 01-30, 2006 | 09/29/2006 | 09/29/2006 | At the same time DEP. 16 for Lot 4 and DEP. 6 for Lot 4 |
| Dep. No. | 17 | 23,040.19 | 44,631.17 | Statement dated September 01-30, 2006 | 09/29/2006 | 09/29/2006 | At the same time DEP. 7 for Lot 4 |
| Dep. No. | 18 | 29,055.63 | 71,117.50 | Statement dated January 01-30, 2007 | 01/26/2007 | 01/26/2007 | At the same time DEP. 19 for Lot 5 and DEPS. 8 and 9 for Lot 4 |
| Dep. No. | 19 | 10,789.37 | 71,117.50 | Statement dated January 01-30, 2007 | 01/26/2007 | 01/26/2007 | At the same time DEP. 19 for Lot 5 and DEPS. 8 and 9 for Lot 4 |
| Dep. No. | 20 | 40,269.72 | 138,440.66 | Statement dated September 04-29, 2007 | 09/13/2007 | 09/13/2007 | At the same time DEP. 21 for Lot 5 and DEPS. 20 and 21 for Lot 4 |
| Dep. No. | 21 | 36,988.59 | 138,440.66 | Statement dated September 04-29, 2007 | 09/13/2007 | 09/13/2007 | At the same time DEP. 21 for Lot 5 and DEPS. 20 and 21 for Lot 4 |
| Dep. No. | 22 | 52,264.63 | 93,467.30 | Statement dated September 04-29, 2007 | 09/24/2007 | 09/24/2007 | At the same time DEP. 12 for Lot 4 |
| Dep. No. | 23 | 41,231.29 | 190,401.57 | Statement dated December 01-31, 2007 | 12/10/2007 | 12/10/2007 | At the same time DEP. 24 for Lot 5 |
| Dep. No. | 24 | 88,721.72 | 190,401.57 | Statement dated December 01-31, 2007 | 12/10/2007 | 12/10/2007 | At the same time DEP. 24 for Lot 5 |
| Dep. No. | 25 | 211,432.84 | 132,952.72 | Statement dated February 01-29, 2008 | 02/29/2008 | 02/29/2008 | Partial payment DEP. 25 for Lot 5 - Balance EUR 78,480.12 |
| Dep. No. | 26 | 40,504.76 | Not Paid | | | | |
| Dep. No. | 27 | 31,780.58 | Not Paid | | | | |

266. It is evident from the table that the amounts not paid by OPEC are the following counts:

- Balance of Count No. 25 in the amount of EUR 78,480.12 (211,432.84 - 132,954.72).
- Count No. 26 in the amount of EUR 40,504.76.
- Count No. 27 in the amount of EUR 31,780.58.

267. Thus, the total amount not paid by OPEC on the basis of Counts Nos. 26 and 27 for Lot 5 is **EUR 150,765.46.**

➢  **The amounts paid by the SFD to the Claimant on the basis of the Procurement Contract for Lot 5:**

| LOT 5 | | SFD[161] | AMOUNT | EVIDENCE [162] | WIRE TRANSFER DATE | VALUE DATE | |
|---|---|---|---|---|---|---|---|
| Dep. No. | IA | 610,980.27 | 719,981.54 | Statement dated 01 to 31/10/2004 | 10/20/2004 | 10/21/2004 | IA and DEP. 1 for Lot 5 |
| Dep. No. | 1 | 109,101.27 | 719,981.54 | Statement dated 01 to 31/10/2004 | 10/20/2004 | 10/21/2004 | IA and DEP. 1 for Lot 5 |
| Dep. No. | 2 | 200,481.97 | 200,358.05 | Statement dated 01 to 31/12/2004 | 12/16/2004 | 12/16/2004 | Payment DEP. 2 |
| Dep. No. | 3 | 228,579.92 | 228,456.00 | Statement dated February 01-28, 2005 | 02/24/2005 | 02/24/2005 | Payment DEP. 3 |
| Dep. No. | 4 | 215,586.58 | 215,462.66 | Statement dated April 01-30, 2005 | 04/07/2005 | 04/07/2005 | Payment v 4 |
| Dep. No. | 5 | 374,742.38 | 374,718.46 | Statement dated July 01-31, 2005 | 07/29/2005 | 07/29/2005 | DEP. 5 payment |
| Dep. No. | 6 | 337,732.51 | 337,708.59 | Statement dated August 01-31, 2005 | 08/04/2005 | 08/04/2005 | Payment DEP. 6 |
| Dep. No. | 7 | 192,430.62 | 192,430.62 | Statement dated September 01-30, 2005 | 09/15/2005 | 09/15/2005 | Payment DEP. 7 |
| Dep. No. | 8 | 188,434.42 | 188,434.42 | Statement dated September 01-30, 2005 | 09/29/2005 | 09/29/2005 | Payment DEP. 8 |
| Dep. No. | 9 | 149,233.90 | 149,233.90 | Statement dated November 01-30, 2005 | 11/24/2005 | 11/24/2005 | Payment DEP. 9 |
| Dep. No. | 10 | 119,863.32 | 119,863.32 | Statement dated December 01-31, 2005 | 12/22/2005 | 12/22/2005 | DEP. 10 |
| Dep. No. | 11 | 146,590.27 | 266,693.40 | Statement dated June 01-30, 2006 | 06/29/2006 | 06/29/2006 | DEPS. 11 and 12 for Lot 5 |
| Dep. No. | 12 | 120,103.13 | 128,983.89 | Statement dated June 01-30, 2006 | 06/29/2006 | 06/29/2006 | DEPS. 11 and 12 for Lot 5 |
| Dep. No. | 13 | 67,242.88 | 67,242.88 | Statement from 03/07/2006 to 21/11/2006 | 07/20/2006 | 07/20/2006 | DEP. 13 |
| Dep. No. | 14 | 99,786.35 | 341,500.31 | Statement dated May 01-31, 2007 | 05/17/2007 | 05/17/2007 | At the same time DEP. 16 for Lot 5 and DEPS. 18 and 19 for Lot 15 |
| Dep. No. | 15 | 116,801.73 | 116,801.73 | Statement dated August 01-31, 2006 | 08/03/2006 | 08/03/2006 | DEP. 15 |
| Dep. No. | 16 | 102,529.39 | 341,500.31 | Statement dated May 01-31, 2007 | 05/17/2007 | 05/17/2007 | At the same time DEP. 16 for Lot 5 and DEPS. 18 and 19 for Lot 15 |
| Dep. No. | 17 | 80,482.85 | 80,482.85 | Statement dated November 01-30, 2006 | 11/30/2006 | 11/30/2006 | DEP. 17 |
| Dep. No. | 18 | 101,495.69 | 341,500.31 | Statement dated May 01-31, 2007 | 05/17/2007 | 05/17/2007 | At the same time DEP. 16 for Lot 5 and DEPS. 18 and 19 for Lot 15 |
| Dep. No. | 19 | 37,688.88 | 341,500.31 | Statement dated May 01-31, 2007 | 05/17/2007 | 05/17/2007 | At the same time DEP. 16 for Lot 5 and DEPS. 18 and 19 for Lot 15 |
| Dep. No. | 20 | 140,668.22 | 140,668.22 | Statement dated May 01-31, 2007 | 05/17/2007 | 05/17/2007 | DEP. 20 for Lot 5 |

---

[161]  Exhibit No. 12 attached to the correspondence from the Claimant dated October 25, 2017 entitled "Counts sent by the Claimant to the Respondent and the Payment Thereof".
[162]  Exhibit No. 9 attached to the correspondence from the Claimant dated October 25, 2017 entitled "Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by the FSAOUD for the Tombo-Gbessia Roadwork, LOT 5".

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dep. No. | 21 | 129,206.71 | 240,304.78 | Statement dated May 01-31, 2007 | 05/30/2007 | 05/30/2007 | DP21 Lot 5 and DP 11 Lot 4 |
| Dep. No. | 22 | 182,567.89 | 182,467.89 | Statement dated June 01-30, 2007 | 06/28/2007 | 06/28/2007 | DEP. 22 |
| Dep. No. | 23 | 144,027.10 | 230,111.15 | Statement dated September 04-28, 2007 | 09/13/2007 | 09/13/2007 | DP 23 Lot 5 and DP 13 of the Lot 4 |
| Dep. No. | 24 | 309,918.34 | 309,818.34 | Statement dated November 01-30, 2007 | 11/22/2007 | 11/22/2007 | DEP. 24 for Lot 5 |
| Dep. No. | 25 | 738,566.78 | | Statement dated February 01-28, 2005 | | | |
| Dep. No. | 26 | 141,489.23 | | Statement dated February 01-28, 2005 | | | |
| Dep. No. | 27 | 111,014.36 | | Statement dated February 01-28, 2005 | | | |

268.  It is evident from the table that the amounts not paid by the SFD are the following counts:
  −  Count No. 25 in the amount of EUR 738,566.78
  −  Count No. 26 in the amount of EUR 141,489.23
  −  Count No. 27 in the amount of EUR 111,014.36

269.  Thus, the total amounts unpaid by the SFD on the basis of Counts Nos. 25, 26, and 27 for Lot 5 is **EUR 991,070.37.**

➢  The amounts paid by BADEA to the Claimant on the basis of the Procurement Contract for Lot 5:

| LOT 5 | | BADEA[163] | AMOUNT PAID | EVIDENCE[164] | WIRE TRANSFER DATE | VALUE DATE | |
|---|---|---|---|---|---|---|---|
| Dep. No. | IA | 479,679.41 | 479,679.41 | Statement dated 28/11/2003 to 31/12/2003 | 12/19/2003 | 12/23/2003 | IA DEP. |
| Dep. No. | I | 85,655.20 | 85,655.20 | Statement dated April 01-30, 2004 | 04/06/2004 | 04/08/2004 | DEP. 1 |
| Dep. No. | 2 | 157,398.00 | 506,112.26 | Statement dated April 01-30, 2005 | 04/26/2005 | 04/26/2005 | DEPS. 2, 3, and 4 for Lot 5 |
| Dep. No. | 3 | 179,457.65 | 506,112.26 | Statement dated April 01-30, 2005 | 04/26/2005 | 04/26/2005 | DEPS. 2, 3, and 4 for Lot 5 |
| Dep. No. | 4 | 169,256.61 | 506,112.26 | Statement dated April 01-30, 2005 | 04/26/2005 | 04/26/2005 | DEPS. 2, 3, and 4 for Lot 5 |
| Dep. No. | 5 | 294,209.51 | 294,209.51 | Statement dated August 01-31, 2005 | 08/04/2005 | 08/04/2005 | DEP. 5 |
| Dep. No. | 6 | 265,153.13 | 265,153.13 | Statement dated August 01-31, 2005 | 08/18/2005 | 08/18/2005 | DEP. 6 |
| Dep. No. | 7 | 151,076.91 | 151,076.91 | Statement dated October 01-31, 2005 | 10/05/2005 | 10/05/2005 | DEP. 7 |

---

[163]  Exhibit no. 12 attached to the correspondence from the Claimant dated October 25, 2017 entitled "Counts sent by the Claimant to the Respondent and the Payment Thereof".
[164]  Exhibit no. 7 attached to the correspondence from the Claimant dated October 25, 2017 entitled "Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by BADEA for the Tombo-Gbessia Roadwork, LOT 5".

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dep. No. | 8 | 147,939.49 | 147,939.49 | Statement dated October 01-31, 2005 | 10/25/2005 | 10/25/2005 | DEP. 8 |
| Dep. No. | 9 | 117,163.25 | 117,163.25 | Statement dated November 01-30, 2005 | 11/28/2005 | 11/28/2005 | DEP. 9 |
| Dep. No. | 10 | 94,104.46 | 94,104.46 | Statement dated January 01-31, 2006 | 01/05/2006 | 01/05/2006 | DEP. 10 |
| Dep. No. | 11 | 115,087.74 | 262,083.98 | Statement dated May 01-31, 2006 | 05/05/2006 | 05/05/2006 | DEPS. 11 and 12 for Lot 5 and DEP. 2 for Lot 4 |
| Dep. No. | 12 | 94,292.73 | 262,083.98 | Statement dated May 01-31, 2006 | 05/05/2006 | 05/05/2006 | DEPS. 11 and 12 for Lot 5 and DEP. 2 for Lot 4 |
| Dep. No. | 13 | 52,792.25 | 101,353.73 | Statement dated June 01-30, 2006 | 06/23/2006 | 06/23/2006 | DEP. 13 for Lot [sic] AND DEP. 3 for Lot 4 |
| Dep. No. | 14 | 78,342.06 | 78,342.06 | Statement dated August 01-31, 2006 | 08/01/2006 | 08/01/2006 | DEP. 14 for Lot 5 |
| Dep. No. | 15 | 91,700.81 | 91,700.81 | Statement dated August 01-31, 2006 | 08/15/2006 | 08/15/2006 | DEP. 15 for Lot 5 |
| Dep. No. | 16 | 80,495.62 | 186,205.50 | Statement dated September 01-30, 2006 | 09/11/2006 | 09/11/2006 | DEP. 16 for Lot 5 AND 6 for Lot 4 |
| Dep. No. | 17 | 63,186.93 | 122,399.44 | Statement dated September 01-30, 2006 | 09/21/2006 | 09/21/2006 | DEP. 17 for Lot 5 AND THE DEP. 7 for Lot 4 |
| Dep. No. | 18 | 79,684.06 | 195,037.30 | Statement dated December 01-30, 2006 | 12/19/2006 | 12/19/2006 | DEPS. 18 and 19 for Lot 5 and DEPS. 8 and 9 for Lot 4 |
| Dep. No. | 19 | 29,589.47 | 195,037.30 | Statement dated December 01-30, 2006 | 12/19/2006 | 12/19/2006 | DEPS. 18 and 19 for Lot 5 and DEPS. 8 and 9 for LOT 4 |
| Dep. No. | 20 | 110,438.34 | 292,445.88 | Statement dated September 04-28, 2007 | 09/04/2007 | 09/04/2007 | DEPS. 20 and 21 for Lot 5 and 10 for Lot 4 |
| Dep. No. | 21 | 101,439.93 | 292,445.88 | Statement dated September 04-28, 2007 | 09/04/2007 | 09/04/2007 | DEPS. 20 and 21 for Lot 5 and 10 for Lot 4 |
| Dep. No. | 22 | 143,333.69 | 437,069.19 | Statement dated September 04-28, 2007 | 09/07/2007 | 09/07/2007 | DEPS. 22 and 23 for Lot 5 and DEPS. [sic] for Lot 4 |
| Dep. No. | 23 | 113,075.10 | 437,069.19 | Statement dated September 04-28, 2007 | 09/07/2007 | 09/07/2007 | DEPS. 22 and 23 Lot 5 and DEPS. [sic] for Lot 4 |
| Dep. No. | 24 | 243,316.28 | Not Paid | | | | |
| Dep. No. | 25 | 579,847.33 | Not Paid | | | | |
| Dep. No. | 26 | 111,082.92 | Not Paid | | | | |
| Dep. No. | 27 | 87,157.16 | Not Paid | | | | |

270.    It is evident from the table that the amounts not paid by the BADEA are the following counts:

- Count No. 24 in the amount of EUR 243,316.28
- Count No. 25 in the amount of EUR 579,847.33
- Count No. 26 in the amount of EUR 111,082.92
- Count No. 27 in the amount of EUR 87,157.16

271.    Thus, the total amount not paid by BADEA on the basis of Counts Nos. 24, 25, 26, and 27 for Lot 5 is **EUR 1,021,403.69.**

> ➤ The amount paid by the KFAED to the Claimant on the basis of the Procurement Contract for Lot 5:

| LOT 5 | | KFAED[165] | AMOUNT PAID | EVIDENCE[166] | BANK WIRE TRANSFER DATE | VALUE DATE | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| Dep. No. | SP | 814,640.36 | 814,540.36 | Statement dated 10/31/2003 to 11/28/2003 | 11/25/2003 | 11/27/2003 | IA DEP. |
| Dep. No. | 1 | 145,468.37 | 145,344.45 | Statement dated September 01-30, 2004 | 09/02/2004 | 09/01/2004 | DEP. 1 for Lot 5 |
| Dep. No. | 2 | 267,309.29 | 267,185.37 | Statement dated December 01-31, 2004 | 12/20/2004 | 12/20/2004 | DEP. 2 for Lot 5 |
| Dep. No. | 3 | 304,773.23 | 304,649.31 | Statement dated March 01-31, 2005 | 03/03/2005 | 03/03/2005 | DEP. 3 for Lot 5 |
| Dep. No. | 4 | 287,448.78 | 287,324.86 | Statement dated April 01-30, 2005 | 04/18/2005 | 04/18/2005 | DEP. 4 for Lot 5 |
| Dep. No. | 5 | 499,656.51 | 499,556.51 | Statement dated September 01-30, 2005 | 09/19/2005 | 09/19/2005 | DEP. 5 |
| Dep. No. | 6 | 450,310.01 | 450,310.01 | Statement dated September 01- [sic], 2005 | 09/28/2005 | 09/28/2005 | Amount of 274,774.73 and Balance of 175,425 paid on 03/25 |
| Dep. No. | 7 | 256,574.17 | 256,574.17 | Statement dated September 01-30, 2005 | 09/28/2005 | 09/28/2005 | Amount of 195,983.09.73 and Balance of 60,491 paid on 03/25 |
| Dep. No. | 8 | 251,245.89 | 251,245.89 | Statement dated October 01-31, 2005 | 10/20/2005 | 10/20/2005 | Amount of 189,150.46 and Balance of 61,995 paid on 03/25 |
| Dep. No. | 9 | 198,978.54 | 198,978.54 | Statement dated December 01-31, 2005 | 12/22/2005 | 12/22/2005 | Amount of 149,738.34 and Balance of 49,140 |
| Dep. No. | 10 | 159,817.76 | 355,171.46 | Statement dated March 01-31, 2006 | 03/15/2006 | 03/15/2006 | DEPS. 10 and 11 for Lot 5 |
| Dep. No. | 11 | 195,453.70 | 355,171.46 | Statement dated March 01-31, 2006 | 03/15/2006 | 03/15/2006 | DP 10 and 11 for Lot 5 |
| Dep. No. | 12 | 160,137.51 | 160,037.51 | Statement dated April 01-30, 2006 | 04/20/2006 | 04/20/2006 | DEP. 12 |
| Dep. No. | 13 | 89,657.17 | 622,357.59 | Statement dated January 01-31, 2007 | 01/29/2007 | 01/29/2007 | DEPS. 13 14 15 16 and 17 for Lot 5 |
| Dep. No. | 14 | 133,048.46 | 622,357.59 | Statement dated January 01-31, 2007 | 01/29/2007 | 01/29/2007 | DEPS. 13 14 15 16 and 17 for Lot 5 |

---

[165] Exhibit No. 12 attached to the correspondence from the Claimant dated October 25, 2017 entitled "Counts sent by the Claimant to the Respondent and the Payment Thereof".

[166] Exhibit No. 8 attached to the correspondence from the Claimant dated October 25, 2017 entitled "Bank statements of Compagnie Sahélienne d'Entreprises proving the bank wire transfers made by the KFAED for the Tombo-Gbessia Roadwork, LOT 5".

| | | | | | | |
|---|---|---|---|---|---|---|
| Dep. No. | 15 | 155,735.64 | 622,357.59 | Statement dated January 01-31, 2007 | 01/29/2007 | 01/29/2007 | DEPS. 13 14 15 16 and 17 for Lot 5 |
| Dep. No. | 16 | 136,705.85 | 622,357.59 | Statement dated January 01-31, 2007 | 01/29/2007 | 01/29/2007 | DEPS. 13 14 15 16 and 17 for Lot 5 |
| Dep. No. | 17 | 107,310.47 | 622,357.59 | Statement dated January 01-31, 2007 | 01/29/2007 | 01/29/2007 | DEPS. 13 14 15 16 and 17 for Lot 5 |
| Dep. No. | 18 | 135,327.58 | 331,132.18 | Statement dated January 01-31, 2007 | 01/17/2007 | 01/17/2007 | DEPS. 18 and 19 for Lot 5 and DEPS. 8 and 9 for Lot 4 |
| Dep. No. | 19 | 50,251.84 | 331,132.18 | Statement dated January 01-31, 2007 | 01/17/2007 | 01/17/2007 | DEPS. 18 and 19 for Lot 5 and DEPS. 8 and 9 for Lot 4 |
| Dep. No. | 20 | 187,557.62 | 187,457.62 | Statement dated January 01-31, 2008 | 01/30/2008 | 01/30/2008 | DEP. 20 for Lot 5 |
| Dep. No. | 21 | 172,275.61 | 1,062,581.74 | Statement dated 04/09/2007 to 28/09/2007 | 09/20/2007 | 09/20/2007 | DEPS. 21, 22 and 23 for Lot 5 and 11, 12 and 13 for Lot 4 |
| Dep. No. | 22 | 243,423.86 | 1,062,581.74 | Statement dated 04/09/2007 to 28/09/2007 | 09/20/2007 | 09/20/2007 | DEPS. 21, 22 and 23 for Lot 5 and 11, 12 and 13 for Lot 4 |
| Dep. No. | 23 | 192,036.14 | 1,062,581.74 | Statement dated 04/09/2007 to 28/09/2007 | 09/20/2007 | 09/20/2007 | DEPS. 21, 22 and 23 for Lot 5 and 11, 12 and 13 for Lot 4 |
| Dep. No. | 24 | 413,224.45 | Not Paid | | | | |
| Dep. No. | 25 | 984,755.70 | Not Paid | | | | |
| Dep. No. | 26 | 188,652.31 | Not Paid | | | | |
| Dep. No. | 27 | 148,019.14 | Not Paid | | | | |

272.   It is evident from the table that the amounts not paid by the KFAED are the following counts:

- Count No. 24 in the amount of EUR 413,224.45.
- Count No. 25 in the amount of EUR 984,755.70.
- Count No. 26 in the amount of EUR 188,652.31.
- Count No. 27 in the amount of EUR 148,019.14.

273.   Thus, the total amount not paid the KFAED on the basis of Counts Nos. 24, 25, 26, and 27 for Lot 5 is **EUR 1,734,651.60.**

274.   Furthermore, it is clear from the table above that the Claimant has provided proof that Counts Nos. 1 through 23 have been paid and that the amounts of the delinquent receivables in Euros are the following:

**LOT 5**

| Funder | Delinquent Receivables Denominated in Euros |
|---|---|
| **KFAED (Counts Nos. 24, 25, 26, and 27)** | 1,734,651.60 |
| **FSD (Counts Nos. 25, 26 and 27)** | 991,070.37 |

| | |
|---|---|
| **BADEA (Counts Nos. 24, 25, 26, and 27)** | 1,021,403.69 |
| **OPEC (Counts Nos. 25, 26, and 27)** | 150,763.13 |
| **Total Delinquent Receivables** | **EUR 3,897,891.12** |

275.   The Tribunal thus notes that the amount of the delinquent receivables denominated in Euros claimed by the Claimant after verification of the counts and of the bank wire transfers is a total amount of **EUR 3,897,891.12.** Said amount corresponds to the amount stipulated in Amendment No. 1 for Lot 5. In accordance with Article 5 of Amendment No. l for Lot 5, the amount stipulated in the Amendment was to be paid by the funders in four quarterly installments in 2010. The payments were not made by the Respondent.

276.   With regard to the amount of the delinquent receivables denominated in Guinean Francs claimed by the Claimant in the amount of GNF 112,780,322 on the basis of Count No. 27, which corresponds, according to its allegations, to the holdback,[167] the Arbitral Tribunal finds that the Claimant has not submitted the evidence that proves the claim for said amount denominated in Guinean Francs. The only document submitted for the case file is Count No. 27. An examination of said Count did not allow the Arbitral Tribunal to verify the legitimacy of said amount.

277.   In addition, the Tribunal refers to the confirmation by the Claimant during the Final Hearing for Pleadings and reiterated in its written submissions that the amount of the claim for delinquent receivables involves the amount indicated in the Amendment on the basis of Article 4 of Amendment No. l regarding Lot 5, which is denominated in euros. No provisions in the Amendment refer to payments that were required to be made in Guinean Francs. Therefore, the Tribunal has determined that the Claimant has not proven the legitimacy of its claims denominated in Guinean Francs either contractually or by the submission of evidence.

278.   Moreover, the Tribunal refers here to Article 801 of the Guinean Civil Code, which stipulates the following:
*"As a general rule, it is the plaintiff, that is, the person who institutes a legal proceeding, who has the burden of proof.*

---

[167] Transcript of the Hearing held on February 19, 2018, p. 47, paras. 5 through 7: "*Mr. Gueye: this amount, which corresponds to the share of the Guinean Government in Count No. 27, has not been paid, and it corresponds to the holdback*"; p. 50, paras. 4 through 10.

*However, if the defendant (or respondent), that is, the person against whom the action is directed, has to assert a defense argument against his adversary, it is then to him that the burden of proof shall pass.* [168]

279.   It is clear from these provisions that the burden of proof is incumbent upon the Plaintiff (or Claimant) in Guinean law. Thus, any person who deems that he is the creditor of an obligation must provide proof thereof, and any person who deems that he has discharged an obligation must provide the proof thereof.

280.   The Claimant has provided proof of the payment in Euros of Counts Nos. 1 through 23 of the Procurement Contract for Lot 5. It has, moreover, provided proof that the counts mentioned in the table in paragraph 263 above have remained unpaid.

281.   The Claimant has not, however, provided proof of its right to payment of the sums denominated in Guinean Francs claimed on the basis of Count No. 27.

282.   **Therefore, the Arbitral Tribunal determines, after verification of the counts and of the bank wire transfers, that the Claimant is entitled to receive the payment of the amount of the delinquent receivables denominated in Euros for the Procurement Contract for Lot 5 in the amount of EUR 3,897,891.12, and dismisses the Claimant's claim for the sum of GNF 112,780,322 related to the amount of the delinquent receivables denominated in Guinean Francs on the basis of Count No. 27 because of lack of proof.**

   **3-   With regard to the request for liquidated damages in the amount of EUR 2,000,000**

283.   The Arbitral Tribunal refers to Articles 681, 682, and 683 of the Guinean Civil Code, [169] which stipulate the following:

   "**Article 681 of the Guinean Civil Code:** *The liquidated damages due, for example, pursuant to the terms of Article 673 above may be due only after a formal notice of default made to the debtor demanding it to perform its obligation.*

   **Article 682 of the Guinean Civil Code:** *A debtor may be ordered to pay liquidated damages, not only because of the non-performance of the obligation but also because of the tardiness in the execution of it, unless it proves an external cause, a fortuitous event, or a force majeure event that cannot be attributed to the debtor.*

---

[168] Correspondence from the Claimant dated March 20, 2018 with copies of the Civil Code and the Code of Civil Procedure of Guinea attached.
[169] Cf., Correspondence from the Claimant dated March 29, 2018.

***Article 683 of the Guinean Civil Code:*** *The liquidated damages due to a creditor shall include, in general, the loss that it has suffered and, potentially, the gain of which the creditor has been deprived. However, when a contract stipulates that the party that does not execute the clauses shall pay a specific sum as liquidated damages, the other party may be awarded only said sum, no more and no less."*

284.    It is clear from a reading of these articles in the Guinean Civil Code taken together that the liquidated damages due in case of tardiness in the execution or non-performance on the part of the debtor of the obligation are due after the completion of a formality: the debtor being sent a formal notice of default indicating that it must perform its obligation.

285.    It is evident in this particular case from the exhibits submitted by the Claimant that there were several requests and reminders for payment of the amounts due on the basis of the Amendments; however, there does not appear anywhere that there exists a formal notice of default regarding the claim for liquidated damages.

286.    In addition, a careful reading of Article 682 of the Guinean Civil Code reveals that the award of liquidated damages to the creditor who is the victim of late performance or non-performance of his right to the receivable is optional.

287.    In fact, a contractual breach per se does not necessarily signify the existence of damage that has a causal relationship to said breach. Liquidated damages may be awarded only if the Arbitral Tribunal finds, at the time it rules, that a prejudice resulted from the contractual breach.

288.    The Arbitral Tribunal notes that the Claimant has only alleged that it has incurred considerable sums of capital from shareholders' equity, with the support of banking institutions for the completion of the works, and that the non-payment of the price of the Procurement Contracts has caused cash flow difficulties for it.

289.    However, the Claimant has not proven said cash flow difficulties. Such proof could, for example, be provided by the production of requests for repayment emanating from said financial institutions that the Claimant was unable to make since the Government of the Republic of Guinea did not honor its financial commitments to it.

290.    It follows therefrom that the Claimant has not provided evidence proving the amount of the prejudice invoked.

291.    **Therefore, the Arbitral Tribunal dismisses the request for liquidated damages as articulated by the Claimant for the amount of EUR 2,000,000.**

## B.4. THE REQUEST RELATED TO PROVISIONAL ENFORCEMENT

### a. Position of the Parties

1- Position of the Claimant

During the Final Hearing for Pleadings held on February 20, 2018, the Claimant made an additional request to the Arbitral Tribunal, i.e., that the final award be accompanied by provisional enforcement.[170]

2- Position of the Respondent

292.    The Respondent has not participated in any of the arbitral proceeding, including the Final Hearing for Pleadings and, accordingly, has not submitted any response regarding the provisional enforcement requested by the Claimant, although all the procedural documents and correspondence were served upon it at its various addresses via DHL express courier. The Arbitral Tribunal has prepared a table summarizing the pieces of correspondence served upon the Respondent and the dates on which they were received by the Respondent at its various addresses proving that the Respondent was indeed aware of the entirety of the progress of the arbitral proceeding and of the position taken by the Claimant.

### b- The Arbitral Tribunal

293.    During the Final Hearing for Pleadings dated February 20, 2018, the Claimant made an additional supplementary request to the Arbitral Tribunal, i.e., that the final award be accompanied by provisional enforcement.[171]

294.    The Arbitral Tribunal would like to refer to Article 23(4) of the ICC Rules, which stipulates, *"After the Terms of Reference have been signed or approved by the Court, no party shall make new claims which fall outside the limits of the Terms of Reference unless it has been authorized to do so by the arbitral tribunal, which shall consider the nature of such new claims, the stage of the arbitration and other relevant circumstances*."

295.    Since the Arbitral Tribunal has considered the request for provisional enforcement and its ancillary nature with respect to the claims made in the Terms of Reference, and after being assured that said request was properly notified to the Respondent with a delivery confirmation receipt along with

---

[170] Transcript of the Hearing held on February 20, 2018, p. 41, paras. 46–47: "*we solemnly request that you accompany your decision with provisional enforcement*".
[171] Transcript of the Hearing held on February 20, 2018, p. 41, paras 46–47: "*we solemnly request that you accompany your decision with provisional enforcement*".

the transcript of the Final Hearing for Pleadings held on February 19 and 20, 2018, the Arbitral Tribunal upholds said request in light of the circumstances of the case and the power conferred upon the Arbitral Tribunal to accept this type of ancillary request pursuant to the aforementioned Article 23(4) of the ICC Rules.

296. **Therefore, the Arbitral Tribunal decides that the final award shall be accompanied by provisional enforcement.**

## B.5. THE PENALTIES FOR LATE PAYMENT

### a. Positions of the Parties

1 - Position of the Claimant

297. The Claimant has asked the Arbitral Tribunal to "*order the Republic of Guinea in Conakry to pay penalties for late payment in the amount of EUR 5,805,126.13 and GNF 506,725,585 to Compagnie Sahélienne d'Entreprise, known as "CSE", interest that accrues until the arbitral award is rendered.*"[172].

298. Furthermore, the Claimant, in response to the question asked by the Arbitral Tribunal in its correspondence dated October 3, 2017 (the Arbitral Tribunal's questions sent to the Claimant) and then during the Final Hearing for Pleadings[173] and in the subsequent correspondence from the Tribunal,[174] provided clarifications regarding the basis for the calculation of the penalties for late payment requested.

299. The method described by the Claimant for the calculation of the penalties for late payment is based on the contractual provisions, in particular, Article 11.7 of the General Administrative Terms and Conditions, which stipulates the following: "[I]*n the event of late payments due and payable in compliance with the provisions of Article 13.2 of the General Administrative Terms and Conditions, the Contractor shall be entitled to penalties for late payment at the rate stipulated in the Special Administrative Terms and Conditions*". The Claimant maintains that the applicable rates are stipulated by Article 17 of the Special Administrative Terms and Conditions, which specify the following rates:

"*- Central Bank of the Republic of Guinea GNF rate: policy rate: 9%*
    *- Euro rate: Central Bank of West African States (BCEAO) TEN + 2 = 8.75%*"[175]

300. The Claimant made the calculation of the penalties for late payment as follows:

---

[172] Request for Arbitration p. 8; Statement of Claim p. 11.
[173] Transcript of the Hearing held on February 20, 2018, p. 42, paras. 21 through 23, and p. 43, paras. 1 through 21.
[174] Correspondence from the Arbitral Tribunal dated April 14, 2018.
[175] Correspondence from the Claimant dated March 29, 2018.

*"Interest = Amount of the delinquent receivable X interest rate X number of days late/30*
*Thus, the penalties for late payment are as follows:*

- *Penalties for late payment on portions in Euros of Lots 4 and 5 = EUR 5,805,126.13*
- *Penalties for late payment on portions of Lots 4 and 5 denominated in GNF = GNF 506,725,585'"[176]*

301. Moreover, the Claimant referred to the legal texts in the Guinean Civil Code that justify the claims and the calculation of the interest, in particular, in Articles 637,[177] 638,[178] and 639[179] of Title 1 entitled *"Contracts or Contractual Obligations in General in the Guinean Civil Code"* as well as to Articles 649,[180] 668,[181] and 669[182] of that same code. The Claimant, in addition, referred to Section 5 of that same code involving the calculation of the liquidated damages in Guinean law, in particular, Articles 681,[183] 682,[184] 683,[185] and 684.[186]

---

[176] Correspondence from the Claimant dated March 29, 2018.

[177] **Article 637 of the Guinean Civil Code**: *"a contract is an agreement, that is, a meeting of the minds between or among one or more persons who undertake obligations to one or more other persons, to give, to do, or to not do something"*.

[178] **Article 638 of the Guinean Civil Code**: *"He or she is required to ensure the delivery thereof in accordance with the general rules regarding execution of obligations and in accordance with the specific provisions of special contracts."*

[179] **Article 639 of the Guinean Civil Code**: *"the debtor of an obligation to do or not do something must perform his or her obligation fully."*

[180] **Article 649 of the Guinean Civil Code**: *"For an agreement to be legally valid, four main conditions are required:*
- *Consent between the Parties;*
- *Their capacity to conclude a contract;*
- *A certain purpose that forms the subject matter of the commitment;*
- *Finally, a lawful cause, that is, one that no text prohibits."*

[181] **Article 668 of the Guinean Civil Code**: *"Legally formed agreements shall take the place of the Law for those who made them. They may be revoked only by mutual consent or for causes that are authorized by law."*

[182] **Article 669 of the Guinean Civil Code :** *"The mandatory force of agreements has a two-fold foundation:*
- *A moral idea, keeping one's word*
- *An economic interest, the need for the credit.*

*This two-fold foundation means that agreements must be concluded in good faith and that they require not only compliance with the clauses that are expressed therein, but also with everything that equity, customary practice, or the Law gives to them depending on the nature of them."*

[183] **Article 681 of the Guinean Civil Code**: *"The liquidated damages due, for example, pursuant to the terms of Article 673 above may be due only after a formal notice of default has been made to the debtor demanding it to perform his obligation."*

[184] **Article 682 of the Guinean Civil Code**: *"A debtor may be ordered to pay liquidated damages, not only because of the non-performance of the obligation but also because of tardiness in the performance of it, unless it proves an external cause, a fortuitous event, or a force majeure event, that cannot be attributed to the debtor."*

[185] **Article 683 of the Guinean Civil Code**: *"[T]he liquidated damages due to a creditor shall include, in general, the loss that it has sustained and, potentially, the gain of which the creditor has been deprived. However, when a contract stipulates that the party that does not execute the clauses shall pay a specific sum as liquidated damages, the other party may be awarded only said sum, no more and no less."*

[186] **Article 684 of the Guinean Civil Code:** *"[L]liquidated damages that are separate from those due for non-performance or tardiness in the performance may also be requested in the event of manifest bad faith on the part of the debtor."*

2 - <u>Position of the Respondent</u>

302.   The Respondent has not participated in the arbitral proceeding and has not submitted any response regarding the penalties for late payment, although all the procedural documents and correspondence have been served upon it at its various addresses via DHL express courier. The Arbitral Tribunal has prepared a summary table of the various pieces of correspondence served upon the Respondent and the dates on which they were received by the Respondent at its various addresses proving that the Respondent was indeed aware of the entire process of the arbitral proceeding and the position of the Claimant.

   b. **The Arbitral Tribunal**

303.   Within the framework of the list of questions sent to the Claimant,[187] the Arbitral Tribunal asked the Claimant to answer the following question regarding the calculation of the penalties for late payment: "[O]*n what basis did the Claimant calculate the penalties for late payment due in the event of late payment?*"

304.   Likewise, during the Final Hearing for Pleadings, the Tribunal reiterated that question to the Claimant asking it to provide clarifications regarding the methods used for calculation of the penalties for late payment and about the date on which the interest began to accrue on the basis of Guinean law. [188]

305.   The Arbitral Tribunal notes the Claimant's answer to said question in its correspondence dated March 29, 2018 in which it based its response on the contractual provisions of the General Administrative Terms and Conditions and the Special Administrative Terms and Conditions of both Procurement Contracts, in particular, Article 11.7 of the General Administrative Terms and Conditions and Article 11.7 of the Special Administrative Terms and Conditions.

306.   The contractual provisions to which the Claimant referred stipulate:

   *Article 11.7 of the General Administrative Terms and Conditions:* "[I]*n the event of late payments that are due and payable in compliance with the provisions of Article 13.2 of the General Administrative Terms and Conditions, the Contractor shall be entitled to penalties for late payment at the rate stipulated in the Special Administrative Terms and Conditions". If said tardiness results from a cause for which the Project Owner is authorized, on the basis of the Procurement Contract, to suspend the payments, the penalties for late payment shall not be due".*

   *Article 11.7 of the Special Administrative Terms and Conditions:*

---

[187] Correspondence from the Arbitral Tribunal dated October 3, 2017.
[188] Transcript of the Hearing held on February 20, 2018, p. 41 para. 21 through 25.

*"[...] for tardiness resulting in penalties for late payment, the interest rate for late payment shall be:*
- *For instances of tardiness resulting in the right to collect penalties for late payment for the payments denominated in foreign currency: the "legal" LEG rate in effect within the country of origin of the currency, plus one percent (1%) or otherwise, the discount rate of the central bank of the country of origin of the currency plus 2%.*
- *For tardiness resulting in the right to collect penalties for late payment in Guinean Francs (GNF): "the policy rate of the Central Bank of the Republic of Guinea plus two percent (2%). [...]"*

307.   The Arbitral Tribunal notes that the agreements concluded between CSE and the Republic of Guinea in Conakry are, in particular, the General Administrative Terms and Conditions and Special Administrative Terms and Conditions appended to Procurement Contract Nos. 2003/0324/l/2/l/N and 2003/0325/12/l/2/N.

308.   The Arbitral Tribunal also refers here to the provisions of the Guinean Civil Code, which stipulates, in Articles 668 and 669, the following:

«***Article 668 Of the Guinean Civil Code*** *: Legally formed agreements shall take the place of the Law for those who made them. They may be revoked only by mutual consent or for causes that are authorized by law."*

***Article 669 Of the Guinean Civil Code*** *: The mandatory force of agreements has a two-fold foundation:*
- *A moral idea, keeping one's word*
- *An economic interest, the need for the credit.*

*This two-fold foundation means that agreements must be concluded in good faith and that they require not only compliance with the clauses that are expressed therein, but also with everything that equity, customary practice, or the Law gives to them depending on the nature of them."*

309.   It is evident from the provisions cited above that every agreement constitutes the law for the parties and that the latter must execute it in good faith.

310.   In this particular case, the Arbitral Tribunal has held that the Claimant has provided proof of the delinquent receivables on the basis of Amendment No. 1 of the Procurement Contract for Lot No. 4 and on the basis of Amendment No. 1 of the Procurement Contract for Lot No. 5, which are the sums of EUR 3,470,475.73 and EUR 3,897,891.12 respectively.

311.   It is also established that the Respondent has not provided proof that it has performed its obligations to make payment on the basis of the delinquent Counts denominated in Euros for the Procurement Contracts for Lot 4 and for Lot 5 or that said late payments resulted from a cause for which the

Respondent was authorized, on the basis of the Procurement Contract, to suspend the payments. In addition, the Arbitral Tribunal notes that it is not clear from the evidence in the case file that there was a cause that authorized the Respondent to suspend the payments.

312.  It is clear from these findings that it is, therefore, necessary to apply the contractual provisions, in particular, Articles 11.7 of the General Administrative Terms and Conditions and 11.7 of the Special Administrative Terms and Conditions, which stipulate the payment of penalties for late payment in the case of late payment.

313.  With regard to the interest rate applicable to the penalties for late payment, the Arbitral Tribunal refers here to Article 11.7 of the Special Administrative Terms and Conditions, which stipulates the following:

*"[...] for tardiness resulting in penalties for late payment, the interest rate for late payment shall be:*

*–   For the cases of tardiness resulting in the right to collect penalties for late payment for the payments denominated in foreign currency: the "legal" LEG rate in effect in the country of origin of the currency, plus one percent (1%) or otherwise, the discount rate of the central bank of the country of origin of the currency plus 2%.*

*–   For tardiness resulting in the right to collect penalties for late payment in Guinean Francs (GNF): "the policy rate of the Central Bank of the Republic of Guinea plus two percent (2%). [...]"*

314.  The Arbitral Tribunal has granted the Claimant the amounts of the delinquent receivables stipulated in the Amendments denominated in Euros for the Procurement Contract for Lot 4 and for the Procurement Contract for Lot 5.

315.  Upon reading Article 11.7 of the Special Administrative Terms and Conditions, the Arbitral Tribunal notes two possibilities for the determination of the interest rate for the penalties for late payment for the payments denominated in foreign currency, i.e., the Euro:

–   Either the LEG "legal" rate in effect in the country of origin of the currency, plus one percent (1%);

–   Or, otherwise, the discount rate of the central bank of the country of origin of the currency plus 2%.

316.  The Arbitral Tribunal notes that the Claimant has used 8.75% for the calculation of the interest rate on the basis of the rates of the Central Bank of the Western African States.[189] However, said interest rate is the reference rate for cases of tardiness resulting in the right to collect penalties for late payment denominated in Guinean Francs and not in Euros. Article 11.7 of the Special Administrative Terms and Conditions is, in this regard, very clear: the interest rates used for penalties for late payment for the payment denominated in Euros are made pursuant to one of the two rates mentioned in the aforementioned paragraph 304.

---

[189] Correspondence from the Claimant dated March 29, 2018.

317. The Arbitral Tribunal therefore decides that it will use the discount rate of the European Central Bank (ECB) for the determination of the interest rates to be applied for the penalties for late payment plus 2%, where a uniform legal rate within the Euro area does not exist. The rate of the ECB applicable shall be the rate in effect on the date selected by the Arbitral Tribunal as the beginning date for the calculation of the penalties for late payment determined in the sections below.

318. With regard to the beginning date for calculating the interest due for the penalties for late payment, the Arbitral Tribunal notes that the contractual provisions of the Procurement Contract do not stipulate said beginning date and that, therefore, reference must be made to the applicable regulatory provisions.

319. The two Procurement Contracts are Public Procurement Contracts and, as such, are subject to the Guinean Public Procurement Contracts Code submitted for the case file by the Claimant.[190]

320. Article 119 entitled "Rights to Penalties for Late Payment" in Decree No. 2012–128 dated December 3, 2012 regarding the Guinean Public Procurement Contracts Code[191] provides the following:
    *"The lack of payment or of release of a guarantee within the time limits established by the Special Administrative Terms and Conditions shall, by operation of law, begin and cause to elapse the right to the benefit of the contract holder to penalties for late payment calculated from the day after the expiration of said time limits until the day on which the payment order is issued by the authorized accountant."*

321. It is clear from this provision of Article 119 of Decree No. 2012–128 dated December 3, 2012 cited above that the contractor shall receive, by operation of law and without other formalities, penalties for late payment with interest beginning to accrue on the day after the expiration of the deadline for payment.

322. The Arbitral Tribunal refers to Article 5 of Amendment No. l of the Procurement Contract for Lot 4, which stipulates that : *"the terms and conditions of payment shall be as follows:*
    –  *KFAED: EUR 206,356.09*
    –  *SFD: EUR 194,356.04*
    –  *OPEC: EUR 181,278.34*
    –  *Guinean NDB: EUR 3,074,933.34, in accordance with the following payment schedule:*
        •  *First quarter of 2010: EUR 768,733.31*
        •  *Second quarter of 2010: EUR 768,733.31*
        •  *Third quarter of 2010: EUR 768,733.31*
        •  *Fourth quarter of 2010: EUR 768,733.31."*

---

[190] Cf., Request for Arbitration, Exhibit no. 9.
[191] Cf., Request for Arbitration, Exhibit no. 9.

323.    The Arbitral Tribunal also refers to Article 5 of the aforementioned Amendment No. 1 to the Procurement Contract for Lot 5, which stipulates the following: "[T]*he terms and conditions of payment shall be as follows:*

-    *SFD: EUR 383,854.57*
-    *OPEC: EUR 104,407.49*
-    *Guinean NDB: EUR 3,409,629.06, in accordance with the following payment schedule:*
• *First quarter of 2010: EUR 852,407.26*
• *Second quarter of 2010: EUR 852,407.26*
• *Third quarter of 2010: EUR 852,407.26*
• *Fourth quarter of 2010: EUR 852,407.26."*

324.    It is evident from the contractual provisions that the payment is due on December 31, 2010.

325.    However, the Arbitral Tribunal, during Final Hearing for Pleadings, asked the Claimant to determine the date on which the penalties for late payment begin to elapse for the arrears related to the Amendments. In response to the question from the Arbitral Tribunal, the Chief Financial Officer of the Claimant acknowledged that the penalties for late payment were calculated beginning on December 10, 2012. [192]

326.    Therefore, the Arbitral Tribunal is using the date of December 10, 2012 as claimed by the Claimant to have the penalties for late payment begin and not the due date of the delinquent receivables stipulated by Articles 5 of the Amendments No. 1 of the two Procurement Contracts, which is January 1, 2011. The Arbitral Tribunal also notes that the discount rate of the ECB on December 10, 2012 was 0.75%. [193] Said rate should be increased by 2% in accordance with Article 11.7 of the Special Administrative Terms and Conditions.

327.    Therefore, with regard to the request for penalties for late payment, the Arbitral Tribunal has determined that the penalties for late payment due on the basis of the two Procurement Contracts are on the order of 2.75% per year for each of the two Procurement Contracts and that the interest shall begin to accrue beginning on the date of December 10, 2012, until the date of the final payment by the Respondent of the amount of the compensation determined by the Arbitral Tribunal in paragraphs 254 and 282 above.

**B.6 THE COSTS AND EXPENSES OF THE ARBITRATION**

328.    The Arbitral Tribunal will answer the following question: *What are the costs of this arbitration, and which Party should incur them, and in what proportion?*

---

[192] Transcript of the Hearing held on February 19, 2018, p. 54, para. 45, p. 55, paras. 1–2 : (para. 35—"*Mr. Gueye – It is beginning on 10 December that the penalties for late payment were calculated.*")
[193]  http://sdw.ecb.europa.eu/browseTable.do?node=9691107.

### a. **Positions of the Parties**

1-  Position of the Claimant

329.  In its Request for Arbitration, [194] the Claimant asked the Arbitral Tribunal *"To order the Republic of Guinea in Conakry to pay all the expenses and expenditures caused by this arbitral proceeding, which will be set forth in submissions"*.

330.  The Claimant made that same request in its Statement of Claim, [195] in the following terms: *"To order the Republic of Guinea in Conakry to pay all the expenses and expenditures caused by this arbitral proceeding."*

331.  The Arbitral Tribunal notes that during the Final Hearing for Pleadings, the Claimant maintained that it paid the sum of EUR 510,000 for the expenses of the arbitral proceeding[196] and the sum of EUR 150,000 for the expenses of representation and the expenses of travel between Paris and Dakar. [197]

332.  The Arbitral Tribunal asked the Claimant to submit to it, after the Final Hearing for Pleadings, the supporting documents proving the costs generated by the arbitral proceeding as well as the legal costs.[198]

333.  The Claimant subsequently submitted, in its correspondence dated March 29, 2018, the following supporting documents:

---

[194] Request for Arbitration, p. 8.
[195] Statement of Claim, pp. 10 and 11.
[196] Transcript of the Hearing held on February 20, 2018, p. 40, paras. 22 through 30.
[197] Transcript of the Hearing held on February 20, 2018, p. 40, paras. 44 through 46.
[198] Transcript of the Hearing held on February 20, 2018, p. 40, paras. 44 through 46 and p. 41, para. [sic] through 9 :
*"The Guinean Government... CSE has also -- how shall I put it -- paid for representation expenses - my own professional fees -- but also for all the trips that have been made between Paris and Dakar, and we calculate that sum to be EUR 150,000.*
**Ms. President.-** *Mr. NDIAYE, as you know, after this final procedural hearing, if you like, a summary of your written submissions on the basis of what has happened must be submitted, without any additional documents.*
*The only written submissions that you may add are regarding the applicable law and the provisions of applicable law, as well as the costs. We would like to have a statement of the costs that you have requested for the arbitral proceeding and you have asserted that there were the costs that have been paid to the ICC; and next, the legal costs in the proceeding, which must also be sent to the Arbitral Tribunal.*
**Mr. Ndiaye -** *Very well."*

- A bank wire transfer to the ICC dated March 5, 2018 in the amount of USD 251,975 related to the ICC's call for funds.
- A bank wire transfer to the ICC dated May 31, 2017 in the amount of USD 146,70.86 [sic] related to the professional fees of the arbitrators.[199]
- A bank wire transfer to the ICC dated March 16, 2017 in the amount of USD 46,765.19.[200]
- A check made payable to the ICC dated September 12, 2016 for the payment of the expenses of the arbitration in the amount of EUR 55,390.
- A check made payable to the ICC dated June 24, 2016 for the submission of the Request for Arbitration in the amount of EUR 2,643.

334.   The Arbitral Tribunal notes that the Claimant did not submit the supporting documents for its legal costs.

### 2- Position of the Respondent

335.   The Respondent has not participated in the arbitral proceeding and has not submitted any response regarding the costs of the arbitration and on which Party they are incumbent, although all the procedural documents and correspondence have been served upon it at its various addresses, via DHL express courier. The Arbitral Tribunal has prepared a table summarizing the pieces of correspondence served upon the Respondent and the dates of receipt by the Respondent at its various addresses proving that the Respondent was aware of the entirety of the arbitral proceeding and of the position of the Claimant.

### b. **The Arbitral Tribunal**

336.   The Arbitral Tribunal refers here to Article 37 of the ICC Rules applicable to this arbitral proceeding, which stipulates the following:

*"1- The costs of the arbitration shall include the fees and expenses of the arbitrators and the ICC administrative expenses fixed by the Court, in accordance with the scales in force at the time of the commencement of the arbitration, as well as the fees and expenses of any experts appointed by the arbitral tribunal and the reasonable legal and other costs incurred by the parties for the arbitration.*

*2- The Court may fix the fees of the arbitrators at a figure higher or lower than that which would result from the application of the relevant scale should this be deemed necessary due to the exceptional circumstances of the case.*

---

[199]   Initial amount: EUR 130,850.
[200]  Initial amount: EUR 44,180.00.

*3- At any time during the arbitral proceedings, the arbitral tribunal may make decisions on costs, other than those to be fixed by the Court, and order payment.*

*4- The final award of the arbitral tribunal shall fix the costs of the arbitration and decide which of the parties shall bear them or in what proportion they shall be borne by the parties.*

*5- In making decisions as to costs, the arbitral tribunal may take into account such circumstances as it considers relevant, including the extent to which each party has conducted the arbitration in an expeditious and cost-effective manner.*

*6- In the event of the withdrawal of all claims or the termination of the arbitration before the rendering of a final award, the Court shall fix the fees and expenses of the arbitrators and the ICC administrative expenses. If the parties have not agreed upon the allocation of the costs of the arbitration or other relevant issues with respect to costs, such matters shall be decided by the arbitral tribunal. If the arbitral tribunal has not been constituted at the time of such withdrawal or termination, any party may request the Court to proceed with the constitution of the arbitral tribunal in accordance with the Rules so that the arbitral tribunal may make decisions as to costs."*

337.   It is clear from Article 37 as cited above that the distribution of the expenses of the arbitration is at the discretion of the Arbitral Tribunal as long as the expenses incurred by the parties are reasonable.

**With regard to the expenses of the ICC**

338.   The Arbitral Tribunal, by its assessment at its sole discretion, deems that in light of the outcome of the dispute as settled by the Arbitral Tribunal determining that the Respondent is liable to the Claimant for the payment of the amounts due on the basis of the Procurement Contracts, and that in light of the fact that the Claimant has paid for all the expenses of the arbitral proceeding and that the latter has prevailed in the majority of its claims, hereby determines that the Respondent shall be liable for all the expenses of the arbitral proceeding as established by the Court of the ICC.

339.   The Secretariat of the ICC, in its letter dated July 27, 2018, informed the Parties and the Arbitral Tribunal that the expenses of the arbitration as established by the Court of the ICC amount to USD 541,450.

**With regard to the representation expenses and other expenditures of the Claimant**

340.   The Arbitral Tribunal notes that the Claimant has not submitted any supporting documents regarding the amounts alleged during the Final Hearing for Pleadings that are related to its representation expenses and other expenditures incurred during this arbitral proceeding.

341.   Therefore, the Arbitral Tribunal has decided not to grant the Claimant its representation expenses and other expenditures incurred during this arbitral proceeding.

**VII-** [sic] **ENACTING CLAUSE**

342.    The Arbitral Tribunal:

1.   Declares that it has jurisdiction to hear the dispute resulting from the two Public Works Procurement Contracts for Lot 4 and Lot 5 within a single arbitral proceeding on the basis of the arbitration clause stipulated in Article 29 of the Special Administrative Terms and Conditions of the two Procurement Contracts.

2.   Orders the Respondent to pay the amount of **EUR 3,470,475.73** on the basis of the amount of the delinquent receivables per Amendment No. 1 of the Procurement Contract for Construction Work entitled "*Upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), Lot 4: Kenien Section - T1, Procurement Contract for Construction Work No. 2003/0325/1/2/1/2/N*" dated June 25, 2003.

3.   Orders the Respondent to pay **EUR 3,897,891.12** on the basis of the amount of delinquent receivables per Amendment No. 1 to the Procurement Contract for Construction Work entitled "*Upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), Lot 5: Section T1-T2*" including the two interchanges at the intersections of the T1 and the T2", Procurement Contract for Construction Work No. 2003/0324/1/2/1/2/N*" dated June 25, 2003 .

4.   Dismisses the Claimant's claim for the payment of the amount de **GNF 96,939,178** for the amount of the delinquent receivables related to Counts Nos. 16 and 17 for the Procurement Contract for Construction Work entitled "*Upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), Lot 4: Kenien Section - T1, Procurement Contract for Construction Work No. 2003/0325/1/2/1/2/N*" dated June 25, 2003.

5.   Dismisses the Claimant's claim for the payment of the amount de **GNF 112,780,322** on the basis of amount of the delinquent receivables per Amendment No. 1 to the Procurement Contract for Construction Work entitled "*Upgrading of the 2x2-lane [Road] between Tombo and Gbessia Airport (Conakry), Lot 5: Section T1.-T2*" including the two interchanges at the intersections of the T1 and the la T2", Procurement Contract for Construction Work No. 2003/0324/1/2/1/2/N*" dated June 25, 2003.

6.   Orders the Respondent to pay penalties for late payment on the order of 2.75% per year for each of the two Procurement Contracts, which shall accrue interest beginning on the date of December 10, 2012, the date on which the Claimant claims the calculation of the interest rate, until the date of the final payment by the Respondent of the amount of compensation determined by the Arbitral Tribunal in the amount of **EUR 3,470,475.73** for the Procurement Contract for Lot 4 and **EUR 3,897,891.12** for the Procurement Contract for Lot 5.

7.   Dismisses the Claimant's Claim for payment of liquidated damages in the amount of **EUR 2,000,000.**

8. Orders the Respondent to pay the expenses of the arbitration established by the Court of the International Chamber of Commerce disbursed by the Claimant during the arbitral proceeding in the amount of **USD 541,450.**

9. Orders provisional enforcement of this Arbitral Award.

10. Dismisses all other requests or claims.

Rendered and signed in Paris, France on *August 7, 2018*


_____[signature]_____
Prof. Dr. Nayla COMAIR-OBEID
President


_____[signature]_____                          _____[signature]_____

Dr. Seydou Madani SY                          Mr. Joachim BILE-AKA, Attorney at Law

(Co-Arbitrator)                                         (Co-Arbitrator)

# Appendix

**ICC 22056/DDA: Final Award**
**Appendix 1**
**(DHL Receipts for transmission to the Respondent of all the pieces of correspondence)**

| Correspondence | Date of Dispatch by the Tribunal | Date of Receipt by the Judicial Agent of the Guinean Government (Conakry, Guinea) | Date of Receipt by the Guinean Embassy (Paris, France) | Republic of Guinea Minister of Public Works | Appendix |
|---|---|---|---|---|---|
| AT-P-001 | May 10, 2017 | May 15, 2017 | May 29, 2017 (sent with AT-P-003) | | 1 |
| AT-P-002 | May 23, 2017 | May 26, 2017 | May 29, 2017 (sent with AT-P-003) | | 2 |
| AT-P-003 | May 25, 2017 | May 29, 2017 | May 29, 2017 | | 3 |
| AT-P-004 | June 6, 2017 | June 9, 2017 | June 7, 2017 | | 4 |
| AT P-005 | June 14, 2017 | June 19, 2017 | June 15, 2017 | | 5 |
| AT-P-006 | June 15, 2017 | June 20, 2017 | June 16, 2017 | | 6 |
| AT-P-007 | June 16, 2017 | June 20, 2017 | June 19, 2017 | | 7 |
| AT-P-008 | June 20, 2017 | June 27, 2017 | June 21, 2017 | | 8 |
| AT-P-009 | June 22, 2017 | June 27, 2017 | June 23, 2017 | | 9 |
| AT-P-010 | June 27, 2017 | July 3, 2017 | June 29, 2017 | | 10 |
| AT-P-011 | July 6, 2017 | July 11, 2017 | July 7, 2017 | | 11 |
| AT-P-012 | August 4, 2017 | August 8, 2017 | August 7, 2017 | | 12 |
| AT P-013 | August 30, 2017 | September 4, 2017 | August 31, 2017 | | 13 |
| AT-P-014 | October 3, 2017 | October 6, 2017 | October 9, 2017 | | 14 |
| AT-P-015 | October 4, 2017 | October 9, 2017 | October 5, 2017 | | 15 |
| AT-P-016 | November 6, 2017 | November 10, 2017 | November 9, 2017 | November 10, 2017 | 16–17 |
| AT-P-017 | November 7, 2017 | November 10, 2017 | November 9, 2017 | November 10, 2017 | |
| AT-P-018 | December 12, 2017 | December 21, 2017 | December 20, 2017 | December 21, 2017 | |

| | | | | |
|---|---|---|---|---|
| **AT-P-019** | December 14, 2017 | December 21, 2017 | December 20, 2017 | December 21, 2017 |
| | | | | 18–22 |
| **AT-P-20** | December 16, 2017 | December 21, 2017 | December 20, 2017 | December 21, 2017 |
| **AT P-21** | December 17, 2017 | December 21, 2017 | December 20, 2017 | December 21, 2017 |
| **AT-P-22** | December 18, 2017 | December 21, 2017 | December 20, 2017 | December 21, 2017 |
| **AT-P-23** | December 21, 2017 | January 3, 2018 | January 2, 2018 | January 3, 2018 |
| **AT-P-24** | December 18, 2017 | January 3, 2018 | January 2, 2018 | January 3, 2018 | 23–24 |
| **AT-P-25** | January 8, 2018 | January 12, 2018 | January 11, 2018 | January 12, 2018 | 25 |
| **AT-P-26** | January 12, 2018 | January 18, 2018 | January 17, 2018 | January 18, 2018 | 26 |
| **AT-P-27** | January 24, 2018 | January 30, 2018 | January 29, 2018 | January 30, 2018 | 27 |
| **AT-P-28** | February 15, 2018 | February 20, 2018 | February 19, 2018 | February 20, 2018 | 28 |
| **AT-P-29** | February 26, 2018 | March 1, 2018 | February 28, 2018 | March 1, 2018 | 29 |
| **AT-P-30** | February 27, 2018 | March 27, 2018 | March 26, 2018 | March 27, 2018 | 30–31 |
| **AT-P-31** | March 22, 2018 | March 27, 2018 | 26 Mary 204/ | March 27, 20018 | |
| **AT-P-32** | March 29, 2018 | April 9, 2018 | April 6, 2018 | April 9, 2018 | 32 |
| **AT-P-33** | April 14, 2018 | April 19, 2018 | April 17, 2018 | April 19, 2018 | 33 |
| **AT-P-34** | April 17, 2018 | April 27, 2018 | April 25, 2018 | April 27, 2018 | 34–35 |
| **AT-P-35** | April 24, 2018 | April 27, 2018 | April 25, 2018 | April 27, 2018 | |
| **AT-P-36** | July 12, 2018 | July 16, 2018 | July 3, 2018 | July 16, 2018 | 36 |

Reference 1



30 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5111904350.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5111904350 was delivered on 15 May 2017 at 12.04**

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | **REPUBLIC OF GUINEA** |
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE |
| | | | CONAKRY |
| | | | GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004358211810 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 10 May 2017 at 18.01 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.13 lbs / 0.06 kg | | BEIRUT |
| Contents | DOCUMENTS | | LEBANON |

Reference 2



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 8380406101.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 8380406101 was delivered on 26 May 2017 at 08.58**

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | **REPUBLIC OF GUINEA** |
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE |
| | | | CONAKRY |
| | | | GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004439089667 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 23 May 2017 at 15.14 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.30 lbs / 0.14 kg | | BEIRUT |
| Contents | DOCUMENTS | | LEBANON |

Reference 3



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7912954486.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7912954486 was delivered on 29 May 2017 at 09.28**

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | **REPUBLIC OF GUINEA** |
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004446416533 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 25 May 2017 at 19.52 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOCUMENTS | | |

Reference 3



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7912960893.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7912960893 was delivered on 29 May 2017 at 14.39**

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004446417273 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 25 May 2017 at 19.54 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 2.95 lbs / 1.34 kg | | |
| Contents | DOCUMENTS | | |

Reference 4



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 9766966145.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 9766966145 was delivered on 09 June 2017 at 11.42**

| | | | |
|---|---|---|---|
| Signed | STAMP | **Receiver Name** | **REPUBLIC OF GUINEA** |
| Shipment Status | Delivered | **Receiver Address** | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE |
| | | | CONAKRY |
| | | | GUINEA REPUBLIC |
| | | **Piece ID(s)** | JD014600004480848551 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | **Shipper Name** | OBEID LAW FIRM |
| Picked Up | 06 June 2017 at 11.59 | **Shipper Address** | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.44 lbs / 0.20 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 4



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 9767021412.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 9767021412 was delivered on 07 June 2017 at 09.39**

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | GUINEAN EMBASSY IN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004480856215 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 06 June 2017 at 11.59 | Shipper Address | STRATUM BUILDING, 4TH FLOOR<br>OMAR DAOUK STREET BEIRUT<br>BEIRUT<br>LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.44 lbs / 0.20 kg | | |
| Contents | DOC | | |

Reference 5



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6724188833.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6724188833 was delivered on 19 June 2017 at 12.38**

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | **REPUBLIC OF GUINEA** |
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | **BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC** |
| | | Piece ID(s) | JD014600004504804575 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 14 June 2017 at 14.46 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.13 lbs / 0.06 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 5



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6724183421.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6724183421 was delivered on 15 June 2017 at 14.42**

| | | | |
|---|---|---|---|
| Signed | KATY | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | *Cathy* | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004504803823 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 14 June 2017 at 14.46 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.13 lbs / 0.06 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 6



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1805648202.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 1805648202 was delivered on 20 June 2017 at 10.51**

| | | | |
|---|---|---|---|
| Signed | MME TOURE | Receiver Name | **REPUBLIC OF GUINEA** |
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE |
| | | | CONAKRY |
| | | | GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004517703720 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 15 June 2017 at 15.56 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.22 lbs / 0.10 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 6



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1805650125.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 1805650125 was delivered on 16 June 2017 at 15.12**

| Signed | KATIE | Receiver Name | GUINEAN EMBASSY IN FRANCE |
| --- | --- | --- | --- |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004517703950 |

**Additional Shipment Details**

| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| --- | --- | --- | --- |
| Picked Up | 15 June 2017 at 15 56 | Shipper Address | STRATUM BUILDING, 4TH FLOOR<br>OMAR DAOUK STREET BEIRUT<br>BEIRUT<br>LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

*Reference 7*



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7719547216.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7719547216 was delivered on 20 June 2017 at 10.51**

| | | | | |
|---|---|---|---|---|
| Signed | MME TOURE | Receiver Name | REPUBLIC OF GUINEA | ⋮ |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÉME ÉTAGE [2ND FLOOR] | |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC | |
| | | Piece ID(s) | JD014600004524087366 | |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 June 2017 at 19.51 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

_Reference 7_



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7719545271.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7719545271 was delivered on 19 June 2017 at 11.19**

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | GUINEAN EMBASSY IN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004524087116 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 June 2017 at 19.51 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.13 lbs / 0.06 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 8



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5396297642.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5396297642 was delivered on 27 June 2017 at 11.05**

| Signed | MME CONTE | Receiver Name | **REPUBLIC OF GUINEA** |
|---|---|---|---|
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004533108678 |

**Additional Shipment Details**

| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
|---|---|---|---|
| Picked Up | 20 June 2017 at 15.39 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.30 lbs / 0.14 kg | | |
| Contents | DOC | | |

Reference 8



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5396302041.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5396302041 was delivered on 21 June 2017 at 14.37**

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004533109236 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS 9:00 doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 20 June 2017 at 15.39 | Shipper Address | STRATUM BUILDING, 4TH FLOOR<br>OMAR DAOUK STREET BEIRUT<br>BEIRUT<br>LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.30 lbs / 0.14 kg | | |
| Contents | DOC | | |

*Reference 9*



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5528026571.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 5528026571 was delivered on 27 June 2017 at 11.06

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | REPUBLIC OF GUINEA |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR] BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004539083181 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 22 June 2017 at 14.32 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 9



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5528024994.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5528024994 was delivered on 23 June 2017 at 14.16**

| | | | |
|---|---|---|---|
| Signed | KONATE | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004539082960 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 22 June 2017 at 14 32 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0 06 kg | | |
| Contents | DOC | | |

Reference 10



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1520220704.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 1520220704 was delivered on 03 July 2017 at 10.25**

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | REPUBLIC OF GUINEA |
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004553805570 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 27 June 2017 at 15 05 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.35 lbs / 0.16 kg | | |
| Contents | DOC | | |

_Reference 10_



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1520223902.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 1520223902 was delivered on 29 June 2017 at 10.54**

| | | | |
|---|---|---|---|
| **Signed** | CATHY | **Receiver Name** | GUINEAN EMBASSY IN FRANCE |
| **Signature** | _Cathy_ | **Receiver Address** | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| **Shipment Status** | Delivered | **Piece ID(s)** | JD014600004553806053 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| **Service** | EXPRESS WORLDWIDE doc | **Shipper Name** | OBEID LAW FIRM |
| **Picked Up** | 27 June 2017 at 17.50 | **Shipper Address** | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| **Number of Pieces** | 1 | | |
| **Weight** | 0.26 lbs / 0.12 kg | | |
| **Contents** | DOC | | |

Reference II



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 2903804540.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 2903804540 was delivered on 11 July 2017 at 10.46**

| | | | |
|---|---|---|---|
| Signed | MME TOURE | Receiver Name | REPUBLIC OF GUINEA |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR] |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004581558902 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 06 July 2017 at 14.43 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.22 lbs / 0.10 kg | | |
| Contents | DOCUMENT | | |

Reference 11



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 2903824206.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 2903824206 was delivered on 07 July 2017 at 14.32

| | | | |
|---|---|---|---|
| Signed | KONATE | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004581561595 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 06 July 2017 at 14.43 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.22 lbs / 0.10 kg | | |
| Contents | DOCUMENT | | |

Reference 12



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6576359742.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6576359742 was delivered on 08 August 2017 at 08.34**

| | | | |
|---|---|---|---|
| Signed | S CENTRAL | Receiver Name | JUDICIAL AGENT OF THE [GUINEAN] GOVERNMENT |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR] |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004646840328 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 04 August 2017 at 17.16 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 12



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6576341656.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6576341656 was delivered on 07 August 2017 at 15.12**

| | | | |
|---|---|---|---|
| Signed | MARWA | Receiver Name | GUINEAN EMBASSY IN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004646838217 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 04 August 2017 at 17.16 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0 17 lbs / 0 08 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 13



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 8574966304.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 8574966304 was delivered on 04 September 2017 at 09.56**

| | | | |
|---|---|---|---|
| Signed | S CENTRAL | Receiver Name | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE CONAKRY CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004738971555 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 30 August 2017 at 15.30 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.26 lbs / 0.12 kg | | |
| Contents | DOC | | |

Reference 13



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 8574952455.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 8574952455 was delivered on 31 August 2017 at 14.42**

| | | | |
|---|---|---|---|
| Signed | SOUMAN | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004738969904 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 30 August 2017 at 15.30 | Shipper Address | STRATUM BUILDING 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0 26 lbs / 0.12 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 14



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6557398842.

Thank you for choosing DHL Express

www.dhl.com

**Your shipment 6557398842 was delivered on 06 October 2017 at 10.12**

| | | | |
|---|---|---|---|
| Signed | SECRETARIAT | Receiver Name | **REPUBLIC OF GUINEA** |
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004838278461 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 03 October 2017 at 15 29 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0 08 kg | | |
| Contents | DOC | | |

Reference 14



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6557390070.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6557390070 was delivered on 09 October 2017 at 13.52**

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004838277446 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 03 October 2017 at 15 29 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 15



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5133084515.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5133084515 was delivered on 09 October 2017 at 11.02**

| | | | |
|---|---|---|---|
| Signed | MME KEITA | Receiver Name | **REPUBLIC OF GUINEA** |
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004851934799 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 04 October 2017 at 15.18 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 15



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5133068861.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5133068861 was delivered on 05 October 2017 at 14.16**

| | | | |
|---|---|---|---|
| Signed | KATI | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004851932884 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 04 October 2017 at 15.19 | Shipper Address | STRATUM BUILDING 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT<br>BEIRUT |
| Weight | 0.17 lbs / 0.08 kg | | LEBANON |
| Contents | DOC | | |

Reference 16-17



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7566803893.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7566803893 was delivered on 10 November 2017 at 10.54**

| | | | |
|---|---|---|---|
| Signed | SECRETARIAT | Receiver Name | REPUBLIC OF GUINEA |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR] BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004940742898 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 08 November 2017 at 10 48 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 1.49 lbs / 0.68 kg | | |
| Contents | DOC | | |

Reference 16-17



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7566827380.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7566827380 was delivered on 09 November 2017 at 10.45**

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600004940746291 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 08 November 2017 at 10.48 | Shipper Address | STRATUM BUILDING 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 1.49 lbs / 0.68 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 16–17



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7566872865.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 7566872865 was delivered on 10 November 2017 at 10.26

| Signed | SECRETARIAT | Receiver Name | MINISTER OF PUBLIC WORKS |
|---|---|---|---|
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004940752611 |

## Additional Shipment Details

| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
|---|---|---|---|
| Picked Up | 08 November 2017 at 10.48 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 1.49 lbs / 0.68 kg | | |
| Contents | DOC | | |

Reference 18-22



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 8122661422.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 8122661422 was delivered on 21 December 2017 at 10.13**

| | | | |
|---|---|---|---|
| Signed | MME KEITA | Receiver Name | **REPUBLIC OF GUINEA** |
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005067455654 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 19 December 2017 at 11.44 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 18-22



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 8122613450.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 8122613450 was delivered on 20 December 2017 at 13.20**

| | | | |
|---|---|---|---|
| Signed | cathy | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE |
| | | | PARIS |
| | | | PARIS |
| | | | FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005067449303 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 19 December 2017 at 11 44 | Shipper Address | STRATUM BUILDING 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.17 lbs / 0.08 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 18-22



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 8122644832.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 8122644832 was delivered on 21 December 2017 at 09.17**

| | | | |
|---|---|---|---|
| Signed | MR KEITA | Receiver Name | **MINISTER OF PUBLIC WORKS** |
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005067453475 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 19 December 2017 at 11.44 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 23-24



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6480458611.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6480458611 was delivered on 03 January 2018 at 11.31**

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | **REPUBLIC OF GUINEA** |
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE |
| | | | CONAKRY |
| | | | GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005113027522 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 29 December 2017 at 15 17 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.17 lbs / 0 08 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 23-24



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6480453206.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6480453206 was delivered on 02 January 2018 at 11.13**

| | | | |
|---|---|---|---|
| Signed | idrissa | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005113026752 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 29 December 2017 at 15.17 | Shipper Address | STRATUM BUILDING, 4TH FLOOR<br>OMAR DAOUK STREET BEIRUT<br>BEIRUT<br>LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 23-24



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6480464233.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6480464233 was delivered on 03 January 2018 at 11.00**

| | | | |
|---|---|---|---|
| Signed | MR KEITA | Receiver Name | **MINISTER OF PUBLIC WORKS** |
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005113028173 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 29 December 2017 at 15.17 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 25



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 4535893401.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 4535893401 was delivered on 12 January 2018 at 12.08**

| | | | |
|---|---|---|---|
| Signed | MME NABE | Receiver Name | **REPUBLIC OF GUINEA** |
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005239301326 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 10 January 2018 at 10.47 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.13 lbs / 0.06 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 25



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 4535860022.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 4535860022 was delivered on 11 January 2018 at 11.14**

| | | | |
|---|---|---|---|
| **Signed** | cofy | **Receiver Name** | **GUINEAN EMBASSY IN FRANCE** |
| **Signature** | | **Receiver Address** | 51, RUE DE LA FAISANDERIE |
| | | | PARIS |
| | | | PARIS |
| | | | FRANCE |
| **Shipment Status** | Delivered | **Piece ID(s)** | JD014600005239296742 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| **Service** | EXPRESS WORLDWIDE doc | **Shipper Name** | OBEID LAW FIRM |
| **Picked Up** | 10 January 2018 at 10.46 | **Shipper Address** | STRATUM BUILDING, 4TH FLOOR |
| **Number of Pieces** | 1 | | OMAR DAOUK STREET BEIRUT |
| **Weight** | 0.13 lbs / 0.06 kg | | BEIRUT |
| **Contents** | DOC | | LEBANON |

*Reference 25*



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 4535877021.

Thank you for choosing DHL Express

www.dhl.com

## Your shipment 4535877021 was delivered on 12 January 2018 at 10.48

| Signed | MR KEITA | Receiver Name | MINISTER OF PUBLIC WORKS |
|---|---|---|---|
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA,<br>KALOUM<br>CONAKRY<br>GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005239299128 |

### Additional Shipment Details

| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
|---|---|---|---|
| Picked Up | 10 January 2018 at 10.47 | Shipper Address | STRATUM BUILDING. 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.13 lbs / 0.06 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 26



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6856529956.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6856529956 was delivered on 17 January 2018 at 14.19**

| | | | |
|---|---|---|---|
| Signed | konate | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005257772633 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 15 January 2018 at 15.16 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 26



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6856536551.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6856536551 was delivered on 18 January 2018 at 09.05**

| | | | |
|---|---|---|---|
| Signed | MR KEITA | Receiver Name | MINISTER OF PUBLIC WORKS |
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005257773613 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 15 January 2018 at 15.16 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

*Reference 27*



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 2660218315.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 2660218315 was delivered on 30 January 2018 at 11.06

| | | | |
|---|---|---|---|
| Signed | MME KEITA | Receiver Name | **REPUBLIC OF GUINEA** |
| Shipment Status | Delivered | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005297069229 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 26 January 2018 at 14.43 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0 06 kg | | |
| Contents | DOC | | |

Reference 27



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 2660214561.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 2660214561 was delivered on 29 January 2018 at 10.50**

| | | | |
|---|---|---|---|
| Signed | john | Receiver Name | GUINEAN EMBASSY IN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005297068732 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 26 January 2018 at 14.42 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0 13 lbs / 0 06 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 27



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 2660220835.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 2660220835 was delivered on 30 January 2018 at 10.10**

| | | | |
|---|---|---|---|
| Signed | MR KEITA | Receiver Name | **MINISTER OF PUBLIC WORKS** |
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005297069546 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 26 January 2018 at 14.42 | Shipper Address | STRATUM BUILDING. 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 28



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7352149615.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7352149615 was delivered on 20 February 2018 at 10.03**

| | | | |
|---|---|---|---|
| Signed | MME TOURE | Receiver Name | REPUBLIC OF GUINEA |
| Signature | | Receiver Address | IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR] |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005350620152 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 February 2018 at 14.29 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

*Reference 28*



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7352143514.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 7352143514 was delivered on 19 February 2018 at 10.37

| | | | |
|---|---|---|---|
| Signed | cathy | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005350619388 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 February 2018 at 14.29 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.17 lbs / 0.08 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 28



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7352147003.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7352147003 was delivered on 20 February 2018 at 09.26**

| | | | |
|---|---|---|---|
| Signed | RL KABA | Receiver Name | **MINISTER OF PUBLIC WORKS** |
| Signature | | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005350619838 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 February 2018 at 14.29 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 29



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7629639345.

Thank you for choosing DHL Express.

www.dhl.com

### Your shipment 7629639345 was delivered on 01 March 2018 at 12.15

| | | | |
|---|---|---|---|
| **Signed** | MR CAMARA | **Receiver Name** | **REPUBLIC OF GUINEA** |
| **Signature** | | **Receiver Address** | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | **BOULEVARD DU COMMERCE** |
| | | | **CONAKRY** |
| | | | **GUINEA REPUBLIC** |
| **Shipment Status** | Delivered | | |
| | | **Piece ID(s)** | JD014600005377974536 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| **Service** | EXPRESS WORLDWIDE doc | **Shipper Name** | OBEID LAW FIRM |
| **Picked Up** | 27 February 2018 at 11.14 | **Shipper Address** | STRATUM BUILDING, 4TH FLOOR |
| **Number of Pieces** | 1 | | OMAR DAOUK STREET BEIRUT |
| **Weight** | 0.17 lbs / 0.08 kg | | BEIRUT |
| **Contents** | DOC | | LEBANON |

Reference 29



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7629620596.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7629620596 was delivered on 28 February 2018 at 11.07**

| | | | |
|---|---|---|---|
| Signed | cathy | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005377972063 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 27 February 2018 at 11.16 | Shipper Address | STRATUM BUILDING, 4TH FLOOR<br>OMAR DAOUK STREET BEIRUT<br>BEIRUT<br>LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 29



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7629631096.

Thank you for choosing DHL Express

www.dhl.com

**Your shipment 7629631096 was delivered on 01 March 2018 at 10.41**

| | | | |
|---|---|---|---|
| Signed | ELHADJ KABA | Receiver Name | **MINISTER OF PUBLIC WORKS** |
| Signature | | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005377973384 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 27 February 2018 at 11.14 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 30 -31



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6481062722.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6481062722 was delivered on 27 March 2018 at 10.59**

| | | | |
|---|---|---|---|
| Signed Signature | MME KEITA | Receiver Name | **REPUBLIC OF GUINEA** |
| | | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005454779699 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 23 March 2018 at 14 21 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.17 lbs / 0.08 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 30 -31



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6481051135.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6481051135 was delivered on 26 March 2018 at 10.52**

| | | | |
|---|---|---|---|
| Signed | cathy | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005454778266 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 23 March 2018 at 14 21 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0 13 lbs / 0.06 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 30 -31



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6481056153.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6481056153 was delivered on 27 March 2018 at 10.15**

| Signed | MR KABA | Receiver Name | **MINISTER OF PUBLIC WORKS** |
|---|---|---|---|
| Signature | | Receiver Address | BOULEVARD DU COMMERCE ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005454778868 |

**Additional Shipment Details**

| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
|---|---|---|---|
| Picked Up | 23 March 2018 at 14 21 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |



Reference 32

18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1901885834.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 1901885834 was delivered on 09 April 2018 at 11.11

| | | | |
|---|---|---|---|
| Signed | SECRETARIAT | Receiver Name | REPUBLIC OF GUINEA |
| Signature | | Receiver Address | IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR] |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005488819768 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 05 April 2018 at 12.06 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 1.32 lbs / 0.60 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 32



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1901867365.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 1901867365 was delivered on 06 April 2018 at 14.12**

| | | | |
|---|---|---|---|
| Signed | barry | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005488817459 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 05 April 2018 at 12 06 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 1.36 lbs / 0 62 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 32



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1901873761.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 1901873761 was delivered on 09 April 2018 at 09.02**

| | | | |
|---|---|---|---|
| Signed | MR KEITA | Receiver Name | MINISTER OF PUBLIC WORKS |
| Signature | | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005488818277 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 05 April 2018 at 12.06 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 1.36 lbs / 0.62 kg | | |
| Contents | DOC | | |

Reference 33



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5866015481.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5866015481 was delivered on 19 April 2018 at 11.11**

| | | | |
|---|---|---|---|
| Signed | MME KEITA | Receiver Name | **REPUBLIC OF GUINEA** |
| Signature | | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005523748900 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 April 2018 at 14.49 | Shipper Address | STRATUM BUILDING 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.13 lbs / 0 06 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 33



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5865951221.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5865951221 was delivered on 17 April 2018 at 14.45**

| | | | |
|---|---|---|---|
| Signed | katy | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005523740157 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 April 2018 at 14.49 | Shipper Address | STRATUM BUILDING 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.13 lbs / 0.06 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 33



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5866005305.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5866005305 was delivered on 19 April 2018 at 08.57**

| | | | |
|---|---|---|---|
| Signed | MR KEITA S CENTRAL | Receiver Name | MINISTER OF PUBLIC WORKS |
| Signature |  | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005523747500 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 April 2018 at 14 49 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 34-35



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6387218390.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6387218390 was delivered on 27 April 2018 at 09.40**

| | | | |
|---|---|---|---|
| Signed | SECRETARIAT | Receiver Name | **REPUBLIC OF GUINEA** |
| Signature | | Receiver Address | **IMMEUBLE ACGPMP [ACGPMP BUILDING] - 2ÈME ÉTAGE [2ND FLOOR]** |
| | | | BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005542401347 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 24 April 2018 at 15.25 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.13 lbs / 0 06 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 34-35



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6387199431.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6387199431 was delivered on 25 April 2018 at 14.27**

| | | | |
|---|---|---|---|
| Signed | katy | Receiver Name | **GUINEAN EMBASSY IN FRANCE** |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE<br>PARIS<br>PARIS<br>FRANCE |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005542398959 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 24 April 2018 at 15 25 | Shipper Address | STRATUM BUILDING, 4TH FLOOR<br>OMAR DAOUK STREET BEIRUT<br>BEIRUT<br>LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 34-35



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6387210045.

Thank you for choosing DHL Express

www.dhl.com

### Your shipment 6387210045 was delivered on 27 April 2018 at 09.25

| | | | |
|---|---|---|---|
| Signed | S CENTRAL KABA | Receiver Name | MINISTER OF PUBLIC WORKS |
| Signature | | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005542400321 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 24 April 2018 at 15.25 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

7/27/2018

**Tracking Results**

Track Shipments

*Reference 36*

✓ Waybill Number 4790203946
Signed for by: ELHADJ KABA
**Get Signature Proof of Delivery**

Monday, July 16, 2018 at 12:24
Origin Service Area
**BEIRUT - BEIRUT - LEBANON**
Destinalion Service Area
**CONAKRY - CONAKRY - GUINEA REPUBLIC**

1 Piece

| Monday, July 16, 2018 | | Location | Time | Pieces |
|---|---|---|---|---|
| 15 | Delivered - Signed for by  ELHADJ KABA | CONAKRY | 12:24 | 1 Piece |
| 14 | With delivery courier | CONAKRY - GUINEA REPUBLIC | 09:49 | 1 Piece |

| Sunday, July 15, 2018 | | Location | Time | Pieces |
|---|---|---|---|---|
| 13 | Arrived at Sort Facility CONAKRY - GUINEA REPUBLIC | CONAKRY - GUINEA REPUBLIC | 10:16 | 1 Piece |
| 12 | Departed Facility in DAKAR - SENEGAL | DAKAR - SENEGAL | 05:49 | 1 Piece |
| 11 | Processed at DAKAR - SENEGAL | DAKAR - SENEGAL | 05:41 | 1 Piece |

| Saturday, July 14, 2018 | | Location | Time | Pieces |
|---|---|---|---|---|
| 10 | Arrived at Sort Facility CASABLANCA - MOROCCO | CASABLANCA - MOROCCO | 11:35 | 1 Piece |
| 9 | Departed Facility in BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 07:04 | 1 Piece |
| 8 | Processed at BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 02:35 | 1 Piece |

| Friday, July 13, 2018 | | Location | Time | Pieces |
|---|---|---|---|---|
| 7 | Arrived at Sort Facility BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 18:06 | 1 Piece |
| 6 | Departed Facility in PARIS - FRANCE | PARIS - FRANCE | 13:00 | 1 Piece |
| 5 | Processed at PARIS - FRANCE | PARIS - FRANCE | 10:03 | 1 Piece |
| 4 | Arrived at Sort Facility PARIS - FRANCE | PARIS - FRANCE | 08:57 | 1 Piece |

| Thursday, July 12, 2018 | | Location | Time | Pieces |
|---|---|---|---|---|
| 3 | Departed Facility in BEIRUT - LEBANON | BEIRUT - LEBANON | 20:46 | 1 Piece |
| 2 | Processed at BEIRUT - LEBANON | BEIRUT - LEBANON | 20:06 | 1 Piece |
| 1 | Shipment picked up | BEIRUT - LEBANON | 15:15 | 1 Piece |

7/27/2018

**Tracking Results**

Track Shipments

*Reference 36*

✓     Waybill Number 4058571145
      Signed for by: **KONATE**
      **Get Signature Proof of Delivery**

**Friday, July 13, 2018 at 14:36**
Origin Service Area
**BEIRUT - BEIRUT - LEBANON**
Destination Service Area
**PARIS - PARIS - FRANCE**

1 Piece

**Friday, July 13, 2018**

| | | Location | Time | Pieces |
|---|---|---|---|---|
| 8 | Delivered - Signed for by  KONATE | PARIS | 14 36 | 1 Piece |
| 7 | With delivery courier | PARIS - FRANCE | 13 14 | 1 Piece |
| 6 | Arrived at Sort Facility PARIS - FRANCE | PARIS - FRANCE | 11 06 | 1 Piece |
| 5 | Departed Facility in PARIS - FRANCE | PARIS - FRANCE | 10 42 | 1 Piece |
| 4 | Processed at PARIS - FRANCE | PARIS - FRANCE | 10 16 | 1 Piece |

**Thursday, July 12, 2018**

| | | Location | Time | Pieces |
|---|---|---|---|---|
| 3 | Departed Facility in BEIRUT - LEBANON | BEIRUT - LEBANON | 20 46 | 1 Piece |
| 2 | Processed at BEIRUT - LEBANON | BEIRUT - LEBANON | 20 05 | 1 Piece |
| 1 | Shipment picked up | BEIRUT - LEBANON | 15 09 | 1 Piece |

7/27/2018

Tracking Results

Track Shipments

Keterence 36

✓  Waybill Number 4058570320
   Signed for by: MME CONTE
   Get Signature Proof of Delivery

**Monday, July 16, 2018 at 11:30**
Origin Service Area
**BEIRUT - BEIRUT - LEBANON**
Destination Service Area
**CONAKRY - CONAKRY - GUINEA REPUBLIC**

1 Piece

| Monday, July 16, 2018 | | Location | Time | Pieces |
|---|---|---|---|---|
| 15 | Delivered - Signed for by: MME CONTE | CONAKRY | 11.30 | 1 Piece |
| 14 | With delivery courier | CONAKRY - GUINEA REPUBLIC | 09.49 | 1 Piece |

| Sunday, July 15, 2018 | | Location | Time | Pieces |
|---|---|---|---|---|
| 13 | Arrived at Sort Facility CONAKRY - GUINEA REPUBLIC | CONAKRY - GUINEA REPUBLIC | 10.15 | 1 Piece |
| 12 | Departed Facility in DAKAR - SENEGAL | DAKAR - SENEGAL | 06.49 | 1 Piece |
| 11 | Processed at DAKAR - SENEGAL | DAKAR - SENEGAL | 05.41 | 1 Piece |

| Saturday, July 14, 2018 | | Location | Time | Pieces |
|---|---|---|---|---|
| 10 | Arrived at Sort Facility CASABLANCA - MOROCCO | CASABLANCA - MOROCCO | 11.35 | 1 Piece |
| 9 | Departed Facility in BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 07.04 | 1 Piece |
| 8 | Processed at BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 02.35 | 1 Piece |

| Friday, July 13, 2018 | | Location | Time | Pieces |
|---|---|---|---|---|
| 7 | Arrived at Sort Facility BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 18.06 | 1 Piece |
| 6 | Departed Facility in PARIS - FRANCE | PARIS - FRANCE | 13.00 | 1 Piece |
| 5 | Processed at PARIS - FRANCE | PARIS - FRANCE | 10.03 | 1 Piece |
| 4 | Arrived at Sort Facility PARIS - FRANCE | PARIS - FRANCE | 08.57 | 1 Piece |

| Thursday, July 12, 2018 | | Location | Time | Pieces |
|---|---|---|---|---|
| 3 | Departed Facility in BEIRUT - LEBANON | BEIRUT - LEBANON | 20.46 | 1 Piece |
| 2 | Processed at BEIRUT - LEBANON | BEIRUT - LEBANON | 20.05 | 1 Piece |
| 1 | Shipment picked up | BEIRUT - LEBANON | 15.14 | 1 Piece |

# ICC 22056/DDA

## LA COMPAGNIE SAHÉLIENNE D'ENTREPRISE

### (Sénégal)

**Demanderesse**

C.

## LA REPUBLIQUE DE GUINEE

**Défenderesse**

---

### SENTENCE FINALE

**7 Août 2018**

**(Par application du Règlement CCI de 2012)**

---

### RENDUE
## PAR UN TRIBUNAL  ARBITRAL COMPOSE DE:

**Prof. Dr. Nayla Comair-Obeid** – Président

**Dr. Seydou Madani SY** – Co-Arbitre

**Me. Joachim Bilé-Aka** – Co-Arbitre

# Table des matières

LISTE D'ABREVIATIONS ........................................................................................................ 4

I.   PREAMBULE ................................................................................................................. 8

   A.   LES PARTIES ............................................................................................................. 8

     1.   LA DEMANDERESSE .............................................................................................. 8

     2.   LA DEFENDERESSE ............................................................................................... 8

   B.   LE TRIBUNAL ARBITRAL ........................................................................................ 13

     1.   CO-ARBITRES ..................................................................................................... 13

     2.   PRESIDENT DU TRIBUNAL ARBITRAL .................................................................. 14

II.   ELEMENTS FACTUELS AYANT CONDUIT AU DIFFEREND ............................................... 15

III.   CONVENTION D'ARBITRAGE ..................................................................................... 15

   A.   CLAUSE COMPROMISSOIRE ..................................................................................... 15

   B.   SIEGE DE L'ARBITRAGE .......................................................................................... 16

   C.   LANGUE DE LA PROCEDURE .................................................................................... 16

   D.   LOI APPLICABLE AU FOND DU LITIGE ...................................................................... 16

   E.   LOI ET REGLES APPLICABLES A LA PROCEDURE ....................................................... 17

IV.   RESUME DE LA PROCEDURE ..................................................................................... 17

   A.   RESUME DES DIFFERENTES ETAPES DE LA PROCEDURE ............................................ 17

   B.   ORDONNANCES DE PROCEDURE .............................................................................. 33

   C.   AUDIENCE DE PROCEDURE DU 23 JUIN 2017 ........................................................... 34

   D.   AUDIENCE FINALE DE PLAIDOIRIES  DU  19 ET 20 FEVRIER 2018 .............................. 35

V.   SOUMISSIONS DES PARTIES ET LES PRETENTIONS AVANCEES DANS LEURS SOUMISSIONS RESPECTIVES ..................................................................................................................... 37

     1.   REQUETE INTRODUCTIVE D'INSTANCE ARBITRALE (20 JUIN 2016) ...................... 37

     2.   MEMOIRE EN DEMANDE (21 JUILLET 2017) ........................................................ 39

VI.   MISSION DU TRIBUNAL ARBITRAL .......................................................................... 42

   A.   LES QUESTIONS DU TRIBUNAL ARBITRAL ET LA DEMANDE DE PRODUCTION DE DOCUMENTS 42

   B.   QUESTIONS A TRANCHER PAR LE TRIBUNAL ARBITRAL ........................................... 45

   C.   DATE BUTOIR POUR RENDRE LA SENTENCE ARBITRALE FINALE ............................... 46

VII.   LE TRIBUNAL ARBITRAL ........................................................................................ 47

A.   PREAMBULE ........................................................................................................ 47

B.   LES QUESTIONS A TRANCHER PAR LE TRIBUNAL ARBITRAL ....................................... 47

B.1. LA COMPETENCE DU TRIBUNAL ARBITRAL POUR RESOUDRE LE DIFFEREND ENTRE LES PARTIES DANS CET ARBITRAGE ................................................................................ 47

B.2.  L'EXECUTION DES OBLIGATIONS CONTRACTUELLES RESPECTIVES DES PARTIES ................... 53

B.3. LE DROIT DU DEMANDEUR A UNE COMPENSATION POUR LES DOMMAGES RECLAMES.............. 63

B.4. LA DEMANDE AFFERENTE A L'EXECUTION PROVISOIRE ............................................... 91

B.5.  LES INTERETS MORATOIRES ............................................................................... 92

B.6 LES COUTS ET FRAIS DE L'ARBITRAGE ................................................................ 98

VII-   DISPOSITIF ...................................................................................................... 102

## LISTE D'ABREVIATIONS

**Lois et règles de procédure applicables**

| | |
|---|---|
| Acte de mission | Acte de mission signé par la Demanderesse et les membres du Tribunal Arbitral lors de l'Audience de Procédure en date du 23 juin 2017 |
| Cahier des clauses administratives particulières | Le Cahier des clauses administratives particulières des Marchés Lot 4 et Lot 5 ou « CCAP » |
| Cahier des clauses administratives générales des marchés. | Le Cahier des clauses administratives générales des Marchés Lot 4 et Lot 5 ou « CCAG » |
| Calendrier procédural | Le Calendrier Procédural approuvé le 23 juin 2017 lors de l'Audience de Procédure |
| Droit Applicable | Droit Guinéen |
| Règlement de la chambre de Commerce Internationale de Paris | Le Règlement d'arbitrage de 2012 de la chambre de Commerce Internationale de Paris |
| Règles de procédure établies par le Tribunal Arbitral et adoptées | Adoptée lors de l'Audience de Procédure en date du 23 juin 2017 |

**Parties, Avocats, Experts, CCI et Tribunal Arbitral**

| | |
|---|---|
| Demanderesse | La Compagnie Sahélienne d'Entreprise, société anonyme de droit sénégalais, ayant son siège social à la Rocade Fann Bel Air à Dakar (Sénégal) ou « CSE » |

4

| | |
|---|---|
| Défenderesse | La République de Guinée Conakry, Etat souverain agissant par le biais de l'Agent Judiciaire de l'Etat ou « Maître d'ouvrage » |
| Avocat de la Demanderesse | Représentée par Dr. Abdoul Hamid Ndiaye, avocat au Barreau de Paris |
| Avocat de la Défenderesse | Non représentée |
| La Cour International d'Arbitrage de la Chambre de Commerce Internationale | La Cour de la CCI se situe à Paris, France |
| Le Secrétariat de la Chambre de Commerce Internationale | Le Secrétariat de la CCI se situe à Paris, France |
| Tribunal Arbitral | Le Tribunal Arbitral est composé des personnes suivantes : Prof. Dr. Nayla Comair-Obeid (Presidente), Dr. Seydou Madani (Co-arbitre) et Me. Joachim Bilké-Aka (Co-arbitre) |

**Général : Entités et individus pertinents**

| | |
|---|---|
| Ambassade de Guinée en France | 51, Rue de la Faisanderie, 75016, Paris, France |
| Bailleurs de Fonds | FKD, FSD, BADEA, OPEP |
| Ministère des travaux publics de la République de Guinée | Boulevard du commerce – Almamya, Kaloum, BP 581, Conakry, Guinée |
| M. Massamba Gueye | Directeur Administratif et Financier de la Compagnie Sahélienne d'entreprise – Témoin de fait de la Demanderesse |

**Soumission des Parties**

| | |
|---|---|
| Requête aux fins d'arbitrage | Soumission de la requête aux fins d'arbitrage le 20 juin 2016 |

5

| | |
|---|---|
| Mémoire en demande aux fins d'arbitrage | Mémoire en Demande soumis par la Demanderesse le 22 juillet 2017 |
| Les Questions du Tribunal Arbitral et Demande de Production de documents | Les questions du Tribunal Arbitral adressées à la Demanderesse en date du 3 octobre 2017 |
| Les réponses du demandeur aux questions du Tribunal Arbitral | Les réponses ont été soumises au Tribunal Arbitral le 25 octobre 2017 et un supplément de réponses a été soumis le 6 novembre 2017 et le 29 mars 2018 |
| Conférence téléphonique. | Le 19 décembre 2017 une conférence téléphonique s'est tenue en présence des membres du Tribunal Arbitral et de la Demanderesse représentée par Me Abdoul Ndiaye. La Défenderesse n'a pas participé en dépit de sa notification de la date de la conférence téléphonique |

**Autres Abréviations**

| | |
|---|---|
| Audience de procédure préliminaire | Une audience de procédure préliminaire s'est tenue à Paris le 23 juin 2017 |
| Audience Finale de Plaidoiries | L'Audience Finale s'est tenue les 19 et 20 février 2018 |
| Avenants | Avenant n° 1 du Marché de travaux n° 2003/0325/1/2/1/2/N en date du 25 juin 2003 et Avenant n° 1 du Marché de travaux n° 2003/0324/1/2/1/2/N en date du 25 juin 2003 |
| BND | Budget National de Développement |
| Certificat de réception définitive | Les Certificat de réception définitive du Marché Lot 4 et du Marché Lot 5 |
| C.Civ. | Code Civil |
| Décompte AD | Décompte Avance Démarrage |

6

| | |
|---|---|
| FKD | Fonds Koweitien de Développement |
| FSD | Fonds Saoudien de Développement |
| GNF | Franc Guinéen |
| Marché Lot 4 | Le Marché de Travaux intitulé « réaménagement de la 2x2 voies entre Tombo et l'aéroport de Gbessia (Conakry) Lot 4 : Tronçon Kenien –T1, Marché de Travaux n° 2003/0325/1/2/1/2/N en date du 25 juin 2003 |
| Marché Lot 5 | Le Marché de Travaux intitulé « réaménagement de la 2x2 voies entre Tombo et l'aéroport de Gbessia (Conakry) Lot 5 : Tronçon T1-T2 y compris les deux échangeurs aux carrefours de la T1 et la T2, Marché de Travaux n° 2003/0324/1/2/1/2/N en date du 25 juin 2003 » |
| Marchés | Marché Lot 4 et Marché Lot 5 |
| OPEP | Organisation des Pays Exportateurs de Pétrole |

7

## I.     PREAMBULE

### A.     LES PARTIES

#### 1.     La Demanderesse

1.     La **Compagnie Sahélienne D'Entreprise** (*CSE*), société anonyme de droit sénégalais, ayant son siège social à la Rocade Fann Bel Air à Dakar (Sénégal).

2.     La Demanderesse est représentée par :

**Me. Abdoul Hamid Ndiaye**

Avocat au Barreau de Paris
22, Avenue de l'Observatoire
75014, Paris
France

Tél : +33 6 20 64 84 10
Fax: +33 1 45 38 57 10
Courriel: andiaye.avocat@yahoo.fr

3.     Le conseil de la Demanderesse, Me. Abdoul Hamid Ndiaye, a été dûment autorisé à représenter la Demanderesse dans  la procédure d'arbitrage en vertu d'un mandat de représentation et d'assistance en date du 8 juin 2016.

#### 2.     La Défenderesse

4.     **La République de Guinée**, État souverain agissant par le biais de l'Agent Judiciaire de l'État, ayant pour adresses :

**La République de Guinée**
Agent judiciaire de l'Etat
Immeuble ACGPMP – 2ème Étage
Boulevard du Commerce
Conakry, Guinée

**Ambassade de Guinée en France**
51, Rue de la Faisanderie
75016, Paris
France
Tel:  +33 (1) 47 04 81 48
Fax: +33 (1) 47 04 57 65

5.   Le Tribunal Arbitral, dans ses correspondances datées du 8 septembre 2017, 2 et 6 Octobre 2017, a invité la Demanderesse à identifier, en plus des deux adresses de la Défenderesse identifiées dans le dossier, l'adresse du Ministère des Travaux Publics de la République de Guinée. La Demanderesse a identifié ladite adresse dans sa correspondance n° 10 en date du 25 Octobre 2017. Ainsi, depuis le 25 Octobre 2017, les correspondances du Tribunal Arbitral ont été également adressées à la nouvelle adresse suivante de la Défenderesse :

**La République de Guinée**
Ministre des Travaux Publics
Boulevard du commerce – Almamya, Kaloum
BP 581, Conakry, Guinée

6.   La défenderesse n'a pas participé à la procédure d'arbitrage, bien que l'ensemble des correspondances lui ait été adressée et dûment notifiée par DHL. Ci-dessous un tableau récapitulatif des correspondances et de leur date de réception par la Défenderesse.

9

| Correspondance | Date d'envoi par le Tribunal | Date de réception par l'Agent Judiciaire de l'État (Conakry, Guinée) | Date de réception par l'Ambassade de Guinée (Paris, France) | Le République de Guinée<br><br>Ministre des Travaux Publics | Annexe |
|---|---|---|---|---|---|
| AT-P-001 | 10 mai 2017 | 15 mai 2017 | 29 mai 2017 (envoyée avec AT-P-003) | | 1 |
| AT-P-002 | 23 mai 2017 | 26 mai 2017 | 29 mai 2017 (envoyée avec AT-P-003) | | 2 |
| AT-P-003 | 25 mai 2017 | 29 mai 2017 | 29 mai 2017 | | 3 |
| AT-P-004 | 6 juin 2017 | 9 juin 2017 | 7 juin 2017 | | 4 |
| AT-P-005 | 14 juin 2017 | 19 juin 2017 | 15 juin 2017 | | 5 |
| AT-P-006 | 15 juin 2017 | 20 juin 2017 | 16 juin 2017 | | 6 |
| AT-P-007 | 16 juin 2017 | 20 juin 2017 | 19 juin 2017 | | 7 |
| AT-P-008 | 20 juin 2017 | 27 juin 2017 | 21 juin 2017 | | 8 |
| AT-P-009 | 22 juin 2017 | 27 juin 2017 | 23 juin 2017 | | 9 |
| AT-P-010 | 27 juin 2017 | 3 juillet 2017 | 29 juin 2017 | | 10 |
| AT-P-011 | 6 juillet 2017 | 11 juillet 2017 | 7 juillet 2017 | | 11 |
| AT-P-012 | 4 août 2017 | 8 août 2017 | 7 août 2017 | | 12 |
| AT-P-013 | 30 août 2017 | 4 septembre 2017 | 31 août 2017 | | 13 |
| AT-P-014 | 3 octobre 2017 | 6 octobre 2017 | 9 octobre 2017 | | 14 |
| AT-P-015 | 4 octobre 2017 | 9 octobre 2017 | 5 octobre 2017 | | 15 |
| AT-P-016 | 6 novembre 2017 | 10 novembre 2017 | 9 novembre 2017 | 10 novembre 2017 | 16 - 17 |
| AT-P-017 | 7 novembre 2017 | 10 novembre 2017 | 9 novembre 2017 | 10 novembre 2017 | |

| | | | | |
|---|---|---|---|---|
| **AT-P-018** | 12 décembre 2017 | 21 décembre 2017 | 20 décembre 2017 | 21 décembre 2017 |
| **AT-P-019** | 14 décembre 2017 | 21 décembre 2017 | 20 décembre 2017 | 21 décembre 2017 |
| **AT-P-20** | 16 décembre 2017 | 21 décembre 2017 | 20 décembre 2017 | 21 décembre 2017 |
| **AT-P-21** | 17 décembre 2017 | 21 décembre 2017 | 20 décembre 2017 | 21 décembre 2017 | 18 - 22 |
| **AT-P-22** | 18 décembre 2017 | 21 décembre 2017 | 20 décembre 2017 | 21 décembre 2017 | |
| **AT-P-23** | 21 décembre 2017 | 3 janvier 2018 | 2 janvier 2018 | 3 janvier 2018 | |
| **AT-P-24** | 18 décembre 2017 | 3 janvier 2018 | 2 janvier 2018 | 3 janvier 2018 | 23 - 24 |
| **AT-P-25** | 8 janvier 2018 | 12 janvier 2018 | 11 janvier 2018 | 12 janvier 2018 | 25 |
| **AT-P-26** | 12 janvier 2018 | 18 janvier 2018 | 17 janvier 2018 | 18 janvier 2018 | 26 |
| **AT-P-27** | 24 janvier 2018 | 30 janvier 2018 | 29 janvier 2018 | 30 janvier 2018 | 27 |
| **AT-P-28** | 15 février 2018 | 20 février 2018 | 19 février 2018 | 20 février 2018 | 28 |
| **AT-P-29** | 26 février 2018 | 1 mars 2018 | 28 février 2018 | 1 mars 2018 | 29 |
| **AT-P-30** | 27 février 2018 | 27 mars 2018 | 26 mars 2018 | 27 mars 2018 | |
| **AT-P-31** | 22 mars 2018 | 27 mars 2018 | 26 mars 2018 | 27 mars 2018 | 30 – 31 |
| **AT-P-32** | 29 mars 2018 | 9 avril 2018 | 6 avril 2018 | 9 avril 2018 | 32 |
| **AT-P-33** | 14 April 2018 | 19 April 2018 | 17 April 2018 | 19 avril 2018 | 33 |
| **AT-P-34** | 17 avril 2018 | 27 avril 2018 | 25 avril 2018 | 27 avril 2018 | |
| **AT-P-35** | 24 avril 2018 | 27 avril 2018 | 25 avril 2018 | 27 avril 2018 | 34-35 |
| **AT-P-36** | 12 juillet 2018 | 16 juillet 2018 | 13 Juillet 2018 | 16 juillet 2018 | 36 |

7.   Le Tribunal Arbitral joint en annexe de la présente sentence finale la totalité des récépissés DHL de transmission à la Défenderesse de l'ensemble des correspondances qui démontrent que la Défenderesse a effectivement pu prendre connaissance de l'ensemble de ces correspondances, et a de ce fait été valablement informée de la procédure arbitrale.

8.   Le Tribunal Arbitral relève ainsi ce qui suit :

11

- Il ne fait aucun doute que la Défenderesse était informée de cet arbitrage depuis son commencement ;

- La Défenderesse a été dûment et valablement notifiée de la requête d'arbitrage de la Demanderesse conformément aux termes de l'article 4 du Règlement CCI, et elle a clairement été notifiée de cette procédure et de l'intention de la CCI de nommer un Tribunal Arbitral pour résoudre le présent différend ;

- Le Tribunal Arbitral a pris toutes les mesures nécessaires pour identifier une deuxième et troisième adresse de la Défenderesse à savoir celles de L'Ambassade de Guinée à Paris et du Ministère des Travaux Publics de la République de la Guinée afin de lui notifier l'ensemble des correspondances et actes de procédure.

- Plusieurs mesures complémentaires ont été prises par le Demandeur et le Tribunal Arbitral pour s'assurer que la Défenderesse était avisée de cet arbitrage ;

- Des efforts considérables et répétés ont été faits, tout au long de cette procédure, pour permettre à la Défenderesse de participer à toutes les étapes de l'arbitrage ; et

- Toutes les notifications ont été valablement faites à la Défenderesse conformément à l'article 3(2) du Règlement de la CCI.

9.      Compte tenu de ce qui précède, le Tribunal Arbitral estime que toutes les mesures raisonnablement nécessaires à la notification de la Défenderesse de cet arbitrage ont été prises ; qu'il n'y avait aucun obstacle à la participation de la Défenderesse à cet arbitrage et que l'absence de la Défenderesse à cet arbitrage est un choix délibéré de sa part et non le résultat d'une absence de notification.

12

**B.**     LE TRIBUNAL ARBITRAL

**1.**     **Co-Arbitres**

10.     Dr. Seydou Madani Sy fut désigné Co-Arbitre par la Demanderesse et confirmé par la Cour le 28 avril 2017 en vertu de l'Article 13(1) du Règlement CCI. Ses coordonnées sont les suivantes :

**Dr. Seydou Madani SY**

Ngor Almadies – villa n°6
Rues 96 x 99
B.P. 6183 Dakar-Etoile
12900, Dakar
Sénégal

Tél: +221 33 865 07 07
+221 77 504 81 40
Courriel : madani.sy@gmail.com

11.     Me Joachim Bilé-Aka fut nommé Co-Arbitre directement par la Cour le 28 avril 2017 à titre de Co-Arbitre en lieu et place de la Défenderesse qui n'a pas désigné de Co-Arbitre, en vertu des Articles 12(4) et 13(4)(a) du Règlement CCI. Ses coordonnées sont les suivantes :

**Me Joachim BILÉ-AKA**

Bilé-Aka, Brizoua-Bi & Associés
7 boulevard Latrille
25 BP 945 Abidjan 25
Côte D'Ivoire

Tél : +225 22 40 64 30
Mobile : +225 07 07 65 66
Télécopie : +225 22 48 89 28
Courriel : joachim.bileaka@bilebrizoua.ci

2.   **Président du Tribunal Arbitral**

12.   Le 28 avril 2017, la Cour internationale d'arbitrage de la Chambre de Commerce Internationale (la *Cour*) nomma directement Prof. Dr. Nayla Comair-Obeid Présidente du Tribunal Arbitral en vertu de l'Article 13(4)(a) du Règlement d'arbitrage de la Chambre de Commerce International en vigueur à compter du 1 janvier 2012 (le *Règlement CCI*). Prof. Dr. Comair-Obeid a pris acte de sa nomination dans sa lettre aux Parties en date du 10 Mai 2017. Ses coordonnées sont les suivantes :

**Prof. Dr. Nayla COMAIR-OBEID**

Obeid Law Firm
Immeuble Stratum, 4ème Étage
Rue Omar Daouk, Quartier Mina El Hosn
Centre ville de Beyrouth
Beyrouth, Liban

Tel : +961 1 36 37 90
Fax: +961 1 36 37 91
Courriels: nayla@obeidlawfirm.com; info@obeidlawfirm.com

## II.   LE SECRÉTARIAT DE LA CCI

13.   Mme Florence Richard est la Conseillère en charge de ce dossier pour le Secrétariat de la CCI. Ses coordonnées sont les suivantes :

Mme Florence Richard
Secrétariat de la Cour internationale d'arbitrage de la CCI
33-43, Avenue du Président Wilson
75116, Paris, France
Tel. : +33 1 49 53 29 51
Fax : +33 1 49 53 57 75
Courriel : ica2@iccwbo.org

14.   Mme Florence Richard est également assistée par les Conseillers Adjoints suivants : Mme Constance Castres Saint-Martin (tel. +33 1 49 53 29 28), Mr Sébastien Pépin (tel. +33 1 49 53 30 37) et M Aurélien Zuber (tel. +33 1 49 53 29 79).

14

## II.   ELEMENTS FACTUELS AYANT CONDUIT AU DIFFEREND

15.   En date du 25 Juin 2003, deux marchés de travaux publics pour la réalisation de deux projets de réaménagement de différents tronçons (Lots 4 et 5) de la 2x2 voies entre Tombo et l'aéroport de Gbessia (Conakry), ont été conclus entre la Défenderesse (à titre de maître de l'ouvrage) et la Demanderesse (à titre d'entrepreneur). Il s'agit des deux marchés de travaux publics suivants : le marché de travaux N° *2003/0325/1/2/1/2/N* en date du 25 juin 2003 intitulé « *Lot 4 : Tronçon Kenien –T1»* et le marché de travaux N° 2003/0324/1/2/1/2/N en date du 25 juin 2003 intitulé « *Lot 5 : Tronçon T1-T2 y compris les deux échangeurs aux carrefours de la T1 et la T2* ». Ces marchés seront ci-après dénommés « ***Marché Lot 4*** », « ***Marché Lot 5*** » et ensemble les « ***Marchés*** ».

16.   Ces Marchés ont fait l'objet de deux avenants. Le premier Avenant, en date du 19 janvier 2010, est relatif au Marché Lot 4 intitulé « *Avenant N°1 au contrat N° 2003/0325/1/2/1/2/N réaménagement de la route 2x2 voies Tombo-Gbessia, Lot 4 : Kenien-T1»*. Le second Avenant, en date du 19 janvier 2010, est relatif au Marché Lot 5 intitulé « *Avenant N°1 au contrat N°2003/0324/1/2/1/2/N réaménagement de la route 2x2 voies Tombo-Gbessia, Lot 5 : T1-T2* ». Ces Avenants seront ci-après dénommés « ***Avenant Marché Lot 4*** », « ***Avenant Marché Lot 5*** » et ensemble les « ***Avenants***».

17.   Le litige opposant les Parties et faisant l'objet du présent arbitrage, est né à l'occasion de l'exécution des Avenants.

## III.   CONVENTION D'ARBITRAGE

### A.   CLAUSE COMPROMISSOIRE

18.   Les Marchés objets de cet arbitrage sont régis par les Cahiers des clauses administratives générales et particulières contenant chacun une clause de règlement des différends.

19.   L'article 50 du Cahier des clauses administratives des deux Marchés stipule que :

« *50. Règlement des différends*
*50.1 Intervention du Maitre de l'Ouvrage*
*Si un différend survient entre le Maitre d'Œuvre et l'Entrepreneur, sous la forme de réserves faites à un ordre de service ou sous toute autre forme, l'Entrepreneur remet au Maitre d'Œuvre, aux fins de transmission au Maitre de l'Ouvrage par l'intermédiaire du Chef de Projet, un mémoire exposant les motifs et indiquant les montants de ses réclamations.*

*En l'absence de réponse satisfaisante reçue dans un délai de quinze (15) jours à partir de la date de réception, par le Maitre de l'Ouvrage, de la lettre ou du mémoire de*

15

*l'Entrepreneur, l'Entrepreneur dispose de quinze (15) jours pour soumettre au Conciliateur, le différend relatif à sa réclamation ou la réponse qui y est faite par le Maitre d'Œuvre. »*

20.    Le Cahier des clauses administratives particulières prévoit également en son article 29 une disposition relative aux règlements des différends:

*« **Article 29. Règlement des différends** (CCAG Article 50)*
*50.31 Tous différends découlant du présent Marche seront tranchés définitivement selon le Règlement de conciliation et d'arbitrage de la Chambre de commerce internationale de Paris, France, par un ou plusieurs arbitres nommés conformément à ce Règlement. »*

**B.    SIEGE DE L'ARBITRAGE**

21.    Le lieu de cet arbitrage est Paris (France), tel que fixé par la Cour en vertu de l'Article 12 (2) du Règlement CCI.

**C.    LANGUE DE LA PROCEDURE**

22.    La Clause Compromissoire étant silencieuse sur la langue de l'arbitrage, la Demanderesse dans sa Requête aux fins d'arbitrage, demanda que le français soit la langue de l'arbitrage.

23.    Par correspondance en date du 23 mai 2017, le Tribunal invita la Défenderesse à faire part de ses commentaires sur la langue de l'arbitrage au plus tard le 2 juin 2017.

24.    N'ayant reçu aucun retour de la Défenderesse à ce sujet, le Tribunal détermina dans son Ordonnance de Procédure no. 1 en date du 5 juin 2017 que la langue de cet arbitrage sera le français.

**D.    LOI APPLICABLE AU FOND DU LITIGE**

25.    L'article 51.1 du Cahier des clauses administratives générales des deux Marchés, intitulé « Règlement des différends », prévoit que : *« En l'absence de disposition figurant au CCAP, le droit applicable pour l'interprétation et l'exécution du présent Marché est le droit du pays du Maître de l'Ouvrage »*

26.    Le Cahier des clauses administratives particulières des deux Marchés ne contient pas de dispositions relatives au droit applicable. Conséquemment, le droit applicable au présent litige est le droit du pays du maître de l'ouvrage, i.e. le droit guinéen.

16

E.   LOI ET REGLES APPLICABLES A LA PROCEDURE

27.   Sous réserve de toute disposition d'ordre public du droit du siège de l'arbitrage, soit le Code de Procédure Civil français, la présente instance sera gouvernée par :

- Le Règlement CCI 2012; et au cas où le Règlement ne traite pas d'un sujet déterminé
- Les Règles de procédure établies par le Tribunal Arbitral et adoptées lors de l'Audience de Procédure; et au cas où ces Règles ne traitent pas d'un sujet déterminé
- Toute autre règle de procédure convenue d'un commun accord des Parties ou, en l'absence d'un tel accord, déterminée à la discrétion du Tribunal.

## IV.   RESUME DE LA PROCEDURE

### A.   RESUME DES DIFFERENTES ETAPES DE LA PROCEDURE

28.   En date du 24 juin 2016, La Requête aux fins d'Arbitrage de la Demanderesse (la **Requête**) fut reçue par le Secrétariat de la CCI. Dans sa Requête, la Demanderesse proposa que l'arbitrage soit soumis à un arbitre unique, que le lieu de l'arbitrage soit Paris (France) et que la langue de l'arbitrage soit le français.

29.   Par correspondance en date du 12 août 2016, le Secrétariat de la CCI notifia la Défenderesse de la Requête et l'invita à soumettre sa Réponse à la Requête dans les 30 jours suivants la réception de ladite correspondance. La Défenderesse fut également invitée à faire part de ses commentaires sur la constitution du Tribunal, le lieu de l'arbitrage et la langue de l'arbitrage.

30.   Par correspondance en date du 3 novembre 2016, le Secrétariat de la CCI nota que la Requête avait été reçue par la Défenderesse le 16 août 2016 et que le délai de 30 jours accordé à la Défenderesse pour soumettre une Réponse avait expiré le 15 septembre 2016 (Article 5(1) du Règlement CCI) sans que cette Réponse ait été soumise. Le Secrétariat de la CCI informa également les Parties que le nombre d'arbitres et le lieu de l'arbitrage seraient déterminés par la Cour (Articles 12 (2) et 18(1) du Règlement CCI) alors que le langage de l'arbitrage serait déterminé par le Tribunal Arbitral (Article 20 du Règlement CCI).

31.   Par correspondance en date du 2 décembre 2016, le Secrétariat de la CCI informa les Parties que la Cour avait fixé Paris (France) comme lieu de l'arbitrage (Article 12 (2) du Règlement CCI) et avait décidé de soumettre le présent arbitrage à trois arbitres (Articles 12 (2) du Règlement CCI). Le Secrétariat a également informé les parties que la Cour avait

17

fixé le montant de la provision pour frais de l'arbitrage à US$ 510 000, sous réserve de réévaluations ultérieures, toutes trois décisions le 24 novembre 2016.

32.   Par correspondance en date du 3 janvier 2017, le Secrétariat de la CCI invita la Demanderesse à nommer un Co-Arbitre dans un délai de 15 jours.

33.   Par correspondance en date du 17 janvier 2017, la Demanderesse nomma Dr Seydou Madani Sy comme Co-Arbitre.

34.   Par correspondance en date du 24 janvier 2017, le Secrétariat de la CCI invita la Défenderesse à nommer un Co-Arbitre dans un délai de 15 jours, à défaut de quoi la Cour nommerait un arbitre en son nom (Articles 12 (4) du Règlement CCI).

35.   Par correspondance en date du 31 janvier 2017, le Secrétariat de la CCI circula aux Parties une copie de la Déclaration d'acceptation, de disponibilité, d'impartialité et d'indépendance ainsi que le *curriculum vitae* de Dr Seydou Madani Sy.

36.   Par correspondance en date du 21 avril 2017, le Secrétariat de la CCI nota que la Défenderesse n'avait pas procédé à la désignation d'un arbitre dans le délai imparti de 15 jours suivant la réception de la lettre du Secrétariat de la CCI en date du 24 janvier 2017 et informa les Parties que la Cour procéderait à la nomination d'un Co-Arbitre au nom de la Défenderesse (Article 12 (4) du Règlement CCI).

37.   Par correspondance en date du 28 avril 2017, le Secrétariat de la CCI transmit le dossier au Tribunal Arbitral et informa les Parties que la Cour Internationale d'Arbitrage de la CCI :

- ▪ Avait confirmé Dr Seydou Madani Sy en qualité de Co-Arbitre sur désignation de la Demanderesse (Article 13(1) du Règlement CCI) ;
- ▪ Avait nommé directement Me. Joachim Bilé-Aka en qualité de Co-Arbitre en lieu et place de la Défenderesse, celle-ci n'ayant alors pas désigné de Co-Arbitre (Articles 12(4) et 13(4)(a) du Règlement CCI);
- ▪ Avait nommé directement Prof. Dr. Nayla Comair-Obeid en qualité de Présidente du Tribunal Arbitral (Article 13(4) (a) du Règlement CCI).

38.   Par correspondance en date du 10 mai 2017, le Tribunal circula sa première lettre aux Parties traitant des points suivants :

- ▪ La participation de la Défenderesse qui n'avait toujours pas pris part à l'arbitrage. Le Tribunal référa les Parties notamment à l'Article 6(8) du Règlement CCI qui prévoit que l'arbitrage peut avoir lieu nonobstant le refus ou l'abstention de participation d'une Partie ;
- ▪ La préparation de l'Acte de Mission, des Règles de Procédures et du Calendrier Procédural. Les Parties furent invitées à soumettre un exposé sommaire de leurs

prétentions et demandes respectives pour intégration dans l'acte de mission et à confirmer leur disponibilité pour la tenue d'une conférence sur la gestion de la procédure le 23 juin 2017 ;

- Des communications entre les Parties et le Tribunal ;
- De la représentation des Parties.

39. Par correspondance en date du 19 mai 2017, la Demanderesse a joint sa communication n°1 datée du 15 Mai 2017, dans laquelle la Demanderesse :

- A prit acte des commentaires du Tribunal sur la participation de la Défenderesse à cet arbitrage, les communications entre les Parties et le Tribunal ainsi que la représentation des Parties ;
- Informa le Tribunal que la Demanderesse « *aurait souhaité, à ce stade de la procédure, s'en remettre à son mémoire aux fins d'arbitrage adressé à la Cour en date du 20 Juin 2016, tout en se réservant le droit de le réactualiser en y intégrant l'ensemble des frais et charges supportés dans le cadre de cette procédure arbitrale* » ;
- Confirma sa disponibilité pour la tenue de la conférence sur la gestion de la procédure le 23 juin 2017.

40. Par correspondance en date du 23 mai 2017, le Tribunal :

- Informa les Parties que toutes correspondances (incluant lettres et courriels) adressées par une Partie (Demanderesse ou Défenderesse) au Tribunal devraient également être envoyées à l'autre Partie par courrier recommandé (*e.g.* via DHL) et que la Partie émettrice du courrier devrait également conserver les accusés de réception pour chaque correspondance envoyée à l'autre Partie ;
- Confirma que, à moins de recevoir un retour de la Défenderesse d'ici au 2 juin 2017, la conférence sur la gestion de la procédure se tiendrait le 23 juin 2017 à Paris, invitant la Demanderesse à faire immédiatement toutes les réservations nécessaires à cette fin (location d'une salle d'audience et de salles de réunion, services de transcription en direct) ;
- Informa les Parties de sa préférence à ce que chaque Partie soumette un exposé sommaire de ses prétentions et demandes afin de satisfaire les conditions de l'Article 23(1) du Règlement CCI, clarifiant toutefois que chaque Partie pourrait se réserver le droit d'actualiser ses demandes ainsi que l'ensemble des dépens, frais et débours découlant de cet arbitrage.
- Invita la Défenderesse à faire part de ses commentaires sur la langue de l'arbitrage.

41. Par correspondance en date du 25 mai 2017, le Tribunal notifia l'entièreté du dossier de cet arbitrage à l'Ambassade de Guinée en France mentionnée ci-dessus et au nom de Son Excellence Monsieur Amara Camara, Ambassadeur de la République de Guinée en France et au Portugal.

42.   Par correspondance en date du 2 juin 2017, la Demanderesse a soumis la communication n° 2 dans laquelle elle :

- Confirma que toutes ses correspondances ultérieures seront envoyées à la Défenderesse par courrier recommandé ;
- Confirma son accord à ce que la conférence sur la gestion de la procédure se tienne au centre d'audience de la CCI à Paris le 23 juin 2017;
- Soumit l'exposé sommaire de ses prétentions et demandes conformément à l'Article 23 (1) du Règlement CCI ;
- Réitéra sa demande à ce que le français soit adopté comme langue de l'arbitrage.

43.   Par Ordonnance de Procédure no. 1 en date du 5 juin 2017, le Tribunal :

- Détermina que la langue de cet arbitrage serait le français ;
- Emit sa sommation finale ordonnant à la Défenderesse de participer à cet arbitrage et de contacter immédiatement le Tribunal et la Demanderesse.

44.   Par correspondance du 5 juin 2017, le tribunal[1] :

- Confirma que la conférence sur la gestion de la procédure se tiendrait le 23 juin 2017 à Paris.
- Demanda à la demanderesse de confirmer au plus tard le 9 juin 2017 qu'une salle de réunion et un service de transcription en direct seraient réservés au centre d'audience de la CCI à Paris.
- Circula un projet d'acte de mission, de règles de procédures et de calendrier de procédure et invita les Parties à faire part de leurs commentaires au plus tard le 14 juin 2017.

45.   Par deux correspondances en date du 12 juin 2017 intitulées respectivement communication de la Demanderesse n° 3 et communication de la Demanderesse n° 4, la Demanderesse[2] :

- Confirma l'envoi à la Partie Défenderesse, par courrier recommandé, de ses communications No. 1, 2 et 3 en date du 15 mai 2017, 2 juin 2017 et 12 juin 2017, à l'adresse de l'agent judiciaire de l'Etat de la République de Guinée à Conakry et

---

[1] Le Tribunal Arbitral a pris note de l'envoi des correspondances par la Demanderesse à la Défenderesse par courrier recommandé à l'adresse de la Défenderesse en Guinée ainsi qu'à l'Ambassade de Guinée en France.

[2] La Demanderesse demanda également auprès du Secrétariat de la CCI de procéder à la réservation d'une salle d'audience au centre d'audience de la CCI pour le 23 juin 2017 conformément aux instructions du Tribunal Arbitral dans sa correspondance en date du 23 mai 2017 ; par correspondance en date du 14 juin 2017, le Tribunal informa la Demanderesse que la réservation de la salle d'audience devait se faire directement auprès du Centre d'audience de la CCI et que, normalement, le Secrétariat de la CCI n'est pas impliqué dans ce type de démarche.

également à l'adresse de la représentation diplomatique de la République Guinée en France, en soumettant les justificatifs d'envoi ;

46.   Par correspondance en date du 15 juin 2017, le Tribunal :

- N'ayant toujours pas reçu de retour des Parties sur les projets d'acte de mission, de règles de procédure et de calendrier procédural, demanda aux Parties de faire part de leurs commentaires (ou de confirmer leur absence) avant 17h00 le jour même ;
- Réitéra son instruction à la Demanderesse pour procéder à la réservation d'une salle d'audience et de service de transcription en direct pour l'Audience de Procédure prévue pour le 23 juin 2017 ;
- Invita les Parties à confirmer, au plus tard le 20 juin 2017, leur accord ou objection à la nomination d'un secrétaire administratif, Dr. Zeina Obeid (collaboratrice dans le cabinet de la Présidente), pour assister le Tribunal dans le cadre de la gestion de la procédure arbitrale.

47.   Par courriel en date du 15 juin 2017, la Demanderesse confirma qu'elle n'avait pas de commentaires sur les projets d'acte de mission, de règles de procédure et de calendrier procédural, soulignant que cette position ferait l'objet d'une régularisation à travers une communication qui serait adressée ultérieurement au Tribunal.

48.   Par correspondance en date du 16 juin 2017, le Tribunal :

- Informa les Parties que tout autre point relatif aux projets d'acte de procédure, de règles de procédure et de calendrier procédural ferait l'objet de discussions lors de la conférence sur la gestion de la procédure du 23 juin 2017 ;
- Pris acte de ce que la Défenderesse n'avait pas soumis de commentaires sur les documents procéduraux dans le délai imparti, soulignant qu'il serait présumé que la Défenderesse n'avait pas de commentaires ou d'objections à ce sujet, à moins que la Défenderesse ne se manifeste lors de la conférence sur la gestion de la procédure.[3]

49.   Par correspondance en date du 20 juin 2017, le Tribunal :

- Invita la Défenderesse à participer à cette procédure d'arbitrage et à prendre contact immédiatement avec le Tribunal et la Demanderesse. Le Tribunal rappela également à la Défenderesse que l'arbitrage se poursuivrait nonobstant son abstention tel que prévu aux Articles 6(8), 23(3) et 26(4) du Règlement CCI ;

---

[3] Le Tribunal Arbitral également réitéra son instruction à la Demanderesse de confirmer la réservation d'une salle d'audience et de service de transcription en direct pour le 23 juin 2017 ; par courriels en date du 19 juin 2017, le Tribunal réitéra sa demande à la Demanderesse de confirmer immédiatement les réservations pour la tenue de la conférence sur la gestion de la procédure (salle d'audience et service de transcription) et la Demanderesse confirma que ces réservations avaient été faites.

- Proposa de modifier le paragraphe 8.3 de l'acte de mission afin d'inclure une liste de points litigieux et proposa d'intégrer d'autres modifications mineures à l'acte de mission.

50. Par correspondance en date du 20 juin 2017 intitulée communication n°6, la Demanderesse a soumis les justificatifs de réservation de la salle d'audience au Centre d'audience de la CCI à Paris et a demandé une prise en charge des frais d'audience par la provision pour frais d'arbitrage intégralement réglée par la Demanderesse.

51. Par correspondance du 22 juin 2017, le tribunal confirma n'avoir pas d'objection à ce que les frais d'audience soient pris en charge par la provision pour frais de l'arbitrage.

52. En date du 23 juin 2017, une Audience de Procédure s'est tenue à Paris, en présence des membres du Tribunal Arbitral et de la Partie Demanderesse uniquement. La Partie Défenderesse n'a pas comparu en dépit des nombreuses correspondances du Tribunal la notifiant de la tenue de ladite audience.[4]

53. Par correspondance en date du 23 juin 2017, le Tribunal Arbitral a informé le Secrétariat de la CCI de la conclusion de l'Audience de Procédure et a transmis sept copies de l'acte de mission signées par les membres du Tribunal Arbitral et par la Demanderesse, pour approbation par la Cour en vertu de l'article 23(3) du règlement CCI de 2012.[5]

54. Par correspondance du 6 juillet 2017, le Tribunal Arbitral a rendu une Ordonnance de Procédure n° 2 à laquelle ont été joint les règles de procédure et le calendrier procédural qui ont été approuvés durant l'Audience de Procédure qui s'est déroulée le 23 juin 2017 à Paris.

55. Par correspondance en date du 22 juillet 2017, la Demanderesse communiqua au Tribunal Arbitral le mémoire en demande.

---

[4] Le Tribunal Arbitral a par ailleurs rappelé au cours de l'Audience de Procédure l'article 6.8 du règlement CCI qui prévoit que l'arbitrage a lieu nonobstant le refus ou l'abstention d'une des Parties de participer à l'arbitrage (Transcription de l'Audience de Procédure du 23 juin 2017 p. 6 para 14 à 21). Le Tribunal a également indiqué que cette Audience de Procédure serait transcrite et la totalité de la transcription serait envoyée à la Défenderesse. (Transcription de l'Audience de Procédure du 23 juin 2017 p. 6 para 20 et 21). Le Tribunal Arbitral, après avoir attendu jusqu'à 11 heures moins 20 sans que la Défenderesse ne se manifeste et après avoir rappelé que le Tribunal Arbitral fait tout ce qui est en son pouvoir afin que les deux Parties soient traitées de façon égalitaire et de préserver leurs droits dans cet arbitrage, a décidé que la procédure dans cette affaire CCI n° 22056 devrait être poursuivie (Transcription de l'Audience de Procédure du 23 juin 2017 p. 6 para 22 à 31).

[5] Par correspondance du même jour, le Tribunal Arbitral a transmis aux Parties : l'acte de mission signé par le tribunal arbitral et la Partie Demanderesse; la déclaration signée de confidentialité, d'impartialité et d'indépendance du secrétaire administratif; ainsi qu'une copie de la correspondance du Tribunal au Secrétariat de la CCI en date du 23 Juin 2017 joignant les sept copies de l'acte de mission.

56. Par correspondance du 24 juillet 2017, le Tribunal Arbitral informa la Demanderesse que la correspondance du 22 juillet 2017 ne comprenait pas le mémoire en demande ainsi que les pièces numéros 1, 2, 3, 4, 5, 7 et 9. De plus, le Tribunal Arbitral instruisit la Demanderesse d'envoyer par courrier recommandé une copie papier de son mémoire en demande avec ses pièces jointes ainsi qu'une clef USB comprenant les documents joints à son Mémoire en Demande à la Partie Défenderesse à ses deux adresses et de transmettre au Tribunal Arbitral la confirmation de l'envoi du courrier rapide ainsi que l'accusé de réception de la Défenderesse.

57. Par correspondance du 25 juillet 2017, la Demanderesse a transmis les justificatifs prouvant que le mémoire en demande et les pièces ont bien été communiquées à la Défenderesse à ses deux adresses respectives.[6]

58. Par correspondance du 8 août 2017, la Demanderesse communiqua au Tribunal Arbitral la demande adressée au Secrétariat de la CCI relative au règlement du solde du montant de la provision pour les frais de procédure par caution bancaire.[7]

59. Par correspondance du 30 août 2017, le Tribunal Arbitral a fait le point sur l'état d'avancement de la procédure arbitrale. Le Tribunal a rappelé que la Défenderesse a été notifiée du Calendrier procédural ainsi que des règles de procédures par courrier rapide aux deux adresses de la Défenderesse, celle de l'Ambassade de Guinée en France et celle de l'Agent Judiciaire de l'État de la République de la Guinée à Conakry tout en joignant l'accusé de bonne réception. Le Tribunal Arbitral a également rappelé que l'acte de mission approuvé par la Cour de la CCI a été aussi notifié par les bons soins de la CCI à la Défenderesse à ses deux adresses susmentionnées et a joint l'accusé de bonne réception ainsi que les correspondances du Tribunal Arbitral en date du 24 et 26 juillet 2017. Le Tribunal a par ailleurs noté que la Demanderesse a soumis son mémoire en demande ainsi que ses pièces jointes le 23 juillet 2017.

60. Dans cette même correspondance, Le Tribunal Arbitral nota que la Défenderesse ne s'était pas manifestée dans cette procédure arbitrale et s'était abstenue de soumettre son mémoire en défense dans les délais, le 23 août 2017. Le Tribunal Arbitral rappela les dispositions de l'article 6(8) du Règlement CCI de 2012 selon lequel nonobstant l'absence de participation de la Défenderesse à l'arbitrage, la procédure arbitrale suivra son cours. Le Tribunal

---

[6] Par correspondance du 26 juillet 2017, le Tribunal Arbitral confirma la réception des justificatifs confirmant l'envoi du Mémoire en Demande ainsi que les pièces aux deux adresses de la Défenderesse ; par correspondance du 4 août 2017, le Tribunal Arbitral a transmis par courrier recommandé les correspondances du Tribunal Arbitral en date du 24 et 26 juillet 2017.

[7] Par correspondance du 17 août 2017, la CCI confirma que la Demanderesse ayant déjà payé sa part de la provision, pouvait se substituer à la Défenderesse pour payer la part du montant de la provision incombant à ce dernier, soit US$ 255 000, en fournissant une garantie bancaire (article 1(7) de l'appendice III).

23

Arbitral indiqua qu'en raison de l'abstention de la Défenderesse, la soumission du « Mémoire en réplique en réponse au Mémoire en défense de la Défenderesse » le 7 Septembre 2017 suivi du « mémoire en duplique » le 22 septembre 2017 n'ont plus lieu d'être, faute de soumission d'un mémoire en défense. Le Tribunal Arbitral indiqua que la prochaine étape, sous réserve d'une potentielle participation de la Défenderesse à l'arbitrage, consisterait en une préparation par le Tribunal Arbitral d'une liste de questions et d'une demande de production de pièces à laquelle la Demanderesse serait invitée à répondre, étape qui serait suivie par « l'échange consécutif entre les Parties de dépositions de témoins et de rapports d'expertise en réplique » prévu dans le calendrier procédural pour le 7 Octobre 2017.

61.     Par correspondance du 2 septembre 2017, la Demanderesse a joint sa communication n° 9 datée du 1er Septembre 2017 dans laquelle elle a pris acte de la correspondance du Tribunal Arbitral du 30 août 2017 et a confirmé que le mémoire en demande ainsi que ses pièces avaient été adressés aux deux adresses de la Défenderesse le 22 juillet 2017.

62.     Par correspondance du 8 septembre 2017, la Présidente du Tribunal Arbitral confirma la réception le 4 septembre 2017 de la version papier du mémoire en demande et pria la Demanderesse de lui transmettre les justificatifs DHL de l'accusé de réception du mémoire par la Défenderesse ainsi que les justificatifs de toutes autres correspondances ayant été notifiées à la Défenderesse. Le Tribunal Arbitral a en outre considéré qu'il y avait lieu d'utiliser tous les moyens de communications pour transmettre à la Défenderesse les différentes correspondances qui ont eu lieu à ce jour dans cette procédure d'arbitrage et à demander en conséquence à la Demanderesse de fournir toute autre adresse mail et numéro de fax de l'agent judiciaire de l'Etat Guinéen identifié par la Demanderesse comme représentant légal de la République de Guinée-Conakry ainsi que l'adresse mail et le numéro de fax du Ministre Guinéen des Travaux Publics et des Transports qui a conclu les contrats de marchés de travaux avec la Demanderesse.[8]

63.     Par un courrier du 28 septembre 2017, la Demanderesse adressa à la CCI une garantie bancaire d'une somme de US$ 225,000 en règlement du solde du montant de la provision pour les frais de procédure et procura au Tribunal Arbitral une copie de cette garantie.

64.     Par correspondance du 2 octobre 2017, le Tribunal Arbitral a réitéré à la Demanderesse qu'il y avait lieu d'utiliser tous les moyens de communications pour transmettre à la

---

[8] Par correspondance du 11 septembre 2017, le Secrétariat de la CCI demanda aux Parties dans un délai de 15 jours à compter du jour suivant la réception de la correspondance, si elles s'accordaient à la publication des noms des arbitres, de leurs nationalités, leurs rôles au sein du Tribunal, des modalité de leurs nominations ; Par courrier du 28 septembre 2017, la Demanderesse donna son accord pour publier les informations relatives aux noms des arbitres, à leurs nationalités, à leurs rôles au sein du Tribunal Arbitral et aux modalités de leurs nominations.

24

Défenderesse les différentes correspondances qui ont eu lieu à ce jour dans cette procédure d'arbitrage.[9]

65.   Par correspondance du 3 octobre 2017, le Tribunal Arbitral a demandé à la Demanderesse de répondre aux questions du Tribunal Arbitral et de produire les documents requis par le Tribunal Arbitral dans sa demande de production de documents, et ce, au plus tard, le 20 octobre 2017. Cette correspondance a également été envoyée à la Défenderesse par courrier recommandé.

66.   Par correspondance du 6 octobre 2017, la Présidente du Tribunal Arbitral accusa réception par DHL de la communication de la Demanderesse en date du 27 septembre 2017 comportant les adresses mail et les numéros de fax de l'Agent Judiciaire de L'Etat Guinéen et du Ministère Guinéen des Travaux Publics et des Transports.

67.   Par correspondance du 20 octobre 2017, la Demanderesse demanda qu'un délai supplémentaire lui soit accordé afin de communiquer les documents requis par le Tribunal Arbitral.

68.   Par correspondance du 20 octobre 2017, le Tribunal Arbitral accorda un délai supplémentaire à la Demanderesse jusqu'au 25 octobre 2017 pour fournir les documents requis.

69.   Par correspondance du 25 octobre 2017, la Demanderesse a soumis ses réponses aux questions du Tribunal Arbitral et a soumis les documents requis par la demande de production de documents du Tribunal.[10]

70.   Par correspondance du 26 octobre 2017, le Tribunal Arbitral a accusé réception de la communication comportant les réponses à la production de documents requis par le Tribunal Arbitral et a demandé à la Demanderesse d'apporter des réponses aux questions du Tribunal qui figuraient dans les pages 2, 3 et 4 de sa correspondance du 3 octobre 2017. Le Tribunal Arbitral a par ailleurs demandé à la Demanderesse de confirmer que la communication numéro 10 avait été envoyée aux deux adresses de la Défenderesse par courrier et de transmettre au Tribunal Arbitral l'accusé de réception dudit courrier.

71.   Par correspondance du 3 novembre 2017, le Tribunal Arbitral a demandé à la Demanderesse d'informer le Tribunal des raisons relatives à l'absence de réponse à sa correspondance du 26 octobre 2017 et lui a demandé de soumettre les réponses aux

---

[9] Par correspondance du 3 octobre 2017, le Tribunal Arbitral indiqua qu'il avait adressé par courrier recommandé à la Défenderesse les correspondances du Tribunal Arbitral en date du 8 septembre 2017 et du 2 octobre 2017.

[10] Par correspondance du 13 novembre 2017, la Présidente du Tribunal Arbitral accusa bonne réception de la version papier de la communication no 10 de la Demanderesse en date du 25 octobre 2017 avec ses 19 pièces jointes.

questions posées par le Tribunal Arbitral ou, à défaut, de donner les justificatifs expliquant ce manquement au plus tard le lundi 6 novembre 2017.

72. Par correspondance du 6 novembre 2017, le Tribunal Arbitral a rajouté l'adresse postale du Ministère des Travaux Publics de la Républiques de la Guinée. Le Tribunal a indiqué que tous les courriers (électroniques et papiers) et toutes les communications relatives à cet arbitrage ont été notifiés à la République de Guinée Conakry aux adresses communiquées dans le dossier et a retransmis à nouveau les correspondances par courrier rapide au Ministère des Travaux Publics de la République de la Guinée. Le Tribunal Arbitral demanda à la Demanderesse de transmettre au Tribunal une adresse courriel du Ministre des Travaux Publics de La République de Guinée et de confirmer l'adresse postale mentionnée (Boulevard du commerce- Almamya, Kaloum- BP 581, Conakry, Guinée). Le Tribunal a aussi informé les Parties de la tenue d'une Audience Finale de Plaidoiries à Paris le 18 et 19 décembre 2017.

73. Par correspondance du 6 novembre 2017, le Tribunal Arbitral informa les Parties que l'adresse courriel de l'agent judiciaire de l'Etat Guinéen suivante maitredoumbouya@yahoo.fr qui avait été transmise par la Demanderesse n'était pas valide. Le Tribunal exigea de la Demanderesse de communiquer au Tribunal Arbitral une autre adresse courriel.

74. Par correspondance du 6 novembre 2017, la Demanderesse a communiqué les réponses aux questions du Tribunal et les documents que le Tribunal Arbitral avait sollicité et informa le Tribunal qu'elle n'était pas en connaissance d'une quelconque autre adresse de la Défenderesse.

75. Par correspondance du 9 novembre 2017, la Demanderesse a transmis les justificatifs d'envoi par courrier rapide (DHL) à la Défenderesse des réponses de la Demanderesse aux questions du Tribunal Arbitral, ainsi que des documents produits à la demande du Tribunal.

76. Par correspondance du 12 décembre 2017, le Tribunal Arbitral a indiqué qu'il n'avait toujours pas reçu de la part de la Demanderesse, conformément au calendrier procédural, de déposition de témoins ni de rapport d'expertise[11]. Le Tribunal Arbitral a noté que la communication n° 10 de la Demanderesse, en date du 25 octobre 2017, comprenait de nombreux documents comptables dont l'analyse par un expert apparaissait nécessaire à cette jonction de la procédure et a requis de la Demanderesse de clarifier sa position concernant la nomination d'un expert et de préciser si elle désirait soumettre des témoignages de fait, au plus tard le 14 décembre 2017.

---

[11] Cf. également correspondance n° 13 du Tribunal en date du 30 août 2017.

77.   Par correspondance du 14 décembre 2017, le Tribunal Arbitral réitéra la nécessité de nommer un expert-comptable afin d'analyser les nombreux documents comptables soumis au dossier par la Demanderesse et de permettre leur parfaite compréhension et interprétation. Le Tribunal Arbitral, en l'état, au regard des circonstances de l'affaire, et dans un souci de maitrise des coûts de cette procédure afin d'éviter la tenue de deux audiences, a estimé, après délibérations, qu'il était préférable d'annuler l'audience des 18 et 19 décembre 2017 et de la reporter à des dates ultérieures en février 2018, lorsque le Tribunal serait en mesure de tirer tous les enseignements nécessaires des pièces soumises dans le dossier. Le Tribunal Arbitral a proposé en alternative de tenir une conférence téléphonique avec les Parties le 18 ou le 19 décembre 2017 pour déterminer une nouvelle date d'audience en février 2018.

78.   Par correspondance du 16 décembre 2017, le Tribunal Arbitral réitéra que l'Audience Finale de Plaidoiries ne pouvait pas avoir lieu en décembre et devait être reportée au mois de février 2018 et invita la Demanderesse et la Défenderesse à communiquer leur disponibilité pour le 18 ou 19 décembre 2017 à 17h, heure de Paris, pour une conférence téléphonique afin de fixer la date de l'Audience Finale de Plaidoiries.[12]

79.   Le 19 décembre 2017, une conférence téléphonique s'est tenue en présence des membres du Tribunal Arbitral et de la Demanderesse représentée par M. Abdoul Ndiaye. La Défenderesse n'a pas participé à cette conférence téléphonique. Les dates du 19 et 20 février ont été retenues comme nouvelles dates d'audience sous réserve de la réception dans un délai raisonnable du rapport de l'expert-comptable mandaté soit par le Tribunal Arbitral soit par la Demanderesse.

80.   Par une correspondance du 21 décembre 2017, la Demanderesse indiqua sa position favorable à la désignation d'un expert-comptable.

81.   Par correspondance du 21 décembre 2017, le Tribunal Arbitral demanda à la Demanderesse de clarifier sa position concernant la phrase suivante «la Demanderesse demande au Tribunal Arbitral sa position favorable quant à la désignation d'un expert-comptable en rapport avec la CCI », au plus tard le 22 décembre 2017.

82.   Par correspondance du 22 décembre 2017, la Demanderesse clarifia sa position en indiquant que dans le cadre de cette demande d'arbitrage, il s'agit d'un recouvrement d'une créance liquide et exigible qui ne souffre d'aucune contestation. A ce titre, la

---

[12] Par correspondance du 17 décembre 2017, le Tribunal Arbitral demanda aux Parties de lui communiquer leur disponibilité pour la tenue d'une conférence téléphonique afin de discuter de la suite de la procédure arbitrale ; Par une correspondance du 18 décembre 2017, la Demanderesse confirma sa disponibilité pour tenir une conférence téléphonique le 19 décembre 2017 à 17h00.

27

Demanderesse ne demande pas une expertise comptable mais ne s'opposerait pas à la désignation d'un expert-comptable si le Tribunal Arbitral l'estimait nécessaire. La Demanderesse a par ailleurs indiqué au Tribunal Arbitral la difficulté de prendre en charge les frais liés à cette expertise comptable, compte tenu du fait qu'elle a eu à supporter jusqu'ici l'ensemble des frais liés à cette procédure d'arbitrage. La Demanderesse indiqua en outre qu'elle était disposée à faire témoigner à l'Audience Finale de Plaidoiries le responsable du service financier de la Compagnie Sahélienne d'Entreprises pour répondre à toutes les questions du Tribunal Arbitral et apporter au Tribunal Arbitral tous les éclaircissements utiles quant à la compréhension des documents comptables et financiers communiqués.

83. Par correspondance du 28 décembre 2017, le Tribunal Arbitral communiqua le résumé de la conférence de procédure qui avait eu lieu le 19 décembre 2018 dans laquelle, entre autre, des nouvelles dates d'audience ont été fixées à savoir le 19 et 20 février 2018. Une copie de cette correspondance a été transmise par courrier rapide à la Défenderesse.

84. Par correspondance du 8 janvier 2018, le Tribunal Arbitral a rendu l'Ordonnance de Procédure n° 3 dans lequel le Tribunal Arbitral indiqua qu'à défaut de prise en charge par la Demanderesse des frais de l'expertise comptable, et, dans l'hypothèse de l'absence de participation de la Défenderesse à cette procédure, le Tribunal Arbitral serait dans l'impossibilité de nommer un expert-comptable. Le Tribunal Arbitral a également demandé à la Demanderesse de soumettre un témoignage écrit rédigé par le responsable du service financier de la compagnie Sahélienne dans lequel ce dernier devrait répondre aux questions du Tribunal Arbitral et présenter les preuves à l'appui des montants réclamés par la Demanderesse en se référant aux pièces comptables soumises dans le dossier. Ce témoignage serait traité comme un témoignage factuel et devrait être soumis au plus tard le 30 janvier 2018 en respectant les directives prévues par l'article 3 des Règles de Procédure applicables à cette procédure d'arbitrage.

85. Par correspondance du 12 janvier 2018, le Tribunal Arbitral demanda à la Demanderesse de l'informer au plus tard le 17 janvier 2018, si elle comptait soumettre un témoignage écrit rédigé par le responsable du service financier de la compagnie Sahélienne. Le Tribunal Arbitral a par ailleurs confirmé les dates de l'Audience Finale fixées pour le 19 et 20 février 2018. En l'absence de participation de la Défenderesse, le Tribunal Arbitral demanda à la Demanderesse de fournir la confirmation de la réservation d'une salle de réunion et d'un service de transcription au Centre d'Audience de la CCI pour l'Audience Finale du 19 et 20 février 2018, au plus tard le 17 janvier 2018.

86. Par correspondance du 17 janvier 2018, la Demanderesse informa le Tribunal Arbitral qu'elle déposerait au plus tard le 30 janvier 2018, un témoignage rédigé par le responsable du service financier de la Compagnie Sahélienne. Par une autre correspondance du même

28

jour, la Demanderesse confirma la réservation d'une salle d'audience et la réservation d'un service de transcription en direct pour les besoins de l'Audience Finale de Plaidoiries.[13]

87.   Par correspondance du 30 janvier 2018, la Demanderesse a soumis le témoignage écrit du Directeur Administratif et Financier de la Compagnie Sahélienne d'entreprise et a confirmé que le témoin viendrait témoigner à l'Audience Finale de Plaidoiries du 19 et 20 février 2018. La Demanderesse a confirmé que ce témoignage avait été adressé par courriel à la Défenderesse à l'adresse électronique: maitredoumbouya@yahoo.fr et qu'il avait également fait l'objet d'un envoi par DHL à la Défenderesse à l'ensemble de ses adresses.[14]

88.   Par correspondance du 15 février 2018, le Tribunal Arbitral a confirmé une fois encore la tenue de l'Audience Finale de Plaidoiries le 19 et 20 février 2018 à Paris, au centre d'audience de la CCI et a transmis aux Parties un Agenda relatif à l'ordre du jour du premier jour d'audience. Le Tribunal arbitral a rappelé que la Défenderesse, à ce jour, n'avait toujours pas participé à la procédure d'arbitrage, avait été dûment notifié par courrier recommandé, depuis le début de la procédure d'arbitrage, de toutes les correspondances, soumissions et actes de procédure dans l'affaire susmentionnée ainsi que la tenue de l'Audience Finale le 19 et 20 février 2018.

Le Tribunal Arbitral a réitéré une fois encore sa sommation à la Défenderesse de participer à l'Audience Finale dans l'affaire susmentionnée et a rappelé aux Parties les dispositions de l'article 26(4) du Règlement CCI et que par conséquent, l'Audience Finale de Plaidoiries du 19 et 20 février 2018 se tiendra à Paris nonobstant l'abstention d'une des parties dûment notifiée.[15]

89.   Une Audience Finale de Plaidoiries s'est tenue le 19 et 20 février 2018 en la présence de la Partie Demanderesse et des Membres du Tribunal Arbitral. La Partie Défenderesse n'a

---

[13] Par correspondance du 24 janvier 2018, le Tribunal Arbitral a pris note de la réservation par la Demanderesse d'un service de transcription directe pour les besoins de l'Audience Finale de Plaidoiries prévue le 19 et 20 février 2018 et a invité la Demanderesse de confirmer ladite réservation auprès du Centre d'audience de la CCI comme requis dans le devis. Le Tribunal a également pris note que la Demanderesse va déposer, au plus tard le 30 janvier 2018, un témoignage rédigé par le responsable du service financier de la Compagnie Sahélienne d'entreprises et que le témoin viendra témoigner à l'Audience Finale de Plaidoiries. Le Tribunal Arbitral a enfin demandé à la Demanderesse de confirmer qu'une copie de ses courriels a été adressée par courrier à la Défenderesse.

[14] Par correspondance du 12 février 2018, la Demanderesse a transmis au Tribunal Arbitral les justificatifs d'envoi par DHL à la Défenderesse de la communication N°13 de la Demanderesse, du témoignage du Directeur Administratif et financier de la CSE, de la confirmation de la réservation de la salle de conférence de la CCI, de la confirmation de la réservation d'un service de transcription en directe pour les besoins de l'Audience Finale de Plaidoiries en date du 19 et 20 février 2018.

[15] Par correspondance du 16 février 2018, la Demanderesse a accusé bonne réception de la correspondance du Tribunal Arbitral n° 28 et de sa pièce jointe.

pas comparu malgré les notifications successives avec accusé de réception du Tribunal Arbitral de la date et du lieu de l'Audience Finale de Plaidoiries.[16]

90.   Par correspondance du 26 février 2018, le Tribunal Arbitral a communiqué la feuille de présence relative aux deux journées d'audience du 19 et 20 février 2018. De plus, le Tribunal Arbitral a mentionné que la partie Défenderesse n'a pas comparu à l'audience malgré sa notification à plusieurs reprises par courrier recommandé avec accusé de réception. Le Tribunal Arbitral a également joint la pièce numéro 16 intitulée « courrier du 13 avril 2012 » qui avait été soumise dans son intégralité le deuxième jour de l'audience à la demande du Tribunal Arbitral ainsi que la pièce en date du 04/10/2010 versée par la Demanderesse et admise par le Tribunal Arbitral durant l'audience concernant le virement reçu par la Compagnie Sahélienne d'entreprise de la part du fonds Koweitien prouvant que ce dernier avait payé la somme de 190,991,11 euros à déduire du montant de l'avenant du Lot 4. Cette correspondance avec ses trois pièces jointes avait été adressée à la partie Défenderesse par courrier recommandé avec accusé de réception à ses trois adresses.

91.   Par correspondance du 2 mars 2018, Madame Bardot a communiqué le projet de compte rendu de l'audience du 19 février 2018, format Word et PDF, Version 1, à relire par les intervenants.

92.   Par correspondances des 9 et 12 mars 2018, la Demanderesse a communiqué ses corrections de la transcription de l'audience du 19 et 20 février 2018.

93.   Par correspondance du 20 mars 2018, la Demanderesse a indiqué au Tribunal Arbitral avoir envoyé par courrier physique et par voie rapide DHL, les documents suivants demandés par le Tribunal Arbitral lors de l'audience du 19 et 20 février 2018 :

- Les éclaircissements sur le fondement des demandes et le calcul des intérêts moratoires.
- Les détails et les justificatifs sur les coûts générés par cette procédure d'arbitrage et qui sont restés à la charge de la Demanderesse.
- Les justificatifs des accusées de réception des correspondances adressées à la Défenderesse.
- La communication à la Défenderesse de la totalité du document du 13 avril 2012 adressé par le Directeur Général de la CSE à Monsieur le Ministre D'Etat chargé de l'économie et des Finances de la République de Guinée.
- La communication à la Défenderesse du relevé bancaire de la banque LCL, justifiant le règlement de la somme de 190 991,11 euros par le fonds Koweitien.

---

[16] Cf. section IV (D).

La Demanderesse a également joint à sa correspondance une copie du Code civil et du Code de Procédure Civil Guinéen.

94. Par correspondance du 22 mars 2018, le Tribunal Arbitral a accusé bonne réception du courriel de la Demanderesse en date du 20 mars 2018 avec les pièces jointes comprenant une copie du Code Civil et du Code de Procédure Civil Guinéen. De plus, le Tribunal Arbitral a indiqué que la Demanderesse aurait dû soumettre au plus tard le 7 mars 2018 les documents requis par le Tribunal Arbitral. Le Tribunal Arbitral a également informé la Demanderesse qu'à ce jour, le Tribunal Arbitral avait uniquement reçu la version électronique du Code Civil et du Code de Procédure Civil Guinéen et a instruit la Demanderesse de lui transmettre le justificatifs d'envoi DHL des documents mentionnés par la Demanderesse dans son courrier du 20 mars 2018. Par ailleurs, le Tribunal Arbitral a réitéré ses instructions à la Demanderesse de répondre au plus tard le 29 mars 2018 à la question relative au calcul des intérêts moratoires.

95. Par correspondance du 29 mars 2018, le Tribunal Arbitral est revenu vers la Demanderesse au sujet de la correction de la transcription des deux journées d'audience des 19 et 20 février 2018 et a indiqué que l'objectif de la révision de la transcription de l'audience était de corriger uniquement les erreurs typographiques, de calculs et autres erreurs matérielles sans dénaturer le contenu du texte de la transcription qui doit rester fidèle aux propos des Parties et des membres du Tribunal Arbitral au cours de l'audience. Le Tribunal Arbitral a noté que la Demanderesse avait entrepris des corrections allant au-delà d'une simple correction d'erreurs matérielles et avait procédé dans certains passages à la reformulation des phrases et/ou la suppression de certains passages. Le Tribunal Arbitral a indiqué que ces modifications ne pouvaient être admises car elles dénaturaient le texte-même de la transcription. De plus, le Tribunal Arbitral a informé la Demanderesse que lui serait transmise une version finale corrigée des deux journées d'audience du 19 et 20 février 2018, cette révision concernant essentiellement la correction des chiffres transcrits par la sténotypiste. Le Tribunal Arbitral a indiqué qu'une version papier de cette correspondance serait adressée aux différentes adresses de la Défenderesse.[17]

96. Par la même correspondance du 29 mars 2018, le Tribunal Arbitral a transmis la version corrigée et finale de la transcription des deux journées d'audience des 19 et 20 février 2018. Une copie de cette correspondance avec sa pièce jointe ont été notifiées par courrier recommandé à la Défenderesse, à ses différentes adresses. [18]

---

[17] Par correspondance du 29 mars 2018, la Demanderesse a transmis les pièces annoncées dans sa correspondance en date du 29 septembre 2017.

[18] Par correspondance du 29 mars 2018, la Demanderesse a accusé réception de la transcription des deux journées d'Audience Finale de Plaidoiries du 19 et 20 février 2018.

97.  Par correspondance du 14 avril 2018, le Tribunal Arbitral a accusé bonne réception en date du 29 mars 2018, de la version électronique des pièces auxquelles la Demanderesse s'est référée dans sa correspondance du 20 mars 2018 et lui a demandé de l'informer du statut de l'envoi par courrier rapide de la correspondance du 20 mars 2018. De plus, le Tribunal Arbitral a accusé bonne réception des justificatifs des accusés de réception des correspondances adressées par la Demanderesse à la Défenderesse. Le Tribunal Arbitral a demandé également à la Demanderesse de soumettre un tableau comprenant la date de chaque correspondance avec la date de son accusé de réception respectif par la Défenderesse et de soumettre sa réponse à la question du Tribunal Arbitral relative au calcul des intérêts moratoires au plus tard le 17 avril 2018.

98.  Par correspondance du 17 avril 2018, la Demanderesse a indiqué qu'elle n'était pas en mesure de satisfaire aux prescriptions formulées par le Tribunal Arbitral dans sa correspondance du 14 avril 2018 en raison d'un déplacement professionnel à Genève et a sollicité un délai supplémentaire.

99.  Par correspondance du 17 avril 2018, le Tribunal Arbitral a accusé bonne réception du courriel du Demandeur en date du 17 avril 2018 et a instruit ce dernier de soumettre ses réponses aux questions et demandes du Tribunal au plus tard le mardi 24 avril 2018.

100.  Par correspondance du 24 avril 2018[19], le Tribunal Arbitral a accusé bonne réception de la correspondance du Demandeur en date du 29 mars 2018 dans laquelle il a apporté des réponses aux prescriptions faites par le Tribunal Arbitral lors de l'Audience Finale de Plaidoiries des 19 et 20 février 2018 avec ses pièces jointes à savoir :

- Les détails et les justificatifs sur les coûts générés par cette procédure d'arbitrage et qui sont restés à la charge de la Demanderesse.
- Les justificatifs des accusés de réception des correspondances adressées à la Défenderesse.
- La communication à la Défenderesse de la totalité du document du 13 avril 2012 adressé par le Directeur Général de la CSE à Monsieur le Ministre D'Etat chargé de l'économie et des Finances de la République de Guinée.
- La communication à la Défenderesse du relevé bancaire de la banque LCL, justifiant le règlement de la somme de 190 991,11 euros par le fonds Koweitien.

101.  Par correspondance du 24 avril 2018, la Demanderesse a pris acte de la bonne réception par le Tribunal Arbitral de la correspondance du Demandeur en date du 29 mars 2018 ainsi que la version papier des pièces jointes à cette correspondance. La Demanderesse a

---

[19] Dans cette correspondance, le Tribunal Arbitral a également demande à la Demanderesse de soumettre ses réponses aux questions et demandes du Tribunal Arbitral formulées dans les correspondances des 14 et 17 avril 2018.

également considéré avoir, dans cette correspondance et à travers les pièces communiquées, apporté des réponses aux questions et demandes du Tribunal Arbitral formulées dans les correspondances du 14 et 17 avril 2018.

102. Par correspondance du 26 avril 2018, le Tribunal Arbitral a accusé bonne réception de la correspondance de la Demanderesse en date du 24 avril 2018 et a rappelé à la Demanderesse de soumettre un tableau comprenant la date de chaque correspondance adressée au Défendeur avec la date de son accusé de réception respectif au plus tard le 27 avril 2018 car le Tribunal Arbitral n'était pas en mesure de faire correspondre les accusés de réceptions soumis par la Demanderesse avec les correspondances correspondantes.

103. Par correspondance du 12 juillet 2018, le Tribunal Arbitral a rendu l'Ordonnance de Procédure no.3 dans laquelle il a déclaré la clôture des débats relativement aux questions à trancher dans la sentence conformément à l'Article 27 du Règlement CCI de 2012.

**B.    ORDONNANCES DE PROCÉDURE**

104. Par Ordonnance de Procédure n° 1 en date du 5 juin 2017, le Tribunal Arbitral détermina que la langue de cet arbitrage serait le français et émit sa sommation finale ordonnant à la Défenderesse de participer à cet arbitrage et de contacter immédiatement le Tribunal et la Demanderesse.

105. Par correspondance du 6 juillet 2017, le Tribunal Arbitral a rendu l'Ordonnance de Procédure n° 2 comprenant les règles de procédure et le calendrier procédural qui ont été approuvés durant l'audience de procédure qui s'est déroulée le 23 juin 2017 à Paris.

106. Par correspondance du 8 janvier 2018, le Tribunal Arbitral a rendu l'Ordonnance de Procédure n° 3 dans laquelle le Tribunal Arbitral indiqua qu'à défaut de prise en charge par la Demanderesse des frais de l'expertise comptable, et, dans l'hypothèse de l'absence de participation de la Défenderesse à cette procédure, le Tribunal Arbitral serait dans l'impossibilité de nommer un expert-comptable si la partie Demanderesse ne s'acquittait pas des frais de cette expertise. Le Tribunal Arbitral a également demandé à la Demanderesse de soumettre un témoignage écrit rédigé par le responsable du service financier de la compagnie Sahélienne dans lequel ce dernier devrait répondre aux questions du Tribunal Arbitral et présenter les preuves à l'appui des montants réclamés par la Demanderesse en se référant aux pièces comptables soumises dans le dossier. Ce témoignage serait traité comme un témoignage factuel et devrait être soumis au plus tard le 30 janvier 2018 en respectant les directives prévues par l'article 3 des Règles de Procédure applicables à cette procédure d'arbitrage.

107.   Par correspondance du 12 juillet 2018, le Tribunal Arbitral a rendu l'Ordonnance de Procédure no.4[20] dans laquelle il a déclaré la clôture des débats relativement aux questions à trancher dans la sentence conformément à l'Article 27 du Règlement CCI de 2012.

## C.   AUDIENCE DE PROCEDURE DU 23 JUIN 2017

108.   Une audience de procédure s'est tenue le 23 Juin 2017 à Paris, en présence des membres du Tribunal Arbitral et de la partie Demanderesse uniquement. Le Tribunal Arbitral a rappelé au cours de l'audience que toutes les correspondances ont été notifiées à la Défenderesse par courrier recommandé à son adresse en Guinée ainsi qu'à l'Ambassade de Guinée en France tout en récapitulant le numéro et la date de chaque correspondance du Tribunal Arbitral et sa date de notification à la Défenderesse.[21]

109.   Le Tribunal Arbitral a par ailleurs rappelé au cours de l'audience l'article 6.8 du règlement CCI prévoyant que l'arbitrage a lieu nonobstant le refus ou l'abstention d'une des parties de participer à l'arbitrage.[22] Le Tribunal a également indiqué que cette audience de procédure serait transcrite et la totalité de la transcription serait envoyée à la Défenderesse.[23]

110.   Le Tribunal Arbitral, après avoir attendu  jusqu'à 11 heures moins 20 sans que la Défenderesse ne se manifeste et après avoir rappelé que le Tribunal Arbitral avait fait tout ce qui est en son pouvoir afin que les deux Parties soient traitées de façon égalitaire et de préserver leurs droits dans cet arbitrage, avait décidé que la procédure dans cette affaire CCI n° 22056 devrait être poursuivie.[24]

111.   Au cours de l'audience de procédure l'Acte de Mission du Tribunal Arbitral et les règles de procédure ont été signés et le calendrier procédural finalisé.

112.   Les demandes de la Demanderesse telles qu'avancées dans l'Acte de Mission sont les suivantes:

« *Les demandes*

*PAR CES MOTIFS*

---

[20] Le Tribunal Arbitral relève une erreur typographique dans sa correspondance du 12 juillet 2018 dans la numérotation de l'Ordonnance est l'Ordonnance de Procédure no.4 et non pas no. 3.
[21] Transcription de l'Audience de Procédure du 23 juin 2017 p.5 para 38 à 49, et p. 6 para 1 à 12.
[22] Transcription de l'Audience de Procédure du 23 juin 2017 p. 6 para 14 à 21.
[23] Transcription de l'Audience de Procédure du 23 juin 2017 p. 6 para 20 et 21.
[24] Transcription de l'Audience de Procédure du 23 juin 2017 p. 6 para 22 à 31.

*1.1..1    Vu la loi L/2012/020/CNT fixant les règles régissant la passation, le contrôle et la régulation des marchés publics et délégations de service public de la République de Guinée en date du 11 Octobre 2012 ;*

*1.1..2    Vu le décret D/2012/128/PRG/SGG portant code des marchés publics de la République de Guinée en date du 3 Décembre 2012 ;*

*1.1..3    Vu la clause compromissoire de l'article 29 du cahier des clauses administratives particulières des contrats de marchés ;*

*1.1..4    Vu les pièces à l'appui de la requête ;*

*1.1..5    Adjuger à la Compagnie Sahélienne d'Entreprise l'entier bénéfice de ses présentes écritures et de celles exposés dans son mémoire aux fins d'arbitrage en date du 20 juin 2016. »*

## D.   AUDIENCE FINALE DE PLAIDOIRIES DU 19 ET 20 FEVRIER 2018

113.   L'Audience Finale de Plaidoiries s'est tenue sur deux jours au Centre d'audience de la CCI à Paris le 19 février 2018 et le 20 février 2018. Cette Audience Finale de Plaidoiries avait pour objectif d'entendre les plaidoiries finales et d'auditionner les Témoins.

114.   La Défenderesse n'a pas comparu aux deux journées d'audience malgré sa notification par courrier rapide avec accusé de réception à ses trois adresses de tous les actes de la procédure arbitrale y compris les dates de l'Audience Finale de Plaidoiries. La Défenderesse était au courant en particulier des dates de l'Audience Finale de Plaidoiries du moins depuis le 28 Décembre 2017. Le Tribunal Arbitral a reconfirmé les dates de cette Audience Finale de Plaidoiries par correspondance en date du 12 février 2018 reçu avec accusé de réception aux trois adresses de la Défenderesse le 17 et 18 janvier 2018. Le Tribunal Arbitral a par la suite adressé aux Parties une correspondance en date du 24 janvier 2018 pour prendre note des réservations de salle d'audience faites par la Demanderesse au Centre d'audience de la CCI, correspondance reçue par la Défenderesse le 29 janvier 2018. [25]

115.   Le Tribunal Arbitral, après avoir attendu jusqu'à 10h 30 minutes, au cours des deux journées d'audiences, sans que la Défenderesse ne se manifeste et après avoir rappelé les dispositions de l'article 6.8 du règlement CCI qui prévoit que l'arbitrage a lieu nonobstant

---

[25] Transcription de l'audience du 19 février 2018 p. 4 para 41 à 45 et p.5 para 1à 24 ; Transcription de l'audience du 20 février 2018 p. 4 para 10 à 42.

le refus ou l'abstention d'une des parties de participer à l'arbitrage, a ouvert l'audience conformément à l'ordre du jour transmis aux Parties.[26]

116.    L'Audience du 19 février 2018 s'est tenue en présence des personnes suivantes :

- Membres du Tribunal Arbitral : Prof.  Dr. Nayla Comair-Obeid, Dr. Seydou Madani Sy, Me Joachim Bilé-Aka.
- De la Part de la Demanderesse: Me. Abdoul Ndiaye.
- Secrétaire Administrative : Dr. Zeina Obeid

117.    Au cours de la première journée d'Audience, le Tribunal Arbitral a écouté les plaidoiries orales de la Demanderesse et a ensuite entendu le témoignage de M. Massamba Gueye, est le responsable du service financier de la CSE.

118.    L'Audience du 20 février 2018 s'est tenue en présence des personnes suivantes :

- Membres du Tribunal Arbitral : Prof. Dr. Nayla Comair-Obeid, Dr. Seydou Madani Sy, Me Joachim Bilé-Aka.
- De la Part de la Demanderesse: Me. Abdoul Ndiaye.
- Secrétaire Administrative : Dr. Zeina Obeid

119.    Au cours de la seconde journée d'audience, le Tribunal Arbitral a continué l'audition du témoin M. Massamba Gueye.

120.    Le Tribunal Arbitral a enfin entendu les plaidoiries finales de la Demanderesse.

121.    Les audiences et auditions du témoin des deux journées d'audiences ont fait l'objet d'une transcription qui a été adressée aux trois adresses de la Défenderesse.

122.    A la clôture de l'audience, le conseil de la Demanderesse a confirmé n'avoir aucune objection ni réserve concernant le déroulement de l'ensemble de la procédure d'arbitrage, depuis le début de la procédure jusqu'à l'Audience Finale de Plaidoiries.[27]

---

[26] Transcription de l'audience du 19 février 2018 p. 5 para 27 à 34 ; Transcription de l'audience du 20 février 2018 p. 4 para 38 à 42.
[27] Transcription de l'audience du 20 février 2018 p. 45 para 6 à 10.

## V.   SOUMISSIONS DES PARTIES ET LES PRETENTIONS AVANCEES DANS LEURS SOUMISSIONS RESPECTIVES

### 1.   Requête introductive d'instance arbitrale (20 juin 2016)

123.   La procédure arbitrale a été amorcée à l'initiative de la Demanderesse par Requête introductive d'instance arbitrale le 20 juin 2016.

124.   La Demanderesse soutient que la Compagnie Sahélienne d'Entreprise a conclu avec l'Etat Guinéen des contrats en date du 25 juin 2003, relatifs à l'exécution, dans la capitale de Conakry, de travaux portant sur la réalisation de deux projets routiers, Lots 4 et 5, dénommés « la 2x2 voies entre Tombo et l'aéroport de Gbessia ». Il s'agit du « Marché Lot 4 » et du « Marché Lot 5 ».[28]

125.   Au titre de ces Marchés, le Maître de l'ouvrage devait se libérer de 86, 82% du montant hors taxes du marché pour ce qui concerne la part en devise et de 13.18% du montant du marché pour ce qui concerne la part en Francs Guinéens.[29]

126.   La Demanderesse affirme s'être entièrement acquittée de ses obligations contractuelles et avoir livré à l'Etat Guinéen l'ensemble des ouvrages prévus aux contrats et que cette exécution est attestée par des certificats de réception définitive établis sans réserve, en date du 24 juin 2009 pour chaque Lot, par le Maître de l'ouvrage.[30]

127.   La Demanderesse prétend qu'en raison d'un gap financier découlant des fluctuations monétaires, la CSE a accepté de revenir sur les montants de sa créance par un avenant n° 1 pour chaque Marché (Lots 4 et 5), tous conclus le 19 février 2010. Ces avenants ont été approuvés par le Ministre Guinéen de l'Economie et des Finances.[31]

128.   La Demanderesse soutient que malgré les multiples lettres de relance aux différents Ministères concernés c'est-à-dire le Ministre des Travaux Publics et le Ministre des Finances et après avoir rencontré plusieurs fois ces autorités, le paiement de la créance de la CSE n'a pu avoir lieu.[32]

129.   La Demanderesse a alors porté l'affaire en arbitrage conformément à l'article 29 du cahier des clauses administratives particulières des contrats de Marché exécutés.[33]

---

[28] Requête d'Arbitrage, p.2.
[29] Requête d'Arbitrage, p.2.
[30] Requête d'Arbitrage, p.2.
[31] Requête d'Arbitrage, p.3.
[32] Requête d'Arbitrage, p.3 et 4.
[33] Requête d'Arbitrage, p. 4.

37

130. La Demanderesse sollicite du Tribunal Arbitral de traiter les demandes de la CSE, qui sont basées sur deux contrats de marchés différents, en une seule et même procédure arbitrale puisque les Parties et les clauses arbitrales sont identiques dans chaque contrat de Marché et que les créances se fondent sur des faits similaires. En effet, il est prévu la même clause compromissoire de l'article 29 du même cahier des clauses administratives particulières incluses dans chaque Marché. [34]

131. Concernant le nombre des arbitres, et dans le silence de la clause compromissoire (article 29) la Demanderesse sollicite la nomination d'un arbitre unique. [35]

132. Concernant le droit applicable, la Demanderesse fait référence à l'article 51.1 du cahier des clauses administratives générales de chacun des Marchés qui énonce que : « le droit applicable pour l'interprétation et l'exécution du présent Marché est le droit du pays du Maître de l'ouvrage » et que par conséquent c'est le droit guinéen qui s'applique au présent litige. [36]

133. Concernant la langue de l'arbitrage, la Demanderesse indique qu'il s'agit de la langue française qui est la langue officielle des deux Parties. [37]

134. La Demanderesse demande par conséquent du Tribunal Arbitral ce qui suit [38] : «

*- Déclarer la requête de la Compagnie Sahélienne d'Entreprise recevable en la forme,*

*En se déclarant compétent :*

*- Condamner la République de Guinée Conakry au paiement principal de 7.365.747,91 euros et 699.665.661 GNF au profit de la Compagnie Sahélienne d'Entreprise.*

*-Condamner la République de Guinée Conakry au paiement d'intérêts moratoires de 5.805.126,13 euros et 506.725.585 GNF au profit de la Compagnie Sahélienne d'Entreprise dite CSE, outre les intérêts à échoir jusqu'à l'intervention de la sentence arbitrale.*

*-Condamner la République de Guinée Conakry au paiement également de dommages et intérêts de 2.000.000 euros.*

---

[34] Requête d'Arbitrage, p. 4 et 5.
[35] Requête d'Arbitrage, p. 5.
[36] Requête d'Arbitrage, p. 5.
[37] Requête d'Arbitrage, p. 6.
[38] Requête d'Arbitrage, p.8

-*Condamner la République de Guinée Conakry au paiement de tous les frais et dépens occasionnés par la présente procédure arbitrale et qui seront exposés par voie de conclusions.* "

## 2.    Mémoire en Demande (21 juillet 2017)

135.    La Demanderesse a soumis son Mémoire en Demande le 21 juillet 2017  dans lequel elle a repris ses allégations dans sa Requête d'Arbitrage.

136.    La Demanderesse réaffirme s'être entièrement acquitté de ses obligations contractuelles et avoir livré à l'Etat Guinéen l'ensemble des ouvrages prévus aux contrats[39] et que cette exécution est prouvée par des certificats de réception définitive établis sans réserve, en date du 24 juin 2009 pour chaque Lot, par le Maître de l'ouvrage.[40]

137.    La Demanderesse réaffirme également que la CSE a accepté de revenir sur le montant de sa créance par un avenant n° 1 pour chaque Marché (Lots 4 et 5), tous conclus le 19 février 2010 pour prendre en charge les coûts liés aux facteurs qui ont généré le gap financier [41] et que ces avenants ont été approuvés par le Ministre Guinéen de l'Economie et des Finances. [42]

138.    Concernant la recherche d'une solution conciliante par la CSE, la Demanderesse soutient avoir adressé de nombreuses lettres de relance aux différents Ministères concernés  (le Ministre des Travaux Publics et le Ministre des Finances) et avoir rencontré plusieurs fois ces autorités pour demander en vain le paiement de la créance de la CSE. [43] La Demanderesse rajoute qu'à l'occasion des différentes rencontres avec les autorités guinéennes, la CSE a invité ces dernières à une solution conciliante de cette situation. La Demanderesse a indiqué qu'il est d'usage dans les contrats de Marchés publics, que le règlement à l'amiable par un conciliateur suppose que les parties avant tout litige prévoient la procédure de conciliation et les modalités de désignation du conciliateur, mais qu'une telle clause n'est pas prévue dans les contrats de Marchés objets de ce litige, encore moins un compromis qui nécessite la volonté manifeste des Parties au contrat, or l'Etat de Guinée a gardé son silence. La Demanderesse a rajouté que la CSE a tenté par tous les moyens de façon formelle et informelle de provoquer une médiation sans succès et que le préalable de conciliation même prévu contractuellement ne saurait être soulevé comme exception que par les parties au contrat car cette procédure supplétive ne saurait être

---

[39] Mémoire en Demande, para.3, p.2
[40] Mémoire en Demande, para.4, p.3 ; Pièce no. D2 (les certificats de réception définitive des œuvres).
[41] Mémoire en Demande, para.5, p.3 ; Pièce no. D3 (avenants no 1 des contrats de marché).
[42] Mémoire en Demande, para.6, p.3.
[43] Mémoire en Demande, para 7, p.4.

d'ordre public.[44] La Demanderesse soumet également la correspondance de la CSE adressée au Ministère des Travaux Publics en date du 11 avril 2015 [45]qui a fait état d'impayés à hauteur de 13.170.874,04 euros et de 1.206.391.246 GNF.

139.   La Demanderesse soutient en conséquence et suite au mutisme et à l'absence de réaction du Maître de l'Ouvrage pour le règlement de la créance de la CSE, avoir porté l'affaire en arbitrage conformément à l'article 29 du cahier des clauses administratives particulières des contrats de Marchés exécutés. [46]

140.   La Demanderesse a par la suite répondu aux questions de l'Acte de Mission. La Demanderesse confirma la compétence du Tribunal Arbitral conformément à l'article 29 du cahier des clauses administratives particulières des Marchés et à l'article 9 du règlement de la CCI. La Demanderesse sollicite également l'examen simultané de ses demandes dans la même procédure, bien qu'elles soient basées sur deux contrats de Marchés distincts, puisque les Parties et les clauses arbitrales sont identiques et les créances se fondent sur des faits similaires et qu'il s'agit de la même clause compromissoire de l'article 29 du même cahier des clauses administratives particulières incluses dans chaque Marché.[47]

141.   La Demanderesse allègue qu'elle a respecté ses obligations dans le cadre des contrats de Marchés la liant avec la Défenderesse comme elle a totalement et intégralement procédé à la réalisation des travaux portant sur les 2 projets routiers « la 2x2 voies entre Tombo et l'aéroport de Gbessia ». La Demanderesse a également rappelé qu'il s'agit dans cette affaire d'un problème de recouvrement de créances dues, reconnues, liquides et exigibles et non pas d'un problème portant sur les modalités d'exécution et de réalisation matérielles des ouvrages. [48]

142.   La Demanderesse prétend que la Défenderesse n'a respecté aucun de ses engagements prévus aux contrats et que depuis la réalisation des travaux et leur livraison en toute conformité, la République de Guinée n'a pas effectué de paiement et qu'en conséquence la Défenderesse a failli à ses obligations contractuelles.[49]

143.   La Demanderesse réclame en résumé, pour le compte des deux Marchés Lot no 4 et Lot no. 5, le paiement des sommes suivantes : le montant total des impayés en principal

[44] Mémoire en Demande, para 7, p.4.
[45] Mémoire en Demande, p.4 para. 8 et p.5 ; Pièce no D4 (différents courriers de demande de paiement) ; Pièce no D5 (récapitulation des arriérés de paiement et détails par lot) ; Pièce no D 6 (cahiers des clauses administratives particulières).
[46] Mémoire en Demande, p.5.
[47] Mémoire en Demande, p.6.
[48] Mémoire en Demande, Section II-4, para.1, p.8.
[49] Mémoire en Demande, Section II-4, para.2, p.8.

s'élevant à 7 365 747, 91 euros et 699 665 661 GNF ainsi que les intérêts moratoires des impayés des deux Marchés que la Demanderesse a évalué à 5 805 126,13 euros et 506 725 585 GNF, outre les intérêts à échoir jusqu'à l'intervention de la sentence arbitrale.[50] La CSE réclame également la condamnation de l'Etat guinéen au paiement de dommages et intérêts à hauteur de la somme de 2.000.000 d'euros [51] et sollicite du Tribunal Arbitral de condamner la Défenderesse à supporter totalement la charge définitive des frais de l'arbitrage.

144.   La Demanderesse conclut son Mémoire en Demande par les demandes suivantes :[52]

- *Déclarer la requête de la Compagnie Sahélienne d'Entreprise recevable en la forme,*
  *En se déclarant compétent :*
  *Au Fond,*
- *Condamner la République de Guinée Conakry au paiement principal de 7.365.747,91 euros et 699.665.661 GNF au profit de la Compagnie Sahélienne d'Entreprise dite CSE..*
- *Condamner la République de Guinée Conakry au paiement d'intérêts moratoires de 5.805.126,13 euros et 506.725.585 GNF au profit de la Compagnie Sahélienne d'Entreprise dite CSE, outre les intérêts à échoir jusqu'à l'intervention de la sentence arbitrale.*
- *Condamner la République de Guinée Conakry au paiement également de dommages et intérêts de 2.000.000 euros.*
- *Condamner la République de Guinée Conakry au paiement de tous les frais et dépens occasionnés par la présente procédure arbitrale."*

145.   A la suite de l'Audience Finale de Plaidoirie, la Demanderesse a modifié ses réclamations au tire du Marché du Lot 4 de la manière suivante :
- Le montant réclamé en euros s'élève à **3.470.475,73 euros**[53]
  Le montant réclamé en GNF s'élève à un montant de 96.939.178 GNF au lieu de 586.885.339 GNF.[54]
- Les autres réclamations de la Demanderesse au titre de sa requête d'arbitrage et de son mémoire en Demande sont restées inchangées.

---

[50] Mémoire en Demande, p.7.
[51] Mémoire en Demande, Section II-5, p.9.
[52] Mémoire en Demande, p 10 et 11
[53] Transcription de l'Audience du 20 février 2018, p. 31 para 22 à 31 : « *M.Gueye- la somme c'est 3 470 475,73* ».
[54] Transcription de l'Audience du 19 février 2018, p. 51, para 9 à 18.

## VI.   MISSION DU TRIBUNAL ARBITRAL

### A.   LES QUESTIONS DU TRIBUNAL ARBITRAL ET LA DEMANDE DE PRODUCTION DE DOCUMENTS

146.   Le Tribunal Arbitral  à la lumière des mémoires soumis par la Demanderesse, et au regard de l'absence de participation de la Défenderesse à la procédure arbitrale, a adressé une liste de questions à la Demanderesse qui sont relatives aux montants payés au titre des contrats de marchés, aux avenants aux contrats, aux montants des réclamations, au calcul des intérêts moratoires et enfin au calcul des dommages et intérêts.[55]

147.   La liste de questions adressées par le Tribunal Arbitral à la Demanderesse est la suivante : «

*1) Les Montants payés par le Défendeur au titre des Contrats de Marchés*

*a. Au paragraphe 2 de la question II-4 du mémoire en demande en date du 22 juillet 2017 concernant l'exécution des obligations des parties, le demandeur affirme que « depuis la réalisation de ses travaux et leur livraison en toute conformité, la République n'a versé aucun euros, ni aucun franc guinéen à la CSE ». Le Tribunal Arbitral demande au demandeur de clarifier si cela signifie qu'aucun montant n'a jamais été versé à la CSE depuis la conclusion des contrats de marché ? Ou bien si cela signifie qu'aucun montant n'a été versé depuis la réception définitive des travaux ?*

*b. Quels montants ont été payés par le Défendeur au titre de l'exécution du Contrat de Marché concernant le Lot no.4 ? Au titre de l'exécution du Contrat de Marché concernant le Lot no.5 ?*

*c. Concernant les décomptes et acomptes :*

*1- Le Demandeur a-t-il fourni au Défendeur, conformément à l'article 13.11 du CCAG et à l'article 19 du CCAP, ses « projets de décompte mensuels » ? Quels étaient leur montant ?*

*2- Le Demandeur a-t-il fourni au Défendeur, après l'achèvement des travaux et conformément à l'article 13.31 du CCAG, son « projet de décompte final » établissant le montant total des sommes auxquelles il pouvait prétendre ? Quel était le montant du décompte final ?*

*3- La République de Guinée a-t-elle versé des acomptes consécutifs aux différents décomptes ? Le cas échéant, pour quels montants ?*

*d. Les retenues de garanties (5% de chaque montant à régler) ont-elles été payées pour moitié lors de la réception provisoire (2.5%) ainsi que lors de la réception définitive (2.5%), conformément à l'article 6.22 CCAG ?*

---

[55] Correspondance du Tribunal Arbitral du 3 octobre 2017.

2) *Avenants aux Contrats*

    **a.** *Le Tribunal Arbitral souhaite que le demandeur explique les circonstances ayant conduit à la conclusion des avenants.*

    **b.** *Que signifie le « gap financier » mentionné par le Demandeur au paragraphe 5 de son mémoire en demande ?*

    **c.** *Le Demandeur prétend avoir accepté, par ces avenants, de « prendre en charge les couts liés aux facteurs qui ont généré ledit gap financier ». Le Demandeur est prié de bien vouloir expliquer cette affirmation.*

    **d.** *Le Demandeur peut-il expliquer ce que signifient les facteurs indiqués à l'article 1 de chacun des avenants ?*

    **e.** *Les montant prévus aux avenants concernant les Lots 4 et 5 étaient-ils destinés à se substituer aux montants prévus aux contrats de marché concernant les Lots 4 et 5 ?*

    **f.** *Le Ministre des Travaux Publics a-t-il effectué des versements concernant ces avenants ? Quel est le montant des impayés ?*

    **g.** *Au paragraphe 6 de son mémoire en demande, le Demandeur peut-il expliquer pourquoi il mentionne la somme de 3.074.933,09 euros au titre de l'avenant concernant le Lot no.4 alors que le montant de cet avenant est de 3.656.923,71 euros ? Au même paragraphe, le Demandeur peut-il expliquer pourquoi il mentionne la somme de 3.409.629,06 euros au titre du Lot no.5 alors que le montant de cet avenant est de 3.897.891,11 euros ?*

3) *Montant des réclamations*

    **a.** *Le montant des réclamations en principal, tel qu'indiqué à la page 7 du mémoire en demande est-il relatif au contrat principal ou aux avenants ?*

    **b.** *Concernant les sommes réclamées en principal :*

        **1-** *A quoi correspond la somme de 3.467.856,8 euros, réclamée par le Demandeur, à la page 7 de son mémoire en demande, au titre des impayés en principal / part en devise du Lot no.4 ?*

        **2-** *A quoi correspond la somme de 586.885.339 GNF réclamée par le Demandeur, à la page 7 de son mémoire en demande, au titre des impayés en principal / part en GNF du Lot no. 4 ?*

        **3-** *A quoi correspond la somme de 3.897.891,11 euros, réclamée par le Demandeur, à la page 7 de son mémoire en demande, au titre des impayés en principal / part en devise du Lot no.5 ?*

        **4-** *A quoi correspond la somme de 112.780.322, réclamée par le Demandeur, à la page 7 de son mémoire en demande, au titre des impayés en principal / part en GNF du Lot no.5 ?*

43

*4) Calcul des intérêts moratoires : Sur quelle base le Demandeur a-t-il calculé les intérêts moratoires dus en cas de retard de paiement ?*

*5) Calcul des dommages et intérêts : Sur quelle base le Demandeur réclame-t-il la somme de 2.000.000 euros au titre de dommage et intérêts ? »*

148.    Le Tribunal Arbitral a par ailleurs formulé une demande de production de pièces à l'attention de la Demanderesse, demande sur laquelle la Défenderesse était invitée à porter ses commentaires. [56] La liste de pièces établit par le Tribunal était la suivante : «

1.    *Le Tribunal Arbitral ordonne au Demandeur de soumettre tous documents établissant les **montants déjà payés par le Gouvernement de la République de Guinée** dans le cadre de l'exécution des contrats de marchés de travaux concernant le Lot no.4 et le Lot no.5.*

2.    *Le Tribunal Arbitral ordonne au Demandeur de soumettre les **copies des projets de décompte** (mensuels et final) adressés au Défendeur et le cas échéant, la **preuve de l'acceptation de ces projets** de décompte par le Maitre de l'Ouvrage.*

3.    *Le Tribunal Arbitral ordonne au Demandeur de soumettre toute preuve concernant les **retenues de garantie** de 5% de chaque montant à régler ainsi que la libération de 2.5% de ces montants à la date de la réception provisoire et la libération de 2.5% de ces montants à la date de la réception définitive.*

4.    *Le Tribunal Arbitral ordonne au Demandeur de soumettre tous documents, correspondances, communications échangés avec le Défendeur dans le cadre de la **conclusion des deux avenants aux contrats.***

5.    *Le Tribunal Arbitral ordonne au Demandeur de soumettre tous documents, correspondances, communications relatifs au **paiement des Avenants**, émis au cours de la période comprise entre la date de la signature des Avenants (19/02/2010) et la date du dépôt de la requête aux fins d'arbitrage (20/06/2016). »*

6.    *Le Tribunal Arbitral ordonne au Demandeur de soumettre tous documents susceptibles de justifier la somme de 2.000.000 d'euros **réclamée au titre des dommages et intérêts***

7.    *Le Tribunal Arbitral ordonne au Demandeur de soumettre tous documents, communications, correspondances, concernant les **courriers de réclamation de remboursement des arriérés de paiement** ainsi que les réponses y relatifs, entre le 23/12/2011 (date du premier courrier de réclamation produit) et le 20/06/2016 (jour de la requête aux fins d'arbitrage)*

8.    *Le Tribunal Arbitral ordonne au Demandeur de soumettre toute preuve attestant la **proposition du ministère de l'économie d'effectuer le paiement d'un acompte de 1.500.000 euros  et de réaliser le paiement du solde sur un moratoire de 2 ans** telle qu'alléguée dans son courrier du 13 avril 2012.*

9.    *Le Tribunal Arbitral ordonne au Demandeur de soumettre toute preuve relative à l'allégation contenue à la fin du paragraphe 1 du chapitre II-4 de son mémoire en Demande, selon laquelle la créance réclamée est «reconnue ».*

---

[56] Correspondance du Tribunal Arbitral du 3 octobre 2017.

> **10.** *Le Tribunal Arbitral ordonne au Demandeur de soumettre une version lisible de la Pièce no.6 (« **Récapitulation des arriérés de paiement** ») ainsi que tous documents (**factures, preuves de paiement, et autres**) susceptibles de justifier les montants inscrits dans ce document. »*

149. La Demanderesse, dans sa correspondance du 25 octobre 2017 a apporté des réponses aux questions posées par le Tribunal Arbitral et a soumis les documents requis suivants :

   - *Pièce n°1* : Tableau portant récapitulation au Tribunal Arbitral des arriérés de paiement et détermination des intérêts moratoires en euros au 11 février 2016 du Chantier Tombo Gbessia LOT.4.
   - *Pièce n°2* :   Relevés bancaires de Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectués par la BADEA pour le compte du Chantier Tombo Gbessia LOT.4.
   - *Pièce n°3* :   Relevés bancaires de Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectués par le FKADEA pour le compte du Chantier Tombo Gbessia LOT.4.
   - *Pièce n°4* :   Relevés bancaires de Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectués par l'OPEP pour le compte du Chantier Tombo Gbessia LOT.4.
   - *Pièce n°5* :   Tableau portant situation marché Tombo Gbessia 2 fois 2 voies part locale Etat Guinéen en francs guinéens LOT.4.
   - *Pièce n°6* :   Tableau portant récapitulation des arriérés et détermination des intérêts moratoires en euros au 11 février 2016 du Chantier Tombo Gbessia LOT.5.
   - *Pièce n°7* :   Relevés bancaires de Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectués par la BADEA pour le compte du Chantier Tombo Gbessia LOT.5.
   - *Pièce n°8* :   Relevés bancaires de Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectués par le FKADEA pour le compte du Chantier Tombo Gbessia LOT.5.
   - *Pièce n°9* :   Relevés bancaires de Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectués par le FSAOUD pour le compte du Chantier Tombo Gbessia LOT.5.
   - *Pièce n°10* :   Relevés bancaires de Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectués par l'OPEC pour le compte du Chantier Tombo Gbessia LOT.5.
   - *Pièce n°11* :   Tableau portant situation marche Tombo Gbessia 2 fois 2 voies part locale Etat Guinéen en francs guinéens LOT.5.

## B.   QUESTIONS A TRANCHER PAR LE TRIBUNAL ARBITRAL

150. Conformément aux termes de l'Acte de Mission du 23 juin 2017 qui a été approuvé par la Cour de la CCI le 11 juillet 2017, le Tribunal Arbitral trancherait le cas échéant, toute question pertinente résultant des écritures des Parties, que ce soit sur le fond  ou  sur des questions de procédure.[57]

151. Le Tribunal Arbitral traitera les points litigieux suivants tels que prévus dans l'Acte de Mission[58]: «

---

[57] Acte de Mission en date du 23 juin 2017, para 8.1.
[58] Acte de Mission en date du 23 juin 2017, para 8.3.

> (i)    *Le Tribunal a-t-il compétence pour résoudre le différend entre les Parties dans cet arbitrage?*
>
> (ii)    *Dans la mesure où le Tribunal est compétent :*
>> a.    *Quelles étaient les obligations des Parties en lien avec les Marchés?*
>> b.    *Le Demandeur et le Défendeur ont-ils accompli leurs obligations respectives en lien avec les Marchés?*
>> c.    *Le Demandeur a-t-il droit à une compensation pour les dommages réclamés?*
>> d.    *Sur la base des réponses aux points litigieux précédents, quelle Partie est responsable envers qui et pour quel montant?*
>> e.    *Quels sont les coûts de cet arbitrage et quelle Partie devrait les encourir et dans quelle proportion?* »

152.    Au cours de l'Audience Finale de Plaidoiries en date du 20 février 2018, la Demanderesse a formulé une demande supplémentaire au Tribunal Arbitral à savoir que la sentence finale soit revêtue de l'exécution provisoire.[59] Le Tribunal Arbitral a informé la Demanderesse au cours de l'Audience que cette demande serait considérée par le Tribunal qui délibérerait et rendrait sa décision sur cette demande avec la Sentence finale.[60]

## C.    Date butoir pour Rendre la Sentence Arbitrale Finale

153.    Par correspondance du 12 juillet 2017, le Secrétariat de la CCI indiqua que la Cour examinerait s'il y avait lieu de fixer un délai différent pour rendre la sentence finale par rapport au calendrier de procédure (article 30(1)). Dans le cas contraire, le délai serait de six mois à compter de la date de la notification au Tribunal Arbitral de l'approbation de l'Acte de Mission par la Cour article 30(1)).

154.    Par correspondance du 24 juillet 2017, le Secrétariat de la CCI informa les Parties et le Tribunal que la Cour Internationale de la CCI avait fixé le 30 mars 2018 comme délai pour la sentence finale en fonction du calendrier de la procédure (article 30(1)).

155.    Par correspondance en date du 30 Mars 2018, la Cour Internationale de la CCI a prolongé le délai pour rendre la sentence finale jusqu'au 29 juin 2018.

---

[59] Transcription de l'Audience du 20 février 2018, p.41 para. 46-47 « *nous vous demandons solennellement de revêtir votre décision de l'exécution provisoire* ».

[60] Transcription de l'Audience du 20 février 2018, p.42 para. 12 à 14 : « *le Tribunal a considéré ce que vous avez demandé concernant la demande d'exécution provisoire, le Tribunal délibérera et rendra sa décision en temps voulu, avec la Sentence finale* ».

156.   Par correspondance en date du 29 juin 2018, la Cour Internationale de la CCI a prolongé le délai pour rendre la sentence finale jusqu'au 31 juillet 2018.

157.   Par correspondance en date du 1er août 2018, la Cour Internationale de la CCI lors de sa session du 19 juillet 2018 a prolongé le délai pour rendre la sentence finale jusqu'au 31 août 2018.

## VII.   LE TRIBUNAL ARBITRAL

### A.   PREAMBULE

158.   Le Tribunal Arbitral a revu et examiné toutes les pièces et documents versés au dossier. Il accomplira sa mission en répondant aux questions litigieuses telles que formulées dans l'Acte de Mission et dans les demandes de la Partie Demanderesse.

159.   Le Tribunal Arbitral relève aussi qu'en l'absence de représentation de la Partie Défenderesse, il a veillé à la préservation des droits de la défense, du principe d'égalité entre les Parties en s'assurant que la Défenderesse avait été notifiée avec accusé de réception de tous les mémoires, requêtes, correspondances et pièces versées dans le dossier[61]. Le Tribunal Arbitral a aussi posé des questions à la partie Demanderesse et lui a demandé de produire tous les documents qu'il a estimé nécessaire afin d'assurer l'égalité des Parties et le respect des droits de la défense en l'absence de participation de l'une d'elle.[62]

160.   Le Tribunal Arbitral a également analysé, examiné et évalué minutieusement les dires de la Demanderesse ainsi que les documents soumis dans le cadre de ces procédures à la lumière des règles juridiques applicables, afin de déterminer si la Demanderesse avait droit ou non à la réparation qu'elle demande.

### B.   LES QUESTIONS A TRANCHER PAR LE TRIBUNAL ARBITRAL

#### B.1. LA COMPETENCE DU TRIBUNAL ARBITRAL POUR RESOUDRE LE DIFFEREND ENTRE LES PARTIES DANS CET ARBITRAGE

161.   Le Tribunal Arbitral répondra à la question suivante : *Le Tribunal a-t-il compétence pour résoudre le différend entre les Parties dans cet arbitrage?*

---

[61] Les accusés de réception de la Partie Défenderesse sont annexés à la présente Sentence.
[62] Cf. section VI.B. de la présente Sentence.

### a. Positions des Parties

1- Position de la Demanderesse

162. Dans sa Requête d'Arbitrage, la Demanderesse a soutenu que le Tribunal Arbitral était compétent pour connaitre de ce litige en vertu de l'article 29 du cahier des clauses administratives particulières des Marchés qui énonce ce qui suit « *tous différends découlant du présent Marché seront tranchés définitivement selon le Règlement de conciliation et d'arbitrage de la Chambre de commerce internationale de Paris, France, par un ou plusieurs arbitres nommés conformément à ce Règlement* ».[63]

163. De plus, la Demanderesse a sollicité du Tribunal Arbitral de traiter ses demandes, qui étaient basées sur deux contrats de marchés différents, en une seule et même procédure arbitrale puisque les Parties et les clauses arbitrales étaient identiques à chaque contrat de Marché et que les créances se fondaient sur des faits similaires. [64]

164. Dans son Mémoire en Demande, la Demanderesse a réitéré sa position tout en indiquant que les Parties ont entendu sans équivoque donner compétence au tribunal saisi et cela, pour régler en dernier ressort tout différend qui surviendrait dans leurs relations.[65]

165. En ce qui concerne la recherche d'une solution conciliante par la Demanderesse avant la saisine du Tribunal Arbitral, la Demanderesse a soutenu qu'elle a invité, sans succès, les autorités guinéennes à trouver une solution conciliante au différend à l'occasion de ses différentes rencontres avec ces autorités. La Demanderesse a également indiqué, qu'il était d'usage dans les contrats de marchés publics, que le règlement à l'amiable par un conciliateur soit conditionné par l'existence d'une clause de conciliation préalablement à la survenance de tout litige, cette clause prévoyant les modalités de désignation du conciliateur devant être explicitement acceptée par les parties. Or, aucune clause de la sorte n'était prévue dans les contrats de Marchés objet de ce litige. La Demanderesse a rajouté que la CSE avait tenté par tous les moyens de façon formelle et informelle de provoquer une médiation sans succès et que le préalable de conciliation même prévu contractuellement n'aurait su être soulevé comme exception que par les parties au contrat car cette procédure supplétive n'aurait su être d'ordre public.[66] Face au mutisme et à l'absence de réaction de la Défenderesse, la CSE a alors porté le litige en arbitrage conformément à l'article 29 du Cahier des clauses administratives particulières.[67]

---

[63] Requête d'Arbitrage, section II, p.4.
[64] Requête d'Arbitrage, section II, p.4.
[65] Mémoire en Demande, section II-2, p. 6.
[66] Mémoire en Demande, para 7, p.4.
[67] Mémoire en Demande du Demandeur, p.5.

2- Position de la Défenderesse

166.   La Défenderesse n'a pas participé à la procédure d'arbitrage et n'a soumis aucune réponse sur la question soulevée par le Tribunal Arbitral relative à sa compétence pour connaître du présent litige, bien que l'ensemble des actes de procédure et des correspondances lui ait été notifié par courrier rapide DHL à ses différentes adresses. Le Tribunal Arbitral a établi un tableau récapitulatif des correspondances notifié à la Défenderesse et de leurs dates de réception par la Défenderesse à ses différentes adresses prouvant que la Défenderesse a bien eu connaissance de l'ensemble du déroulement de la procédure arbitrale et de la position de la Demanderesse.[68]

### b.  Le Tribunal Arbitral

167.   Le Tribunal Arbitral traitera et tranchera les deux questions suivantes relatives à sa compétence:

- Premièrement : la compétence du Tribunal Arbitral pour connaître du litige en vertu des dispositions du CCAG ou du CCAP des deux Marchés.
- Deuxièmement : la compétence du Tribunal Arbitral pour connaître du litige relatif à deux contrats de Marchés Publics (Lot 4 et Lot 5) dans une seule et même procédure arbitrale.

**En ce qui concerne la première question relative à la compétence du Tribunal Arbitral pour connaître du litige en vertu des dispositions des CCAG et des CCAP des deux Marchés.**

168.   Le Tribunal Arbitral note que les Marchés objet de cet arbitrage sont régis par les cahiers des clauses administratives générales et particulières contenant chacun une clause de règlement des différends.

169.   L'article 50 du Cahier des clauses administratives des deux Marchés stipule que :

« *50. Règlement des différends*
*50.1 Intervention du Maître de l'Ouvrage*

---

[68] Cf. section I.B.2 de la Sentence.

*Si un différend survient entre le Maître d'Œuvre et l'Entrepreneur, sous la forme de réserves faites à un ordre de service ou sous toute autre forme, l'Entrepreneur remet au Maître d'Œuvre, aux fins de transmission au Maître de l'Ouvrage par l'intermédiaire du Chef de Projet, un mémoire exposant les motifs et indiquant les montants de ses réclamations.*

*En l'absence de réponse satisfaisante reçue dans un délai de quinze (15) jours à partir de la date de réception, par le Maître de l'Ouvrage, de la lettre ou du mémoire de l'Entrepreneur, l'Entrepreneur dispose de quinze (15) jours pour soumettre au Conciliateur, le différend relatif à sa réclamation ou la réponse qui y est faite par le Maître d'Œuvre. »*

170.   Le préambule du cahier des clauses administratives particulières énonce : « *Les Clauses administratives particulières qui suivent et complètent les Clauses administratives générales. Dans tous les cas où les dispositions se contredisent, les dispositions ci-après prévaudront sur celles des clauses administratives générales. Le numéro de la Clause générale à laquelle se réfère une Clause particulière est indiqué entre parenthèses* ».[69]

171.   Le Cahier des clauses administratives particulières prévoit dans son article 29 une disposition relative aux règlements des différends:

   « ***Article 29. Règlement des différends*** *(CCAG Article 50)*
   *50.31 Tous différends découlant du présent Marché seront tranchés définitivement selon le Règlement de conciliation et d'arbitrage de la Chambre de commerce internationale de Paris, France, par un ou plusieurs arbitres nommés conformément à ce Règlement. »*

172.   Le Tribunal Arbitral a invité la Demanderesse au cours de l'audience de procédure du 23 juin 2017 à indiquer les étapes qui ont été suivies par rapport à l'article 50.2 du Cahier des clauses administratives, clauses relatives à la nomination d'un conciliateur, et s'il y avait eu des étapes préalables au recours à l'arbitrage. [70] La Demanderesse a indiqué qu'elle s'était rapprochée de la Défenderesse en vue d'essayer de trouver une solution amiable au litige. Une correspondance n° 076 en date du 29 avril 2016 a été adressée à la Défenderesse à cet effet mais celle-ci est restée sans réponse. La Demanderesse a également indiqué qu'il n'existait pas d'autorité de conciliation[71], et que la nomination d'un conciliateur n'avait pu

---

[69] Pièce no 8, « cahier des clauses administratives particulières », p.1 jointe à la Requête d'Arbitrage.
[70] Voir Transcription de l'Audience de Procédure du 23 juin 2017, p. 12  para 23-25.
[71] Voir Transcription de l'Audience de Procédure du 23 juin 2017 p. 15 para para 47-48 « *l'autorité de conciliateur n'existe pas* ».

avoir lieu, une telle nomination devrait s'effectuer d'un commun accord et non pas unilatéralement par l'une des Parties.[72]

173. La Demanderesse, par la suite, a consacré dans son Mémoire en Demande en date du 21 juillet 2017, une section réitérant sa position sur la recherche d'une solution amiable du litige.[73] La Demanderesse a indiqué qu'elle avait adressé des lettres de relance au Ministère des Travaux Publics guinéen et le Ministère des Finances guinéen et que la CSE avait rencontré à plusieurs reprises ces autorités pour demander en vain le paiement de sa créance. La Demanderesse a soutenu également qu'à l'occasion de ces rencontres, la CSE avait proposé la recherche d'une solution conciliante. La Demanderesse a rajouté qu'il est d'usage dans les Marchés publics, que le règlement à l'amiable par un conciliateur suppose que les Parties avant tout litige prévoient la procédure de conciliation et les modalités de désignation du conciliateur, mais qu'une telle clause n'est pas prévue dans les contrats de Marchés publics objets de ce litige. La Demanderesse a rajouté que la CSE avait tenté par tous les moyens de façon formelle et informelle de provoquer une médiation sans succès. Pour preuve, la Demanderesse a soumis la correspondance de la CSE adressée au Ministère des Travaux Publics en date du 11 avril 2015.[74] La Demanderesse a également allégué que « *le préalable de la procédure de conciliation même prévu contractuellement ne saurait être soulevé comme exception que par les Parties au contrat car cette procédure supplétive ne saurait être d'ordre public* ».[75] Enfin, la Demanderesse a allégué que face au mutisme et à l'absence de réaction de la Défenderesse, la CSE a porté le litige en arbitrage conformément à l'article 29 du Cahier des clauses administratives particulières.[76]

174. Au regard de la volonté expresse des Parties telle qu'énoncée dans le préambule du Cahier des clauses administratives particulières, en cas de contradiction entre les dispositions du CCAG et celles du CCAP, les dispositions de cette dernière prévaudront.

175. Dans le cas d'espèce, l'article 29 du CCAP ne prévoit pas une procédure de conciliation préalable à la procédure arbitrale mais énonce uniquement que tous différends découlant du présent Marché seront tranchés définitivement selon le Règlement de conciliation et d'arbitrage de la Chambre de commerce internationale de Paris, France.

176. Il résulte des pièces du dossier qu'une tentative de règlement du litige à l'amiable a eu lieu mais sans succès[77] et que par la suite la Demanderesse a engagé une procédure arbitrale conformément au règlement CCI de 2012 et qu'un Tribunal Arbitral a été constitué pour

---

[72] Voir Transcription de l'audience de Procédure du 23 juin 2017 p. 12 para 26 à 37, p.3 para 10 à 14, 22 à 28, et 38 à 47, p.14 para 1 à 4, p.15 para 8 à 16, 38 à 50, p.16, para 1 à 20.
[73] Mémoire en Demande du Demandeur, p.4 para. 7.
[74] Pièce no D5 jointe au Mémoire en Demande ; Mémoire en Demande du Demandeur, p.4 para. 8 et p.5.
[75] Mémoire en Demande du Demandeur, p.4 para. 7.
[76] Mémoire en Demande du Demandeur, p.5.
[77] Pièce no 5 jointe à la Requête d'Arbitrage.

trancher tout différend opposant les Parties à l'arbitrage en vertu des deux contrats de Marchés.

177. Au regard de la primauté des dispositions du cahier des clauses administratives particulières sur les dispositions du cahier des clauses administratives générales, la procédure arbitrale initiée dans la présente affaire CCI 22056 est conforme à la volonté des Parties et le Tribunal Arbitral validement constitué est par conséquent compétent pour trancher tout litige afférent aux Marchés susmentionnés.

178. Par conséquent, le Tribunal Arbitral déclare qu'il est compétent pour trancher les différends relatifs aux deux Marchés de travaux publics Lot 4 et Lot 5 dans une seule procédure arbitrale sur le fondement de la clause compromissoire prévue à l'article 29 CCAP des deux Marchés.

**En ce qui concerne la deuxième question relative à la compétence du Tribunal Arbitral pour connaître du litige relatif à deux contrats de Marchés Publics (Lot 4 et Lot 5) dans une seule et même procédure arbitrale:**

179. Le Tribunal Arbitral relève qu'il résulte de la lecture des deux contrats de Marchés, le Lot 4 et le Lot 5, qu'il s'agit (i) de contrats relatifs à l'exécution d'un même projet « le réaménagement de la 2x2 voies entre Tombo et l'aéroport de Gbessia (Conakry) » divisé en deux Lots [78]et (ii) de contrats conclus entre les mêmes Parties : le gouvernement de la République de Guinée, représenté par le Ministre des Travaux Publics et des Transports, en sa qualité de Maître d'Ouvrage et la CSE, en sa qualité de Titulaire[79].

180. De plus, les deux contrats de Marchés sont régis par les Cahiers des clauses administratives générales et Cahiers des clauses administratives particulières similaires et qui contiennent des clauses arbitrales identiques.[80]

181. En outre, les créances réclamées par la Demanderesse se fondent sur des faits similaires : la conclusion de deux Avenants aux deux Contrats de Marchés avec un objet identique qui est la prise en charge des coûts liés aux facteurs qui ont généré le gap financier sur les deux Lots 4 et 5 du projet Tombo-Gbessia (Révision des prix, dépassement des délais contractuels, dépréciation du dollar par rapport à l'Euro)[81] conduisant à une révision du

---

[78] Pièce no 2 soumise avec la Requête d'Arbitrage : Le Marché de Travaux intitulé « réaménagement de la 2x2 voies entre Tombo et l'aéroport de Gbessia (Conakry) Lot 4 : Tronçon Kenien –T1, Marché de Travaux no 2003/0325/1/2/1/2/N en date du 25 juin 200 ; Le Marché de Travaux intitulé « réaménagement de la 2x2 voies entre Tombo et l'aéroport de Gbessia (Conakry) Lot 5 : Tronçon T1-T2 y compris les deux échangeurs aux carrefours de la T1 et la T2, Marché de Travaux no 2003/0324/1/2/1/2/N en date du 25 juin 2003 ».

[79] Pièce no 2 soumise avec la Requête d'Arbitrage : Contrat de Marché Lot 4, p.1 ; Contrat de Marché Lot 5, p.1.

[80] Pièce no 7 soumise avec la Requête d'Arbitrage: Article  50 CCAG et Pièce no 8 soumise avec la Requête d'Arbitrage : Article 29 CCAP.

[81] Pièce no 4 soumise avec la Requête d'Arbitrage : Articles 1 des deux Avenants.

prix des deux Marchés.  De plus, il résulte des différents courriers de demande de paiement et de relance soumises par la Demanderesse que les deux Contrats de Marchés étaient traités ensemble et que les réclamations des arriérés de paiement concernant les Avenants se faisaient ensemble pour les deux projets routiers que constituent les Lots 4 & 5 de la 2 x 2 voies entre Tombo et l'Aéroport de Gbessia.[82]

182.    Par ailleurs, la CCI a accepté la requête d'arbitrage de la Demanderesse fondée sur les deux Marchés et l'article 9 du règlement CCI « Contrats multiple » énonce ce qui suit : « *sous réserve des dispositions des articles 6, paragraphes 3 à 7, et 23, paragraphe 4, des demandes découlant de plusieurs contrats ou en relation avec ceux-ci peuvent être formées dans le cadre d'un arbitrage unique qu'elles soient formées en application d'une ou de plusieurs conventions d'arbitrage visant le règlement* ».

183.    Par conséquent, au regard de la connexité des deux contrats de Marchés conclus et signés entre les mêmes Parties : la Demanderesse « la Compagnie Sahélienne d'Entreprises » et la Défenderesse « la République de Guinée, représentée par le Ministre des Travaux Publics et des Transports », portant sur le même objet, et fondés sur la même clause d'arbitrage et en vertu de l'article 9 du règlement CCI susmentionné, le Tribunal Arbitral s'estime compétent pour connaître du litige résultant des deux contrats de Marchés en une seule et même procédure arbitrale.

### B.2.  L'EXECUTION DES OBLIGATIONS CONTRACTUELLES RESPECTIVES DES PARTIES

184.    Le Tribunal Arbitral répondra aux deux questions suivantes:
   1- *Quelles étaient les obligations des Parties en lien avec les Marchés?*
   2- *La Demanderesse et la Défenderesse ont-elles accompli leurs obligations respectives en lien avec les Marchés?*

#### a.  **Positions des Parties**

1- Position de la Demanderesse

185.    La Demanderesse prétend que la Compagnie Sahélienne d'Entreprise a conclu avec l'Etat Guinéen des contrats en date du 25 juin 2003, relatifs à l'exécution, dans la capitale de Conakry, de travaux portant sur la réalisation de deux projets routiers, Lots 4 et 5, dénommés « la 2x2 voies entre Tombo et l'aéroport de Gbessia ». Il s'agit du « Marché Lot 4 » et du « Marché Lot 5 ».[83]

---

[82] Pièce no 5 soumise avec la Requête d'Arbitrage.
[83] Requête d'Arbitrage,  p.2 ; Mémoire en Demande, para.1, p.2.

186.    Concernant la preuve de la signature des deux Marchés, la Demanderesse soumet la pièce no. D1 et allègue que conformément à l'article 4 du contrat, la contrepartie financière de l'exécution des travaux serait libérée comme suit :
-    Le Maître de l'ouvrage se libèrerait des sommes dues à l'entreprise pour ce qui concerne la part en devise soit 86, 82% du montant hors taxes du marché par virement en euros au compte bancaire de l'entreprise ouvert au Crédit Commercial de France (CCF).
-    En ce qui concerne la part en Francs Guinéens soit 13.18% du montant du marché, elle serait libérée par virement sur le compte de l'entreprise ouvert à l'Union Internationale de Banque en Guinée Conakry (UIBG).[84]

187.    La Demanderesse affirme s'être entièrement acquittée de ses obligations contractuelles et avoir livré à l'Etat Guinéen l'ensemble des ouvrages prévus aux contrats et que cette exécution est attestée par des certificats de réception définitive établis sans réserve, en date du 24 juin 2009 pour chaque Lot, par le Maître de l'ouvrage.[85]

188.    La Demanderesse prétend également que malgré la livraison de ces ouvrages à l'Etat Guinéen depuis plus de huit ans et l'intervention d'Avenants dûment signés par les Parties, la CSE s'est montrée coopérative et patiente et tente de recouvrir le paiement des sommes qui lui sont dues au titre des Avenants des deux Marchés.[86]

189.    Concernant les Avenants, La Demanderesse prétend que l'Etat Guinéen, dans sa mobilisation des ressources dédiées au paiement des prestations de la CSE, a constaté un gap financier découlant des fluctuations monétaires. Par conséquent, la CSE a accepté de revenir sur le montant de sa créance par deux Avenants n° 1 afférents à chaque Marché (Lots 4 et 5), tous deux conclus le 19 février 2010 pour prendre en charge les coûts liés aux facteurs qui ont généré le gap financier.[87] Sur la preuve de l'existence de ces avenants et en se fondant sur leurs contenus, la Demanderesse allègue que ces avenants ont été approuvés par le Ministre Guinéen de l'Economie et des Finances. Ces avenants des Lots 4 et 5 prévoient ce qui suit :
-    Pour le Lot no. 4 : un montant de 3.074.933.09 euros payable suivant quatre échéanciers trimestriels de l'année 2010 soit 768.733,31 euros par trimestre.
-    Pour le Lot no. 5 : un montant de 3.409.629,06 euros payable suivant quatre échéanciers trimestriels de l'année 2010 soit 852.407,26 euros par trimestre.[88]

---

[84] Mémoire en Demande, para.2, p.2
[85] Requête d'Arbitrage,  p.2 ; Mémoire en Demande, para.3, p.2et 3 ; Pièce no. D2 (les certificats de réception définitive des œuvres).
[86] Mémoire en Demande, para.6, p.4.
[87] Mémoire en Demande, para.5, p.3 ; Pièce no. D3 (avenants no 1 des contrats de marché).
[88] Requête d'Arbitrage, p.3. ; Mémoire en Demande, para.6, p.3.

190.   La Demanderesse soutient que malgré les multiples lettres de relance aux différents Ministères concernés, c'est-à-dire le Ministre des Travaux Publics et le Ministre des Finances et après avoir rencontré plusieurs fois ces autorités, le paiement de la créance de la CSE relatif aux Avenants n'a pas eu lieu. La Demanderesse fait référence en particulier à sa dernière correspondance en date du 11 avril 2015 adressée au Ministère des Travaux Publics, dans laquelle la CSE fait état d'impayés à hauteur de 13.170.874,04 euros et de 1.206.391.246 GNF, répartis entre le Lot no.4 et le Lot no.5 de la manière suivante[89] :

- Pour le Lot no. 4 :
  - Un montant de 6.104.066,28 euros dont 2.6 millions d'euros d'intérêts moratoires ; et
  - Un montant de 760.280.149 GNF dont 173 millions d'intérêts moratoires.
- Pour le Lot no. 5 :
  - Un montant de 7.066.807,76 euros dont 3.2 millions d'intérêts moratoires ;et
  - Un montant de 446.111.098 GNF dont 333 millions d'intérêts moratoires.

191.   En ce qui concerne les obligations de la Défenderesse, la Demanderesse prétend que la Défenderesse n'a respecté aucun de ses engagements prévus aux contrats et que depuis la réalisation des travaux et leur livraison en toute conformité, la République de la Guinée n'a versé aucun euro, ni aucun franc guinéen à la CSE et qu'en conséquence la Défenderesse a failli à ses obligations contractuelles.[90] En effet, la Demanderesse allègue que la Défenderesse devait se libérer pour chaque Marché suivant quatre échéanciers trimestriels des sommes suivantes :

A- Au titre du marché no.2003/0325/1/2/1/2/N (Lot no.4)
- Impayés en principal / part en devises : 3.467.856,80 euros
- Intérêts moratoires y afférents : 2.636.209,48 euros
  **Total dû en devise : 6.104.066,28 euros**
- Impayés en principal / part en GNF : 586.885.339 GNF
- Intérêts moratoires y afférents : 173.394.810 GNF
  **Total dû en parts locales : 760.280.149 GNF**

B- Au titre du marché no.2003/0324/1/2/1/2/N (Lot no.5)
- Impayés en principal / part en devises : 3.897.891,11 euros
- Intérêts moratoires y afférents : 3.168.916,65 euros
  **Total dû en devise : 7.066.807,76 euros**
- Impayés en principal / part en GNF : 112.780.322 GNF
- Intérêts moratoires y afférents : 333.330.776 GNF
  **Total dû en parts locales : 446.111.098 GNF**

---

[89] Requête d'Arbitrage, p.3 et 4.
[90] Mémoire en Demande, Section II-4, para.2, p.8.

2- Position de la Défenderesse

192. La Défenderesse n'a pas participé à la procédure d'arbitrage et n'a soumis aucune réponse aux questions soulevées par le Tribunal Arbitral et relatives à l'exécution des obligations contractuelles respectives des Parties au titre des Marchés, bien que l'ensemble des actes de procédure et des correspondances lui ait été notifié par courrier rapide DHL à ses différentes adresses. [91] Le Tribunal Arbitral a établi un tableau récapitulatif des correspondances notifiées à la Défenderesse et de leur date de réception par la Défenderesse à ses différentes adresses prouvant que la Défenderesse a bien eu connaissance de l'ensemble du déroulement de la procédure arbitrale et de la position de la Demanderesse.

### b.  Le Tribunal Arbitral

193. Le Tribunal relève que la Demanderesse en sa qualité de « Titulaire » ou Entrepreneur, et la Défenderesse en sa qualité de « Maître d'ouvrage », ont conclu deux contrats de Marchés en date du 25 juin 2003.

194. L'objet du premier Marché était « *l'exécution du projet de Réaménagement de la 2x2 voies entre Tombo et l'Aéroport de Gbessia (Conakry), Lot 4 : Tronçon Kenien –T1* » [92] ( Marché Lot 4) et l'objet du second Marché était « *l'exécution du projet de Réaménagement de la 2x2 voies entre Tombo et l'Aéroport de Gbessia (Conakry),Lot 5 : Tronçon T1-T2 y compris les deux échangeurs aux carrefours de la T1 et la T2* ».[93]

195. L'article 4 des contrats du Marchés des Lot 4 et Lot 5 [94] prévoient dans les mêmes termes ce qui suit : « *le Maître de l'Ouvrage se libèrera des sommes dues à l'Entreprise pour ce qui concerne la part en devise soit 86,82% du montant hors taxes du Marché par virement bancaire en EURO (EUR) au compte no 17722-00001 ouvert à la banque Crédit Commercial de France (CCF) Paris, 115-117 Avenue des Champs Elysées, 75419 Paris Cedex 08. Et pour ce qui concerne la part en Francs Guinéens soit 13,18% du montant du marché par virement au compte no. 05000560170/11 ouvert à la banque Union Internationale de Banque en Guinée (UIBG) Conakry. Le taux de change applicable à ce marché est de 1 Euro= 1965,5267 GNF (fixing Banque Centrale de la République de Guinée* ».

---

[91] Cf. section I.B.2. de la présente Sentence.
[92] Article 1 du Contrat de Marché du Lot 4 ; pièce no2, Requête d'Arbitrage.
[93] Article 1 du Contrat de Marché du Lot 5 ; pièce no2, Requête d'Arbitrage.
[94] Pièce no.2 Requête d'Arbitrage

196.   Conformément à l'Article 4 des deux Marchés susmentionné, la Défenderesse devait exécuter son obligation de paiement en devise (euros) pour 86,82 % du montant de chacun des deux Marchés et en francs guinéen pour les 13,18 % restant. En ce qui concerne le paiement en devise (euros), celui-ci devait être pris en charge par les bailleurs de fonds suivants : le FKD, la BADEA, le FSD et l'OPEP. En ce qui concerne le paiement en francs guinéens, celui-ci devait être pris en charge par la République de Guinée.

197.   Par ailleurs, il résulte de ces deux contrats de Marchés que l'obligation de la Demanderesse était « *l'exécution du projet de Réaménagement de la 2x2 voies entre Tombo et l'Aéroport de Gbessia (Conakry), Lot 4 : Tronçon Kenien –T1* » pour le Marché du Lot 4 et «*l'exécution du projet de Réaménagement de la 2x2 voies entre Tombo et l'Aéroport de Gbessia (Conakry),Lot 5 : Tronçon T1-T2 y compris les deux échangeurs aux carrefours de la T1 et la T2* » pour le Marché du Lot 5.   L'obligation de la Défenderesse était le paiement du prix des travaux exécutés tel qu'il résulte de l'Article 4 des contrats des deux Marchés susmentionnés.

198.   Il ressort des pièces du dossier que le Secrétaire d'Etat aux Travaux Publics Arch Mamady Kallo, agissant en sa qualité de Maître d'Ouvrage pour les deux Marchés de travaux de réaménagement de la 2x2 voies entre Tombo et l'Aéroport de Gbessia : le Lot 4 et le Lot 5, a émis deux certificats de réception définitive pour chacun des deux Marchés. Un certificat de réception définitive en date du 24 juillet 2009 no 0286/SETP/CAB/09 pour le Marché du Lot 4 et un certificat de réception définitive en date du 24 juillet 2009 no 0285/ SETP/CAB/09 pour le Marché du Lot 5. [95]

199.   Par conséquent, la Demanderesse a apporté la preuve de la bonne exécution de ses obligations contractuelles à savoir la réalisation des travaux pour les Marchés du Lot 4 et du Lot 5 et leur réception définitive par la Défenderesse. En vertu de l'article 42.3 des CCAG « *la réception définitive marquera la fin d'exécution du présent Marché et libérera les parties contractantes de leurs obligations* ». Le Tribunal Arbitral relève qu'aux termes express des deux Marchés, il n'existe pas d'obstacle conditionnant la mise en œuvre de l'obligation de paiement de la Défenderesse. Il incombait alors à la Défenderesse l'obligation de payer le prix des travaux effectués conformément aux Articles 4 des deux contrats de Marchés afférents aux Lot 4 et au Lot 5. Le Tribunal Arbitral relève en outre des pièces du dossier, qu'en raison d'un gap financier, les deux Parties au contrat ont révisé le prix contractuel initialement prévu dans les contrats de Marchés via la conclusion de deux Avenants pour chacun des deux Marchés. Il s'agit de l'Avenant no.1 au contrat no 2003/0324/1/2/1/2/N réaménagement de la route la 2x2 voies Tombo - Gbessia Lot 5 :

---

[95]  Pièce no. 3, Requête d'Arbitrage : Certificat de réception définitive du en date du 24 juillet 2009 no 0286/SETP/CAB/09 pour le Marché du Lot 4 et un certificat de réception définitive en date du 24 juillet 2009 no 0285/ SETP/CAB/09 pour le Marché du Lot 5.

T1-T2 en date du 19 février 2010 et l'Avenant no.1 au contrat no 2003/0325/1/2/1/2/N réaménagement de la route la 2x2 voies Tombo - Gbessia Lot 4 : Kenien – T1 en date du 19 février 2010.

200. L'article 3 des deux Avenants prévoit ce qui suit : « *les documents du marché de base sont considérés et interprétés comme faisant partie intégrante du présent avenant, dans l'ordre de priorité défini dans le même marché de base* ».

201. La Demanderesse a confirmé dans ses plaidoiries, dans ses lettres de relances soumises au dossier[96], et au cours de l'Audience Finale que les montants réclamés sont relatifs aux montants des Avenants qui sont restés impayés et ce malgré les lettres de relances successives adressées à la République de Guinée exposées ci-dessous :[97]

- **Lettre en date du 23 Décembre 2011 adressée par le Directeur Général de la CSE M. Oumar Sow au Ministre d'Etat chargé de l'Economie et des Finances Conakry-République de Guinée[98]** qui contient les termes suivants :

  « *Monsieur le  Ministre d'Etat,*
  *suite à nos différents courriers de rappel sans effet concernant nos arriérés en objet qui s'élèvent à 7.554.814,82 euros (sept millions cinq cent cinquante-quatre mille huit cent quatorze euros et quatre-vingt deux centimes), nous venons par la présente vous réitérer notre demande de paiement dont le retard nous a causé déjà d'énormes préjudices. Nous vous rappelons Monsieur le Ministre de l'Etat que ces montant sont établis en application des dispositions des avenants 2010/094/2/2/1/2/n (Lot4) et 2010/093/2/2/1/2/n (Lot 5) tous approuvés le 20/01/2010 par Monsieur le Ministre de l'Economie et des Finances [...]* ».

- **Lettre en date du 8 février 2012 adressée par le Directeur Général de la CSE M. Oumar Sow au Ministre des Travaux Publics et des Transports, Conakry-République de Guinée[99]** sollicitant à nouveau le règlement de la dette pour les deux projets routiers des Marchés Lot 4 et Lot 5 et attirant l'attention du Ministre sur « *la situation difficile que vit notre entreprise du fait des impayés qui sont dus par l'Administration Guinéenne, à la suite de la réalisation pour son compte et*

---

[96] Lettre en date du 23 Décembre 2011 adressée par le Directeur General de la CSE M. Oumar Sow au Ministre d'Etat chargé de l'Economie et des Finances Conakry-République de Guinée « *Nous vous rappelons Monsieur le Ministre de l'Etat que ces montant sont établis en application des dispositions des avenants 2010/094/2/2/1/2/n (lot4) et 2010/093/2/2/1/2/n (lot 5) tous approuvés le 20/01/2010 par Monsieur le Ministre de l'Economie et des Finances [...]* ». (Pièce no 5, Requête d'Arbitrage).
[97] Réponses par le Demandeur aux questions posées par le Tribunal Arbitral dans sa correspondance du 3 octobre 2017 ; Transcription de l'Audience du 19 février 2018, p. 22 para 45 à 51 et p.23 para 1 à 21.
[98] Pièce no 5, Requête d'Arbitrage.
[99] Pièce no 5, Requête d'Arbitrage.

*depuis fin Mai 2008, des 2 projets routiers que constituent les Lots 4 & 5 de la 2 x2 voies entre Tombo et l'Aéroport Gbessia. En effet concernant ces 2 projets, notre entreprise enregistre depuis plus de 3 ans maintenant des arriérés de paiement qui se chiffrent à 10 304 153,33 € et 1122 657 733 GNF [...]*

*Par nos précédents courriers de relance en date du 29/05/2011 et 23/12/2011 adressés respectivement à votre Ministère, et à celui de l'Economie et des Finances, nous sollicitons le règlement de cette dette à notre égard qui nous cause d'énormes préjudices, surtout qu'il s'agit de projets déjà réceptionnés par l'administration depuis plus de 3 ans et pour l'achèvement desquels nous nous sommes fortement endettés.*
*Et lors de notre dernier séjour à Conakry, nos multiples tentatives de rencontrer le Ministre d'Etat chargé de l'Economie et des Finances pour examiner avec lui les dispositions prises par l'Administration pour nous payer sont restées vaines. Ainsi, nous nous voyons obliges de vous saisir officiellement, en votre qualité de Ministre de tutelle charge du règlement de ces suspens pour nous aider à obtenir le déblocage de situation qui dure depuis plus de 3 ans [...] »*

- **Lettre en date du 10 décembre 2012 adressée par le Directeur Général de la CSE M. Oumar Sow au Ministre des Travaux Publics et des Transports, Conakry - République de Guinée**[100] qui sollicite à nouveau le règlement de la dette pour les Marchés Lots 4 et 5 dans le même sens que la lettre du 8 février 2012 susmentionnée.

- **Lettre en date du 13 avril 2012 adressée par le Directeur Général de la CSE M. Oumar Sow au Ministre d'Etat chargé de l'Economie et des Finances Conakry-République de Guinée**[101] qui fait référence à une séance de travail avec l'administration guinéenne au regard de la situation des impayés à la suite de laquelle le département ministériel a fait les propositions suivantes :
*« -Paiement d'un acompte de 1 500 000 euros (un million cinq cent mille euros) fin juin 2012*
*-Paiement du solde sur un moratoire de 2 (deux ans) ».*

- **Lettre en date du 11 avril 2015 adressée par le Directeur Général de la CSE M. Oumar Sow au Ministre des Travaux Publics et des Transports, Conakry - République de Guinée**[102] qui attire à nouveau l'attention de l'Administration guinéenne sur la situation difficile de la CSE du fait des impayés *« qui sont dûs par l'Administration Guinéenne, à la suite de la réalisation pour son compte et*

---

[100] Pièce no 5, Requête d'Arbitrage.
[101] Pièce no 5, Requête d'Arbitrage.
[102] Pièce no 5, Requête d'Arbitrage.

> *depuis fin Mai 2008, des 2 projets routiers que constituent les Lots 4 & 5 de la 2 x2 voies entre Tombo et l'Aéroport Gbessia. En effet concernant ces 2 projets, notre entreprise enregistre depuis plus de 7 ans maintenant des arriérés de paiement qui se chiffrent en principal a 7 365 747, 91€ et 99 665 661 GNF et en intérêts a 5 805 126,13€ et [...] GNF[...] En résumé, le montant total de nos impayés s'élève à13 170 874,04 € et 1 206 391 246 GNF[...].*

202.   Le Tribunal Arbitral, constate, après examen des correspondances mentionnées ci-dessus, que la Demanderesse a réclamé aux Ministères concernés, à plusieurs reprises, le paiement des montants des impayés relatifs aux deux Avenants. Ces correspondances démontrent que jusqu'au 11 avril 2015, la Demanderesse a réclamé le paiement des arriérés en euros et en francs guinéens.

203.   En outre, le Tribunal Arbitral relève les principales dispositions contractuelles des deux Avenants qui énoncent ce qui suit :

> ➤ Avenant No.1 du Marché du Lot 4[103]

- Article 1 : « *le présent avenant a pour objet de prendre en charge les coûts liés aux facteurs qui ont généré le gap sur le Lot 4 du projet Tombo-Gbessia (Révision des prix, dépassement des délais contractuels, dépréciation du dollar par rapport à l'Euro)* » .

- Article 2 :« *les conditions générales du Marché restent entièrement d'application sauf les modifications prévues dans les Conditions particulières du Contrat liées à cet avenant* ».

- Article 4 : « *le montant total de l'avenant n° 1 résultant de l'analyse du gap est de : Trois Millions Six Cent Cinquante Six Mille Neuf Cent Vingt Trois et Soixante Onze Centimes d'Euros ( 3 656 923,71 €)* ».

- Article 5 : « *les modalités de règlements seront effectuées ainsi qu'il suit :*
  - *FKD : 206 356,09 €*
  - *FSD : 194 356,04€*
  - *OPEP : 181 278,34€*
  - *BND : 3 074 933, 34 € suivant l'échéancier ci-après :*
    - *Premier trimestre an 2010 : 768 733,31 €*
    - *Deuxième trimestre an 2010 : 768 733,31€*
    - *Troisième trimestre an 2010 : 768 733,31€*
    - *Quatrième trimestre an 2010 : 768 733, 31€* »

---

[103] Pièce no 14 soumise dans la correspondance de la Demanderesse du 25 octobre 2017 ; il s'agit également de la pièce no 4 de la Requête d'Arbitrage et de la pièce D 4 du Mémoire en Demande.

- Article 6 : « *les prix sont fermes et non révisables* ».

  ➢ <u>Avenant No.1 du Marché du Lot 5[104]</u>

  - Article 1 « *le présent avenant a pour objet de prendre en charge les couts liés aux facteurs qui ont généré le gap sur le Lot 5 du projet Tombo-Gbessia (Révision des prix, dépassement des délais contractuels, dépréciation du dollar par rapport à l'Euro)* ».

  - Article 2 :« *les conditions générales du Marché restent entièrement d'application sauf les modifications prévues dans les Conditions particulières du Contrat*».

  - Article 4 « *le montant total de l'avenant n° 1 résultant de l'analyse du gap est de : Trois Millions Huit Cent Quatre Vingt Dix Sept Mille Huit Cent Quatre Vingt Onze et Onze centimes d'Euros (3 897 891,11 €)*».

  - Article 5 « *les modalités de règlements seront effectués ainsi qu'il suit :*
    - *FSD : 383 854,57 €*
    - *OPEP : 104 407,49 €*
    - *BND : 3 409 629,06 € suivant l'échéancier ci-après :*
    - *Premier trimestre an 2010 : 852 407,26 €*
    - *Deuxième trimestre an 2010 852 407,26 €*
    - *Troisième trimestre an 2010 : 852 407,26 €*
    - *Quatrième trimestre an 2010 : 852 407,26 €* ».

  - Article 6 : « *les prix sont fermes et non révisables* ».

204. De plus, l'Article 10 des deux Avenants énonce dans les mêmes termes que « *le présent avenant n'est valable et exécutoire qu'après sa signature par les parties concernées et son approbation par le Ministre de L'Economie et des Finances* ».

205. Le Tribunal Arbitral, à la lecture des deux Avenants, relève à cet égard la mention « approuvé » par le Ministre de l'Economie et des Finances avec le tampon du Ministère et une signature sur ces deux Avenants[105]. Par conséquent, le Tribunal Arbitral constate

---

[104] Pièce no. 14 soumise dans la correspondance de la Demanderesse du 25 octobre 2017 ; il s'agit également de la pièce no. 4 de la Requête d'Arbitrage et de la pièce D 4 du Mémoire en Demande.

[105] Pièce no. 4, Requête d'Arbitrage. Article 10 de l'Avenant no.1 du Marché du Lot 4 : « *le présent avenant n'est valable et exécutoire qu'après sa signature par les parties concernées et son approbation par le Ministre de L'Economie et des Finances* » ; Article 10 de l'Avenant no.1 du Marché du Lot 5 : « *le présent avenant n'est valable*

que ces Avenants sont valables et exécutoires, et qu'ils corroborent l'existence d'une créance de la Demanderesse qui est liquide, certaine et exigible.

206. Le Tribunal se réfère à l'article 801 du Code Civil guinéen qui énonce ce qui suit :
« *En règle générale, c'est au demandeur c'est-à-dire à celui qui intente une action en justice, qu'incombe la charge de la preuve.*
*Mais si le défendeur, c'est-à-dire celui contre qui la demande est formulée, a à faire valoir un moyen de défense contre son adversaire, c'est alors à lui que passe la charge de la preuve.* »[106]

207. Il résulte de ces dispositions que la charge de la preuve incombe au Demandeur en droit guinéen. Ainsi, toute personne qui s'estime créancière d'une obligation doit en apporter la preuve et toute personne qui s'estime libérée d'une obligation doit en apporter la preuve.

208. En l'espèce, la Demanderesse réclame le paiement du montant des Avenants pour les montants en euros et réclame également le paiement des montants en Francs Guinéens pour les montants des décomptes restés impayés par la République de la Guinée.

209. Le Tribunal constate que la Demanderesse a apporté la preuve qu'elle s'est acquittée de ses obligations contractuelles au titre des deux Marchés au regard des Certificats de Réception définitive des Travaux émis par la Défenderesse et réclame le paiement par la Défenderesse du montant des Avenants. Le Tribunal Arbitral constate que la créance monétaire au titre des Avenants est liquide, certaine, exigible et que la Défenderesse s'est engagée à payer le montant des Avenants selon un calendrier préétablit. Il revient ainsi à la Défenderesse de prouver qu'elle s'est libéré de ses obligations contractuelles de payer le montant des arriérés relatifs aux Avenants. Toutefois, la Défenderesse n'a pas apporté la preuve contraire de l'acquittement de ses obligations de paiement au titre des deux Avenants. La Défenderesse a en effet décidé de ne pas participer à la procédure arbitrale malgré sa réception et sa notification de toutes les correspondances, documents, actes de procédures et autres relatifs à cette procédure arbitrale.

210. **Le Tribunal Arbitral détermine par conséquent que les obligations de la Demanderesse au regard des Marchés, en sa qualité de titulaire, était la réalisation de deux projets routiers que constituent les Lots 4 & 5 de la 2 x 2 voies entre Tombo et l'Aéroport de Gbessia et que la Demanderesse a exécuté ses obligations au titre des Marchés. La Défenderesse, quant à elle, avait pour obligation, en sa qualité de Maître d'ouvrage, le paiement du prix des Avenants relatifs aux travaux exécutés**

---

*et exécutoire qu'après sa signature par les parties concernées et son approbation par le Ministre de L'Economie et des Finances* ».
[106] Correspondance de la Demanderesse en date du 20 mars 2018 ayant joint une copie du Code Civil Guinéen et du Code de Procédure Civile Guinéen.

par la Demanderesse. Le Tribunal Arbitral dans la section B.3 suivante déterminera le bien fondé du montant des réclamations de la Demanderesse au titre des Avenants impayés.

## B.3. LE DROIT DU DEMANDEUR A UNE COMPENSATION POUR LES DOMMAGES RECLAMES

211. Le Tribunal Arbitral répondra aux questions suivantes :
   1- *Quelle Partie est responsable et envers qui ?*
   2- *Quelle Partie est responsable pour quel montant?*
   3- *La Demanderesse a-t-elle droit à une compensation pour les dommages réclamés ?*

### a. Positions des Parties

1- Position de la Demanderesse

212. La Demanderesse prétend que suite à la conclusion des Marchés avec la Défenderesse, cette dernière devait se libérer des sommes suivantes conformément à l'article 4 des contrats de Marchés :
   - En ce qui concerne la part en devise : 86, 82% du montant hors taxes du marché par virement en euros au compte bancaire de l'entreprise ouvert au Crédit Commercial de France (CCF).
   - En ce qui concerne la part en Francs Guinéens : 13.18% du montant du marché par virement sur le compte de l'entreprise ouvert à l'Union Internationale de Banque en Guinée Conakry (UIBG). [107]

213. La Demanderesse prétend par ailleurs qu'au regard du gap financier découlant des fluctuations monétaires, la CSE a accepté de revenir sur le montant de sa créance par un avenant n° 1 pour chaque Marché (Lots 4 et 5), tous conclus le 19 février 2010 pour prendre en charge les coûts liés aux facteurs qui ont généré le gap financier [108]. La Demanderesse soumet que ces avenants ont été approuvés par le Ministre Guinéen de l'Economie et des Finances et prévoient ce qui suit :
   - Pour le Lot no. 4 : un montant de 3.074.933.09 euros payable suivant quatre échéanciers trimestriels de l'année 2010 soit 768.733,31 euros par trimestre.
   - Pour le Lot no. 5 : un montant de 3.409.629,06 euros payable suivant quatre échéanciers trimestriels de l'année 2010 soit 852.407,26 euros par trimestre. [109]

---

[107] Mémoire en Demande, para.2, p.2
[108] Mémoire en Demande, para.5, p.3 ; Pièce no. D3 (avenants no 1 des contrats de marché).
[109] Mémoire en Demande, para.6, p.3.

214. La Demanderesse prétend que malgré la livraison de ces ouvrages à l'Etat guinéen depuis plus de huit ans et l'intervention d'avenants dûment signés par les Parties, la Défenderesse ne s'est pas acquittée des sommes dues pour chacun des Marchés et que la Demanderesse récapitule de la manière suivante : [110]

A- <u>Au titre du marché no.2003/0325/1/2/1/2/N (Lot no.4)</u>
  - Impayés en principal / part en devises : 3.467.856,80 euros
  - Intérêts moratoires y afférents : 2.636.209,48 euros
    **Total dû en devise : 6.104.066,28 euros**
  - Impayés en principal / part en GNF : 586.885.339 GNF
  - Intérêts moratoires y afférents : 173.394.810 GNF
    **Total dû en parts locales : 760.280.149 GNF**

B- <u>Au titre du marché no.2003/0324/1/2/1/2/N (Lot no.5)</u>
  - Impayés en principal / part en devises : 3.897.891,11 euros
  - Intérêts moratoires y afférents : 3.168.916,65 euros
    **Total dû en devise : 7.066.807,76 euros**
  - Impayés en principal / part en GNF : 112.780.322 GNF
  - Intérêts moratoires y afférents : 333.330.776 GNF
    **Total dû en parts locales : 446.111.098 GNF**

215. La Demanderesse a ainsi confirmé que les montants réclamés de la Défenderesse sont uniquement ceux relatifs aux montants des Avenants. [111]

216. En outre, la Demanderesse, suite à la Demande de production de Documents requise par le Tribunal Arbitral[112], a soumis les pièces suivantes :
  - **Pièces no. 1, 6 et 19**[113] : tableaux portant récapitulation des arriérés de paiement et détermination des intérêts moratoires en euros au 11 février 2016 des Marchés Lot 4 et Lot 5.
  - **Pièces no. 5, 11, et 12** [114] : les décomptes adressés par la Demanderesse à la Défenderesse et leur règlement pour les deux Marchés du Lot 4 et du Lot 5.

---

[110] Mémoire en Demande, para.6, p.4.
[111] Correspondance de la Demanderesse du 25 octobre 2017 dans laquelle elle apporte des réponses aux questions du Tribunal Arbitral et soumet les documents requis par le Tribunal dans la demande de Production de Documents.
[112] Correspondance du Tribunal Arbitral du 3 Octobre 2017 ; Correspondance de la Demanderesse du 25 octobre 2017 dans laquelle elle apporte des réponses aux questions du Tribunal Arbitral et soumet les documents requis par le Tribunal dans la demande de Production de Documents.
[113] La pièce no. 19 étant une combinaison des deux pièces 1 et 6, pièces soumises dans la correspondance de la Demanderesse du 25 octobre 2017.
[114] La pièce no. 12 étant une combinaison des deux pièces 5 et 11 ; pièces soumises dans la correspondance de la Demanderesse du 25 octobre 2017.

64

- **Pièces no.2, 3,4,7,8,9 et 10** : les relevés bancaires de la CSE justifiant les virements bancaires effectués par la BADEA, l'OPEC, la FKADEA, FSAOUD au compte de la CSE no. 17722-00001 ouvert à la banque Crédit Commercial de France (CCF) Paris pour les deux Marchés du Lot 4 et du Lot 5.

217. La Demanderesse a également soumis un témoignage du Directeur Administratif et Financier de la CSE, M. Massamba Gueye, qui a indiqué que le montant des arriérés de paiement pour les deux Marchés se chiffre« *en principal à 7.365.747, 91 € et 699.665.661 GNF et en intérêt à 5.805.126.13€ et 56.725.585 GNF, détaillés comme suit :*

- *Au titre du Lot 4*
  - *Montant impayé en principal sur la part payable en devises : 3.467.856,80 €*
  - *Intérêts moratoires y afférents : 2.636.209,48 €*
    *Sous total dû en devise : 6.104.066,28 €*

  - *Montant impayé en principal sur la part payable en GNF : 586.885.339 GNF*
  - *Intérêts moratoires dus : 173.394.810 GNF*
    *Sous total dû en parts locales : 760.280.149 GNF*

- *Au titre du Lot 5*
  - *Montant impayé en principal sur la part payable en devises : 3.897.891,11 €*
  - *Intérêts moratoires y afférents : 3.168.916,65 €*
    *Sous total dû en devise : 7.066.807,76 €*

  - *Montant impayé en principal sur la part payable en GNF : 112.780.322 GNF*
  - *Intérêts moratoires y afférents : 333.330.776 GNF*
    *Sous total dû en parts locales : 446.111.098 GNF »*

218. Le Directeur Administratif et Financier a par ailleurs indiqué dans son témoignage que « *la différence entre la somme 3.467.856, 80 euros réclamée par le Demandeur dans son mémoire aux fins d'Arbitrage et la somme 3.656.923,71 euros inscrite dans l'avenant se justifie par la somme de 10.991,11 euros reçue du FKDEA ».*[115]

219. En outre, le Directeur Administratif et Financier, lors de son audition au cours de l'Audience Finale a confirmé une erreur de calcul dans son rapport, erreur relevée par le Tribunal Arbitral pendant l'Audience Finale et relative au montant total des impayés en GNF qui est 96.939.178 GNF et non pas 586.885.339 GNF.[116]

---

[115] Témoignage du Directeur Administratif et Financier de la CSE, M. Massamba Gueye soumis par la Demanderesse dans sa correspondance du 30 janvier 2018.
[116] Transcription de l'Audience du 19 février 2018, p. 51 para 5 à 33.

220.   La Demanderesse réclame également la condamnation de l'Etat guinéen au paiement de dommages et intérêts à hauteur de 2.000.000 d'euros.[117]

### 2- Position de la Défenderesse

221.   La Défenderesse n'a pas participé à la procédure d'arbitrage et n'a soumis aucune réponse aux questions soulevées par le Tribunal Arbitral à savoir « *quelle Partie est responsable et envers qui ?* », « *quelle Partie est responsable pour quel montant?* » et « *la Demanderesse a-t-elle droit à une compensation pour les dommages réclamés ?* », bien que l'ensemble des actes de procédures et des correspondances lui ait été notifiées par courrier rapide DHL à ses différentes adresses. Le Tribunal Arbitral a établi un tableau récapitulatif des correspondances notifiées à la Défenderesse et de leur date de réception par la Défenderesse à ses différentes adresses prouvant que la Défenderesse a bien eu connaissance de l'ensemble du déroulement de la procédure arbitrale et de la position de la Demanderesse.

### b.   **Le Tribunal Arbitral**

222.   Le Tribunal Arbitral, a revu et analysé les pièces communiquées par la Demanderesse notamment les pièces suivantes :

- **Pièces no. 1, 6 et 19**[118] : tableaux portant récapitulation des arriérés de paiement et détermination des intérêts moratoires en euros au 11 février 2016 des Marchés Lot 4 et Lot 5.
- **Pièces no. 5, 11, et 12**[119] : les décomptes adressés par la Demanderesse à la Défenderesse et leur règlement pour les deux Marchés du Lot 4 et du Lot 5.
- **Pièces no.2, 3,4,7,8,9 et 10**[120] : les relevés bancaires de la CSE justifiant les virements bancaires effectués par la BADEA, l'OPEC, la FKADEA, FSAOUD au compte de la CSE no. 17722-00001 ouvert à la banque Crédit Commercial de France (CCF) Paris pour les deux Marchés du Lot 4 et du Lot 5.
- **Pièce no.14**[121] : Avenants aux contrats pour les Lots 4 et 5

---

[117] Requête D'arbitrage p. 8 ; Mémoire en Demande, p.11 ; Transcription de l'Audience du 19 février 2018, p.21 para. 49.

[118] La pièce no. 19 étant une combinaison des deux pièces 1 et 6, pièces soumises dans la correspondance de la Demanderesse du 25 octobre 2017.

[119] La pièce no. 12 étant une combinaison des deux pièces 5 et 11, pièces soumises dans la correspondance de la Demanderesse du 25 octobre 2017.

[120] Pièces soumises dans la correspondance de la Demanderesse du 25 octobre 2017.

[121] Pièce soumise dans la correspondance de la Demanderesse du 25 octobre 2017 ; il s'agit également de la pièce no 4 de la Requête d'Arbitrage et de la pièce D 4 du Mémoire en Demande.

- **Pièce no 2**[122] : Marché de travaux n° 2003/0325/1/2/1/2/N en date du 25 juin 2003 intitulé « Lot 4 : Tronçon Kenien –T1» et Marché de travaux N° 2003/0324/1/2/1/2/N en date du 25 juin 2003 intitulé « Lot 5 :Tronçon T1-T2 y compris les deux échangeurs aux carrefours de la T1 et la T2 ».
- **Pièce no 7** : Cahiers des clauses administratives générales.
- **Pièce no 8** : Cahiers des clauses administratives particulières.
- Le témoignage de M. Massamba Gueye, le Directeur Administratif et Financier de la CSE et son examen lors de l'Audience Finale.

223. Le Tribunal Arbitral, suite aux questions posées à la Demanderesse dans sa correspondance du 3 Octobre 2017 a noté les réponses suivantes de la Demanderesse [123] concernant le montant des réclamations en principal au titre des deux Marchés, montants qui sont reflétées dans la Requête d'arbitrage et dans le Mémoire en Demande:

Pour le Marché Lot no.4 :

- La somme de **3.467.856,8 euros**, réclamée par le Demandeur, à la page 7 de son mémoire en demande, au titre des impayés en principal sur la part en devise du Lot no.4 correspond aux avenants.
- La somme de **586.885.339 GNF** réclamée par le Demandeur, à la page 7 de son mémoire en demande, au titre des impayés en principal sur la part en GNF du Lot no. 4 correspond au détail des impayés.

Pour le Marché Lot no.5 :

- La somme de **3.897.891,11 euros**, réclamée par le Demandeur, à la page 7 de son mémoire en demande, au titre des impayés en principal sur la part en devise du Lot no.5 correspond aux avenants.
- La somme de **112.780.322 GNF**, réclamée par le Demandeur, à la page 7 de son mémoire en demande, au titre des impayés en principal sur la part en GNF du Lot no.5 correspond au détail des impayés.

224. Le Tribunal Arbitral apportera son analyse ci-dessous et statuera sur le montant des réclamations de la Demanderesse pour le Marché du Lot 4 dans un premier temps (1), ensuite pour le Marché du Lot 5 dans un second temps (2) et enfin statuera sur la demande de dommages et intérêts de 2,000,000 d'euros (3).

---

[122] Pièce No.2 soumise avec la Requête d'Arbitrage.
[123] Correspondance de la Demanderesse du 25 octobre 2017 dans laquelle elle apporte des réponses aux questions du Tribunal Arbitral et soumet les documents requis par le Tribunal dans la demande de Production de Documents.

| Marché LOT no.4 | | | | | | |
|---|---|---|---|---|---|---|
| **Montant du Marché concernant le Lot no.4** | | **Montant de l'Avenant no.1 concernant le Lot no.4** | **Sommes réclamées concernant le Lot no.4 (intérêts non compris)** | | **Tableau de récapitulation des arriérés de paiement (pièces no 1, 6 et 19[124]) (intérêts non compris)** | |
| *Montant du marché HT* | 16.822.442.035 GNF | | | | | |
| *Montant en devise (86,82%)* | 14.605.244.174,8 (soit environ 7.430.702,5€ d'après le taux contractuel 1€ = 1965,5267 GNF) | | | | | |
| *Montant en GNF (13.18%)* | 2.217.197.860,21 GNF | | | | | |
| *Montant des Taxes* | 4.082.607.164 GNF | | | | | |
| Montant TTC | 20.905.049.199 GNF | 3.656.923,71 € | | | | |
| Part en devise (86,82%) | 18.149.763.714,6 GNF (soit environ 9.234.045,8 €, d'après le taux contractuel 1€ = 1965,5267 GNF) | | Impayés en principal part en devise | 3.467.856,80€ | Impayés en principal part en devise | 3.470.475,73€ (Montants impayés à partir du 30 juin 2007) |
| Part en GNF (13,18%) | 2.755.285.484,43 GNF (soit environ 1.401.805,1 € d'après le taux contractuel 1€ = 1965,5267 GNF) | | Impayés en principal part en GNF | 586.885.339 GNF | Impayés en principal part en GNF | 96.939.178 GNF (Montants impayés à partir du 15 juillet 2008) |
| Total en devise (à titre indicatif et d'après le taux contractuel 1€ = 1965,5267 GNF) | 10.635.851,04 € | | | | | |

## 1-  En ce qui concerne les réclamations relatives au Marché du Lot 4 :

225.   Le Tribunal Arbitral, après examen des pièces du dossier, a établi pour le Marché du Lot 4 le tableau récapitulatif suivant :

---

[124] La pièce no. 19 étant une combinaison des deux pièces 1 et 6, pièces soumises dans la correspondance de la Demanderesse du 25 octobre 2017.

226.   Le Tribunal Arbitral relève que l'Article 1 de l'Avenant du Marché du Lot 4[125] stipule que « *le présent avenant a pour objet de prendre en charge les couts liés aux facteurs qui ont généré le gap sur le Lot 4 du projet Tombo-Gbessia (Révision des prix, dépassement des délais contractuels, dépréciation du dollar par rapport à l'Euro)* » et que l'article 2 énonce que « *les conditions générales du Marché restent entièrement d'application sauf les modifications prévues dans les Conditions particulières du Contrat liées à cet avenant* ».

227.   De plus, le montant de l'Avenant du Marché du Lot 4 est prévu en son article 4 [126] qui prévoit ce qui suit : « *le montant total de l'avenant nº 1 résultant de l'analyse du gap est de : Trois Millions Six Cent Cinquante Six Mille Neuf Cent Vingt Trois et Soixante Onze Centimes d'Euros ( 3 656 923,71 €)* ».

228.   L'Article 5 de l'Avenant susmentionné prévoit que : « *les modalités de règlements seront effectués ainsi qu'il suit :*
-   *FKD : 206 356,09 €*
-   *FSD : 194 356,04€*
-   *OPEP : 181 278,34€*
-   *BND : 3 074 933, 34 € suivant l'échéancier ci-après :*
    •   *Premier trimestre an 2010 : 768 733,31 €*
    •   *Deuxième trimestre an 2010 : 768 733,31€*
    •   *Troisième trimestre an 2010 : 768 733,31€*
    •   *Quatrième trimestre an 2010 : 768 733, 31€* »

229.   L'article 6 de cet Avenant stipule également que « *les prix sont fermes et non révisables* ».

230.   Cet Avenant no.1 du Marché Lot 4. est valable et exécutoire puisqu'il a été signé par les Parties concernées et approuvé par le Ministre de l'Economie et des Finances tel qu'il résulte des signatures de l'Avenant et de la mention « approuvé ».[127]

231.   Le Tribunal Arbitral a en outre relevé que le montant réclamé en euros par la Demanderesse au titre du Marché Lot no. 4 a été reconsidéré par cette dernière lors de l'Audience Finale de Plaidoiries et s'élève désormais à la somme de 3.470.475,73 euros

---

[125] Pièce no. 14 soumise dans la correspondance de la Demanderesse du 25 octobre 2017 ; il s'agit également de la pièce no 4 de la Requête d'Arbitrage et de la pièce D 4 du Mémoire en Demande.
[126] Pièce no. 14 soumise dans la correspondance de la Demanderesse du 25 octobre 2017 ; il s'agit également de la pièce no 4 de la Requête d'Arbitrage et de la pièce D 4 du Mémoire en Demande.
[127] Article 10 avenant no.1 du Marché lot 4 : « *le présent avenant n'est valable et exécutoire qu'après sa signature par les parties concernées et son approbation par le Ministre de l'Economie et des Finances* ».

au lieu de 3.897.891,11 euros [128]. En effet, la Demanderesse a soumis au cours de l'Audience Finale de Plaidoiries le relevé bancaire de la banque LCL, justifiant le paiement par le FKDEA du montant de 190,991.11 euros le 4 Octobre 2010 après la conclusion de l'Avenant no.1 du Marché Lot no 4, montant qui devrait être soustrait au montant réclamé au titre de cet Avenant. Ce document a été accepté par le Tribunal et a été communiqué à la Défenderesse par courrier prioritaire.[129]

232.   Ainsi, le montant des réclamations de la Demanderesse au titre des impayés du Marché Lot 4, tel qu'il résulte des plaidoiries de la Demanderesse, est le montant prévu dans l'Avenant no 1 au contrat de Marché du Lot 4 qui reprend le montant des décomptes impayés à savoir les décomptes nos 14, 15, 16 et 17[130], déduction faite du montant payé par le FKD après la conclusion de l'avenant le 4 Octobre 2010 .[131]

233.   Par ailleurs, le montant réclamé en GNF par la Demanderesse au titre du Marché Lot 4 a été aussi reconsidéré par la partie Demanderesse lors de l'examen de son Directeur Administratif et Financier au cours de l'Audience Finale de Plaidoiries et s'élève à un montant de 96.939.178 GNF au lieu de 586.885.339 GNF.[132]

234.   Le Tribunal Arbitral, au cours de l'Audience Finale, a estimé nécessaire de procéder à la vérification des montants payés et impayés par les Bailleurs de Fonds au titre des décomptes no. 1 à 17. A cette fin, la Demanderesse et le Directeur Administratif et Financier de la CSE ont établi, pour le Marché Lot 4,  le lien entre chaque décompte (**Pièces no. 5, 11, et 12**) et la preuve du virement reçu (**Pièces no.2, 3,4,7,8,9 et 10).**  Il s'est avéré que les décomptes impayés pour Lot 4 sont les décomptes 14, 15, 16 et 17 pour un montant de 3.470.475,73 euros.[133]

235.   Le Tribunal Arbitral a vérifié chaque chiffre relatif à chaque décompte et a vérifié les transferts qui ont été fait par les bailleurs de fonds et reçus par la Demanderesse sur son compte no. 17722-00001 ouvert à la banque Crédit Commercial de France (CCF), compte prévu dans l'Article 4 du contrat de Marché du Lot 4. [134]

---

[128] Transcription de l'Audience du 20 février 2018, p. 31 para 22 à 31 : « M.Gueye- la somme c'est 3 470 475,73 ».
[129] Relevé bancaire de la banque LCL en date du 4/10/2010, justifiant le paiement par le FKDEA le montant de 190,991,11euros cf. correspondance de la Demanderesse du 25 octobre 2017 ; Témoignage du Directeur Administratif et Financier de la CSE, p.2 ; transcription de l'Audience du 20 février 2018, p. 30 para 18 à 24.
[130] Transcription de l'Audience du 19 février 2018, p. 25 para 7 à 9 « M. Gueye : le montant que vous trouvez sur les avenants est exactement le montant des décomptes impayés. Ce sont les décomptes impayés en euros qui sont dans l'avenant et on voulait les justifier ».
[131] Relevé bancaire de la banque LCL en date du 4/10/2010, justifiant le paiement par le FKDEA le montant de 190,991,11euros cf. correspondance de la Demanderesse du 25 octobre 2017 ; Témoignage du Directeur Administratif et Financier de la CSE, p.2 ; transcription de l'Audience du 20 février 2018, p. 30 para 18 à 24.
[132] Transcription de l'Audience du 19 février 2018, p. 51, para 9 à 18.
[133] Transcription de l'Audience du 20 février 2018, p. 31 para 22 à 31 : « M.Gueye- la somme c'est 3 470 475,73 ».
[134] Transcription de l'Audience du 20 février 2018 :

236.   Le Tribunal Arbitral a établi le résultat de cet exercice dans des tableaux ci-dessous reflétant les montants payés et impayés par chaque Bailleurs de Fonds pour chacun des décomptes.[135]

➢ Les montants payés par le FKDEA à la Demanderesse au titre du Marché Lot 4 :

| LOT 4 | | FKDEA[136] | MONTANT PAYE | JUSTIFICATIF[137] | DATE DE VIREMENT | DATE DE VALEUR | |
|---|---|---|---|---|---|---|---|
| Dp n° | AD[138] | 436,496.00 | 436,372.08 | Relevé du 01 au 31 mai 2005 | 25/5/2005 | 25/5/2005 | DP AD |
| Dp n° | 1 | 261,642.11 | 261,542.11 | Relevé du 01 au 28 février 2006 | 1/2/2006 | 1/2/2006 | DP 1 |
| Dp n° | 2 | 89,506.47 | 89,406.47 | Relevé du 01 au 30 avril 2006 | 1/2/2006 | 1/2/2006 | DP 2 |
| Dp n° | 3 | 82,472.05 | 612,877.30 | Relevé du 01 au 31 janvier 2007 | 24/1/2007 | 24/1/2007 | DP 3, 4, 5, 6 et 7 Lot 4 |
| Dp n° | 4 | 77,705.35 | 612,877.30 | Relevé du 01 au 31 janvier 2007 | 24/1/2007 | 24/1/2007 | DP 3, 4, 5, 6 et 7 Lot 4 |
| Dp n° | 5 | 172,611.92 | 612,877.30 | Relevé du 01 au 31 janvier 2007 | 24/1/2007 | 24/1/2007 | DP 3, 4, 5, 6 et 7 Lot 4 |
| Dp n° | 6 | 179,527.27 | 612,877.30 | Relevé du 01 au 31 janvier 2007 | 24/1/2007 | 24/1/2007 | DP 3, 4, 5, 6 et 7 Lot 4 |
| Dp n° | 7 | 100,560.71 | 612,877.30 | Relevé du 01 au 31 janvier 2007 | 24/1/2007 | 24/1/2007 | DP 3, 4, 5, 6 et 7 Lot 4 |
| Dp n° | 8 | 90,710.66 | 331,132.18 | Relevé du 01 au 31 janvier 2007 | 17/1/2007 | 17/1/2007 | DP 8 et 9 Lot 4 et 18 et 19 Lot 5 |
| Dp n° | 9 | 54,942.10 | 331,132.18 | Relevé du 01 au 31 janvier 2007 | 17/1/2007 | 17/1/2007 | DP 8 et 9 LOT 4 et 18 et 19 Lot 5 |
| Dp n° | 10 | 136,828.11 | 136,728.11 | Relevé du 01 au 31 oct 2007 | 4/10/2007 | 04/10/2007 | DP 10 Lot 4 |
| Dp n° | 11 | 148,130.76 | 1,062,681.74 | Relevé du 04 au 29 sept 2007 | 20/9/2007 | 20/9/2007 | DP 11, 12 et 13 Lot 4 et DP |

- Virements effectués par le FSD pour le lot n°4, page 22 para 31 et suivants.
- Virements effectués par la BADEA pour le lot n°4 page 25 para 23 et suivants.
- Virements effectués par l'OPEP pour le lot n°4 page 26 para 44 et suivants.
- Virements effectués par le FKD pour le lot n°4 p. 20 para 41 et suivants.

[135] Il faut noter que la différence minime existante entre les montants réclamés et les transferts s'expliquent par les frais bancaires induits par les virements cf. Transcription de l'Audience du 19 février 2018, p. 34 para 10 « *il s'avère, par contre, qu'il y a des frais induits par les virements, qui ont été également pris en compte* » ; Transcription de l'Audience du 19 février 2018, p. 34 para 32 à 43.

[136] Pièce no. 12 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « Décomptes adressés par le Demandeur au Défendeur et leur règlement ».

[137] Pièce no. 3 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « relevés bancaires de la Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectues par le FKADEA pour le compte du chantier Tombo Gbessia LOT 4 ».

[138] Avance Démarrage cf. Abréviation ; Pièce no.1 et Pièce no 5 jointe à la correspondance de la Demanderesse du 25 octobre 2017 : correspondance de la CSE au Ministre des Travaux Publics et des Transports de la République de Guinée en date du 22 février 2005.

| | | | | | | | 21 22 et 23 Lot 5 |
|---|---|---|---|---|---|---|---|
| Dp n° | 12 | 191,903.31 | 1,062,681.74 | Relevé du 04 au 29 sept 2007 | 20/9/2007 | 20/9/2007 | DP 11, 12 et 13 Lot 4 et DP 21, 22 et 23 Lot 5 |
| Dp n° | 13 | 91,100.70 | 1,062,681.74 | Relevé du 04 au 29 sept 2007 | 20/9/2007 | 20/9/2007 | DP 11, 12 et 13 lot 4 et les DP 21, 22 et 23 Lot 5 |
| Dp n° | 14 | 166,629.17 | Non Payé | | | | |
| Dp n° | 15 | 528,568.63 | Non Payé | | | | |
| Dp n° | 16 | 697 237,21 | Non Payé | | | | |
| Dp n° | 17 | 74 049,24 | Non Payé | | | | |

237.  Il résulte du tableau que les montants non payés par le FKDEA sont les décomptes suivants :
- Décompte no. 14 d'un montant de 166,629.17 euros.
- Décompte no. 15 d'un montant de 528,568.63 euros.
- Décompte no. 16 d'un montant de 697 237,21 euros.
- Décompte no. 17 d'un montant de 74 049,24 euros.

238.  Ainsi le montant total des impayés par le FKDEA au titre des décomptes nos. 14, 15, 16 et 17 pour le Lot 4 s'élève à **1.466.484,25 euros.**

➢  Les montants payés par le FSD à la Demanderesse au titre du Marché Lot 4 :

| LOT 4 | | FSD[139] | MONTANT PAYE | JUSTIFICATIF[140] | DATE VIREMENT | DATE DE VALEUR | |
|---|---|---|---|---|---|---|---|
| Dp n° | AD | 327,372.00 | 327,248.08 | Relevé du 01 au 31 mai 2005 | 12/5/2005 | 12/5/2005 | DP AD |
| Dp n° | 1 | 196,231.59 | 196,231.59 | Relevé du 01 au 28 février 2006 | 2/2/2006 | 2/2/2006 | DP 1 Lot 4 |
| Dp n° | 2 | 67,129.85 | 128,983.89 | Relevé du 01 au 30 juin 2006 | 29/6/2006 | 29/6/2006 | DP 2 et 3 Lot 4 |
| Dp n° | 3 | 61,854.04 | 128,983.89 | Relevé du 01 au 30 juin 2006 | 29/6/2006 | 29/6/2006 | DP 2 et 3 Lot 4 |
| Dp n° | 4 | 58,279.01 | 58,279.01 | Relevé du 03 au 21 juillet 2006 | 20/7/2006 | 20/7/2006 | DP 4 Lot 4 |
| Dp n° | 5 | 129,458.94 | 204,879.47 | Relevé du 01 au 30 sept 2006 | 20/9/2006 | 20/9/2006 | DP 5 et 7 Lot 4 |

---

[139] Pièce no. 12 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « Décomptes adressés par le Demandeur au Défendeur et leur règlement ».
[140] Pièce no. 3 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « relevés bancaires de la Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectués par le FKADEA pour le compte du chantier Tombo Gbessia LOT 4 ».

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dp n° | 6 | 134,645.45 | 134,645.45 | Relevé du 01 au 31 aout 2006 | 31/8/2006 | 31/8/2006 | DP 6 Lot 4 |
| Dp n° | 7 | 75,420.53 | 204,879.47 | Relevé du 01 au 30 sept 2006 | 20/9/2006 | 20/9/2006 | DP 5 et 7 Lot 4 |
| Dp n° | 8 | 68,033.00 | 109,239.57 | Relevé du 01 au 30 nov 2006 | 30/11/2006 | 30/11/2006 | DP 8 et 9 Lot 4 |
| Dp n° | 9 | 41,206.57 | 109,239.57 | Relevé du 01 au 30 nov 2006 | 30/11/2006 | 30/11/2006 | DP 8 et 9 Lot 4 |
| Dp n° | 10 | 102,621.09 | 243,289.31 | Relevé du 01 au 31 mai 2007 | 17/5/2007 | 17/5/2007 | DP 10 Lot 4 et 20 Lot 5 |
| Dp n° | 11 | 111,098.07 | 240,304.78 | Relevé du 01 au 31 mai 2007 | 30/5/2007 | 30/5/2007 | DP 11 Lot 4 et 21 Lot 5 |
| Dp n° | 12 | 143,927.48 | 143,827.48 | Relevé du 01 au 30 juin 2007 | 14/6/2007 | 14/6/2007 | DP 12 Lot 4 |
| Dp n° | 13 | 68,325.53 | 230,111.15 | Relevé du 04 au 28 sept 2007 | 13/9/2007 | 13/9/2007 | DP 13 Lot 4 et 23 Lot 5 |
| Dp n° | 14 | 124,971.88 | 124,871.88 | Relevé du 01 au 30 nov 2007 | 15/11/2007 | 15/11/2007 | DP 14 Lot 4 |
| Dp n° | 15 | 396,426.47 | Non Payé | | | | |
| Dp n° | 16 | 522,927.91 | Non Payé | | | | |
| Dp n° | 17 | 55,536.93 | Non Payé | | | | |

239.   Il résulte du tableau que les montants non payés par le FSD sont les décomptes suivants :
- Décompte no. 15 d'un montant de 396,426.47 euros.
- Décompte no. 16 d'un montant de 522,927.91 euros.
- Décompte no. 17 d'un montant de 55,536.93 euros.

240.   Ainsi le montant total des impayés par le FSD au titre des décomptes nos. 15, 16 et 17 pour le Lot 4 s'élève à **974.891,31 euros.**

➢ Les montants payés par la BADEA à la Demanderesse au titre du Marché Lot 4 :

| LOT 4 | | BADEA[141] | MONTANT PAYE | JUSTIFICATIF[142] | DATE DE VIREMENT | DATE DE PAIEMENT | |
|---|---|---|---|---|---|---|---|
| Dp n° | AD | 257,019.12 | 256,813.70 | Relevé du 01 au 30 juin 2005 | 6/1/2005 | 6/1/2005 | DP AD |
| Dp n° | 1 | 154,061.03 | 154,061.03 | Relevé du 01 au 28 février 2006 | 23/2/2006 | 23/2/2006 | DP 1 Lot 4 |
| Dp n° | 2 | 52,703.51 | 262,083.98 | Relevé du 01 au 31 mai 2006 | 5/5/2006 | 5/5/2006 | DP 2 Lot 4 et DP 11 12 Lot 5 |

[141] Pièce no. 12 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « Décomptes adressés par le Demandeur au Défendeur et leur règlement ».

[142] Pièce no. 2 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « relevés bancaires de la Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectues par la BADEA pour le compte du chantier Tombo Gbessia LOT 4 ».

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dp n° | 3 | 48,561.48 | 101,353.73 | Relevé du 01 au 30 juin 2006 | 23/6/2006 | 23/6/2006 | DP 3 Lot 4 et 13 Lot 5 |
| Dp n° | 4 | 45,754.74 | 45,754.74 | Relevé du 01 au 30 juin 2006 | 23/6/2006 | 23/6/2006 | DP 4 Lot 4 |
| Dp n° | 5 | 101,637.96 | 101,637.96 | Relevé du 01 au 31 aout 2006 | 8/8/2006 | 8/8/2006 | DP 5 Lot 4 |
| Dp n° | 6 | 105,709.88 | 186,205.00 | Relevé du 01 au 30 sept 2006 | 11/9/2006 | 11/9/2006 | DP 6 Lot 4 et 16 Lot 5 |
| Dp n° | 7 | 59,212.51 | 122,399.44 | Relevé du 01 au 30 sept 2006 | 21/9/2006 | 21/9/2006 | DP 7 Lot 4 et DP 17 Lot 5 |
| Dp n° | 8 | 53,412.57 | 195,037.30 | Relevé du 01 au 31 décembre 2006 | 19/12/2006 | 19/12/2006 | DP 8 et 9 Lot 4 et 18 et 19 Lot 5 |
| Dp n° | 9 | 32,351.20 | 195,037.30 | Relevé du 01 au 31 décembre 2006 | 19/12/2006 | 19/12/2006 | DP 8 et 9 Lot 4 et 18 et 19 Lot 5 |
| Dp n° | 10 | 80,567.61 | 292,445.88 | Relevé du 04 au 28/09/2007 | 4/9/2007 | 4/9/2007 | DP 10 Lot 4 et 20 et 21 Lot 5 |
| Dp n° | 11 | 87,222.88 | 87,222.88 | Relevé du 01 au 30 novembre 2007 | 9/11/2007 | 9/11/2007 | DP 11 Lot 4 |
| Dp n° | 12 | 112,997.18 | 437,069.19 | Relevé du 04 au 28/09/2007 | 7/9/2007 | 7/9/2007 | DP 12 et 13 Lot 4 et 22 23 Lot 5 |
| Dp n° | 13 | 53,642.24 | 437,069.19 | Relevé du 04 au 28/09/2007 | 7/9/2007 | 7/9/2007 | DP 12 et 13 Lot 4 et 22 23 Lot 5 |
| Dp n° | 14 | 98,115.18 | Non Payé | | | | |
| Dp n° | 15 | 311,233.65 | Non Payé | | | | |
| Dp n° | 16 | 410,549.67 | Non Payé | | | | |
| Dp n° | 17 | 43,601.93 | Non Payé | | | | |

241.   Il résulte du tableau que les montants non payés par la BADEA sont les décomptes suivants :
- Décompte no. 14 d'un montant de 98,115.18 euros.
- Décompte no. 15 d'un montant de 311,233.65 euros.
- Décompte no. 16 d'un montant de 410,549.67 euros.
- Décompte no. 17 d'un montant de 43,601.93 euros.

242.   Ainsi le montant total des impayés par la BADEA au titre des décomptes nos. 14, 15, 16 et 17 pour le Lot 4 s'élève à **863,500.43 euros.**

➢   Les montants payés par l'OPEP à la Demanderesse au titre du Marché Lot 4 :

| LOT 4 | | OPEP[143] | MONTANT PAYE | JUSTIFICATIF[144] | DATE DE VIREMENT | DATE DE VALEUR | |
|---|---|---|---|---|---|---|---|
| Dp n° | AD | 93,718.26 | 220,871.81 | Relevé du 01 au 31 oct 2005 | 4/10/2005 | 5/10/2005 | DP AD et 3 et 4 Lot 5 |
| Dp n° | 1 | 56,176.10 | 98,141.16 | Relevé du 01 au 31 mars 2006 | 21/3/2006 | 24/3/2006 | DP 1 Lot 4 et DP 11 Lot 5 |
| Dp n° | 2 | 19,217.56 | 53,531.37 | Relevé du 01 au 30 avril 2006 | 24/4/2006 | 25/4/2006 | DP 2 Lot 4 et 10 Lot 5 |
| Dp n° | 3 | 17,707.23 | 36,957.15 | Relevé du 01 au 30 juin 2006 | 16/6/2006 | 16/6/2006 | DP 3 Lot 4 et DP 13 Lot 5 |
| Dp n° | 4 | 16,683.80 | 16,683.80 | Relevé du 03 au 22 juillet 2006 | 4/7/2006 | 4/7/2006 | DP 4 Lot 4 |
| Dp n° | 5 | 37,060.79 | 65,627.08 | Relevé du 01 au 31 aout 2006 | 4/8/2006 | 4/8/2006 | DP 5 Lot 4 et 14 Lot 5 |
| Dp n° | 6 | 38,545.56 | 101,334.47 | Relevé du 01 au 30 sept 2006 | 25/9/2006 | 25/9/2006 | DP 6 Lot 4 et 15 et 16 Lot 5 |
| Dp n° | 7 | 21,590.98 | 44,631.17 | Relevé du 01 au 30 sept 2006 | 29/9/2006 | 29/9/2006 | DP 7 du Lot 4 et 17 Lot 5 |
| Dp n° | 8 | 19,476.11 | 71,117.50 | Relevé du 01 au 31 janvier 2007 | 26/1/2007 | 26/1/2007 | DP 8 et 9 Lot 4 et 18 et 18 Lot 5 |
| Dp n° | 9 | 11,796.39 | 71,117.50 | Relevé du 01 au 31 janvier 2007 | 26/1/2007 | 26/1/2007 | DP 8 et 9 Lot 4 et 18 et 18 Lot 5 |
| Dp n° | 10 | 29,377.80 | 138,440.66 | Relevé du 04 au 28/09/2007 | 13/9/2007 | 13/9/2007 | DP 10 et 11 Lot 4 et 20 21 Lot 5 |
| Dp n° | 11 | 31,804.55 | 138,440.66 | Relevé du 04 au 28/09/2007 | 13/9/2007 | 13/9/2007 | DP 10 et 11 Lot 4 et 20 21 Lot 5 |
| Dp n° | 12 | 41,202.77 | 93,467.30 | Relevé du 04 au 28/09/2007 | 24/9/2007 | 24/9/2007 | DP 12 Lot 4 et 22 du Lot T 5 |
| Dp n° | 13 | 19,559.86 | 190,401.57 | Relevé du 01 au 31 décembre 2007 | 10/12/2007 | 10/12/2007 | DP 13 et 14 Lot 4 et 23 24 Lot 5 |
| Dp n° | 14 | 35,776.26 | 190,401.57 | Relevé du 01 au 31 décembre 2007 | 10/12/2007 | 10/12/2007 | DP 13 et 14 Lot 4 et 23 24 Lot 5 |
| Dp n° | 15 | 113,486.79 | 113,486.79 | Relevé du 01 au 31 mai 2008 | 8/5/2008 | 8/5/2008 | DP 15 Lot 4 |
| Dp n° | 16 | 149,700.93 | Non Payé | | | | |

---

[143] Pièce no.12 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « Décomptes adressés par le Demandeur au Défendeur et leur règlement ».

[144] Pièce no.4 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « relevés bancaires de la Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectués par la BADEA pour le compte du chantier Tombo Gbessia LOT 4 ».

| Dp n° | 17 | 15,898.81 | Non Payé | | | | |
|-------|----|-----------|----------|--|--|--|--|

243. Il résulte du tableau que les montants non payés par l'OPEP sont les décomptes suivants :
   - Décompte no. 16 d'un montant de 149,700.93 euros.
   - Décompte no. 17 d'un montant de 15,898.81 euros.

244. Ainsi le montant total des impayés par l'OPEP au titre des décomptes nos. 16 et 17 pour le Lot 4 s'élève à **165.599,74 euros.**

245. Par ailleurs, il résulte des tableaux ci-dessus que la Demanderesse a apporté la preuve que les décomptes nos. 1 à 13 ont été payés et que les montants des impayés en euros sont les suivants :

| LOT 4 | |
|-------|--|
| **Bailleur de Fonds** | **Montants impayés en euros** |
| FKDEA (décomptes nos. 14,15,16 et 17) | 1,466,484.25 |
| FSD (décomptes nos. 15,16 et 17) | 974,891.31 |
| BADEA (décomptes nos. 14,15,16 et 17) | 863,500.43 |
| OPEP (décomptes nos. 16 et 17) | 165,599.74 |
| **Total Impayés** | **3,470,475.73  euros** |

246. Le Tribunal relève ainsi que le montant des impayés réclamés par la Demanderesse après vérification des décomptes et des virements bancaires est d'un montant de **3.470.475,73 euros.** [145] Ce montant correspond au montant de l'Avenant déduction faite du montant de 190.991,1 euros reçu du FKDEA le 14 Octobre 2010. Conformément à l'article 5 de l'Avenant, cet avenant devait être payé par les bailleurs de fonds à des échéances précises conformément sur quatre trimestres en 2010. Les paiements n'ont pas été honorés par la Défenderesse.

247. En ce qui concerne le montant des impayés en Francs guinéen réclamés par la Demanderesse d'un montant de **96.939.178 GNF** [146] : la Demanderesse a soutenu au cours de l'Audience Finale de Plaidoiries que le montant impayé  réclamé au titre du décompte

---

[145] Transcription de l'Audience du 20 février 2018, p. 31 para 22 à 31 : « *M.Gueye- la somme c'est 3 470 475,73* ».
[146] Transcription de l'Audience du 19 février 2018, p. 51 para 9 à 17.

76

no.16 s'élevant à 40.518.793 GNF est relatif à des travaux qui ont été exécutés[147], alors que le montant impayé réclamé au titre du décompte no.17 s'élevant à 56.420.385 GNF est relatif à la retenue de garantie.[148]

248. La Demanderesse n'a toutefois pas soumis au Tribunal les preuves justifiant la réclamation de ces montants en francs guinéens. Les seuls documents soumis au dossier sont les décomptes no. 16 et 17. A l'examen de ces Décomptes, le Tribunal n'a pas pu pour le Décompte no. 16 identifier la nature des travaux entrepris par la Demanderesse correspondant au montant réclamé de 40.518.793 GNF. Concernant le Décompte no. 17 d'un montant de 56.420.385 GNF relatif à la retenue de garantie, le Tribunal Arbitral n'a pas pu vérifier le bien-fondé de ces montants à l'examen des pièces soumises par la Demanderesse.

249. De plus, le Tribunal se réfère à la confirmation par la Demanderesse durant l'Audience Finale de Plaidoiries et réitéré dans ses écritures de ce que le montant de la réclamation des impayés concerne les montants relevés dans les Avenants au titre de l'article 4 de l'Avenant no.1 relatif au Lot 4 et qui sont en euros. Aucune disposition de l'Avenant ne se réfère à des règlements qui devaient être effectués en francs guinéen. Par conséquent, le Tribunal détermine que la Demanderesse n'a pas justifié ni contractuellement ni par la soumission de preuves le bien-fondé de ses réclamations en francs guinéen.

250. Le Tribunal se réfère par ailleurs à l'article 801 du Code Civil guinéen qui énonce ce qui suit :

> « *En règle générale, c'est au demandeur c'est-à-dire à celui qui intente une action en justice, qu'incombe la charge de la preuve.*
> *Mais si le défendeur, c'est-à-dire celui contre qui la demande est formulée, a à faire valoir un moyen de défense contre son adversaire, c'est alors à lui que passe la charge de la preuve.* »[149]

251. Il résulte ainsi de ces dispositions de droit guinéen la charge de la preuve incombe au Demandeur en droit guinéen. Ainsi, toute personne qui s'estime créancière d'une obligation doit en apporter la preuve et toute personne qui s'estime libérée d'une obligation doit en apporter la preuve.

---

[147] Transcription de l'Audience du 19 février 2018, p. 52 para 9 et 10 : « *M. Guye : ce montant, sur le décompte 16, c'est des travaux. Il y a des travaux. C'est des travaux qui ont été exécutés* ».
[148] Transcription de l'Audience du 19 février 2018, p. 53 para. 31 : « *M. Gueye : le décompte 17 est essentiellement constitué de la retenue de garantie* ».
[149] Correspondance de la Demanderesse en date du 20 mars 2018 ayant joint une copie du Code Civil Guinéen et du Code de Procédure Civile Guinéen.

252. La Demanderesse a apporté la preuve du paiement des décomptes no. 1 à 13 du Marché du Lot 4. Elle a en outre apporté la preuve de ce que les décomptes mentionnés dans le tableau au paragraphe 238 ci-dessus d'un montant total de **3.470.475,73 euros** sont restés impayés.

253. La Demanderesse n'a toutefois pas apporté la preuve justifiant son droit au paiement des sommes en francs guinéens réclamés au titre des décomptes 16 et 17.

254. **Par conséquent, le Tribunal Arbitral détermine, après vérification des décomptes et des virements bancaires, que la Demanderesse est en droit de recevoir le montant des impayés en euros s'élevant à 3.470.475,73 euros, et rejette la réclamation de la Demanderesse pour le paiement de la somme de 96.939.178 GNF relatif aux montant des impayés en francs guinéens au titre des décomptes nos 16 et 17 pour défaut de preuve.**

## 2- En ce qui concerne les réclamations relatives au Marché du Lot 5 :

255. Tribunal Arbitral a établi pour le Marché du Lot 5 le tableau récapitulatif suivant :

| Marché LOT no.5 | | | | | | |
|---|---|---|---|---|---|---|
| **Montant du Marché** concernant le Lot no.5 | | **Montant de l'Avenant no.1 concernant le Lot no.5** | **Sommes réclamées** concernant le Lot no.5 (intérêts non compris) | | **Tableau de récapitulation des arriérés de paiement (pièce no.6)** (intérêts non compris) | |
| *Montant du marché HT* | 31.396.026.926 GNF | | | | | |
| *Montant en devise (86,82%)* | 27.258.030.577,2 GNF *(soit environ 13.868.054,083 € d'après le taux contractuel 1€ = 1965,5267 GNF)* | | | | | |
| *Montant en GNF (13.18%)* | 4.137.996.348,85 GNF | | | | | |
| *Montant des Taxes* | 7.350.463.604 GNF | | | | | |
| **Montant TTC** | 38.746.490.530 GNF | 3.897.91,11 € | | | | |
| Part en devise (86,82%) | 33.639.703.078,1 GNF *(soit environ 17.114.854,3 € d'après le taux contractuel 1€ = 1965,5267 GNF)* | | Impayés en principal part en devise | 3.897.891,11€ | Impayés en principal part en devise | 3.897.891€ (montant impayés à partir du 31 mai 2007) |

| Part en GNF (13,18%) | 5.106.787.451,85 GNF *(soit environ 2.598.177,6 € d'après le taux contractuel 1€ = 1965,5267 GNF)* | | Impayés en principal part en GNF | 112.780.322 GNF | Impayés en principal part en GNF | 112.780.617 GNF (montant impayés à partir du 31 juillet 2005) |
|---|---|---|---|---|---|---|
| Total en devise *(à titre indicatif et d'après le taux contractuel 1€ = 1965,5267 GNF)* | Environ 19.713.031,9 € | | | | | |

256. Le Tribunal Arbitral relève que le montant impayé réclamé en euros par la Demanderesse au titre des impayés du Marché Lot 5 est le montant prévu dans l'Avenant no. 1 de ce Marché et reflétés dans les décomptes impayés nos 24, 25, 26 et 27 repartis entre les Bailleurs de fonds de la manière suivante[150] :
- 150.765, 46 euros pour l'OPEP.
- 121.403,69 euros pour la BADEA.
- 1.734.651, 60 pour le FKDEA
- 991.070,47 pour le FSD.

257. L'Article 1er de l'Avenant du Marché du Lot 5[151] stipule que « *le présent avenant a pour objet de prendre en charge les couts liés aux facteurs qui ont généré le gap sur le Lot 5 du projet Tombo-Gbessia (Révision des prix, dépassement des délais contractuels, dépréciation du dollar par rapport à l'Euro)* » et que l'article 2 énonce que « *les conditions générales du Marché restent entièrement d'application sauf les modifications prévues dans les Conditions particulières du Contrat* ».

258. Le montant de l'Avenant est prévu à l'article 4 de l'Avenant du Marché du Lot 5[152] qui prévoit ce qui suit « le *montant total de l'avenant n° 1 résultant de l'analyse du gap est de : Trois Millions Huit Cent Quatre Vingt Dix Sept Mille Huit Cent Quatre Vingt Onze et Onze centimes d'Euros ( 3 897 891,11 €)*».

259. L'Article 5 de l'Avenant susmentionné prévoit que : « *les modalités de règlements seront effectuées ainsi qu'il suit :*
- *FSD : 383 854,57 €*
- *OPEP : 104 407,49 €*

---

[150] Transcription de l'Audience du 20 février 2018, p. 32 para 37 à 43 et p. 33 para 1 à 4 «*Me. Ndiaye : Pour le lot no 5, le montant des impayés est de 3 897 891,22 et l'avenant est de 3 897 891,11 ... « 150 765, 46 pour l'OPEP, 1, 21 403,69 pour la BADEA, 1 734 651, 60 pour le Fonds Koweitien, pour le FKDEA et 991 070,47 pour le Fonds Saoudien* ».
[151] Pièce no. 14 soumise dans la correspondance de la Demanderesse du 25 octobre 2017 ; il s'agit également de la pièce no 4 de la Requête d'Arbitrage et de la pièce D 4 du Mémoire en Demande.
[152] Pièce no. 14 soumise dans la correspondance de la Demanderesse du 25 octobre 2017 ; il s'agit également de la pièce no 4 de la Requête d'Arbitrage et de la pièce D 4 du Mémoire en Demande.

- *BND : 3 409 629,06 € suivant l'échéancier ci-après :*
  - *Premier trimestre an 2010 : 852 407,26 €*
  - *Deuxième trimestre an 2010 : 852 407,26 €*
  - *Troisième trimestre an 2010 : 852 407,26 €*
  - *Quatrième trimestre an 2010 : 852 407,26 € »*

260.   L'article 6 de cet Avenant stipule que « *les prix sont fermes et non révisables* ».

261.   L'Avenant no.1 du Marché Lot 5 est valable et exécutoire puisqu'il a été signé par les Parties concernées et approuvé par le Ministre de l'Economie et des Finances tel qu'il résulte des signatures de l'Avenant et de la mention approuvé ainsi que du tampon .[153]

262.   Le Tribunal Arbitral relève que la Demanderesse affirme que le montant impayé réclamé en francs guinéens s'élevant à 112.780.322 GNF est relatif à la retenue de garantie du Décompte no. 27. [154]

263.   Le Tribunal Arbitral, au cours de l'Audience Finale de Plaidoiries, a estimé nécessaire de procéder à la vérification des montants payés et impayés par les Bailleurs de Fonds au titre des décomptes no. 1 à 27. A cette fin, la Demanderesse et le Directeur Administratif et Financier de la CSE ont établit, pour le Marchés Lot 5, le lien entre chaque décompte (**Pièces no. 5, 11, et 12**) et la preuve du virement reçu (**Pièces no. 2, 3,4, 7, 8, 9 et 10**). Il s'est avéré que les décomptes impayés pour le Lot 5 sont les décomptes 24, 25, 26 et 27 pour un montant de 3.897.891,12 euros. [155]

264.   Le Tribunal Arbitral a vérifié chaque chiffre relatif à chaque décompte et a vérifié les transferts qui ont été entrepris par les bailleurs de fonds ainsi que leur réception par la Demanderesse sur son compte no. 17722-00001 ouvert à la banque Crédit Commercial de France (CCF) comme prévu à l'Article 4 du contrat de Marché du Lot 5. [156]

---

[153] Article 10 avenant no.1 du Marché lot 5 : « *le présent avenant n'est valable et exécutoire qu'après sa signature par les parties concernées et son approbation par le Ministre de l'Economie et des Finances* ».
[154] Transcription de l'Audience du 19 février 2018, p. 47 para 5 à 7 « *M. Gueye : ce montant qui correspond à la part de L'Etat Guinéen sur le décompte 27, n'est pas payé, et cela correspond à la retenue de garantie* » ; p. 50 para 4 à 10.
[155] Transcription de l'Audience du 20 février 2018, p. 32 para 38 à 43 et p.33 para 1 à 4 « *pour le lot no 5, le montant des impayés est de 3 897 891,22 et l'avenant est de 3 897 891,11* » ; transcription de l'Audience du 20 février 2018, p. 31 para 22 à 31 : « *M.Gueye- la somme c'est 3 470 475,73* ».
[156] Virements effectués par le FSD pour le lot n°5: Transcription de l'Audience du 20 février 2018 p. 8 para. 24 et suivants ; virements effectués par la BADEA pour le lot n°5 : Transcription de l'Audience du 20 février 2018 p.13 para. 14 et suivants et transcription de l'Audience du 19 février 2018 p.17 para 37 ; virements effectués par le FKDEA pour le lot n°5 : Transcription de l'Audience du 20 février 2018 p.17 para 9 et suivants ; virements effectués par l'OPEP pour le lot n°5 transcription de l'Audience du 19 février 2018 p. 37 para 33 et suivants.

265.   Le Tribunal Arbitral a établi le résultat de cet exercice dans des tableaux ci-dessous reflétant les montants payés et impayés par chaque Bailleurs de Fonds pour chacun des décomptes. [157]

> Les montants payés par l'OPEP à la Demanderesse au titre du Marché Lot 5 :

| LOT 5 | | OPEP[158] | MONTANT | JUSTIFICATIF[159] | DATE DE VIREMENT | DATE DE VALEUR | |
|---|---|---|---|---|---|---|---|
| Dp n° | AD[160] | 174,908.08 | 174,908.08 | Relevé du 01 au 31 mars 2005 | 30/3/2005 | 31/3/2005 | |
| Dp n° | 1 | 31,232.91 | 31,208.99 | Relevé du 01 au 31 décembre 2004 | 27/12/2004 | 23/12/2004 | |
| Dp n° | 2 | 57,392.88 | 57,392.88 | Relevé du 01 au 31 décembre 2005 | 4/1/2005 | 5/1/2005 | |
| Dp n° | 3 | 65,436.61 | 220,871.81 | Relevé du 01 au 31 octobre 2005 | 4/10/2005 | 5/10/2005 | En même temps DP 4 Lot 5 |
| Dp n° | 4 | 61,716.94 | 220,871.81 | Relevé du 01 au 31 octobre 2005 | 4/10/2005 | 5/10/2005 | En même temps DP 3 Lot 5 |
| Dp n° | 5 | 107,279.19 | 312,995.35 | Relevé du 01 au 31 décembre 2005 | 7/12/2005 | 9/12/2005 | En même temps DP n° 5 Lot 5 et 7 |
| Dp n° | 6 | 96,684.21 | 312,995.35 | Relevé du 01 au 31 décembre 2005 | 7/12/2005 | 9/12/2005 | En même temps DP n° 5 Lot 5 et 7 |
| Dp n° | 7 | 55,087.98 | 312,995.35 | Relevé du 01 au 31 décembre 2005 | 7/12/2005 | 9/12/2005 | En même temps DP n° 5 Lot 5 et 7 |
| Dp n° | 8 | 53,943.97 | 312,995.35 | Relevé du 01 au 31 décembre 2005 | 7/12/2005 | 9/12/2005 | En même temps DP n° 5 Lot 5 et 7 |
| Dp n° | 9 | 42,721.86 | 42,721.86 | Relevé du 01 au 31 décembre 2005 | 27/12/2005 | 28/12/2005 | |
| Dp n° | 10 | 34,313.81 | 53,531.37 | Relevé du 01 au 30 avril 2006 | 24/4/2006 | 25/4/2006 | En même temps DP 2 Lot 4 |
| Dp n° | 11 | 41,965.06 | 98,141.16 | Relevé du 01 au 31 mars 2006 | 23/3/2006 | 24/3/2006 | En même temps DP 1 Lot 4 |
| Dp n° | 12 | 34,382.47 | 34,382.47 | Relevé du 01 au 30 avril 2006 | 27/4/2006 | 28/4/2006 | |
| Dp n° | 13 | 19,249.02 | 36,957.15 | Relevé du 01 au 30 juin 2006 | 16/6/2006 | 16/6/2006 | En même temps DP 3 Lot 4 |
| Dp n° | 14 | 28,566.29 | 65,627.08 | Relevé du 01 au 30 aout 2006 | 4/8/2006 | 4/8/2006 | En même temps DP 5 Lot 4 |
| Dp n° | 15 | 33,437.36 | 101,334.47 | Relevé du 01 au 31 sept 2006 | 25/9/2006 | 25/9/2006 | En même temps DP 16 Lot 4 et DP 6 Lot 4 |

---

[157] Il faut noter que la différence minime existante entre les montants réclamés et les transferts s'expliquent par les frais bancaires induits par les virements cf. Transcription de l'Audience du 19 février 2018, p. 34 para 10 « il *s'avère, par contre, qu'il y a des frais induits par les virements, qui ont été également pris en compte* » ; Transcription de l'Audience du 19 février 2018, p. 34 para 32 à 43.

[158] Pièce no 12 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « Décomptes adressés par le Demandeur au Défendeur et leur règlement ».

[159] Pièce no 10 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « relevés bancaires de la Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectués par l'OPEP pour le compte du chantier Tombo Gbessia LOT 5 ».

[160] Pièce no 12 jointe à la correspondance de la Demanderesse du 25 octobre 2017 : correspondance en date du 19/09/2003 de la CSE au Ministère des Travaux Publics Guinéen.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dp n° | 16 | 29,351.55 | 101,334.47 | Relevé du 01 au 30 sept 2006 | 29/9/2006 | 29/9/2006 | En même temps DP 16 Lot 4 et DP 6 Lot 4 |
| Dp n° | 17 | 23,040.19 | 44,631.17 | Relevé du 01 au 30 sept 2006 | 29/9/2006 | 29/9/2006 | En même temps DP 7 Lot 4 |
| Dp n° | 18 | 29,055.63 | 71,117.50 | Relevé du 01 au 30 janvier 2007 | 26/1/2007 | 26/1/2007 | En même temps DP 19 du Lot 5 DP 8 et 9 Lot 4 |
| Dp n° | 19 | 10,789.37 | 71,117.50 | Relevé du 01 au 30 janvier 2007 | 26/1/2007 | 26/1/2007 | En même temps DP 19 Lot 5 DP 8 et 9 Lot 4 |
| Dp n° | 20 | 40,269.72 | 138,440.66 | Relevé du 04 au 29 sept 2007 | 13/9/2007 | 13/9/2007 | En même temps DP 21 Lot 5 et 20 et 21 Lot 4 |
| Dp n° | 21 | 36,988.59 | 138,440.66 | Relevé du 04 au 29 sep 2007 | 13/9/2007 | 13/9/2007 | En même temps DP 21 Lot 5 et 20 et 21 Lot 4 |
| Dp n° | 22 | 52,264.63 | 93,467.30 | Relevé du 04 au 29 sep 2007 | 24/9/2007 | 24/9/2007 | En même temps DP 12 Lot 4 |
| Dp n° | 23 | 41,231.29 | 190,401.57 | Relevé du 01 au 31 décembre 2007 | 10/12/2007 | 10/12/2007 | En même temps DP 24 Lot 5 |
| Dp n° | 24 | 88,721.72 | 190,401.57 | Relevé du 01 au 31 décembre 2007 | 10/12/2007 | 10/12/2007 | En même temps DP 24 Lot 5 |
| Dp n° | 25 | 211,432.84 | 132,952.72 | Relevé du 01 au 29 février 2008 | 29/2/2008 | 29/2/2008 | Paiement partiel DP 25 Lot 5 - Reliquat 78,480.12  euros |
| Dp n° | 26 | 40,504.76 | Non Payé | | | | |
| Dp n° | 27 | 31,780.58 | Non Payé | | | | |

266.   Il résulte du tableau que les montants non payés par l'OPEP sont les décomptes suivants :
-   Reliquat du Décompte no. 25 de 78.480,12 euros (211,432.84 – 132,954.72).
-   Décompte no. 26 d'un montant de 40,504.76 euros.
-   Décompte no. 27 d'un montant de 31,780.58 euros.

267.   Ainsi le montant total des impayés par l'OPEP au titre des décomptes nos. 26 et 27 pour le Lot 5 s'élève à **150.765,46 euros**.

➢ Les montants payés par le FSD à la Demanderesse au titre du Marché Lot 5 :

| LOT 5 | | FSD[161] | MONTANT | JUSTIFICATIF[162] | DATE DE VIREMENT | DATE DE VALEUR | |
|---|---|---|---|---|---|---|---|
| Dp n° | AD | 610,980.27 | 719,981.54 | Relevé du 01 au 31/10/2004 | 20/10/2004 | 21/10/2004 | AD et DP 1 du Lot 5 |
| Dp n° | 1 | 109,101.27 | 719,981.54 | Relevé du 01 au 31/10/2004 | 20/10/2004 | 21/10/2004 | AD et DP 1 du Lot 5 |
| Dp n° | 2 | 200,481.97 | 200,358.05 | Relevé du 01 au 31/12/2004 | 16/12/2004 | 16/12/2004 | Paiement DP 2 |
| Dp n° | 3 | 228,579.92 | 228,456.00 | Relevé du 01 au 28 février 2005 | 24/2/2005 | 24/2/2005 | Paiement DP 3 |
| Dp n° | 4 | 215,586.58 | 215,462.66 | Relevé du 01 au 30 avril 2005 | 7/4/2005 | 7/4/2005 | Paiement v 4 |
| Dp n° | 5 | 374,742.38 | 374,718.46 | Relevé du 01 au 31 juillet 2005 | 29/7/2005 | 29/7/2005 | paiement DP 5 |
| Dp n° | 6 | 337,732.51 | 337,708.59 | Relevé du 01 au 31 aout 2005 | 4/8/2005 | 4/8/2005 | Paiement DP 6 |
| Dp n° | 7 | 192,430.62 | 192,430.62 | Relevé du 01 au 30 sept 2005 | 15/9/2005 | 15/9/2005 | Paiement DP 7 |
| Dp n° | 8 | 188,434.42 | 188,434.42 | Relevé du 01 au 30 sept 2005 | 29/9/2005 | 29/9/2005 | Paiement DP 8 |
| Dp n° | 9 | 149,233.90 | 149,233.90 | Relevé du 01 au 30 nov 2005 | 24/11/2005 | 24/11/2005 | Paiement DP 9 |
| Dp n° | 10 | 119,863.32 | 119,863.32 | Relevé du 01 au 31 décembre 2005 | 22/12/2005 | 22/12/2005 | DP 10 |
| Dp n° | 11 | 146,590.27 | 266,693.40 | Relevé du 01 au 30 juin 2006 | 29/6/2006 | 29/6/2006 | DP 11 et 12 Lot 5 |
| Dp n° | 12 | 120,103.13 | 128,983.89 | Relevé du 01 au 30 juin 2006 | 29/6/2006 | 29/6/2006 | DP 11 et 12 Lot 5 |
| Dp n° | 13 | 67,242.88 | 67,242.88 | Relevé du 03/07/2006 au 21/11/2006 | 20/7/2006 | 20/7/2006 | DP 13 |
| Dp n° | 14 | 99,786.35 | 341,500.31 | Relevé du 01 au 31 mai 2007 | 17/5/2007 | 17/5/2007 | En même temps DP 16 Lot 5 DP 18 et 19 Lot 15 |
| Dp n° | 15 | 116,801.73 | 116,801.73 | Relevé du 01 au 31 aout 2006 | 3/8/2006 | 3/8/2006 | DP 15 |
| Dp n° | 16 | 102,529.39 | 341,500.31 | Relevé du 01 au 31 mai 2007 | 17/5/2007 | 17/5/2007 | En même temps DP 16 Lot 5 DP 18 et 19 Lot 15 |
| Dp n° | 17 | 80,482.85 | 80,482.85 | Relevé du 01 au 30 nov 2006 | 30/11/2006 | 30/11/2006 | DP 17 |
| Dp n° | 18 | 101,495.69 | 341,500.31 | Relevé du 01 au 31 mai 2007 | 17/5/2007 | 17/5/2007 | En même temps DP 16 Lot 5 DP 18 et 19 Lot 15 |
| Dp n° | 19 | 37,688.88 | 341,500.31 | Relevé du 01 au 31 mai 2007 | 17/5/2007 | 17/5/2007 | En même temps DP 16 Lot 5 DP 18 et 19 Lot 15 |
| Dp n° | 20 | 140,668.22 | 140,668.22 | Relevé du 01 au 31 mai 2007 | 17/5/2007 | 17/5/2007 | DP 20 Lot 5 |

[161] Pièce no. 12 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « Décomptes adressés par le Demandeur au Défendeur et leur règlement ».

[162] Pièce no. 9 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « relevés bancaires de la Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectues par le FSAOUD pour le compte du chantier Tombo-Gbessia LOT 5 ».

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dp n° | 21 | 129,206.71 | 240,304.78 | Relevé du 01 au 31 mai 2007 | 30/5/2007 | 30/5/2007 | DP 21 Lot 5 et DP 11 Lot 4 |
| Dp n° | 22 | 182,567.89 | 182,467.89 | Relevé du 01 au 30 juin 2007 | 28/6/2007 | 28/6/2007 | DP 22 |
| Dp n° | 23 | 144,027.10 | 230,111.15 | Relevé du 04 au 28 sept 2007 | 13/9/2007 | 13/9/2007 | DP 23 Lot 5 et DP 13 du Lot 4 |
| Dp n° | 24 | 309,918.34 | 309,818.34 | Relevé du 01 au 30 nov 2007 | 22/11/2007 | 22/11/2007 | DP 24 du Lot 5 |
| Dp n° | 25 | 738,566.78 | | Relevé du 01 au 28 février 2005 | | | |
| Dp n° | 26 | 141,489.23 | | Relevé du 01 au 28 février 2005 | | | |
| Dp n° | 27 | 111,014.36 | | Relevé du 01 au 28 février 2005 | | | |

268.  Il résulte du tableau que les montants non payés par le FSD sont les décomptes suivants :
- Décompte no. 25 de 738,566.78 euros.
- Décompte no. 26 d'un montant de 141,489.23 euros.
- Décompte no. 27 d'un montant de 111,014.36 euros.

269.  Ainsi le montant total des impayés par le FSD au titre des décomptes nos. 25, 26 et 27 pour le Lot 5 s'élève à **991.070,37 euros**.

➢ Les montants payés par la BADEA à la Demanderesse au titre du Marché Lot 5 :

| LOT 5 | | BADEA[163] | MONTANT PAYE | JUSTIFICATIF[164] | DATE DE VIREMENT | DATE DE VALEUR | |
|---|---|---|---|---|---|---|---|
| Dp n° | AD | 479,679.41 | 479,679.41 | Relevé du 28/11/2003 au 31/12/2003 | 19/12/2003 | 23/12/2003 | DP AD |
| Dp n° | 1 | 85,655.20 | 85,655.20 | Relevé du 01 au 30 avril 2004 | 6/4/2004 | 8/4/2004 | DP 1 |
| Dp n° | 2 | 157,398.00 | 506,112.26 | Relevé du 01 au 30 avril 2005 | 26/4/2005 | 26/4/2005 | DP 2 3 et 4 Lot 5 |
| Dp n° | 3 | 179,457.65 | 506,112.26 | Relevé du 01 au 30 avril 2005 | 26/4/2005 | 26/4/2005 | DP 2 3 et 4 Lot 5 |
| Dp n° | 4 | 169,256.61 | 506,112.26 | Relevé du 01 au 30 avril 2005 | 26/4/2005 | 26/4/2005 | DP 2 3 et 4 Lot 5 |
| Dp n° | 5 | 294,209.51 | 294,209.51 | Relevé du 01 au 31 aout 2005 | 4/8/2005 | 4/8/2005 | DP 5 |
| Dp n° | 6 | 265,153.13 | 265,153.13 | Relevé du 01 au 31 aout 2005 | 18/8/2005 | 18/8/2005 | DP 6 |
| Dp n° | 7 | 151,076.91 | 151,076.91 | Relevé du 01 au 31 oct 2005 | 5/10/2005 | 5/10/2005 | DP 7 |

---

[163] Pièce no. 12 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « Décomptes adressés par le Demandeur au Défendeur et leur règlement ».

[164] Pièce no. 7 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « relevés bancaires de la Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectues par la BADEA pour le compte du chantier Tombo Gbessia LOT 5 ».

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dp n° | 8 | 147,939.49 | 147,939.49 | Relevé du 01 au 31 oct 2005 | 25/10/2005 | 25/10/2005 | DP 8 |
| Dp n° | 9 | 117,163.25 | 117,163.25 | Relevé du 01 au 30 nov 2005 | 28/11/2005 | 28/11/2005 | DP 9 |
| Dp n° | 10 | 94,104.46 | 94,104.46 | Relevé du 01 au 31 janvier 2006 | 5/1/2006 | 5/1/2006 | DP 10 |
| Dp n° | 11 | 115,087.74 | 262,083.98 | Relevé du 01 au 31 mai 2006 | 5/5/2006 | 5/5/2006 | DP 11 et 12 Lot 5 et DP 2 Lot 4 |
| Dp n° | 12 | 94,292.73 | 262,083.98 | Relevé du 01 au 31 mai 2006 | 5/5/2006 | 5/5/2006 | DP 11 et 12 Lot 5 et DP 2 Lot 4 |
| Dp n° | 13 | 52,792.25 | 101,353.73 | Relevé du 1 au 30 juin 2006 | 23/6/2006 | 23/6/2006 | DP 13 Lot ET DP 3 Lot 4 |
| Dp n° | 14 | 78,342.06 | 78,342.06 | Relevé du 01 au 31 aout 2006 | 1/8/2006 | 1/8/2006 | DP 14 Lot 5 |
| Dp n° | 15 | 91,700.81 | 91,700.81 | Relevé du 01 au 31 aout 2006 | 15/8/2006 | 15/8/2006 | DP 15 Lot 5 |
| Dp n° | 16 | 80,495.62 | 186,205.50 | Relevé du 01 au 30 sept 2006 | 11/9/2006 | 11/9/2006 | DP 16 Lot 5 ET 6 Lot 4 |
| Dp n° | 17 | 63,186.93 | 122,399.44 | Relevé du 1 au 30 sept 2006 | 21/9/2006 | 21/9/2006 | DP 17 Lot 5 ET LE DP 7 Lot 4 |
| Dp n° | 18 | 79,684.06 | 195,037.30 | Relevé du 01 au 31 décembre 2006 | 19/12/2006 | 19/12/2006 | DP 18 et 19 Lot 5 et DP 8 et 9 Lot 4 |
| Dp n° | 19 | 29,589.47 | 195,037.30 | Relevé du 01 au 31 décembre 2006 | 19/12/2006 | 19/12/2006 | DP 18 et 19 Lot 5 et DP 8 et 9 LOT 4 |
| Dp n° | 20 | 110,438.34 | 292,445.88 | Relevé du 04 au 28 sept 2007 | 4/9/2007 | 4/9/2007 | DP 20 et 21 Lot 5 et 10 Lot 4 |
| Dp n° | 21 | 101,439.93 | 292,445.88 | Relevé du 04 au 28 sept 2007 | 4/9/2007 | 4/9/2007 | DP 20 et 21 Lot 5 et 10 Lot 4 |
| Dp n° | 22 | 143,333.69 | 437,069.19 | Relevé du 04 au 28 sept 2007 | 7/9/2007 | 7/9/2007 | DP 22 et 23 Lot 5 et DP Lot 4 |
| Dp n° | 23 | 113,075.10 | 437,069.19 | Relevé du 04 au 28 sept 2007 | 7/9/2007 | 7/9/2007 | DP 22 et 23 Lot 5 et DP Lot 4 |
| Dp n° | 24 | 243,316.28 | Non Payé | | | | |
| Dp n° | 25 | 579,847.33 | Non Payé | | | | |
| Dp n° | 26 | 111,082.92 | Non Payé | | | | |
| Dp n° | 27 | 87,157.16 | Non Payé | | | | |

270. Il résulte du tableau que les montants non payés par la BADEA sont les décomptes suivants :

- Décompte no. 24 de 243,316.28 euros.
- Décompte no. 25 de 579,847.33 euros.
- Décompte no. 26 d'un montant de 111,082.92 euros.
- Décompte no. 27 d'un montant de 87,157.16 euros.

85

271.   Ainsi le montant total des impayés par la BADEA au titre des décomptes nos. 24, 25, 26 et 27 pour le Lot 5 s'élève à **1.021.403,69 euros**.

➢ Les montants payés par le FKDEA à la Demanderesse au titre du Marché Lot 5 :

| LOT 5 | | FKDEA[165] | MONTANT PAYE | JUSTIFICATIF[166] | DATE DE VIREMENT | DATE DE VALEUR | |
|---|---|---|---|---|---|---|---|
| Dp n° | AD | 814,640.36 | 814,540.36 | Relevé du 31/10/2003 au 28/11/2003 | 25/11/2003 | 27/11/2003 | DP AD |
| Dp n° | 1 | 145,468.37 | 145,344.45 | Relevé du 01 au 30 sept 2004 | 2/9/2004 | 1/9/2004 | DP 1 Lot 5 |
| Dp n° | 2 | 267,309.29 | 267,185.37 | Relevé du 01 au 31 décembre 2004 | 20/12/2004 | 20/12/2004 | DP 2 Lot 5 |
| Dp n° | 3 | 304,773.23 | 304,649.31 | Relevé du 01 au 31 mars 2005 | 3/3/2005 | 3/3/2005 | DP 3 Lot 5 |
| Dp n° | 4 | 287,448.78 | 287,324.86 | Relevé du 01 au 30 avril 2005 | 18/4/2005 | 18/4/2005 | DP 4 Lot 5 |
| Dp n° | 5 | 499,656.51 | 499,556.51 | Relevé du 01 au 30 sept 2005 | 19/9/2005 | 19/9/2005 | DP 5 |
| Dp n° | 6 | 450,310.01 | 450,310.01 | Relevé du 01 au sept 2005 | 28/9/2005 | 28/9/2005 | Montant 274 774, 73 et Reliquat 175 425 payé le 25/03 |
| Dp n° | 7 | 256,574.17 | 256,574.17 | Relevé du 01 au 30 sept 2005 | 28/9/2005 | 28/9/2005 | Montant 195 983,09 et Reliquat 60 491 payé le 25/03 |
| Dp n° | 8 | 251,245.89 | 251,245.89 | Relevé du 01 au 31 oct 2005 | 20/10/2005 | 20/10/2005 | Montant 189 150,46 et Reliquat 61 995 payé le 25/03 |
| Dp n° | 9 | 198,978.54 | 198,978.54 | Relevé du 01 au 31 décembre 2005 | 22/12/2005 | 22/12/2005 | Montant 149 738,34 et Reliquat 49 140 |
| Dp n° | 10 | 159,817.76 | 355,171.46 | Relevé du 1 au 31 mars 2006 | 15/3/2006 | 15/3/2006 | DP 10 et 11 Lot 5 |
| Dp n° | 11 | 195,453.70 | 355,171.46 | Relevé du 1 au 31 mars 2006 | 15/3/2006 | 15/3/2006 | DP 10 et 11 Lot 5 |
| Dp n° | 12 | 160,137.51 | 160,037.51 | Relevé du 01 au 30 avril 2006 | 20/4/2006 | 20/4/2006 | DP 12 |
| Dp n° | 13 | 89,657.17 | 622,357.59 | Relevé du 01 au 31 janvier 2007 | 29/1/2007 | 29/1/2007 | DP 13 14 15 16 et 17 Lot 5 |
| Dp n° | 14 | 133,048.46 | 622,357.59 | Relevé du 01 au 31 janvier 2007 | 29/1/2007 | 29/1/2007 | DP 13 14 15 16 et 17 Lot 5 |

---

[165] Pièce no.12 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « Décomptes adressés par le Demandeur au Défendeur et leur règlement ».

[166] Pièce no.8 jointe à la correspondance de la Demanderesse du 25 octobre 2017 « relevés bancaires de la Compagnie Sahélienne d'Entreprises justifiant les virements bancaires effectues par la FKDEA pour le compte du chantier Tombo Gbessia LOT 5 ».

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dp n° | 15 | 155,735.64 | 622,357.59 | Relevé du 01 au 31 janvier 2007 | 29/1/2007 | 29/1/2007 | DP 13 14 15 16 et 17 Lot 5 |
| Dp n° | 16 | 136,705.85 | 622,357.59 | Relevé du 01 au 31 janvier 2007 | 29/1/2007 | 29/1/2007 | DP 13 14 15 16 et 17 Lot 5 |
| Dp n° | 17 | 107,310.47 | 622,357.59 | Relevé du 01 au 31 janvier 2007 | 29/1/2007 | 29/1/2007 | DP 13 14 15 16 et 17 Lot 5 |
| Dp n° | 18 | 135,327.58 | 331,132.18 | Relevé du 01 au 31 janvier 2007 | 17/1/2007 | 17/1/2007 | DP 18 19 Lot 5 et 8 9 Lot 4 |
| Dp n° | 19 | 50,251.84 | 331,132.18 | Relevé du 01 au 31 janvier 2007 | 17/1/2007 | 17/1/2007 | DP 18 19 Lot 5 et 8 9 Lot 4 |
| Dp n° | 20 | 187,557.62 | 187,457.62 | Relevé du 01 au 31 janvier 2008 | 30/1/2008 | 30/1/2008 | DP 20 Lot 5 |
| Dp n° | 21 | 172,275.61 | 1,062,581.74 | Relevé du 04/09/2007 au 28/09/2007 | 20/9/2007 | 20/9/2007 | DP 21, 22 et 23 Lot 5 et 11, 12 et 13 Lot 4 |
| Dp n° | 22 | 243,423.86 | 1,062,581.74 | Relevé du 04/09/2007 au 28/09/2007 | 20/9/2007 | 20/9/2007 | DP 21, 22 et 23 Lot 5 et 11, 12 et 13 Lot 4 |
| Dp n° | 23 | 192,036.14 | 1,062,581.74 | Relevé du 04/09/2007 au 28/09/2007 | 20/9/2007 | 20/9/2007 | DP 21, 22 et 23 Lot 5 et 11, 12 et 13 Lot 4 |
| Dp n° | 24 | 413,224.45 | Non Payé | | | | |
| Dp n° | 25 | 984,755.70 | Non Payé | | | | |
| Dp n° | 26 | 188,652.31 | Non Payé | | | | |
| Dp n° | 27 | 148,019.14 | Non Payé | | | | |

272. Il résulte du tableau que les montants non payés par le FKDEA sont les décomptes suivants :
   - Décompte no. 24 de 413,224.45 euros.
   - Décompte no. 25 de 984,755.70 euros.
   - Décompte no. 26 d'un montant de 188,652.31 euros.
   - Décompte no. 27 d'un montant de 148,019.14 euros.

273. Ainsi le montant total des impayés par le FKDEA au titre des décomptes nos. 24, 25, 26 et 27 pour le Lot 5 s'élève à **1.734.651,60 euros**.

274. Par ailleurs, il résulte des tableaux ci-dessus que la Demanderesse a apporté la preuve que les décomptes 1 à 23 ont été payés et que les montants des impayés en euros sont les suivants :

LOT 5

| Bailleur de Fonds | Montants impayés en euros |
|---|---|
| FKDEA (Décomptes no.24, 25, 26 et 27) | 1,734,651.60 |
| FSD (Décomptes no. 25, 26 et 27) | 991,070.37 |

87

| | |
|---|---|
| BADEA(Décomptes no.24, 25, 26 et 27) | 1,021,403.69 |
| OPEP (Décomptes no. 25, 26 et 27) | 150,765.46 |
| **Total Impayés** | **3.897.891,12  euros** |

275.    Le Tribunal relève ainsi que le montant des impayés en euros réclamés par la Demanderesse après vérification des décomptes et des virements bancaires totalise un montant de **3.897.891,12 euros.** Ce montant correspond au montant de l'Avenant no.1 du Lot 5. Conformément à l'article 5 de l'Avenant no.1 du Lot 5, l'Avenant devait être payé par les bailleurs de fonds à des échéances précises sur quatre trimestres en 2010. Les paiements n'ont pas été honorés par la Défenderesse.

276.    En ce qui concerne le montant des impayés en francs guinéen réclamés par la Demanderesse d'un montant de 112.780.322 GNF au titre du Décompte 27 et qui correspond selon ses allégations à la retenue de garantie,[167] le Tribunal Arbitral constate que la Demanderesse n'a pas soumis les preuves justifiant la réclamation de ce montant en francs guinéens. Le seul document soumis au dossier est le Décompte no. 27. L'examen de ce Décompte n'a pas permis au Tribunal Arbitral de vérifier le bien-fondé de ce montant.

277.    De plus, le Tribunal se réfère à la confirmation de la Demanderesse durant l'Audience Finale de Plaidoiries et réitéré dans ses écritures que le montant de la réclamation des impayés concerne les montants relevés dans les Avenants au titre de l'article 4 de l'Avenant no.1 relatif au Lot 5 et qui sont en euros. Aucune disposition de l'Avenant ne se réfère à des règlements qui devaient être effectués en francs guinéen. Par conséquent, le Tribunal détermine que la Demanderesse n'a pas justifié ni contractuellement ni par la soumission de preuves le bien-fondé de ses réclamations en francs guinéen.

278.    Le Tribunal se réfère par ailleurs à l'article 801 du Code Civil guinéen qui énonce ce qui suit :
        « *En règle générale, c'est au demandeur c'est-à-dire à celui qui intente une action en justice, qu'incombe la charge de la preuve.*

---

[167] Transcription de l'Audience du 19 février 2018, p. 47 para 5  à 7 « *M. Gueye : ce montant qui correspond à la part de L'Etat Guinéen sur le décompte 27, n'est pas payé, et cela correspond à la retenue de garantie* » ; p. 50 para 4 à 10.

> *Mais si le défendeur, c'est-à-dire celui contre qui la demande est formulée, a à faire valoir un moyen de défense contre son adversaire, c'est alors à lui que passe la charge de la preuve. »*[168]

279. Il résulte ainsi de ces dispositions que la charge de la preuve incombe au Demandeur en droit guinéen. Ainsi, toute personne qui s'estime créancière d'une obligation doit en apporter la preuve et toute personne qui s'estime libérée d'une obligation doit en apporter la preuve.

280. La Demanderesse a apporté la preuve du paiement en euros des décomptes no. 1 à 23 du Marché du Lot 5. Elle a en outre apporté la preuve de ce que les décomptes mentionnés dans le tableau au paragraphe 263 ci-dessus sont restés impayés.

281. La Demanderesse n'a toutefois pas apporté la preuve justifiant son droit au paiement des sommes en francs guinéens réclamés au titre du Décompte no 27.

282. **Par conséquent, le Tribunal Arbitral détermine, après vérification des décomptes et des virements bancaires, que la Demanderesse est en droit de recevoir le paiement du montant des impayés en euros pour le Marché Lot 5 s'élevant à 3.897.891,12 euros, et rejette la réclamation de la Demanderesse pour le paiement de la somme de 112.780.322 GNF relatif aux montant des impayés en francs guinéens au titre du décompte no. 27 pour défaut de preuve.**

### 3- En ce qui concerne la demande de dommages et intérêts de 2.000.000 d'euros à titre de dommages et intérêts

283. Le Tribunal Arbitral se réfère aux articles 681, 682 et 683 du code civil guinéen[169] qui prévoient ce qui suit:

> *« **Article 681 C.civ. Guinéen:** Les dommages et intérêts dus, par exemple, au sens de l'article 673 ci-dessus; ne peuvent l'être qu'après une mise en demeure faite au débiteur d'avoir à remplir son obligation*
>
> ***Article 682 C.civ. Guinéen:** Un débiteur peut être condamné à des dommages et intérêts, non seulement à raison de l'inexécution de l'obligation, mais aussi à raison du retard apporté dans l'exécution, à moins qu'il ne justifie d'une cause étrangère, cas fortuit ou force majeure, ne pouvant lui être imputés.*

---

[168] Correspondance de la Demanderesse en date du 20 mars 2018 ayant joint une copie du Code Civil Guinéen et du Code de Procédure Civile Guinéen.
[169] Cf. Correspondance de la Demanderesse en date du 29 mars 2018.

89

*__Article 683 C.civ. Guinéen:__ Les dommages et intérêts dus à un créancier comportent, en général la perte qu'il a subie et, éventuellement, le gain dont il a été privé. Toutefois, lorsqu'un contrat stipule que la partie qui n'en exécutera pas les clauses versera une somme déterminée à titre de dommages et intérêts, il ne pourra être alloué à l'autre partie que cette somme, ni plus forte, ni moindre. »*

284.   Il résulte de la lecture combinée de ces articles du code civil guinéen que les dommages et intérêts dus en cas de retard dans l'exécution ou d'inexécution de la part du débiteur de l'obligation le sont après accomplissement d'une formalité : la notification au débiteur d'une mise en demeure d'avoir à exécuter son obligation.

285.   Il ressort en l'espèce des pièces soumises par la Demanderesse l'existence de plusieurs demandes et relances de paiement des montants dus au titre des Avenants, il n'apparaît toutefois nulle part, l'existence d'une mise en demeure relative à la demande de dommages et intérêts.

286.   De plus, la lecture attentive de l'article 682 du code civil guinéen révèle que l'allocation de dommages et intérêts au créancier victime d'une exécution tardive ou d'une inexécution de son droit de créance est facultative.

287.   En effet, une faute contractuelle n'implique pas nécessairement par elle-même l'existence d'un dommage en relation de cause à effet avec cette faute. Des dommages-intérêts ne peuvent être alloués que si le Tribunal Arbitral, au moment où il statue, constate qu'un préjudice résulte de la faute contractuelle.

288.   Le Tribunal arbitral relève que la Demanderesse se contente d'alléguer qu'elle a engagé des sommes considérables de capitaux sur fonds propres, avec l'appui d'institutions bancaires pour la réalisation des ouvrages, et que le non-paiement du prix des Marchés, lui a occasionné des difficultés de trésorerie.

289.   Cependant, la Demanderesse ne justifie pas ces difficultés de trésorerie. Par exemple, par la production des demandes de remboursement émanant desdites institutions financières auxquelles la Demanderesse n'aurait pu satisfaire car l'Etat de la République de Guinée n'a pas honoré ses engagements financiers à son égard.

290.   Il en suit que la Demanderesse n'a pas apporté les preuves justifiant le montant du préjudice invoqué.

291.   **Par conséquent, le Tribunal Arbitral rejette la demande de dommages et intérêts du formulée par la Demanderesse pour un montant de 2,000,000 euros.**

**B.4.LA DEMANDE AFFERENTE A L'EXECUTION PROVISOIRE**

### a- Position des Parties

1- Position de la Demanderesse

Au cours de l'Audience Finale de Plaidoiries en date du 20 février 2018, la Demanderesse a formulé une demande supplémentaire au Tribunal Arbitral à savoir que la sentence finale soit revêtue de l'exécution provisoire.[170]

2- Position de la Défenderesse

292.   La Défenderesse n'a pas participé à l'ensemble de la procédure d'arbitrage y compris à l'Audience Finale de Plaidoiries et n'a dès lors soumis aucune réponse relative à l'exécution provisoire demandée par la Demanderesse, bien que l'ensemble des actes de procédure et des correspondances lui ait été notifié par courrier rapide DHL à ses différentes adresses. Le Tribunal Arbitral a établi un tableau récapitulatif des correspondances notifiées à la Défenderesse et leur date de réception par la Défenderesse à ses différentes adresses prouvant que la Défenderesse a bien eu connaissance de l'ensemble du déroulement de la procédure arbitrale et de la position de la Demanderesse.

### b- Le Tribunal Arbitral

293.   Au cours de l'Audience Finale de Plaidoiries en date du 20 février 2018, la Demanderesse a formulé une demande supplémentaire au Tribunal Arbitral à savoir que la sentence finale soit revêtue de l'exécution provisoire[171].

294.   Le Tribunal Arbitral se réfère à l'article 23(4) du Règlement CCI qui énonce « *après la signature de l'acte de mission, ou son approbation par la Cour, les parties ne peuvent former de nouvelles demandes hors des limites de l'acte de mission, sauf autorisation du tribunal arbitral qui tient compte de la nature de ces nouvelles demandes, de l'état d'avancement de la procédure et de toutes autres circonstances pertinentes* ».

295.   Le Tribunal Arbitral ayant considéré la demande d'exécution provisoire et sa nature accessoire par rapport aux demandes formulées dans l'Acte de Mission, et après s'être assuré que cette demande a été dument notifiée à la Partie Défenderesse avec accusé de

---

[170] Transcription de l'Audience du 20 février 2018, p.41 para. 46-47 « *nous vous demandons solennellement de revêtir votre décision de l'exécution provisoire* ».

[171] Transcription de l'Audience du 20 février 2018, p.41 para. 46-47 « *nous vous demandons solennellement de revêtir votre décision de l'exécution provisoire* ».

réception avec la transcription de l'Audience Finale de Plaidoiries des 19 et 20 février 2018, le Tribunal Arbitral retient cette demande eu égard aux circonstances de la cause et au pouvoir conféré au Tribunal Arbitral d'accepter ce type de demande accessoire sur le fondement de l'Article 23(4) du Règlement CCI susmentionné.

296.  **Par conséquent, le Tribunal Arbitral décide que la sentence finale soit revêtue de l'exécution provisoire.**

**B.5. LES INTERETS MORATOIRES**

a. **Positions des Parties**

1- Position de la Demanderesse

297.  La Demanderesse demande au Tribunal Arbitral de « *condamner la République de Guinée Conakry au paiement d'intérêts moratoires de  5.805.126,13 euros et 506.725.585 GNF au profit de la Compagnie Sahélienne d'Entreprise dite CSE, les intérêts à échoir jusqu'à l'intervention de la sentence arbitrale* »[172].

298.  Par ailleurs, la Demanderesse, en réponse à la question du Tribunal Arbitral dans sa correspondance du 3 Octobre 2017 (les questions du Tribunal Arbitral adressées à la Demanderesse)  puis au cours de l'Audience Finale de Plaidoiries [173] et dans les correspondances subséquentes du Tribunal [174], a donné des éclaircissements sur le fondement du calcul des intérêts moratoires demandés.

299.  La méthode avancée par la Demanderesse pour le calcul des intérêts moratoires est fondée sur les dispositions contractuelles, en particulier l'article 11.7 du Cahier des clauses administratives générales qui énonce ce qui suit : « *en cas de retard de paiements exigibles conformément aux dispositions de l'article 13.2 du CCAG, l'Entrepreneur a droit à des intérêts moratoires au taux prévu au CCAP*». La Demanderesse soutient que les taux applicables sont définis par l'article 17 du Cahier des Clauses Administratives particulières qui détermine les taux suivants :
« *-GNF taux BCRG : taux d'intervention : 9%*
      *-Euro taux : TEN BCEAO + 2 = 8,75%* »[175]

300.  La Demanderesse a procédé au calcul des intérêts moratoires comme suit:

---

[172] Requête d'Arbitrage p. 8 ; Mémoire en Demande p.11
[173] Transcription de l'Audience du 20 février 2018, p. 42 para 21 à 23, et p. 43 para 1 à 21.
[174] Correspondance du Tribunal Arbitral en date du 14 avril 2018.
[175] Correspondance de la Demanderesse en date du 29 mars 2018.

*« Intérêts = Montant de l'impayé X taux d'intérêts X nombre de jours de retard/30*
*Ainsi les intérêts moratoires s'établissent tel qu'il suit:*
- *Intérêts moratoires sur parts en Euro des Lots 4 et 5= 5.805.126, 13 euros*
- *Intérêts moratoires sur parts GNF des Lots 4 et 5 = 506.725.585 GNF »* »[176]

301.  En outre, la Demanderesse s'est référée aux textes légaux du Code Civil guinéen qui justifient les demandes et le calcul des intérêts notamment aux articles 637[177], 638[178] et 639[179] du titre I intitulé « *des contrats ou obligations contractuelle en général du code civil guinéen* » ainsi qu'aux articles 649[180], 668[181] et 669[182] du même code. La Demanderesse s'est en outre référée à la section 5 de ce même code portant sur le calcul des dommages et intérêts en droit guinéen en particulier les articles 681[183], 682[184], 683[185] et 684[186].

---

[176] Correspondance de la Demanderesse en date du 29 mars 2018.
[177] **Article 637 C.civ. Guinéen:** « *un contrat est une convention, c'est-à-dire un accord de volontés entre une ou plusieurs personnes qui s'obligent envers une ou plusieurs autres personnes, à donner, à faire, ou à ne pas faire quelque chose*».
[178] **Article 638 C.civ. Guinéen:** « *celui qui s'oblige à donner une chose doit en transférer la propriété ou les droits qu'il possède sur cette chose. Il est tenu d'en assurer la délivrance selon les règles générales d'exécution des obligations et selon les dispositions propres aux contrats spéciaux.* »
[179] **Article 639 C.civ. Guinéen:** « *le débiteur d'une obligation de faire ou de ne pas faire quelque chose doit exécuter complètement son obligation* ».
[180] **Article 649 C.civ. Guinéen :** « *Pour qu'une convention soit légalement valable, quatre conditions essentielles sont requises :*
-    *Le consentement des parties ;*
-    *Leur capacité de contracter ;*
-    *Un objet certain formant la matière de l'engagement ;*
-    *Enfin une cause licite, c'est-à-dire qu'aucun texte ne prohibe.* »
[181] **Article 668 C.civ. Guinéen :** « *les conventions légalement formées tiennent lieu de Loi à ceux qui les ont faites. Elles ne peuvent être révoquées que de leur consentement mutuel ou pour des causes que la loi autorise* ».
[182] **Article 669 C.civ. Guinéen : «** *La force obligatoire des conventions a un double fondement :*
-    *Une idée morale, le respect de la parole donnée*
-    *Un intérêt économique, la nécessité du crédit.*
*Ce double fondement implique qu'elles doivent être contractées de bonne foi et qu'elles obligent non seulement au respect des clauses qui y sont exprimées, mais aussi à tout ce que l'équité, l'usage ou la Loi leur donnent d'après leur nature* ».
[183] **Article 681 C.civ. Guinéen:** « *les dommages et intérêts dus, par exemple, au sens de l'article 673 ci-dessus; ne peuvent l'être qu'après une mise en demeure faite au débiteur d'avoir à remplir son obligation .*»
[184] **Article 682 C.civ. Guinéen:** « *un débiteur peut être condamné à des dommages et intérêts, non seulement à raison de l'inexécution de l'obligation, mais aussi à raison du retard apporté dans l'exécution, à moins qu'il ne justifie d'une cause étrangère, cas fortuit ou force majeure, ne pouvant lui être imputés* ».
[185] **Article 683 C.civ. Guinéen:** « *les dommages et intérêts dus à un créancier comportent, en général, la perte qu'il a subie et, éventuellement, le gain dont il a été privé. Toutefois, lorsqu'un contrat stipule que la partie qui n'en exécutera pas les clauses versera une somme déterminée à titre de dommages et intérêts, il ne pourra être alloué à l'autre partie que cette somme, ni plus forte, ni moindre* ».
[186] **Article 684 C.civ. Guinéen:** « *des dommages et intérêts, distincts de ceux dus pour inexécution ou retard dans l'exécution, peuvent être également demandés en cas de mauvaise foi manifeste du débiteur.*

## 2- Position de la Défenderesse

302. La Défenderesse n'a pas participé à la procédure d'arbitrage et n'a soumis aucune réponse relative aux intérêts moratoires, bien que l'ensemble des actes de procédures et des correspondances lui ait été notifié par courrier rapide DHL à ses différentes adresses. Le Tribunal Arbitral a établi un tableau récapitulatif des correspondances notifiés à la Défenderesse et de leur date de réception par la Défenderesse à ses différentes adresses prouvant que la Défenderesse a bien eu connaissance de l'ensemble du déroulement de la procédure arbitrale et de la position de la Demanderesse.

### b.  **Le Tribunal Arbitral**

303. Dans le cadre de la liste de questions adressée à la Demanderesse[187], le Tribunal Arbitral a invité la Demanderesse à répondre à la question suivante relative au calcul des intérêts moratoires : « *sur quelle base la Demanderesse a-t-elle calculé les intérêts moratoires dus en cas de retard de paiement ?* »

304. De même, au cours de l'Audience Finale de Plaidoiries, le Tribunal a réitéré cette question au Demandeur en l'invitant à apporter des éclaircissements sur les modalités de calcul des intérêts moratoires et à la date à partir de laquelle ils commencent à courir sur le fondement du droit guinéen. [188]

305. Le Tribunal Arbitral relève la réponse de la Demanderesse sur cette question dans sa correspondance du 29 mars 2018 dans laquelle elle se fonde sur les dispositions contractuelles des CCAG et des CCAP des deux Marchés, en particulier l'article 11.7 du CCAG et l'article 11.7 du CCAP.

306. Les dispositions contractuelles auxquelles la Demanderesse se réfère stipulent:

*__Article 11.7 CCAG__* : « *en cas de retard de paiements exigibles conformément aux dispositions de l'article 13.2 du CCAG, l'Entrepreneur a droit à des intérêts moratoires au taux prévu au CCAP. Si ces retards résultent d'une cause pour laquelle le Maître de l'Ouvrage est habilité, au titre du Marché, à suspendre les paiements, les intérêts moratoires ne sont pas dus* »

*__Article 11.7 CCAP__* :

---

[187] Correspondance du Tribunal Arbitral en date du 3 octobre 2017.
[188] Transcription de l'Audience du 20 février 2018, p.41 para 21 à 25.

« [...] pour les retards donnant droit à intérêts moratoires, le taux des intérêts moratoires est:

- Pour les retards donnant droit à intérêts moratoires pour les paiements en devises : le taux « légal » LEG en vigueur dans le pays d'origine de la devise, augmenté de un pour cent (1%) ou à défaut, le taux d'escompte de la banque centrale du pays d'origine de la devise augmenté de 2 %.
- Pour les retards donnant droit à intérêts moratoires pour les paiements en francs guinéens (GNF) : le taux d'intervention de la Banque Centrale de République de Guinée majorée de deux pour cent (2%). [...] »

307.   Le Tribunal Arbitral relève que les conventions qui lient la CSE et la République de Guinée Conakry sont notamment les CCAG et CCAP annexés aux Marchés n°2003/0324/1/2/1/N et n°2003/0325/12/1/2/N.

308.   Le Tribunal Arbitral se réfère également aux dispositions du code civil guinéen qui prévoit en ses articles 668 et 669 ce qui suit :

*Article 668 C.civ. Guinéen* : Les conventions légalement formées tiennent lieu de Loi à ceux qui les ont faites. Elles ne peuvent être révoquées que de leur consentement mutuel ou pour des causes que la loi autorise.

*Article 669 C.civ. Guinéen* : La force obligatoire des conventions a un double fondement :
- Une idée morale, le respect de la parole donnée
- Un intérêt économique, la nécessité du crédit.
Ce double fondement implique qu'elles doivent être contractées de bonne foi et qu'elles obligent non seulement au respect des clauses qui y sont exprimées, mais aussi à tout ce que l'équité, l'usage ou la Loi leur donnent d'après leur nature ».

309.   Il résulte des dispositions susmentionnées que toute convention est la loi des parties et que celles-ci doivent l'exécuter de bonne foi.

310.   En l'espèce, le Tribunal Arbitral a retenu que la Demanderesse a apporté la preuve des impayés au titre de l'avenant n°1 du Marché lot n°4 et au titre de l'avenant n°1 du Marché lot n°5 qui s'élèvent respectivement aux sommes de 3.470.475,73 euros et 3.897.891,12 euros.

311.   Il est aussi constant que la Défenderesse n'apporte pas la preuve qu'a exécuté ses obligations de paiement au titre des Décomptes impayés en euros des Marchés du lot 4 et du lot 5 ou que ces retards de paiement résultent d'une cause pour laquelle la Défenderesse

était habilité, au titre du Marché, à suspendre les paiements. De plus, le Tribunal Arbitral relève qu'il ne résulte pas des éléments du dossier qu'il existait une cause habilitant la Défenderesse à suspendre les paiements.

312. Il résulte de ces constatations qu'il y a donc lieu d'appliquer les dispositions conventionnelles notamment les articles 11.7 CCAG et 11.7 CCAP qui prévoient le paiement d'intérêts moratoires en cas de retard de paiement.

313. Concernant le taux des intérêts moratoires, le Tribunal Arbitral se réfère à l'article 11.7 CCAP qui énonce ce qui suit :
   « [...] pour les retards donnant droit à intérêts moratoires, le taux des intérêts moratoires est:
   - *Pour les retards donnant droit à intérêts moratoires pour les paiements en devises : le taux « légal » LEG en vigueur dans le pays d'origine de la devise, augmenté de un pour cent (1%) ou à défaut, le taux d'escompte de la banque centrale du pays d'origine de la devise augmenté de 2 %.*
   - *Pour les retards donnant droit à intérêts moratoires pour les paiements en francs guinéens (GNF) : le taux d'intervention de la Banque Centrale de République de Guinée majorée de deux pour cent (2%). [...] ».*

314. Le Tribunal Arbitral a accordé à la Demanderesse les montants des Avenants impayés en euros pour le Marché du lot 4 et pour le Marché du lot 5.

315. A la lecture de l'Article 11.7 CCAP, le Tribunal Arbitral relève deux possibilités pour la détermination du taux d'intérêt moratoires pour les paiements en devises, c'est-à-dire l'euro :

   - Soit le taux « légal » LEG en vigueur dans le pays d'origine de la devise, augmenté de un pour cent (1%) ;
   - Soit à défaut, le taux d'escompte de la banque centrale du pays d'origine de la devise augmenté de 2 %.

316. Le Tribunal Arbitral relève que la Demanderesse retient 8,75% pour le calcul du taux d'intérêts sur la base du taux de la Banque Centrale des Etats d'Afrique de l'Ouest.[189] Or ce taux d'intérêt est le taux de référence pour les retards donnant droit à intérêts moratoires pour les paiements en francs guinéens et non pas en euros. L'Article 11.7 CCAP est à cet égard très clair, les taux d'intérêts moratoires pour les paiements en euros s'effectuent en vertu de l'un des deux taux mentionnés au paragraphe 304 ci-dessus.

---

[189] Correspondance de la Demanderesse en date du 29 mars 2018.

317. Le Tribunal Arbitral détermine en conséquence qu'il retiendra le taux d'escompte de la Banque Centrale Européenne (BCE) pour la détermination du taux des intérêts moratoires augmenté de 2 %, à défaut d'existence d'un taux légal uniforme au sein de la zone euro. Le taux de la BCE applicable sera le taux en vigueur à la date retenue par le Tribunal Arbitral comme point de départ pour le calcul des intérêts moratoires et déterminé dans les sections suivantes.

318. Concernant le point de départ des intérêts moratoires, le Tribunal Arbitral relève que les dispositions contractuelles des Marchés ne déterminent pas ce point de départ et qu'il y a donc lieu de se référer aux dispositions réglementaires applicables.

319. Les deux Marchés sont des Marchés Publics et en tant que tels soumis au code des Marchés Publics guinéen versé au dossier par la Demanderesse.[190]

320. L'article 119 intitulé « Droits aux intérêts moratoires » du Décret n°2012-128 du 3 décembre 2012 portant code général des marchés publics[191] dispose ce qui suit :
   « *Le défaut de paiement ou de libération d'une caution dans les délais fixés par le cahier des clauses administratives particulières, ouvre et fait courir de plein droit au bénéfice du titulaire du marché, des intérêts moratoires calculés depuis le jour suivant l'expiration desdits délais, jusqu'au jour de la délivrance du titre du paiement par le comptable habilité* ».

321. Il résulte de cette disposition de l'article 119 du Décret n°2012-128 du 3 décembre 2012 susmentionné, que le titulaire du marché bénéficie, de plein droit et sans autre formalité, d'intérêts moratoires à compter du jour suivant l'expiration du délai de paiement.

322. Le Tribunal Arbitral se réfère à l'Article 5 de l'Avenant no.1 du Marché lot 4 qui prévoit que : « *les modalités de règlements seront effectuées ainsi qu'il suit :*
   - *FKD : 206 356,09 €*
   - *FSD : 194 356,04€*
   - *OPEP : 181 278,34€*
   - *BND : 3 074 933, 34 € suivant l'échéancier ci-après :*
     - *Premier trimestre an 2010 : 768 733,31 €*
     - *Deuxième trimestre an 2010 : 768 733,31 €*
     - *Troisième trimestre an 2010 : 768 733,31€*
     - *Quatrième trimestre an 2010 : 768 733, 31€* ».

---

[190] Cf. Requête d'Arbitrage, Pièce no.9
[191] Cf. Requête d'Arbitrage, Pièce no. 9.

323.   Le Tribunal Arbitral se réfère aussi à l'Article 5 de l'Avenant no.1 du Marché lot 5 : « *les modalités de règlements seront effectués ainsi qu'il suit :*

- *FSD : 383 854,57 €*
- *OPEP : 104 407,49 €*
- *BND : 3 409 629,06 € suivant l'échéancier ci-après :*
- *Premier trimestre an 2010 : 852 407,26 €*
- *Deuxième trimestre an 2010 852 407,26 €*
- *Troisième trimestre an 2010 : 852 407,26 €*
- *Quatrième trimestre an 2010 : 852 407,26 € ».*

324.   Il résulte de ces stipulations contractuelles que le paiement arrive à échéance le 31 décembre 2010.

325.   Toutefois, le Tribunal Arbitral au cours de l'Audience Finale de Plaidoiries, a demandé à la Demanderesse de déterminer la date à laquelle les intérêts moratoires commencent à courir sur les arriérés de paiements relatifs aux Avenants. En réponse à la question du Tribunal Arbitral, le Directeur Financier de la Demanderesse a reconnu que les intérêts moratoires ont été calculés à partir du 10 décembre 2012[192].

326.   Par conséquent, le Tribunal Arbitral retient la date du 10 décembre 2012 telle que réclamé par la Demanderesse pour faire courir les intérêts moratoires et non pas la date de l'échéance des impayés prévue par les Articles 5 des Avenants no.1 des deux Marchés qui est du 1er Janvier 2011. Le Tribunal Arbitral relève aussi que le taux d'escompte de la BCE en date du 10 décembre 2012 était de 0,75 %.[193] Ce taux devrait être augmenté de 2% conformément à l'article 11.7 CCAP.

327.   Par conséquent, en ce qui concerne la demande des intérêts moratoires, le Tribunal Arbitral détermine que les intérêts moratoires dus au titre des deux Marchés sont de l'ordre de 2.75% par an pour chacun des deux Marchés et commencent à courir à partir de la date du 10 décembre 2012, jusqu'à la date du paiement définitif par la Défenderesse du montant de la compensation déterminé par le Tribunal Arbitral aux paragraphes 254 et 282 ci-dessus.

## B.6 LES COUTS ET FRAIS DE L'ARBITRAGE

328.   Le Tribunal Arbitral répondra à la question suivante : *Quels sont les coûts de cet arbitrage et quelle Partie devrait les encourir et dans quelle proportion ?*

---

[192] Transcription de l'Audience du 19 février 2018, p. 54 para 45, p.55 para 1-2 : (« para 35 M.Gueye – C'est à partir du 10 décembre qu'on a calculé les intérêts moratoires ».
[193] http://sdw.ecb.europa.eu/browseTable.do?node=9691107.

### a. **Positions des Parties**

1- Position de la Demanderesse

329. Dans sa Requête d'Arbitrage [194], la Demanderesse demande du Tribunal Arbitral de « *Condamner la République de Guinée Conakry au paiement de tous les frais et dépens occasionnés par la présente procédure arbitrale et qui seront exposés par voie de conclusions*".

330. La Demanderesse formule cette même demande dans son Mémoire en Demande [195] dans les termes suivants « *Condamner la République de Guinée Conakry au paiement de tous les frais et dépens occasionnés par la présente procédure arbitrale.* "

331. Le Tribunal Arbitral relève qu'au cours de l'Audience Finale de Plaidoiries, la Demanderesse a soutenu qu'elle a payé la somme de 510.000 euros pour les frais de la procédure d'arbitrage [196] et la somme de 150.000 euros pour les frais de représentation et les frais de déplacements entre Paris et Dakar. [197]

332. Le Tribunal Arbitral a invité la Demanderesse à lui soumettre après l'Audience Finale de Plaidoiries les justificatifs des coûts engendrés par la procédure arbitrale ainsi que les coûts légaux. [198]

333. La Demanderesse a par la suite soumis dans sa correspondance du 29 mars 2018, les justificatifs suivants:

---

[194] Requête d'Arbitrage, p.8
[195] Mémoire en Demande, p 10 et 11
[196] Transcription d'Audience du 20 février 2018, p.40 para 22 à 30.
[197] Transcription d'Audience du 20 février 2018, p.40, para 44 à 46.
[198] Transcription d'Audience du 20 février 2018, p.40 para 44 à 46 et p. 41 para à 9 :
« *L'État de Guinée... La CSE a également - comment dirais-je - supporté des frais de représentation - mes honoraires à moi - mais également tous les déplacements qui ont été faits entre Paris et Dakar, et nous chiffrons cette somme à 150 000 euros.*
*Mme la Présidente.- Monsieur Ndiaye, comme vous le savez, après cette audience finale de procédure, et si vous le souhaitez, il faut soumettre un sommaire de vos écritures sur la base de ce qui s'est passé, sans aucun document additionnel.*
*Les seules écritures que vous pouvez rajouter sont relatives au droit applicable et aux dispositions de droit applicable, ainsi que les coûts. Nous voudrions avoir un relevé des coûts que vous avez demandés pour la procédure d'arbitrage et vous avez avancé qu'il y avait les coûts qui ont été payés à la CCI ; et ensuite, les coûts légaux dans la procédure, qu'il faudrait envoyer aussi au Tribunal arbitral.*
*Me Ndiaye.- Très bien.* »

- Un virement bancaire vers la CCI en date du 5 mars 2018 d'un montant de 251.975 USD relatif à l'appel de fonds de la CCI.
- Un virement bancaire vers la CCI en date du 31 mai 2017 d'un montant de 146 70,86 USD relatif aux honoraire des arbitres. [199]
- Un virement bancaire vers la CCI en date du 16 mars 2017 d'un montant de 46.765,19 USD. [200]
- Un chèque au nom de la CCI en date du 12 Septembre 2016 pour le paiement des frais de l'arbitrage d'un montant de 55.390 euros.
- Un chèque au nom de la CCI en date du 24 juin 2016 pour la présentation de la Requête d'Arbitrage d'un montant de 2.643 euros.

334.   Le Tribunal Arbitral relève que la Demanderesse n'a pas soumis les justificatifs de ses coûts légaux.

2-  Position de la Défenderesse

335.   La Défenderesse n'a pas participé à la procédure d'arbitrage et n'a soumis aucune réponse relative aux coûts de l'arbitrage et sur quelle Partie ils incombent, bien que l'ensemble des actes de procédures et des correspondances lui ait été notifié par courrier rapide DHL à ses différentes adresses. Le Tribunal Arbitral a établi un tableau récapitulatif des correspondances notifié à la Défenderesse et de leur date de réception par la Défenderesse à ses différentes adresses prouvant que la Défenderesse a eu connaissance de l'ensemble du déroulement de la procédure arbitrale et de la position de la Demanderesse.

b.  **Le Tribunal Arbitral**

336.   Le Tribunal Arbitral se réfère à l'article 37 du Règlement CCI applicable à cette procédure d'arbitrage qui énonce ce qui suit :

*« 1- les frais de l'arbitrage comprennent les honoraires et frais des arbitres et les frais administratifs de la CCI fixés par la Cour, conformément au tableau de calcul en vigueur au moment de l'introduction de l'arbitrage, les honoraires et frais des experts nommés par le tribunal arbitral ainsi que les frais raisonnables exposés par les parties pour leur défense a l'occasion de l'arbitrage.*

*2-La Cour peut fixer les honoraires du ou des arbitres à un montant supérieur ou inférieur à ce qui résulterait du tableau de calcul en vigueur si ceci apparaît nécessaire en raison des circonstances exceptionnelles de l'espèce.*

---

[199] Montant d'origine: 130.850 euros.
[200] Montant d'origine: 44.180 00 euros.

*3- À tout moment de la procédure d'arbitrage, le tribunal arbitral peut se prononcer sur des frais autres que ceux fixés par la Cour, et ordonner tout paiement.*

*4- La sentence finale du tribunal arbitral liquide les frais de l'arbitrage et décide à quelle partie le paiement en incombe ou dans quelle proportion ils sont partagés entre elles.*

*5- Lorsqu'il se prononce sur des frais, le tribunal arbitral peut tenir compte des circonstances qu'il estime pertinentes, y compris dans quelle mesure chacune des parties a conduit l'arbitrage avec célérité et efficacité en termes de coûts.*

*6- En cas de retrait de toutes les demandes ou s'il est mis fin à l'arbitrage avant qu'une sentence finale ne soit rendue, la Cour fixe les honoraires et frais des arbitres et les frais administratifs de la CCI. Si les parties ne sont pas convenues du partage des frais de l'arbitrage ou d'autres questions pertinentes relatives aux frais, ceux-ci sont tranchés par le tribunal arbitral. Si celui-ci n'a pas encore été constitué au moment du retrait des demandes ou de la fin de l'arbitrage, toute partie peut demander à la Cour de procéder à la constitution du tribunal arbitral conformément au Règlement afin qu'il puisse se prononcer sur les frais. »*

337.    Il ressort de l'article 37 susmentionné que la répartition des frais de l'arbitrage relève de la discrétion du Tribunal Arbitral dans la mesure ou les frais exposés par les parties sont raisonnables.

**Concernant les frais de la CCI**

338.    Le Tribunal Arbitral, par son appréciation souveraine, estime qu'au regard de l'issue du litige tel que tranché par le Tribunal Arbitral déterminant que la Défenderesse est responsable envers la Demanderesse pour le paiement des montants dus au titre des Marchés, et qu'au regard du fait que la Demanderesse a déboursé l'ensemble des frais de la procédure arbitrale et que cette dernière a prévalu dans la majorité de ses prétentions, détermine que la Défenderesse supportera la totalité des frais de la procédure d'arbitrage tels que fixés par la Cour de la CCI.

339.    Le Secrétariat de la CCI dans sa lettre du 27 juillet 2018 a informé les Parties et le Tribunal Arbitral que les frais de l'arbitrage tels que fixés par la Cour de la CCI s'élèvent à US$ 541,450.

**Concernant les frais de représentation et autres dépenses de la Demanderesse**

340.    Le Tribunal Arbitral relève que la Demanderesse n'a soumis aucun justificatif des montants allégués au cours de l'Audience Finale de Plaidoiries et qui sont relatifs à ses frais de représentation et autres dépenses encourues au cours de cette procédure arbitrale.

341.    Par conséquent, le Tribunal Arbitral détermine de ne pas accorder à la Demanderesse ses frais de représentation et autres dépenses encourues au cours de cette procédure arbitrale.

## VII-  DISPOSITIF

342.    Le Tribunal Arbitral :

1.  Se Déclare compétent pour connaître du différend résultant des deux Marchés de travaux publics Lot 4 et Lot 5 dans une seule procédure arbitrale sur le fondement de la clause compromissoire prévue à l'article 29 CCAP des deux Marchés.

2.  Condamne la Défenderesse au paiement du montant de **3.470.475,73 euros** au titre du montant des impayés de l'Avenant no.1 du Marché de Travaux *« réaménagement de la 2x2 voies entre Tombo et l'aéroport de Gbessia (Conakry)  Lot 4 : Tronçon Kenien –T1, Marché de Travaux n° 2003/0325/1/2/1/2/N »* en date du 25 juin 2003.

3.  Condamne la Défenderesse au paiement de **3.897.891,12 euros** au titre des montants impayés de l'Avenant no.1 du Marché de Travaux *« réaménagement de la 2x2 voies entre Tombo et l'aéroport de Gbessia (Conakry) Lot 5 : Tronçon T1-T2 y compris les deux échangeurs aux carrefours de la T1 et la T2, Marché de Travaux  n° 2003/0324/1/2/1/2/N »* en date du 25 juin 2003 .

4.  Rejette la demande de la Demanderesse pour le paiement du montant de **96.939.178 GNF** au titre du montant des impayés relatifs aux Décomptes no.16 et 17 du Marché de Travaux *« réaménagement de la 2x2 voies entre Tombo et l'aéroport de Gbessia (Conakry) Lot 4 : Tronçon Kenien –T1, Marché de Travaux n° 2003/0325/1/2/1/2/N »* en date du 25 juin 2003.

5.  Rejette la demande de la Demanderesse pour le paiement du montant de **112.780.322 GNF** au titre des montants impayés de l'Avenant no.1 du Marché de Travaux *« réaménagement de la 2x2 voies entre Tombo et l'aéroport de Gbessia (Conakry) Lot 5 : Tronçon T1-T2 y compris les deux échangeurs aux carrefours de la T1 et la T2, Marché de Travaux n° 2003/0324/1/2/1/2/N »* en date du 25 juin 2003.

6.  Condamne la Défenderesse au paiement des intérêts moratoires de l'ordre de 2.75% par an pour chacun des deux Marchés qui commencent à courir à partir de la date du 10 décembre 2012, date à laquelle la Demanderesse réclame le calcul du taux d'intérêts, jusqu'à la date du paiement définitif par la Défenderesse du montant de compensation déterminé par le Tribunal Arbitral s'élevant à **3.470.475,73 euros** pour le Marché du Lot 4 et à **3.897.891,12 euros** pour le Marché du Lot 5.

7.  Rejette la Demande de la Demanderesse de paiement de dommages et intérêts à hauteur de **2,000,000 d'euros.**

102

8. Condamne la Défenderesse au paiement des frais de l'arbitrage fixés par la Cour de la Chambre de Commerce Internationale déboursés par la Demanderesse au cours de la procédure arbitrale d'un montant de **US$ 541,450**.

9. Ordonne l'exécution provisoire de la présente Sentence Arbitrale.

10. Rejette toutes autres demandes ou prétentions.

Rendue et signée à Paris, France en date du *7 Août 2018*

Prof. Dr. Nayla COMAIR-OBEID
Présidente

Dr Seydou Madani SY

(Co-Arbitre)

Me Joachim BILE-AKA

(Co-Arbitre)

104

# Annexe

**ICC 22056/DDA : Sentence Finale**
**Annexe 1**
**(Récépissés DHL de transmission à la Défenderesse de l'ensemble des correspondances)**

| Correspondance | Date d'envoi par le Tribunal | Date de réception par l'Agent Judiciaire de l'État (Conakry, Guinée) | Date de réception par l'Ambassade de Guinée (Paris, France) | Le République de Guinée Ministre des Travaux Publics | Annexe |
|---|---|---|---|---|---|
| AT-P-001 | 10 mai 2017 | 15 mai 2017 | 29 mai 2017 (envoyée avec AT-P-003) | | 1 |
| AT-P-002 | 23 mai 2017 | 26 mai 2017 | 29 mai 2017 (envoyée avec AT-P-003) | | 2 |
| AT-P-003 | 25 mai 2017 | 29 mai 2017 | 29 mai 2017 | | 3 |
| AT-P-004 | 6 juin 2017 | 9 juin 2017 | 7 juin 2017 | | 4 |
| AT-P-005 | 14 juin 2017 | 19 juin 2017 | 15 juin 2017 | | 5 |
| AT-P-006 | 15 juin 2017 | 20 juin 2017 | 16 juin 2017 | | 6 |
| AT-P-007 | 16 juin 2017 | 20 juin 2017 | 19 juin 2017 | | 7 |
| AT-P-008 | 20 juin 2017 | 27 juin 2017 | 21 juin 2017 | | 8 |
| AT-P-009 | 22 juin 2017 | 27 juin 2017 | 23 juin 2017 | | 9 |
| AT-P-010 | 27 juin 2017 | 3 juillet 2017 | 29 juin 2017 | | 10 |
| AT-P-011 | 6 juillet 2017 | 11 juillet 2017 | 7 juillet 2017 | | 11 |
| AT-P-012 | 4 août 2017 | 8 août 2017 | 7 août 2017 | | 12 |
| AT-P-013 | 30 août 2017 | 4 septembre 2017 | 31 août 2017 | | 13 |
| AT-P-014 | 3 octobre 2017 | 6 octobre 2017 | 9 octobre 2017 | | 14 |
| AT-P-015 | 4 octobre 2017 | 9 octobre 2017 | 5 octobre 2017 | | 15 |
| AT-P-016 | 6 novembre 2017 | 10 novembre 2017 | 9 novembre 2017 | 10 novembre 2017 | 16 - 17 |
| AT-P-017 | 7 novembre 2017 | 10 novembre 2017 | 9 novembre 2017 | 10 novembre 2017 | |
| AT-P-018 | 12 décembre 2017 | 21 décembre 2017 | 20 décembre 2017 | 21 décembre 2017 | |

| AT-P-019 | 14 décembre 2017 | 21 décembre 2017 | 20 décembre 2017 | 21 décembre 2017 | |
| AT-P-20 | 16 décembre 2017 | 21 décembre 2017 | 20 décembre 2017 | 21 décembre 2017 | 18 - 22 |
| AT-P-21 | 17 décembre 2017 | 21 décembre 2017 | 20 décembre 2017 | 21 décembre 2017 | |
| AT-P-22 | 18 décembre 2017 | 21 décembre 2017 | 20 décembre 2017 | 21 décembre 2017 | |
| AT-P-23 | 21 décembre 2017 | 3 janvier 2018 | 2 janvier 2018 | 3 janvier 2018 | |
| AT-P-24 | 18 décembre 2017 | 3 janvier 2018 | 2 janvier 2018 | 3 janvier 2018 | 23 - 24 |
| AT-P-25 | 8 janvier 2018 | 12 janvier 2018 | 11 janvier 2018 | 12 janvier 2018 | 25 |
| AT-P-26 | 12 janvier 2018 | 18 janvier 2018 | 17 janvier 2018 | 18 janvier 2018 | 26 |
| AT-P-27 | 24 janvier 2018 | 30 janvier 2018 | 29 janvier 2018 | 30 janvier 2018 | 27 |
| AT-P-28 | 15 février 2018 | 20 février 2018 | 19 février 2018 | 20 février 2018 | 28 |
| AT-P-29 | 26 février 2018 | 1 mars 2018 | 28 février 2018 | 1 mars 2018 | 29 |
| AT-P-30 | 27 février 2018 | 27 mars 2018 | 26 mars 2018 | 27 mars 2018 | 30 – 31 |
| AT-P-31 | 22 mars 2018 | 27 mars 2018 | 26 mars 2018 | 27 mars 2018 | |
| AT-P-32 | 29 mars 2018 | 9 avril 2018 | 6 avril 2018 | 9 avril 2018 | 32 |
| AT-P-33 | 14 April 2018 | 19 April 2018 | 17 April 2018 | 19 avril 2018 | 33 |
| AT-P-34 | 17 avril 2018 | 27 avril 2018 | 25 avril 2018 | 27 avril 2018 | 34-35 |
| AT-P-35 | 24 avril 2018 | 27 avril 2018 | 25 avril 2018 | 27 avril 2018 | |
| AT-P-36 | 12 juillet 2018 | 16 juillet 2018 | 13 Juillet 2018 | 16 juillet 2018 | 36 |

Reference 1



30 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5111904350.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5111904350 was delivered on 15 May 2017 at 12.04**

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004358211810 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 10 May 2017 at 18.01 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOCUMENTS | | |

Reference 2



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 8380406101.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 8380406101 was delivered on 26 May 2017 at 08.58**

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004439089667 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 23 May 2017 at 15.14 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.30 lbs / 0.14 kg | | |
| Contents | DOCUMENTS | | |

Reference 3



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7912954486.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7912954486 was delivered on 29 May 2017 at 09.28**

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004446416533 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 25 May 2017 at 19.52 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0 08 kg | | |
| Contents | DOCUMENTS | | |

Reference 3



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7912960893.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7912960893 was delivered on 29 May 2017 at 14.39**

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004446417273 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 25 May 2017 at 19.54 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 2.95 lbs / 1.34 kg | | |
| Contents | DOCUMENTS | | |

Reference 4



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 9766966145.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 9766966145 was delivered on 09 June 2017 at 11.42**

| | | | |
|---|---|---|---|
| **Signed** | STAMP | **Receiver Name** | LA REPUBLIQUE DE GUINEE |
| **Shipment Status** | Delivered | **Receiver Address** | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | **Piece ID(s)** | JD014600004480848551 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| **Service** | EXPRESS WORLDWIDE doc | **Shipper Name** | OBEID LAW FIRM |
| **Picked Up** | 06 June 2017 at 11.59 | **Shipper Address** | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| **Number of Pieces** | 1 | | |
| **Weight** | 0.44 lbs / 0.20 kg | | |
| **Contents** | DOC | | |

Reference 4



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 9767021412.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 9767021412 was delivered on 07 June 2017 at 09.39**

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004480856215 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 06 June 2017 at 11.59 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.44 lbs / 0.20 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 5



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6724188833.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 6724188833 was delivered on 19 June 2017 at 12.38

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004504804575 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 14 June 2017 at 14.46 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

_- Reference 5_



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6724183421.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6724183421 was delivered on 15 June 2017 at 14.42**

| | | | |
|---|---|---|---|
| Signed | KATY | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | *Cathy* | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004504803823 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 14 June 2017 at 14.46 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 6



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1805648202.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 1805648202 was delivered on 20 June 2017 at 10.51**

| | | | |
|---|---|---|---|
| Signed | MME TOURE | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004517703720 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 15 June 2017 at 15.56 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.22 lbs / 0.10 kg | | |
| Contents | DOC | | |

Reference 6



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1805650125.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 1805650125 was delivered on 16 June 2017 at 15.12**

| | | | |
|---|---|---|---|
| Signed | KATIE | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004517703950 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 15 June 2017 at 15 56 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 7



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7719547216.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7719547216 was delivered on 20 June 2017 at 10.51**

| | | | |
|---|---|---|---|
| Signed | MME TOURE | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004524087366 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 June 2017 at 19.51 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

*Reference 7*



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7719545271.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7719545271 was delivered on 19 June 2017 at 11.19**

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004524087116 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 June 2017 at 19.51 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 8



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5396297642.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5396297642 was delivered on 27 June 2017 at 11.05**

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004533108678 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 20 June 2017 at 15.39 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.30 lbs / 0.14 kg | | |
| Contents | DOC | | |

_Reference 8_



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5396302041.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 5396302041 was delivered on 21 June 2017 at 14.37

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004533109236 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS 9:00 doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 20 June 2017 at 15.39 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.30 lbs / 0.14 kg | | |
| Contents | DOC | | |

Reference 9



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5528026571.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5528026571 was delivered on 27 June 2017 at 11.06**

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004539083181 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE dcc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 22 June 2017 at 14.32 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 9



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5528024994.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5528024994 was delivered on 23 June 2017 at 14.16**

| | | | |
|---|---|---|---|
| Signed | KONATE | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004539082960 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 22 June 2017 at 14 32 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0 06 kg | | |
| Contents | DOC | | |

Reference 10



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1520220704.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 1520220704 was delivered on 03 July 2017 at 10.25**

| | | | |
|---|---|---|---|
| Signed | MME CONTE | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004553805570 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 27 June 2017 at 15 05 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.35 lbs / 0.16 kg | | |
| Contents | DOC | | |

_Reference 10_



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1520223902.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 1520223902 was delivered on 29 June 2017 at 10.54

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004553806053 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 27 June 2017 at 17.50 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.26 lbs / 0.12 kg | | |
| Contents | DOC | | |

Reference 11



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 2903804540.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 2903804540 was delivered on 11 July 2017 at 10.46**

| | | | |
|---|---|---|---|
| Signed | MME TOURE | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004581558902 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 06 July 2017 at 14.43 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.22 lbs / 0.10 kg | | |
| Contents | DOCUMENT | | |

- Reference 11



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 2903824206.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 2903824206 was delivered on 07 July 2017 at 14.32**

| | | | |
|---|---|---|---|
| Signed | KONATE | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004581561595 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 06 July 2017 at 14.43 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.22 lbs / 0.10 kg | | |
| Contents | DOCUMENT | | |

*Reference 12*



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6576359742.

Thank you for choosing DHL Express.

www.dhl.com

### Your shipment 6576359742 was delivered on 08 August 2017 at 08.34

| | | | |
|---|---|---|---|
| Signed | S CENTRAL | Receiver Name | AGENT JUDICIAIRE DE L'ETAT |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP- 2 EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004646840328 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 04 August 2017 at 17.16 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

~Reference 12



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6576341656.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6576341656 was delivered on 07 August 2017 at 15.12**

| | | | |
|---|---|---|---|
| Signed | MARWA | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004646838217 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 04 August 2017 at 17 16 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0 17 lbs / 0 08 kg | | |
| Contents | DOC | | |

Reference 13



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 8574966304.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 8574966304 was delivered on 04 September 2017 at 09.56

| | | | |
|---|---|---|---|
| Signed | S CENTRAL | Receiver Name | IMMEUBLE ACGPMP- 2 EME ETAGE |
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE CONAKRY CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004738971555 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 30 August 2017 at 15.30 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.26 lbs / 0.12 kg | | |
| Contents | DOC | | |

Reference 13



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 8574952455.

Thank you for choosing DHL Express.

www.dhl.com

### Your shipment 8574952455 was delivered on 31 August 2017 at 14.42

| | | | |
|---|---|---|---|
| Signed | SOUMAN | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004738969904 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 30 August 2017 at 15.30 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0 26 lbs / 0.12 kg | | |
| Contents | DOC | | |

Reference 14



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6557398842.

Thank you for choosing DHL Express

www.dhl.com

**Your shipment 6557398842 was delivered on 06 October 2017 at 10.12**

| | | | |
|---|---|---|---|
| Signed | SECRETARIAT | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004838278461 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 03 October 2017 at 15 29 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0 08 kg | | |
| Contents | DOC | | |

Reference 14



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6557390070.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6557390070 was delivered on 09 October 2017 at 13.52**

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004838277446 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 03 October 2017 at 15 29 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 15



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5133084515.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5133084515 was delivered on 09 October 2017 at 11.02**

| Signed | MME KEITA | Receiver Name | LA REPUBLIQUE DE GUINEE |
|---|---|---|---|
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004851934799 |

**Additional Shipment Details**

| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
|---|---|---|---|
| Picked Up | 04 October 2017 at 15.18 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 15



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5133068861.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5133068861 was delivered on 05 October 2017 at 14.16**

| | | | |
|---|---|---|---|
| Signed | KATI | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004851932884 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 04 October 2017 at 15.19 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 16-17



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7566803893.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7566803893 was delivered on 10 November 2017 at 10.54**

| | | | |
|---|---|---|---|
| Signed | SECRETARIAT | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE<br>BOULEVARD DU COMMERCE<br>CONAKRY<br>GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004940742898 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 08 November 2017 at 10 48 | Shipper Address | STRATUM BUILDING 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 1.49 lbs / 0.68 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 16-17

_DHL_

18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7566827380.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7566827380 was delivered on 09 November 2017 at 10.45**

| | | | |
|---|---|---|---|
| Signed | CATHY | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600004940746291 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 08 November 2017 at 10.48 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 1.49 lbs / 0.68 kg | | |
| Contents | DOC | | |

Reference 16-17



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7566872865.

Thank you for choosing DHL Express

www.dhl.com

**Your shipment 7566872865 was delivered on 10 November 2017 at 10.26**

| | | | |
|---|---|---|---|
| Signed | SECRETARIAT | Receiver Name | MINISTRE DES TRAVAUX PUBLICS |
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600004940752611 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 08 November 2017 at 10.48 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 1.49 lbs / 0.68 kg | | |
| Contents | DOC | | |

Reference 18-22

_DHL_

18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 8122661422.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 8122661422 was delivered on 21 December 2017 at 10.13**

| | | | |
|---|---|---|---|
| Signed | MME KEITA | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE |
| | | | BOULEVARD DU COMMERCE |
| | | | CONAKRY |
| | | | GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005067455654 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 19 December 2017 at 11.44 | Shipper Address | STRATUM BUILDING 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 0.17 lbs / 0.08 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 18-22



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 8122613450.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 8122613450 was delivered on 20 December 2017 at 13.20

| | | | |
|---|---|---|---|
| Signed | cathy | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005067449303 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 19 December 2017 at 11 44 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 18-22

_DHL_

18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 8122644832.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 8122644832 was delivered on 21 December 2017 at 09.17**

| | | | |
|---|---|---|---|
| Signed | MR KEITA | Receiver Name | MINISTRE DES TRAVAUX PUBLICS |
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005067453475 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 19 December 2017 at 11.44 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 23-24



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6480458611.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6480458611 was delivered on 03 January 2018 at 11.31**

| | | | |
|---|---|---|---|
| **Signed** | MME CONTE | **Receiver Name** | LA REPUBLIQUE DE GUINEE |
| **Shipment Status** | Delivered | **Receiver Address** | IMMEUBLE ACGPMP - 2EME ETAGE |
| | | | BOULEVARD DU COMMERCE |
| | | | CONAKRY |
| | | | GUINEA REPUBLIC |
| | | **Piece ID(s)** | JD014600005113027522 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| **Service** | EXPRESS WORLDWIDE doc | **Shipper Name** | OBEID LAW FIRM |
| **Picked Up** | 29 December 2017 at 15 17 | **Shipper Address** | STRATUM BUILDING, 4TH FLOOR |
| **Number of Pieces** | 1 | | OMAR DAOUK STREET BEIRUT |
| **Weight** | 0.17 lbs / 0.08 kg | | BEIRUT |
| **Contents** | DOC | | LEBANON |

Reference 23-24



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6480453206.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6480453206 was delivered on 02 January 2018 at 11.13**

| | | | |
|---|---|---|---|
| Signed | idrissa | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005113026752 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 29 December 2017 at 15.17 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 23-24



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6480464233.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 6480464233 was delivered on 03 January 2018 at 11.00

| | | | |
|---|---|---|---|
| Signed | MR KEITA | Receiver Name | MINISTRE DES TRAVAUX PUBLICS |
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005113028173 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 29 December 2017 at 15.17 | Shipper Address | STRATUM BUILDING. 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 25



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 4535893401.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 4535893401 was delivered on 12 January 2018 at 12.08**

| Signed | MME NABE | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005239301326 |

**Additional Shipment Details**

| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 10 January 2018 at 10.47 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 25



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 4535860022.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 4535860022 was delivered on 11 January 2018 at 11.14

| | | | |
|---|---|---|---|
| Signed | cofy | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005239296742 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 10 January 2018 at 10.46 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 25



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 4535877021.

Thank you for choosing DHL Express

www.dhl.com

### Your shipment 4535877021 was delivered on 12 January 2018 at 10.48

| | | | |
|---|---|---|---|
| Signed | MR KEITA | Receiver Name | MINISTRE DES TRAVAUX PUBLICS |
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005239299128 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 10 January 2018 at 10.47 | Shipper Address | STRATUM BUILDING. 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 26



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6856529956.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6856529956 was delivered on 17 January 2018 at 14.19**

| | | | |
|---|---|---|---|
| Signed | konate | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005257772633 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 15 January 2018 at 15.16 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 26



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6856536551.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6856536551 was delivered on 18 January 2018 at 09.05**

| | | | |
|---|---|---|---|
| Signed | MR KEITA | Receiver Name | MINISTRE DES TRAVAUX PUBLICS |
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005257773613 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 15 January 2018 at 15.16 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 27



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 2660218315.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 2660218315 was delivered on 30 January 2018 at 11.06**

| Signed | MME KEITA | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Shipment Status | Delivered | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005297069229 |

**Additional Shipment Details**

| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 26 January 2018 at 14.43 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0 06 kg | | |
| Contents | DOC | | |

Reference 27



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 2660214561.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 2660214561 was delivered on 29 January 2018 at 10.50**

| | | | |
|---|---|---|---|
| Signed | john | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005297068732 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 26 January 2018 at 14.42 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0 13 lbs / 0 06 kg | | |
| Contents | DOC | | |

Reference 27



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 2660220835.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 2660220835 was delivered on 30 January 2018 at 10.10**

| | | | |
|---|---|---|---|
| Signed | MR KEITA | Receiver Name | MINISTRE DES TRAVAUX PUBLICS |
| Shipment Status | Delivered | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| | | Piece ID(s) | JD014600005297069546 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 26 January 2018 at 14.42 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 28



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7352149615.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7352149615 was delivered on 20 February 2018 at 10.03**

| | | | |
|---|---|---|---|
| Signed | MME TOURE | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Signature | | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005350620152 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 February 2018 at 14.29 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 28



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7352143514.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 7352143514 was delivered on 19 February 2018 at 10.37

| | | | |
|---|---|---|---|
| Signed | cathy | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005350619388 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 February 2018 at 14.29 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 28



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7352147003.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 7352147003 was delivered on 20 February 2018 at 09.26

| | | | |
|---|---|---|---|
| Signed | RL KABA | Receiver Name | MINISTRE DES TRAVAUX PUBLICS |
| Signature | | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005350619838 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 February 2018 at 14.29 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 29



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7629639345.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 7629639345 was delivered on 01 March 2018 at 12.15**

| | | | |
|---|---|---|---|
| Signed | MR CAMARA | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Signature | | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005377974536 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 27 February 2018 at 11.14 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 29



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7629620596.

Thank you for choosing DHL Express.

www.dhl.com

## Your shipment 7629620596 was delivered on 28 February 2018 at 11.07

| | | | |
|---|---|---|---|
| Signed | cathy | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005377972063 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 27 February 2018 at 11.16 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 29



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 7629631096.

Thank you for choosing DHL Express

www.dhl.com

**Your shipment 7629631096 was delivered on 01 March 2018 at 10.41**

| | | | |
|---|---|---|---|
| Signed | ELHADJ KABA | Receiver Name | MINISTRE DES TRAVAUX PUBLICS |
| Signature | | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005377973384 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 27 February 2018 at 11.14 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.17 lbs / 0.08 kg | | |
| Contents | DOC | | |

Reference 30 -31



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6481062722.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6481062722 was delivered on 27 March 2018 at 10.59**

| | | | |
|---|---|---|---|
| Signed | MME KEITA | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Signature | | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE<br>BOULEVARD DU COMMERCE<br>CONAKRY<br>GUINEA REPUBLIC |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005454779699 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 23 March 2018 at 14 21 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT<br>BEIRUT |
| Weight | 0.17 lbs / 0.08 kg | | LEBANON |
| Contents | DOC | | |

Reference 30-31



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6481051135.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6481051135 was delivered on 26 March 2018 at 10.52**

| | | | |
|---|---|---|---|
| Signed | cathy | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005454778266 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 23 March 2018 at 14 21 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0 13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 30 -31



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6481056153.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6481056153 was delivered on 27 March 2018 at 10.15**

| | | | |
|---|---|---|---|
| **Signed** | MR KABA | **Receiver Name** | MINISTRE DES TRAVAUX PUBLICS |
| **Signature** | | **Receiver Address** | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| **Shipment Status** | Delivered | **Piece ID(s)** | JD014600005454778868 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| **Service** | EXPRESS WORLDWIDE doc | **Shipper Name** | OBEID LAW FIRM |
| **Picked Up** | 23 March 2018 at 14 21 | **Shipper Address** | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| **Number of Pieces** | 1 | | |
| **Weight** | 0.13 lbs / 0.06 kg | | |
| **Contents** | DOC | | |



Reference 32

18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1901885834.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 1901885834 was delivered on 09 April 2018 at 11.11**

| | | | |
|---|---|---|---|
| Signed | SECRETARIAT | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Signature | | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE<br>BOULEVARD DU COMMERCE<br>CONAKRY<br>GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005488819768 |

## Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 05 April 2018 at 12.06 | Shipper Address | STRATUM BUILDING, 4TH FLOOR |
| Number of Pieces | 1 | | OMAR DAOUK STREET BEIRUT |
| Weight | 1.32 lbs / 0.60 kg | | BEIRUT |
| Contents | DOC | | LEBANON |

Reference 32



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1901867365.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 1901867365 was delivered on 06 April 2018 at 14.12**

| | | | |
|---|---|---|---|
| Signed | barry | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005488817459 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 05 April 2018 at 12 06 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 1.36 lbs / 0 62 kg | | |
| Contents | DOC | | |

Reference 32



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 1901873761.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 1901873761 was delivered on 09 April 2018 at 09.02**

| | | | |
|---|---|---|---|
| Signed | MR KEITA | Receiver Name | MINISTRE DES TRAVAUX PUBLICS |
| Signature | | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005488818277 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 05 April 2018 at 12.06 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 1.36 lbs / 0.62 kg | | |
| Contents | DOC | | |

Reference 33



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5866015481.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5866015481 was delivered on 19 April 2018 at 11.11**

| | | | |
|---|---|---|---|
| Signed | MME KEITA | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Signature | | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005523748900 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 April 2018 at 14 49 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0 06 kg | | |
| Contents | DOC | | |

Reference 33



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5865951221.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5865951221 was delivered on 17 April 2018 at 14.45**

| | | | |
|---|---|---|---|
| Signed | katy | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005523740157 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 April 2018 at 14.49 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 33



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 5866005305.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 5866005305 was delivered on 19 April 2018 at 08.57**

| | | | |
|---|---|---|---|
| Signed | MR KEITA S CENTRAL | Receiver Name | MINISTRE DES TRAVAUX PUBLICS |
| Signature | | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005523747500 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 16 April 2018 at 14 49 | Shipper Address | STRATUM BUILDING 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference  34 - 35



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6387218390.

Thank you for choosing DHL Express.

www.dhl.com

**Your shipment 6387218390 was delivered on 27 April 2018 at 09.40**

| | | | |
|---|---|---|---|
| Signed | SECRETARIAT | Receiver Name | LA REPUBLIQUE DE GUINEE |
| Signature | | Receiver Address | IMMEUBLE ACGPMP - 2EME ETAGE BOULEVARD DU COMMERCE CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | | |
| | | Piece ID(s) | JD014600005542401347 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 24 April 2018 at 15.25 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0 06 kg | | |
| Contents | DOC | | |

Reference 34-35



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6387199431.

Thank you for choosing DHL Express.

www.dhl.com

### Your shipment 6387199431 was delivered on 25 April 2018 at 14.27

| | | | |
|---|---|---|---|
| Signed | katy | Receiver Name | AMBASSADE DE GUINEE EN FRANCE |
| Signature | | Receiver Address | 51, RUE DE LA FAISANDERIE PARIS PARIS FRANCE |
| Shipment Status | Delivered | Piece ID(s) | JD014600005542398959 |

### Additional Shipment Details

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 24 April 2018 at 15 25 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

Reference 34-35



18 July 2018

Dear Customer,

This is a proof of delivery / statement of final status for the shipment with waybill number 6387210045.

Thank you for choosing DHL Express

www.dhl.com

**Your shipment 6387210045 was delivered on 27 April 2018 at 09.25**

| | | | |
|---|---|---|---|
| Signed | S CENTRAL KABA | Receiver Name | MINISTRE DES TRAVAUX PUBLICS |
| Signature | | Receiver Address | BOULEVARD DU COMMERCE-ALMAMYA, KALOUM CONAKRY GUINEA REPUBLIC |
| Shipment Status | Delivered | Piece ID(s) | JD014600005542400321 |

**Additional Shipment Details**

| | | | |
|---|---|---|---|
| Service | EXPRESS WORLDWIDE doc | Shipper Name | OBEID LAW FIRM |
| Picked Up | 24 April 2018 at 15.25 | Shipper Address | STRATUM BUILDING, 4TH FLOOR OMAR DAOUK STREET BEIRUT BEIRUT LEBANON |
| Number of Pieces | 1 | | |
| Weight | 0.13 lbs / 0.06 kg | | |
| Contents | DOC | | |

7/27/2018

**Tracking Results**

Track Shipments                    Reference 36

| ✓ | Waybill Number 4790203946<br>Signed for by. ELHADJ KABA<br>**Get Signature Proof of Delivery** | Monday, July 16, 2018 at 12:24<br>Origin Service Area<br>**BEIRUT - BEIRUT - LEBANON**<br>Destination Service Area<br>**CONAKRY - CONAKRY - GUINEA REPUBLIC** | | 1 Piece |

**Monday, July 16, 2018**

| | | Location | Time | Pieces |
|---|---|---|---|---|
| 15 | Delivered - Signed for by ELHADJ KABA | CONAKRY | 12:24 | 1 Piece |
| 14 | With delivery courier | CONAKRY - GUINEA REPUBLIC | 09:49 | 1 Piece |

**Sunday, July 15, 2018**

| | | Location | Time | Pieces |
|---|---|---|---|---|
| 13 | Arrived at Sort Facility CONAKRY - GUINEA REPUBLIC | CONAKRY - GUINEA REPUBLIC | 10:16 | 1 Piece |
| 12 | Departed Facility in DAKAR - SENEGAL | DAKAR - SENEGAL | 05:49 | 1 Piece |
| 11 | Processed at DAKAR - SENEGAL | DAKAR - SENEGAL | 05:41 | 1 Piece |

**Saturday, July 14, 2018**

| | | Location | Time | Pieces |
|---|---|---|---|---|
| 10 | Arrived at Sort Facility CASABLANCA - MOROCCO | CASABLANCA - MOROCCO | 11:35 | 1 Piece |
| 9 | Departed Facility in BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 07:04 | 1 Piece |
| 8 | Processed at BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 02:35 | 1 Piece |

**Friday, July 13, 2018**

| | | Location | Time | Pieces |
|---|---|---|---|---|
| 7 | Arrived at Sort Facility BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 18:06 | 1 Piece |
| 6 | Departed Facility in PARIS - FRANCE | PARIS - FRANCE | 13:00 | 1 Piece |
| 5 | Processed at PARIS - FRANCE | PARIS - FRANCE | 10:03 | 1 Piece |
| 4 | Arrived at Sort Facility PARIS - FRANCE | PARIS - FRANCE | 08:57 | 1 Piece |

**Thursday, July 12, 2018**

| | | Location | Time | Pieces |
|---|---|---|---|---|
| 3 | Departed Facility in BEIRUT - LEBANON | BEIRUT - LEBANON | 20:46 | 1 Piece |
| 2 | Processed at BEIRUT - LEBANON | BEIRUT - LEBANON | 20:05 | 1 Piece |
| 1 | Shipment picked up | BEIRUT - LEBANON | 15:15 | 1 Piece |

7/27/2018                                  Track Shipments              *Reference 36*

**Tracking Results**

✓     Waybill Number 4058571145          Friday, July 13, 2018 at 14:36          1 Piece
      Signed for by: **KONATE**          Origin Service Area:
      **Get Signature Proof of Delivery**  **BEIRUT - BEIRUT - LEBANON**
                                         Destination Service Area
                                         **PARIS - PARIS - FRANCE**

Friday, July 13, 2018                    Location            Time       Pieces

8     Delivered - Signed for by KONATE   PARIS               14:36      1 Piece
7     With delivery courier              PARIS - FRANCE      13:14      1 Piece
6     Arrived at Sort Facility PARIS – FRANCE   PARIS - FRANCE  11:06   1 Piece
5     Departed Facility in PARIS – FRANCE   PARIS - FRANCE    10:42     1 Piece
4     Processed at PARIS - FRANCE        PARIS - FRANCE      10:16      1 Piece

Thursday, July 12, 2018                  Location            Time       Pieces

3     Departed Facility in BEIRUT – LEBANON   BEIRUT - LEBANON  20:46   1 Piece
2     Processed at BEIRUT – LEBANON      BEIRUT - LEBANON    20:05      1 Piece
1     Shipment picked up                 BEIRUT - LEBANON    15:09      1 Piece

7/27/2018          Track Shipments        *Reference 36*

**Tracking Results**

✓     Waybill Number 4058570320
      Signed for by: MME CONTE
      Get Signature Proof of Delivery

Monday, July 16, 2018 at 11:30
Origin Service Area:
**BEIRUT - BEIRUT - LEBANON**
Destination Service Area:
**CONAKRY - CONAKRY - GUINEA REPUBLIC**

1 Piece

**Monday, July 16, 2018**

| | | Location | Time | Pieces |
|---|---|---|---|---|
| 15 | Delivered - Signed for by: MME CONTE | CONAKRY | 11.30 | 1 Piece |
| 14 | With delivery courier | CONAKRY - GUINEA REPUBLIC | 09.49 | 1 Piece |

**Sunday, July 15, 2018**

| | | Location | Time | Pieces |
|---|---|---|---|---|
| 13 | Arrived at Sort Facility CONAKRY - GUINEA REPUBLIC | CONAKRY - GUINEA REPUBLIC | 10.15 | 1 Piece |
| 12 | Departed Facility in DAKAR - SENEGAL | DAKAR - SENEGAL | 05.49 | 1 Piece |
| 11 | Processed at DAKAR - SENEGAL | DAKAR - SENEGAL | 05.41 | 1 Piece |

**Saturday, July 14, 2018**

| | | Location | Time | Pieces |
|---|---|---|---|---|
| 10 | Arrived at Sort Facility CASABLANCA - MOROCCO | CASABLANCA - MOROCCO | 11.35 | 1 Piece |
| 9 | Departed Facility in BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 07.04 | 1 Piece |
| 8 | Processed at BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 02.35 | 1 Piece |

**Friday, July 13, 2018**

| | | Location | Time | Pieces |
|---|---|---|---|---|
| 7 | Arrived at Sort Facility BRUSSELS - BELGIUM | BRUSSELS - BELGIUM | 18.06 | 1 Piece |
| 6 | Departed Facility in PARIS - FRANCE | PARIS - FRANCE | 13.00 | 1 Piece |
| 5 | Processed at PARIS - FRANCE | PARIS - FRANCE | 10.03 | 1 Piece |
| 4 | Arrived at Sort Facility PARIS - FRANCE | PARIS - FRANCE | 08.57 | 1 Piece |

**Thursday, July 12, 2018**

| | | Location | Time | Pieces |
|---|---|---|---|---|
| 3 | Departed Facility in BEIRUT - LEBANON | BEIRUT - LEBANON | 20.46 | 1 Piece |
| 2 | Processed at BEIRUT - LEBANON | BEIRUT - LEBANON | 20.05 | 1 Piece |
| 1 | Shipment picked up | BEIRUT - LEBANON | 15.14 | 1 Piece |