UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMPAGNIE SAHÉLIENNE D'ENTREPRISE,<br><br>*Petitioner*,<br><br>v.<br><br>REPUBLIC OF GUINEA,<br><br>*Respondent*. | Civil Action No. 20-1536 (TJK) |

**MEMORANDUM OPINION**

Petitioner Compagnie Sahélienne d'Entreprise, a Senegal-based corporation, sues to confirm an arbitration award against Respondent Republic of Guinea. For the reasons explained below, the Court will grant its motion for default judgment and confirm the award.

**I.  Background**

Under two contracts with Republic of Guinea ("Guinea"), in the early 2000s Compagnie Sahélienne d'Entreprise (CSE) upgraded sections of a road linking the town of Tombo to Gbessia Airport. ECF No. 1-2 ¶¶ 5–8; ECF Nos. 1-4–1-7. But after CSE was done, Guinea failed to pay. ECF No. 15-2 ("Howes Decl.") ¶ 6. So CSE pursued an arbitration under the Arbitration Rules of the International Chamber of Commerce (ICC), as provided for in the two contracts. *Id.*; ECF No. 15-3 ("ICC Award") ¶ 123. An arbitration was conducted in Paris, France, but Guinea did not participate, despite being notified about it. Howes Decl. ¶¶ 9–10; ICC Award ¶¶ 6–9, 113–22, Appendix 1. Ultimately, the tribunal granted some of CSE's claims and awarded it (1) €3,470,475.73 for one contract, (2) €3,897,891.12 for the other contract, (3) interest at a rate of 2.75% per year accruing on December 10, 2012, until the date of final

payment, and (4) $541,450 for arbitration expenses.  Howes Decl. ¶ 13; ICC Award ¶ 342.  Guinea has not paid the award or told CSE that it intends to do so.  ECF No. 15-4 ¶ 10.

CSE filed this case to confirm the award under the New York Convention, an international treaty that provides for recognition and enforcement of foreign arbitration awards, as codified in the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq*.  ECF No. 1.  CSE served Guinea through a DHL delivery from the Clerk of the Court that required a signed receipt.  *See* ECF Nos. 12–13.  After more than sixty days had passed after service with no response to its petition, CSE filed an affidavit for default.  ECF No. 13.  Based on this affidavit, the Clerk of the Court entered default against Guinea, ECF No. 14, and CSE later moved for default judgment, ECF No. 15.

## II.     Legal Standard

When a defendant fails to defend a case against it, a court has the power to enter default judgment for the plaintiff.  *See* Fed. R. Civ. P. 55; *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980).[1]  "[S]trong policies favor resolution of disputes on their merits," and so "[t]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party."  *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Still, "entry of a default judgment is not automatic."  *Mwani v. bin Laden*, 417 F.3d 1, 6

---

[1] Before a court may enter default judgment against an absent defendant, the plaintiff must first request that the clerk enter default.  *See* Fed. R. Civ. P. 55(a); *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 239 n.1 (D.D.C. 2007).  As noted, upon CSE's request, the Clerk entered Guinea's default on October 27, 2020.  *See* ECF No. 14.

(D.C. Cir. 2005) (footnote omitted). A court retains its "affirmative obligation" to determine whether it has subject-matter jurisdiction over the action. *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996). Additionally, "a court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani*, 417 F.3d at 6. Moreover, under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1330, 1602 *et seq.*, "out of respect for the principle of sovereign immunity, [courts] must ensure that the plaintiffs have established their claim or right [to] relief by evidence that is satisfactory to the court." *Reed v. Islamic Rep. of Iran*, 845 F. Supp. 2d 204, 211 (D.D.C. 2012) (citing 28 U.S.C. § 1608(e)). Although default judgment might be harder to obtain under the FSIA than in an ordinary case, 28 U.S.C. § 1608(e) "does not 'require the court to demand more or different evidence than it would ordinarily receive.'" *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017) (quoting *Marziliano v. Heckler*, 728 F.2d 151, 158 (2d Cir. 1984)). Plaintiff may establish proof by affidavit. *Reed*, 845 F. Supp. 2d at 212.

**III.   Analysis**

    **A.   Subject-Matter Jurisdiction**

The Court holds that it has subject-matter jurisdiction over this action under the FAA and FSIA. The FAA gives district courts original jurisdiction over actions that "fall[] under" the New York Convention. 9 U.S.C. § 203. An action to enforce an arbitration award falls under the New York Convention when the award "'aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial' unless the relationship is between U.S. citizens and lacks other significant foreign connection." *Customs & Tax Consultancy LLC v. Dem. Rep. Congo*, No. 18-cv-1408 (RJL), 2019 WL 4602143, at *3 (D.D.C. Sept. 23, 2019) (quoting 9 U.S.C. § 202). In other words, district courts have jurisdiction to enforce an

arbitration award under this provision when "(1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope." *Africard Co. v. Rep. of Niger*, 210 F. Supp. 3d 119, 123 (D.D.C. 2016).

CSE's ICC award meets all four criteria. The procurement contracts are in writing and provide that the parties may resolve disputes through arbitration in France, a signatory to the New York Convention. *See* ECF No. 1-4–1-7.[2] Contracting to provide infrastructure upgrades is plainly commercial. *See Africard*, 210 F. Supp. 3d at 124 ("[T]he term 'commercial' as used in the New York Convention, though it does not have a specific statutory definition, refers to 'matters or relationships, whether contractual or not, that arise out of or in connection with commerce.'") (quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize (Belize II)*, 794 F.3d 99, 103–04 (D.C. Cir. 2015)). And the subject matter is not entirely domestic in scope; the award was issued in France and the dispute is between two foreign parties over a contract performed in Guinea. *See Africard*, 210 F. Supp. 3d at 123.

Of course, Guinea's sovereign immunity could deprive the court of subject-matter jurisdiction. In general, states enjoy sovereign immunity from suit in the United States unless an exception applies. *See Sterling Merch. Fin. Ltd. v. Rep. of Cabo Verde*, 261 F. Supp. 3d 48, 51 (D.D.C. 2017) (citing 28 U.S.C. § 1604). But as relevant here, a foreign state is not entitled to immunity from suit to "confirm an award made pursuant to . . . an agreement to arbitrate" if the agreement or award is "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C.

---

[2] *See also Status: Convention on the Recognition & Enforcement of Foreign Arbitral Awards*, United Nations Comm'n on Int'l Trade Law, https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2 (last visited June 11, 2021).

§ 1605(a)(6). The New York Convention is a treaty under § 1605(a)(6), *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123–24 (D.C. Cir. 1999), and as already explained above, CSE's ICC award falls under the New York Convention. Guinea is therefore not entitled to immunity. And thus, the Court has jurisdiction under the FAA and FSIA. *See* 9 U.S.C. § 203; 28 U.S.C. § 1330(a) ("The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.").

      B.      **Personal Jurisdiction**

The FSIA provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction . . . where service has been made under section 1608." 28 U.S.C. § 1330(b). Section 1608 in turn sets forth four methods of service that a plaintiff must attempt in "descending order of preference." *Barot v. Embassy of the Rep. of Zam.*, 785 F.3d 26, 27 (D.C. Cir. 2015) (citing 28 U.S.C. § 1608). "[A] plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012) (quotation omitted). Though the plaintiff bears the burden of proving personal jurisdiction, on a motion for default judgment, only a prima facie showing is required. *See Mwani*, 417 F.3d at 7.

CSE has met its burden. The first two service methods were unavailable because no special agreement for service exists between CSE and Guinea, and Guinea is not a party to any

relevant international convention for the service of documents.  ECF No. 15-1 at 10.[3]  So CSE proceeded with the third option, "sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."  28 U.S.C. § 1608(a)(3).  CSE served Guinea through this option by causing the Clerk of Court to send the required documents to Mamadi Touré at the Guinean Ministry of Foreign Affairs and of Guineans Abroad, through a DHL shipping method that required a signed receipt.  *See* ECF Nos. 7, 9, 12–13.  Guinea was served on July 13, 2020, so it had until September 11, 2020 to respond, although it did not.  *See* 28 U.S.C. § 1608(d) ("a foreign state . . . shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.").  This establishes proper service under § 1608(a)(3), and so the Court has personal jurisdiction over Guinea.

### C.   Venue

Venue is proper because this action is against a foreign state.  *See* 28 U.S.C. § 1391(f)(4) ("A civil action against a foreign state as defined in section 1603(a) of this title may be brought . . . in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.").

### D.   Default Judgment on CSE's Claim

Turning to the merits, the Court finds that CSE is entitled to default judgment.  Under the New York Convention as codified in the FAA, a district court "shall confirm" an arbitration

---

[3] *See also HCCH Members*, The World Organisation for Cross-Border Co-operation in Civil and Commercial Matters, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (July 27, 2020).

award made in another signatory state "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Courts have "little discretion in refusing or deferring enforcement of foreign arbitral awards: the Convention is 'clear' that a court 'may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.'" *Belize Soc. Dev. Ltd. v. Gov't of Belize (Belize I)*, 668 F.3d 724, 733 (D.C. Cir. 2012) (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007)).

CSE has established by satisfactory evidence that it is entitled to the claimed amounts and that no grounds for refusal apply. As explained in Article V of the New York Convention:

> Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
>
> d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

> e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), art. V(1)(a)–(e), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3. The party resisting confirmation "bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies." *Sterling*, 261 F. Supp. 3d at 53 (quoting *Gold Reserve, Inc. v. Bolivarian Rep. of Venez.*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015)). Here, Guinea has defaulted and not raised any of these defenses; it has thus not met its burden. *See Africard*, 210 F. Supp. 3d at 127. The Court also concludes based on its own review of the record that none of the grounds for denial exist here. *See Sterling*, 261 F. Supp. 3d at 53.

The New York Convention also provides that recognition and enforcement of an arbitration award may be refused for the following two reasons, even if the respondent does not assert them:

> [I]f the competent authority in the country where recognition and enforcement is sought finds that:
>
> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country."

New York Convention, art. V(2). Neither apply here. There is nothing in the record to suggest that the contract dispute at issue is not capable of settlement by arbitration. *See Africard*, 210 F. Supp. 3d at 127–28 (breach of contract dispute is "surely capable of settlement by arbitration in the United States"). The is also no reason to believe that enforcing the award would be contrary to public policy. Quite the opposite: the Supreme Court has recognized an "emphatic federal policy in favor of arbitral dispute resolution" that "appl[ies] with special force in the field

of international commerce." *See Belize I*, 668 F.3d at 727 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)).  Thus, the Court will confirm the award.

**IV.    Conclusion**

For all the above reasons, the Court will grant CSE's motion for default judgment and confirm the arbitration award.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 14, 2021